

 www.drny.org   mail@drny.org   518-432-7861

May 6, 2019

**<u>VIA ECF and Email</u>**
Hon. Cathy Seibel
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

  Re: *M.G. v. Cuomo*, No. 19-CV-0639 (CS), Response to ECF No. 37

Dear Judge Seibel:

  Plaintiffs' counsel, attorneys at Disability Rights New York, the Legal Aid Society's Prisoners' Rights Project, and Paul, Weiss, Rifkind, Wharton & Garrison LLP, respectfully write in response to Defendants' request for a pre-motion conference. As explained below, Defendants' forthcoming partial motion to dismiss should not be granted.

**A. Background**

  Plaintiffs are indigent individuals held in New York State prisons because they need disability-related services in the community.[1] They bring this case on behalf of themselves and a putative class and subclass. Plaintiffs allege that Defendants fail to make available the mental health housing and supports that Plaintiffs require upon their release from prison. Instead, Defendants institutionalize them in segregated prison conditions past their lawful release dates, denying them opportunities to receive appropriate services in the community, in violation of Title II of the Americans with Disabilities Act and the Rehabilitation Act. On behalf of the subclass, Plaintiffs allege that Defendants confine them in punitive conditions past the maximum expiration dates of their court-ordered prison sentences in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution. Plaintiffs seek declaratory and injunctive relief to remedy these violations.

**B. Defendants Cuomo and McGrath Are Proper Parties.**

  Defendants mischaracterize Plaintiffs' allegations regarding the Governor. They ignore that Plaintiffs adequately plead that the Governor has "some connection" to the failure to make available the housing and supports that Plaintiffs require. *Ex Parte Young*, 209 U.S. 123, 157

---

[1] Defendants' counsel misstate that Plaintiffs allege that "they are being confined in state correctional facilities *or* residential treatment facilities." ECF No. 37 (emphasis added). Rather, Plaintiffs allege that they are all held in punitive conditions in state prisons. Compl. ¶¶ 241-275, 297-330. Defendants have designated certain prisons to serve as RTFs. Compl. ¶¶ 226-227.

Page **2** of **3**

(1908). The Governor is responsible for providing mental health housing and ensuring Plaintiffs' integration into society. Compl. ¶¶ 181, 231, 353, 364. *See* N.Y. Mental Hyg. Law § 7.07(b) (requiring OMH to assist governor "in developing policies . . . to meet the needs of the mentally ill and to encourage their full participation in society"); *Disability Advocates, Inc. v. Paterson*, 598 F. Supp. 2d 289, 356-57 (E.D.N.Y. 2009) (citing Governor's role in the provision of mental health housing). The Governor directs, supervises, and controls DOCCS, OMH, and their commissioners, including by providing necessary interagency coordination. Compl. ¶¶ 146-47, 181. *See Connor B. ex rel. Vigurs v. Patrick*, 771 F. Supp. 2d 142, 159 (D. Mass. 2011) (citing Governor's supervisory authority). The Governor also seeks and expends funds to implement mental health programs, the inadequacy of which leads to Plaintiffs' institutionalization. Compl. ¶¶ 146, 293-95, 354, 365. *See Bd. of Pub. Educ. for City of Savannah v. Georgia*, No. CV 490-101, 1990 WL 608208, at *4 (S.D. Ga. Sept. 24, 1990) (citing Governor's role in allocating resources). Plaintiffs are prepared to further demonstrate the Governor's role in the alleged violations with matters of public record, of which the Court may take judicial notice, *cf. Town and Country Adult Living, Inc. v. Village/Town of Mount Kisco*, No. 17-CV-8586, 2019 WL 1368560, at *8 (S.D.N.Y. Mar. 26, 2019), including the Governor's executive budgets, plans and initiatives regarding mental health housing and re-entry from prison.

Defendants provide no legal support for their position that the claims against Deputy Commissioner McGrath should be dismissed. The sole case they cite, *Williams v. Annucci*, 895 F.3d 180, 187 (2d Cir. 2018), simply held that the retirement of the commissioner of DOCCS did not moot the plaintiff's claims because his successor could be "automatically substituted" as a defendant. Courts have allowed claims against multiple DOCCS officials to proceed without finding them duplicative. *See, e.g.*, *Clarkson v. Coughlin*, 783 F. Supp. 789, 792, 796 (S.D.N.Y. 1992) (joining Deputy Commissioner as defendant). The complaint establishes that Deputy Commissioner McGrath has "some connection" with the confinement of Plaintiffs in prison past their release dates, and thus, under *Ex Parte Young*, claims against her are properly maintained. Compl. ¶¶ 131, 305, 313, 315, 317.

