```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

M.G., P.C., C.J., M.J., J.R. and
D.R., individually and on behalf
of all similarly situated,

                Plaintiffs,

        -against-                          19 Civ. 639

ANDREW CUOMO, in his official
capacity as the Governor of the
State of New York, et al.,

                Defendants.

------------------------------------x

                                    United States Courthouse
                                    White Plains, New York

                                    August 20, 2019


                        HONORABLE LISA MARGARET SMITH,
                               United States Magistrate Judge



DISABILITY RIGHTS NEW YORK
        Attorneys for Plaintiffs
        25 Chapel Street
        Brooklyn, New York 11201
BY:  JOSHUA M. ROSENTHAL



NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL
        Attorneys for Defendants
        28 Liberty Street
        New York, New York 10005
BY:  JANE R. GOLDBERG




             Angela O'Donnell, RPR, 914-390-4025
```

1           THE CLERK:  In the matter of M.G., et al. versus
2    Cuomo et al.
3           Counsel, please note your appearance for the record.
4           MR. ROSENTHAL:  This is Joshua Rosenthal from
5    Disability Rights New York for the plaintiffs.
6           MS. GOLDBERG:  Jane Goldberg for defendants.
7           THE COURT:  Good afternoon, counsel.  We have a
8    couple of things to address.  I've received a couple of
9    letters.  Let me start with what I think is the easier one
10   first from Emily Vance for plaintiffs, the letter seeking to
11   redact in one small way the transcript from August 9.  We are
12   in the courtroom and on the record, so I'm going to be careful
13   about what I say.  My understanding is we're talking about page
14   28, essentially line 4.
15          It's a little amusing because when I read it I
16   thought that name was simply a reference to a general common
17   name just as line two reflected that, so I don't think we're
18   revealing very much here.  Nevertheless, do defendants have any
19   objection to redacting the line 4 answer?
20          MS. GOLDBERG:  Oh no, your Honor.
21          THE COURT:  So I will advise the court reporter and
22   we'll take appropriate steps there.  The letter, of course, is
23   not on ECF for obvious reasons.  So I don't think I need to
24   issue an order to that effect unless the court reporter needs
25   it.

                    Angela O'Donnell, RPR, 914-390-4025

1          Now, with regard to Ms. Goldberg's letter also of
2 August 19th, it has to do with the sufficiency or excessiveness
3 of the plaintiffs' initial disclosures.  If I understand your
4 letter correctly, you've suggested that plaintiffs have already
5 said they're going to supplement the subject matter
6 descriptions for those persons who are identified in those
7 disclosures.  I'm not sure what else you think ought to happen
8 here.
9          Ms. Goldberg.
10         MS. GOLDBERG:  Yes, thank you, your Honor.  Well, I
11 think just not me personally but the office thinks that the
12 number of individuals named and the number of categories named
13 without identifying individuals saying that we can go and find
14 them is unreasonable and really not, you know, intended to
15 promote what should be an easy, you know, more easy path in
16 terms of discovery.  And we had asked them to now remember the
17 names, and given your Honor's rules and so forth, we wrote to
18 express our concern that they were not going to do so in terms
19 of the number of individuals and with the suggestion that there
20 might be more individuals in the future.
21         I mean, we just sent you by email a copy of the
22 initial disclosures and everybody from the governor to
23 community providers is on that list, and it just gives us no
24 guidance as to how to proceed with our discovery or defending
25 ourselves.  We just think it's excessive under the

1   circumstances given the nature of this case.  And we were
2   hoping that perhaps the Court could, if the Court felt so
3   inclined, to assist us in resolving this.  You know, otherwise
4   we feel very -- we feel somewhat disadvantaged, let's put it
5   that way.
6            THE COURT:  Mr. Rosenthal.
7            MR. ROSENTHAL:  Thank you, your Honor.  We -- with
8   respect to the number of individuals that plaintiffs listed,
9   these individuals are, as it was our burden to provide, people
10  with likely discoverable or likely to have discoverable
11  information that plaintiffs may use to support their claims and
12  defenses.
13           Now, this is a very large class action with
14  plaintiffs spread across facilities across the state and
15  involving two large state agencies who, as Ms. Goldberg alluded
16  to, must then coordinate with local providers.  We think that
17  the number of people that plaintiffs provided are reflective of
18  the issue not only that plaintiffs have raised in this case but
19  now defendants have raised in their motion to dismiss.
20           With respect to the categories, plaintiffs undertook
21  a diligent review of all records and all public information
22  that we had at that time to provide as much information, not
23  only of names and addresses but titles and affiliations, that
24  we could.  Plaintiffs offered to defendants that, of course, we
25  will abide by our obligation to supplement those initial

