UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
M.G., P.C., C.J., M.J., J.R., and D.R., individually    :
and on behalf of all similarly situated,    :
    :
                                        Plaintiffs,:
    :
            -against-    :
    :        7:19-cv-00639 (CS) (LMS)
ANDREW CUOMO, in his official capacity as the    :
Governor of the State of New York, the NEW    :
YORK STATE OFFICE OF MENTAL HEALTH,    :
ANN MARIE T. SULLIVAN, in her official    :
capacity as the Commissioner of the New York    :
State Office of Mental Health, the NEW YORK    :
STATE DEPARTMENT OF CORRECTIONS    :
AND COMMUNITY SUPERVISION, ANTHONY:
J. ANNUCCI, in his official capacity as the Acting    :
Commissioner of the New York State Department    :
of Corrections and Community Supervision, ANNE :
MARIE MCGRATH, in her official capacity as    :
Deputy Commissioner of the New York State    :
Department of Corrections and Community    :
Supervision,    :
    :
                                        Defendants.:
--------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT

                                LETITIA JAMES
                                Attorney General of the State of New York
                                *Attorney for Defendants*
                                28 Liberty Street
                                New York, NY 10005
                                Tel.: (212) 416-6133/6185

JANE R. GOLDBERG
JEB HARBEN
Assistant Attorneys General
    of Counsel

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 2

A.    Statutory and Regulatory Framework ................................................................... 2
B.    The Claims for Relief ............................................................................................ 4

STANDARD OF REVIEW ................................................................................................ 6

ARGUMENT ...................................................................................................................... 7

I.    GOVERNOR CUOMO IS NOT A PROPER PARTY BECAUSE HE HAD NO
      DIRECT INVOLVEMENT WITH ANY ALLEGED VIOLATION OF LAW .......... 7

II.   ALL CLAIMS BY PLAINTIFFS C.J., M.J., J.R., D.R. AND M.G. ARE MOOT
      BECAUSE THEY HAVE BEEN PLACED IN RESIDENCES IN THE
      COMMUNITY ......................................................................................................... 9

III.  PLAINTIFFS' CLAIMS MUST BE DISMISSED FOR FAILURE TO
      EXHAUST ADMINISTRATIVE REMEDIES AS REQUIRED BY
      THE PLRA ............................................................................................................. 12

IV.   SOVEREIGN IMMUNITY BARS THE ADA TITLE II CLAIM
      AGAINST OMH AND DOCCS BROUGHT BY PLAINTIFF, P.C.,
      A PUTATIVE GENERAL CLASS REPRESENTATIVE ......................................... 17

V.    THE OFFICIAL CAPACITY CLAIMS UNDER THE ADA AND
      REHABILITATION ACT SHOULD BE DISMISSED BECAUSE
      THEY ARE REDUNDANT .................................................................................... 20

VI.   PLAINTIFFS' EIGHTH AMENDMENT CLAIMS FAIL BECAUSE
      DEFENDANTS' CONDUCT IN ASSISTING TO LOCATE HOUSING
      WAS PENOLOGICALLY JUSTIFIED .................................................................. 21

VII.  PLAINTIFFS' FOURTEENTH AMENDMENT CLAIMS FAIL BECAUSE
      PLAINTIFFS CANNOT ALLEGE A SUBSTANTIVE DUE PROCESS
      VIOLATION ........................................................................................................... 23

CONCLUSION ................................................................................................................. 24

# TABLE OF AUTHORITIES

**CASES**                                                                    **Page(s)**

*Al-Haj v. OMH State of N.Y.*,
    18-CV-05505, 2019 WL 2076798 (S.D.N.Y. Feb. 6, 2019)................................17

*Amador v. Andrews*,
    655 F.3d 89 (2d Cir. 2011) ..............................................................14

*APWU v. Potter*,
    343 F.3d 619 (2d Cir. 2003) ...............................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................6

*Baker v. N.Y. State Dep't of Corr. and Comm. Superv.*,
    No. 17 Civ. 1270, 2018 WL 357297 (N.D.N.Y. Jan. 10, 2018) .........................2

*Barna v. Travis*,
    239 F.3d 169 (2d Cir. 2001) ..............................................................19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................6

*Bennett v. Wesley*,
    No. 11 Civ 8715, 2013 WL 1798001 (S.D.N.Y. Apr. 29, 2013) ........................15

*Bolmer v. Oliveira*,
    594 F.3d 134 (2d Cir. 2010) ..............................................................18

*Booth v. Churner*,
    532 U.S. 731 (2001)........................................................................12

*Brass v. Am. Film Techs., Inc.*,
    987 F.2d 142 (2d Cir.1993) ................................................................3

*Candelaria v. Cunningham*,
    No. 98 Civ. 6273, 2000 WL 798636 (S.D.N.Y. June 20, 2000).........................20

*Citizens Union of the City of New York v. Attorney General*,
    16 Civ. 9592, 2017 WL 2984167 (S.D.N.Y. June 23, 2017)............................7

*Colon v. N.Y. State Dep't of Corr. & Cmty. Supervision*,
    No. 15 Civ. 7432, 2017 WL 4157372 (S.D.N.Y. Sept. 15, 2017) ......................18

*Comer v. Cisneros*,
    37 F.3d 775 (2d Cir. 1994) ...............................................................10

*County of Sacramento v. Lewis*,
    523 U.S. 833 (1998).......................................................................23

*Dava v. City of New York*,
   No. 15 Civ. 08575, 2016 WL 4532203 (S.D.N.Y. Aug. 29, 2016) .................................... 23

*Davis v. Jackson*,
   No. 15 Civ. 5359, 2016 WL 5720811 (S.D.N.Y. Sept. 30, 2016) ..................................... 3

*Davis v. New York*,
   311 F. App'x 397 (2d Cir. 2009) ......................................................................... 14

*Davis v. New York*,
   316 F.3d 93 (2d Cir. 2002) ............................................................................... 18

*Davis v. Rosa*,
   No. 16 Civ. 2406, 2016 WL 8453922 (S.D. Cal. Dec. 6, 2016) ....................................... 22

*Davis v. Shaw*,
   No. 08 Civ. 362, 2009 WL 1490609 (S.D.N.Y. May 20, 2009) ....................................... 17

*Dean v. Univ. of Buffalo Sch. of Medicine and Biomedical Sciences*,
   804 F.3d 178 (2d Cir. 2015) .............................................................................. 18

*Dimps v. N.Y. State Office of Mental Health*,
   777 F. Supp. 2d 659 (S.D.N.Y. 2011) ................................................................... 17

*Disability Rights New York v. New York State*,
   17-CV-6965, 2019 WL 2497907 (E.D.N.Y. June 14, 2019) ........................................ 7, 20

*Disabled in Action v. Bd. of Elections in the City of N.Y.*,
   752 F.3d 189 (2d Cir. 2014) .............................................................................. 19

*Doe v. Simon*,
   221 F.3d 137 (2d Cir. 2000) .............................................................................. 19

*Dunbar v. Onondaga Cnty.*,
   No. 8:19-CV-524, 2019 WL 2289583 (N.D.N.Y. May 7, 2019) ..................................... 20

*Espinal v. Goord*,
   558 F.3d 119 (2d Cir. 2009) .............................................................................. 12

*Ex Parte Young*,
   209 U.S. 123 (1908) ....................................................................................... 7

*Fox v. State Univ. of N.Y.*,
   497 F. Supp. 2d 446 (E.D.N.Y. 2007) ................................................................... 20

*Frantti v. New York*,
   No. 16 CV 810, 2017 WL 922062 (W.D.N.Y. May 8, 2017) ......................................... 20

*Franza v. Stanford*,
   No. 16 Civ. 7635 2018 WL 914782 (S.D.N.Y. Feb. 14, 2018) ........................................ 2

*Freeman v. Kirisits*,
    16-CV-06668, 2017 WL 475679 (W.D.N.Y. Feb. 6, 2017) ........................................................8, 20

