UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- x

M.G., P.C., C.J., M.J., J.R., and D.R., individually and on
behalf of all similarly situated,

                                             Plaintiffs,

                    -against-

ANDREW CUOMO, in his official capacity as the Governor          7:19-CV-639 (CS) (LMS)
of the State of New York, the NEW YORK STATE OFFICE
OF MENTAL HEALTH, ANN MARIE T. SULLIVAN, in
her official capacity as the Commissioner of the New York
State Office of Mental Health, the NEW YORK STATE
DEPARTMENT      OF     CORRECTIONS       AND
COMMUNITY     SUPERVISION,     ANTHONY     J.
ANNUCCI, in his official capacity as the Acting
Commissioner of the New York State Department of
Corrections and Community Supervision, and ANNE
MARIE MCGRATH, in her official capacity as Deputy
Commissioner of the New York State Department of
Corrections and Community Supervision,

                                             Defendants.

------------------------------------------------------------------------- x

### PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

STATEMENT OF FACTS ............................................................................................ 1

LEGAL STANDARDS ............................................................................................... 3

ARGUMENT ............................................................................................................. 4

I.    The Claims of Named Plaintiffs M.G., C.J., M.J., J.R., and D.R. Are Not Moot. ............. 4

    A.    Defendants Cannot Show That Releasing the Named Plaintiffs Renders Plaintiffs' Claims Unreviewable Under the Voluntary Cessation Exception. ........................................................................................... 7

    B.    Defendants' "Picking Off" of Named Plaintiffs Does Not Moot Their Claims. ............................................................................................ 9

    C.    The Uncertain Duration of Plaintiffs' Claims Renders Them Inherently Transitory. ...................................................................................... 10

II.   Plaintiffs Fully Exhausted Administrative Remedies Even Where Not Required. .......... 13

    A.    Representatives of the Putative RTF Subclass Were Not "Prisoners" at the Time of Filing and Therefore Were Not Required to Exhaust. ........................... 13

    B.    All Plaintiffs Exhausted All Available Remedies Before Filing Suit. ................. 15

        1.    D.R. and J.R. Filed Timely CORC Appeals. ............................................. 16

        2.    C.J. Filed His CORC Appeal Before This Lawsuit. ................................... 17

        3.    M.J., M.G., and P.C. Filed CORC Appeals. ............................................ 17

        4.    DOCCS' Pattern of Delaying CORC Appeals Cannot Defeat the Named Plaintiffs' Exhaustion Attempts. ................................................ 19

    C.    Defendants' Actions Rendered the Grievance Process "Unavailable" to M.J. and M.G. ............................................................................... 21

III.  Governor Cuomo is a Proper Party Because He Has "Some Connection" to the Violation of Federal Law. .......................................................................... 22

IV.   Incarcerating the RTF Subclass Violates the Eighth Amendment.................................. 24

    A.    Plaintiffs State a "Prolonged Incarceration" Claim. .................................... 24

    B.    Plaintiffs Properly State a "Criminalization of Status" Claim............................ 25

V.    Plaintiffs' Substantive Due Process Claims Should Proceed. ......................................... 26

VI.   The Court Should Address Sovereign Immunity At a Later Stage, If At All.................... 28

VII.  The Court Should Reject Defendants' Arguments Concerning the Redundancy or Duplication of Claims. ......................................................................... 30

CONCLUSION......................................................................................................... 30

# TABLE OF AUTHORITIES

Page(s)

CASES

*Abdi v. Duke*,
    280 F. Supp. 3d 373 (W.D.N.Y. 2017) .......................................................................8

*Akande v. U.S. Marshals Serv.*,
    659 F. App'x 681 (2d Cir. 2016) ............................................................................28

*Amador v. Andrews*,
    655 F.3d 89 (2d Cir. 2011) ......................................................................................10

*Angulo v. Nassau County*,
    89 F. Supp. 3d 541 (E.D.N.Y. 2015) ......................................................................22

*Armand v. Simonson*,
    No. 12-CV-7709, 2016 WL 1257972 (S.D.N.Y. Mar. 30, 2016) ...........................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................3

*Bell v. Napoli*,
    No. 17-CV-850, 2018 WL 6506072 (N.D.N.Y. Dec. 11, 2018).............................19

*Bennett-Nelson v. La. Bd. of Regents*,
    431 F.3d 448 (5th Cir. 2005) ..................................................................................29

*Boyd v. Corr. Corp. of Am.*,
    380 F.3d 989 (6th Cir. 2004) ..................................................................................20

*Butler v. Suffolk County*,
    289 F.R.D. 80 ..........................................................................................................12

*Butterfield v. New York*,
    No. 96-CV-5144, 1998 WL 401533 (S.D.N.Y. July 15, 1998).............................30

*Calhoun v. New York State Div. of Parole Officers*,
    999 F.2d 647 (2d Cir. 1993).............................................................................24, 26

*Carver v. Nassau Cty. Interim Fin. Auth.*,
    730 F.3d 150 (2d Cir. 2013).....................................................................................29

*Chase Grp. All. LLC v. City of New York Dep't of Fin.*,
    620 F.3d 146 (2d Cir. 2010).....................................................................................3

*City News & Novelty, Inc. v. City of Waukesha*,
    531 U.S. 278 (2001)..................................................................................................8

*Clarkson v. Coughlin*,
    783 F. Supp. 789 (S.D.N.Y. 1992) ........................................................................10

*Cohen v. New York*,
    No. 14-CV-7496, 2015 WL 1962932 (S.D.N.Y. Apr. 30, 2015) ..............................3

*County of Sacramento v. Lewis*,
    523 U.S. 833 (1998)................................................................................................26, 27

*In re Dairy Mart Convenience Stores, Inc.*,
    411 F.3d 367 (2d Cir. 2005).........................................................................................22

*Darnell v. Pineiro*,
    849 F.3d 17 (2d Cir. 2017)...........................................................................................27

*Davis v. Hall*,
    375 F.3d 703 (8th Cir. 2004) .................................................................................26, 27

*Demore v. Kim*,
    538 U.S. 510 (2003).......................................................................................................27

*Disability Advocates, Inc. v. Paterson*,
    598 F. Supp. 2d 289 (E.D.N.Y. 2009) ........................................................................23

*Doe v. Annucci*,
    No. 14-CV-2953, 2015 WL 4393012 (S.D.N.Y. July 15, 2015) .................................27

*Doe v. Lima*,
    270 F. Supp. 3d 684 (S.D.N.Y. 2017).........................................................................26

*Doyle v. Midland Credit Mgmt., Inc.*,
    722 F.3d 78 (2d Cir. 2013)..............................................................................................3

*Dukes v. N.Y.C. Emps.' Ret. Sys.*,
    361 F. Supp. 3d 358 (S.D.N.Y. 2019)...........................................................................3

*Dunn v. Dunn*,
    219 F. Supp. 3d 1100 (M.D. Ala. 2016) .....................................................................10

*Ford v. Johnson*,
    362 F.3d 395 (7th Cir. 2004) .......................................................................................20

*Foucha v. Louisiana*,
    504 U.S. 71 (1992)...................................................................................................26, 27

*Francis v. Fiacco*,
    No. 18-1011, 2019 WL 5876504 (2d Cir. Nov. 12, 2019) .........................................24

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)............................................................................8

*G.R.X. v. Foxhoven*,
    No. 17-CV-417, 2018 WL 4701869 (S.D. Iowa June 28, 2018) ............................................10

*United States v. Garcia*,
    855 F.3d 615 (4th Cir. 2017) ................................................................19

*United States v. Georgia*,
    546 U.S. 151 (2006)............................................................................29

*U.S. Parole Comm'n v. Geraghty*,
    445 U.S. 388 (1980)........................................................................4, 10

*Glob. Network Commc'ns, Inc. v. City of New York*,
    458 F.3d 150 (2d Cir. 2006)....................................................................4

*Greig v. Goord*,
    169 F.3d 165 (2d Cir. 1999)...................................................................13

*Gulf Oil Co. v. Bernard*,
    452 U.S. 89 (1981)............................................................................28

*Hamdi v. Rumsfeld*,
    542 U.S. 507 (2004)...........................................................................26

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009)....................................................................30

*Hayes v. Dahkle*,
    No. 19-0650 (2d Cir.)........................................................................20

*Henrietta D. v. Bloomberg*,
    331 F.3d 261 (2d Cir. 2003)...............................................................22, 30

*Hilton v. Wright*,
    235 F.R.D. 40 (N.D.N.Y. 2006)..................................................................9

*Holcomb v. Iona Coll.*,
    521 F.3d 130 (2d Cir. 2008)....................................................................4

*Hubbs v. Suffolk Cty. Sheriff's Dep't*,
    788 F.3d 54 (2d Cir. 2015)................................................................14, 18

*Jackson v. Downstate Corr. Facility*,
    No. 16-CV-267, 2018 WL 3650136 (S.D.N.Y. July 31, 2018) ..............................................21

*Jackson v. U.S. Parole Comm'n*,
   806 F. Supp. 2d 201 (D.D.C. 2011) ................................................................8

*Jacobs v. Ramirez*,
   400 F.3d 105 (2d Cir. 2005)...........................................................................27

*Jernigan v. Stuchell*,
   304 F.3d 1030 (10th Cir. 2002) .....................................................................20

*Jones v. Bock*,
   549 U.S. 199 (2007).................................................................................15, 20

*Lewis v. Washington*,
   300 F.3d 829 (7th Cir. 2002) .........................................................................19

*Lusardi v. Xerox*,
   975 F.2d 964 (3d Cir. 1992)...........................................................................12

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000)..............................................................................3

*Manning v. Caldwell for City of Roanoke*,
   930 F.3d 264 (4th Cir. 2019) .........................................................................25

*Martin v. City of Boise*,
   920 F.3d 584 (9th Cir. 2019) .........................................................................25

*Mary Jo C. v. New York State & Local Ret. Sys.*,
   707 F.3d 144 (2d Cir. 2013)......................................................................28, 30

*United States v. McLaurin*,
   731 F.3d 258 (2d Cir. 2013)...........................................................................26

*Mental Disability Law Clinic v. Hogan*,
   No. 06-CV-620, 2008 WL 4104460 (E.D.N.Y. Aug. 28, 2008)...............12, 13

