# Exhibit 87

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ---------------------------------x

3   M.G., P.C., C.J., M.J., J.R., and
    D.R., individually and on behalf
4   of others similarly situated,

5                   Plaintiff,

6        -against-                    19 Civ. 639

7   ANDREW CUOMO, in his official
    capacity as the Governor, et al.,
8
                    Defendants.
9
    ---------------------------------x

10

11                           United States Courthouse
                             White Plains, New York
12
                             November 6, 2019
13

14
                     HONORABLE LISA MARGARET SMITH,
15                           United States Magistrate Judge

16

17

18  DISABILITY RIGHTS NEW YORK
                Attorneys for Plaintiffs
19  BY:   JOSHUA M. ROSENTHAL

20

21  NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL
                Attorneys for Defendants
    BY:   JEB HARBEN
22

23

24

25

                    Angela O'Donnell, RPR, 914-390-4025

 1              THE CLERK:  In the matter of MG, et al. versus Cuomo,
 2     et al.
 3              Counsel, please note your appearance for the record.
 4              MR. ROSENTHAL:  Joshua Rosenthal from Disability
 5     Rights New York for the plaintiffs.
 6              MR. HARBEN:  Jeb Harben from the New York Attorney
 7     General's office for defendants.
 8              THE COURT:  Good afternoon, counsel.  What can I do
 9     for you today?
10              Mr. Rosenthal.
11              MR. ROSENTHAL:  Thank you, your Honor.  We have just
12     one issue to raise with the Court today regarding two of the
13     priority discovery requests that we've been discussing.
14     Specifically, amici interrogatories three and four which sought
15     data regarding the number of putative class members in this
16     case.  We received a response from defendants to these
17     interrogatories on October 2nd, per the Court's order, but
18     discovered several deficiencies in that response.
19     Specifically, that it was not possible to determine based on
20     the data that was provided the true number of putative class
21     members and that the data didn't cover the period of time
22     requested for that census.  We raised these deficiencies with
23     defendants almost one month ago but heard from them just this
24     week that while there were deficiencies and while it was
25     possible to correct them, that they would not be able to do so

1  before November 18th, our filing date for the opposition brief,

2  because of staffing concerns at DOCCS.

3         Defendants had offered to further narrow these

4  requests as a priority matter asking for a supplementation by

5  early next week for data for just three specific months but

6  defendants were not able to agree to that either.

7         These data are relevant to our forthcoming opposition

8  brief, specifically, the issue of mootness, and we have asked

9  defendants to supplement the data at least several days before

10 that brief is due.

11        THE COURT:  Mr. Harben.

12        MR. HARBEN:  Your Honor, as a preliminary matter,

13 while we are working on getting more information for these

14 interrogatory responses, we provided two very detailed

15 spreadsheets that were created that have a tremendous amount of

16 information that doesn't necessarily -- necessarily only

17 limited to potential class members because actually the

18 interrogatories didn't ask for it to be limited, in fact, asked

19 for pretty much everybody who's been held past their release

20 date so that (indiscernible) more information than we needed

21 out of DOCCS which may have complicated matters a little bit.

22        So we raised, we forwarded all plaintiffs' concerns

23 and requests for some more details about certain aspects of

24 these interrogatory responses to Department of Corrections, and

25 they got back to us and sent us a number of historical

1  spreadsheets from 2017/2018 that I guess showed some of the

2  universe of what we're talking about of the inmates who were

3  being held during periods in those years which does not

4  entirely -- unfortunately, this took quite a while, and I think

5  DOCCS thought they were answering our questions by providing

6  these historical spreadsheets, but they don't quite answer

7  everything that the plaintiffs' wanted, and they also require a

8  certain amount of extraction and follow-up from me.  We are

9  talking about quite a few people here, not necessarily people

10  who qualify under any of the definitions of the class, so it's

11  a matter of culling some of these people out to actually give

12  plaintiffs a better sense of things.  And so one thing I'd like

13  to raise, your Honor, is while we want to work forward toward

14  getting this information to plaintiffs, because I want to also

15  have a better idea of the numbers that we're talking about,

16  this really has nothing to do with the current motion to

17  dismiss.  We never challenged whether there could be -- we did

18  not seek to strike any class an allegations.  We did not claim

19  that there's an insufficient number of potentially impacted

20  people for there would be a class, and we did not claim that

21  this isn't a group of people that's constantly shifting that

22  new people (indiscernible) coming in with other people leaving

23  as they get released, we never made any of those allegations.

24  I mean not allegations, any of those claims on our motion to

25  dismiss.  Which would possibly raise the issue of historical

1  data and the size of the potential putative class which might

2  make it relevant on a motion to dismiss if we actually raised

3  any of those arguments, but we did not because there's no real

4  good way for us to raise it on a motion to dismiss where we

5  can't bring in outside information anyway.

