UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- x

M.G., P.C., C.J., M.J., J.R., and D.R., individually and on behalf of all similarly situated,

                                                          Plaintiffs,

-against-

ANDREW CUOMO, in his official capacity as the Governor of the State of New York, the NEW YORK STATE OFFICE OF MENTAL HEALTH, ANN MARIE T. SULLIVAN, in her official capacity as the Commissioner of the New York State Office of Mental Health, the NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, ANTHONY J. ANNUCCI, in his official capacity as the Acting Commissioner of the New York State Department of Corrections and Community Supervision, ANNE MARIE MCGRATH, in her official capacity as Associate Commissioner of the New York State Department of Corrections and Community Supervision,

7:19-cv-0639 (CS)

**DECLARATION OF D.R.**

                                                          Defendants.

------------------------------------------------------------------------- x

        I, D.R., being competent to make this declaration and having personal knowledge of the matters stated herein, hereby declare pursuant to 28 U.S.C. § 1746, that the following is true and correct:

        1.    I am a named plaintiff in the above-captioned action. I respectfully submit this declaration in opposition to Defendants' Motion to Dismiss the First Amended Class Action Complaint.

        2.    My maximum expiration date was December 28, 2017.

        3.    Before my maximum expiration date, I was housed at Mid-State Correctional Facility.

2

4. On December 28, 2017, I was not released from custody. Instead, although DOCCS and OMH presented me with "release papers" and directed me to sign them, I was transferred to Fishkill Correctional Facility.

5. I was still referred to, and treated like, an inmate at Fishkill, despite my RTF status. In fact, I was placed in segregated confinement as punishment for disciplinary infractions, even after the expiration of my prison sentence.

6. Before my maximum expiration date, I discussed with staff at Mid-State my history of homelessness and need for community-based mental health housing. Nobody at Mid-State helped me look for housing. Mid-State staff also never told me that mental health housing might be difficult to obtain and might delay my release.

7. While at Mid-State, I gave DOCCS and OMH the address of a relative who I wanted to live with. But, as I later found out while at Fishkill, this housing option was denied. I still haven't received any explanation for this denial.

8. When I wasn't released on my maximum expiration date, I didn't understand why I was being placed on RTF status or even what RTF status was. I was very upset because I was supposed to be free. I felt I had no control over my situation. Later on, I found out that I was placed on RTF status because the community-based mental health housing I needed was not available.

9. I had no idea when, if ever, I was going to be released. Nobody ever told me how long it would be until I was released. At first, I believed I would just be held for a couple of days.

10. I participated in multiple interviews with providers of community-based housing while at Fishkill. Nothing ever came of these interviews. Even when I thought a housing interview went well, I did not know when or how soon it might result in my release.

11. As the days and then months passed and I was still stuck in Fishkill, I felt very frustrated and disturbed. Being stuck in prison past my maximum expiration date made me feel hopeless and dreadful.

12. On October 18, 2018, inside of Fishkill, I filed my initial grievance by placing it in the prison mail system for submission to the prison's grievance clerk.

13. My grievance alleged discrimination on the basis of disability, so I understood it to be an "unlawful discrimination grievance" as defined in prison's grievance directive. Therefore, my grievance should have skipped over the Inmate Grievance Resolution Committee and went directly to the Superintendent for disposition.

14. Instead, the IGRC incorrectly processed my grievance as a regular grievance.

15. Around October 25, 2018, I got a notification that the IGRC denied my grievance. On the following day, I used the IGRC Response Form (Form #2131) to check the box indicating that I disagreed with the IGRC's response and wished to appeal to the Superintendent. I signed the form and placed it in the prison mail system for delivery to the grievance clerk.

16. Around November 2, 2018 (but definitely not earlier than that date), I was served with the Superintendent's denial of my appeal, which indicated that I was being confined in a residential treatment facility past my lawful release date "due to [my] mental health status." *See* Exhibit 1, Superintendent's Response dated October 30, 2018 and served on November 2,

4

2018, and Appeal Statement dated November 8, 2018. On November 8, 2018, I wrote an appeal of the Superintendent's denial to the Central Office Review Committee ("CORC"). I signed the appeal and put it in the prison mail system for delivery to the grievance clerk.

17. Prison staff never requested from me, and I never granted to them (in writing or otherwise), an extension of time for them to respond to my CORC appeal.

18. On January 4, 2019, after far more than 30 days had elapsed since I submitted my CORC appeal, I submitted a letter to the grievance clerk seeking confirmation that my appeal was transmitted to the CORC. *See* Exhibit 2, Letter from D.R. to Fishkill Grievance Clerk dated January 17, 2019.

19. A few days later, I received a notice from the grievance clerk that stated: "Your grievance FCF 38508-18 was appealed and sent to CORC on 11/19/18. CORC will send you a notice of receipt in approximately 1 year and a decision shortly after." *See id.*

20. I believe that CORC has not yet adjudicated my appeal. But if it has, it has not sent the disposition to me.

21. On February 13, 2019, I was released from custody.

22. I was released to Pilgrim Crisis Residence in Brentwood, New York. To the best of my knowledge, every resident at Pilgrim seemingly had some type of disability.

23. I didn't know how long I was going to stay at Pilgrim, but I suspected that I wasn't going to be there for more than a couple of months because Pilgrim is transitional housing.

24. In March 2019, I was told that I was going to move to a more permanent and independent housing situation within the month.

25.    In early April, I moved into a stand-alone house that I share with one other person.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this _26_ of _August_, 2019.

_DR_
D.R.

Doc#: US1:13062518v2