UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

M.G., P.C., C.J., M.J., J.R., and D.R., individually and on behalf of all similarly situated,

                          Plaintiffs,

    -against-

ANDREW CUOMO, in his official capacity as the Governor of the State of New York, the NEW YORK STATE OFFICE OF MENTAL HEALTH, ANN MARIE T. SULLIVAN, in her official capacity as the Commissioner of the New York State Office of Mental Health, the NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, ANTHONY J. ANNUCCI, in his official capacity as the Acting Commissioner of the New York State Department of Corrections and Community Supervision, ANNE MARIE MCGRATH, in her official capacity as Associate Commissioner of the New York State Department of Corrections and Community Supervision,

                          Defendants.

7:19-cv-0639 (CS)

DECLARATION OF C.J.

------------------------------------------------------------------------ x

      I, C.J., being competent to make this declaration and having personal knowledge of the matters stated herein, hereby declare pursuant to 28 U.S.C. § 1746, that the following is true and correct:

    1.    I am a named plaintiff in the above-captioned action. I respectfully submit this declaration in opposition to Defendants' Motion to Dismiss the First Amended Class Action Complaint.

    2.    My maximum expiration date was September 28, 2017.

    3.    Before my maximum expiration date, I was placed in Sing Sing Correctional Facility's Community and Re-entry Program ("CORP."). At Sing Sing, I met with

an OMH discharge planner to discuss housing. I told the discharge planner that I wanted to be released to a shelter because I didn't have anywhere else to go.

4. I didn't have any housing interviews while at Sing Sing.

5. Staff at Sing Sing filed an SSI application on my behalf. Later, while at Fishkill, I learned that my SSI application was denied because no documentation of my mental illness was submitted. I wasn't given information on how to challenge that determination and haven't heard anything about applications for SSI, or other benefits, since.

6. About two weeks before my maximum expiration date, I was told that I wasn't going to be released because I didn't have a home address. I was told that I was on a list for community-based mental health housing and that every six months Parole would check in to see if I had a residence. Parole never checked in with me to ask about housing.

7. I was also told that placement at a shelter in Orange County was denied due to my mental illness.

8. A couple days before my maximum expiration date, Sing Sing staff told me I was going to be placed on RTF status but I didn't understand that meant I had to stay in prison.

9. On September 28, 2017, I was not released. Instead, I was transferred and held in Fishkill Correctional Facility and then Green Haven Correctional Facility.

10. At both Fishkill and Green Haven, I was treated like a prisoner even after my maximum expiration date. There were no special privileges for being on RTF status.

11. I had no idea when, if ever, I was going to be released. Nobody ever told me how long it would be until I was released.

12. As I continued to remain in prison past my release date, I became more depressed and lost hope that I would ever go home. I engaged in acts of self-harm. I missed birthdays, holidays and family events, and my relationship with my family suffered. At certain points I thought that I would rather die than stay in prison for any longer. I was repeatedly placed on suicide watch including once before my birthday after I told prison staff that I had lost all home of going home.

13. I told OMH discharge planners at Fishkill and Green Haven that I wanted to be released. The discharge planners wouldn't tell me anything about my pending release or housing options. The most I heard was that I was on a waiting list for community-based housing, but I wasn't told anything about specific housing opportunities or the types of housing that OMH was looking at.

14. OMH staff also told me that because there weren't many housing options in Orange County, which is where I was to be released, I "need to be patient."

15. On about October 8, 2018, inside of Green Haven, I filed my initial grievance by placing it in the prison mail system for delivery to the grievance clerk.

16. My grievance was assigned log number GH 90586-18. The Inmate Grievance Resolution Committee acknowledged receipt of my grievance complaint on October 16, 2018. *See* Exhibit 1, Inmate Grievance Resolution Committee Acknowledgement of Receipt dated October 16, 2018.

