UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

M.G., P.C., C.J., M.J., J.R., and D.R., individually and on behalf of all similarly situated,

                                                 Plaintiffs,

-against-

ANDREW CUOMO, in his official capacity as the Governor of the State of New York, the NEW YORK STATE OFFICE OF MENTAL HEALTH, ANN MARIE T. SULLIVAN, in her official capacity as the Commissioner of the New York State Office of Mental Health, the NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, ANTHONY J. ANNUCCI, in his official capacity as the Acting Commissioner of the New York State Department of Corrections and Community Supervision, ANNE MARIE MCGRATH, in her official capacity as Deputy Commissioner of the New York State Department of Corrections and Community Supervision,

                                                Defendants.

------------------------------------------------------------------------ x

7:19-cv-0639 (CS)

**DECLARATION OF M.G.**

       I, M.G., being competent to make this declaration and having personal knowledge of the matters stated herein, hereby declare pursuant to 28 U.S.C. § 1746, that the following is true and correct:

       1.    I am a named plaintiff in the above-captioned action. I respectfully submit this declaration in opposition to Defendants' Motion to Dismiss the First Amended Class Action Complaint.

       2.    I was given an open parole date of May 10, 2017.

       3.    When I reached my open parole date, I was told that I had to stay in prison because there was no community-based housing for me. Specifically, I was told that I had to

wait until permanent community-based mental health housing, with on-hand case management and mental health services, was available.

4. I asked DOCCS if I could be released to a hotel or transitional housing while I waited for permanent community-based mental health housing to open up. I never received a response to this request.

5. I had no idea when, if ever, I was going to be released. Nobody ever told me how long it would be until I was released. When I asked OMH, Parole or DOCCS staff for information, I was told to "hang in there," "have patience," and wait.

6. I filed a grievance related to my continued incarceration and was told that I needed to wait for permanent housing.

7. I was also told that I was on several waiting lists for housing and heard, at various points, that I was 100th, ninth, and first on those waiting lists.

8. I was told that until the current residents left that housing I couldn't go anywhere. I did not know how long that would take.

9. I experienced anxiety and uneasiness due to my continued confinement. Further, my marriage deteriorated as my wife didn't understand why I wasn't released and blamed me for the delay.

10. On about November 13, 2018, while inside of Auburn Correctional Facility, I filed my initial grievance by placing it in the prison mail system for delivery to the prison's grievance clerk.

11. My grievance alleged discrimination on the basis of disability, so I understood it to be an "unlawful discrimination grievance" as defined in prison's grievance directive.

Therefore, I believe that my grievance should have skipped over the Inmate Grievance Resolution Committee and gone directly to the Superintendent for disposition.

12. By letter dated November 20, 2018, my lawyers informed Auburn Correctional Facility Superintendent Timothy McCarthy that under the prison's grievance directive, the Inmate Grievance Resolution Committee was required to forward my grievance to him on November 14, 2019. My lawyers also informed Superintendent McCarthy of the proper procedure for processing my discrimination grievance under the prison's grievance directive.

13. The same day that my lawyers sent that letter, the Inmate Grievance Resolution Committee acknowledged receipt of my unlawful discrimination grievance and assigned it the log number AUB 75356-18.

14. On about November 26, 2018, I received the Superintendent's response my discrimination grievance. The Superintendent's response was incorrectly dated November 20, 2018. The response states that my grievance was forwarded to the OMH Unit Chief for "whatever remedial action is deemed appropriate." It also states that "[t]his Superintendent's response completes the grievance process and there is no further appeal available."

15. Despite this response, I still wrote an appeal of the Superintendent's response to the Central Office Review Committee by signing the bottom of the Superintendent's response (Form # 2133) and placing it in the prison mail system for submission to the grievance clerk. I submitted this appeal on or about November 26, 2018.

16. Grievance staff never requested from me, and I never granted to them (in writing or otherwise), an extension of time for them to respond to my CORC appeal.

17. On or about January 19, 2019, after far more than 30 days had elapsed since I submitted my CORC appeal, I submitted a letter to the grievance coordinator asking for confirmation that my appeal was transmitted to the CORC. I have not received a response.

18. I believe that CORC has not yet adjudicated my appeal. But if they have, they have not sent the disposition to me.

19. This spring, I heard that "Albany" was checking in on my housing search and that "Albany" was angry after a video teleconference interview for housing fell through after a provider decided not to move forward.

20. This spring I was also told that the "head of OMH" recently contacted Dutchess county to see what kind of programs the county could pull together for me.

21. I was released from custody on Tuesday, June 18, 2019.

22. I was told that I was going to be released on the Friday (June 14, 2019) before my release. Previously, OMH told me that this process would take at least two weeks.

23. When I was told I was going to be released, OMH staff said I was going to a two-person apartment with its own kitchen and bathroom. Instead, I was released to Hillcrest House where I shared a hall bathroom and didn't have access to a kitchen. While there, I ate my meals in a shared dining room. I was surprised, and a bit frustrated, when I got to Hillcrest and realized how different the accommodations were from the two-person apartment OMH told me I was getting. I told Hillcrest staff that my room at Hillcrest was "not what I was supposed to be given." They simply responded "this is what parole is paying for."

24. Hillcrest is a housing facility with a homeless shelter on one side and transitional, semi-permanent rooms on the other side, which is where I lived. People on the transitional side have a designated room where they can keep and secure their personal possessions night to night.

Nobody is allowed to stay at Hillcrest for more than two years. I was told that DOCCS paid for my room at Hillcrest for four months.

25. Hillcrest doesn't have a mental health counselor on staff and all staff, except security guards, leave at around four p.m. It would have been very helpful if there had been a trained counselor at Hillcrest to talk to and help me with this transition after decades of incarceration.

26. Although OMH staff told me I would get a voucher to buy clothes when I was released, the only thing that I got when I arrived at Hillcrest was a roll of toilet paper. I had to rely on family members to buy me clothes.

27. Before I was released, OMH staff told me that all my benefits (including SSI and Medicaid) would be set up upon my release. When I arrived at Hillcrest nothing was set up.

28. I need to take seizure and pain medications daily. OMH staff told me that this medication would be ready when I was released but it was not, and it took 1-1 ½ weeks of my sister consistently pushing this issue, with Medicaid and the pharmacy, before I received my medication.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 15th of November, 2019.

_MG_
M.G.

6