UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
M.G., P.C., C.J., M.J., J.R., and D.R., individually
and on behalf of all similarly situated,

                Plaintiffs,

            -against-

ANDREW CUOMO, in his official capacity as the         19-cv-00639 (CS) (LMS)
Governor of the State of New York, the NEW
YORK STATE OFFICE OF MENTAL HEALTH,
ANN MARIE T. SULLIVAN, in her official
capacity as the Commissioner of the New York
State Office of Mental Health, the NEW YORK
STATE DEPARTMENT OF CORRECTIONS
AND COMMUNITY SUPERVISION,
ANTHONY J. ANNUCCI, in his official capacity
as the Acting Commissioner of the New York State
Department of Corrections and Community
Supervision, ANNE MARIE MCGRATH, in her
official capacity as Associate Commissioner of the
New York State Department of Corrections and
Community Supervision,

                Defendants.
-------------------------------------------------------------x

## DECLARATION OF WENDY VOGEL

      Wendy Vogel, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury as follows:

      1.      I am employed by the New York State Office of Mental Health ("OMH") as Director of Central New York Psychiatric Center ("CNYPC") Pre-Release Services and Community Reentry. In that capacity, I oversee discharge planning for inmate patients on the OMH caseload releasing from New York State prisons, and manage the OMH housing, care coordination and training resources dedicated for this population. I have been in this position since October, 2014. I make this declaration in support of Defendants' Motion to Dismiss the

Amended Complaint. The statements made herein are based on my personal knowledge and my review of OMH documents.

### OMH Practice Regarding Housing Placements for Inmates with Serious Mental Illness at Risk of Homelessness

2.  I have been asked to inform the Court about OMH's process for locating housing placements for inmates released from the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") who are classified as having a Serious Mental Illness as defined by New York Mental Hygiene Law § 1.03(52) ("SMI") and who are at risk of homelessness because they do not have a DOCCS-approved residence upon release. This explanation does not apply to individuals who are subject to the residency restrictions of the Sexual Assault Reform Act ("SARA"), as to whom other procedures apply.

3.  Before a DOCCS inmate with SMI who is at risk of homelessness is scheduled to be released from prison, OMH prepares a Single Point of Access ("SPOA") application for community mental health housing in the county to which the inmate will be released, as determined by DOCCS. OMH policy is to prepare a SPOA application for all inmates with SMI who are at risk of homelessness and who are approaching their scheduled release date.

4.  Additionally, CNYPC Pre-Release Services performs a clinical evaluation of all SMI inmates to determine whether he or she is psychiatrically stable for community release, including consideration of access to mental health housing upon release. The results of CNYPC's clinical review are subject to further ongoing clinical evaluation by the inmate's treatment team and CNYPC.

5.  If OMH's clinical evaluation determines that the inmate is psychiatrically stable for community release, OMH's practice is that the inmate may be released from DOCCS custody upon their scheduled release date without a community mental health housing placement.

2

However, other mental health supports will be in place for such inmates. These may include linkage to mental health care coordination, mental health clinic services, and a prescription or supply of psychiatric medication as clinically indicated.

6. If OMH's clinical evaluation determines that the inmate is psychiatrically stable for community release but requires access to community mental health housing as an added layer of support, OMH's practice is to locate a placement prior to the inmate's scheduled release date, barring unforeseen circumstances. Such a placement may include state-operated residences, such as Transitional Living Residences or Transitional Placement Programs. All such post-release placements are residences located outside of prison settings and provide residents the ability to interact in the community, potentially subject to house rules regarding check-in and curfew that exist in some placements. OMH does not have the power to require an inmate to accept any particular offered community mental health housing placement.

Executed on December 13, 2019
Albany, New York

*Wendy M. Vogel*
WENDY VOGEL