UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
M.G., P.C., C.J., M.J., J.R., and D.R., individually
and on behalf of all similarly situated,

                Plaintiffs,

             -against-

ANDREW CUOMO, in his official capacity as the     19-cv-00639 (CS) (LMS)
Governor of the State of New York, the NEW
YORK STATE OFFICE OF MENTAL HEALTH,
ANN MARIE T. SULLIVAN, in her official
capacity as the Commissioner of the New York
State Office of Mental Health, the NEW YORK
STATE DEPARTMENT OF CORRECTIONS
AND COMMUNITY SUPERVISION,
ANTHONY J. ANNUCCI, in his official capacity
as the Acting Commissioner of the New York State
Department of Corrections and Community
Supervision, ANNE MARIE MCGRATH, in her
official capacity as Associate Commissioner of the
New York State Department of Corrections and
Community Supervision,

                Defendants.
---------------------------------------------------------------x

## DECLARATION OF ANA ENRIGHT

ANA ENRIGHT, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury as follows:

1.     I am the Deputy Commissioner for Parole Operations and Reentry Services of the New York State Department of Corrections and Community Supervision ("DOCCS"). In that capacity, I oversee supervision of incarcerated individuals being released from New York State prisons to local communities and subsequent community supervision of those individuals. I make this declaration in support of Defendants' Motion to Dismiss the Amended Complaint. The

1

statements made herein are based on my personal knowledge, my review of relevant DOCCS documents, and my discussions with appropriate DOCCS and New York State Office of Mental Health ("OMH") personnel.

**Background**

2. I have been asked to inform the Court of DOCCS's policy and practice regarding the release of inmates from DOCCS custody with a Serious Mental Illness diagnosis who are not subject to Sexual Assault Reform Act ("SARA") residency restrictions, but are at risk of homelessness, and who have reached the maximum expiration date of their sentence of confinement, their open parole date, or their conditional release date[1] after its final determination by a Time Allowance Committee (collectively, "scheduled release date").[2]

3. It is my understanding that Plaintiffs in this action have brought a putative class action complaint seeking to represent DOCCS inmates classified as having a Serious Mental Illness, who are not subject to SARA and who have been, or will be, held past their scheduled release dates.

4. DOCCS will not retain such inmates in DOCCS custody past their scheduled release date based on a determination by DOCCS that they may only be released from DOCCS custody into mental health housing or an appropriate residential setting. If OMH has made the clinical determination that any such inmates are psychiatrically stable for community release, DOCCS will allow such release on the inmates' scheduled release date without a community

---

[1] For the purposes of this declaration, the terms "maximum expiration date," "open parole date," and "conditional release date" are being used as they are defined by statute and applicable regulations.

[2] The final calculated conditional release date is an inmate's conditional release date as determined by a DOCCS Time Allowance Committee after it decides whether to impose any loss of "good time" that has been recommended as a result of prison disciplinary sanctions or other means.

mental health housing placement. Such release may include release to a shelter setting. If OMH has made a clinical determination that any such inmates are psychiatrically stable for community release, but require access to community mental health housing as an added layer of support, OMH has advised DOCCS that OMH will obtain community mental health housing for such inmates prior to their scheduled release date. DOCCS will continue to coordinate with OMH in this regard, as appropriate. Attached as Exhibit A is a memorandum that will be distributed to all Parole Bureau Chiefs and all prison Superintendents clarifying this policy.

5. The above practice does not impact inmates subject to SARA residency restrictions who may be retained in DOCCS custody until appropriate, SARA compliant, housing is located. It also does not impact inmates at risk for homelessness for whom appropriate nursing home or other housing is required due to medical conditions or intellectual disability and not due to their mental health status. Nor does the above policy impact inmates for whom OMH has determined that civil commitment is appropriate.

6. It is my understanding that when a DOCCS inmate classified as having Serious Mental Illness under New York Mental Hygiene Law § 1.03(52) is approaching their scheduled release date, OMH will make a clinical determination as to whether that inmate is psychiatrically stable for community release, including consideration of access to mental health housing upon release. If OMH's clinical evaluation determines that the inmate is psychiatrically stable for community release but requires access to community mental health housing as an added layer of support, OMH's practice is to locate a placement prior to the inmate's scheduled release date. Such a placement could consist of a variety of different types of housing options, including placement in a Transitional Living Residence ("TLR") or other types of housing. This housing is located outside the prison setting and it is my understanding that former inmates in such housing have a

high degree of freedom of movement in the community and are able to interact in the community. For example, it is my understanding that named Plaintiff J.R. was placed in a TLR where he was in a position to find employment in the community and within weeks was able to move out of the TLR, into his own housing, and live independently.

