1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------------x
     M.G., P.C., C.J., M.J., J.R. and
3   D.R., individually and on behalf
     of all similarly situated,
4               Plaintiffs,

5       -against-             19 Civ. 639(CS)
                             Conference
6   ANDREW CUOMO, in his official
     capacity as the Governor of the
7   State of New York, the NEW YORK
     STATE OFFICE of MENTAL HEALTH,
8   ANN MARIE T. SULLIVAN, in her
     official capacity as the
9   Commissioner of the New York
     State Office of Mental Health,
10  the NEW YORK STATE DEPARTMENT of
     CORRECTIONS and COMMUNITY
11  SUPERVISION, ANTHONY J. ANNUCCI,
     in his official capacity as the
12  Acting Commissioner of the New
     York State Department of
13  Corrections and Community
     Supervision, ANNE MARIE McGRATH,
14  in her official capacity as
     Associate Commissioner of the NEW
15  YORK STATE DEPARTMENT of
     CORRECTIONS and COMMUNITY
16  SUPERVISION,
               Defendants.
17  ------------------------------------x

18                    United States Courthouse
                      White Plains, New York
19
                    May 13, 2019
20

21
                HONORABLE CATHY SEIBEL,
22                 District Court Judge

23

24

25

         Angela O'Donnell, RPR, 914-390-4025

```
1    A P P E A R A N C E S:

2

3    DISABILITY RIGHTS NEW YORK
              Attorneys for Plaintiffs
              25 Chapel Street
4             Brooklyn, New York 11201
     BY:  JOSHUA M. ROSENTHAL
5          ELENA M. LANDRISCINA

6

7    LEGAL AID SOCIETY
              Attorneys for Plaintiffs
              199 Water Street, Third Floor
8             New York, New York 10038
     BY:  STEFEN R. SHORT

9

10   DISABILITY RIGHTS ADVOCATES
              Attorneys for Plaintiffs
11            44 Executive Boulevard, Suite 110
              Rochester, New York 14614
12   BY:  BETSY C. STERLING

13

14   NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL
              Attorneys for Defendants
              28 Liberty Street, Fifteenth Floor
15            New York, New York 10005
     BY:  JANE R. GOLDBERG
16        JEB HARBEN

17

18

19

20

21

22

23

24

25
```

1          THE CLERK:  MG v Cuomo.

2          THE CLERK:  Counsel please state their appearances.

3          MR. ROSENTHAL:  Good morning, your Honor.  Josh

4     Rosenthal from Disability Rights New York for the plaintiffs.

5          MS. LANDRISCINA:  Good morning, your Honor.  Elena

6     Landriscina, Disability Rights for the plaintiffs.

7          MR. SHORT:  Stefen Short, the Legal Aid Society, for

8     plaintiffs.

9          MS. STERLING:  Betsy Sterling, Disability Rights for

10    the plaintiffs.

11         MS. GOLDBERG:  Good morning, your Honor.  Jane

12    Goldberg from the Attorney General's Office for the defendants.

13         MR. HARBEN:  Jeb Harben for the Attorney's General's

14    Office for the defendants.

15         THE COURT:  You can all have a seat.  Give me one

16    second.

17         Good morning, Mr. Rosenthal, Mr. Landriscina.  Am I

18    saying it right?

19         MS. LANDRISCINA:  Yes.

20         THE COURT:  Mr. Short.  And that must be Ms. Sterling

21    in the back.  Good morning.  And Ms. Goldberg and Mr. Harben.

22         MS. GOLDBERG:  Good morning.

23         THE COURT:  I've got Ms. Goldberg's April 19th letter

24    and Mr. Rosenthal's May 6th response.  It doesn't seem to me

25    that any of these issues, even if defendant is right about all

1    of them, which I'm not sure it is, it's not going to get rid of

2    the whole case.  It's just a matter of should the Governor be a

3    party, should certain plaintiffs remain.

4            MS. GOLDBERG:  I think it will clean it up a lot.  I

5    do have some new information that will require some re-thinking

6    on our part.  When I say new information, I mean this morning.

