

# DISABILITY RIGHTS NEW YORK

 www.drny.org     mail@drny.org    📞 518-432-7861

January 29, 2020

**VIA ECF and Email**
Hon. Cathy Seibel
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

      Re:    *M.G. v. Cuomo*, 19-CV-639 (CS) (LMS) – Request for Leave for Sur-Reply

Dear Judge Seibel:

      Plaintiffs write to request leave to file a sur-reply to be heard on an issue raised for the first time in Defendants' reply brief in support of their motion to dismiss. Defendants do not consent to this request.

      Defendants argue that this case is moot under the voluntary cessation doctrine, based on a policy memorandum DOCCS issued the same day the reply brief was served and conclusory statements that "DOCCS has committed to discontinue the practices complained of."[1] ECF No. 90 ("Defendants' Reply") at 4. In effect, Defendants claim, without support, to have abandoned one harmful practice for another—namely, the release of putative class members from prison to homeless shelters, a practice which the parties agree poses "safety risks" to those individuals.[2] ECF No. 92 ("Enright Decl.") ¶ 9. Plaintiffs are actively seeking discovery necessary for class certification, which will also clarify if amendments to Plaintiffs' pleadings are necessary to address Defendants' last-minute representations. In response to questions raised by Plaintiffs, Judge Smith permitted Plaintiffs to serve up to 50 interrogatories directed to this issue, which Plaintiffs served on January 17, 2020. Defendants' responses are due by February 17, 2020.

      Even without the benefit of additional discovery, it is already clear, for reasons discussed in Plaintiffs' opposition brief and in this letter, that Defendants have not met their "stringent and formidable burden" of proving that Plaintiffs' claims are moot. ECF No. 82 ("Plaintiffs' Opposition") at 4-9; *Mhany Mgmt., Inc. v. County of Nassau*, 819 F.3d 581, 624 (2d Cir. 2016). Post-filing developments in this case are just the kind where mootness exceptions apply. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190-92 (2000) ("When, for

---

[1] DOCCS' Dec. 16, 2019 Memorandum was submitted as ECF No. 92-1, Ex. 1 to Enright Declaration.
[2] Defendants' claim that their actions were "penologically justified," Defendants' Reply at 10, cannot be squared with Defendants' new position of allowing the release of people with serious mental illness to homeless shelters. Instead, Defendants' "insistence on the validity of the challenged practice" makes it "'reasonable' to expect that the conduct will be repeated." *Ahrens v. Bowen*, 852 F.2d 49, 53 (2d Cir. 1988).

---

**ALBANY**
725 Broadway, Suite 450
Albany, NY 12207-5001

**BROOKLYN**
25 Chapel St, Suite 1005
Brooklyn, NY 11201

**ROCHESTER**
44 Exchange Blvd, Suite 110
Rochester, NY 14614

 TTY: **518-512-3448**
Fax: **518-427-6561**
Toll Free: **1-800-993-8982**

example, a mentally disabled patient files a lawsuit challenging her confinement in a segregated institution, her postcomplaint transfer to a community-based program will not moot the action."). A new policy can moot a plaintiff's claims only where "(1) the challenged conduct has, in fact, ceased, (2) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (3) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Ciaramella v. Zucker*, No. 18-CV-6945, 2019 WL 4805553, at *5 (S.D.N.Y. Sept. 30, 2019) (internal quotation marks omitted) (quoting *Am. Freedom Def. Initiative v. MTA*, 815 F.3d 105, 109 (2d Cir. 2016)). Defendants satisfy none of these criteria.

First, Defendants have not demonstrated that the challenged conduct has ceased. A policy, standing alone, cannot demonstrate changed conditions. *See, e.g.*, *Edelhertz v. City of Middletown*, No. 12-CV-1800, 2013 WL 4038605, at *3-4 (S.D.N.Y. May 6, 2013). Here, not only is the policy itself insufficient, but evidence casts doubt on whether the challenged conduct has actually ceased. For example, discovery demonstrates that Defendants may be holding putative class members past their release dates and labelling them as having "waived" their release from prison. Far from correcting inadequate housing, which gave rise to the claims in this case, Defendants implicitly acknowledge the continued inadequacy of mental health housing when they admit to releasing people with serious mental illness to homeless shelters. Further, Defendants continue to detain Named Plaintiff P.C., who as of the date of this letter continues to desire release to a community-based placement and remains in prison pending the availability of mental health housing. Moreover, DOCCS' Memorandum does not make clear how DOCCS proceeds in the event a shelter is not deemed an approved setting and community mental health housing is unavailable.[3] Defendants' Reply overstates the nature of the policy changes by failing to account for situations of "unforeseen circumstances" that are acknowledged in Defendants' declarations. *Compare* Defendants' Reply at 2, *with* Enright Decl. ¶ 14. For these reasons, Defendants have not completely and irrevocably eradicated the effects of the alleged violations. The alleged violations, which continue to harm putative class members who are denied mental health housing, have not been eliminated and can be expected to recur because the State's provision of mental health housing in the community remains inadequate.

