STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF STATE COUNSEL
LITIGATION BUREAU

February 3, 2020

**By ECF and Email**
Hon. Cathy Seibel
United States District Court
300 Quarropas Street
White Plains, NY 10601

Re:   *M.G. v. Cuomo*, 19-cv-0639 (CS) (LMS)

Dear Judge Seibel:

Defendants write in response to Plaintiffs' letter dated January 29, 2020, which requests permission to file a sur-reply in opposition to Defendants' motion to dismiss. Now that Plaintiffs have explained their specific reasons for requesting a sur-reply, which they did not do when they sought Defendants' consent, Defendants take no position on the request for a sur-reply and respectfully request that, if a sur-reply is permitted, the Court set a briefing schedule that allows Defendants the opportunity to respond to Plaintiffs' unfounded accusations about the New York State Department of Corrections and Community Supervision's ("DOCCS") recent policy revision.

Plaintiffs' allegation in this matter is that Defendants "hold Plaintiffs in state prison past their lawful release dates." *See* First Am. Compl. at ¶ 1 (ECF No. 47). As Defendants explained in their memorandum in support of the motion to dismiss, served on July 26, 2019, the claims of Plaintiffs C.J., M.J., J.R., D.R., and M.G. are moot because these individuals have all been placed in residences in the community. *See* ECF No. 80 at 9-12.[1]

On December 16, 2019, following service of the motion to dismiss, DOCCS issued a policy memorandum, (the "DOCCS Memorandum") (ECF No. 92-1), confirming that the agency will not hold incarcerated individuals with serious mental illness beyond their scheduled release date if the New York State Office of Mental Health has made a clinical determination that the individual may

---

[1] Plaintiff P.C., the only plaintiff who has not been released, has refused a placement with his relatives. Defendants continue to try to locate appropriate mental health housing for him that he deems acceptable.

Hon. Cathy Seibel
February 3, 2020
Page 2

be released to a shelter setting. This formalized the practice that DOCCS had begun earlier that year. *See* Declaration of Ana Enright ("Enright Decl.") (ECF No. 92) ¶¶ 14-16. Indeed, Defendants' Counsel had represented to Judge Smith several times at discovery conferences well before the issuance of the memorandum that inmates were no longer being held in this manner. Moreover, DOCCS confirmed that it has discontinued placing any individuals with serious mental illness in RTF status beyond their expiration date and has also discontinued holding individuals with an open parole date or final conditional release date past that date solely because of an unmet need for mental health housing. *See* Enright Decl. These developments confirm that Plaintiffs' claims are moot and not subject to any mootness exception. *See* Defendants' Reply Brief at 2-5 (ECF No. 90).

Given that Plaintiffs seek injunctive relief and Defendants have discontinued the practice that was the basis of this lawsuit, Defendants proposed that the parties meet with Magistrate Judge Smith to discuss whether an agreement can be reached that would further memorialize Defendants' revised practice and resolve this action to the satisfaction of all parties. *See* Defendants' December 23, 2019 Letter to Magistrate Judge Smith (ECF No. 98). Defendants also proposed that any good faith questions Plaintiffs might have about the scope and effect of the policy could also be addressed in that forum. *Id.* Plaintiffs rejected the invitation, instead demanding expansive further discovery and, now, requesting additional briefing on the motion to dismiss.[2]

While Defendants do not oppose Plaintiffs' request for a sur-reply, the arguments in opposition to mootness that Plaintiffs preview in their letter all fail. DOCCS has issued an unambiguous policy memorandum, which it distributed to all Superintendents and Community Supervision Bureau Chiefs, with instructions for further distribution to all other affected DOCCS staff. The challenged conduct has "in fact, ceased" and there is "no reasonable expectation that the alleged violation will recur." *Am. Freedom Defense Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 109 (2d Cir. 2016). Indeed, this Court dismissed an action for injunctive relief against DOCCS officials for these same reasons when policy memoranda clearly outlined that the conduct complained of had ceased. *See Inside Connect, Inc. v. Fischer*, No. 13-CV-1138 (CS), 2014 WL 2933221, at **8-9 (S.D.N.Y. June 30, 2014).

The DOCCS Memorandum and accompanying declaration publicly filed in this lawsuit provide abundant assurance regarding Defendants' commitment to maintain the policy, which had already been put into practice in 2019 prior to the issuance of the policy memorandum. *See* Enright Decl. ¶¶ 14-16. The document in question simply memorialized the policy.

Plaintiffs, not satisfied that DOCCS has discontinued the practice to which they objected, now complain of the supposed "suspicious timing" of the DOCCS Memorandum and baselessly speculate that further discovery "*may* uncover" some unnamed evidence "that Defendants were

---

[2] Magistrate Judge Smith rejected Plaintiffs' request to open broad discovery and instead permitted Plaintiffs to serve limited interrogatories regarding the DOCCS Memorandum, in the hope that Plaintiffs' questions about the policy "can be clarified without further discovery." *See* Minute Entry for December 23, 2019 Status Conference.

Hon. Cathy Seibel
February 3, 2020
Page 3

disingenuous in promulgating the new policy." Pls.' Letter at 3 (emphasis added). In the event that the Court grants Plaintiffs' request for a sur-reply, Defendants ask for the opportunity to respond to these unfounded accusations. First, this is pure speculation and not a basis to oppose a motion to dismiss. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, despite Plaintiffs' baseless accusations regarding the timing of the policy memorandum, it is perfectly appropriate for a district court to "exercise its discretion if appropriate by giving prison officials time to rectify" an alleged violation of prisoners' rights "before issuing an injunction." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).[3] At the onset of this litigation, the Court indicated to Defendants' counsel that the practice appeared problematic; thus it is hardly "suspicious" that DOCCS endeavored to end the practice in the following months.

Finally, it should be noted that the prior conduct complained of generally only impacted a handful of individuals at any given time. The DOCCS Memorandum therefore did not impact a significant practice. While Plaintiffs suggest that the policy will result in a flood of seriously mentally ill inmates being released to shelters, the reality is that it has always been the case that many such inmates are released to shelters while receiving appropriate mental health services post-release. *See* Enright Decl. ¶¶ 7, 13. Those individuals who were previously retained past their release dates because DOCCS felt that mental health housing was appropriate given safety concerns were a tiny fraction of those scheduled for release. While Plaintiffs (none of whom were released to shelters) may have policy disagreements about releasing such inmates to shelters, that is not what this lawsuit is about.

Defendants respectfully request that, should the Court grant Plaintiffs' request for a sur-reply, it set a briefing schedule that allows Defendants the opportunity to respond to their unfounded accusations regarding the DOCCS Memorandum.

Respectfully submitted,

/s/ Jane R. Goldberg
Jane R. Goldberg
Jeb Harben
Assistant Attorneys General

cc: All counsel of record (via ECF)

---

[3] Plaintiffs cite *Mhany Management, Inc. v. County of Nassau*, 819 F.3d 581 (2d Cir. 2016) for the contention that a case is not moot where a defendant's actions "appear to track" the development of the litigation. The issue in that case was that the defendants retreated from their promised course of action once their litigation prospects appeared to improve, causing the Court to question whether they were merely "temporarily altering questionable behavior." *Id.* at 603-04. No similar issue exists here.