UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x
M.G., P.C., C.J., M.J., J.R., and D.R., individually and on
behalf of all similarly situated,

                                  Plaintiffs,

            -against-
                                                           7:19-CV-639 (CS) (LMS)

ANDREW CUOMO, in his official capacity as the Governor
of the State of New York, the NEW YORK STATE OFFICE
OF MENTAL HEALTH, ANN MARIE T. SULLIVAN, in
her official capacity as the Commissioner of the New York
State Office of Mental Health, the NEW YORK STATE
DEPARTMENT OF CORRECTIONS AND
COMMUNITY SUPERVISION, ANTHONY J.
ANNUCCI, in his official capacity as the Acting
Commissioner of the New York State Department of
Corrections and Community Supervision, ANNE MARIE
MCGRATH, Deputy Commissioner of the New York State
Department of Corrections and Community Supervision,

                                Defendants.
------------------------------------------------------------------------- x

**PLAINTIFFS' SECOND SET OF INTERROGATORIES
ON DEFENDANT ANTHONY J. ANNUCCI**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure and Rule 33.3 of the Local Rules of the United States District Court for the Southern District of New York (the "Local Rules"), and in accordance with the definitions and instructions set forth below, Plaintiffs M.G., P.C., C.J., M.J., J.R., and D.R., individually and on behalf of all those similarly situated, hereby request that Defendant Anthony J. Annucci answer under oath, within thirty (30) days, the following interrogatories.

**DEFINITIONS**

Plaintiffs hereby incorporate the Uniform Definitions in Discovery Requests contained in Rule 26.3 of the Local Rules in addition to the following definitions:

1. "Approved Conditional Release Date" means the date that a Time Allowance Committee approved for an individual's conditional release from Department of Corrections and Community Supervision custody, as set forth in New York Penal Law § 70.40.

2. "Census" means an enumeration of specific people by name and, where applicable, DOCCS Department Identification Number.

3. "Community-Based Mental Health Housing" means programs that provide housing and care to Persons with Serious Mental Illness pursuant to a license, authorization, or operating certificate issued by OMH, pursuant to a contract with OMH, or pursuant to a contract with a local government using OMH funding, including but not limited to scattered-site supportive housing, apartment programs, single-room occupancy residences, and community residences. This term does not mean a Transitional Residence or Crisis Residence.

4. "Concerning," "referring to," "regarding," and "relating to" mean describing, discussing, constituting, containing, considering, embodying, evaluating, mentioning, memorializing, supporting, collaborating, demonstrating, providing, showing, refuting, disputing, rebutting, controverting, contradicting, made in connection with, by reason of, or arising therefrom.

5. "Crisis Residence" means the residential program referred to in 14 NYCRR Part 589.

6. "Defendants" means Andrew M. Cuomo, in his official capacity as the Governor of the State of New York; the New York State Office of Mental Health; Ann Marie T. Sullivan, in her official capacity as the Commissioner of the New York State Office of Mental Health; the New York State Department of Corrections and Community

Supervision; Anthony J. Annucci, in his official capacity as the Acting Commissioner of the New York State Department of Corrections and Community Supervision; and Ann Marie McGrath, in her official capacity as the Deputy Commissioner of the New York State Department of Corrections and Community Supervision.

7. "DOCCS" means Defendant New York State Department of Corrections and Community Supervision, and each of its current or former officers, directors, employees, staff members, agents, representatives, attorneys, advisors, affiliates, divisions, successors, predecessors, and any other related entities, departments, and all persons and entities acting or purporting to act on its behalf.

8. "DOCCS Custody" means held in a "correctional facility" as defined in New York Correction Law § 2, including but not limited to a state prison and an RTF.

9. "Enright Declaration" means the Declaration of Ana Enright, filed on December 16, 2019 as Docket Number 92 in the above-captioned action.

10. "Homeless" and "At Risk of Homelessness" are defined as anyone meeting the definition in New York State's Empire State Supportive Housing Initiative Scattered Site Supportive Housing for Adults with Serious Mental Illness Questions and Answers, dated 1/22/19; anyone meeting the definition in Central New York Psychiatric Center Corrections-Based Operations Manual, Policy 8.13; and anyone otherwise identified as undomiciled, homeless, or at risk of homelessness by DOCCS or OMH during the discharge planning process.

11. The terms "including," "include," or "includes" are used in their broadest sense and are not meant to be limiting. Any list following these terms contains illustrative

examples, but such lists are without limitation and do not constitute exclusive, all-encompassing, or exhaustive listings.

