UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- x

M.G., P.C., C.J., M.J., J.R., and D.R., individually and on behalf of all similarly situated,

Plaintiffs,

-against-

7:19-CV-639 (CS) (LMS)

ANDREW CUOMO, in his official capacity as the Governor of the State of New York, the NEW YORK STATE OFFICE OF MENTAL HEALTH, ANN MARIE T. SULLIVAN, in her official capacity as the Commissioner of the New York State Office of Mental Health, the NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, ANTHONY J. ANNUCCI, in his official capacity as the Acting Commissioner of the New York State Department of Corrections and Community Supervision, ANNE MARIE MCGRATH, Deputy Commissioner of the New York State Department of Corrections and Community Supervision,

Defendants.

---------------------------------------------------------------------- x

**DEFENDANT ANN MARIE T. SULLIVAN'S RESPONSES TO PLAINTIFFS' SECOND SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Civil Rules for the Southern District of New York, Defendant SULLIVAN, by her attorney, LETITIA JAMES, the Attorney General of the State of New York, responds to Plaintiffs' Second Set of Interrogatories as follows:

**PRELIMINARY STATEMENT**

1. The responses set forth herein constitute the best information presently available to Defendant based on reasonable searches proportional to the needs of the litigation. Commissioner Sullivan reserves the right to supplement the responses with additional information should such

information or documents become available to counsel for Commissioner Sullivan. Commissioner Sullivan also reserves the right to object to the further disclosure of any such information.

2. By providing the information below, Commissioner Sullivan does not in any way waive, or intend to waive and is preserving, (a) all objections to competency, relevance, materiality and admissibility of the responses or the subject matter thereof; (b) all objections as to vagueness, ambiguity, or undue burden; (c) all rights to object on any ground to the use of any of said responses or the subject matter thereof, in any subsequent proceeding, including the trial of this or any other action; and (d) all right to object on any ground to any request for further responses to these or any discovery requests involving or relating to the subject matter of the request.

3. By referring Plaintiffs to documents, Commissioner Sullivan does not concede the admissibility or relevance of any document produced or referred to or that the document is original, true, accurate, complete, or authentic. Commissioner Sullivan reserves the right to challenge the competency, relevance, materiality, and admissibility of, or to object on any ground to the use of, any information set forth herein or documents produced in any subsequent proceeding or the trial of this or any other action.

4. The inadvertent disclosure of any information that is privileged, was prepared in anticipation of litigation, or is otherwise excludable from discovery, shall not constitute a waiver of any privilege or of any other ground for objecting to discovery with respect to that information, document or any other document, its subject matter, the information contained therein, or of Commissioner Sullivan or the New York State Office of Mental Health's ("OMH") right to object to the use of any such document or the information contained therein during any proceeding in this litigation or otherwise.

5. Commissioner Sullivan objects to the Interrogatories to the extent that they seek documents or information in the possession, custody or control of the New York Department of Corrections and Community Supervision ("DOCCS"), or any governmental entity that is not a party to this action.

6. Commissioner Sullivan objects to the Interrogatories to the extent that they are not sufficiently limited in time and/or scope.

7. Commissioner Sullivan objects to the Interrogatories to the extent that they are not directed to the issue of the New York State Department of Corrections and Community Supervision's ("DOCCS") policy memorandum as ordered by the Court.

8. Commissioner Sullivan objects to the Interrogatories insofar as they incorporate definitions of words or terms that are inconsistent with, contrary to, broader than, or narrower than the definition of such words or terms by OMH.

9. These responses are being provided by Commissioner Sullivan in her official capacity and any response herein shall not be deemed to be based on Commissioner Sullivan's personal knowledge.

Without waiving the foregoing, Commissioner Sullivan responds as follows:

**INTERROGATORY NO. 6:**

Identify and describe all OMH rules, policies, practices, procedures, systems, guidelines, directives, institutional orders, manuals, or other writings, whether formal or informal, that were changed in anticipation of, in conjunction with, and as a result of the implementation of the policy set forth in The Memorandum.

