UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
M.G., P.C., C.J., M.J., J.R., and D.R., individually and on
behalf of all similarly situated,

Plaintiffs,

-against-

7:19-CV-639 (CS) (LMS)

ANDREW CUOMO, in his official capacity as the Governor
of the State of New York, the NEW YORK STATE OFFICE
OF MENTAL HEALTH, ANN MARIE T. SULLIVAN, in
her official capacity as the Commissioner of the New York
State Office of Mental Health, the NEW YORK STATE
DEPARTMENT     OF     CORRECTIONS     AND
COMMUNITY     SUPERVISION,     ANTHONY     J.
ANNUCCI, in his official capacity as the Acting
Commissioner of the New York State Department of
Corrections and Community Supervision, and ANNE
MARIE MCGRATH, in her official capacity as Deputy
Commissioner of the New York State Department of
Corrections and Community Supervision,

Defendants.

-------------------------------------------------------------------- x

**PLAINTIFFS' SUR-REPLY IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

Page

ARGUMENT ................................................................................................................... 1

I.      DOCCS' Memorandum Does Not Moot the Case .............................................. 1

        A.    Defendants Have Not Ceased the Challenged Conduct ............................ 2

        B.    Defendants Have Failed to Show That There Is No Reasonable
              Expectation That the Challenged Conduct Will Recur ............................. 5

        C.    Defendants Have Not Completely and Irrevocably Eradicated the Effects
              of the Alleged Violation ......................................................................... 9

CONCLUSION ............................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Bryant v. City of New York*,
2016 WL 3766390 (S.D.N.Y. July 8, 2016) ...............................................................6

*Byrd v. Goord*,
2007 WL 2789505 (S.D.N.Y. Sept. 26, 2007) ...........................................................7

*Chimenti v. Wetzel*,
2018 WL 3388305 (E.D. Pa. July 12, 2018) ...........................................................3, 4

*Ciaramella v. Zucker*,
2019 WL 4805553 (S.D.N.Y. Sept. 30, 2019) ........................................................2, 7

*Dean v. Blumenthal*,
577 F.3d 60 (2d Cir. 2009) ......................................................................................6

*Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*,
191 F.3d 198 (2d Cir. 1999) ....................................................................................9

*Edelhertz v. City of Middletown*,
2013 WL 4038605 (S.D.N.Y. May 6, 2013) .............................................................3

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ............................................................................................1, 5

*Inside Connect, Inc. v. Fischer*,
2014 WL 2933221 (S.D.N.Y. June 30, 2014) ...........................................................8

*Mhany Mgmt., Inc. v. County of Nassau*,
819 F.3d 581 (2d Cir. 2016) ................................................................................1, 5, 8

*Olmstead v. L.C. ex rel. Zimring*,
527 U.S. 581 (1999) .......................................................................................4, 6, 10

*Samele v. Zucker*,
324 F. Supp. 3d 313 (E.D.N.Y. 2018) ..................................................................5, 7

*Victory v. Berks County*,
2020 WL 236911 (E.D. Pa. Jan. 15, 2020) ............................................................5, 9

*United States v. W.T. Grant Co.*,
345 U.S. 629 (1953) ................................................................................................6

**STATUTES**

Correction Law § 73(10)..................................................................................................7

Penal Law § 70.45...........................................................................................................8

This case centers on the unconstitutional and unlawful institutionalization of indigent people with serious mental illness in prisons past their lawful release dates due to the lack of available community-based mental health housing for which they are eligible and appropriate. Defendants have defended this practice, and do so to this day, without addressing the underlying cause: their failure to maintain sufficient capacity in community-based mental health housing. Rather than address this systemic deficiency, Defendants tried to evade this lawsuit by releasing five of the six Named Plaintiffs in an attempt to moot their claims. *See* Dkt. 80 at 9-12.[1] Now, in an attempt to moot the claims of putative class members, DOCCS[2] issued a memorandum— dated the same day as Defendants' Reply—outlining its decision to permit a greater number of people with serious mental illness to be released to homeless shelters. Dkt. 92-1 ("Memorandum"). Defendants argue this Memorandum moots this case. However, as discussed below, this is a textbook example of where the voluntary cessation exception applies. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190-92 (2000).[3]

