Exhibit 103 to the Declaration of Joshua M. Rosenthal in Support of Plaintiffs' Sur-Reply in Opposition to Defendants' Motion to Dismiss

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

M.G., P.C., C.J., M.J., J.R., and D.R., individually and on
behalf of all similarly situated,

                               Plaintiffs,

              -against-

ANDREW CUOMO, in his official capacity as the Governor
of the State of New York, the NEW YORK STATE OFFICE
OF MENTAL HEALTH, ANN MARIE T. SULLIVAN, in
her official capacity as the Commissioner of the New York
State Office of Mental Health, the NEW YORK STATE
DEPARTMENT OF CORRECTIONS AND
COMMUNITY SUPERVISION, ANTHONY J.
ANNUCCI, in his official capacity as the Acting
Commissioner of the New York State Department of
Corrections and Community Supervision, ANNE MARIE
MCGRATH, Deputy Commissioner of the New York State
Department of Corrections and Community Supervision,

                               Defendants.

------------------------------------------------------------------------ x

7:19-CV-639 (CS) (LMS)

### RESPONSES TO PLAINTIFFS' SECOND SET OF INTERROGATORIES ON DEFENDANT ANTHONY J. ANNUCCI

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Civil Rules for the Southern District of New York, Defendant ANNUCCI, by his attorney, LETITIA JAMES, the Attorney General of the State of New York, responds to Plaintiffs' Second Set of Interrogatories as follows:

### PRELIMINARY STATEMENT

1.     The responses set forth herein constitute the best information presently available to Defendant based on reasonable searches proportional to the needs of the litigation. Defendant reserves the right to supplement the responses with additional information should such information

or documents become available to counsel for Defendant. Defendant also reserves the right to object to the further disclosure of any such information.

2.      By providing the information below, Defendant does not in any way waive, or intend to waive and is preserving, (a) all objections to competency, relevance, materiality and admissibility of the responses or the subject matter thereof; (b) all objections as to vagueness, ambiguity, or undue burden; (c) all rights to object on any ground to the use of any of said responses or the subject matter thereof, in any subsequent proceeding, including the trial of this or any other action; and (d) all right to object on any ground to any request for further responses to these or any discovery requests involving or relating to the subject matter of the request.

3.      By referring Plaintiffs to documents, Defendants does not concede the admissibility or relevance of any document produced or referred to or that the document is original, true, accurate, complete, or authentic. Defendant reserves the right to challenge the competency, relevance, materiality, and admissibility of, or to object on any ground to the use of, any information set forth herein or documents produced in any subsequent proceeding or the trial of this or any other action.

4.      The inadvertent disclosure of any information that is privileged, was prepared in anticipation of litigation, or is otherwise excludable from discovery, shall not constitute a waiver of any privilege or of any other ground for objecting to discovery with respect to that information, document or any other document, its subject matter, the information contained therein, or of Defendant's right to object to the use of any such document or the information contained therein during any proceeding in this litigation or otherwise.

5.      Defendant objects to the Interrogatories to the extent that they seek documents or information in the possession, custody or control of the New York State Office of Mental Health ("OMH"), or any governmental entity that is not a party to this action.

6.      Defendant objects to the Interrogatories to the extent that they are not sufficiently limited in time and/or scope.

7.      Defendant objects to the Interrogatories to the extent that they are not directed to the issue of the New York State Department of Corrections and Community Supervision's ("DOCCS") December 2016, 2019 policy memorandum ("The Memorandum") as ordered by the Court.

8.      Defendant objects to the Interrogatories insofar as they incorporate definitions of words or terms that are inconsistent with, contrary to, broader than, or narrower than the definition of such words or terms by DOCCS.

9.      These responses are being provided by Defendant in his official capacity and any response herein shall not be deemed to be based on Defendant's personal knowledge.

Without waiving the foregoing, Defendant Annucci responds as follows:

**INTERROGATORY NO. 11:**

Describe any commitments DOCCS has made pursuant to The Memorandum and the policies set forth therein, including but not limited to public statements, monetary commitments, and/or written policies, procedures, manuals, regulations, or other documents.

