Exhibit 114 to the Declaration of Joshua M. Rosenthal in Support of Plaintiffs' Sur-Reply in Opposition to Defendants' Motion to Dismiss

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x
M.G., P.C., C.J., M.J., J.R., and D.R., individually and on
behalf of all similarly situated,

                                                                Plaintiffs,

                   -against-                                7:19-CV-639 (CS) (LMS)

ANDREW CUOMO, in his official capacity as the Governor
of the State of New York, the NEW YORK STATE OFFICE
OF MENTAL HEALTH, ANN MARIE T. SULLIVAN, in
her official capacity as the Commissioner of the New York
State Office of Mental Health, the NEW YORK STATE
DEPARTMENT OF CORRECTIONS AND
COMMUNITY SUPERVISION, ANTHONY J.
ANNUCCI, in his official capacity as the Acting
Commissioner of the New York State Department of
Corrections and Community Supervision, ANNE MARIE
MCGRATH, Deputy Commissioner of the New York State
Department of Corrections and Community Supervision,

                                                                Defendants.
------------------------------------------------------------------------- x

## DEFENDANT ANN MARIE T. SULLIVAN'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' SECOND SET OF INTERROGATORIES

        Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Civil Rules for the Southern District of New York, Defendant SULLIVAN, by her attorney, LETITIA JAMES, the Attorney General of the State of New York, hereby supplements her Responses to certain Interrogatories set forth in Plaintiffs' Second Set of Interrogatories as follows:

### PRELIMINARY STATEMENT

        1.     The supplemental responses set forth herein constitute the best information presently available to Defendant based on reasonable searches proportional to the needs of the litigation. Commissioner Sullivan reserves the right to supplement the responses with additional information should such information or documents become available to counsel for Commissioner

Sullivan. Commissioner Sullivan also reserves the right to object to the further disclosure of any such information.

2. By providing the supplemental information below, Commissioner Sullivan does not in any way waive, or intend to waive and is preserving, (a) all objections to competency, relevance, materiality and admissibility of the responses or the subject matter thereof; (b) all objections as to vagueness, ambiguity, or undue burden; (c) all rights to object on any ground to the use of any of said responses or the subject matter thereof, in any subsequent proceeding, including the trial of this or any other action; and (d) all right to object on any ground to any request for further responses to these or any discovery requests involving or relating to the subject matter of the request.

3. By referring Plaintiffs to documents, Commissioner Sullivan does not concede the admissibility or relevance of any document produced or referred to or that the document is original, true, accurate, complete, or authentic. Commissioner Sullivan reserves the right to challenge the competency, relevance, materiality, and admissibility of, or to object on any ground to the use of, any information set forth herein or documents produced in any subsequent proceeding or the trial of this or any other action.

4. The inadvertent disclosure of any information that is privileged, was prepared in anticipation of litigation, or is otherwise excludable from discovery, shall not constitute a waiver of any privilege or of any other ground for objecting to discovery with respect to that information, document or any other document, its subject matter, the information contained therein, or of Commissioner Sullivan or the New York State Office of Mental Health's ("OMH") right to object to the use of any such document or the information contained therein during any proceeding in this litigation or otherwise.

5. Commissioner Sullivan continues to object to the Interrogatories to the extent that they seek documents or information in the possession, custody or control of the New York Department of Corrections and Community Supervision ("DOCCS"), or any governmental entity that is not a party to this action.

6. Commissioner Sullivan continues to object to the Interrogatories to the extent that they are not sufficiently limited in time and/or scope.

7. Commissioner Sullivan continues to object to the Interrogatories to the extent that they are not directed to the issue of the New York State Department of Corrections and Community Supervision's ("DOCCS") policy memorandum as ordered by the Court.

8. Commissioner Sullivan continues to object to the Interrogatories insofar as they incorporate definitions of words or terms that are inconsistent with, contrary to, broader than, or narrower than the definition of such words or terms by OMH.

9. These responses are being provided by Commissioner Sullivan in her official capacity and any response herein shall not be deemed to be based on Commissioner Sullivan's personal knowledge.

Without waiving the foregoing, Commissioner Sullivan supplements her Responses to Plaintiffs' Second Set of Interrogatories as follows:

**INTERROGATORY NO. 8:**

Describe the clinical justifications, or any empirical evidence, supporting OMH's practice of locating a Community-Based Mental Health Housing placement prior to a Lawful Release Date for Persons with Serious Mental Illness whom OMH has determined require such a placement as an "added layer of support," as described in the Enright Declaration, Paragraph 4, and the Vogel Declaration Paragraph 6.