## C. The General Class and RTF Subclass Representatives' Claims Are Not Moot.

Arguing that four Plaintiffs' claims are moot, Defendants seek to render the merits of this case unreviewable. Defendants incarcerated M.J., J.R., D.R., and C.J. for 246, 284, 411, and 502 days past their maximum expiration dates, respectively. Defendants then released them less than one month (C.J., D.R., and M.J.) and two months (J.R.) after Plaintiffs filed this putative class action, and only after Plaintiffs' counsel made their identities known to Defendants. The "transitional residences" Plaintiffs were released to are temporary housing in state institutions.

Plaintiffs' claims fall within three exceptions to mootness. First, the claims in this class action case meet the inherently transitory requirements. It is uncertain that the claims of "any individual who could be named as a plaintiff" would remain live "long enough for [the Court] to certify the class." *Salazar v. King*, 822 F.3d 61, 73 (2d Cir. 2016) (quoting *Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010)). The length of Plaintiffs' prolonged incarceration is unpredictable, and Defendants control the conditions of their confinement and the location and timing of their release. Further, there will be a "constant class" and subclass "suffering the deprivation[s]." *Id.* at 74. Plaintiffs' standing should therefore "relate back" to the filing of the complaint. *Id.* at 73. *See*

*Olson*, 594 F.3d 577 (applying exception to class claims challenging jail conditions). Second, Defendants' voluntary cessation of the challenged conduct does not moot Plaintiffs' claims. Defendants fail even to address their "formidable burden" to show that "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016) (citation omitted). Finally, the "picking off" exception applies to Defendants' conduct given the "timing and method" of Plaintiffs' release. *See Unan v. Lyon*, 853 F.3d 279, 286 (6th Cir. 2017). Defendants were "aware of the possibility of a legal action before filing" and "the timing is suspect." *See Steigerwald v. Comm'r of Soc. Sec.*, No. 17-CV-1516, 2018 WL 454400, at *7 (N.D. Ohio Jan. 17, 2018). Plaintiffs intend to request limited jurisdictional discovery of facts "peculiarly within [Defendants'] knowledge" relating to these issues, *see Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004), including the current census of class and subclass members and discharge records.

**D. Plaintiffs' ADA and Rehabilitation Act Claims Should Proceed.**

Defendants' arguments regarding Plaintiffs' Title II and Rehabilitation Act claims are misplaced and imprecise. Defendants' position regarding sovereign immunity, for example, ignores Plaintiffs' claims against the official-capacity Defendants. Plaintiffs' Title II claims "against state officers in their official capacity for prospective injunctive relief to prevent a continuing violation of federal law" are not barred by sovereign immunity. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 287 (2d Cir. 2003). Neither are Plaintiffs' Title II claims against Defendants DOCCS and OMH barred. Defendants misrepresent the law on Title II by arguing that Plaintiffs must demonstrate conduct that violates the Fourteenth Amendment. In *United States v. Georgia*, 546 U.S. 151, 159 (2006), the Supreme Court held that a Title II claim may be premised on conduct that violates Title II but that "[does] not violate the Fourteenth Amendment." *See Bolmer v. Oliveira*, 594 F.3d 134, 147 (2d Cir. 2010). As the State itself has argued in other cases, *see* Brief of the States of Minnesota, Connecticut, Illinois, Missouri, New Mexico, New York, Washington and Wisconsin Amici Curiae in Support of Respondents at 4, 7, 11, *Tennessee v. Lane*, 541 U.S. 509 (2004), Title II validly abrogates sovereign immunity for Plaintiffs' claims against DOCCS and OMH.

Finally, Plaintiffs' Rehabilitation Act claims against the official-capacity Defendants should not be dismissed. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("Rehabilitation Act suits for prospective relief may . . . proceed against individual officers in their official capacity."). Defendant Cuomo's unique role renders him necessary for relief. Further, Plaintiffs have alleged the direct involvement of each Defendant that gives rise to the Rehabilitation Act claim. Finally, dismissing the official-capacity Defendants will not conserve judicial resources, as they will remain parties because of other claims pleaded against them. *Butterfield v. New York*, No. 96-CV-5144, 1998 WL 401533, at *16 (S.D.N.Y. July 15, 1998).

> Respectfully submitted,
> /s/
> Joshua Rosenthal

CC: Counsel of Record (Via ECF)