1  disclosures, which may also, as we receive more discovery, mean
2  narrowing as well, but the vast majority of information,
3  including document discovery that would allow us to do that, is
4  still in defendants' hands.
5       As the Court noted we are -- have offered and will
6  supplement the subject matter descriptions of those by
7  September 6th in an effort to further guide defendants.
8       THE COURT:  Well, Ms. Goldberg, I have carefully
9  reviewed the copy of initial disclosures that you've provided
10 to me for my consideration, and first of all, to the degree
11 that there are items which do not expressly identify people by
12 name and contact information, it seems abundantly clear to me
13 that the defendants are the ones who are in possession of
14 information which would allow that kind of identification, and
15 the likelihood is if plaintiffs were ordered to identify
16 specific people -- just as an example, I turned to request
17 number 45:  All DOCCS inmate records coordinators in a state
18 correctional facility in which a named plaintiff, a current or
19 former member of the general class, or a current or former
20 member of the RTF sub-class is currently or previously has been
21 incarcerated.
22      It seems abundantly clear to me that plaintiffs are
23 not likely to be able to get information of who those specific
24 people are and defendants are in a position to be able to
25 identify who those people are.

1          So I'm truly not troubled by those categories.  I do
2    believe there would be substantial assistance from a further
3    definition of the subject matter which each category would be
4    able to produce.  I think, I think but for particularly
5    category five that really is overbroad, because there are other
6    categories not included in this class who would fall into that
7    definition, and what immediately comes to mind is someone who
8    is categorized as a sex offender but who has nowhere to go
9    which would be a permissible place to reside and who is
10   therefore held in custody beyond their maximum release date.  I
11   know that happens because it happens in my cases and yet those
12   people would not be -- they might be within your class but as a
13   category they wouldn't necessarily be in the class, they would
14   have to have some other concern, some other qualification.
15         So I do think that to some degree, Ms. Goldberg, a
16   few of the categories, not many, but a few would have to be
17   taken with a bit of a grain of salt in terms of your engaging
18   in any investigation.
19         I'm going to, to the degree that this is an
20   application for me to somehow order plaintiffs to limit their
21   initial disclosures, I'm going to deny it but without
22   prejudice, and I want to see what you are able to ascertain
23   after receiving plaintiffs' further definition or description
24   of the subject matter for each of these categories.  All right?
25         MS. GOLDBERG:  Thank you, your Honor.  Yes.

Angela O'Donnell, RPR, 914-390-4025

1    Understood.

2            THE COURT:  All right.

3            MR. ROSENTHAL:  Your Honor, from plaintiffs' side,
4    thank you, and we will certainly revisit that category that you
5    flagged regarding the fact that it would include people with
6    SORA residency restrictions.

7            THE COURT:  I'm absolutely certain and I have to tell
8    you that has happened in cases before me more than once and yet
9    I've never, as far as I know, had a case that falls into your
10   class.  So I would be concerned that the majority of inmates
11   from category five would not fall into your class.

12           Okay, so we also need to set some dates for the
13   opposition to the motion to dismiss.  I had obtained Judge
14   Seibel's permission to give you new dates and that was
15   dependent on some additional production by defendants.

16           Ms. Goldberg, where do we stand on the production of
17   additional discovery?

18           MS. GOLDBERG:  May I -- this is Jane Goldberg, your
19   Honor.  May I respond to that?

20           THE COURT:  Yes.

21           MS. GOLDBERG:  We made -- thank you.  We made an
22   additional production last week, both from DOCCS and OMH.  Part
23   of that production was a redacted census of people who have had
24   been in the RTFs and I would expect an update of that.

25           As to Sullivan interrogatory number four and Annucci

1   interrogatories number three and four, let me just say at the
2   outset, as you know, we had -- we originally said there is no,
3   quote, data for what was being asked, and that is true.
4          What OMH has done is a search and has come up with a
5   number of people who -- for whom it probably prepared a SPOA
6   application on or after January 1, 2016, and who remain in
7   custody.  That group of people, those individuals, those names
8   have to be cross-checked by DOCCS for a couple of purposes,
9   notably to address Annucci interrogatories three and four as to
10  those who may be kept because they have -- would have open
11  parole dates or conditional release dates and have not been
12  released, assuming there are any.
13         Now I have been told with respect to that that it has
14  to be manually done, it is extremely burdensome and will take
15  at least two weeks, that they have to have people doing these
16  searches who are not clerks, they have to be people who can
17  analyze data and it has to be done manually file by file.  So I
18  would not expect to have that information even to be able to
19  download it for at least two weeks, and that is limited to
20  people with serious mental illness who are nonSORA people, in
21  other words, who don't have the sex offender housing issue.
22         As far as the OMH interrogatory addressed to
23  Commissioner Sullivan, I could probably -- we may be able to
24  prepare a preliminary response, but I have to find out if there
25  is more work that can be done to further establish the number