*Fuentes v. Furco*,
    No. 13 Civ. 6846, 2014 WL 6766271 (S.D.N.Y. Nov. 14, 2014) .......................................15

*Gardner v. Daddezio*,
    No. 07 Civ. 7201, 2008 WL 4826025 (S.D.N.Y. Nov. 5, 2008) .........................................15

*Genesis Healthcare Corp. v. Symczyk*,
    569 U.S. 66 (2013) ........................................................................................................10

*Gonzalez v. Annucci*,
    32 N.Y.3d 461 (2018) ....................................................................................................22

*Hafer v. Melo*,
    502 U.S. 21 (1991) ........................................................................................................20

*Hallett v. N.Y. State Dep't of Corr. Servs.*,
    109 F. Supp. 2d 190 (S.D.N.Y. 2000) ........................................................................8, 21

*Harlen Assocs. v. Inc. Village of Mineola*,
    273 F.3d 494 (2d Cir. 2001) ..........................................................................................23

*Henrietta D. v. Bloomberg*,
    331 F.3d 261 (2d Cir. 2003) ..........................................................................................20

*Holmes v. Pension Plan of Bethlehem Steel Corp.*,
    213 F.3d 124 (3d Cir. 2000) ..........................................................................................11

*Hubbs v. Suffolk Cnty. Sheriff's Dep't*,
    788 F.3d 54 (2d Cir. 2015) ............................................................................................13

*Jackson v. Hyman*,
    No. 07 Civ. 4121, 2007 WL 2688933 (D.N.J. Sept, 12, 2007) ..........................................21

*Jaros v. Ill. Dept. of Corr.*,
    684 F.3d 667 (7th Cir. 2012) ........................................................................................19

*Jobie O. v. Spitzer*,
    No. 03 Civ. 8331, 2007 WL 4302921 (S.D.N.Y. Dec. 5, 2007) ..................................10-11

*Kaluczky v. City of White Plains*,
    57 F.3d 202 (2d Cir. 1995) ............................................................................................23

*Kearney v. Adams*,
    No. 9:15-CVC-824, 2018 WL 3121618 (W.D.N.Y. Feb. 8, 2018) .......................................18

*Kentucky v. Graham*,
    473 U.S. 159 (1985) ......................................................................................................20

iv

*Khudan v. Lee,*
    No. 12 Civ. 8147, 2016 WL 4735364 (S.D.N.Y. Sept. 8, 2016) ........................................ 13

*Lanahan v. Eastern Corr. Inst.,*
    No. 09 Civ. 3208, 2011 WL 1980546 (D. Md. May 20, 2011) ......................................... 22

*Lewis v. Continental Bank Corp.,*
    494 U.S. 472 (1990) ........................................................................................................... 9

*Lorick v. Cuomo,*
    9:16-CV-1002, 2018 WL 1517185 (N.D.N.Y. Mar. 27, 2018) ......................................... 7

*Lusardi v. Xerox Corp.,*
    975 F.2d 964 (2d Cir. 1992) ............................................................................................ 11

*Marshall v. N.Y. State Public High Sch. Athletic Ass'n,*
    374 F. Supp. 3d 276 (W.D.N.Y. 2019) ........................................................................... 18

*Mary Jo C. v. N.Y. State and Local Retirement Sys.,*
    707 F.3d 144 (2d Cir. 2013) ........................................................................................... 19

*Mateo v. O'Connor,*
    No. 10 Civ. 8426, 2012 WL 45740 (S.D.N.Y. Mar. 29, 2012) ...................................... 15

*McElwee v. County of Orange,*
    700 F.3d 635 (2d Cir. 2012) ........................................................................................... 19

*Mhany Mgmt., Inc. v. County of Nassau,*
    819 F.3d 581 (2nd Cir. 2016) ......................................................................................... 10

*Mojias v. Johnson,*
    351 F.3d 606 (2d Cir. 2003) ........................................................................................... 13

*Morrison v. Nat'l Australia Bank Ltd.,*
    547 F.3d 167 (2d Cir. 2008), aff'd, 561 U.S. 247 (2010) ................................................ 6

*Natarelli v. VESID Office,*
    420 F. App'x 53 (2d Cir. 2011) .................................................................................. 17-18

*Neal v. Goord,*
    267 F.3d 116 (2d Cir. 2001), *overruled on other grounds, Porter v. Nussle,* 534 U.S.
    516 (2002).......................................................................................................................... 14

*Nielsen v. Rabin,*
    746 F.3d 58 (2d Cir. 2014) ................................................................................................ 7

*Pagan v. Westchester Cnty.,*
    No. 12 Civ. 7669, 2014 WL 982876 (S.D.N.Y. Mar. 12, 2014), *on reconsideration,*
    2015 WL 337403 (S.D.N.Y. Jan. 26, 2015) .................................................................... 16

*Panzer-Senzer v. N.Y. State Office for People with Developmental Disabilities,*
    17-cv-1086, 2017 WL 5129023 (S.D.N.Y. Nov. 3, 2017)................................................ 18

*Papasan v. Allain,*
    478 U.S. 265 (1986)...........................................................................................................17

*Pennhurst State Sch. & Hosp. v. Halderman,*
    465 U.S. 89 (1984)............................................................................................................17

*Peoples v. Fischer,*
    No. 11 Civ. 2694, 2012 WL 1575302 (S.D.N.Y. May 3, 2012)......................................15

*Phelan v. Zenzen,*
    No. 10 Civ. 6704, 2012 WL 5420423 (W.D.N.Y. Nov. 6, 2012).......................................3

*Porter v. Nussle,*
    534 U.S. 516 (2002)....................................................................................................12, 14

*Posr v. Court Officer Shield No. 207,*
    180 F.3d 409 (2d Cir. 1999) ...........................................................................................17

*Ruggiero v. County of Orange,*
    467 F.3d 170 (2d Cir. 2006) .................................................................................12, 13, 15

*Ross v. Blake,*
    136 S. Ct. 1850 (2016).....................................................................................................16

*Sabin v. Nelson,*
    No. 12 Civ. 1373, 2014 WL 2945770 (N.D.N.Y. June 30, 2014) .....................................7

*Salahuddin v. Goord,*
    467 F.3d 263 (2d Cir. 2006) ...........................................................................................10

*Saunders v. Goord,*
    No. 98 Civ. 8501, 20002..................................................................................................14

*Shannon v. Venettozzi,*
    749 F. App'x 10 (2d Cir. 2018) ......................................................................................10

*Simon v. Campos,*
    No. 09 Civ. 6231, 2010 WL 1946871 (S.D.N.Y. May 10, 2010).....................................13

*Smith v. City of New York,*
    No. 12 Civ. 3303, 2013 WL 5434144 (S.D.N.Y. Sept. 26, 2013).....................................16

*Soc'y for Good Will to Retarded Children, Inc. v. Cuomo,*
    737 F.2d 1239 (2d Cir. 1984) .........................................................................................19

*Sosna v. Iowa,*
    419 U.S. 393 (1975).........................................................................................................10

*Spavone v. New York State Dep't of Corr. Servs.,*
    719 F.3d 127 (2d Cir. 2013) .............................................................................................3

*Spiteri v. Russo,*
  No. 12-CV-2780, 2013 WL 4806960 (E.D.N.Y. Sept. 7, 2013), aff'd sub nom, *Spiteri v. Camacho*, 622 F. App'x 9 (2d Cir. 2015) ........................................................................7

*Sulton v. Greiner,*
  No. 00 Civ. 727, 2000 WL 1809284 (S.D.N.Y. Dec. 11, 2000) ........................................14

*Terranova v. N.Y. State Dep't of Corr. and Cmty. Supervision,*
  1:16-CV-00537, 2019 WL 1316775 (W.D.N.Y. Mar. 22, 2019) ......................................18

*U.S. v. Georgia,*
  546 U.S. 151 (2006) ...........................................................................................................18

*United States v. Sanchez-Gomez,*
  138 S. Ct. 1532 (2018) .........................................................................................................9

*Vasquez v. Artuz,*
  No. 97 Civ. 8427, 1999 WL 440631 (S.D.N.Y. June 28, 1999) ........................................14