*Mhany Mgmt., Inc. v. County of Nassau*,
   819 F.3d 581 (2d Cir. 2016).....................................................................4, 5, 8

*Moore v. Bennette*,
   517 F.3d 717 (4th Cir. 2008) .........................................................................20

*Murphy v. Raoul*,
   380 F. Supp. 3d 731 (N.D. Ill. 2019) .............................................................25

*Nassau & Suffolk Cty. Taxi Owners Ass'n, Inc. v. State*,
   336 F. Supp. 3d 50 (E.D.N.Y. 2018) .............................................................22

*Olson v. Brown*,
    594 F.3d 577 (7th Cir. 2010) .........................................................................10, 11

*Powe v. Ennis*,
    177 F.3d 393 (5th Cir. 1999) ...................................................................................20

*Powell v. Texas*,
    392 U.S. 514 (1968).................................................................................................25

*Reid v. Marzano*,
    No. 15-CV-761, 2017 WL 1040420 (N.D.N.Y. Mar. 17, 2017) ............................21

*Reno v. Flores*,
    507 U.S. 292 (1993).................................................................................................26

*Rhodes v. Chapman*,
    452 U.S. 337 (1981).................................................................................................24

*Richard v. Bledsoe*,
    829 F.3d 273 (3d Cir. 2016).....................................................................................9

*Rivera v. Carroll*,
    No. 07-CV-7847, 2009 WL 2365240 (S.D.N.Y. Aug. 3, 2009).........................24, 25

*Riverkeeper, Inc. v. Mirant Lovett, LLC*,
    675 F. Supp. 2d 337 (S.D.N.Y. 2009)......................................................................8

*Robinson v. Ballard*,
    No. 13-CV-1213, 2017 WL 979047 (N.D.N.Y. Feb. 3, 2017) ...............................21

*Robinson v. California*,
    370 U.S. 660 (1962).................................................................................................25

*Rolland v. Cellucci*,
    52 F. Supp. 2d 231 (D. Mass. 1999) .......................................................................23

*Ross v. Blake*,
    136 S. Ct. 1850 (2016)..................................................................................16, 20, 22

*Ross v. C.U.N.Y.*,
    211 F. Supp. 3d 518 (E.D.N.Y. 2016) ....................................................................28

*Ruggiero v. County of Orange*,
    467 F.3d 170 (2d Cir. 2006).............................................................................14, 15

*Salazar v. King*,
    822 F.3d 61 (2d Cir. 2016).......................................................................................10

*Samele v. Zucker*,
    324 F. Supp. 3d 313 (E.D.N.Y. 2018) ............................................................4, 11

*Sample v. Diecks*,
    885 F.2d 1099 (3d Cir. 1989).........................................................................24, 25

*Shifflett v. Korszniak*,
    934 F.3d 356 (3d Cir. 2019).................................................................................20

*Smith v. Reagan*,
    841 F.2d 28 (2d Cir. 1988)...................................................................................28

*Smith v. Twp. of Warren*,
    No. 14-CV-7178, 2016 WL 7409952 (D.N.J. Dec. 22, 2016)........................28, 29

*Steigerwald v. Comm'r of Soc. Sec.*,
    No. 17-CV-1516, 2018 WL 454400 (N.D. Ohio Jan. 17, 2018) .............................9

*Unan v. Lyon*,
    853 F.3d 279 (6th Cir. 2017) ................................................................................9

*Va. Office for Prot. & Advocacy v. Stewart*,
    563 U.S. 247 (2011)............................................................................................28

*Vailette v. Lindsay*,
    No. 11-CV-3610, 2014 WL 4101513 (E.D.N.Y. Aug. 18, 2014) ...........................4

*Connor B. ex rel. Vigurs v. Patrick*,
    771 F. Supp. 2d 142 (D. Mass. 2011) .................................................................23

*Wal-Mart v. Dukes*,
    564 U.S. 338 (2011).............................................................................................13

*Ward v. Hellerstedt*,
    753 F. App'x 236 (5th Cir. 2018) ........................................................................12

*Williams v. Cook County*,
    No. 18-CV-1456, 2018 WL 4361946 (N.D. Ill. Sept. 13, 2018) ..........................12

*Williams v. Priatno*,
    829 F.3d 118 (2d Cir. 2016).................................................................16, 20, 21

*Ex parte Young*,
    209 U.S. 123 (1908)............................................................................22, 23, 30

## STATUTES

42 U.S.C. § 1997e(a)............................................................................................13, 16

42 U.S.C. § 12101 ................................................................................................ 29

Americans with Disabilities Act .................................................................... passim

Clean Water Act ......................................................................................................8

N.Y. Correct. Law § 404 .........................................................................................7

N.Y. Mental Hyg. Law §§ 7.01, 41.44, 41.47 ........................................................7

Prison Litigation Reform Act .............................................................................. passim

Rehabilitation Act ............................................................................................... passim

Sexual Assault Reform Act....................................................................................11

**OTHER AUTHORITIES**

7 NYCRR § 701.9 ..................................................................................................15

14 NYCRR § 575.1 ..................................................................................................7

14 NYCRR § 575.8 ..................................................................................................7

14 NYCRR § 589.4(e) ..............................................................................................6

Eighth Amendment .............................................................................................. passim

Eleventh Amendment.............................................................................................30

Fourteenth Amendment ....................................................................................... passim

Brief for the States of New York *et al.* as Amici Curiae in Support of
    Respondents, *Tennessee v. Lane*, 541 U.S. 509 (2004) (No. 02-1667) ...................29

Civil Rights, *Accommodating the Spectrum of Individual Abilities* (1983) ...................29

Fed. R. Civ. P. 12(b)(1) ...........................................................................................3

Fed. R. Civ. P. 12(b)(6)..........................................................................................3, 4

Fed. R. Civ. P. 12(d) ...............................................................................................4

Fed. R. Civ. P. 23 ...................................................................................................13

Fed. R. Civ. P. 56...................................................................................................4

H.R. Rep. No. 101-485, pt. 2 (1990).....................................................................29

This case centers on a basic principle of the criminal legal system: people in prisons must be released on their lawful release dates. Disability, poverty, and deficiencies in New York State's mental health services system do not authorize the State to incarcerate people beyond their release dates. The Constitution and federal disability rights law tolerate no such outcome.

The Named Plaintiffs, M.G., P.C., C.J., M.J., J.R., and D.R., individually and on behalf of a putative class and subclass, allege that Defendants keep them in state prison, past their lawful release dates, due to Defendants' failure to make available community-based mental health housing and supportive services that Plaintiffs require upon release.

In an attempt to avoid the consequences of their conduct, Defendants move to dismiss Plaintiffs' claims on numerous grounds, each meritless. Contrary to Defendants' assertions, Defendants' hasty release of five of the Named Plaintiffs after Plaintiffs filed their Class Action Complaint does not moot Plaintiffs' claims because three exceptions to mootness apply. Further, Defendants cannot show that Plaintiffs were required or that they failed to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"). Governor Cuomo is a proper party due to his involvement in the alleged violations. Plaintiffs allege sufficient facts to state claims for violations of the Eighth and Fourteenth Amendments. Plaintiffs' claims under Title II of the Americans with Disabilities Act ("ADA") against state agency Defendants may proceed without a decision on sovereign immunity. Finally, Defendants cite no legal authority, and none exists, requiring Plaintiffs' integration mandate claims under the ADA and Rehabilitation Act to be dismissed as redundant. Accordingly, Defendants' motion to dismiss should be denied in its entirety.

## STATEMENT OF FACTS

Named Plaintiffs are indigent people with serious mental illness who were held—or are currently being held—in prison past their lawful release dates. Am. Compl. (Dkt. No. 47)

1

("FAC") ¶¶ 1, 30, 50, 68, 70, 102, 131, 157, 163. Plaintiffs were determined by Defendants to be eligible for mental health housing upon release. But, because of the lack of community-based mental health housing and services, Defendants held Named Plaintiffs and the putative class in prison and subjected them to punitive conditions of confinement.

On January 23, 2019, while illegally incarcerated, Plaintiffs filed a putative class action Complaint against those responsible for their continued confinement—Andrew Cuomo, the New York State Office of Mental Health ("OMH") and its Commissioner Ann Marie Sullivan, and the New York State Department of Corrections and Community Supervision ("DOCCS") and its Acting and Deputy Commissioners Anthony Annucci and Anne Marie McGrath. Dkt. No. 1. Shortly after Named Plaintiffs filed the Complaint, Defendants released four of them to inadequate temporary housing. Plaintiffs subsequently filed an Amended Complaint, Dkt. No. 47, after which Defendants quickly released another Named Plaintiff.[1]

Claims One and Two, brought on behalf of all Named Plaintiffs and the putative general class, allege that all Defendants violate Title II of the ADA and Section 504 of the Rehabilitation Act by failing to provide services in the most integrated settings appropriate to Plaintiffs' needs. FAC ¶¶ 399-420. Claims Three and Four, brought by Plaintiffs C.J., M.J., J.R., and D.R. on behalf of themselves and the putative RTF subclass,[2] allege that Defendants Annucci, Sullivan, and McGrath's practice of confining them after their maximum expiration dates is barred by the Eighth Amendment and violates Plaintiffs' substantive due process rights under the Fourteenth Amendment. *Id*. ¶¶ 421-34.

---

[1] The Amended Complaint updated various facts but otherwise did not materially change the claims or allegations. *Compare* Dkt. No. 1, *with* Dkt. No. 47.

[2] Defendants nominally "release" individuals to Residential Treatment Facilities ("RTFs") at the end of their court-imposed prison sentences. In fact, however, Defendants hold these individuals in prison under punitive conditions. *See* FAC ¶¶ 3, 4, 265, 266, 351.