6          The only thing that we pointed out that five of the

7  six main plaintiffs had been released, and you know, very

8  fairly limited mootness argument which plaintiffs took a vast

9  amount of discovery on to get pretty much every document

10  possible that mentioned any of these plaintiffs to see if, I

11  guess this is laid out in one of their letters, to see if

12  they've been cherrypicked to get out so that we could create

13  mootness or anything along those lines.  That discovery has

14  been provided.  It's not really the subject of these

15  interrogatories.  These interrogatories are more big-picture

16  issues, and since we had not sought to strike class allegations

17  or even infer that there could not be a class based on numbers

18  or the fact that people in transient -- transient class

19  members, there (indiscernible) an issue whether this is a

20  high-priority thing that really needs to be provided while

21  we're (indiscernible) in the motion to dismiss.

22          Like I said, we're working on it.  What we got back

23  from DOCCS after waiting a while for it probably does not

24  answer everything we need, so it is a matter of probably going

25  back and following up specific requests on maybe 100, one 150

1    inmates to really get a clearer picture (indiscernible) and

2    that information I have or I had any (indiscernible) access to.

3    So they're going to have to look up individual people to

4    confirm whether they actually fit into any of the definitions,

5    whether they're actually seriously mentally ill people who were

6    held past their respective release dates because of a lack of

7    mental health housing that was deemed required by either DOCCS

8    or OMH.

9           That's our position on this.

10          THE COURT:  Mr. Rosenthal.

11          MR. ROSENTHAL:  Thank you, Judge.  With respect to

12   Mr. Harben's point regarding the relevance, I mean, as he says,

13   they do perceive the relevance of these data generally, but as

14   they've discussed in these conferences and with defendants a

15   number of times, and as we filled out in our premotion letter

16   around the motion to dismiss, the existence of a constant

17   class, mainly these specific data that we've requested, is

18   relevant to one of the mootness exceptions that plaintiffs will

19   argue apply in this case, they may be inherently transitory

20   exception.  It's one of the problems of that exception as we

21   discussed in our premotion letter.  So, yes, these data are

22   relevant to class cert on the merits going forward but also

23   have a very particular relevance to the issues that defendants

24   have raised in their motion to dismiss.

25          We understand that they've been working to compile

1  data, but they've had now months to do so, including one entire

2  month since plaintiffs first raised these issues.  So we don't

3  believe it's an unreasonable request to produce a limited set

4  of those data ahead of our brief.

5              THE COURT:  Well, Mr. Rosenthal --

6              MR. HARBIN:  Your Honor --

7              THE COURT:  Let me ask a question.

8              Mr. Rosenthal, do you not have some information from

9  which to say it's clear that even if the matter is moot as to

10  these six plaintiffs there are many, many potential class

11  members, including more than, I don't know, X number?

12             Do you have to have all of the specific detailed

13  information?

14             MR. ROSENTHAL:  Your Honor, to that point I think

15  you're entirely right that the showing does not require a

16  specific number.  We're mindful in making that showing on this

17  jurisdictional issue about the data we've received, some of it

18  defendants have said include people subject to sex offender, to

19  SORA housing restriction.  So we want to be in the best

20  position we can be in opposing the motion to dismiss to show

21  that there will be more people at risk of suffering this harm.

22             I think you're most certainly correct it does not

23  require an exact number.

24             THE COURT:  All right, Mr. Harben, you wanted to say

25  something.

1          MR. HARBEN:  Yes, your Honor.  At least one of the

2     interrogatory exhibits we produced shows, at least for the RTF

3     sub-class, which was four of the six plaintiffs in this case,

4     the people who's hit their maximum expiration, they were placed

5     in RTF during the period of supervised release, it really does

6     have -- you know, we've put in quite a few, it shows

7     historically going back to 2016 all the people who were in and

8     out of that situation, when they were -- their initial release

9     date was scheduled to be, when they actually got out, how the

10    method of their placement.  Certainly shown -- not only trying

11    to show it, but what I'm saying is we've given rough data for

12    them plaintiffs to show that this is a transitory class, people

13    that come in and out, some are only in RTFs for only a few

14    days, some are obviously longer because the main plaintiffs are

15    currently in there quite a bit longer than a few days.

16          Whether this is a transient class is not something

17    we're in a position to contest on the motion to dismiss.  That

18    would require us to put in -- argue facts that's way outside

19    the pleadings.  And I think what we've provided shows this, you

20    know, shows that nobody's -- (indiscernible) nobody's in a

21    situation permanently.  I mean, they get out.  And if that's

22    the definition of transitory class, somebody in a situation

23    where people are going to be class members for a limited period

24    of time or putative class members, what we've provided shows

25    that.  So I don't see the urgency of really, you know, the very

1    detailed information that we now have to get on more folks.