17. On about November 1, 2018, after a grievance hearing that morning, I received a response to my grievance. *See* Exhibit 2, Response of Inmate Grievance Resolution Committee dated November 1, 2018. The IGRC response stated, "IGRC recommends that grievant is afforded a re-entry plan as he has completed his maximum term of incarceration." On

about November 5, 2018, I used the IGRC Response Form (Form #2131) to check the box indicating that I agreed with the IGRC's response and wished to appeal to the Superintendent. I signed the form and placed it in the prison mail system for submission to the grievance clerk. *See id.*

18. The Superintendent failed to respond to my appeal. On November 28, 2018, and again on December 3, 2018, I wrote an appeal of the Superintendent's denial to the Central Office Review Committee ("CORC"). I signed both of these CORC appeals and gave them to the grievance clerk for delivery to the Inmate Grievance Program Supervisor ("IGP Supervisor"), who was responsible for transmitting them to CORC. *See* Exhibit 3, CORC Appeal dated December 3, 2018.

19. Prison staff never requested from me, and I never granted to them (in writing or otherwise), an extension of time for them to transmit my CORC appeal or to respond to my CORC appeal.

20. On or about January 13, 2019, I submitted a letter to the IGP Supervisor asking for confirmation that my appeal was transmitted to CORC. *See* Exhibit 4, Letter from C.J. to IGP Supervisor dated January 13, 2019. About five days later, I submitted a second letter to the IGP Supervisor asking for confirmation that my appeal was transmitted to CORC. *See* Exhibit 5, Letter from C.J. to IGP Supervisor dated January 18, 2019.

21. In response to both of my letters, the grievance clerk verbally confirmed that he had given my CORC appeals to the IGP Supervisor the day I submitted them and understood that the IGP Supervisor had transmitted them to CORC.

22.     Later, I received a letter from the IGP Supervisor stating that she had transmitted my CORC appeals over *two months* after I submitted them. *See* Exhibit 6, Letter from IGP Supervisor to C.J. dated February 6, 2019.

23.     After I received this letter, I confirmed with the grievance clerk that he handed my CORC appeals to the IGP Supervisor the day I filed them.

24.     The grievance clerk told me that the IGP Supervisor's conduct in failing to transmit my CORC appeal was "not right" and that he had "handed [the Inmate Grievance Program Supervisor] everything myself." The grievance clerk was angered by the IGP Supervisor's "failure to do her job."

25.     The above-captioned action was filed on January 23, 2019 – after I timely submitted two separate CORC appeals, sent the IGP Supervisor *two* letters asking for confirmation that my CORC appeals had been transmitted, *and* received verbal confirmation from the grievance clerk that he had handed my timely CORC appeals to the IGP Supervisor to be transmitted to CORC.

26.     About a week after the Complaint was filed in January, I was called down for an unexpected video interview with Middletown Transitional Residence staff. This was my first interview with a housing provider.

27.     Around this time (late January of this year), it was clear to me that prison staff had read or heard about this lawsuit and were aware that I was a plaintiff.

28.     On February 11, 2019, I was called down to the office of the Green Haven discharge planner. The discharge planner told me that she received an "urgent email" from "Albany" and that I needed to sign and complete my discharge paperwork. I was released to Middletown the next day, February 12, 2019.

6

29. Middletown staff told me that it was uncommon for someone like me to be housed at Middletown because I was a "highly functional guy" and because Middletown doesn't usually accept people straight from prison.

30. Middletown was really a place for mental health patients who had greater mental health needs than I do. For example, most residents came from psychiatric hospitals. Middletown staff told me that I am "kind of advanced" for Middletown.

31. It affected my mental health to be in this intensive and restrictive environment.

32. Life at Middletown was basically the same as it was in prison–I was supervised at all times, had to sign out if I wanted to go anywhere, and had to eat all my meals in the kitchen.

33. I told staff at Middletown that I wanted to move to housing that was more appropriate for me. They responded that "it was a process" and that it "could take a while."

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 15 of Nov, 2019.

                                                                              _____C.J._____
                                                                                    C.J.