7. It is my understanding that the majority of inmates classified as having Serious Mental Illness are deemed by OMH to be psychiatrically stable for community release and can be released to community mental health housing or other types of housing, including shelters. This is entirely separate from whether these inmates will receive mental health treatment upon their release, which is generally a condition of their post-release or parole supervision.

8. It is my understanding, as further elaborated in the Declaration of OMH's Wendy Vogel, which is also being submitted in support of the instant motion to dismiss, that it is, and has been for several years, OMH's practice to locate a community mental health housing placement prior to the DOCCS inmate's release date, if OMH's clinical evaluation determines that the inmate is psychiatrically stable for community release, but requires access to community mental health housing as an added layer of support.

9. In the past, there have been instances where OMH made the clinical determination that an inmate who was about to reach his scheduled release date was psychiatrically stable for community release, but DOCCS officials determined that the inmate must be released to a suitable residence, and not a shelter, because their mental health status warranted it and DOCCS officials determined the inmate presented a danger to themselves and/or the community that could be reduced by placement in mental health housing upon their initial release from custody. In such situations these inmates did not have family members or others willing to provide housing to them or their own housing, which could have provided an alternative to mental health housing. In such

instances, DOCCS made the determination that releasing these particular inmates to a homeless shelter would have been inappropriate because of the safety risks to the inmate and/or the community.

10. In instances where suitable mental health housing was not available at the time inmates reached their scheduled release date (and no other appropriate housing, such as placement with family members or others, was available), inmates would temporarily remain in DOCCS custody until housing was located. While in many instances the delay in finding mental health housing was relatively short and inmates were released within a few days or weeks of their previously scheduled release dates, in some instances the delays were longer, as there was no suitable mental health housing available in the counties to which these inmates were to be released. While DOCCS made diligent efforts to secure mental health housing for these inmates, even such efforts were not always able to secure immediate mental health housing.

11. In some instances, the inmate's prior history made finding appropriate housing more difficult. For example, it is my understanding that named Plaintiff D.R. had previously attempted arson on a residence where he was housed prior to his last incarceration, which made it difficult to find mental health housing willing to accept him.

12. In addition, there have been times when appropriate housing was located for an inmate, but the inmate refused placement and, as a result, remained in DOCCS custody. For example, named Plaintiff P.C., who was convicted of murder and has been diagnosed with schizophrenia, has refused to live with siblings upon his release, despite this option being offered to him. Plaintiff P.C. also repeatedly told parole officials that he will cease taking his schizophrenia medication when he is released. DOCCS and OMH continue to attempt to locate appropriate community mental health housing for him that he deems acceptable.

13. The determination to retain any of the named Plaintiffs in custody while awaiting suitable mental health housing was made on a case by case basis by DOCCS officials based on individualized criteria. Indeed, during the same period the named Plaintiffs remained in custody, hundreds of inmates classified as having Serious Mental Illness were determined by DOCCS to not require mental health housing (or housing such as with family members) and were released from custody to shelters.

**DOCCS's Current Policy**

14. This year, DOCCS determined that it would no longer retain inmates classified as having Serious Mental Illness, who were not subject to SARA, in custody who had reached their scheduled release date based on DOCCS having determined that they required mental health housing.[3] Any such inmate will be released from custody as scheduled, including release to a shelter if other housing is not available, barring any unforeseen circumstances.

15. As previously noted, it is DOCCS's understanding that for all inmates who OMH has determined are psychiatrically stable for community release but require access to community mental health housing as an added layer of support, OMH will arrange for such housing to be provided by the time the inmate is scheduled to be released, barring any unforeseen circumstances.

16. There are presently no inmates classified as having Serious Mental Illness who are not subject to SARA who are being held in DOCCS custody past their scheduled release date as a

---

[3] There may be instances where an inmate classified as having Serious Mental Illness who is not subject to SARA is retained in custody for reasons that do not concern mental health housing. For example, an inmate may be so physically disabled that nursing home care is medically required and the inmate cannot be released to a shelter or family is unable to care for them due to their serious medical issues. In these instances there may be delays in finding an appropriate nursing home for such inmates.

result of a determination by DOCCS that these inmates require mental health housing and available mental health housing has not been located for them.

Executed on December 16, 2019

Albany, New York

_____
ANA ENRIGHT