7            That the four named plaintiffs whose claims have been

8    mooted out because they are now in the community, I would still

9    argue their claims are moot and don't relate back, but the two

10   remaining plaintiffs who were named as general class

11   representatives are now in RTF status, by which I mean they

12   have reached their maximum expiration of their sentence and

13   they have been placed in RTF status which leaves no one who was

14   in what was defined as the general class.  So that will require

15   some re-thinking on our part, but I think we still would have

16   some basis for trying to make this complaint more -- clean it

17   up and make it more efficient and judicially economical for the

18   Court to handle and would certainly require some amendment on

19   the part of the plaintiffs with respect to who the plaintiffs

20   really are and what they represent.

21           THE COURT:  I'm being a little dense, but the general

22   class is anybody who -- and I'm paraphrasing -- is anybody

23   whose sentence is over, essentially, and who should be in a

24   community-based housing but is still in jail because there

25   isn't any.

Angela O'Donnell, RPR, 914-390-4025

1            MS. GOLDBERG:  So my understanding -- I'm sorry.

2            THE COURT:  And the sub-class -- what's the different

3    between the two classes, the first class includes people whose

4    sentence who may not have expired but who would be eligible for

5    parole?

6            MR. ROSENTHAL:  That's correct, your Honor.  Of

7    course plaintiffs will argue that the four named plaintiffs

8    that defendants claim their claims are moot are not, in fact,

9    moot.

10            THE COURT:  Well, before we get to that, let me

11    ask -- I'm asking a much more basic question.

12            What's the difference between the general class and

13    the sub-class?

14            MS. GOLDBERG:  The general class would include anyone

15    past their release dates, whether that's an open parole date,

16    an approved conditional release date or their

17    maximum expiration date.  So in this way --

18            THE COURT:  Sub-class is maximum expiration date.

19            MR. ROSENTHAL:  Only.  That's correct.  It's a subset

20    of the general class.  So if the two remaining named companies

21    have now been placed on RTF status, they would still be general

22    class representatives.

23            THE COURT:  Yes, I'm not sure the defendants are

24    right about the mootness argument anyway.  If they were

25    transferred before the complaint was filed, there would be a

1    much better argument.  And I'm not prejudging anything, I'm

2    going to wait for the briefing, but I have rattling around in

3    the back of my brain that if the thing that the defendant is

4    arguing moots the claim is an action taken by the defendants

5    after the complaint was filed that that may be an exception to

6    the mootness argument.

7          And you know, look, if the complaint should be

8    cleaned up, it should be cleaned up, but I think we should also

9    get rolling on some at least paper discovery.  I'm not

10   100 percent clear on why the plaintiffs need the governor.

11         MS. LANDRISCINA:  I'm happy to address that.

12         So the defendants mischaracterize plaintiffs'

13   arguments regarding the governor.  We are not relying on the

14   governor's general duty to faithfully execute the law.

15   Plaintiffs' complaint establishes that the governor has a

16   sufficient connection to the violations of plaintiffs' Title II

17   and Rehabilitation Act rights.

18         THE COURT:  Does he have the power unilaterally to

19   solve this problem or doesn't the legislature have to cough up

20   some money?

21         MS. LANDRISCINA:  We maintain that the governor is

22   actually necessary to the relief that plaintiffs are seeking.

23   One of the prayers for relief is an effective plan for

24   integration into the community.  This involves interagency

25   coordination between DOCCS and OMH to very large state agencies

1   that sort of overlap in responsibilities for meeting our

2   plaintiffs' needs at this critical point when they're leaving

3   prison and returning to the community.

4          The governor supervises these two agencies.  The

5   heads of these agencies serve at his pleasure.  So his

6   oversight is really critical to ensuring that there is actually

7   an effective plan for community based integration, that it

8   meets what the Olmstead mandate, the integration mandate

9   provides.

10         THE COURT:  Okay, you'll duke it out.  I have to say

11  I didn't quite understand, Ms. Goldberg, your argument about

12  the deputy commissioner.  It seems like she's personally

13  involved in a number of the plaintiffs' situations.