Second, even assuming Defendants ceased the challenged conduct for the present, Defendants have not publicly committed to relinquishing these practices prospectively.[4] Even in cases where "the conduct has undisputedly ceased" and defendants expanded resources to implement a policy change, courts have refused to find that defendants' voluntary cessation

---

[3] Notably, Defendants have not represented that incarcerated individuals are no longer being held past their release date due to *OMH's* determination that an individual requires mental health housing that is unavailable. Nor have Defendants represented that OMH has made changes to their rules, policies, or practices as a result of this memorandum. Rather, the Enright Declaration states only that "presently no inmates classified as having Serious Mental Illness who are not subject to SARA who [sic] are being held in DOCCS custody past their scheduled release date as a result of a determination by *DOCCS* that these inmates require mental health housing and available mental health housing has not been located for them." Enright Decl. ¶ 16 (emphasis added).

[4] For example, Defendants have not addressed their interpretation of Correction Law § 73, under which they have claimed authority to place plaintiffs in prisons designated residential treatment facilities ("RTF"), nor have they made any commitments whatsoever concerning their RTF practices under Penal Law § 70.45 under which the Parole Board may impose RTF status and which Defendants claimed allows them to hold putative class members in prison. *See* ECF No. 80 at 4; ECF No. 90 at 10.

moots plaintiffs' claims without an "unambiguous public commitment" to maintain the new policy. *Compare Ciaramella*, 2019 WL 4805553, at *5 (refusing to extend deference to defendant's representation that the alleged violation had ended absent an unambiguous public commitment to maintain the new policy), *and Nat. Res. Def. Council v. U.S. Dep't of Energy*, 362 F. Supp. 3d 126, 138 (S.D.N.Y. 2019) (plaintiffs' claims not moot, in part because the defendant had "not categorically stated" that it would not revert to the challenged policy, "but only that 'there [was] no reasonable expectation' that it [would]"), *with Bryant v. City of New York*, No. 14-CV-8672, 2016 WL 3766390, at *3-4 (S.D.N.Y. July 8, 2016) (dismissing as moot a case against NYC DOC where defendants adopted a new rule after a public hearing and comment period, took "substantial efforts" to implement the new rule, and Mayor and Commissioner of Correction publicized the City's commitment to the new rule). Defendants here have neither made a public commitment to refrain from reverting to their old policy nor proffered evidence of additional resources that meet the needs of individuals with serious mental illness purportedly subject to release under the new policy. Therefore, Defendants cannot meet their "heavy [burden] to ensure the allegedly illegal activities do not temporarily cease only to resume after the claims have been dismissed." *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 574 (2d Cir. 2003) (citation omitted). Moreover, the suspicious timing of DOCCS' Memorandum—coupled with Defendants' rush to release Named Plaintiffs immediately after the Complaint was filed, *see* Plaintiffs' Opposition at 4-7—provides reason to believe that DOCCS developed the policy in haste and in response to this litigation. *See Mhany Mgmt.*, 819 F.3d at 604 (case not moot where defendants' actions "appear to track" the development of litigation); *Hilton v. Wright*, 235 F.R.D. 40, 48-50 (N.D.N.Y. 2006) (noting that swift changes in policy on the eve of filing deadlines "prompts questions of defendants' credibility and gives rise to suspicions that defendants have simply manufactured an argument for mootness").

Finally, the outstanding interrogatories seek information concerning the policy set forth in DOCCS' Memorandum and its development, scope, and rollout. Defendants' responses may uncover additional reasons why the claims are not moot,[5] including that Defendants were disingenuous in promulgating the new policy. *Bryant*, 2016 WL 3766390, at *4.

In sum, Defendants have not met their "formidable burden of showing that it is *absolutely clear* the allegedly wrongful behavior could not reasonably be expected to recur." *E.g.*, *Mhany Mgmt.*, 819 F.3d at 603-04 (emphasis in original). Plaintiffs respectfully request leave to file a sur-reply to be fully heard after Defendants respond to the authorized interrogatories.

> Sincerely,
> /s/
> Joshua Rosenthal

CC: Counsel of Record (Via ECF)

---

[5] Defendants also argue that the "inherently transitory" exception does not apply, claiming there is no "constant class." But they do so after not producing relevant data on class size on the basis of their representations to the Court that they would not challenge the number of putative class members. *See* ECF No. 83-87, Exhibit 87. Plaintiffs' outstanding interrogatories, the responses to which can be addressed in a sur-reply, include requests that address class size. Plaintiffs' arguments regarding exceptions to mootness are discussed in their Opposition Brief at 4-13.