12. "Lawful Release Date" means Maximum Expiration Date, Approved Conditional Release Date, or Open Date for Parole Release.

13. "Local Agencies" means any and all agencies of counties and municipalities within New York State, including but not limited to such departments of social services or mental health departments.

14. "Maximum Expiration Date" means the date upon which an individual's legal obligation to serve a custodial sentence ends.

15. "The Memorandum" means the memorandum dated December 16, 2019 from Ana Enright, Deputy Commissioner of Community Supervision and Bryan Hilton, Associate Commissioner of Mental Health to All Superintendents and Community Supervision Bureau Chiefs, with the subject "Release of Non-SARA SMI incarcerated individuals," filed as Docket Number 92-1 in the above-captioned action.

16. "OMH" means Defendant New York State Office of Mental Health, and each of its current or former officers, directors, employees, staff members, agents, representatives, attorneys, advisors, affiliates, divisions, successors, predecessors, and any other related entities, departments, and all persons and entities acting or purporting to act on its behalf.

17. "Open Date for Parole Release" means the parole status granted by the Board of Parole, granting parole release, and reflecting the incarcerated person's earliest possible release date.

18. "Person(s) with Serious Mental Illness" means "Persons with Serious Mental Illness" as defined in New York Mental Hygiene Law § 1.03(52).

19. "Provide" with respect to data means supply, proffer, produce, give, issue, and furnish.

20. "RTF" means a facility designated a "Residential Treatment Facility" pursuant to New York Correction Law § 70.

21. "RTF Status" means having been admitted to, transferred to, being placed in, assigned to, or otherwise given the status of placement in an RTF (regardless of physical location) including the status of being subject to "Special Condition of Release for a Determinately Sentenced Offender Being Released to Post-Release Supervision (SC37)" and a "Residential Treatment Facility Designation Pursuant to Correction Law 73(10)" memorandum.

22. "SARA" means the Sexual Assault Reform Act.

23. "State Agencies" means executive agencies of New York State, including but not limited to DOCCS and OMH.

24. "Transitional Living Residence" means the program as referenced in the Declaration of Wendy Vogel, filed on December 16, 2019 as Docket Number 91 in the above-captioned action.

25. "Transitional Placement Program" means the program as referenced in the Declaration of Wendy Vogel, filed on December 16, 2019 as Docket Number 91 in the above-captioned action.

26. "Vogel Declaration" means the Declaration of Wendy Vogel, filed on December 16, 2019 as Docket Number 91 in the above-captioned action.

27. "You" and "Your" as used herein shall refer to Defendant Anthony J. Annucci.

## INSTRUCTIONS

1.  In answering the following interrogatories, You shall furnish all information that is available to You, including information in the possession, custody, or control of Your attorneys, accountants, investigators, experts, representatives, or other agents.

2.  If, in answering the following, You are unable to answer fully an interrogatory, after exercising due diligence to obtain the information to do so, You shall answer said interrogatory to the fullest extent possible, specifying Your inability to answer the remainder, describing the efforts taken by You to obtain the information to fully answer said interrogatory, and stating whatever information or knowledge You have concerning the unanswered portion thereof.

3.  If, in answering the following interrogatories, You state in whole or in part that "I do not know" or "unknown" or otherwise indicate any similar lack of knowledge, You shall state in detail all efforts made to obtain the information requested, the nature of any continuing efforts in that regard, and by whom any such efforts were and are being made.

4.  If any document, the identification of which would be responsive to the interrogatories, has been lost or destroyed or is otherwise unavailable, describe and identify each such document by stating in writing: (i) the name(s) of the authors(s) and name(s) of the person(s) who received the original and all copies, (ii) the date and subject matter of the original and all copies, (iii) the last known custodian of the document, (iv) the incident, event, or occurrence during which such document was lost, destroyed, or otherwise became unavailable, (v) each person having knowledge of the circumstances of it being lost, discarded or destroyed, and (vi) Your efforts to locate each such document.