**RESPONSE TO INTERROGATORY NO. 6:**

Defendant Sullivan responds that no OMH policies, rules, practices, procedures, systems, etc. were changed as a result of the New York State Department of Corrections and Community Supervision's ("DOCCS") implementation of its policy as set forth in the DOCCS Memorandum. This Memorandum set forth a DOCCS policy that has not changed or required a change to any OMH policy or procedure.

**INTERROGATORY NO. 7:**

Describe any communications and consultations with Local Agencies regarding capacity, assessments of need, and planning for supportive services for Persons with Serious Mental Illness released from DOCCS Custody to homeless shelters, including but not limited to mobile crises services, Assertive Community Treatment, and Forensic Assertive Community Treatment, to implement the policy set forth in The Memorandum.

**RESPONSE TO INTERROGATORY NO. 7:**

Defendant Sullivan responds that there were no communications or consultations by OMH with Local Agencies as a result of the implementation of the DOCCS' policy set forth in the DOCCS Memorandum. The DOCCS Memorandum is a DOCCS policy requiring that DOCCS employees follow OMH's recommendations regarding the release of inmate patients to a homeless shelter. No changes were necessary at OMH.

**INTERROGATORY NO. 8:**

Describe the clinical justifications, or any empirical evidence, supporting OMH's practice of locating a Community-Based Mental Health Housing placement prior to a Lawful Release Date for Persons with Serious Mental Illness whom OMH has determined require such a placement as

an "added layer of support," as described in the Enright Declaration, Paragraph 4, and the Vogel Declaration Paragraph 6.

**RESPONSE TO INTERROGATORY NO. 8:**

Defendant Sullivan objects to Interrogatory No. 8 on the ground that it asks for information that is not directed to the issue of DOCCS's policy memorandum as ordered by the Court. Notwithstanding and without waiving this objection, Defendant Sullivan responds that OMH's determination that an inmate requires access to community mental health housing is based on clinical decisions by OMH clinical professionals after an exhaustive review of all relevant data as described in Defendant Sullivan's response to Interrogatory No. 10, as well as in the voluminous production of documents concerning pre-release planning that has already been produced to Plaintiffs.

**INTERROGATORY NO. 9:**

Identify and describe all documents or communications reflecting the State's assessment of how the experience of being released to and living in homeless shelters impacts the stability, adjustment, mental health, engagement with mental health services, or reintegration into society of Persons with Serious Mental Illness released from correctional facilities into those shelters.

**RESPONSE TO INTERROGATORY NO. 9:**

Defendant Sullivan objects to Interrogatory No. 9 on the grounds that it is not directed to the issue of the New York State Department of Corrections and Community Supervision's ("DOCCS") policy memorandum as ordered by the Court.

**INTERROGATORY NO. 10:**

Identify and describe the procedures OMH had in place before implementation of the policy set forth in The Memorandum for assessing whether people being released from DOCCS Custody

were suitable for release to a homeless shelter or required Community-Based Mental Health Housing or otherwise appropriate residential housing upon release.

**RESPONSE TO INTERROGATORY NO. 10:**

Defendant Sullivan objects to Interrogatory No. 10 on the grounds that it is not directed to the issue of the DOCCS policy memorandum and that the word "appropriate" is vague and ambiguous. Notwithstanding and without waiving these objections, Defendant Sullivan refers Plaintiffs to documents already produced in response to Plaintiffs' document demands, bate-stamped OMH00062554 through OMH00062591. By way of further response, Defendant Sullivan states that the CNYPC Pre-Release Services staff conducts a multi-tier level of review within 90 days of release to determine if an individual inmate with Serious Mental Illness (SMI), as defined by MHL §1.03(52), who is at risk of homelessness, is psychiatrically stable for community release, and if release to community mental health housing is clinically necessary or if they can be released to other types of housing, including shelters.

This review begins in the correctional facility with the designation of a Pre-Release Coordinator who works individually with inmate patients to discuss their discharge needs, housing, treatment options, as well as assist with their anticipated release to the community. The inmate patient also continues to work with his or her assigned multidisciplinary corrections-based treatment team to address his or her behavioral health needs. There is a continuous clinical assessment of mental status, suicidal thoughts and/or behavior, risk for violence to self and/or others and level of psychiatric care and housing required when transitioning out of an institutional setting.