## ARGUMENT

### I.    DOCCS' Memorandum Does Not Moot the Case

DOCCS' Memorandum brings Defendants no closer to satisfying their "stringent and formidable burden" of proving that Plaintiffs' claims are moot. *Mhany Mgmt., Inc. v. County of Nassau*, 819 F.3d 581, 624 (2d Cir. 2016). A memorandum such as this one can moot a plaintiff's claim only where "(1) the 'challenged conduct has, in fact, ceased,' (2) 'it can be said

---

[1] As discussed in Plaintiffs' Opposition, the claims of C.J., M.J., J.R., D.R., and M.G. are not moot because three exceptions to the mootness doctrine apply. *See* Dkt. 82 at 4-13. P.C.'s claims are not moot because he remains in prison past his open parole date, December 19, 2017, and continues to desire release to community-based mental health housing. *See* Dkt. 86.

[2] Plaintiffs incorporate all abbreviations defined in their Opposition. *See* Dkt. 82.

[3] Plaintiffs are actively seeking the discovery necessary for class certification and to clarify what amendments, if any, are necessary to address this purported change in Defendants' practices.

with assurance that there is no reasonable expectation that the alleged violation will recur,' and (3) 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Ciaramella v. Zucker*, 2019 WL 4805553, at *5 (S.D.N.Y. Sept. 30, 2019) (quoting *Am. Freedom Def. Initiative v. MTA*, 815 F.3d 105, 109 (2d Cir. 2016)). Defendants have not met their burden to satisfy any, let alone all, of these criteria.

A.    Defendants Have Not Ceased the Challenged Conduct

Plaintiffs challenge their prolonged institutionalization in state prison, but that is far from the totality of this case. Plaintiffs also challenge Defendants' failure to (1) serve them in the most integrated setting appropriate to their needs upon their lawful prison release dates and (2) maintain sufficient capacity in community-based mental health housing to meet the needs of Plaintiffs and other eligible persons upon release from incarceration. *See* Dkt. 47 ("FAC") ¶¶ 269-350. The Memorandum does not address either of these challenges. Insufficient capacity in community-based mental health housing continues unabated, demonstrated in part by the release of Named Plaintiffs to inappropriate transitional placements, Dkt. Nos. 85, 87-90, and the release of hundreds of individuals with serious mental illness in the last year alone to homeless shelters. Rosenthal Sur-Reply Decl. Ex. 111, 115 (listing 364 releases of individuals with serious mental illness to shelters, hotels, and motels, 334 of whom had a pending application for community-based mental health housing); *id.* Ex. 114 at 9. Defendants have not even coordinated with the local municipalities to which individuals will be released to discuss the need for or availability of supportive services and housing. *Id.* Ex. 103 ("Annucci Response") at 9; *id.* Ex. 104 ("Sullivan Response") at 4. By asserting that the Memorandum ends the conduct Plaintiffs have challenged, Defendants misunderstand both Plaintiffs' claims and the voluntary cessation doctrine, which requires that Defendants demonstrate that *all* of the challenged conduct has ceased. *See, e.g.*, *Chimenti v. Wetzel*, 2018 WL 3388305, at *5 (E.D. Pa. July 12, 2018).