**RESPONSE TO INTERROGATORY NO. 11:**

Defendant Annucci objects to Interrogatory No. 11 on the ground that the term "commitment" is vague and ambiguous. Notwithstanding and without waiving this objection, Defendant Annucci responds that, as set forth in the Declaration of Ana Enright, The

Memorandum dated December 16, 2019 is an order that memorialized DOCCS's discontinuance of allowing DOCCS personnel to request the placement of individuals diagnosed with Serious Mental Illness (as defined by MHL § 1.03(52)), on a case by case basis, in RTF status beyond the maximum expiration date of their sentence, but not past the expiration of their post-release supervision maximum expiration date, as well as retaining individuals with Serious Mental Illness in DOCCS custody past open parole or conditional release dates, solely based on a determination by DOCCS personnel that they be placed in suitable mental health housing or other acceptable housing, and not released as homeless to a shelter. The Memorandum was communicated to correctional facility Superintendents, correctional facility Deputy Superintendents of Programming, correctional facility Senior Offender Rehabilitation Coordinators, correctional facility Offender Rehabilitation Coordinators, parole Regional Directors, parole Assistant Regional Directors, parole Bureau Chiefs, Senior Parole Officers, and Parole Officers. The Memorandum was also discussed at Deputy Commissioner Enright's December 2019 monthly telephone conference with regional directors, associate regional directors, and bureau chiefs. The Memorandum was publicly communicated by filing on the docket in this case.

**INTERROGATORY NO. 12:**

Describe any commitments DOCCS has made not to reinstate any prior policies and practices that are inconsistent with The Memorandum and the policies set forth therein.

**RESPONSE TO INTERROGATORY NO. 12:**

Defendant Annucci objects to Interrogatory No. 11 on the ground that the term "commitment" is vague and ambiguous. Notwithstanding and without waiving this objection, Defendant Annucci responds that once a policy is issued, it is expected to be followed. This

4

policy was confirmed in The Memorandum, which was distributed to appropriate personnel, and during the December 2019 conference call between Deputy Commissioner Enright and parole regional directors, associate directors, and bureau chiefs. DOCCS has no intention of discontinuing the policy set forth in The Memorandum.

**INTERROGATORY NO. 13:**

Describe actions related to DOCCS' development of The Memorandum, including the dates of meetings or conversations, the parties to those meetings or conversations, and factual material compiled during development.

**RESPONSE TO INTERROGATORY NO. 13:**

Defendant Annucci objections to Interrogatory No. 13 to the extent that it seeks information and communications that are privileged and/or attorney work product. Notwithstanding and without waiving these objections, Defendant Annucci responds that Counsel's Office drafted The Memorandum, and that in 2019, in connection with the matters outlined in The Memorandum, there were (1) internal communications between DOCCS counsel and other DOCCS officials; (2) communications between DOCCS counsel and OAG counsel; and (3) one November 12, 2019 meeting between DOCCS counsel, OAG counsel, Chambers counsel, counsel for OMH, and OMH personnel. The substance of these communications is privileged and/or attorney work product. These communications collectively led to the development of The Memorandum by Counsel's Office.

5

**INTERROGATORY NO. 14:**

Identify and describe the involvement of any individuals acting with or on behalf of the Governor's office in the proposal, drafting, revision, review, approval, and/or implementation of The Memorandum and/or the policy set forth in The Memorandum.

**RESPONSE TO INTERROGATORY NO. 14:**

Defendant Annucci objects to Interrogatory No. 14 on the ground that the any such information and communications are privileged and/or attorney work product, and that the participation, if any, of Chambers counsel in the creation or implementation of The Memorandum is irrelevant to the claims in this action and outside the scope of Judge Smith's Order. Without waiving any such objections, as stated in the Response to Interrogatory No. 13, Chambers counsel were present at the November 12, 2019 meeting where matters outlined in The Memorandum were discussed.