3

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8:**

Defendant Sullivan continues to object to Interrogatory No. 8 on the ground that it asks for information that is not directed to the issue of DOCCS's policy memorandum as ordered by the Court. Notwithstanding and without waiving this objection, in addition to Commissioner Sullivan's prior response that OMH's determination that an inmate requires access to community mental health housing is based on clinical decisions by OMH clinical professionals after an exhaustive review of all relevant data as described in Defendant Sullivan's response to Interrogatory No. 10, as well as in the voluminous production of documents concerning pre-release planning that has already been produced to Plaintiffs, Commissioner Sullivan responds that an inmate's treatment team considers all information on a daily basis and will look at a large number of documents, including but not limited to past and present clinical records; presentence reports, and disciplinary reports. The inmate will also be interviewed by prerelease staff at the prison.

**<u>INTERROGATORY NO. 13:</u>**

Identify and describe the procedures OMH implements when it has located an adequate Community-Based Mental Health Housing placement for an incarcerated individual it has determined requires such housing as an added layer of support upon release from DOCCS Custody, but that placement is unavailable on the individual's Lawful Release Date.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13:**

Defendant Sullivan responded to Interrogatory No. 13 as follows: A SPOA application is completed by the Pre-Release Coordinator in the correctional facility where the inmate is housed for all SMI inmates who are at risk of homelessness but prior to a determination that housing is

4

clinically necessary for the inmate patient. The application is then sent to the county where OMH has been notified by DOCCS that the patient will be released. The county SPOA Coordinator then sends the application to all community providers of mental health housing who will then notify the county SPOA Coordinator of any availability. Concurrently, and as described in Response to No. 10, Albany Pre-Release staff will conduct a clinical evaluation to assist in determining if housing is clinically necessary for the inmate patient. If the Specialized Review Committee agrees that mental health housing is clinically necessary, CNYPC works with OMH Adult Services to provide such housing in a Transitional Living Residence. Until the release of the patient from DOCCS custody, Albany Pre-Release staff will continue to work with the county to assess the availability of community mental health housing in the county where the patient is being released or determine if there might be another type of housing that would be suitable for this particular individual, such as VA Housing. Since 2014, CNYPC has successfully provided mental health housing for every released inmate for whom CNYPC concluded it was clinically necessary.

Defendant Sullivan supplements her response as follows: Defendant Sullivan objects to Plaintiffs' definition of "Lawful Release Date" insofar as that definition does not accurately reflect DOCCS's authority to determine the release dates for inmates with open parole or conditional release dates. Notwithstanding and without waiving this objection, Commissioner Sullivan further responds that when OMH is notified by DOCCS that the inmate patient is releasing, and OMH has made a clinical determination that the inmate patient requires mental health housing upon release from DOCCS custody, OMH will recommend placing the inmate in a Transitional Living Residence in the event that no other appropriate community-based mental health housing is available as of the time of the inmate's release date and a clinical determination

has been made that the inmate patient requires mental health housing upon release from DOCCS custody.

**INTERROGATORY NO. 15:**

Identify and describe how OMH trains its staff to determine whether "individuals require mental health housing or otherwise appropriate residential housing upon release," including any guidance documents OMH provides its staff and any procedures OMH directs its staff to implement.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 15:**

Defendant Sullivan continues to object to Interrogatory No. 15 on the ground that it is not directed to the issue of the New York State Department of Corrections and Community Supervision's ("DOCCS") policy memorandum as ordered by the Court. Notwithstanding and without waiving this objection, in addition to Defendant Sullivan's response that CNYPC trains its staff to (1) conceptualize each individual case and to formulate a clinical opinion related to the inmate patient's psychiatric stability for community release; and (2) provide a clinical rationale for their opinion, which is then reviewed at the Albany Pre-release manager level and the Specialized Review Committee as previously described in Defendant Sullivan's Response to Interrogatory No. 10, Defendant Sullivan responds that the "guidance documents" provided are set forth in the CNYPC policies that have been provided to Plaintiffs and Bates-stamped OMH-00062554 through OMH-00062590 and OMH-00071195 through OMH-00072562.

**INTERROGATORY NO. 20:**

Identify and describe all criteria and/or factors OMH considers to determine whether an incarcerated Person with Serious Mental Illness is psychiatrically stable for community release

6

with or without a Community-Based Mental Health Housing placement, as described in the Vogel Declaration, Paragraph 5.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 20:**

    Defendant Sullivan continues to object to Interrogatory No. 20 on the grounds that it is not directed to the issue of the New York State Department of Corrections and Community Supervision's ("DOCCS") policy memorandum as ordered by the Court. Notwithstanding and without waiving this objection, in addition to her response, which referred Plaintiffs to the documents produced and to her responses to Interrogatory Nos. 10 & 13 as to the clinical review conducted by experienced mental health professionals, which assesses the clinical stability and severity of illness of each individual, Defendant Sullivan refers Plaintiffs to the documents set forth in the CNYPC policies that have been provided to Plaintiffs and Bates-stamped OMH-00062554 through OMH-00062590 and OMH-00068147 through OMH-00068162.