1   for whom this application was actually prepared, and that,
2   again, if they can do it, will be very burdensome.  It would
3   mean going into each -- whatever facilities all these people
4   are, and there are just under 200 names in that group, and then
5   an OMH person would have to go into their record to see if
6   their application was actually prepared as opposed to
7   presumably prepared.  So that is where we are with the
8   interrogatories.
9              As far as the emails, OMH conducted what was a third
10  search in 2019 and has 3,367 items, many of which have
11  attachments.  OMH is reviewing these emails prior to producing
12  them to the Office of the Attorney General, so I may have those
13  till next week; however, DOCCS has produced to us, 3,673 items
14  and they are done -- well, they also have attachments, so we're
15  going to be starting work on those tomorrow.  I'm not sure how
16  long it will take.  I'll be working with two part-time legal
17  assistants, and my co-counsel is still away.  So there will be
18  three of us working on this at least part-time to get this
19  moving and to the plaintiffs as soon as possible.
20             Paper documents, OMH has told me that any paper
21  documents would be in the plaintiffs' clinical files which they
22  have, they will be updated as, you know, if there are any to
23  update, they will be updated, of course.  I will know better
24  about whether DOCCS has any paper documents after a conference
25  call with somebody at DOCCS whose name escapes me, on Friday,

1   who has been away on vacation, but I do have the emails in
2   hand.  It's just going to take a few weeks for all of this to
3   kind of sort itself and get to plaintiffs.  It's nothing that
4   can be done quickly, either by DOCCS or by OMH, or by us for
5   that matter.  So that's kind of where we stand on all of that.
6              THE COURT:  Well, it sounds --
7              MR. ROSENTHAL:  Your Honor, if I may.
8              THE COURT:  Yes, go ahead.
9              MR. ROSENTHAL:  I wanted to say as an initial matter,
10  as Ms. Goldberg noted, defendants did produce a redacted census
11  in response to request number eight.  We are reviewing that
12  now, but we do anticipate that if there are any issues we can
13  raise those with defendants directly and would not require
14  Court intervention.
15             With respect to the Annucci interrogatories, I don't
16  know if defendants had a specific update.  I heard Ms. Goldberg
17  provide some information around the Sullivan interrogatory with
18  respect to people who have a SPOA application that has been
19  filed but remain in custody.
20             MS. GOLDBERG:  May I respond, your Honor?
21             THE COURT:  Yes.
22             MS. GOLDBERG:  Okay, yes, because I thought I had
23  made it clear that DOCCS will have to do -- taking the
24  information from OMH, DOCCS will have to do -- not only will we
25  go through the files of these inmates and analyze the data in

1   order to respond to Annucci interrogatories three and four, and
2   I was told that would take at least two weeks, they'll be
3   cross-checking with OMH, they have to do manual extractions.  I
4   don't know what any of these means.  This is what I was told.
5   And they need people who are qualified to do the analysis.  So
6   it's not like they can assign people at a clerical level to do
7   it.  They have to be more highly placed, and they have other
8   work they have to get done.
9           So I was told at least two weeks.  I was told this
10  by, you know, my counsel, (indiscernible) at DOCCS, but I think
11  they will be able to -- you know, and I was told to say it is
12  unduly burdensome to them to have to do this, but they are
13  undertaking it.  It's not like they have the data in hand.  It
14  all has to be created, should satisfy -- and hopefully will
15  satisfy Annucci interrogatories three and four.
16          THE COURT:  It seems to me that we really can't set
17  dates until we know more about this, what is going to be
18  upcoming production and the review that Ms. Goldberg is
19  currently about to undertake for what has already been provided
20  to her.  My suggestion, since two weeks won't be two weeks,
21  especially with the intervening holiday, is that we speak again
22  in three weeks so that I -- with luck I'll be able to give you
23  a date for the motion opposition then.  I can put you on for a
24  phone conference at the end of the day on -- same time as
25  today, if that's convenient, on Tuesday, September 10th or