*Victory v. Pataki,*
  814 F.3d 47 (2d Cir. 2016) ................................................................................................19

*Wang v. Pataki,*
  164 F. Supp. 2d 406 (S.D.N.Y. 2001) ..................................................................................8

*Warden v. Pataki,*
  35 F. Supp. 2d 354 (S.D.N.Y. 1999), aff'd sub nom, *Chan v. Pataki*, 201 F.3d 430
  (2d Cir. 1999).......................................................................................................................7

*Washington v. NYS Parole,*
  No. 19 Civ. 0601, 2019 WL 1877343 (S.D.N.Y. Apr. 26, 2019) ......................................21

*William v. Pataki,*
  No. 03 CIV. 8331, 2005 WL 1949509 (S.D.N.Y. Aug. 12, 2005) .....................................12

*Williams v. Fisher,*
  No. 11 Civ. 379, 2015 WL 1137644 (N.D.N.Y. Mar. 11, 2015) ........................................3

*Woodford v. Ngo,*
  548 U.S. 81 (2006)..........................................................................................................13-14

## CONSTITUTIONS

Eighth Amendment .............................................................................................1, 2, 6, 21, 23

Eleventh Amendment .........................................................................................................17

Fourteenth Amendment...........................................................................1, 2, 6, 18-19, 23

United States Constitution
  Article III, § 2, cl. 1 .......................................................................................................9, 17

**FEDERAL STATUTES**

42 U.S.C. § 1983 ......................................................................................................12

42 U.S.C. § 1997(e) ...........................................................................................12, 15-16

ADA Title II ....................................................................................................*passim*

Prison Litigation Reform Act (PLRA) ....................................................................*passim*

Rehabilitation Act, 29 U.S.C.
§ 701 *et seq.* ......................................................................................1, 7, 8, 20, 22

Rehabilitation Act
§ 504, 29 U.S.C. § 794 ..............................................................................................6, 19

Sexual Assault Reform Act ..........................................................................................5

**RULES**

Federal Rules of Civil Procedure
Rule 12(b)(1) ......................................................................................................1, 6
Rule 12(b)(6) ......................................................................................................1, 6, 9

**STATE STATUTES**

N.Y. Correction Law
§ 2 ......................................................................................................................4
§ 2(6)....................................................................................................................21
§ 71-a ..................................................................................................................2
§ 73 ...............................................................................................................4, 11
§ 73(2)...................................................................................................................5
§ 201(5) ..........................................................................................................4, 22
§ 401 ....................................................................................................................2
§ 401.1 ................................................................................................................2
§ 404(4)................................................................................................................3

N.Y. Exec. Law
§ 259-i(2)(b).........................................................................................................3

N.Y. Penal Law
§ 70.40 .................................................................................................................4
§ 70.40(1)(a) ........................................................................................................4
§ 70.40(1)(b) ........................................................................................................4
§ 70.40(2)...............................................................................................................4
§ 70.45(1)........................................................................................................1, 5, 11

**STATE REGULATIONS**

7 N.Y.C.R.R.
§ 701.1 ...................................................................................................... 13
§ 701.2 ...................................................................................................... 13
§ 701.5 ...................................................................................................... 14
§ 701.5 (a)-(b) ......................................................................................... 14
§ 701.8(g) ................................................................................................. 14

14 N.Y.C.R.R. § 527.2(g) ........................................................................... 2

Defendants ANDREW CUOMO, in his official capacity as the Governor of the State of New York, the NEW YORK STATE OFFICE OF MENTAL HEALTH ("OMH"), ANN MARIE T. SULLIVAN, in her official capacity as the Commissioner of OMH, the NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION ("DOCCS"), ANTHONY J. ANNUCCI, in his official capacity as the Acting Commissioner of DOCCS, and ANNE MARIE McGRATH, in her official capacity as Deputy Commissioner of DOCCS, submit this memorandum of law in support of their motion to dismiss the First Amended Class Action Complaint ("FAC") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs are six individuals who allege that Defendants hold inmates with serious mental illness in prison beyond their release dates due to an inadequate supply of community-based housing and support services. FAC ¶ 1. They bring claims pursuant to the Americans with Disabilities Act, 42 U.S.C. § 1218 ("ADA"), the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* ("Rehab Act"), and the Eighth and Fourteenth Amendments of the United States Constitution on their own behalf and on behalf of a putative class and subclass of similarly situated individuals. The FAC should be dismissed.

All claims against Governor Cuomo should be dismissed because he has no direct involvement in securing housing or other community-based services for inmates with serious mental illness who are being released from prison, and is not a necessary party for relief. All claims by five of the six named Plaintiffs should be dismissed as moot because they have been released to community residences. Since they no longer have a personal stake in the outcome of this action, these five Plaintiffs also cannot be class representatives or assert class claims. Moreover, Plaintiffs have failed to exhaust their administrative remedies as required under the Prison Litigation Reform

Act ("PLRA"), and their claims should be dismissed for this reason as well. In addition, the claim of one named plaintiff, P.C., under Title II of the ADA is barred by sovereign immunity. The State's sovereign immunity is abrogated only with respect to claims that allege both a Title II violation <u>and</u> conduct that actually violated the Fourteenth Amendment. P.C. has no Fourteenth Amendment claim because there is no constitutional right to community placement. All claims against the individual defendants, who are sued in their official capacities, should be dismissed because those claims are also asserted against OMH and DOCCS and thus are redundant. Plaintiffs' Eighth Amendment claims, brought by Plaintiffs whose claims are now moot, fails in any event as the allegations are conclusory and insufficient to show either deliberate indifference or cruel and unusual punishment, particularly here where their placement in residential treatment facilities was penologically justified in order to protect their safety and continuity of care as well as the safety of the community. Plaintiffs' substantive due process claims under the Fourteenth Amendment should be dismissed as it is duplicative of their Eighth Amendment claims.

## STATEMENT OF FACTS

A. <u>Statutory and Regulatory Framework</u>

Pursuant to Section 401 of the New York Correction Law, OMH and DOCCS share responsibility for the appropriate care and treatment of inmates with mental illness who do not require hospitalization. N.Y. Corr. Law § 401.1 (McKinney 2014 & Supp. 2019); *see* also 14 NYCRR 527.2(g). Consistent with the goal of providing appropriate care and treatment, DOCCS is required to develop an individualized case management plan for each inmate that will promote his or her rehabilitation. N.Y. Corr. Law § 71-a. These plans may be developed in consultation with OMH or other state agencies. *Id. See Franza v. Stanford*, No. 16 Civ. 7635 2018 WL 914782, at *1 n.1 (S.D.N.Y. Feb. 14, 2018); *Baker v. N.Y. State Dep't of Corr. and Comm. Superv.*, No. 17

2

Civ. 1270, 2018 WL 357297, at *3 n.4 (N.D.N.Y. Jan. 10, 2018).

Inmates who have received mental health treatment within three years of their anticipated release receive mental health discharge planning, and, if needed, an appointment with a mental health professional in the community, and sufficient medication to bridge the period between discharge and the assumption of care by a mental health professional in the community. *Id.* § 404(4). OMH provides discharge planning in collaboration with DOCCS. Their respective roles are coordinated pursuant to a Memorandum of Understanding. *See Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 130 (2d Cir. 2013).