Plaintiffs seek a declaratory judgment that Defendants' conduct is unconstitutional and discriminatory, and a permanent injunction requiring Defendants to take the necessary steps to ensure that Plaintiffs are housed in the most integrated setting appropriate to their needs. *Id.* ¶¶ 52-53. Plaintiffs further seek an injunction prohibiting Defendants Annucci, Sullivan, and McGrath from subjecting the RTF subclass to punitive conditions of confinement in prison. *Id.*

In their July 26, 2019 motion to dismiss, Defendants raise several meritless arguments. For the reasons stated below, Defendants' arguments fail and Plaintiffs' claims should proceed.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) applies to Defendants' mootness and sovereign immunity arguments. *See Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013); *Cohen v. New York*, No. 14-CV-7496, 2015 WL 1962932, at *1-3 (S.D.N.Y. Apr. 30, 2015). Under Rule 12(b)(1), the Court should not dismiss a claim unless it determines that it "lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). When, as here, a movant disputes jurisdictional facts, the Court is obligated "to consider matters outside of the pleadings, such as affidavits [and] documents, . . . to determine whether jurisdiction exists." *Dukes v. N.Y.C. Emps.' Ret. Sys.*, 361 F. Supp. 3d 358, 363 (S.D.N.Y. 2019).

When considering Defendants' Rule 12(b)(6) arguments, the Court should "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chase Grp. All. LLC v. City of New York Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010). The Court should dismiss the complaint only if it fails to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). Courts "generally may

not consult evidence outside the pleadings" when deciding Rule 12(b)(6) motions. *Vailette v. Lindsay*, No. 11-CV-3610, 2014 WL 4101513, at *3 (E.D.N.Y. Aug. 18, 2014).

Defendants' exhaustion argument must be converted to a motion for summary judgment under Rule 12(d). Where "matters outside the pleadings are presented to and not excluded by the court," the 12(b)(6) motion "must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). This requirement of conversion is mandatory and thus, unless the Court excludes the additional materials, the portion of Defendants' motion that relies on those materials must be treated as a motion for summary judgment. *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006). The Court should only grant summary judgment when, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).

## ARGUMENT

### I.    The Claims of Named Plaintiffs M.G., C.J., M.J., J.R., and D.R. Are Not Moot.

Defendants' mootness argument, which hinges on their hasty release of five Named Plaintiffs, is a naked attempt to shield their misconduct from judicial review and is without merit. The Supreme Court has long recognized exceptions to mootness. *See, e.g.*, *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 399 (1980); *see also Samele v. Zucker*, 324 F. Supp. 3d 313, 328 (E.D.N.Y. 2018) ("[E]xceptions to mootness . . . are particularly applicable in class action cases in the . . . civil rights arena." (citation and quotation marks omitted)).[3] Plaintiffs' claims fall within three such exceptions: voluntary cessation, "picking off," and inherently transitory.

---

[3] Defendants rely on *Mhany Management* to argue that the "requisite personal interest that must exist at the commencement of the litigation must continue throughout its existence." Defs.'

Within weeks of being sued, Defendants had released several of the Named Plaintiffs.

Immediately after the Complaint was filed, OMH and DOCCS undertook a coordinated

campaign to release Named Plaintiffs because of their involvement in this case.[4] Defendant

Sullivan even advised her staff, "[l]et's see if we can move these 6 really quickly."[5] Defendants

had to scramble to plan for these Plaintiffs' release after the suit was filed because OMH had

stopped tracking their discharge needs due to their prolonged incarceration.[6]

Defendants first prioritized the release of Plaintiffs on RTF status, with "OMH

Administration" requesting they be released "ASAP."[7] These four individuals were quickly

released to temporary facilities, not community-based mental health housing:

- Defendants released **C.J. and M.J.** to the Middletown Transitional Living Residence, a
  temporary housing facility located on OMH's Rockland Psychiatric Center's Middletown
  campus, because community housing was not available.[8] With Defendant Sullivan "directly
  involved" in the release process, OMH even discussed moving other patients out of
  Middletown "to make room."[9] Within weeks after Plaintiffs' filing, Defendants revised these

---

Mem. at 10. But they ignore the very next sentence in that decision: "This principle, however, is 'not comprehensive,' and it fails to capture exceptions to mootness . . . ." *Mhany Mgmt., Inc. v. County of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016) (citation omitted).

[4] Declaration of Joshua M. Rosenthal ("Rosenthal Decl.") Exs. 1 (email dated Jan. 23, 2019: OMH staff identify the Named Plaintiffs and compile "preliminary information . . . regarding discharge planning"), 2 (email dated Jan. 24, 2019: OMH staff writes DOCCS is "following up about more dc summaries needed ASAP related to governors [sic] office and lawsuits"), 3 (email dated Jan. 25, 2019: OMH adds four Named Plaintiffs as "[a]dd on RTF cases" which staffer concludes was likely in response to "class action law suit [sic]"), 4 (email dated Jan. 29, 2019: OMH staff states, "[w]e are in the midst of a lawsuit for holding people too long in prison" and listing three Named Plaintiffs as "identified as priority for moving"); *see id.* Exs. 5-11.

[5] Rosenthal Decl. Ex. 12; *see id.* Ex. 13.

[6] *See, e.g.*, Rosenthal Decl. Exs. 10 (email dated Feb. 23, 2019: noting updated referral needed for J.R. "asap"), 14 (email dated Sept. 19, 2017: DOCCS stating that "it is our responsibility to follow up with OMH to ensure that appropriate OMH housing is secured"), 15 (email dated May 31, 2018: OMH noting referrals for RTF inmates, including C.J., had expired and that individuals "held past for mental health housing" were no longer on OMH's discharge planning caseload), 16 (email dated Jan. 25, 2019: OMH stating RTF Named Plaintiffs' (and others) "cases are closed," and some had been "reviewed years ago"); *see id.* Exs. 3, 17, 18.

[7] Rosenthal Decl. Ex. 7; *see id.* Exs. 3, 4, 8, 10, 11, 16.

[8] Rosenthal Decl. Exs. 19-21, 24, 27, 28; *see* FAC ¶ 79.

[9] Rosenthal Decl. Exs. 4, 8, 10, 13, 22, 23.

Plaintiffs' discharge plans, OMH officials arranged for screening interviews, DOCCS approved this location, and C.J. and M.J. were released.[10]

- Just three weeks before filing, Defendants had no updates on **D.R.'s** housing.[11] Within three weeks after filing, however, OMH identified, DOCCS approved, and D.R. was released to a short-term crisis residence at OMH's Pilgrim Psychiatric Center, which, according to OMH, is "not . . . a substitute for housing."[12] OMH staff knew his release was prioritized, as he had come to their attention "as an imminent release following the recent news of the lawsuit against DOCCS and OMH."[13] The process was so hurried that on the Friday before his Monday release OMH still had not reached D.R.'s parole officer to plan for his discharge.[14]

- Before filing, Defendants refused to release **J.R.** to a shelter or a "parole" bed because it "[could] not support persons . . . in need of community based mental health housing" and was a "time limited" placement.[15] After filing, Defendants moved J.R. "to the top of the list" for a parole bed.[16] OMH even inquired about, and later secured, a waiver for J.R.'s acceptance into mental health housing typically reserved for psychiatric patients.[17] Even then, admission was delayed and OMH investigated an interim "temporary placement" instead.[18] J.R. was released to OMH's Rockland Psychiatric Center's short-term crisis residence two months after filing.[19]

Once these four were released, Defendants turned to prioritizing the "remaining plaintiffs"[20]:

- For months before filing, **M.G.** was waitlisted because mental health housing was "very scarce," with DOCCS rejecting his requests for release to temporary housing.[21] After the filing of the FAC, with "no vacancy in sight" for housing, M.G. was released to Hillcrest House, a halfway house that is funded through DOCCS' Community-Based Residential Program, provides only temporary housing, has no on-site "medical or mental health care practitioners," and which Defendants had previously determined was inappropriate for formerly incarcerated people needing mental health housing.[22]

---

[10] Rosenthal Decl. Exs. 13, 21, 24-29.
[11] Rosenthal Decl. Exs. 17, 30.
[12] Rosenthal Decl. Exs. 30-34; *see* 14 NYCRR § 589.4(e) (defining "crisis residence").
[13] Rosenthal Decl. Exs. 32, 35.
[14] Rosenthal Decl. Ex. 36.
[15] Rosenthal Decl. Exs. 37-39.
[16] Rosenthal Decl. Ex. 39.
[17] Rosenthal Decl. Exs. 10, 40.
[18] Rosenthal Decl. Ex. 41.
[19] Rosenthal Decl. Exs. 42, 43.
[20] Rosenthal Decl. Exs. 44-46.
[21] Rosenthal Decl. Exs. 47-55; Declaration of M.G. ("M.G. Decl.") ¶ 4.
[22] Rosenthal Decl. Exs. 57-60; *see id.* Ex. 56 at 2, 12, 31; M.G. Decl. ¶¶ 23-25.

By the time these Plaintiffs were released, Defendants had incarcerated M.G. for 769 days past

his open date for parole release, and incarcerated the Plaintiffs on RTF status for 502 days (C.J.),

411 days (D.R.), 284 days (J.R.), and 246 days (M.J.) past the end of their prison sentences.[23]

Defendants controlled all aspects of Plaintiffs' releases. OMH is responsible for

developing community-based housing and services, identifying housing for Plaintiffs, and

coordinating with counties to arrange for their needs upon release.[24] DOCCS approves the terms,

location, and timing of Plaintiffs' releases and controls the conditions of their confinement in the

meantime.[25] Plaintiffs could not predict when they would be released.[26] Held at Defendants'

direction, Plaintiffs could only wait until housing became available which, according to an OMH

official, "[c]ould be weeks, months, years. There [wa]s no way to know."[27]

These hastily executed discharges left some Plaintiffs without services (like health care

coverage) and plans necessary for successful reintegration.[28] OMH did not even have time to

pursue Assisted Outpatient Treatment, a mechanism for court-supervised mental health care,

which agency staff had recommended for several Plaintiffs.[29]

A.    <u>Defendants Cannot Show That Releasing the Named Plaintiffs Renders Plaintiffs'
      Claims Unreviewable Under the Voluntary Cessation Exception.</u>

Defendants cannot rely on their purported voluntary cessation of the alleged conduct to

moot Plaintiffs' claims. A defendant's "voluntary cessation of a challenged practice rarely moots

---

[23] Rosenthal Decl. Exs. 61-70. Class members too have been held for widely varying periods, such as 41 days, 174 days, and even 908 days past their maximum expiration dates. Rosenthal Decl. Ex. 72; *see id.* Ex. 71 at 6.
[24] N.Y. Mental Hyg. Law §§ 7.01, 41.44, 41.47; N.Y. Correct. Law § 404; 14 NYCRR § 575.1; 14 NYCRR § 575.8; Rosenthal Decl. Exs. 73, 74.
[25] Rosenthal Decl. Exs. 74-76.
[26] Declaration of C.J. ("C.J. Decl.") ¶ 11; Declaration of M.J. ("M.J. Decl.") ¶ 6; Declaration of D.R. ("D.R. Decl.") ¶ 9; M.G. Decl. ¶ 5.
[27] Rosenthal Decl. Ex. 77.
[28] C.J. Decl. ¶¶ 27-33; M.G. Decl. ¶¶ 26-28; Rosenthal Decl. Exs. 78-82.
[29] Rosenthal Decl. Exs. 83-86.