2        Not that we don't want to provide that, but just in

3    terms of the briefing schedule for the motion to dismiss, it

4    just doesn't seem necessary to their arguments.

5        THE COURT:  Mr. Rosenthal, I have to say, I'm having

6    a little trouble understanding your need for specific numbers

7    as opposed to what sounds to me like more general information

8    about the putative class.

9        MR. ROSENTHAL:  Well, I mean, I think we simply

10   wanted to be in the best position possible to be presenting the

11   state of affairs.  We will be arguing, as Mr. Harben alluded to

12   earlier, that the named plaintiffs were very quickly released

13   after this case was filed, and we would like to be in a

14   position also to see what has been going on with the putative

15   class members.  As Mr. Harben said, they have provided data on

16   those who were held past the end of their court sentence in the

17   RTF status, but not the specific data regarding they were held

18   past parole and conditional release date.  So the remaining

19   plaintiffs in the putative class.

20       THE COURT:  But from what I understand from

21   Mr. Harben, that's not an issue they're going to argue about.

22   It may be that you can't provide specific numbers, but he's not

23   going to be in a position to argue that no such putative class

24   members exist.

25       MR. ROSENTHAL:  Yes, your Honor, we've heard

Angela O'Donnell, RPR, 914-390-4025

1    something akin to that before, but I don't think we've heard

2    such a clear statement from defendants' counsel on that until

3    just now.

4            MR. HARBEN:  We certainly did not argue anything like

5    that in the motion to dismiss.  So it's certainly not something

6    we would be able to raise on reply all of a sudden.  So I think

7    we're stuck with the arguments we made in our motion to

8    dismiss.  We weren't attacking numerosity or claiming it wasn't

9    a transitory class, we were only saying five out of six of

10   these named plaintiffs have been released.

11           THE COURT:  Mr. Rosenthal, in the best of all

12   possible worlds, I would order Mr. Harben to turn around

13   tomorrow and produce the additional, detailed information, but

14   I'm not hearing that that's even possible, and it's very

15   important that this motion go forward, I think.

16           As you know, we are on the record, you have

17   Mr. Harben making commitments about what the argument is and

18   what it would not be in a manner that would handicap plaintiffs

19   in responding to the motion to dismiss in the manner that I

20   think carries your message.

21           MR. ROSENTHAL:  Understood, your Honor.  We certainly

22   do not want to push the briefing schedule out any further than

23   it is, and hearing now from defendants that they will not be in

24   a position to contest this issue of constant class, I think we

25   can move forward without an order requiring them to do so in

Angela O'Donnell, RPR, 914-390-4025

1   the next week.

2           THE COURT:  All right.  Good.

3           And is there anything else then that I can be of

4   assistance with for plaintiffs, Mr. Rosenthal?

5           MR. ROSENTHAL:  Your Honor, we -- defendants have

6   provided a redaction and privilege log which we reviewed.

7   We've come to believe there are several deficiencies in that

8   log; however, we have raised that just yesterday with the

9   defendants, and we're still hopeful that the parties can work

10  that out amongst themselves.

11          THE COURT:  All right.

12          Mr. Harben, from your perspective, anything?

13          MR. HARBEN:  I just want to add that what I'm talking

14  about is on the motion to dismiss, not any further issues in

15  this case.  Obviously, if there ever comes a time when we have

16  to look at a potential class size or anything like that, this

17  discovery is going to be provided, and I'm working on it and I

18  will continue to work on it as hard as I can in the coming

19  weeks to provide it, but just for the purposes of this motion

20  to dismiss, I agree it's not necessary to resolve it.  You

21  know, as a matter of fact, the last I heard there are no

22  potential putative class members in RTFs right now, that's the

23  last I heard, but that's irrelevant for the motion to dismiss.

24  That's not something I can put in on a reply or an affidavit or

25  anything and so that's moot.  That's not something that's --

 1    that's not going to be raised as an issue on this motion to

 2    dismiss.

 3              THE COURT:  All right.  Good.

 4              MR. ROSENTHAL:  Thank you, your Honor.

 5              THE COURT:  I do think the motion is going to be

 6    fully submitted by December 2nd.  It's going to be handled, I

 7    expect, unless something changes, by Judge Seibel.  Tell me

 8    your opinions about whether we should further proceed with

 9    discovery pending a decision on the motion to dismiss or

10    whether I should stay discovery until a decision is rendered.

11              Mr. Rosenthal.

12              MR. ROSENTHAL:  Your Honor, plaintiffs believe, I

13    think this won't come as a surprise, that discovery should

14    continue while the motion to dismiss is pending just as

15    originally discovery was open even with the premotion letter on

16    file.  We believe that the issue here is of sufficient gravity

17    and there are, as we do see from these data, people are

18    remaining in prison days past their release date, almost weeks.