14         MS. GOLDBERG:  I guess the argument is that she's not

15  really -- you know, she is involved, we would not dispute that,

16  but she's isn't a necessary party in the sense that if you

17  were -- if an injunction were ever issued in this case against

18  the agency or against the commissioner, if he remains as a

19  party, you don't need her.  I mean, it would be just one of the

20  clean-up kind of things that we thought would be helpful in

21  making this case go more smoothly.

22         She's really not needed in that sense she might be a

23  witness, but I don't see why she would be a necessary party to

24  any relief that was issued.

25         THE COURT:  There's no claim for damages.

Angela O'Donnell, RPR, 914-390-4025

1          MS. GOLDBERG:  No.

2          THE COURT:  What about the obvious question.

3          This should get fixed; right?  I mean, people

4   shouldn't stay in jail once their sentence is over because

5   there's no place for them to go.  I understand that's an

6   oversimplification, but shouldn't there be a way to resolve

7   this?

8          I mean, the state's not going to take the position,

9   no, we can hold people in jail forever even though they served

10  their sentences.  I assume.

11         MS. GOLDBERG:  So I believe that there are always

12  good faith efforts made to provide housing for those have been

13  determined to clinically need that kind of housing upon their

14  release from prison, but I imagine it's very situational, it's

15  very individualized.

16         I can tell you, I mean, what I understand at least

17  with respect to one of the plaintiffs who does remain is that

18  he turned down housing.  Within a month of his open release

19  date he was offered housing and turned it down, and that they

20  have been unsuccessful since that time in persuading him to

21  live with family, and that is very new information.  I will

22  need to get more information about that.  He also is an

23  individual who is not, I believe, on the OMH caseload in the

24  sense that he also suffers from an intellectual disability, so

25  there has been not reach out -- not just recently, I mean reach

1    out to OPWDD, which is the agency that does place people with

2    intellectual disabilities who are determined to be eligible for

3    those services and DOCCS has been trying to, I gather, people

4    at DOCCS have been trying to persuade him to go live with

5    family, and he has not wanted to.  So that is just a very

6    individual instance.  It's fairly complex and even with --

7    there is interagency cooperation.  There is -- development of

8    housing is not the easiest thing, it is budgeted, I mean --

9            THE COURT:  Right, but in the meantime you've got

10    people who have finished serving their sentences who are still

11    locked up.

12            MS. GOLDBERG:  Yes, I understand that.

13            THE COURT:  That can't be okay.

14            MS. GOLDBERG:  I understand what you're saying, your

15    Honor.

16            THE COURT:  If the only way to get the people with

17    the purse strings to pay attention is to enjoin them, you know,

18    maybe we'll get there some day.  But it's going to be hard, you

19    know, you might be able to, you know, get rid of a defendant

20    here or there or a plaintiff here or there, but this is a

21    problem that the state is going to have to solve and it seems

22    to me the sooner you get to work on it the better.

23            I don't know if to what extent there were

24    conversations before the lawsuit was filed but plaintiffs must

25    have an idea of what they're looking for.  Have you had any

1  conversations about trying to resolve it?

2       MR. ROSENTHAL:  Not yet, your Honor.  No.  Of course,

3  plaintiffs would be willing to engage in settlement talks if

4  the defendants were forthcoming, but I think at this point we'd

5  want the litigation to continue apace given --

6       THE COURT:  We're definitely going to continue, but

7  the way to get those conversations going, it seems to me, is

8  for you guys to make some sort of demand, at least a general

9  one.

10      I'm going to do in this case what I do in every case,

11 which is let the plaintiffs amend now that they know what the

12 defendants intend to argue.  I don't want to have to grant a

13 motion, grant leave to amend and then entertain another motion.

14      So now that you know what they're going to be getting

15 at, I want to give you the opportunity to amend.  Probably

16 there won't be another opportunity to amend on the same issues,

17 and then we'll set a schedule for the motion.

18      How long would you like for an amended complaint,

19 Mr. Rosenthal and team?

20      MR. ROSENTHAL:  Your Honor, we think that, if

21 necessary, we could do that pretty quickly, around three weeks.