5. If a claim of privilege is asserted with respect to any interrogatory, or if You refuse to disclose any information requested herein on any other ground, state the basis for Your claim that such information need not be disclosed with such specificity as will permit the Court to determine the legal sufficiency of Your objection or position, and, for each such claim of privilege, identify:

    a. whether the information contains a request for legal advice and, if so, identify the person who requested the legal advice;

    b. whether the information contains advice as to the meaning or application of particular laws or rules in response to such request;

    c. any further information to explain and support the claim of privilege and to permit the adjudication of the propriety of that claim;

    d. the nature of the privilege (including work product) that is being claimed and, if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked; and

    e. the type of information, the general subject matter of the information, and such other information as is sufficient to identify the information for a subpoena *duces tecum*, including, where appropriate, the author, addressee, and any other recipient of the information, and, where not apparent, the relationship of the author, addressee, and other recipient to each other.

6. If, in answering these interrogatories, You claim any ambiguity in interpreting either the interrogatory or a definition or instruction applicable thereto, such claim shall not be utilized by You as a basis for refusing to respond. Rather, You shall set forth in a part of Your response to such an interrogatory the language deemed to be ambiguous and the interpretation chosen or used in responding to the interrogatory.

7. You shall respond completely to each interrogatory, setting forth the question in full followed by each answer.

8. Questions regarding the interpretation of these interrogatories should be resolved in favor of the broadest possible construction.

9. These interrogatories are to be considered as continuing and You are requested to provide, by way of supplementary responses hereto, such additional information as You or any persons acting on Your behalf may hereafter obtain that will augment, clarify, or otherwise modify the responses now given to these interrogatories. Such supplementary responses are to be served upon counsel for Plaintiffs within thirty (30) days after receipt of such information or documents.

10. In describing the "facts and circumstances" surrounding an event, You shall identify all relevant parties by name and title, office location, and the dates of relevant events.

## INTERROGATORIES

### INTERROGATORY NO. 11:

Describe any commitments DOCCS has made pursuant to The Memorandum and the policies set forth therein, including but not limited to public statements, monetary commitments, and/or written policies, procedures, manuals, regulations, or other documents.

### INTERROGATORY NO. 12:

Describe any commitments DOCCS has made not to reinstate any prior policies and practices that are inconsistent with The Memorandum and the policies set forth therein.

### INTERROGATORY NO. 13:

Describe actions related to DOCCS' development of The Memorandum, including the dates of meetings or conversations, the parties to those meetings or conversations, and factual material compiled during development.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
M.G., P.C., C.J., M.J., J.R., and D.R., individually and on
behalf of all similarly situated,

                                        Plaintiffs,

                -against-

ANDREW CUOMO, in his official capacity as the Governor
of the State of New York, the NEW YORK STATE OFFICE
OF MENTAL HEALTH, ANN MARIE T. SULLIVAN, in
her official capacity as the Commissioner of the New York
State Office of Mental Health, the NEW YORK STATE
DEPARTMENT OF CORRECTIONS AND
COMMUNITY SUPERVISION, ANTHONY J.
ANNUCCI, in his official capacity as the Acting
Commissioner of the New York State Department of
Corrections and Community Supervision, ANNE MARIE
MCGRATH, Deputy Commissioner of the New York State
Department of Corrections and Community Supervision,

                                        Defendants.
------------------------------------------------------------------------ x

7:19-CV-639 (CS) (LMS)

## PLAINTIFFS' SECOND SET OF INTERROGATORIES
## ON DEFENDANT ANN MARIE T. SULLIVAN

Pursuant to Rule 33 of the Federal Rules of Civil Procedure and Rule 33.3 of the Local Rules of the United States District Court for the Southern District of New York (the "Local Rules"), and in accordance with the definitions and instructions set forth below, Plaintiffs M.G., P.C., C.J., M.J., J.R., and D.R., individually and on behalf of all those similarly situated, hereby request that Defendant Ann Marie T. Sullivan answer under oath, within thirty (30) days, the following interrogatories.

## DEFINITIONS

Plaintiffs hereby incorporate the Uniform Definitions in Discovery Requests contained in Rule 26.3 of the Local Rules in addition to the following definitions:

1. "Approved Conditional Release Date" means the date that a Time Allowance Committee approved for an individual's conditional release from Department of Corrections and Community Supervision custody, as set forth in New York Penal Law § 70.40.

2. "Census" means an enumeration of specific people by name and, where applicable, DOCCS Department Identification Number.

3. "Community-Based Mental Health Housing" means programs that provide housing and care to Persons with Serious Mental Illness pursuant to a license, authorization, or operating certificate issued by OMH, pursuant to a contract with OMH, or pursuant to a contract with a local government using OMH funding, including but not limited to scattered-site supportive housing, apartment programs, single-room occupancy residences, and community residences. This term does not mean a Transitional Residence or Crisis Residence.