Additionally, CNYPC has another level of centralized clinical review conducted by Albany Pre-Release Services staff and CNYPC clinical leadership for all inmate patients who have an S

designation, as defined at Correction Law Section 137 (6) (e), in the DOCCS system as their release approaches. This review includes review of past psychiatric history, previous hospitalizations, treatment compliance, presentation and behavior during incarceration, prior criminal behavior and arrests, criteria for Assisted Outpatient Treatment (AOT), and current psychiatric stability, all to inform the discharge plan. During this review, the Albany Pre-Release Service staff continues to receive input and updates from the treatment team at the correctional facility that is currently treating the patient, concerning the patient's clinical needs and stability. During this review, the need for inpatient treatment is also considered.

Finally, all of these formulated inmate patient discharge plans undergo a management level review at Albany Pre-Release Services. If it is determined that an individual appears appropriate for AOT, then the individual's plan will be reviewed by a specific AOT committee. Furthermore, individual discharge plans where a clinical professional has determined that there is a risk of mental health decompensation upon release of the individual to the community, and a decision has not yet been reached whether to pursue AOT, will undergo a more intensive review by the Specialized Review Committee, consisting of the Pre-Release Services Unit Chief and the Medical Director of the Division of Forensic Services. At this time, final recommendations and determinations for level of care and treatment upon release to the community are made and are discussed with the corrections-based treatment team to ensure appropriate referrals and interviews with community providers. This will include the determination that the inmate patient is psychiatrically stable for community release even if that includes release to a shelter.

**INTERROGATORY NO. 11:**

Identify and describe the current OMH procedures for assessing whether people being released from DOCCS Custody are suitable for release to a homeless shelter or require Community-Based

Mental Health Housing or otherwise appropriate residential housing upon release, including any differences between the current procedures and the procedures identified and described in response to Sullivan Interrogatory No. 10.

**RESPONSE TO INTERROGATORY NO. 11:**

Defendant Sullivan responds that there is no difference between the procedures followed by OMH before DOCCS issued its Memorandum and the procedures followed by OMH after DOCCS issued its Memorandum. These procedures are described in the Response to Interrogatory No. 10.

**INTERROGATORY NO. 12:**

Describe OMH's responsibilities after implementation of the policy set forth in The Memorandum in assessing whether persons require mental health housing or otherwise appropriate residential housing upon release, or if an incarcerated individual may be released from DOCCS Custody to a shelter setting.

**RESPONSE TO INTERROGATORY NO. 12:**

Defendant Sullivan objects to Interrogatory No. 10 on the ground that the word "responsibilities" is vague and ambiguous and to the extent that Plaintiffs appear to suggest that OMH's "responsibilities" are derived from DOCCS's policy memorandum. Notwithstanding and without waiving these objections, Defendant Sullivan refers Plaintiffs to her response to Interrogatory No. 10.

**INTERROGATORY NO. 13:**

Identify and describe the procedures OMH implements when it has located an adequate Community-Based Mental Health Housing placement for an incarcerated individual it has

determined requires such housing as an added layer of support upon release from DOCCS Custody, but that placement is unavailable on the individual's Lawful Release Date.

**RESPONSE TO INTERROGATORY NO. 13:**

Defendant Sullivan responds to Interrogatory No. 13 as follows: A SPOA application is completed by the Pre-Release Coordinator in the correctional facility where the inmate is housed for all SMI inmates who are at risk of homelessness but prior to a determination that housing is clinically necessary for the inmate patient. The application is then sent to the county where OMH has been notified by DOCCS that the patient will be released. The county SPOA Coordinator then sends the application to all community providers of mental health housing who will then notify the county SPOA Coordinator of any availability. Concurrently, and as described in Response to No. 10, Albany Pre-Release staff will conduct a clinical evaluation to assist in determining if housing is clinically necessary for the inmate patient. If the Specialized Review Committee agrees that mental health housing is clinically necessary, CNYPC works with OMH Adult Services to provide such housing in a Transitional Living Residence. Until the release of the patient from DOCCS custody, Albany Pre-Release staff will continue to work with the county to assess the availability of community mental health housing in the county where the patient is being released or determine if there might be another type of housing that would be suitable for this particular individual, such as VA Housing. Since 2014, CNYPC has successfully provided mental health housing for every released inmate for whom CNYPC concluded it was clinically necessary.