Defendants also have not demonstrated that they have ceased the practice of prolonging the institutionalization of members of the putative class in prison. DOCCS attempts to moot this case by issuing a Memorandum, but a memorandum alone is insufficient to demonstrate changed conditions. *See, e.g.*, *Edelhertz v. City of Middletown*, 2013 WL 4038605, at \*3-4 (S.D.N.Y. May 6, 2013). Here, Defendants have not shown that the Memorandum has been implemented to ensure that Defendants no longer hold individuals with serious mental illness in prison past their release dates, or that all Defendants have foreclosed the practice of holding individuals with serious mental illness in prison due to a lack of housing (and have not continued the same practice dressed up in new language, including as "waivers" of release, as discussed below). Moreover, Defendants have no mechanism in place to ensure that staff implement the Memorandum properly, Annucci Response at 12; Rosenthal Sur-Reply Decl. Ex. 116 ("Annucci Supp. Response") at 6, and decided that "no new training was required" to implement the Memorandum, Annucci Response at 11, despite the fact that large numbers of Defendants' staff, spread out across a mammoth system, are tasked with its implementation.

Defendants' failures to train and implement the Memorandum and coordinate with local agencies are particularly troubling in light of DOCCS' prior (and vague) "public safety" justifications for holding people past their release date, *e.g.*, Annucci Response at 7-8; Dkt. 80 at 2, 21-22; Dkt. 103 at 3, DOCCS' decision to continue this practice for certain people with disabilities, DOCCS' professed inability "to determine, after the fact," which individuals were affected and who it "may have, in the past, recommended not be allowed to be released to shelters," Annucci Response at 14, and DOCCS' difficulty accurately tracking individuals' release status, as discussed further in Part I.C (describing erroneous omissions from reports).

Moreover, the Memorandum does not address Defendants' practice of prolonging the

incarceration of putative class members who have purportedly "waived" their release from prison. Although DOCCS claims that it will no longer actively impede the release of individuals with serious mental illness to homeless shelters, Reply at 2, DOCCS has acknowledged its practice of informally obtaining "waivers" of release. Annucci Response at 19. After securing "waivers," DOCCS keeps individuals past their release date, and discovery shows that Defendants have secured such waivers from people with serious mental illness. *See* Rosenthal Sur-Reply Decl. Ex. 105 (showing individuals with serious mental illness remained in DOCCS custody past their initial scheduled release date, six of whom purportedly "waived" release); Annucci Response at 19. Defendants have failed to show that they seek waivers only for reasons other than a lack of community-based mental health housing and, thus, have not shown that the complained-of conduct has ceased. *See Chimenti*, 2018 WL 3388305, at *5, *8.

Finally, P.C.'s continued imprisonment more than two years past his open date for parole release further contradicts Defendants' assertion that they have stopped holding individuals with serious mental illness because appropriate mental health housing is not available. Prison staff have told P.C. he will not be released because appropriate community-based mental health housing is unavailable. FAC ¶ 50. Although P.C. is dually diagnosed with an intellectual disability, he is eligible and appropriate for release to community-based mental health housing and desires such placement, and OMH has continued to apply for such housing for P.C.[4] *See* Rosenthal Sur-Reply Decl. Exs. 106, 117. The Memorandum's vague language excluding individuals with medical conditions or intellectual disabilities is highly problematic, as it leaves

---

[4] Defendants' assertion that P.C. declined to reside with family in Alabama does not undermine his *Olmstead* claim. Further, Defendants confirmed that P.C. is not eligible for services through the New York State Office for Persons with Developmental Disabilities ("OPWDD"), including OPWDD housing. *See* Rosenthal Sur-Reply Decl. Ex. 107. Defendants' assertions are irrelevant to mootness and should be addressed, if at all, at a later stage of the litigation.

putative class members with dual diagnoses, like P.C., at risk of the same unlawful institutionalization due to inadequate housing capacity.

In sum, DOCCS' half-page Memorandum issued the same day as Defendants' Reply does not demonstrate that Defendants have ceased the conduct alleged in Plaintiffs' Complaint.