**INTERROGATORY NO. 15:**

Describe the procedures DOCCS used to propose, draft, revise, review, approve, and implement The Memorandum, the policy set forth in The Memorandum, and any related policies, directives, and guidance.

**RESPONSE TO INTERROGATORY NO. 15:**

Defendant Annucci objects to Interrogatory No. 15 to the extent that it seeks information and communications that are privileged and/or attorney work product. Notwithstanding and without waiving this objection, Defendant Annucci states that The Memorandum was drafted by Counsel's Office and approved by the signatories to The Memorandum in accordance with DOCCS's procedures for issuing such memoranda. New York Correction Law § 7(2) grants the Commissioner of DOCCS the authority to appoint

Deputy and Assistant DOCCS Commissioners and may prescribe their powers and duties, which include the issuance of policy memoranda such as The Memorandum.

**INTERROGATORY NO. 16:**

Describe the goals and objectives served by DOCCS' decision to no longer retain in custody Persons with Serious Mental Illness who are not subject to SARA housing requirements, who have reached their scheduled release date, based on DOCCS having determined that they required mental health housing upon release, as discussed in the Enright Declaration, Paragraph 14, including but not limited to the process, factors considered in making, and the timing of this decision.

**RESPONSE TO INTERROGATORY NO. 16:**

Defendant Annucci objects to Interrogatory No. 16 to the extent the term "goals and objectives" is vague and ambiguous. Defendant Annucci also objects to Interrogatory No. 16 to the extent that it seeks information and communications that are privileged and/or attorney work product. Notwithstanding and without waiving these objections, Defendant Annucci states that DOCCS's decision to no longer make the case-by-case decision to recommend that a small number of inmates who were diagnosed with Serious Mental Illness and not subject to SARA restrictions be retained in RTF status or otherwise in DOCCS custody past their maximum expiration date, conditional release date, or open parole date if no appropriate housing other than a homeless shelter was available to them was intended to address concerns raised by the Court in this action and Plaintiffs' counsel. The prior determinations by DOCCS personnel, which resulted in this population being retained in RTF status or otherwise in DOCCS custody past their maximum expiration date, conditional release date, or open parole date, were based on public safety concerns and not based on clinical determinations by OMH

that release to a homeless shelter was clinically inappropriate. DOCCS personnel did not determine that any such inmates "required mental health housing," only that on a case-by-case basis, shelter placement could raise public safety concerns, and that mental health or other housing (such as with family) was appropriate. The vast majority of inmates diagnosed with Serious Mental Illness have been, and are, deemed appropriate for placement in a shelter if other options are not available. Appropriate placement with family or in another appropriate setting was, and is, also an option for such inmates.

**INTERROGATORY NO. 17:**

Describe in detail the processes in place at DOCCS, if any, for the development and issuance of DOCCS memoranda, policies, directives, and guidance.

**RESPONSE TO INTERROGATORY NO. 17:**

Defendant Annucci objects to Interrogatory No. 17 to the extent that it seeks information and communications that are privileged, and further objects to the term "in detail" as vague and ambiguous. Defendant Annucci also objects to Interrogatory No. 17 as duplicative of other interrogatories. Defendant Annucci also objects to Interrogatory No. 17 on the grounds that the term "DOCCS memoranda" is overly broad and ambiguous and describes hundreds of different kinds of memoranda prepared by DOCCS personnel. Defendant Annucci also objects to Interrogatory No. 17 as seeking irrelevant information to the extent that the procedures for issuance of directives are not at issue as The Memorandum was not a directive. Defendant Annucci also objects to Interrogatory No. 17 as the terms "policies" and "guidance" are not defined. The Memorandum provided guidance regarding a policy. Notwithstanding and without waiving these objections, *see* Responses to Interrogatories Nos. 11 through 16.

**INTERROGATORY NO. 18:**

Describe any and all communications and consultations concerning development of The Memorandum and the policy set forth in The Memorandum, including but not limited to communications and consultations with State Agencies, State Agency employees, Local Agencies, and outside consultants.