**INTERROGATORY NO. 24:**

Provide a list of the Transitional Living Residences and Transitional Placement Programs to which Persons with Serious Mental Illness have been released pursuant to the policy set forth in The Memorandum, including the names and locations of the residences and placement programs, the number of individuals released to each as described in the Vogel Declaration, Paragraph 6, and the average length of stay for such individuals.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 24:**

    Defendant Sullivan continues to object to Interrogatory No. 24 because it assumes that OMH is placing inmates with serious mental illness in "residences" and "placement programs" pursuant to the policy set forth in DOCCS's Memorandum. OMH's policies and

7

procedures for placing inmates with serious mental illness have been disclosed to Plaintiffs in numerous documents that have been produced and these policies and procedures are independent of DOCCS's policy as set forth in the Memorandum. Notwithstanding and without waiving these objections, in addition to Defendant Sullivan's response that since December 16, 2019 only one inmate patient has been released to a Transitional Living Residence, and that the release was on December 23, 2019 to Manhattan Psychiatric Center's Crisis Residence, Defendant Sullivan supplements her response to state that from August 1, 2019 through January 29, 2020, twenty inmate patients have been released to a Transitional Living Residence as follows:

> Crooked Hill Community Residence, Pilgrim PC – 3
> Creedmoor Stepping Stones Transitional Residence, Creedmoor PC – 1
> Creedmoor Gateway Transitional Residence, Creedmoor PC – 1
> Creedmoor Oak House Community Residence, Creedmoor PC - 1
> Hutchings P.C. EHRS, Hutchings PC – 5
> GBHC Community Preparation Unit, Greater Binghamton Health Center – 1
> Brentwood SOCR, Pilgrim PC[1] – 1
> New Scotland Residence TPP, Capital District PC – 2[2]
> Whitesboro Community Residence, Mohawk Valley PC – 1
> Rockland P.C. Acute Psychiatric Care Residence, Rockland PC – 1
> Middletown Transitional Program, Rockland PC – 1
> Transitional Living Unit, Greater Binghamton Health Center – 1
> Manhattan P.C. Crisis Residence, Manhattan PC - 1

The length of stay for these individuals varies widely. The shortest stay in a TLR was 3 days; the longest stay is 216 days and continuing.

---

[1] "SOCR" is the acronym for "State Operated Community Residence"
[2] "TPP" is the acronym for "Transitional Placement Program."

8

**INTERROGATORY NO. 25:**

Provide a Census with anonymous identifiers of Persons with Serious Mental Illness released from DOCCS Custody to a homeless shelter, since January 23, 2019, including whether OMH had submitted a SPOA application for housing on the person's behalf prior to their release.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 25:**

Defendant Sullivan continues to object to Interrogatory No. 25 on the ground that it is not directed to the issue of the New York State Department of Corrections and Community Supervision's ("DOCCS") policy memorandum as ordered by the Court. Notwithstanding and without waiving this objection, Defendant Sullivan refers Plaintiffs to the document Bates-stamped OMH-00072563, which is being provided to Plaintiffs with these Supplemental Responses via the OAG Cloud.

Dated: New York, New York
       March 6, 2020

LETITIA JAMES
Attorney General of the State of New York
Attorney for State Defendants
By:
_____
JANE R. GOLDBERG
JEB HARBEN
Assistant Attorney General
28 Liberty Street
New York, New York  10005
(212) 416-6133
Jane.Goldberg@ag.ny.gov
Jeb.Harben@ag.ny.gov

9

To:

Elena Landriscina
Joshua Rosenthal
Disability Rights New York
25 Chapel Street, Suite 1005
Brooklyn, New York 11201

Stefen R. Short
Robert Quackenbush
Veronica Vela
Mary Lynne Werlwas
Prisoners' Rights Project
The Legal Aid Society
199 Water St., 6th Fl.
New York, NY 10038

Walter G. Ricciardi
Emily A. Vance
Paul, Weiss, Rifkind, Wharton
& Garrison, LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Attorneys for Plaintiffs

## **VERIFICATION**

LI-WEN LEE, M.D., Associate Commissioner for the New York State Office of Mental Health Division of Forensic Services, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury that to the best of my knowledge and understanding, based on personal knowledge, the records of the Office of Mental Health and/or information provided to me by employees of the Office of Mental Health, the foregoing Supplemental Responses to the Second Set of Interrogatories propounded to Ann Marie T. Sullivan, Commissioner of the Office of Mental Health, are true and correct.

Dated: Albany, New York
       March 6, 2020

Li-Wen Lee, M.D.
Associate Commissioner
New York State Office of Mental Health
44 Holland Avenue
Albany, NY 12229