1    Thursday September 12th.
2                MS. GOLDBERG:  Jane Goldberg for the defendants.
3    Either is fine with me, your Honor.
4                MR. ROSENTHAL:  That works for plaintiffs as well,
5    your Honor.
6                If I can raise just one last issue regarding the
7    priority discovery.
8                THE COURT:  Let me set this time first so that
9    everyone has it on record.
10               Let's do a conference call same as we did today on
11   Tuesday, September 10th at three o'clock.  All right.
12               Yes, go ahead Mr. Rosenthal.
13               MR. ROSENTHAL:  Thank you, your Honor.
14               Defendants have been producing documents responsive
15   to requests seven and twelve, these are the DOCCS and OMH
16   records for the six named plaintiffs.  These documents have
17   been part, defendants have said, of a rolling production.  We
18   would similarly, as with the other request, ask defendants to
19   commit to a date certain by which the documents, the remaining
20   responsive documents can be produced that we can discuss a
21   realistic timeframe for briefing.
22               MS. GOLDBERG:  Well, as I explained in my email, your
23   Honor, we had some email correspondence about this, because the
24   plaintiffs continue to be under supervision, and one case
25   continue to be incarcerated -- well, actually, more than one

1    case incarcerated, I think there are going to be ongoing
2    documents.  I can't say -- I mean, you have the bulk of the
3    documents, but if there are additional documents because of the
4    fact that your clients are still under supervision of one kind
5    or another, I don't see how I can commit to a date certain by
6    which they'll all be produced because it's an ongoing thing.  I
7    mean, I don't think that's -- it's something that is realistic.
8            THE COURT:  You would be providing rolling discovery.
9            MS. GOLDBERG:  About the named plaintiffs, probably,
10   because I'm assuming and hoping that we would get updates about
11   their progress or what their situation is and that plaintiffs
12   would want to know that.  Otherwise you could say it's done.
13   We just got more stuff in last week I think and it's just been
14   uploaded.  And I can't tell you what it is because I don't
15   recall off the top of my head.  We did produce other documents
16   last week about one of the main plaintiffs.  So, you know, as
17   these suits come in, I want to be able to know I can produce
18   them without feeling like I'm violating a particular date by
19   which all of this has to be done, because I don't think it is
20   going to be done because of the situation.
21           MR. ROSENTHAL:  Your Honor, if I may?
22           THE COURT:  Yes.  Yes.
23           MR. ROSENTHAL:  We of course plaintiffs understand
24   that for some of the named plaintiffs there will be additional
25   documents created.  We would be willing -- our priority here is

1   to have a date certain by which we will get the discovery
2   necessary for our briefing so we can discuss realistic
3   timeframes.  We'd be willing to just receive a date certain for
4   all documents generated on or before defendants filed their
5   motion to dismiss on January 26, which would allow us at least
6   then to know the universe of documents that have been produced
7   to us.
8          THE COURT:  Ms. Goldberg.
9          MS. GOLDBERG:  I'm not sure I -- I don't know if I
10  was following that, you want to know that you have all
11  documents that were generated before our motion was filed?
12         THE COURT:  For the named plaintiffs.
13         MR. ROSENTHAL:  Yes.
14         MS. GOLDBERG:  Yes, the named plaintiffs.  All right,
15  well let me -- I think two productions that we did, the first
16  production probably gave you everything that we had in hand
17  which we got after our motion was filed but would have
18  reflected what was available before.  But if we could have a
19  phone call about that and not spend the Court's time on that, I
20  think you and I can work that out.  If that's agreeable with --
21         MR. ROSENTHAL:  Okay.
22         THE COURT:  All right, try to work that out.  I'm not
23  setting dates today.  If counsel want to recommend particular
24  dates for the opposition and reply on the motion, you can send
25  me a letter to that effect, otherwise we'll address it when we

```
 1  speak again in September.  All right?
 2          Anything else that we need to talk about today,
 3  Mr. Rosenthal?
 4          MR. ROSENTHAL:  No.  Thank you.
 5          THE COURT:  All right.
 6          Ms. Goldberg.
 7          MS. GOLDBERG:  Oh, not today, your Honor.  Thank you.
 8          THE COURT:  Very good.  Thank you very much everyone.
 9          (Proceedings concluded)
10  Certified to be a true and accurate
11  transcript of the digital electronic
12  recording to the best of my ability.
13  _____
14  U.S. District Court
15  Official Court Reporter
16
17
18
19
20
21
22
23
24
25
```

Angela O'Donnell, RPR, 914-390-4025