For individuals who have been paroled, conditionally released or released to post-release supervision from a DOCCS facility or an institution under the jurisdiction of the Department of Mental Hygiene (including OMH), DOCCS retains legal custody until the expiration of the maximum period of their sentence or period of post-release supervision. N.Y. Exec. Law § 259-i(2)(b). DOCCS has trained and assigned staff to work on discharge planning and collaborating with Community Supervision (parole officers). In addition, DOCCS's Bureau of Mental Health and Health Services have DOCCS staff assigned to work on coordinating services in the community for those being released to the community. *See* DOCCS Directive 9000 II(D) (http://www.doccs.ny.gov/Directives/9000.pdf).[1]

---

[1] In determining the sufficiency of a complaint, this Court may consider "the factual allegations in [the] ... complaint, ... documents attached to the complaint as an exhibit or incorporated in it by reference, ... *matters of which judicial notice may be taken*, [and] documents either in plaintiffs' possession or of which the plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993) (emphasis added). Judicial notice of DOCCS directives is proper here. For example, in *Davis v. Jackson*, No. 15 Civ. 5359, 2016 WL 5720811, at *1, n.3 (S.D.N.Y. Sept. 30, 2016), the Court took judicial notice of DOCCS Directive 4002, citing to it on the DOCCS website. *See also Williams v. Fisher*, No. 11 Civ. 379, 2015 WL 1137644, at * 4, n.7 (N.D.N.Y. Mar. 11, 2015) (judicial notice taken of DOCCS Directive 4202); *Phelan v. Zenzen*, No. 10 Civ. 6704, 2012 WL 5420423, at *4 (W.D.N.Y. Nov. 6, 2012) (judicial notice taken of DOCCS Directive 4421).

Inmates who are serving one or more sentences may, under statutorily specified circumstances, be released on parole or on conditional release. *See* N.Y. Penal Law § 70.40 (McKinney 2009 & Supp. 2019). Release on parole is at the discretion of the State Board of Parole (the "Board"), and the inmate paroled continues to serve his or her sentence while released on parole. *Id.* § 70.40(1)(a). In general, inmates may be granted conditional release when the total good behavior time allowed to them is equal to the unserved portion of the maximum or aggregate maximum term. *Id.* § 70.40(1)(b) & 70.40(2). Conditional release is subject to conditions of release and post-release supervision imposed by the Board. *Id.* § 70.40(1)(b). Inmates on conditional release remain under the supervision of DOCCS for the unserved portion of their prison term or period of post-release supervision. *Id.* § 70.40(1)(b).

Inmates serving certain determinate sentences also are subject to post-release supervision. *Id.* § 70.45(1). When a court imposes a determinate sentence, it must impose, in addition to the term of imprisonment, an additional period of post-release supervision. *Id.* Conditions of post-release supervision are imposed by the Board, and a violation of any condition subjects the inmate to a further period of imprisonment. *Id.* In addition to assistance with post-release mental health treatment, DOCCS assists inmates eligible for or on community supervision to secure housing. N.Y. Corr. Law § 201(5). In that regard, DOCCS may use any residential treatment facility ("RTF") as a residence for individuals on parole, conditional release, and post-release supervision. N.Y. Corr. Law §§ 2 & 73.

B. <u>The Claims for Relief</u>

Plaintiffs commenced this action on January 23, 2019, and filed the FAC on June 3, 2019 (ECF No. 47). Plaintiffs allege that they are individuals with serious mental illness who are indigent and have been held in state prison past their "lawful release dates." FAC ¶ 1. They purport

4

to represent a general class, defined as:

> all persons (1) housed or who will be housed in a state prison, (2) with serious
> mental illness, (3) whose open dates for parole release, approved conditional
> release dates, or maximum expiration dates have passed, (4) who are not subject
> to residency restrictions under the Sexual Assault Reform Act, and (5) who are
> appropriate for integrated, community-based housing programs.

FAC ¶ 386.

Plaintiffs also purport to represent a subclass, defined as:

> all persons (1) housed or who will be housed in a state prison pursuant to Penal Law
> § 70.45 or Correction Law § 73, (2) who have serious mental illness, (3) whose
> maximum expiration dates have passed, (4) who are not subject to residency
> restrictions under the Sexual Assault Reform Act, and (5) who are appropriate for
> integrated community-based housing programs.

*Id.* ¶ 387. Plaintiffs identify the subclass as the "RTF Subclass." *Id.*

Plaintiffs challenge Defendants' purported failure to "make available community-based
housing and supportive services that [they] require upon release." FAC ¶ 1. As a result, Plaintiffs
allege that they are held in state prison past their lawful release dates. *Id.* The four RTF Plaintiffs
further claim that the community housing to which they have been released is not "the community-
based housing that OMH identified as appropriate . . . ." FAC ¶¶ 88, 117, 142, 172, 331-36.

Plaintiffs further allege that Defendants could reasonably accommodate Plaintiffs' request
for services in an integrated community setting "without unreasonable costs" by developing
capacity in existing programs and services and redirecting available funds. *Id.* ¶¶ 344-50. As to the
putative RTF subclass, Plaintiffs allege that though classified as "releasees" on community
supervision, they are placed in state prisons and subject to punitive conditions as if they were
serving sentences. *Id.* ¶¶ 351-81. However, Plaintiffs admit that Defendants have made efforts to
secure mental health housing. *Id.* ¶ 29, 47-49, 64-65, 100-101, 129, 161-62.

Since the initial complaint was filed, five of the six named Plaintiffs, including the four

RTF Plaintiffs, have been released from prisons or RTFs and placed in community-based residences.

Plaintiffs seek declaratory and injunctive relief against all Defendants under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 (FAC ¶¶ 399-409) and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (FAC ¶¶ 410-420); and solely on behalf of the Subclass, against the Commissioners and Deputy Commissioner under the Eighth and Fourteenth Amendments (FAC ¶¶ 421-434).

## STANDARD OF REVIEW

State Defendants move to dismiss the Amended Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. On a motion under Rule 12(b)(1), Plaintiffs have the burden of demonstrating by a preponderance of the evidence that jurisdiction exists. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010). The court accepts all factual allegations as true, but "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003). In determining a Rule 12(b)(1) motion, therefore, the court "has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Id.* at 627.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter [] to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Defendants bear the burden of showing failure to state a claim and the court must accept as true all of the factual allegations contained in the complaint. However, the court is not required to credit conclusory allegations or

legal conclusion as factual. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

## ARGUMENT

### I.      GOVERNOR CUOMO IS NOT A PROPER PARTY BECAUSE HE HAD NO DIRECT INVOLVEMENT WITH ANY ALLEGED VIOLATION OF LAW

Governor Cuomo may only be sued in his official capacity if he is alleged to have direct involvement in an alleged violation of federal law. *See Ex Parte Young*, 209 U.S. 123, 157 (1908) ('[i]t is plain that [a defendant state] officer must have some connection with the enforcement of the [challenged] act"). Most cases addressing this issue have dismissed the Governor as a party. *See, e.g., Disability Rights New York v. New York State,* 17-CV-6965, 2019 WL 2497907, at **23-24 (E.D.N.Y. June 14, 2019) (dismissing Governor for alleged ADA/Rehabilitation Act violations); *Lorick v. Cuomo,* 9:16-CV-1002, 2018 WL 1517185, at *2 (N.D.N.Y. Mar. 27, 2018) (dismissing Governor in parole denial case); *Citizens Union of the City of New York v. Attorney General,* 16 Civ. 9592, 2017 WL 2984167, at **4-5 (S.D.N.Y. June 23, 2017) (dismissing Governor because limited exception under *Ex Parte Young* does not apply to Nonprofit Disclosure Provisions of New York Executive Law) (collecting cases); *Sabin v. Nelson*, No. 12 Civ. 1373, 2014 WL 2945770, at **2-3 (N.D.N.Y. June 30, 2014) (dismissing claims against Governor and Attorney General); *Spiteri v. Russo*, No. 12-CV-2780, 2013 WL 4806960, at *18 (E.D.N.Y. Sept. 7, 2013), *aff'd sub nom, Spiteri v. Camacho*, 622 F. App'x 9 (2d Cir. 2015) (dismissing Governor Cuomo as an improper party because plaintiff failed to plead that he had any direct involvement in plaintiff's classification as a sex offender); *Warden v. Pataki*, 35 F. Supp. 2d 354, 359 (S.D.N.Y. 1999) (collecting cases), *aff'd sub nom, Chan v. Pataki*, 201 F.3d 430 (2d Cir. 1999).