7

a federal case." *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001)

("[A] party should not be able to evade judicial review . . . by temporarily altering questionable

behavior."). For it to do so, Defendants must show "(1) there is no reasonable expectation that

the alleged violation will recur and (2) interim relief or events have completely and irrevocably

eradicated the effects of the alleged violation." *Mhany Mgmt.*, 819 F.3d at 603.

Defendants fail to address this "formidable burden," much less provide supportive

affidavits or evidence. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S.

167, 190 (2000); *cf. Riverkeeper, Inc. v. Mirant Lovett, LLC*, 675 F. Supp. 2d 337 (S.D.N.Y.

2009) (finding Clean Water Act claims moot as defendant produced "undisputed evidence" that

the power plant was demolished and the permit surrendered). For this reason alone, Defendants'

mootness argument fails.

In fact, rather than endeavor to show that there is no reasonable expectation that the

complained of conduct would recur, Defendants claim unfettered authority to incarcerate

Plaintiffs at their whim, declaring that "DOCCS may use any residential treatment facility . . . as

a residence for individuals on parole, conditional release, and post-release supervision." Defs.'

Mem. at 4. This professed ability to reimpose RTF status on any Plaintiff further reinforces that

Plaintiffs' claims are not moot. *See Abdi v. Duke*, 280 F. Supp. 3d 373, 396 (W.D.N.Y. 2017)

(doctrine applied where respondents could "revoke Petitioners' parole at any time, for any

reason"), *vacated on other grounds*, *Abdi v. McAleenan*, -- F. Supp. 3d ---, 2019 WL 4621898

(W.D.N.Y. Sept. 24, 2019); *Jackson v. U.S. Parole Comm'n*, 806 F. Supp. 2d 201, 208 (D.D.C.

2011) (doctrine applied where defendants could reimpose challenged parole restrictions).

Moreover, Defendants continue to incarcerate P.C. and putative class members past their release

dates. *See Hilton v. Wright*, 235 F.R.D. 40, 50 (N.D.N.Y. 2006) (exception applied where it was unclear that the challenged denial of prison health services could not recur for class members).

Finally, Defendants cannot show the complete eradication of the effects of their wrongful conduct, particularly given the months Plaintiffs spent in prison past their release dates and the hurried nature of Defendants' post-filing release. Defendants cannot show, for example, that Plaintiffs recovered services, opportunities, family connections, and life skills training that are key to successful community integration. *E.g.*, FAC ¶¶ 320-21.

B.    Defendants' "Picking Off" of Named Plaintiffs Does Not Moot Their Claims.

Relatedly, the picking off exception to mootness also applies.[30] Under this exception, a named plaintiff's claims are not moot where defendants "strategically seek[] to avoid litigation by selectively resolving the claims of any potential representatives as soon as they become known to defendant." *Unan v. Lyon*, 853 F.3d 279, 286 (6th Cir. 2017). In applying this test, courts look to "the timing and method of relief" defendants provided. *Id.* Where "the timing is suspect" and defendants depart from standard procedures in granting relief, a plaintiff's claims are not moot. *See Steigerwald v. Comm'r of Soc. Sec.*, No. 17-CV-1516, 2018 WL 454400, at *7 (N.D. Ohio Jan. 17, 2018).

Here, the timing of Plaintiffs' releases is highly suspect. Defendants took documented and concerted steps beginning the day the lawsuit was filed to release the Plaintiffs because of their involvement in this case. The extensive record of evidence detailed above reveals Defendants departed from typical discharge procedures to do so. Immediately after filing, Defendants got to work adding Plaintiffs' expired cases to their caseloads, resubmitting

---

[30] While developed to prevent the "buying off" of plaintiffs in damages cases, circuit courts have applied this exception to claims seeking injunctive relief. *See Unan v. Lyon*, 853 F.3d 279 (6th Cir. 2017); *Richard v. Bledsoe*, 829 F.3d 273 (3d Cir. 2016).

applications, revising discharge locations, and fast-tracking their releases. For these reasons, Defendants' post-filing conduct should not moot Plaintiffs' claims.

C.    The Uncertain Duration of Plaintiffs' Claims Renders Them Inherently Transitory.

Plaintiffs' claims are also inherently transitory. This mootness exception recognizes that some claims are "so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *Geraghty*, 445 U.S. at 399. Courts routinely apply the exception in the prison context. *See, e.g.*, *Clarkson v. Coughlin*, 783 F. Supp. 789, 799 (S.D.N.Y. 1992). Under this exception, class claims are not moot where "(1) it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class; and (2) there will be a constant class of persons suffering the deprivation complained of in the complaint." *Salazar v. King*, 822 F.3d 61, 73 (2d Cir. 2016) (citing *Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010)). The "inquiry . . . must be made with reference to the claims of the class as a whole" rather than any individual plaintiff, *Amador v. Andrews*, 655 F.3d 89, 100 (2d Cir. 2011), and when both prongs are met the plaintiffs' standing "relate[s] back" to the filing of the original complaint, *Salazar*, 822 F.3d at 73.

Plaintiffs' claims satisfy both prongs of this test. First, it was uncertain at the outset of this case which, if any, potential plaintiff would remain in prison long enough for the Court to certify the general class and RTF subclass. *See Dunn v. Dunn*, 219 F. Supp. 3d 1100, 1111 (M.D. Ala. 2016) (recognizing that exception applies if "it would be difficult to identify *which* prospective plaintiff" would retain standing); *G.R.X. v. Foxhoven*, No. 17-CV-417, 2018 WL 4701869, at *3 (S.D. Iowa June 28, 2018) (determining which plaintiff would remain confined "would require a high degree of predictive abilities—even bordering on clairvoyance"). Further,

Defendants have total discretion over the timing of Plaintiffs' release; vacancies in housing are unpredictable and beyond Plaintiffs' control; and Defendants discharged Named Plaintiffs in response to litigation. *See Olson*, 594 F.3d at 583 (applying exception where "duration of [the plaintiff's] claim was at the discretion of" Department of Correction and release could occur for "reasons that [the plaintiff] cannot anticipate"); *Samele*, 324 F. Supp. 3d at 331 (applying exception where "Defendant could continually pick off named plaintiffs").[31]

Second, Defendants do not dispute that there will be a "constant class" of general class and RTF subclass members for mootness purposes[32]—nor can they. Defendants have held a fluctuating number of people in prison past their lawful release dates:

- As of January 19, 2019, Defendants held approximately 50 people with serious mental illness past their approved conditional release dates or open dates for parole release;[33]

- Defendants have placed at least 82 people on RTF status since 2016 due to the lack of mental health housing, with 12 incarcerated as of January 23, 2019, and Defendants have continued to place subclass members on RTF status since Plaintiffs filed;[34]

- As of August 2019, 155 people were held past their approved conditional release dates and open dates for parole release for reasons other than housing restrictions imposed by the Sexual Assault Reform Act, with dozens listed as incarcerated in facilities that house people with serious mental illness and 13 incarcerated in units that exclusively serve people with serious mental illness;[35] and

- As of August 2019, approximately 29 people with serious mental illness remained incarcerated past their release dates with mental health housing applications pending.[36]

---

[31] In *Samele*, the court, exemplifying how similar concerns animate each of these three mootness exceptions, borrowed the rationale of the "picking off" exception. *Id*. at 331.

[32] Rosenthal Decl. Ex. 87 at 4, 5, 8, 9-10, 11.

[33] Rosenthal Decl. Ex. 88.

[34] Rosenthal Decl. Exs. 72, 89. To the extent Defendants claim that they have not held class members on RTF status in the past few months, *see id.* Exs. 71, 87, the point is inapposite. Defendants placed subclass members on RTF status as recently as July 2019, *id.* Ex. 72, continue to claim the authority to do so, Defs.' Mem. at 4, and explicitly do *not* argue that "there's an insufficient number of potentially impacted people" or that this is not a "transitory class," Rosenthal Decl. Ex. 87 at 4, 8, 10.

[35] Rosenthal Decl. Exs. 71 at 4-5, 92.

[36] Rosenthal Decl. Ex. 91 at 4.

Moreover, Defendants continue to claim authority to use prisons as a "residence" for class members who reach or surpass their release dates. Defs.' Mem. at 4; *cf. Ward v. Hellerstedt*, 753 F. App'x 236, 243 (5th Cir. 2018) (finding constant class where defendants continued "revolving door" policy of unlawful detention); *Williams v. Cook County*, No. 18-CV-1456, 2018 WL 4361946, at *2 (N.D. Ill. Sept. 13, 2018) (finding sheriff's continued policy of ignoring court decisions created "constant class of persons [who] will suffer unconstitutional pretrial detentions"). As long as people with serious mental illness require housing upon their release (approximately 110 people in a given four months)[37] and that housing remains unavailable, there will be a constant class.[38]

  That Plaintiffs have not yet moved for class certification is irrelevant. "[I]n class actions the relation back doctrine refers to the filing of the complaint not the time of filing of the certification motion." *Mental Disability Law Clinic v. Hogan*, No. 06-CV-620, 2008 WL 4104460, at *10 (E.D.N.Y. Aug. 28, 2008) (distinguishing *Lusardi v. Xerox*, 975 F.2d 964 (3d Cir. 1992)); *see Butler v. Suffolk County*, 289 F.R.D. 80, 91-92 & 92 n.5 (E.D.N.Y. 2013) ("[I]t is the date of the complaint, not the date of the certification motion, that is relevant."). Defendants' reliance on two Third Circuit decisions to argue the contrary is misplaced.[39] Defs.' Mem. at 11. While some courts have considered whether plaintiffs have "unduly delay[ed]" a

---

[37] Rosenthal Decl. Ex. 92.