19    We think that discovery should proceed to continue to conduct

20    this case in a most efficient manner.

21              THE COURT:  Mr. Harben.

22              MR. HARBEN:  We would be in favor of a stay, we've

23    produced -- Jane probably knows the exact number of documents

24    thus far, the page total may be approaching 100,000, I'm not

25    sure.  We've produced quite a bit of materials already, and we

1    would be in favor of a stay.  We think that certainly whatever

2    we produced is more than enough to deal with anything -- any

3    issues on the motion to dismiss.

4         THE COURT:  Well, I'm of the opinion that Judge

5    Seibel is quite prompt in her review of motions.  I don't

6    expect this to be pending for a long period of time.  And it's

7    abundantly clear to me that perhaps because of the way much of

8    this information is logged and maintained that the process of

9    gathering and producing material is extremely time consuming,

10   and I don't want to be in a position where the motion is

11   decided in favor of plaintiffs and we've made no progress, and

12   in addition to which, if I were to stay discovery, the current

13   progress will have ground to a halt.  And just getting the

14   process moving again will take time, and I think that does

15   damage to the process.  So I think we should continue to move

16   forward with discovery pending a decision on the motion.

17   Probably either in December or early in the new year.  And,

18   again, I don't think it does terrible damage to either side to

19   proceed in that fashion.

20        I'm inclined to say that we should speak again in

21   early January unless counsel thinks otherwise.

22        MR. HARBIN:  Your Honor, I understand the concern

23   about getting documents and extracting data for interrogatory

24   responses, but, and I have no idea if plaintiffs intended to

25   move forward with depositions, but if we could have depositions

1    at least stayed while we continue with producing more documents

2    and getting these interrogatories, interrogatory responses in a

3    form that plaintiff ultimately finds acceptable, I think that

4    would make a lot of sense.

5              THE COURT:  Mr. Rosenthal.

6              MR. ROSENTHAL:  Thank you, Judge.  We believe that

7    proceeding with depositions, including specific (indiscernible)

8    depositions will actually not only not be a huge added burden

9    here but would actually help streamline discovery.  There will

10   be questions we can ask both DOCCS and OMH officials that will

11   further clarify the documents we are receiving, further clarify

12   their own information gathering mechanism and so forth.  So we

13   believe that the parties should receive with depositions.

14             MR. HARBEN:  That's very specific about some very

15   specific document collection issues, but I assume plaintiffs

16   have a lot more than that in terms of depositions moving

17   forward and then, you know, we're going in a position of, you

18   know, we're still -- you know, we still have more documents to

19   produce that are not necessarily specific to the plaintiffs,

20   and we've got to work on that and addressing anymore concerns

21   that have been raised by plaintiffs.  I don't want to -- seems

22   depositions particularly of the parties and other high-level

23   officials before the judge has even ruled seems to be jumping

24   the gun.

25             THE COURT:  Well I'll tell you what, here's what I

Angela O'Donnell, RPR, 914-390-4025

1  think.  I will stay depositions pending our next conference and

2  we'll schedule it sometime in mid-December.  In the meantime,

3  I'm try to get some sense from Judge Seibel what her

4  predilection would be on the matter.

5          How about, how about a telephone conference on

6  Wednesday, December 18th at two o'clock?

7          MR. HARBEN:  Your Honor, I may be in the middle of a

8  trial before Judge McCarthy at that time.  I'm schedule to be

9  in the middle of a trial before Judge McCarthy at that time.

10          THE COURT:  Okay.  When do you expect it to be done?

11          MR. HARBIN:  It should be a three-or-four-day trial,

12  but I hate to -- I hate to commit to that.  We have witness

13  issues.  Starting the 16th.

14          THE COURT:  How do you feel about Monday,

15  December 23rd?

16          MR. HARBEN:  I guess I'll get my Christmas shopping

17  done the 24th.  Yes, that's fine.  Is that fine with --

18          MR. ROSENTHAL:  That works for plaintiffs, your

19  Honor.  Thank you.

20          THE COURT:  Okay.  Just for your information, the

21  Court is closed on both the 24th and the 25th this year.  So

22  let's put it on for -- I have the entire day available.  Do you

23  want to do the same time as today, 3:30?

24          MR. ROSENTHAL:  That would work for plaintiffs, your

25  Honor.

```
 1                    THE COURT:  All right, 3:30.

 2                    MR. HARBEN:  Fine, your Honor.  Thank you.

 3                    THE COURT:  3:30 on Monday, December 23rd.  And as

 4      you know, if anything comes up between now and then, don't

 5      hesitate to let me know.

 6                    MR. ROSENTHAL:  Thank you, your Honor.

 7                    MR. HARBEN:  Thank you, your Honor.

 8                    THE COURT:  All right.  Thank you, counsel.

 9                    (Proceedings concluded)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```