22      THE COURT:  Okay.  Let's see, three weeks comes out

23 to June 3rd.  You don't have to amend, but if you've got facts

24 that you think could help you win the motion or even avoid a

25 given motion, might as well put them in there.

                    Angela O'Donnell, RPR, 914-390-4025

1              Assuming you get an amended complaint June 3rd, and

2    assuming you still want to make the motion, how long do you

3    need, Ms. Goldberg and Mr. Harben?

4              MS. GOLDBERG:  Could we have until late July because

5    of previously scheduled vacation plans, your Honor?

6              THE COURT:  July 26th.

7              MS. GOLDBERG:  Thank you.

8              MR. HARBEN:  Thank you.

9              THE COURT:  But don't ask for an extension.

10             MS. GOLDBERG:  Yes, ma'am.

11             THE COURT:  How long after that for your opposition

12   on plaintiffs' side?

13             MR. ROSENTHAL:  We believe 21 days.

14             THE COURT:  August 16th.

15             And then two weeks for reply, since you'll be back

16   from your vacation.

17             MS. GOLDBERG:  Not a problem.

18             THE COURT:  August 30th.

19             MR. ROSENTHAL:  Your Honor, if I may, the defendants

20   have raised new information today about the two named

21   plaintiffs, the general class representatives, and of course we

22   would hope to be able to discuss what that new information is

23   and be privy to that so we can properly amend.

24             MS. GOLDBERG:  That's not a problem.

25             THE COURT:  You're not going to hold that close to

1    the vest.  Look, if you end up agreeing that a particular

2    plaintiff isn't an adequate representative anymore, you'll drop

3    that person.

4         What about at least trying to get moving on some

5    paper discovery given that the motion isn't going to get rid of

6    the whole case; anybody object to that?

7         MR. ROSENTHAL:  None from plaintiffs, no.

8         MS. GOLDBERG:  No.

9         THE COURT:  Oh, by the way, before I leave the

10   motion, I offer the option, and it is an option, of bundling

11   the motion papers.  What I mean by that is you serve each other

12   on the dates we've set, but you don't file anything on ECF

13   until the date the reply is due.  The reason you may want to

14   consider that is because it allows me to be more flexible with

15   extensions.  If you file the motion on July 26th, that's when

16   the six months I have on the dreaded six-month list starts to

17   run.  If one side or the other runs into trouble and you need

18   more time, I'm going to be reasonable, but I may not be

19   generous, because extensions are coming out of my six months.

20   If you serve the motion on July 26th and then one side or the

21   other needs extra time, I'll probably give you whatever you

22   want because it's not coming out of my six months, because you

23   will have only served each other, you won't file anything on

24   ECF until the date is reply is due.  But I don't require

25   bundling, it's only if both sides like the idea should you do

1  it.  And as I said, I will be reasonable with extensions as

2  long as there's a good reason for it, even if you choose not to

3  bundle.

4          So why don't we say with respect to paper discovery

5  you can make your -- well we're going to have the amended

6  complaint June 3rd, so why don't we say Rule 26 disclosures 21

7  days later; June 24th.  And then requests for production of

8  documents and interrogatories -- you can speak up if these

9  dates seem unreasonable -- July 8th.  And then we'll hold off

10 on depositions and such.

11          Anything else we should do this morning?

12          MS. GOLDBERG:  Not from me, your Honor.

13          THE COURT:  All right.  Thank you all.

14          MR. SHORT:  Thank you.

15          MR. ROSENTHAL:  Thank you, Judge.

16          MS. LANDRISCINA:  Thank you:

17          THE COURT:  I'll get to the motion as soon as I can

18 and let you know.

19          And I do encourage plaintiffs to get a conversation

20 going.

21          MR. ROSENTHAL:  Thank you, Judge.

22          MS. LANDRISCINA:  Thank you.

23          (Proceedings concluded)

24          ------------------------------------
   Angela A. O'Donnell, RPR,Official Court Reporter, USDC, SDNY

25

Angela O'Donnell, RPR, 914-390-4025