4. "Concerning," "referring to," "regarding," and "relating to" mean describing, discussing, constituting, containing, considering, embodying, evaluating, mentioning, memorializing, supporting, collaborating, demonstrating, providing, showing, refuting, disputing, rebutting, controverting, contradicting, made in connection with, by reason of, or arising therefrom.

5. "Crisis Residence" means the residential program referred to in 14 NYCRR Part 589.

6. "Defendants" means Andrew M. Cuomo, in his official capacity as the Governor of the State of New York; the New York State Office of Mental Health; Ann Marie T. Sullivan, in her official capacity as the Commissioner of the New York State Office of Mental Health; the New York State Department of Corrections and Community

Supervision; Anthony J. Annucci, in his official capacity as the Acting Commissioner of the New York State Department of Corrections and Community Supervision; and Ann Marie McGrath, in her official capacity as the Deputy Commissioner of the New York State Department of Corrections and Community Supervision.

7. "DOCCS" means Defendant New York State Department of Corrections and Community Supervision, and each of its current or former officers, directors, employees, staff members, agents, representatives, attorneys, advisors, affiliates, divisions, successors, predecessors, and any other related entities, departments, and all persons and entities acting or purporting to act on its behalf.

8. "DOCCS Custody" means held in a "correctional facility" as defined in New York Correction Law § 2, including but not limited to a state prison and an RTF.

9. "Enright Declaration" means the Declaration of Ana Enright, filed on December 16, 2019 as Docket Number 92 in the above-captioned action.

10. "Homeless" and "At Risk of Homelessness" are defined as anyone meeting the definition in New York State's Empire State Supportive Housing Initiative Scattered Site Supportive Housing for Adults with Serious Mental Illness Questions and Answers, dated 1/22/19; anyone meeting the definition in Central New York Psychiatric Center Corrections-Based Operations Manual, Policy 8.13; and anyone otherwise identified as undomiciled, homeless, or at risk of homelessness by DOCCS or OMH during the discharge planning process.

11. The terms "including," "include," or "includes" are used in their broadest sense and are not meant to be limiting. Any list following these terms contains illustrative

examples, but such lists are without limitation and do not constitute exclusive, all-encompassing, or exhaustive listings.

12. "Lawful Release Date" means Maximum Expiration Date, Approved Conditional Release Date, or Open Date for Parole Release.

13. "Local Agencies" means any and all agencies of counties and municipalities within New York State, including but not limited to such departments of social services or mental health departments.

14. "Maximum Expiration Date" means the date upon which an individual's legal obligation to serve a custodial sentence ends.

15. "The Memorandum" means the memorandum dated December 16, 2019 from Ana Enright, Deputy Commissioner of Community Supervision and Bryan Hilton, Associate Commissioner of Mental Health to All Superintendents and Community Supervision Bureau Chiefs, with the subject "Release of Non-SARA SMI incarcerated individuals," filed as Docket Number 92-1 in the above-captioned action.

16. "OMH" means Defendant New York State Office of Mental Health, and each of its current or former officers, directors, employees, staff members, agents, representatives, attorneys, advisors, affiliates, divisions, successors, predecessors, and any other related entities, departments, and all persons and entities acting or purporting to act on its behalf.

17. "Open Date for Parole Release" means the parole status granted by the Board of Parole, granting parole release, and reflecting the incarcerated person's earliest possible release date.

18. "Person(s) with Serious Mental Illness" means "Persons with Serious Mental Illness" as defined in New York Mental Hygiene Law § 1.03(52).

19. "Provide" with respect to data means supply, proffer, produce, give, issue, and furnish.

20. "RTF" means a facility designated a "Residential Treatment Facility" pursuant to New York Correction Law § 70.

21. "RTF Status" means having been admitted to, transferred to, being placed in, assigned to, or otherwise given the status of placement in an RTF (regardless of physical location) including the status of being subject to "Special Condition of Release for a Determinately Sentenced Offender Being Released to Post-Release Supervision (SC37)" and a "Residential Treatment Facility Designation Pursuant to Correction Law 73(10)" memorandum.

22. "SARA" means the Sexual Assault Reform Act.

23. "State Agencies" means executive agencies of New York State, including but not limited to DOCCS and OMH.

24. "Transitional Living Residence" means the program as referenced in the Declaration of Wendy Vogel, filed on December 16, 2019 as Docket Number 91 in the above-captioned action.