**INTERROGATORY NO. 14:**

Describe the commitments, including but not limited to public statements, monetary commitments, and/or written policies, procedures, manuals, regulations or other documents, OMH has made

pursuant to its practice of "locat[ing] a placement prior to the inmate's scheduled release date" as set forth in the Vogel Declaration, Paragraph 6.

**RESPONSE TO INTERROGATORY NO. 14:**

Defendant Sullivan objects to Interrogatory No. 14 on the ground that it is not directed to the issue of the New York State Department of Corrections and Community Supervision's ("DOCCS") policy memorandum as ordered by the Court. Notwithstanding and without waiving this objection, Defendant Sullivan responds that there are no public statements or policies other than those already disclosed to Plaintiffs concerning OMH's practice and policy of locating a placement prior to an inmate's scheduled release date if a housing placement is clinically necessary. In 2019, OMH published a Request for Proposals (RFP) for housing for adults with serious mental illness who were reentering the community from prison. As a result of this RFP, 90 forensic beds were added.

**INTERROGATORY NO. 15:**

Identify and describe how OMH trains its staff to determine whether "individuals require mental health housing or otherwise appropriate residential housing upon release," including any guidance documents OMH provides its staff and any procedures OMH directs its staff to implement.

**RESPONSE TO INTERROGATORY NO. 15:**

Defendant Sullivan objects to Interrogatory No. 15 on the ground that it is not directed to the issue of the New York State Department of Corrections and Community Supervision's ("DOCCS") policy memorandum as ordered by the Court. Notwithstanding and without waiving this objection, Defendant Sullivan responds that CNYPC trains its staff to conceptualize each individual case and to formulate a clinical opinion related to the inmate patient's psychiatric stability for community release. The staff will then provide a clinical rationale for their opinion,

which is then reviewed at the Albany Pre-release manager level and the Specialized Review Committee as previously described in Defendant Sullivan's Response to Interrogatory No. 10.

**INTERROGATORY NO. 16:**

Identify and describe how OMH trains its staff to determine what constitutes an "appropriate" residence as that term is used in The Memorandum, including any documents OMH provides its staff and any procedures OMH directs its staff to implement.

**RESPONSE TO INTERROGATORY NO. 16:**

Defendant Sullivan objects to Interrogatory No. 16 on the ground that it is not directed to the issue of the New York State Department of Corrections and Community Supervision's ("DOCCS") policy memorandum as ordered by the Court. Notwithstanding and without waiving this objection, Defendant Sullivan responds that OMH does not train its staff to determine what constitutes an appropriate residence as that term is used in the Memorandum. The Memorandum is a DOCCS document, not an OMH document and Plaintiffs are referred to Defendant Sullivan's response to Interrogatory No. 10 and to the documents produced by OMH concerning its pre-release planning and procedures.

**INTERROGATORY NO. 17:**

Identify and describe all OMH procedures for locating housing for Persons with Serious Mental Illness released from DOCCS Custody who are not subject to SARA restrictions prior to their scheduled released date, as described in the Vogel Declaration, Paragraphs 2-6.

**RESPONSE TO INTERROGATORY NO. 17:**

Defendant Sullivan objects to Interrogatory No. 16 on the ground that it is not directed to the issue of the New York State Department of Corrections and Community Supervision's ("DOCCS") policy memorandum as ordered by the Court. Notwithstanding and without waiving

this objection, Defendant Sullivan refers Plaintiffs to the documents already produced in discovery as well as to her response to Interrogatory No. 13. Defendant Sullivan further responds that Albany Pre-Release staff are familiar with the housing in each county and work to determine what housing is available. They are also aware of the availability of the dedicated forensic housing which is administered by the county but paid for by the state.