B.    Defendants Have Failed to Show That There Is No Reasonable Expectation That the Challenged Conduct Will Recur

To assess whether there exists no reasonable expectation that the challenged conduct will recur, courts consider factors such as (1) whether the defendant swears to cease the complained-of conduct beyond the litigation, (2) whether the policy could be easily changed or abandoned in the future, (3) whether the policy change is broad in scope and unequivocal in tone, and (4) the circumstances surrounding the implementation of the new policy. *Victory v. Berks County*, 2020 WL 236911, at *24 (E.D. Pa. Jan. 15, 2020); *see Mhany Mgmt.*, 819 F.3d at 604-05; *Samele v. Zucker*, 324 F. Supp. 3d 313, 328-29 (E.D.N.Y. 2018). "The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to [recur] lies with the party asserting mootness." *Friends of the Earth*, 528 U.S. at 189 (alteration and internal quotation marks omitted). Although "some deference must be accorded to [a government entity's] representations that certain conduct has been discontinued," such "deference does not equal unquestioned acceptance." *Mhany Mgmt.*, 819 F.3d at 604 (citation and internal quotation marks omitted). Here, DOCCS' Memorandum does not warrant deference and Defendants have failed to demonstrate there is no reasonable expectation that the challenged conduct will recur.

First, the Memorandum, Defendants' Reply, and Defendants' interrogatory responses lack a sworn statement that DOCCS will cease the challenged conduct *prospectively* even after this litigation is over by releasing all indigent individuals with serious mental illness to the most integrated setting appropriate for their needs by their lawful release dates. But even if Defendants

5

made such a commitment, it would not address the underlying failures at issue in this case. Instituting a prospective change to state policy would require robust inter-agency coordination between DOCCS, OMH, and third parties such as local services agencies, which operate county-level mental health programs, and private agencies. Yet, Defendant Sullivan maintains that the Memorandum binds only DOCCS and necessitates *no changes* at OMH. *See* Sullivan Response at 4. Further, no Defendant has demonstrated that the policies and practices governing the release of individuals with serious mental illness from prison are now ensuring people with serious mental illness receive services in the most integrated setting appropriate to their needs, as *Olmstead v. L.C. ex rel. Zimring* requires. 527 U.S. 581 (1999). While Defendant Annucci has stated that "DOCCS has no intention of discontinuing the policy set forth in The Memorandum," Annucci Response at 5, that does not suffice to meet Defendants' heavy burden to demonstrate that the conduct will not resume when this litigation is over. *See United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) ("disclaim[ing] any intention" to resume complained-of conduct is insufficient to moot a case); *Dean v. Blumenthal*, 577 F.3d 60, 65 (2d Cir. 2009) (same).

Second, Defendants have failed to take steps consistent with a commitment not to resume their practice. They have not made any public announcement or statement concerning the Memorandum beyond the court filings in this case. *Cf. Bryant v. City of New York*, 2016 WL 3766390, at *4 (S.D.N.Y. July 8, 2016) (finding commitment where (i) rules were adopted pursuant to formal notice-and-comment procedures, (ii) city made substantial efforts to implement the rules, and (iii) officials publicly committed to new rules outside of the litigation context). While the Memorandum was made public via the Court's docket, Annucci Response at 4, that falls short of the "unambiguous public commitment to maintain the new policy" that is necessary to trigger the deference accorded to government entities. *See Ciaramella*, 2019 WL

4805553, at *5. Further, as discussed above, DOCCS has provided no training to staff responsible for implementing the Memorandum, no procedure is in place to monitor implementation, and Defendants have not coordinated with housing providers to ensure any commitment to meet the mental health housing and service needs of putative class members by their lawful release dates. According to Defendants, all they have done to implement the Memorandum is circulate it and discuss it on a telephone call. Annucci Response at 4, 11, 12.