**RESPONSE TO INTERROGATORY NO. 18:**

See Responses to Interrogatories Nos. 11 through 17.

**INTERROGATORY NO. 19:**

Describe any and all communications and consultations with Local Agencies regarding capacity, assessments of need, and planning for supportive services (including but not limited to mobile crises services, Assertive Community Treatment, and Forensic Assertive Community Treatment) for Persons with Serious Mental Illness released from DOCCS Custody to homeless shelters in order to implement the policy set forth in The Memorandum.

**RESPONSE TO INTERROGATORY NO. 19:**

Defendant Annucci objects to Interrogatory No. 19 on the grounds that it is irrelevant to the claims in this action and to the extent that it is not directed to the issue of The Memorandum as ordered by the Court. Notwithstanding and without waiving these objections, Defendant Annucci responds that DOCCS did not "communicate" or "consult" with "Local Agencies" concerning capacity, assessments of need, and planning for supportive services in order to implement the matters set forth in The Memorandum, nor was there any reason to do so. As previously stated, DOCCS had begun implementing the practices as described in The Memorandum before the issuance of The Memorandum. Moreover, before the issuance of The Memorandum, only a small number of inmates each year were being held past their

maximum expiration date, conditional release date, or open parole date in RTF status or otherwise in DOCCS custody for the reasons stated in The Memorandum. As previously stated, the vast majority of inmates with a Serious Mental Illness diagnosis for whom other appropriate housing was not available were deemed suitable to release to shelters. In addition, OMH and DOCCS work together to plan for the release of inmates diagnosed with Serious Mental Illness who are being released into the community and DOCCS officials monitor the availability of resources in local communities.

**INTERROGATORY NO. 20:**

Describe any changes to DOCCS' policies, practices, procedures, and/or processes for community supervision of Persons with Serious Mental Illness as a result of The Memorandum and the policy set forth therein, including but not limited to the staffing, caseloads, and responsibilities of DOCCS mental health parole officers.

**RESPONSE TO INTERROGATORY NO. 20:**

Defendant Annucci objects to Interrogatory No. 20 to the extent that the term "DOCCS mental health parole officers" is not defined. Although many parole officials have training in the mental health and social work fields, DOCCS does not employ "mental health parole officers," as no DOCCS parole official has a clinical relationship with the inmates they supervise. Notwithstanding and without waiving these objections, Defendant Annucci responds that the policy set forth in The Memorandum memorializes DOCCS's practices with respect to the release of inmates described in The Memorandum into the community, and as set forth in the Response to Interrogatory No. 19, DOCCS personnel work with OMH personnel on pre-release planning for inmates with Serious Mental Illness who are being released into the community.

**INTERROGATORY NO. 15:**

Describe in detail all steps required to change or revoke the policy set forth in The Memorandum.

**RESPONSE TO INTERROGATORY NO. 21:**

Defendant Annucci responds that to change or revoke a DOCCS policy, a subsequent memorandum, directive, regulation, or other appropriate document would need to be issued. The prior practice, which involved case-by-case determinations made by DOCCS personnel to recommend certain special conditions, was not a policy embodied in a policy memorandum such as The Memorandum.

**INTERROGATORY NO. 22:**

Identify by name, title, and date received all people to whom DOCCS issued The Memorandum, including but not limited to any "affected staff" as referenced in The Memorandum.

**RESPONSE TO INTERROGATORY NO. 22:**

Defendant objects to Interrogatory No. 22 as unduly burdensome, overbroad, and because the burden of responding outweighs the likely benefit, *see* FRCP 26(b)(1), as there are over 1,000 individuals who have received The Memorandum. Notwithstanding, and without waiving Defendant Annucci's objection, *see* Response to Interrogatory No. 11.

**INTERROGATORY NO. 23:**

Describe the steps DOCCS has taken, and/or will take, to implement the policy set forth in The Memorandum, including any training DOCCS will provide to its staff.