Here, there is no allegation of direct involvement, nor could there be, as it is not the Governor's role to conduct pre-release planning for individuals with serious mental illness who are leaving prison, and he is not involved in the handful of offenders who may experience delays

in securing housing deemed appropriate by OMH and/or DOCCS. Such planning is the responsibility of OMH and DOCCS, both of which are defendants in this action. *See Freeman v. Kirisits*, 16-CV-06668, 2017 WL 475679, at *6 (W.D.N.Y. Feb. 6, 2017) (dismissing Rehabilitation Act claim against the Governor in his official capacity because plaintiff could assert that claim against the state agency itself) (citing *Hallett v. N.Y. State Dep't of Corr. Servs.*, 109 F. Supp. 2d 190, 200 (S.D.N.Y. 2000)).

Rather than allege direct involvement in a violation of law, Plaintiffs allege that Governor Cuomo is "responsible for supervising and controlling DOCCS and OMH, seeking and expending funds to implement the programs and deliver the services of those agencies, and taking care that the laws of the State of New York are faithfully executed." FAC ¶ 180. Their other allegations against Governor Cuomo are merely an elaboration of the Governor's responsibilities to faithfully execute the law,[2] based on which Plaintiffs conclude that the Governor is "responsible" for the operation of public entities covered by Title II of the ADA and for programs and activities receiving federal financial assistance, but that his initiatives are "insufficient." *Id.* ¶¶ 283, 406, 417. Such conclusory allegations that Governor Cuomo is generally responsible for overseeing executive agencies and seeing that the laws are enforced have repeatedly been rejected. *See Wang v. Pataki*, 164 F. Supp. 2d 406, 410 (S.D.N.Y. 2001) (The Governor's general executive duty does

---

[2] Plaintiffs' allegations concerning the Governor are that he "oversees inter-agency coordination between OMH and DOCCS," ¶ 182; "oversees, directs and funds efforts to provide community-based mental health housing and services," ¶ 183; "receives reports and is involved in developing policies," ¶ 184; "established the Olmstead Cabinet" and appointed its Chair," ¶¶ 185-86; appoints members and receives reports from the Most Integrated Setting Coordinating Council, ¶ 186; is "responsible for providing necessary housing programs for plaintiffs," ¶ 270; established the council on re-entry and reintegration in 2014 and adopted their recommendations, which led to the development of community-based mental health housing," ¶¶ 276-78; directed funding to local agencies, ¶ 281.

not provide a basis for a claim against him) (citations omitted).Therefore, Plaintiffs' claims against

Governor Cuomo should be dismissed pursuant to Fed. R Civ. P. 12(b)(6).

## II.    ALL CLAIMS BY PLAINTIFFS C.J., M.J., J.R., D.R. AND M.G. ARE MOOT BECAUSE THEY HAVE BEEN PLACED IN RESIDENCES IN THE COMMUNITY

To the extent Plaintiffs C.J., M.J., J.R., D.R., and M.G. seek release from RTFs or prison

or seek to assert claims on behalf of either putative class, their claims are moot because they have

been released.[3]

Article III of the United States Constitution limits the jurisdiction of the federal courts to

"actual cases and controversies." U.S. Const. Art. III, §2, cl. 1; *see also Lewis v. Continental Bank

Corp.*, 494 U.S. 472 (1990) (holding that the "case and controversy" clause of Article III means

that federal courts may only adjudicate actual, ongoing cases or controversies). Article III denies

federal courts the power to decide questions that cannot affect the rights of litigants in the case

before them and "confines them to resolving real and substantial controversies admitting of

specific relief through a decree of a conclusive character, as distinguished from an opinion advising

what the law would be upon a hypothetical state of facts." *Lewis*, 494 U.S. at 477.  To invoke

federal jurisdiction, therefore, a plaintiff must show a "personal stake" in the outcome of the case.

*United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 (2018).  This requirement ensures that the

federal judiciary confines itself to its constitutional role of adjudicating actual and concrete

disputes, which have direct consequences to the parties directly involved. *Id.* Such a dispute "must

be extant at all stages of review, not merely at the time the complaint is filed." *Id.*

If an intervening circumstance deprives the named plaintiff of a personal stake in the

---

[3] That M.J. has been temporarily returned to prison due to violating the terms of his post-release
supervision does not alter the fact that he obtained the relief sought.

outcome of the lawsuit, the action can no longer proceed and must be dismissed by the court as moot. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013). The "mootness doctrine" thus assesses whether a litigant's stake in the outcome of the case continues throughout the life of the lawsuit. *See Jobie O. v. Spitzer*, No. 03 Civ. 8331, 2007 WL 4302921 (S.D.N.Y. Dec. 5, 2007). The "requisite personal interest that must exist at the commencement of the litigation must continue throughout its existence." *Mhany Mgmt., Inc. v. County of Nassau*, 819 F.3d 581, 603 (2nd Cir. 2016). A case is generally moot when the issues asserted by the parties are no longer live or the parties lack a legally cognizable interest in the outcome of the litigation. *Comer v. Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994).

The transfer of five of the named plaintiffs to residences in the community constitutes an intervening circumstance that deprives these plaintiffs of a personal stake in the outcome of the litigation. The release of these plaintiffs "mitigates concern that, absent injunctive relief, [they] will be subject to [allegedly] unconstitutional conduct in the future." *See Shannon v. Venettozzi*, 749 F. App'x 10, 13 (2d Cir. 2018) (citing *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials at that facility)). The claims asserted by these five named plaintiffs are no longer live and they now lack a legally cognizable interest in the resolution of this matter. Accordingly, the claims of the five released named Plaintiffs are moot and should be dismissed.

Furthermore, because their claims are moot, the five named Plaintiffs who have been released cannot represent any class or assert class claims. "[A] litigant must be a member of a class which he or she seeks to represent at the time the class action is certified by the District Court." *Sosna v. Iowa*, 419 U.S. 393, 403 (1975). The five named plaintiffs who are no longer housed in RTFs or prison beyond their respective maximum expirations dates or open parole dates, and were

transferred to community-based transitional housing, do not satisfy this criteria.[4] Nor is a motion

for class certification pending. In *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124,

135-36 (3d Cir. 2000), the Third Circuit noted that so long as a class representative has a live claim

at the time he or she moves for class certification, neither a pending motion nor certified class

action need be dismissed if his or her individual claim subsequently becomes moot, but, "[i]f, on

the other hand, the putative class representative's claim becomes moot before he moves for class

certification, then any subsequent motion must be denied and the entire action dismissed." *Id.* at

135-36. *See also Lusardi v. Xerox Corp.*, 975 F.2d 964, 977 (2d Cir. 1992) (dismissing claims

where "the named plaintiff's individual claims become moot *before application for class

certification*") (emphasis in original). In *Jobie O.*, 2007 WL 4302921, at * 7, the court emphasized

the importance of filing a prompt motion for class certification in order to preserve potential claims

that may later become moot. The present action was filed more than six months ago and no motion

for class certification has been filed.

In the initial Complaint, filed before five of the six named Plaintiffs had been released to

Transitional Living Residences ("TLRs") or Crisis Residences,[5] Plaintiffs sought "community-

---

[4] The only remaining named Plaintiff, P.C., who Plaintiffs allege is part of the "General Class," is serving a life sentence and, accordingly, could not be placed in an RTF pursuant to Penal Law § 70.45 or Correction Law § 73 because he will never reach his maximum expiration date. Therefore, he could not represent the putative RTF subclass.

[5] A TLR provides "interim, short term supportive residence . . . from which [releases] can further develop the necessary skills to live in the community, develop a positive track record demonstrating community living skills, and [] further promote recovery and self-advocacy to live more independently in the greater community." *See* https://www.omh.ny.gov/omhweb/facilities/mapc/residential_services.htm. A Crisis Residence is "designed to provide 24 hours per day supervision, generally for up to 30 days, to adults . . . experiencing acute symptoms or a temporary disruption in community supports. Services are designed to avoid hospitalization, and return the resident to a stable environment." *See* https://www.omh.ny.gov/omhweb/licensing/definitions.htm.

based housing." Compl. ¶¶ 14, 36, 51, 76, 97, 120. After housing outside the prison setting was provided to these Plaintiffs, the FAC was filed, in which Plaintiffs allege that this housing is not sufficiently "integrated" (FAC ¶¶ 88,117, 142, 172), presumably in an effort to keep these Plaintiffs' claims alive. Incredibly, Plaintiffs appear to assert that a period of transition in a structured, but not prison-like, setting is inappropriate for these seriously mentally ill individuals who have committed serious crimes. The FAC provides no factual allegations regarding what settings for each of the named Plaintiffs would be appropriate or why the residences in question are inappropriate as short-term housing to be used while these Plaintiffs transition into permanent community residences. The allegation that the housing provided is inappropriate is conclusory and insufficient to state a claim.