[38] After the filing of this case, Defendants have even referred individuals with serious mental illness to homeless shelters, despite an earlier DOCCS rule forbidding such discharges. Rosenthal Decl. Exs. 74, 76, 93-94, 95 at MG-Class00026054. Of 112 people with serious mental illness due to be released between April and August 2019 and in need of housing, Defendants referred only 7 people to dedicated forensic housing, recommended an additional 36 for mental health housing, while referring 12 people to shelters, 1 to a temporary or crisis residence, 2 to a hotel/motel, 1 to "parole housing," and 53 to DOCCS housing. *Id.* Ex. 92.

[39] Defendants cite *Lusardi v. Xerox* as a Second Circuit decision, Defs.' Mem. at 11; it is not. *Lusardi*, 975 F.2d 964.

motion for class certification, "there is no requirement that a motion for class certification be filed with the class complaint" and no undue delay where, as here, Plaintiffs are actively seeking discovery to meet their Rule 23 burden. *See Hogan*, 2008 WL 4104460, at *10-11.[40]

      For these reasons, Plaintiffs' claims are not moot.

## II.    Plaintiffs Fully Exhausted Administrative Remedies Even Where Not Required.

      Under the PLRA, "[n]o action shall be brought with respect to prison conditions under . . . any [ ] Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This administrative exhaustion requirement applies only to "prisoners." § 1997e(h); *Greig v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999). By Defendants' own definition, the representatives of the putative RTF subclass—that is, all Plaintiffs except M.G. and P.C.—were "releasees," not "prisoners," at the time they filed this action, and thus were not required to exhaust. Even if the exhaustion requirement applied, Defendants' motion should be denied as all Plaintiffs properly exhausted all available administrative remedies before filing suit.

      A.    <u>Representatives of the Putative RTF Subclass Were Not "Prisoners" at the Time of Filing and Therefore Were Not Required to Exhaust.</u>

      The PLRA defines a "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary

---

[40] Defendants' position—that relation back applies only when there is a pending class certification motion, Defs.' Mem. at 10-11—would lead to absurd results: Either Defendants could defeat class actions through delays in Rule 23 discovery or Plaintiffs would be required to file a skeletal motion simply to preserve inherently transitory arguments, leading to supplemental briefing and a waste of judicial resources. Of note, the cases that Defendants cite for this argument all pre-date key decisions governing class certification, including *Wal-Mart v. Dukes*, 564 U.S. 338 (2011).

program[s]." § 1997e(h). The Second Circuit has clarified that exhaustion applies only to facilities in which people are "held involuntarily as a result of violating the criminal law." *Ruggiero v. County of Orange*, 467 F.3d 170, 174-75 (2d Cir. 2006). Because the RTF subclass Plaintiffs were not so held on the day they filed this lawsuit, exhaustion was not required.

As an initial matter, Defendants are playing word games. For years, Defendants have interchangeably referred to RTF residents as both "prisoners" and "releasees." For example, Defendants call RTF residents "prisoners" when defending federal lawsuits brought by RTF residents. Defs.' Mem. at 21. But Defendants call RTF residents "releasees" or "parolees" in their internal correspondence. *See* Declaration of Robert M. Quackenbush ("Quackenbush Decl.") ¶¶ 3-6. Even in this case, Defendants take contradictory positions. When arguing exhaustion, Defendants assert that Plaintiffs are "prisoners" as defined by the PLRA. Defs.' Mem. at 12. Yet, to defend against Plaintiffs' Eighth Amendment claim, Defendants claim that conditions in RTFs are merely "similar" to DOCCS facility conditions. *Id.* at 21. Defendants hope to label their way out of this lawsuit. But it is the PLRA that determines whether Plaintiffs were "prisoners" at the time of filing, and not Defendants' ever-changing nomenclature.

In asserting that the RTF subclass Plaintiffs were "prisoners" required to exhaust, Defendants rely exclusively on a wildly broad interpretation of the rule articulated in *Ruggiero*, 467 F.3d at 175, by wrongly arguing that the PLRA's exhaustion requirement applies to "all facilities in which individuals are held involuntarily," Defs.' Mem. at 12-13. They also ignore the immense differences between the *Ruggiero* plaintiff and the RTF subclass in this case. They thereby fail to meet their "burden of establishing . . . that a grievance process exists and applies to the underlying dispute." *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

14

In *Ruggiero*, the plaintiff was confined because of a parole violation, which the Second Circuit unambiguously characterized as a violation of the criminal law. 467 F.3d at 175. In its decision, the Second Circuit noted that the PLRA administrative exhaustion requirement applies only to facilities "in which prisoners are held involuntarily *as a result of violating the criminal law*." *Id.* at 175 (emphasis added). So framed, the result in *Ruggiero* was both straightforward and predictable: because the plaintiff was held for a parole violation, he was a "prisoner" within the meaning of the PLRA. In stark contrast, the RTF subclass representatives were not confined pursuant to a parole violation. Rather, they had completed the entirety of their determinate sentences when they filed this lawsuit, and were held past those sentences due solely to Defendants' discrimination.

B.   All Plaintiffs Exhausted All Available Remedies Before Filing Suit.

Regardless of whether Named Plaintiffs were required to exhaust, they all did so, and did so properly. Under the PLRA, the prison's procedures defines what a prisoner must do to properly exhaust. *Jones v. Bock*, 549 U.S. 199, 218 (2007). As relevant here, DOCCS' grievance regulations provide for two procedural paths:

- For complaints regarding disability-based discrimination, which the regulations say are "of particular concern" to DOCCS, the agency provides for an expedited two-step adjudication process. 7 NYCRR § 701.9; *see Armand v. Simonson*, No. 12-CV-7709, 2016 WL 1257972, at *17 (S.D.N.Y. Mar. 30, 2016). Discrimination grievances must be sent directly to the facility superintendent for adjudication. If the superintendent denies the grievance, the grievant may appeal directly to the final level, the Central Office Review Committee ("CORC"). § 701.9. CORC must render a decision within 30 days of receipt. § 701.9(i) (incorporating § 701.5(d)(3)(ii)).

- Complaints that do not allege unlawful discrimination are subject to a three-step process. The Inmate Grievance Resolution Committee ("IGRC") adjudicates them first. § 701.5(b). If the IGRC denies the grievance, the grievant must appeal to the superintendent. § 701.5(c). Finally, if the superintendent denies the appeal, the grievant must appeal to CORC, which must adjudicate the appeal within 30 days. § 701.5(d)(1), (d)(3)(ii).

Under either of these procedural paths, state law provides that CORC must obtain the grievant's written consent if it requires more than 30 days to adjudicate an appeal. § 701.6(g)(2).

Under the PLRA, only those administrative remedies that "are available" must be exhausted. 42 U.S.C. § 1997e(a). "[A]vailability" means that an incarcerated person "is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016) (quotations and internal citations omitted). *Ross* outlined three circumstances under which a prison's administrative remedies are unavailable: first, when an administrative procedure "operates as a simple dead end"; next, when "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use"; and finally, when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1859-60.[41]

1.    *D.R. and J.R. Filed Timely CORC Appeals.*

It is undisputed that D.R. and J.R. filed timely grievances and grievance appeals, including final-level appeals to CORC. *See* Declaration of Rachel Seguin ("Seguin Decl.") ¶ 6. It is also uncontested that: (1) after CORC failed to timely respond to their appeals within the 30-day deadline, both D.R. and J.R. submitted letters to the grievance clerk seeking confirmation that their CORC appeals were transmitted; (2) DOCCS never requested or obtained an extension of its deadline to respond under § 701.6(g)(2); (3) DOCCS officials informed D.R. in writing that his appeal would be resolved *in approximately one year*; and (4) this lawsuit was filed 76 days after they filed their CORC appeals. D.R. Decl. ¶¶ 12-20.

---

[41] These three situations are illustrative, not exhaustive. *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016).

16

2.      *C.J. Filed His CORC Appeal Before This Lawsuit.*

Defendants' allegation that C.J. did not file his CORC appeal "until after the filing of this lawsuit," *see* Seguin Decl. ¶ 6, is incorrect. On November 1, 2018, C.J. received the denial of his initial grievance, and appealed to the superintendent. C.J. Decl. ¶ 17. When the superintendent failed to respond within the 30-day deadline, C.J. was permitted to "appeal[ ] to the next step[,]" § 701.6(g)(2), which he did on November 28, 2018, and again on December 3, 2018, *see* C.J. Decl. ¶ 18.

DOCCS never sought or obtained from C.J. an extension of time to respond to his appeal or transit his appeal to CORC. *Id.* ¶ 19. When CORC failed to respond, C.J. wrote two separate letters to the Green Haven Grievance Program Supervisor seeking confirmation under § 701.5(d)(3)(i) that his appeals were transmitted. *Id.* ¶ 20. In response, the Grievance Clerk told C.J. that he had handed the appeals to the Grievance Program Supervisor for transmittal to CORC. *Id.* ¶ 21. The supervisor later confirmed in writing that he received C.J.'s CORC appeal, but that grievance staff inexplicably waited over two months to transmit it to CORC. *Id.* ¶ 22. This lawsuit was filed 56 days after C.J. filed his first CORC appeal. *Id.* ¶ 23.

3.      *M.J., M.G., and P.C. Filed CORC Appeals.*

On October 18, 2018, while incarcerated in Fishkill Correctional Facility, M.J. filed his initial grievance. M.J. Decl. ¶ 11. Before Fishkill grievance staff responded, DOCCS transferred M.J. to Green Haven Correctional Facility. *Id.* ¶ 12. Fishkill did not forward its grievance response to M.J. at his new facility, leaving him "very confused about how to exhaust [his] grievance." *Id.* ¶ 13. Because M.J. did not receive a denial of his Fishkill grievance within the regulatory time limit, and did not have an appeal form on which to submit his appeal, on November 17, 2018, he mailed a letter to the Fishkill grievance clerk stating his intent to appeal the constructive denial of his grievance. *Id.* ¶ 15. On December 2, 2018, he received the Fishkill

17

superintendent's denial of his appeal. *Id.* ¶ 17. The next day, he mailed a CORC appeal to the Fishkill grievance clerk. *Id*. ¶ 18.