25. "Transitional Placement Program" means the program as referenced in the Declaration of Wendy Vogel, filed on December 16, 2019 as Docket Number 91 in the above-captioned action.

26. "Vogel Declaration" means the Declaration of Wendy Vogel, filed on December 16, 2019 as Docket Number 91 in the above-captioned action.

27. "You" and "Your" as used herein shall refer to Defendant Anne Marie T. Sullivan.

## INSTRUCTIONS

1. In answering the following interrogatories, You shall furnish all information that is available to You, including information in the possession, custody, or control of Your attorneys, accountants, investigators, experts, representatives, or other agents.

2. If, in answering the following, You are unable to answer fully an interrogatory, after exercising due diligence to obtain the information to do so, You shall answer said interrogatory to the fullest extent possible, specifying Your inability to answer the remainder, describing the efforts taken by You to obtain the information to fully answer said interrogatory, and stating whatever information or knowledge You have concerning the unanswered portion thereof.

3. If, in answering the following interrogatories, You state in whole or in part that "I do not know" or "unknown" or otherwise indicate any similar lack of knowledge, You shall state in detail all efforts made to obtain the information requested, the nature of any continuing efforts in that regard, and by whom any such efforts were and are being made.

4. If any document, the identification of which would be responsive to the interrogatories, has been lost or destroyed or is otherwise unavailable, describe and identify each such document by stating in writing: (i) the name(s) of the authors(s) and name(s) of the person(s) who received the original and all copies, (ii) the date and subject matter of the original and all copies, (iii) the last known custodian of the document, (iv) the incident, event, or occurrence during which such document was lost, destroyed, or otherwise became unavailable, (v) each person having knowledge of the circumstances of it being lost, discarded or destroyed, and (vi) Your efforts to locate each such document.

5. If a claim of privilege is asserted with respect to any interrogatory, or if You refuse to disclose any information requested herein on any other ground, state the basis for Your claim that such information need not be disclosed with such specificity as will permit the Court to determine the legal sufficiency of Your objection or position, and, for each such claim of privilege, identify:

    a. whether the information contains a request for legal advice and, if so, identify the person who requested the legal advice;

    b. whether the information contains advice as to the meaning or application of particular laws or rules in response to such request;

    c. any further information to explain and support the claim of privilege and to permit the adjudication of the propriety of that claim;

    d. the nature of the privilege (including work product) that is being claimed and, if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked; and

    e. the type of information, the general subject matter of the information, and such other information as is sufficient to identify the information for a subpoena *duces tecum*, including, where appropriate, the author, addressee, and any other recipient of the information, and, where not apparent, the relationship of the author, addressee, and other recipient to each other.

6. If, in answering these interrogatories, You claim any ambiguity in interpreting either the interrogatory or a definition or instruction applicable thereto, such claim shall not be utilized by You as a basis for refusing to respond. Rather, You shall set forth in a part of Your response to such an interrogatory the language deemed to be ambiguous and the interpretation chosen or used in responding to the interrogatory.

7. You shall respond completely to each interrogatory, setting forth the question in full followed by each answer.

8. Questions regarding the interpretation of these interrogatories should be resolved in favor of the broadest possible construction.

9. These interrogatories are to be considered as continuing and You are requested to provide, by way of supplementary responses hereto, such additional information as You or any persons acting on Your behalf may hereafter obtain that will augment, clarify, or otherwise modify the responses now given to these interrogatories. Such supplementary responses are to be served upon counsel for Plaintiffs within thirty (30) days after receipt of such information or documents.

10. In describing the "facts and circumstances" surrounding an event, You shall identify all relevant parties by name and title, office location, and the dates of relevant events.

## INTERROGATORIES

### INTERROGATORY NO. 6:

Identify and describe all OMH rules, policies, practices, procedures, systems, guidelines, directives, institutional orders, manuals, or other writings, whether formal or informal, that were changed in anticipation of, in conjunction with, and as a result of the implementation of the policy set forth in The Memorandum.

### INTERROGATORY NO. 7:

Describe any communications and consultations with Local Agencies regarding capacity, assessments of need, and planning for supportive services for Persons with Serious Mental Illness released from DOCCS Custody to homeless shelters, including but not limited to mobile crises services, Assertive Community Treatment, and Forensic Assertive Community Treatment, to implement the policy set forth in The Memorandum.