**INTERROGATORY NO. 18**:

Describe all procedures for monitoring OMH's compliance with its procedures identified and described in response to Sullivan Interrogatory Number 17.

**RESPONSE TO INTERROGATORY NO. 18:**

Defendant Sullivan objects to Interrogatory No. 18 on the grounds that it is not directed to the issue of the New York State Department of Corrections and Community Supervision's ("DOCCS") policy memorandum as ordered by the Court and that it is overbroad in that it is not limited in time and scope. Notwithstanding and without waiving these objections, Defendant Sullivan responds that monitoring of the CNYPC Pre-release procedures is done through the Re-Entry Management System (REMS). The Pre-Release supervisors will run reports to determine that all SMI designated inmates have completed SPOA applications. There is also weekly discussion with the Pre-Release Unit Chief for all TLR referrals.

**INTERROGATORY NO. 19:**

Identify and describe OMH's process for determining whether "an incarcerated individual with SMI . . . may be released from DOCCS custody to a shelter setting," as referenced in The Memorandum, including but not limited to any clinical factors or considerations OMH utilizes to make these determinations.

**RESPONSE TO INTERROGATORY NO. 19:**

Defendant Sullivan objects to Interrogatory No. 19 on the grounds that it is not directed to the issue of the New York State Department of Corrections and Community Supervision's ("DOCCS") policy memorandum as ordered by the Court. Notwithstanding and without waiving this objection, Defendant Sullivan refers Plaintiffs to her responses to Interrogatory Nos. 10 & 13 as well as to the documents produced to Plaintiffs.

**INTERROGATORY NO. 20:**

Identify and describe all criteria and/or factors OMH considers to determine whether an incarcerated Person with Serious Mental Illness is psychiatrically stable for community release with or without a Community-Based Mental Health Housing placement, as described in the Vogel Declaration, Paragraph 5.

**RESPONSE TO INTERROGATORY NO. 20:**

Defendant Sullivan objects to Interrogatory No. 20 on the grounds that it is not directed to the issue of the New York State Department of Corrections and Community Supervision's ("DOCCS") policy memorandum as ordered by the Court. Notwithstanding and without waiving this objection, Defendant Sullivan refers Plaintiffs to the documents produced and to her responses to Interrogatory Nos. 10 & 13 as to the clinical review conducted by experienced mental health professionals, which assesses the clinical stability and severity of illness of each individual.

**INTERROGATORY NO. 21:**

Identify and describe any changes to the criteria identified and described in response to Sullivan Interrogatory Number 20 that post-date January 23, 2019.

**RESPONSE TO INTERROGATORY NO. 21:**

Defendant Sullivan objects to Interrogatory No. 20 on the grounds that it is not directed to the issue of the New York State Department of Corrections and Community Supervision's ("DOCCS") policy memorandum as ordered by the Court. Notwithstanding and without waiving this objection, Defendant Sullivan responds that there have been no changes to the criteria described in response to Interrogatory No. 20, which incorporates her response to Interrogatory Nos. 10 & 13

**INTERROGATORY NO. 22:**

Identify and describe all situations that may constitute "unforeseen circumstances" resulting in OMH's failure to locate a housing placement prior to an incarcerated person's Lawful Release Date, as referenced in the Vogel Declaration, Paragraph 6.

**RESPONSE TO INTERROGATORY NO. 22:**

Defendant Sullivan objects to Interrogatory No. 20 on the grounds that it is not directed to the issue of the New York State Department of Corrections and Community Supervision's ("DOCCS") policy memorandum as ordered by the Court. Unforeseen circumstances referred to in the Vogel Declaration, Paragraph 6, refers to a scenario that OMH has not yet encountered when a resource for a particular patient is not available.

**INTERROGATORY NO. 23:**

Describe in detail any and all actions taken by State Agencies and Local Agencies to implement The Memorandum and the policy set forth therein, including but not limited to issuing Requests for Proposals, awarding contracts to providers, and/or expanding existing contracts to develop Community-Based Mental Health Housing, Transitional Living Residences, Transitional Placement Programs, Crisis Residences, and homeless shelters.