Third, the Memorandum can easily be changed or abandoned. According to Defendant Annucci, DOCCS can change or revoke the Memorandum simply by issuing "a subsequent memorandum, directive, regulation, or other appropriate document." Annucci Response at 11. In fact, the Memorandum has even less force and permanence than a departmental directive,[5] and no force of law binds future DOCCS officials or any Defendants to the Memorandum. *Cf. Samele*, 324 F. Supp. 3d at 329-30 (collecting cases); *Byrd v. Goord*, 2007 WL 2789505, at *3 (S.D.N.Y. Sept. 26, 2007) ("The possibility that DOCS would be free to reinstate its commission practice, upon expiration of the contract or after a new governor assumes office, was intentionally foreclosed by the New York State legislature's enactment of Correction Law § 623. Under these circumstances there is no basis from which it can reasonably be inferred that DOCS might reinstate its commission practice."). Moreover, DOCCS continues to claim legal authority to incarcerate any individual on community supervision in prisons on RTF status, pursuant to Correction Law § 73(10) and asserts that the Memorandum does not affect the Parole Board's ability, under Penal Law § 70.45, to impose special conditions that DOCCS has relied upon to

---

[5] A memorandum from authorized DOCCS staff modifies existing DOCCS directives when, among other things, the Bureau of Internal Controls ("BIC") is notified. Rosenthal Decl. Ex. 110, § V(A). By contrast, the Memorandum at issue here was not distributed to the BIC. Annucci Response at 11.

hold Plaintiffs past their release dates. *See* Annucci Response at 18-19; FAC ¶¶ 256-68.

Fourth, the Memorandum is neither broad in scope nor unequivocal in tone. The Memorandum does not apply to all individuals with serious mental illness who are at risk of homelessness; instead, it expressly excepts individuals for whom OMH has determined that shelter release is inappropriate. Dkt. 92-1. Additionally, individuals to whom this Memorandum applies purportedly will be released by their lawful release date only absent "any unforeseen circumstances," Dkt. 92 ¶ 15; *see* Dkt. 91 ¶ 6, which Defendants refuse to define, *see* Annucci Response at 15 (stating "unforeseen circumstances" include unexpected medical and transportation issues, "a temporary delay in housing availability," "among other reasons"). The conditional nature of the Memorandum, which is subject to an unbounded "unforeseen circumstances" exception, is far from the unequivocal, mandatory, discretionless reversal in policy necessary to show that challenged conduct cannot reoccur. *Cf. Inside Connect, Inc. v. Fischer*, 2014 WL 2933221 (S.D.N.Y. June 30, 2014) (case moot where new policy contained mandatory, unequivocal language directing DOCCS staff to cease challenged conduct).

Finally, the circumstances surrounding the implementation of the Memorandum do not demonstrate a firm commitment to cease the challenged practices even after this litigation ends. Defendants' conduct is more consistent with a desire to put an end to this litigation, not the underlying civil rights violations at issue. *See Mhany Mgmt.*, 819 F.3d at 604 (case not moot where defendants' actions "appear to track" the litigation). DOCCS issued the Memorandum on the date of Defendants' Reply, notwithstanding the fact that, over a year before Plaintiffs filed this lawsuit, Defendant McGrath was aware of—and expressed concern to fellow DOCCS employees regarding—Defendants' practice of holding individuals past their lawful release date in RTFs "pending housing due to their mental health status," but did not rectify the problem then.

Rosenthal Sur-Reply Decl. Ex. 109; *see id.* Ex. 108 (Anne Marie McGrath, DOCCS then-Associate Commissioner, writing that "RTF for MH [mental health] reasons is getting out of hand."). Further, the sole rationale provided by Defendant Annucci for issuing the Memorandum was that it was "intended to address concerns raised by the Court in this action," not remedy constitutional or statutory violations.[6] Annucci Response at 7. More importantly, throughout the litigation, and as recently as February 18, 2020, Defendants have justified their decision to hold indigent individuals with serious mental illness past their lawful release dates by referencing unspecified "penological justifications" or "safety concerns." *E.g.*, Dkt. 80 at 2, 21-22; Reply at 10; Dkt. 103 at 3; Annucci Response at 7-8.[7] Defendants' failure to disavow the prolonged incarceration of individuals with serious mental illness, or the unsupported justifications for it, shows that the challenged conduct is reasonably likely to recur and that Defendants have failed to show otherwise. *See, e.g.*, *Victory*, 2020 WL 236911, at *22.