**RESPONSE TO INTERROGATORY NO. 23:**

Defendant Annucci responds that the policy was implemented by circulating The Memorandum. *See* Responses to Interrogatory No. 11. No new training was required.

**INTERROGATORY NO. 24:**

Describe the rules, policies, practices, procedures, systems, guidelines, directives, institutional orders, manuals, or other writings, whether formal or informal, in place for monitoring DOCCS' compliance with the policy set forth in The Memorandum, including the names and titles of all individuals responsible for such monitoring.

**RESPONSE TO INTERROGATORY NO. 24:**

Defendant Annucci responds that DOCCS monitors all activities that concern inmate classification and movement and produces, among other documents, a priority release list, as well as other lists that show the status of each inmate, examples of which have been provided in discovery in this action. *See, e.g.*, October 2, 2019 Annucci Interrogatory Responses, Exhibit A.

**INTERROGATORY NO. 25:**

Describe any comments, questions, concerns, or objections DOCCS received in response to The Memorandum, including but not limited to comments, questions, concerns, or objections from incarcerated individuals and their families and friends, advocates for incarcerated individuals, DOCCS staff, OMH staff, and/or Local Agencies.

**RESPONSE TO INTERROGATORY NO. 25:**

Defendant Annucci objects to Interrogatory No. 25 to the extent that it is not directed to the issue of The Memorandum as ordered by the Court. Notwithstanding and without waiving this objection, Defendant Annucci responds that The Memorandum was circulated internally to all affected DOCCS staff and was not open for commentary. As set forth in the Declaration of Ana Enright, the prior practice of recommending the retention of certain individuals, diagnosed with Serious Mental Illness past their maximum expiration date or open parole/conditional release date was made on a case-by-case basis and was made infrequently.

At the same time, numerous other inmates with Serious Mental Illness were released from custody to shelters because DOCCS determined that public safety concerns did not dictate that these individuals should be placed in mental health or other appropriate non-shelter housing. The shift in DOCCS practice reflects DOCCS's decision to follow OMH's clinical determination as to whether a specific inmate with Serious Mental Illness is clinically appropriate for release to a shelter.

**INTERROGATORY NO. 26:**

Describe all clinical expertise or criteria DOCCS relied on "[i]n the past" to determine that individuals' mental illness warranted release to a "suitable residence, and not a shelter," as referenced in the Enright Declaration, Paragraph 9.

**RESPONSE TO INTERROGATORY NO. 26:**

Defendant Annucci objects to Interrogatory No. 26 to the extent that it misconstrues Paragraph 9 of the Enright Declaration and to the extent that it is not directed to the issue of The Memorandum as ordered by the Court. Notwithstanding and without waiving these objections, Defendant Annucci responds that DOCCS's decisions were not "clinical" determinations, but rather, were based on public safety concerns, including concerns about the inmate's safety in the community. As set forth in the Enright Declaration, it is now DOCCS's practice that if OMH has determined that an inmate with Serious Mental Illness may be released from DOCCS custody to a shelter, DOCCS will release that inmate to a shelter.

13

**INTERROGATORY NO. 27:**

Provide a Census with anonymous identifiers of people who were released to homeless shelters as a result of The Memorandum and the policy set forth therein, including the date of their release and their release location.

**RESPONSE TO INTERROGATORY NO. 27:**

Defendant Annucci objects to Interrogatory No. 27 to the extent that it is not directed to the issue of The Memorandum as ordered by the Court. Notwithstanding and without waiving this objection, Defendant Annucci responds that there is no Census of people who were released to homeless shelters as a result of The Memorandum and the practice set forth therein. Numerous inmates diagnosed with Serious Mental Illness have been released to shelters since the issuance of The Memorandum, but there is no way to determine, after the fact, whether DOCCS officials may have, in the past, recommended that such individuals not be allowed to be released to shelters. Plaintiffs are seeking an improper hypothetical and speculative response. As previously noted, in the past, the vast majority of inmates diagnosed with Serious Mental Illness for whom mental health housing was not deemed clinically necessary, or for whom other appropriate housing (such as with family, etc.) was not available, were deemed appropriate for release to shelters.