### III.     PLAINTIFFS' CLAIMS MUST BE DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES AS REQUIRED BY THE PLRA

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [§ 1983], or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). This exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "Prisoners must utilize the state's grievance procedures, regardless of whether the relief sought is offered through those procedures." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (citing *Booth v. Churner*, 532 U.S. 731 (2001)). *See also William v. Pataki*, No. 03 CIV. 8331, 2005 WL 1949509, at *2 (S.D.N.Y. Aug. 12, 2005) (applying PLRA exhaustion requirements to ADA claim).

When the named Plaintiffs filed suit they were "prisoners" for the purposes of the PLRA. In *Ruggiero v. County of Orange*, the Second Circuit confirmed that the scope of § 1997(e)

included all facilities in which individuals are held involuntarily. 467 F.3d 170, 174-75 (2d Cir. 2006). In holding that the PLRA exhaustion provision applied because the plaintiff, a parolee, filed the suit while he was confined at the Willard Drug Treatment Campus and was characterized as a prisoner, the Court stated, "[b]y referring to 'prisoners,' Congress placed a constraint on suits filed by litigants who could be characterized as prisoners, regardless of the type of facility in which they are imprisoned." *Id.* at 175.

The PLRA requires that a claim be exhausted *before* bringing suit in federal court, and be exhausted fully: "using all steps that the agency holds out, and doing so properly." *See, e.g., Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Defendants "bear the initial burden of establishing" the existence of an administrative remedy, and may do so "by pointing to 'legally sufficient source[s]' such as statutes, regulations, or grievance procedures" to demonstrate "that a grievance process exists and applies to the underlying dispute." *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (quoting *Mojias v. Johnson*, 351 F.3d 606, 610 (2d Cir. 2003)). Those sources here are the DOCCS inmate grievance regulations, 7 N.Y.C.R.R. § 701.1 *et seq.*, which are further outlined in DOCCS Directive 4040.[6] Under DOCCS regulations, "the substance or application of any written or unwritten policy" may be grieved. *Id.* § 701.2. A grievance must be submitted pursuant to the requirements outlined in Directive 4040. Submitting a complaint to the Office of Special Investigations (formerly the Inspector General) is insufficient, *see Khudan v. Lee*, No. 12 Civ. 8147, 2016 WL 4735364, at *4 (S.D.N.Y. Sept. 8, 2016), as are oral complaints or letters to a superintendent. *See Simon v. Campos*, No. 09 Civ. 6231, 2010 WL 1946871, at *6 (S.D.N.Y. May 10, 2010).

The Supreme Court has ruled that the PLRA exhaustion requirement mandates strict

---

[6] *See* http://www.doccs.ny.gov/Directives/4040.pdf.

compliance with an agency's grievance procedures, including compliance with "deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90-91 (PLRA requires "proper exhaustion," meaning a prisoner must "us[e] all steps that the agency holds out, and do[] so properly (so that the agency addresses the issues on the merits)" and inmate must "compl[y] with an agency's deadlines and other . . . rules"); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (citations omitted); *Davis v. New York*, 311 F. App'x 397, 399-400 (2d Cir. 2009). The Second Circuit has made clear, and district courts have affirmed, that "[a] plaintiff must also meet the PLRA's exhaustion requirements at the time a complaint is filed, and cannot cure a failure of exhaustion by pursuing administrative remedies while a federal action is pending." *Saunders v. Goord*, No. 98 Civ. 8501, 20002 WL 1751341, at *3 (S.D.N.Y. July 29, 2002) (citing *Neal v. Goord*, 267 F.3d 116, 121-23 (2d Cir. 2001), *overruled on other grounds, Porter v. Nussle*, 534 U.S. 516 (2002)). "[W]here exhaustion is required, failure to do so must result in dismissal, notwithstanding efforts by the inmate-plaintiff to pursue administrative remedies while simultaneously seeking relief in federal court." *Neal*, 267 F.3d at 117-18.

DOCCS has established a grievance program with specific procedures that must be followed in order for a prisoner to exhaust his administrative remedies, culminating with a final appeal to the Central Office Review Committee ("CORC"). *See Sulton v. Greiner*, No. 00 Civ. 727, 2000 WL 1809284, at **2-3 (S.D.N.Y. Dec. 11, 2000); *Vasquez v. Artuz*, No. 97 Civ. 8427, 1999 WL 440631, at **3-4 (S.D.N.Y. June 28, 1999). As DOCCS inmates, Plaintiffs were subject to a three-step grievance process as prescribed by the Inmate Grievance Program. *See* 7 N.Y.C.R.R. § 701.5. Inmates must first file a grievance within twenty-one calendar days of the alleged conduct or incident. 7 N.Y.C.R.R. § 701.5 (a)-(b). The final step in the process is for the inmate is to appeal the grievance to CORC. 7 N.Y.C.R.R. § 701.8(g). For DOCCS inmates such

as Plaintiffs "the final step in the grievance procedure always remains the appeal to CORC. Thus, only after CORC has reviewed the appeal and rendered a decision are New York's grievance procedures exhausted." *Gardner v. Daddezio*, No. 07 Civ. 7201, 2008 WL 4826025, at *2 (S.D.N.Y. Nov. 5, 2008). The purpose of the exhaustion rule is not simply to provide an inmate with a personal remedy, but also to: (1) provide prison officials "the first opportunity to address prisoner's complaints" and (2) "for those cases that do find their way into the courts ... [to] facilitate adjudication by ensuring a fully-developed administrative record." *Ruggiero,* 467 F.3d at 178.

After an appeal to CORC, 42 USC § 1997e(a) required Plaintiffs to wait until they had received a decision from CORC on their grievance appeal to file this lawsuit. *See, e.g., Fuentes v. Furco*, No. 13 Civ. 6846, 2014 WL 6766271, at *2 (S.D.N.Y. Nov. 14, 2014) ("the overwhelming weight of authority in this Circuit holds that, however inefficient it may be, the proper course remains a dismissal of Plaintiff's claims without prejudice"); *Bennett v. Wesley*, No. 11 Civ. 8715, 2013 WL 1798001, at *5 (S.D.N.Y. Apr. 29, 2013) (collecting additional cases so holding); *Mateo v. O'Connor*, No. 10 Civ. 8426, 2012 WL 45740, at *5 (S.D.N.Y. Mar. 29, 2012) ("A final decision by CORC is required in order to exhaust administrative remedies."); *but see Peoples v. Fischer*, No. 11 Civ. 2694, 2012 WL 1575302, n.125 (S.D.N.Y. May 3, 2012) (allowing lawsuit to proceed despite being filed before CORC decided appeal).

Here, there is no allegation, and no record, that Plaintiffs M.G., M.J., and P.C. appealed to CORC regarding issues relevant to this case. *See* July 26, 2019 Declaration of Rachel Seguin ("Seguin Decl."), at ¶¶ 6-7.[7] Plaintiff C.J. appealed to CORC only after this lawsuit was filed (*id.*)

---

[7] At this time Defendants are addressing only whether any grievances were appealed to CORC and whether any Plaintiffs waited until after CORC rendered a decision to initiate this lawsuit. Defendants reserve the right to dispute whether grievances were in fact filed or filed regarding all of the relevant issues.

and both D. R. and J. R. (both purportedly members of the putative RTF Subclass) submitted an appeal to CORC prior to the initiation of this lawsuit (*id.*), which, as discussed, are all insufficient to fully exhaust pursuant to 42 USC § 1997e(a) before filing suit.