On November 13, 2018, M.G. filed a grievance alleging discrimination, and the agency properly forwarded it directly to the superintendent. Quackenbush Decl. Ex. 101; M.G. Decl. ¶¶ 10-13. On November 26, 2018, M.G. received the superintendent's denial, which stated that the grievance was forwarded to the OMH Unit Chief for "whatever remedial action is deemed appropriate." Quackenbush Decl. Ex. 102; M.G. Decl. ¶ 14. It also stated that "[t]his Superintendent's response completes the grievance process and there is no further appeal available." *Id.* M.G. nevertheless signed and submitted a CORC appeal on the day that he received the denial. Quackenbush Decl. Ex. 102; M.G. Decl. ¶ 15.

P.C. also filed a discrimination grievance, and on December 3, 2018, he received the Superintendent's denial. Declaration of P.C. ("P.C. Decl.") ¶¶ 6-8. The next day, he signed and submitted his CORC appeal. *Id.* ¶ 9.

DOCCS never sought or obtained from M.J., M.G., or P.C. an extension of time under § 701.6(g)(2) to respond to their appeals. When CORC failed to timely respond, M.J., M.G., and P.C. individually took the additional step of sending letters to the appropriate grievance clerks under § 701.5(d)(3)(i), seeking confirmation that their respective appeals were transmitted. The complaint was filed 52 days (M.J.), 58 days (M.G.), and 50 days (P.C.) after these Plaintiffs filed their CORC appeals. *See* M.J. Decl. ¶ 18; Quackenbush Decl. Ex. 102; P.C. Decl. ¶ 9. Almost one year later, CORC still has not adjudicated them.

These facts make clear that dismissal for non-exhaustion is unwarranted. The failure to exhaust is an affirmative defense that is Defendants' burden to establish. *Hubbs*, 788 F.3d at 59.

    4.     *DOCCS' Pattern of Delaying CORC Appeals Cannot Defeat the Named Plaintiffs' Exhaustion Attempts.*

At the outset, DOCCS' failure to timely adjudicate Named Plaintiffs' CORC appeals is not unique to this case. Far from it. DOCCS' own data shows that it has flagrantly disregarded state law governing the adjudication of CORC appeals for almost a decade, with delays worsening over time.[42]

Consistent with its longstanding practice, CORC ignored its 30-day deadline to adjudicate each Named Plaintiff's appeal. Plaintiffs waited at least an additional 15 days before submitting letters seeking confirmation that their appeals were transmitted. To this day, CORC has persisted in its failure to adjudicate Plaintiffs' appeals. CORC even informed D.R. that it would not issue a decision for *approximately one year*, D.R. Decl. ¶ 19, during which time Defendants presumably expected D.R. and the other Plaintiffs to wait patiently in prison—already well past their release dates—without seeking redress from the federal courts for egregious violations of federal law. *Cf. Bell v. Napoli*, No. 17-CV-850, 2018 WL 6506072, at *7 (N.D.N.Y. Dec. 11, 2018) ("[B]y ignoring an inmate's appeal, . . . CORC could delay a plaintiff's exhaustion indefinitely, making the remedy 'unavailable' by thwarting plaintiff's attempt to exhaust."). The PLRA does not require such an absurd result. *Id.*; *see Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (noting that courts have long "refuse[d] to

---

[42] Annual reports that DOCCS has posted online—of which the Court can take judicial notice, *see United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017)—show that 2009 was the last year DOCCS issued CORC decisions timely, in compliance with state law. That year, CORC adjudicated appeals within an average of 26.3 calendar days from the date they were received. *See* Quackenbush Decl. ¶ 7. In 2010, the average increased to 55 days. *Id.* ¶ 8. In 2011, it was 74 days. *Id.* ¶ 9. The next year, it ballooned to 119 days. *Id.* ¶ 9. Finally, in 2013, the average jumped to 150 days, a delay five times the length allowed by state law. *Id.* ¶ 10. After 2013, DOCCS simply stopped publishing these reports. *Id.* Ex. 100.

interpret the PLRA so narrowly as to permit prison officials to exploit the exhaustion

requirement through indefinite delay in responding to grievances") (citations omitted).

Contrary to Defendants' non-textual argument that a grievant must outwait CORC, it is

"the prison's requirements . . . that define the boundaries of proper exhaustion." *Jones,* 549 U.S.

at 218. While the Second Circuit has not yet addressed whether an incarcerated person must

outwait the final administrative body even when it ignores its deadline,[43] appellate courts that

*have* considered the issue uniformly agree: a prisoner has properly exhausted "when a valid

grievance has been filed and the state's time for responding thereto has expired." *Powe v. Ennis*,

177 F.3d 393, 394 (5th Cir. 1999); *see Shifflett v. Korszniak*, 934 F.3d 356, 359 (3d Cir. 2019);

*Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008); *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989,

996 (6th Cir. 2004); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).[44]

The Court should therefore apply the unanimous rule of every federal appellate court to

consider the issue—a grievant exhausts available remedies when he completes every step of the

grievance process and the deadline for the final administrative body to act has passed.[45] No other

rule comports with the Supreme Court's command that "[c]ompliance with prison grievance

procedures . . . is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

This rule is also consistent with the Second Circuit's holding that remedies are unavailable in

situations that the grievance regulations did not contemplate. *Williams*, 829 F.3d at 124. That is

---

[43] The issue is squarely presented to that Court in the pending matter of *Hayes v. Dahkle*, No. 19-0650, in which The Legal Aid Society Prisoners' Rights Project has appeared as *amicus curiae*.
[44] The "special circumstances" exception to exhaustion, subsequently rejected by the Court in *Ross v. Blake*, was not at issue in these cases. Instead, they hold either that (1) exhaustion is complete when the grievant completes each step explicitly stated in the grievance regulation, or (2) remedies become unavailable when the prison fails to respond.
[45] To the extent Defendants later rely on *Ford v. Johnson*, 362 F.3d 395 (7th Cir. 2004), to argue that exhaustion does not occur while an appeal is pending, that case is easily distinguishable, as the regulation in *Ford* did not set a hard deadline for the agency to adjudicate the appeal.

exactly where all of the Plaintiffs found themselves after timely appealing grievances to CORC, which then failed to issue decisions within its regulatory time limit. The regulations required nothing more from Plaintiffs.

      C.    <u>Defendants' Actions Rendered the Grievance Process "Unavailable" to M.J. and M.G.</u>

If the Court concludes that Plaintiffs were required to outwait CORC, there are alternative bases to conclude that DOCCS' own actions rendered the grievance process unavailable for M.J. and M.G.

After M.J. filed his grievance but before DOCCS responded, DOCCS transferred him and failed to forward the grievance response to his new facility. M.J. Decl. ¶ 12. With such a transfer, the grievance procedure "presumes that an inmate has access to [the appeals form] so that he can [appeal in compliance with § 701.5], and that he knows to which grievance clerk the appeal should be sent." *Robinson v. Ballard*, No. 13-CV-1213, 2017 WL 979047, at *12 (N.D.N.Y. Feb. 3, 2017). Because M.J. was never issued a grievance denial form on which to complete his appeal, he was "very confused about how to exhaust [his] grievance." *See* M.J. Decl. ¶ 13.

In this precise situation, the Second Circuit held that DOCCS' grievance policy was opaque and therefore unavailable. *See Williams*, 829 F.3d at 126 ("The regulations plainly do not provide guidance on how a transferred inmate can appeal his grievance with the original facility without having received a response."). The Circuit went further, recommending that "DOCCS revise its grievance procedures" to remedy this situation. *Id*. at 126-27. DOCCS has ignored this recommendation, and district courts have taken notice.[46] Because DOCCS is adhering to a

---

[46] *See, e.g.*, *Jackson v. Downstate Corr. Facility*, No. 16-CV-267, 2018 WL 3650136, at *9 (S.D.N.Y. July 31, 2018) ("DOCCS has been on notice since July of 2016 that there is a defect in their procedures which are prohibitively opaque . . ."); *Reid v. Marzano*, No. 15-CV-761, 2017 WL 1040420, at *3 (N.D.N.Y. Mar. 17, 2017) (calling DOCCS' regulation "borderline incomprehensible").

grievance policy it knows to be opaque, and therefore not required, it should not be rewarded with dismissal of M.J.'s claims.

Although M.G. was not required to submit a CORC appeal, he did so. M.G. Decl. ¶ 15. M.G.'s grievance denial stated that the grievance was forwarded to the OMH Unit Chief for "whatever remedial action is deemed appropriate" and "there is no further appeal available." Quackenbush Decl. Ex. 102. When viewed in the light most favorable to M.G., this evidence is subject to two interpretations. First, if the superintendent was being honest, there was no further action for M.G. to take and the rest of the grievance process was "a simple dead end." *Ross*, 136 S. Ct. at 1859. Second, if the superintendent was being dishonest, then he was attempting to "thwart" M.G. from "taking advantage of a grievance process through machination [or] misrepresentation." *Id.* at 1860. Under either interpretation, any further appeal procedures were "unavailable" to M.G. *See id.* ("The modifier 'available' requires the possibility of some relief.") (internal citations omitted); *see also Angulo v. Nassau County*, 89 F. Supp. 3d 541, 552 (E.D.N.Y. 2015) (stating that prison officials' erroneous or inaccurate description of grievance procedure makes administrative remedy unavailable).

III.    **Governor Cuomo is a Proper Party Because He Has "Some Connection" to the Violation of Federal Law.**

Under *Ex parte Young*, 209 U.S. 123 (1908), plaintiffs may sue a state official in his or her official capacity for prospective injunctive relief to abate ongoing violations of federal law. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 289 (2d Cir. 2003). To sustain a claim against the Governor for injunctive relief, Plaintiffs must allege "some connection" between the Governor and the violation of federal law, *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372-73 (2d Cir. 2005), but need not show personal involvement, *see Nassau & Suffolk Cty. Taxi Owners Ass'n, Inc. v. State*, 336 F. Supp. 3d 50, 68 n.9 (E.D.N.Y. 2018).