**RESPONSE TO INTERROGATORY NO. 23:**

Defendant Sullivan objects to Interrogatory No. 23 on the grounds that it is not directed to the issue of the New York State Department of Corrections and Community Supervision's ("DOCCS") policy memorandum as ordered by the Court, and to the extent that it is directed to the policy, the question is inappropriately directed at OMH. Notwithstanding and without waiving these objections, Defendant Sullivan responds that the policy is a DOCCS policy and did not result in any action taken by OMH. OMH's procedures and policies concerning the release of inmates with SMI have been produced to Plaintiffs and, to the extent relevant in response to these Interrogatories, have been set forth in Defendant Sullivan's responses. Furthermore, as previously noted, in 2019, OMH published a Request for Proposals for housing for adults with serious mental illness who were reentering the community from prison. As a result of this RFP, 90 forensic beds were added.

**INTERROGATORY NO. 24:**

Provide a list of the Transitional Living Residences and Transitional Placement Programs to which Persons with Serious Mental Illness have been released pursuant to the policy set forth in The Memorandum, including the names and locations of the residences and placement programs, the number of individuals released to each as described in the Vogel Declaration, Paragraph 6, and the average length of stay for such individuals.

**RESPONSE TO INTERROGATORY NO. 24:**

Defendant Sullivan objects to Interrogatory No. 24 because it assumes that OMH is placing inmates with serious mental illness in "residences" and "placement programs" pursuant to the policy set forth in DOCCS's Memorandum. OMH's policies and procedures for placing inmates with serious mental illness have been disclosed to Plaintiffs in

numerous documents that have been produced and these policies and procedures are independent of DOCCS's policy as set forth in the Memorandum. Notwithstanding and without waiving these objections, Defendant Sullivan responds that since December 16, 2019, only one inmate patient has been released to a Transitional Living Residence. That release was on December 23, 2019 to Manhattan Psychiatric Center's Crisis Residence.

**INTERROGATORY NO. 25:**

Provide a Census with anonymous identifiers[1] of Persons with Serious Mental Illness released from DOCCS Custody to a homeless shelter, since January 23, 2019, including whether OMH had submitted a SPOA application for housing on the person's behalf prior to their release.

**RESPONSE TO INTERROGATORY NO. 25:**

Defendant Sullivan objects to Interrogatory No. 25 on the ground that it is not directed to the issue of the New York State Department of Corrections and Community Supervision's ("DOCCS") policy memorandum as ordered by the Court.

Dated: New York, New York
February 17, 2020

LETITIA JAMES
Attorney General of the State of New York
Attorney for State Defendants
By: [signature]
JANE R. GOLDBERG
JEB HARBEN
Assistant Attorney General
28 Liberty Street
New York, New York 10005
(212) 416-6133
Jane.Goldberg@ag.ny.gov
Jeb.Harben@ag.ny.gov

[1] Although Plaintiffs currently request that the information sought be provided using anonymous identifiers, Plaintiffs reserve the right to seek identifying information concerning the individuals described in this Interrogatory at a later date.

To:

Elena Landriscina
Joshua Rosenthal
Disability Rights New York
25 Chapel Street, Suite 1005
Brooklyn, New York 11201

Stefen R. Short
Robert Quackenbush
Veronica Vela
Mary Lynne Werlwas
Prisoners' Rights Project
The Legal Aid Society
199 Water St., 6th Fl.
New York, NY 10038

Walter G. Ricciardi
Emily A. Vance
Paul, Weiss, Rifkind, Wharton
& Garrison, LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Attorneys for Plaintiffs

**VERIFICATION**

LI-WEN LEE, M.D., Associate Commissioner for the New York State Office of Mental Health Division of Forensic Services, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury that to the best of my knowledge and understanding, based on personal knowledge, the records of the Office of Mental Health and/or information provided to me by employees of the Office of Mental Health, the foregoing Responses to the Second Set of Interrogatories propounded to Ann Marie T. Sullivan, Commissioner of the Office of Mental Health, are true and correct.

Dated: Albany, New York
February 12, 2020

Li-wen Lee, M.D.
Associate Commissioner
New York State Office of Mental Health
44 Holland Avenue
Albany, NY 12229