    C.    <u>Defendants Have Not Completely and Irrevocably Eradicated the Effects of the Alleged Violation</u>

Defendants also have not met their substantial burden to show they have completely and irrevocably eradicated the effects of their prior practice. *See Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir. 1999). As described above, the Memorandum does not foreclose the prolonged incarceration of individuals with serious mental illness for whom OMH has determined release to a shelter setting is inappropriate, a group of individuals who are clearly members of Plaintiffs' putative class. And it is highly likely that Defendants will continue the prolonged confinement of putative class members for another major reason: Defendants have not

---

[6] Notably, Defendants have claimed privilege as to the substance of all communications "related to DOCCS' development of The Memorandum." Annucci Response at 5; Annucci Supp. Response at 3-4.
[7] Absent from Defendant McGrath's email expressing concern about the complained-of conduct is any mention of these purported explanations. *See* Rosenthal Sur-Reply Decl. Ex. 109.

addressed the systemic, statewide lack of appropriate community-based mental health housing. This underlying deficiency—one that only Defendants can fix—has already resulted in hundreds of people with serious mental illness being released to homeless shelters each year. Defendants now claim to locate housing for people for whom it is "clinically necessary," Sullivan Response at 9, but have not shown that they are providing community-based mental health housing to all individuals who are eligible and appropriate for it under OMH's own discharge policies, *see* Rosenthal Sur-Reply Decl. Ex. 111, and as required by the ADA, *Olmstead*, 527 U.S. at 592.

Finally, Defendants cannot plausibly claim that they have eradicated the effects of the prior practice, as they have eschewed all responsibility for systematically monitoring compliance with the Memorandum. DOCCS tracks the status of all people approaching release through its priority release list. Annucci Response at 15. Yet DOCCS has erroneously omitted cases with open dates for parole release due to shortcuts taken by facility staff, and Defendants have not shown any attempts to correct this. Rosenthal Sur-Reply Decl. Ex. 112. To the contrary, DOCCS has refused to share data with OMH that would facilitate OMH's tracking of individuals held by DOCCS. *See id.* Ex. 113. Without taking additional steps to coordinate interagency action and ensure compliance, Defendants cannot show that the harm of their policy has been irrevocably eradicated or that indigent individuals with serious mental illness will not fall through the cracks and languish in prison beyond their lawful release dates.

## **CONCLUSION**

For the reasons stated above and in Plaintiffs' Opposition, Defendants' motion should be denied in its entirety.

Dated:  March 13, 2020
        New York, New York

**THE LEGAL AID SOCIETY**
**PRISONERS' RIGHTS PROJECT**

/s/ Stefen R. Short

Stefen R. Short
Robert M. Quackenbush
Veronica Vela
199 Water Street, 6th Floor
New York, New York 10038
Telephone:    (212) 577-3530
Facsimile:    (212) 509-8433
E-mail:       sshort@legal-aid.org
              rquackenbush@legal-aid.org
              vvela@legal-aid.org

**DISABILITY RIGHTS NEW YORK**

/s/ Joshua Rosenthal

Elena M. Landriscina
Joshua Rosenthal
25 Chapel Street, Suite 1005
Brooklyn, New York 11201
Telephone:    (518) 432-7861
Facsimile:    (518) 427-6561
E-mail:       elena.landriscina@drny.org
              joshua.rosenthal@drny.org

**PAUL, WEISS, RIFKIND, WHARTON**
**& GARRISON, LLP**

/s/ Walter G. Ricciardi

Walter G. Ricciardi
Emily A. Vance
1285 Avenue of the Americas
New York, New York 10019
Telephone:    (212) 373-3350
Facsimile:    (212) 492-0350
E-mail:       wricciardi@paulweiss.com
              evance@paulweiss.com

*Attorneys for Plaintiffs*

11