**INTERROGATORY NO. 28:**

Describe all reasons why Persons with Serious Mental Illness who are not subject to SARA housing requirements may remain in DOCCS Custody past their Lawful Release Date, including but not limited to all situations that constitute "unforeseen circumstances" as referenced in the Enright Declaration, Paragraphs 14-15.

**RESPONSE TO INTERROGATORY NO. 28:**

Defendant Annucci objects to Interrogatory No. 28 to the extent that it is not directed to the issue of The Memorandum as ordered by the Court. Defendant Annucci further objects to the phrase "Lawful Release Date" as inaccurately describing and defining the dates in question. Defendant Annucci also objects to Interrogatory No. 28 as overbroad in that it asks him to "describe all reasons" why a person with Serious Mental Illness not subject to SARA housing requirements may remain in custody past a scheduled release data. Notwithstanding and without waiving any objections, Defendant Annucci states that among other reasons, an inmate might be temporarily held past a release date due to unexpected medical issues, transportation problems, extreme weather, a severe psychiatric episode that requires observation, and a temporary delay in housing availability (such as a fire or other event).

**INTERROGATORY NO. 29:**

Describe how DOCCS codes and tracks Persons with Serious Mental Illness who are not subject to SARA housing requirements but remain in DOCCS Custody past their Lawful Release Date, including persons who remain in DOCCS custody due to "unforeseen circumstances," as referenced in the Enright Declaration, Paragraphs 14-15, or otherwise.

**RESPONSE TO INTERROGATORY NO. 29:**

Defendant Annucci objects to Interrogatory No. 29 to the extent that it is not directed to the issue of The Memorandum as ordered by the Court. Defendant Annucci further objects to the phrase "Lawful Release Date" as inaccurately describing and defining the dates in question. Notwithstanding and without waiving Defendant's objection, Defendant Annucci responds that DOCCS tracks the status of all inmates, including persons with Serious Mental Illness, through its priority release list, copies of which have been produced to Plaintiffs.

**INTERROGATORY NO. 30:**

Identify and describe the procedures DOCCS implements when OMH has determined that an incarcerated individual, who is not subject to SARA housing requirements and is not suitable for release to a homeless shelter, "requires access to community mental health housing [upon their release] as an added layer of support," as referenced in the Vogel Declaration, Paragraph 6, but no such housing is available for the individual on their Lawful Release Date.

**RESPONSE TO INTERROGATORY NO. 30:**

Defendant Annucci objects to Interrogatory No. 30 to the extent that it is not directed to the issue of The Memorandum as ordered by the Court. Defendant Annucci objects to the phrase "Lawful Release Date" as inaccurately describing and defining the dates in question. Notwithstanding and without waiving Defendant's objections, DOCCS and OMH coordinate to locate appropriate housing for inmates diagnosed with Serious Mental Illness. Each individual inmate's care and custody is handled on a case-by-case basis. OMH, with the assistance of DOCCS, when appropriate, locates appropriate mental health housing for those inmates for whom OMH has made a clinical determination that mental health housing is clinically required.

**INTERROGATORY NO. 31:**

Describe in detail how DOCCS "coordinate[s] with OMH [] as appropriate" as stated in the Enright Declaration, Paragraph 4.

**RESPONSE TO INTERROGATORY NO. 31:**

Defendant Annucci objects to Interrogatory No. 31 to the extent that it is not directed to the issue of The Memorandum as ordered by the Court. Notwithstanding and without waiving Defendant's objection, Defendant Annucci responds that DOCCS and OMH have a Memorandum of Understanding ("MOU") that details the cooperation between DOCCS and OMH in the

16

discharge planning process. This MOU was produced to Plaintiffs in discovery. *See* DOCCS-00006905 through DOCCS-00006936. DOCCS also has specific policies concerning its cooperation with OMH. *See, e.g.* DOCCS-00007032 through DOCCS-7042 and DOCCS-00007126 through DOCCS-00007133.