The completion of the formal grievance procedures according to a correctional system's specific rules was further iterated in *Pagan v. Westchester Cnty.*, No. 12 Civ. 7669, 2014 WL 982876, at *12 (S.D.N.Y. Mar. 12, 2014), *on reconsideration*, 2015 WL 337403 (S.D.N.Y. Jan. 26, 2015).[8] *Pagan* was a putative class-action suit in which only two of the thirteen plaintiffs were deemed to have filed grievances in accordance with the administrative guidelines. Although the plaintiffs alerted the department of corrections of their concerns through letters and complaints, the court held that the letters were "not sufficient to exhaust administrative procedures because they do not follow the WCDOC grievance guidelines." *Id.* at 10 (citing *Smith v. City of New York*, No. 12 Civ. 3303, 2013 WL 5434144, at *13 (S.D.N.Y. Sept. 26, 2013) ("It is well settled that complaints and communications made outside of formal grievance procedures do not satisfy the PLRA's exhaustion requirement.")). The court further stated that even if the letters did satisfy the written grievance requirement, the plaintiffs did not appeal the decision. *Id.* The full grievance procedures must be followed.

Furthermore, while none of the named Plaintiffs fully exhausted before filing suit, even if one or more had, that is insufficient to allow the claims of those who did not exhaust to proceed. The PLRA does not permit plaintiff-prisoners to rely on the exhaustion efforts of others. In *Pagan*, where only two of the thirteen named plaintiffs administratively exhausted, the plaintiffs argued that the two grievances were filed on behalf of all other inmates. 2014 WL 982876, at *12. The

---

[8] The reconsideration took into account the "special conditions" exception, which was later overruled by the Supreme Court in *Ross*, 136 S. Ct. 1850, 1862 (2016).

court rejected this argument because an inmate is not permitted to file a grievance on behalf of another and because the PLRA does not permit vicarious exhaustion. *Id.*; *see also Davis v. Shaw*, No. 08 Civ. 362, 2009 WL 1490609 at *3 (S.D.N.Y. May 20, 2009) (same).

Accordingly, because of their failure to exhaust, the claims of all named Plaintiffs concerning claims prior to their release from DOCCS custody must be dismissed.

## IV.    SOVEREIGN IMMUNITY BARS THE ADA TITLE II CLAIM AGAINST OMH AND DOCCS BROUGHT BY PLAINTIFF P.C., A PUTATIVE GENERAL CLASS REPRESENTATIVE

The only named Plaintiff whose claims are not moot is P.C., a putative General Class Representative. As demonstrated above, his (or any other plaintiff's) claims are barred because he failed to exhaust his administrative remedies. In addition, his ADA claim is barred by the Eleventh Amendment of the United States Constitution. The Eleventh Amendment bars suit in federal court against a state or its agencies absent the state's consent or an express statutory waiver of immunity, thus "imposing a constitutional limitation on the federal judicial power established in Art. III." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-99 (1984). *See also Natarelli v. VESID Office*, 420 F. App'x 53, 55 (2d Cir. 2011); *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999) ("An official arm of the state enjoys the same Eleventh Amendment immunity from suit in federal court as is enjoyed by the state itself."). Moreover, New York State and its agencies are protected from suits by immunity under the Eleventh Amendment, regardless of whether the relief sought is legal or equitable in nature. *Papasan v. Allain*, 478 U.S. 265, 276 (1986); *Pennhurst*, 465 U.S. at 102 ("a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief"). Both OMH and DOCCS are agencies of the State of New York and protected by the Eleventh Amendment. *See Al-Haj v. OMH State of N.Y.*, 18-CV-05505, 2019 WL 2076798, at *2 (S.D.N.Y. Feb. 6, 2019) (citing *Dimps*

*v. N.Y. State Office of Mental Health*, 777 F. Supp. 2d 659, 661 (S.D.N.Y. 2011)); *see also Terranova v. N.Y. State Dep't of Corr. and Cmty. Supervision*, 1:16-CV-00537, 2019 WL 1316775, at *2 (W.D.N.Y. Mar. 22, 2019) (citing *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002)).

OMH and DOCCS are immune from suit under the ADA Title II claim asserted by Plaintiff P.C. because Title II validly abrogates the States' sovereign immunity only with respect to claims alleging (1) a Title II violation; and (2) conduct that actually violated the Fourteenth Amendment. *U.S. v. Georgia*, 546 U.S. 151 (2006); *Bolmer v. Oliveira*, 594 F.3d 134, 148 (2d Cir. 2010). In deciding whether a Title II claim is barred by sovereign immunity, a court must determine on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid. *Georgia,* 546 U.S. at 159. The Court's decision in *Georgia* left unresolved the question of whether Title II validly abrogates sovereign immunity for a cause of action based on conduct that allegedly violates Title II but not a specific constitutional provision. *See Dean v. Univ. of Buffalo Sch. of Medicine and Biomedical Sciences*, 804 F.3d 178, 194 (2d Cir. 2015).[9]

Here, Plaintiff P.C., a DOCCS inmate with an open parole date, does not allege a violation

---

[9] Decisions on the issue of whether sovereign immunity has been abrogated have been avoided when courts have determined that there has been no ADA violation. *See, e.g. Natarelli*, 420 F. App'x at 55; *Marshall v. N.Y. State Public High Sch. Athletic Ass'n*, 374 F. Supp. 3d 276, 297 (W.D.N.Y. 2019); *Kearney v. Adams*, No. 9:15-CVC-824, 2018 WL 3121618, at *11 (W.D.N.Y. Feb. 8, 2018), *adopted*, 20108 WL 1470579 (N.D.N.Y. Mar. 26, 2018); *Panzer-Senzer v. N.Y. State Office for People with Developmental Disabilities*, 17-cv-1086, 2017 WL 5129023, at *6 (S.D.N.Y. Nov. 3, 2017); *Colon v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 15 Civ. 7432, 2017 WL 4157372, at *7 (S.D.N.Y. Sept. 15, 2017).

of the Fourteenth Amendment or any other federal constitutional right. He alleges that he has not been released because appropriate community-based mental health housing is unavailable. FAC ¶¶ 50-51. This allegation does not state a constitutional claim, as there is no general federal constitutional right to community placement. *See Soc'y for Good Will to Retarded Children, Inc. v. Cuomo*, 737 F.2d 1239, 1248 (2d Cir. 1984) (holding that there is no entitlement under the federal Constitution to community placement or to a "least restrictive environment."). Further, Plaintiff P.C. has "no liberty interest in parole, and the protections of the Due Process Clause are inapplicable." *Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001). Although parole grantees may not have parole rescinded without due process, *see Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016), Plaintiff P.C. does not base his claim on a revocation of parole, but claims only that his parole release has been delayed pending the availability of appropriate mental health housing.

Whether a delay in parole implicates a liberty interest is an open question. *See Doe v. Simon*, 221 F.3d 137, 139 (2d Cir. 2000) (declining to reach "the thorny question of whether a liberty interest exist[s] in conditional release). However, because Plaintiff P.C. has asserted a claim under Section 504 of the Rehab Act, which is subject to the same standards as Title II of the ADA,[10] the Court need not reach the constitutional question. *Mary Jo C. v. N.Y. State and Local Retirement Sys.*, 707 F.3d 144, 166 (2d Cir. 2013) (declining to address the constitutionality of Title II's abrogation of the State's sovereign immunity because of the Court's "well-settled policy of avoiding the unnecessary adjudication of constitutional issues," where plaintiff had potential alternative relief); *Jaros v. Ill. Dept. of Corr.*, 684 F.3d 667, 672 (7ᵗʰ Cir. 2012) (dispensing with the ADA claim and "the thorny question of sovereign immunity" since plaintiff could have but

---

[10] *See Disabled in Action v. Bd. of Elections in the City of N.Y.*, 752 F.3d 189, 196-97 (2d Cir. 2014) (citing *McElwee v. County of Orange*, 700 F.3d 635, 640 (2d Cir. 2012)).

one recovery). Therefore, Plaintiff P.C.'s claim under the ADA should be dismissed.