Plaintiffs have easily met their burden. Contrary to Defendants' argument, Plaintiffs need not show that the Governor was involved in the minutiae of Plaintiffs' discharge plans; rather, Plaintiffs' allegations concerning the Governor's active involvement in addressing the putative class's community-based housing needs are sufficient. FAC ¶¶ 179-87, 276-78, 281-83. Pursuant to an Executive Order, the Governor established a Cabinet responsible for *Olmstead* implementation in the state. *Id*. ¶ 185. He later established the Council on Community Re-Entry and Re-Integration to address obstacles facing formerly incarcerated people as they re-enter the community. FAC ¶¶ 276-78. Members of the Governor's office sit on the council and the Governor adopted the council's recommendations concerning mental health housing. *Id*. In his executive budget, the Governor provided funds to support these initiatives. *Id*. ¶ 281. The Governor also directly supervises state agencies and ensures that their programs are developed to meet the putative class's need for community-based mental health housing. *Id*. ¶¶ 179-83.

These allegations are sufficient to sustain a claim against the Governor, under *Ex parte Young*, for violations of the disability statutes. *See Connor B. ex rel. Vigurs v. Patrick*, 771 F. Supp. 2d 142, 159 (D. Mass. 2011) (governor had sufficient connection where he had "general executive and budgetary authority," "direct supervisory authority" over secretary who implemented agency programs, and approved appointment of commissioner); *Rolland v. Cellucci*, 52 F. Supp. 2d 231, 243 (D. Mass. 1999) (governor had sufficient connection where he "failed to enforce statutory provisions which will ensure the delivery of needed services"). Moreover, Plaintiffs will be unable to obtain full relief without access to the Governor's capital budget. *See Disability Advocates, Inc. v. Paterson*, 598 F. Supp. 2d 289, 356-57 (E.D.N.Y. 2009) (declining to dismiss governor in case related to community-based mental health housing, noting he had devoted part of his capital budget to housing initiatives for people with disabilities).

23

## IV.    Incarcerating the RTF Subclass Violates the Eighth Amendment.

The Eighth Amendment bars punishment that is grossly disproportionate or violates "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (internal quotation marks omitted). Because the Eighth Amendment protects against prolonged incarceration and the criminalization of status, Plaintiffs' allegations are sufficient.

### A.    Plaintiffs State a "Prolonged Incarceration" Claim.

Confinement that exceeds a term of imprisonment violates the Eighth Amendment if (1) the alleged deprivation is, "in objective terms, 'sufficiently serious'" and (2) defendants acted with "a sufficiently culpable state of mind."[47] *Francis v. Fiacco*, No. 18-1011, 2019 WL 5876504, at *17 (2d Cir. Nov. 12, 2019) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994));[48] *see Calhoun v. New York State Div. of Parole Officers*, 999 F.2d 647, 654 (2d Cir. 1993) (considering whether length of added confinement inflicts "a harm of . . . magnitude") (quoting *Sample*, 885 F.2d at 1109). The requisite state of mind is deliberate indifference. *E.g.*, *Calhoun*, 999 F.2d at 654. In this context, it requires a showing that an official knows the risk of "unwarranted punishment," "failed to act or took only ineffectual action," and "a causal connection [exists] between the official's response . . . [and] unjustified detention." *Rivera v. Carroll*, No. 07-CV-7847, 2009 WL 2365240, at *6 (S.D.N.Y. Aug. 3, 2009) (internal quotation marks omitted); *see Sample*, 885 F.2d at 1110.

---

[47] Defendants appear to claim unchecked authority to ignore court sentences and indefinitely incarcerate people with disabilities in asserting "penological justifications" for their actions. Defs.' Mem. at 21-22. But confinement past a sentence cannot be so justified because "purposes served by . . . time in [prison] were fulfilled as of th[e] date" of release pronounced by Plaintiffs' sentencing judges. *Sample v. Diecks*, 885 F.2d 1099, 1108 (3d Cir. 1989). Further, "penological justification" is not part of this circuit's analysis. *See, e.g.*, *Francis*, 2019 WL 5876504, at *17.
[48] While *Francis* addressed the Eighth Amendment standard for prolonged incarceration claims, the panel did not reach the merits of the plaintiff's claim. 2019 WL 5876504, at *9 n.10.

First, Defendants imprisoned Plaintiffs between 246 and 502 days past the end of their

sentences, FAC ¶¶ 54, 90, 119, 148, lengths that are sufficiently serious, *cf. Rivera*, 2009 WL

2365240, at *3, 7-8 (plaintiff who alleged 47-day over-detention adequately pleaded deliberate

indifference). Second, Defendants were deliberately indifferent as they knew of Plaintiffs'

release dates, housing needs, and the systemic deficiencies in housing. *E.g.*, FAC ¶¶ 230, 273-75,

279-80, 283; *see Sample*, 885 F.2d at 1110-11 (deliberate indifference shown by defendant's

belief that he alone could remedy prison release problem and only took action he knew would be

futile). Finally, Defendants purposefully kept Plaintiffs in prison, causing the prolonged

incarceration. FAC ¶¶ 354-59, 367-69, 373; *see Murphy v. Raoul*, 380 F. Supp. 3d 731, 765

(N.D. Ill. 2019) (decisions to confine people connected defendants to unjustified detention).

   B.    Plaintiffs Properly State a "Criminalization of Status" Claim.

   The Eighth Amendment bars punishment of a status or condition and involuntary conduct

that is inseparable from it. *See Robinson v. California*, 370 U.S. 660, 666-67 (1962) (noting that

penalizing mental illness is "universally thought" to be cruel and unusual); *see also Powell v.

Texas*, 392 U.S. 514, 551-52 (1968) (White, J., concurring) (addressing involuntary conduct).

   Defendants engage in the very conduct condemned in *Robinson* and its progeny. They

prolong Plaintiffs' incarceration due to Plaintiffs' need for mental health housing and

homelessness, which results from indigence and Defendants' failure to develop housing. FAC

¶¶ 251-55, 357. Circuit courts have repeatedly found analogous forms of conduct

unconstitutional. *See Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 281 (4th Cir.

2019) (punishment of addiction); *Martin v. City of Boise*, 920 F.3d 584, 615-18 (9th Cir. 2019)

(punishment of homelessness); *Murphy*, 380 F. Supp. 3d at 764-65 (practice of making prison

release contingent on securing a residence when plaintiffs were homeless and defendants rejected

shelters). In sum, Plaintiffs adequately allege that Defendants criminalize their status as people with mental illness at risk of homelessness.

## V.    Plaintiffs' Substantive Due Process Claims Should Proceed.

The Fourteenth Amendment prohibits the arbitrary exercise of government power. *County of Sacramento v. Lewis*, 523 U.S. 833, 845-47 (1998). Where government action infringes on a fundamental liberty interest, the court must assess whether the conduct is narrowly tailored to serve a compelling state interest. *Reno v. Flores*, 507 U.S. 292, 301-02 (1993); *see United States v. McLaurin*, 731 F.3d 258, 261 (2d Cir. 2013); *Doe v. Lima*, 270 F. Supp. 3d 684, 702 (S.D.N.Y. 2017) (applying strict scrutiny), *aff'd sub nom. Doe v. Cappiello*, 758 F. App'x 181 (2d Cir. 2019). Further, the challenged conduct must "shock the contemporary conscience." *Lewis*, 523 U.S. at 847 n.8. Plaintiffs' allegations meet each element.

Each Plaintiff has a fundamental liberty interest in freedom from physical detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (plurality opinion); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint [is] . . . at the core of the liberty protected by the Due Process Clause."); *see Calhoun*, 999 F.2d at 653 (discussing "liberty interest in being released upon the expiration of [a] maximum term of imprisonment"). Defendants infringe on Plaintiffs' liberty by holding them in prison long after their sentences have ended. FAC ¶¶ 255, 268, 284, 380; *see Davis v. Hall*, 375 F.3d 703, 712, 714 (8th Cir. 2004) (holding that 57-day incarceration after release order violated liberty interest) (collecting cases). In all respects, Plaintiffs are treated exactly like prisoners.[49] FAC ¶¶ 289-318. Strict scrutiny therefore applies.

Defendants' punitive conditions are not narrowly tailored to serve a compelling state interest. Defendants held Plaintiffs due simply to housing unavailability, FAC ¶¶ 72, 106, 132,

---

[49] Arguing that "RTF status is similar to general conditions in DOCCS facilities," Defs.' Mem. at 21, Defendants greatly understate Plaintiffs' reality.

166, 354, a situation hardly approaching the requisite compelling state interest.[50] *See Demore v. Kim*, 538 U.S. 510, 549 (2003) (stating that only "a sufficiently compelling" need justifies detention) (internal quotation marks omitted). Further, prison confinement is an extreme condition, not narrowly tailored to address the inadequacy of housing, particularly when supportive services exist to aid community integration and are substantially less restrictive. FAC ¶¶ 342, 382-83; *see Doe v. Annucci*, No. 14-CV-2953, 2015 WL 4393012, at *13 (S.D.N.Y. July 15, 2015) (holding that ban on contact between father and child was not narrowly tailored given lack of justification and a balance of interests favoring reunification or "an intermediate step").

Finally, Defendants' conduct shocks the conscience because they knew about Plaintiffs' release dates, needs, and housing unavailability, and yet imposed RTF status and punitive conditions. FAC ¶¶ 357-60; *see Lewis*, 523 U.S. at 850-51 (holding deliberate indifference can shock the conscience); *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017) (defining deliberate indifference under the Fourteenth Amendment); *Davis*, 375 F.3d at 718-19 (finding duration of wrongful incarceration and awareness of sentence supports finding of deliberate indifference).