## INTERROGATORY NO. 32:

Describe the factors DOCCS considered in deciding to exclude from the policy set forth in The Memorandum "incarcerated individuals at risk for homelessness that require a nursing home placement or other appropriate housing due to their medical conditions or intellectual disability," as stated in The Memorandum.

## RESPONSE TO INTERROGATORY NO. 32:

Defendant Annucci objects to Interrogatory No. 32 on the grounds that it seeks information that is beyond the scope of this lawsuit, irrelevant and not likely to lead to relevant information. Notwithstanding and without waiving these objections, Defendant Annucci responds that individuals who require nursing home care or who have intellectual disabilities require medical or other diagnoses that are not at issue in this lawsuit.

## INTERROGATORY NO. 33:

Describe the legal basis for DOCCS' position that it may "retain[ ] in custody" an inmate "classified as having Serious Mental Illness who is not subject to SARA . . . for reasons that do not concern mental health housing," as described in the Enright Declaration, Footnote 3.

## RESPONSE TO INTERROGATORY NO. 33:

*See* Response to Interrogatory No. 32.

**INTERROGATORY NO. 34:**

Describe how the policy set forth in The Memorandum affects DOCCS' imposition of conditions of community supervision, including but not limited to the Parole Board's ability to place an individual on RTF Status pursuant to Penal Law § 70.45.

**RESPONSE TO INTERROGATORY NO. 34:**

Defendant Annucci responds that the practice set forth in The Memorandum does not affect DOCCS's imposition of conditions of community supervision except to the extent that DOCCS will not request the imposition of housing conditions that require mental health housing (in the absence of other appropriate housing, such as with family, etc.) when OMH has not made a clinical determination that mental health housing is necessary. The Memorandum does not affect the Board of Parole's authority to impose special conditions, as the Board of Parole is separate from and independent of DOCCS's authority with respect to decision making. As a practical matter, if DOCCS is not requesting that the Board of Parole impose certain special conditions, the Board of Parole rarely imposes such special conditions *sua sponte*.

**INTERROGATORY NO. 35:**

Describe how the policy set forth in The Memorandum affects DOCCS', Defendant Annucci's, or any DOCCS official's responsibilities or authority pursuant to Correction Law § 73, including Correction Law § 73(10).

**RESPONSE TO INTERROGATORY NO. 35:**

The Memorandum does not alter the authority granted by Correction Law § 73; however, as a practical matter, inmates subject to the criteria set forth in The Memorandum will

not be recommended for placement in RTF status pursuant to Correction Law § 73 due to the practice outlined in The Memorandum.

**INTERROGATORY NO. 36:**

Describe all processes for obtaining "waivers" of release from incarcerated Persons with Serious Mental Illness who have a Lawful Release Date and are appropriate for Community-Based Mental Health Housing.

**RESPONSE TO INTERROGATORY NO. 36:**

Defendant Annucci objects to Interrogatory No. 36 to the extent that it is not directed to the issue of The Memorandum as ordered by the Court. Defendant Annucci further objects to the phrase "Lawful Release Date" as inaccurately describing and defining the dates in question. Defendant Annucci also objects to the phrase "appropriate for Community-Based Mental Health Housing" to the extent that such housing would be beneficial for many inmates diagnosed with Serious Mental Illness, but is clinically required for a much smaller population. Notwithstanding and without waiving these objections, Defendant Annucci responds to Interrogatory No. 36 by stating that there is no formal "process" for obtaining a waiver from release. Typically, the inmate will sign a statement and this is done on a case-by-case basis.

**INTERROGATORY NO. 37:**

Provide the Census of Persons with Serious Mental Illness in DOCCS custody who have a Lawful Release Date and are appropriate for Community-Based Mental Health Housing, but have "waived their release," since January 23, 2019.