## V.    THE OFFICIAL CAPACITY CLAIMS UNDER THE ADA AND REHABILITATION ACT SHOULD BE DISMISSED BECAUSE THEY ARE REDUNDANT

It is beyond dispute that "[s]uits against state officials in their official capacity . . . should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 52 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). *See also Henrietta D. v. Bloomberg,* 331 F.3d 261, 288 (2d Cir. 2003) ("The real party in interest in an official-capacity suit is the government entity."). Plaintiffs' claims against the Governor of the State of New York, OMH's Commissioner, and DOCCS's Acting and Deputy Commissioners in their official capacities should therefore be dismissed because Plaintiffs may proceed directly against OMH and DOCCS under the Rehabilitation Act for the injunctive relief that they seek. *Fox v. State Univ. of N.Y.,* 497 F. Supp. 2d 446, 451(E.D.N.Y. 2007) (citing *Candelaria v. Cunningham*, No. 98 Civ. 6273, 2000 WL 798636, at *3 (S.D.N.Y. June 20, 2000)).[11] These claims are redundant. *See Disability Rights New York*, 2019 WL 2497907, at *23 (recommending dismissal of claims against agency's Acting Commissioner as "redundant" and claims against Governor Cuomo as "wholly conclusory"); *Dunbar v. Onondaga Cnty.*, No. 8:19-CV-524, 2019 WL 2289583, at *4 (N.D.N.Y. May 7, 2019) (dismissing claims against municipal officials because the real party interest is the governmental entity); *Frantti v. New York*, No. 16 CV 810, 2017 WL 922062, at *4 (W.D.N.Y. May 8, 2017) (dismissing official capacity Rehabilitation Act claim as redundant against claim asserted directly against the State); *Freeman*, 2017 WL 475679, at *6 ("Since plaintiff is able to assert his Rehabilitation Act claim against the state agency itself, there is no justification for allowing plaintiff to also assert the same claims against the Governor in his official capacity.") (citing

---

[11] The decisions in *Fox* and *Candelaria* do not address the issue raised *supra* at Point IV that sovereign immunity bars Plaintiff P.C.'s ADA claim.

*Hallett*, 109 F. Supp. 2d at 200).

## VI.    PLAINTIFFS' EIGHTH AMENDMENT CLAIMS FAIL BECAUSE DEFENDANTS' CONDUCT IN ASSISTING TO LOCATE HOUSING WAS PENOLOGICALLY JUSTIFIED

Plaintiffs claim that members of the RTF Subclass have had their Eighth Amendment rights violated due to their placement in RTFs after the maximum expiration dates of their prison sentences (but prior to the maximum expiration dates of their imposed periods of post-release supervision) pending the location of appropriate housing. Plaintiffs conclusorily allege that Defendants have been deliberately indifferent and have subjected them to cruel and unusual punishment because they remained in RTFs for some time prior to their ultimate release. FAC ¶¶ 429, 432. Plaintiffs assume that being in an RTF is cruel and unusual in and of itself simply because RTF status is similar to general conditions in DOCCS facilities.[12]

While courts have held that holding an offender beyond "the maximum expiration date of his sentence may in some circumstances" give rise to a claim under the Eighth Amendment, *see Washington v. NYS Parole*, No. 19 Civ. 0601, 2019 WL 1877343, at *2 (S.D.N.Y. Apr. 26, 2019), such a claim lies only where it is "without penological justification" and a plaintiff must show "ineffectual action under the circumstances indicating that [the] response to the problem was a product of deliberate indifference to the prisoner's plight . . . . [and] demonstrate a causal connection between the official's response to the problem and the infliction of the unjustified detention." *Jackson v. Hyman*, No. 07 Civ. 4121, 2007 WL 2688933, at *7 (D.N.J. Sept, 12, 2007).

Here, Plaintiffs' temporary placement in RTFs while the search for appropriate housing continued was clearly penologically justified to protect the safety and continuity of care of

---

[12] By statute, being placed in RTF status provides offenders with the opportunity of additional programming and privileges beyond what inmates still serving terms of incarceration enjoy. *See* N.Y. Corr. Law § 2(6).

Plaintiffs as well as the safety of the community. Plaintiffs do not allege that seeking to place them in the TLRs or crisis residences they were ultimately placed in, as well as their actual placement in those residences, was unconstitutional. Nor can the search for appropriate, structured, housing be deemed "cruel and unusual" or "deliberately indifferent." Indeed, Defendants are not obligated to find Plaintiffs housing; there is merely an obligation to assist. *See Gonzalez v. Annucci*, 32 N.Y.3d 461, 474-6 (2018) (rejecting argument that "substantial assistance" must be provided, finding that bi-weekly meetings to investigate housing options met obligation to assist; finding no violation in plaintiff's placement in RTF). *See also* N.Y. Corr. Law § 201(5) (DOCCS "shall assist inmates eligible for community supervision and inmates who are on community supervision to secure . . . housing.") Plaintiffs do not allege that Defendants failed to assist Plaintiffs, but just that the assistance did not result in the timely location of housing. Nor is there any requirement under federal law that housing be found for parolees. *See Davis v. Rosa*, No. 16 Civ. 2406, 2016 WL 8453922, at *2 (S.D. Cal. Dec. 6, 2016) (rejecting claim that the constitution requires housing for parolee); *Lanahan v. Eastern Corr. Inst.*, No. 09 Civ. 3208, 2011 WL 1980546, at *6 (D. Md. May 20, 2011) ("As Plaintiff has no inherent constitutional right to release on parole, any housing or programming decision effecting same fails to state a claim.)

While it appears to be Plaintiff's position that the ADA and Rehab Act require Defendants to place inmates with serious mental illnesses who have been convicted of crimes such as murder and arson directly into apartments in the community immediately upon their release from prison, it is hardly "cruel and unusual" for the Defendants to first seek structured, transitional residences for these mentally ill offenders. Unfortunately, these residences are not always immediately available in the communities to which specific offenders are being released.

## VII.  PLAINTIFFS' FOURTEENTH AMENDMENT CLAIMS FAIL BECAUSE PLAINTIFFS CANNOT ALLEGE A SUBSTANTIVE DUE PROCESS VIOLATION

Plaintiffs' substantive due process claims must be dismissed because they are subsumed under their Eighth Amendment claims for deliberate indifference and cruel and unusual punishment. *See County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (Constitutional claims "must be analyzed under the standard appropriate for that specific provision, not under the rubric of substantive due process."). *Accord, e.g., Dava v. City of New York*, No. 15 Civ. 08575, 2016 WL 4532203, at *12 (S.D.N.Y. Aug. 29, 2016) (holding that "[w]here another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and 'not the more generalized notion of substantive due process.'") (internal quotations and citations omitted). As set forth in Point VI, supra, Plaintiffs' claims under the Eighth Amendment fail because their temporary placement in RTFs while the search for appropriate housing continued was penologically justified to protect their safety and the safety of the community. In any event, courts limit substantive due process protection to "government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense . . . ." *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995) (citation omitted). *See also Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 505 (2d Cir. 2001). While Plaintiffs here state that their "continued incarceration in punitive conditions shocks the contemporary conscience," FAC ¶ 426, for the reasons stated in Point VI, that conclusory claim fails.

**CONCLUSION**

For all the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' First Amended Class Action Complaint with prejudice.

Dated: New York, New York
          July 26, 2019

                              LETITIA JAMES
                              Attorney General of the State of New York
                              *Attorney for Defendants*

                              By: _____
                                      Jane R. Goldberg
                                      Jeb Harben
                                      Assistant Attorneys General
                                      28 Liberty Street
                                      New York, NY 10005
                                      Tel.: 1-(212) 416-6133
                                              1-(212) 416-6185
                                      Fax: 1-(212) 416-6009
                                      Jane.goldberg@ag.ny.gov
                                      Jeb.Harben@ag.ny.gov

24