In asserting that the Fourteenth Amendment does not apply, Defendants seek to benefit from having placed Plaintiffs in legal purgatory. They acknowledge that Plaintiffs are not "inmates still serving terms of incarceration." Defs.' Mem. at 21 n.12; *see id.* at 21-22. In fact, Plaintiffs' supervision status means they enjoy substantive due process protections. *Cf. Jacobs v. Ramirez*, 400 F.3d 105, 106-07 (2d Cir. 2005) (per curiam) (holding substantive due process

---

[50] Defendants assert that Plaintiffs were held for their well-being or community safety. Defs.' Mem. at 21-22. This justification is self-serving. To the extent these concerns exist, they arise only incident to Defendants' systemic inadequacies. Defendants' assertion also leads to unconscionable results: it would allow the State to imprison its way out of developing adequate mental health services in poor communities. Even if credited, preventive detention violates due process. *See Foucha*, 504 U.S. at 83 (invalidating law allowing indefinite detention of insanity acquittees who, though now psychiatrically stable, "do not prove they would not be dangerous").

applied to parolee). Defendants now argue that having "released" Plaintiffs to prisons, only the

Eighth Amendment applies. The Second Circuit has not settled whether substantive due process

applies to claims of prolonged incarceration. *See generally Akande v. U.S. Marshals Serv.*, 659

F. App'x 681, 684 (2d Cir. 2016) (analyzing Eighth Amendment prolonged incarceration claim

without determining the Eighth Amendment exclusively applies). The Court should find it does.

**VI.    The Court Should Address Sovereign Immunity At a Later Stage, If At All.**

OMH's and DOCCS' assertion of immunity from suit under Title II of the ADA is

premature and the Court should not consider it at this stage for two reasons.

First, the Court should decline to address whether Title II validly abrogates states'

sovereign immunity because Plaintiffs can obtain relief under Title II from the official-capacity

Defendants. *See Mary Jo C. v. New York State & Local Ret. Sys.*, 707 F.3d 144, 166 (2d Cir.

2013) (declining to address whether a state agency was immune from suit under Title II and

allowing plaintiffs' official capacity claims to proceed). To hold otherwise would run afoul of

the well-settled policy of first considering a non-constitutional ground for a decision. *Gulf Oil*

*Co. v. Bernard*, 452 U.S. 89, 99 (1981); *Mary Jo C.*, 707 F.3d at 166.

Second, the Court has subject-matter jurisdiction irrespective of the State's purported

immunity from the Title II claim because the Rehabilitation Act claim must proceed against

OMH and DOCCS regardless. *See Ross v. C.U.N.Y.*, 211 F. Supp. 3d 518, 528 (E.D.N.Y. 2016).

The rights and remedies under the ADA and the Rehabilitation Act are coextensive, and thus

discovery will be the same for both claims. *Smith v. Twp. of Warren*, No. 14-CV-7178, 2016 WL

7409952, at *12 (D.N.J. Dec. 22, 2016). Accordingly, "[t]he specific indignity against which

sovereign immunity protects"—"the insult to a State of being haled into court"—is not

implicated. *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 258 (2011); *see Smith v.*

*Reagan*, 841 F.2d 28, 30 (2d Cir. 1988) ("The purpose of early determinations of immunity

defenses is, after all, to lift the burdens of litigation from a defendant who should not be a party at all."). The Court should thus reserve judgment on constitutional questions given the possibility Plaintiffs will obtain relief under the Rehabilitation Act against the agency Defendants and under Title II against the official-capacity Defendants. *See Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 455 (5th Cir. 2005); *Smith*, 2016 WL 7409952, at *12.[51]

If the Court chooses to reach sovereign immunity, it should find the ADA claim against OMH and DOCCS should proceed because Congress validly abrogated sovereign immunity with respect to the conduct alleged in the Amended Complaint. *See United States v. Georgia*, 546 U.S. 151, 159 (2006) (concluding that Congress may properly abrogate states' immunity from suit under Title II even where the misconduct does not violate the Fourteenth Amendment). Title II constitutes prophylactic legislation designed to reverse an identified pattern of institutionalization of people with disabilities, including in the criminal justice system. *See* 42 U.S.C. § 12101; U.S. Commission on Civil Rights, *Accommodating the Spectrum of Individual Abilities* at 20, 33-34, 168 (1983) (identifying protracted history of over-incarceration and segregation of persons with serious mental illness), *cited by* H.R. Rep. No. 101-485, pt. 2, at 28 (1990). Indeed, the State of New York has previously (and correctly) argued that Title II is "congruent and proportional to the evils found by Congress." Brief for the States of New York *et al.* as Amici Curiae in Support of Respondents, *Tennessee v. Lane*, 541 U.S. 509 (2004) (No. 02-1667), 2003 WL 22733906, at *16. Accordingly, the Court should permit the ADA claim against DOCCS and OMH to proceed.

---

[51] Further, because it is an open question in the Supreme Court and Second Circuit whether sovereign immunity is "a true issue of subject matter jurisdiction or . . . an affirmative defense," *Carver v. Nassau Cty. Interim Fin. Auth.*, 730 F.3d 150, 156 (2d Cir. 2013), the Court should avoid reaching the constitutional question at this stage.

29

**VII.    The Court Should Reject Defendants' Arguments Concerning the Redundancy or Duplication of Claims.**

The Court should deny Defendants' argument that the official-capacity claims are redundant of those asserted against the State agencies. Under the doctrine announced in *Ex parte Young*, the Supreme Court established that Title II and Rehabilitation Act suits for prospective injunctive relief may proceed against officers in their official capacities. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Courts are not required to dismiss official-capacity claims as duplicative of those asserted against the State. Dismissal is inappropriate here because Plaintiffs allege the involvement of each official-capacity Defendant in the misconduct. *See* FAC ¶¶ 158, 179-86, 193-95, 202-03, 206, 270, 276-83, 324, 359, 367, 369, 371, 406, 417. Further, dismissal will not conserve resources, as the official-capacity Defendants must remain in this action to defend against other claims. *See Butterfield v. New York*, No. 96-CV-5144, 1998 WL 401533, at *16 (S.D.N.Y. July 15, 1998) (allowing ADA and Rehabilitation Act claims to proceed simultaneously against agency and official-capacity defendants).[52]

Finally, to the extent Defendants contend that Plaintiffs' ADA claim should be dismissed as duplicative of the Rehabilitation Act claim, *see* Defs.' Mem. at 19-20, the argument is meritless. Courts routinely permit ADA and Rehabilitation Act claims to proceed simultaneously, *see, e.g.*, *Henrietta D.*, 331 F.3d at 291, and the Court should in this instance.

## CONCLUSION

For the reasons above, Defendants' motion should be denied in its entirety.

---

[52] Presumably Defendants' contention that the Title II official capacity claim is redundant is contingent on the Court concluding that Congress validly abrogated states' sovereign immunity from suit under Title II. *See, e.g.*, *Mary Jo C.*, 707 F.3d at 166 (official-capacity suits permitted for prospective injunctive relief under Title II, notwithstanding the Eleventh Amendment). Because, as discussed above, the Court should not reach the constitutional question at this stage, Plaintiffs' ADA claim should proceed against all Defendants.

30

Dated:  November 18, 2019
        New York, New York

DISABILITY RIGHTS NEW YORK

Elena M. Landriscina
Joshua Rosenthal
Betsy Sterling
25 Chapel Street, Suite 1005
Brooklyn, New York 11201
Telephone:      (518) 432-7861
E-mail:         elena.landriscina@drny.org
                joshua.rosenthal@drny.org
                betsy.sterling@drny.org

THE LEGAL AID SOCIETY PRISONERS'
RIGHTS PROJECT
Janet E. Sabel, Attorney-in-Charge


Stefen R. Short
Robert M. Quackenbush
Veronica Vela
199 Water Street, 6th Floor
New York, New York 10038
Telephone:      (212) 577-3530
E-mail:         sshort@legal-aid.org
                rquackenbush@legal-aid.org
                vvela@legal-aid.org

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP


Walter G. Ricciardi
Emily A. Vance
Lane B. Zuraw
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone:      (212) 373-3000
Email:          wricciardi@paulweiss.com
                evance@paulweiss.com
                lzuraw@paulweiss.com

*Attorneys for Plaintiffs*

31

Dated: November 18, 2019
      New York, New York

DISABILITY RIGHTS NEW YORK

_____

Elena M. Landriscina
Joshua Rosenthal
Betsy Sterling
25 Chapel Street, Suite 1005
Brooklyn, New York 11201
Telephone:    (518) 432-7861
E-mail:       elena.landriscina@drny.org
              joshua.rosenthal@drny.org
              betsy.sterling@drny.org

THE LEGAL AID SOCIETY PRISONERS'
RIGHTS PROJECT
Janet E. Sabel, Attorney-in-Charge

_____

Stefen R. Short
Robert M. Quackenbush
Veronica Vela
199 Water Street, 6th Floor
New York, New York 10038
Telephone:    (212) 577-3530
E-mail:       sshort@legal-aid.org
              rquackenbush@legal-aid.org
              vvela@legal-aid.org

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP

_____

Walter G. Ricciardi
Emily A. Vance
Lane B. Zuraw
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone:    (212) 373-3000
Email:        wricciardi@paulweiss.com
              evance@paulweiss.com
              lzuraw@paulweiss.com

*Attorneys for Plaintiffs*

31

Dated: November 18, 2019
      New York, New York

                    DISABILITY RIGHTS NEW YORK

                    _____

                    Elena M. Landriscina
                    Joshua Rosenthal
                    Betsy Sterling
                    25 Chapel Street, Suite 1005
                    Brooklyn, New York 11201
                    Telephone:    (518) 432-7861
                    E-mail:       elena.landriscina@drny.org
                                      joshua.rosenthal@drny.org
                                      betsy.sterling@drny.org

                    THE LEGAL AID SOCIETY PRISONERS'
                    RIGHTS PROJECT
                    Janet E. Sabel, Attorney-in-Charge

                    _____

                    Stefen R. Short
                    Robert M. Quackenbush
                    Veronica Vela
                    199 Water Street, 6th Floor
                    New York, New York 10038
                    Telephone:    (212) 577-3530
                    E-mail:       sshort@legal-aid.org
                                      rquackenbush@legal-aid.org
                                      vvela@legal-aid.org

                    PAUL, WEISS, RIFKIND, WHARTON
                    & GARRISON LLP

                    Walter G. Ricciardi
                    Emily A. Vance
                    Lane B. Zuraw
                    1285 Avenue of the Americas
                    New York, New York 10019-6064
                    Telephone:    (212) 373-3000
                    Email:         wricciardi@paulweiss.com
                                      evance@paulweiss.com
                                      lzuraw@paulweiss.com

                    *Attorneys for Plaintiffs*