**RESPONSE TO INTERROGATORY NO. 37:**

Defendant Annucci objects to Interrogatory No. 37 to the extent that it is not directed to the issue of The Memorandum as ordered by the Court. Defendant Annucci further objects

19

to the phrase "Lawful Release Date" as inaccurately describing and defining the dates in question. Defendant Annucci also objects to the phrase "appropriate for Community-Based Mental Health Housing" to the extent that such housing would be beneficial for many inmates diagnosed with Serious Mental Illness, but is clinically required for a much smaller population. Notwithstanding and without waiving these objections, Defendant Annucci responds to Interrogatory No. 37 by stating that he is not aware of any person as defined in Interrogatory No. 37 who has waived his or her release since January 23, 2019.

**INTERROGATORY NO. 38:**

Provide a Census of people released pursuant to the policy set forth in The Memorandum, including the date of the person's release and their release location.

**RESPONSE TO INTERROGATORY NO. 38:**

Defendant Annucci responds to Interrogatory No. 38 by stating that there is no Census of people released pursuant to the policy set forth in The Memorandum as there is no way to determine whether an inmate would have been retained prior to the policy set forth in The Memorandum. *See also* Response to Interrogatory No. 27.

**INTERROGATORY NO. 39:**

Provide a Census of incarcerated Persons with Serious Mental Illness who are not subject to SARA housing requirements who are At Risk of Homelessness, but are not subject to the policy set forth in The Memorandum, including but not limited to those Persons with Serious Mental Illness who require nursing home placement or other appropriate housing due to their medical conditions or intellectual disability.

**RESPONSE TO INTERROGATORY NO. 39:**

Defendant Annucci objects to Interrogatory No. 39 on the grounds that it seeks information that not relevant to the issues in this lawsuit and not likely to lead to relevant information. Defendant Annucci further objects to this interrogatory to the extent that it is not directed to the issue of The Memorandum as ordered by the Court.

**INTERROGATORY NO. 40:**

Provide a Census of incarcerated Persons with Serious Mental Illness who are not subject to SARA housing requirements for whom release to shelters was determined inappropriate, from January 23, 2019 to present, including the number of these persons still in DOCCS Custody.

**RESPONSE TO INTERROGATORY NO. 40:**

Defendant Annucci objects to Interrogatory No. 40 to the extent that it is not directed to the issue of The Memorandum as ordered by the Court. Defendant Annucci also objects to this interrogatory on the grounds that it seeks information that is not relevant to the issues in this lawsuit and not likely to lead to relevant information as it does not limit itself to inmates who have been retained past their maximum expiration date, conditional release date, or open parole date.

Dated: New York, New York
      February 18, 2020

                    LETITIA JAMES
                    Attorney General of the State of New York
                    <u>Attorney for State Defendants</u>
                    By:

                    JANE R. GOLDBERG
                    Assistant Attorney General
                    28 Liberty Street
                    New York, New York 10005
                    (212) 416-6133
                    Jane.Goldberg@ag.ny.gov

To:

Elena Landriscina
Joshua Rosenthal
Betsy Sterling
Disability Rights New York
25 Chapel Street, Suite 1005
Brooklyn, New York  11201

Stefen R. Short
Robert Quackenbush
Veronica Vela
Mary Lynne Werlwas
Prisoners' Rights Project
The Legal Aid Society
199 Water St., 6th Fl.
New York, NY  10038

Walter G. Ricciardi
Emily A. Vance
Paul, Weiss, Rifkind, Wharton
& Garrison, LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Attorneys for Plaintiffs

## <u>VERIFICATION</u>

I, Bryan G. Hilton, hereby verify pursuant to 28 U.S.C. § 1746 under penalty of perjury that I have read the foregoing responses to Plaintiffs' Second Set of Interrogatories to Defendant Annucci and that to the best of my knowledge and understanding based on my recollection, personal knowledge, the records of the New York State Department of Corrections and Community Supervision ("DOCCS"), and/or information provided to me by the employees of DOCCS, the foregoing responses are true and correct.

Dated: Albany County, New York
      February 1 , 2020

                                               Bryan G. Hilton
                                             DOCCS Assistant Commissioner