Exhibit 116 to the Declaration of Joshua M. Rosenthal in Support of Plaintiffs' Sur-Reply in Opposition to Defendants' Motion to Dismiss

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
M.G., P.C., C.J., M.J., J.R., and D.R., individually and on behalf of all similarly situated,

                                         Plaintiffs,

    -against-

ANDREW CUOMO, in his official capacity as the Governor of the State of New York, the NEW YORK STATE OFFICE OF MENTAL HEALTH, ANN MARIE T. SULLIVAN, in her official capacity as the Commissioner of the New York State Office of Mental Health, the NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, ANTHONY J. ANNUCCI, in his official capacity as the Acting Commissioner of the New York State Department of Corrections and Community Supervision, ANNE MARIE MCGRATH, Deputy Commissioner of the New York State Department of Corrections and Community Supervision,

                                         Defendants.
------------------------------------------------------------------------ x

7:19-CV-639 (CS) (LMS)

## SUPPLEMENTAL RESPONSES TO PLAINTIFFS' SECOND SET OF INTERROGATORIES ON DEFENDANT ANTHONY J. ANNUCCI

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Civil Rules for the Southern District of New York, Defendant ANNUCCI, by his attorney, LETITIA JAMES, the Attorney General of the State of New York, hereby supplements his Responses to certain Interrogatories set forth in Plaintiffs' Second Set of Interrogatories as follows:

### PRELIMINARY STATEMENT

1.     The supplemental responses set forth herein constitute the best information presently available to Defendant based on reasonable searches proportional to the needs of the litigation. Defendant reserves the right to supplement the responses with additional information

should such information or documents become available to counsel for Defendant. Defendant also reserves the right to object to the further disclosure of any such information.

2.  By providing the supplemental information below, Defendant does not in any way waive, or intend to waive and is preserving, (a) all objections to competency, relevance, materiality and admissibility of the responses or the subject matter thereof; (b) all objections as to vagueness, ambiguity, or undue burden; (c) all rights to object on any ground to the use of any of said responses or the subject matter thereof, in any subsequent proceeding, including the trial of this or any other action; and (d) all right to object on any ground to any request for further responses to these or any discovery requests involving or relating to the subject matter of the request.

3.  By referring Plaintiffs to documents, Defendants does not concede the admissibility or relevance of any document produced or referred to or that the document is original, true, accurate, complete, or authentic. Defendant reserves the right to challenge the competency, relevance, materiality, and admissibility of, or to object on any ground to the use of, any information set forth herein or documents produced in any subsequent proceeding or the trial of this or any other action.

4.  The inadvertent disclosure of any information that is privileged, was prepared in anticipation of litigation, or is otherwise excludable from discovery, shall not constitute a waiver of any privilege or of any other ground for objecting to discovery with respect to that information, document or any other document, its subject matter, the information contained therein, or of Defendant's right to object to the use of any such document or the information contained therein during any proceeding in this litigation or otherwise.

5.  Defendant objects to the Interrogatories to the extent that they seek documents or information in the possession, custody or control of the New York State Office of Mental Health ("OMH"), or any governmental entity that is not a party to this action.

6.  Defendant objects to the Interrogatories to the extent that they are not sufficiently limited in time and/or scope.

7.  Defendant objects to the Interrogatories to the extent that they are not directed to the issue of the New York State Department of Corrections and Community Supervision's ("DOCCS") December16, 2019 policy memorandum ("The Memorandum") as ordered by the Court.

8.  Defendant objects to the Interrogatories insofar as they incorporate definitions of words or terms that are inconsistent with, contrary to, broader than, or narrower than the definition of such words or terms by DOCCS.

9.  These responses are being provided by Defendant in his official capacity and any response herein shall not be deemed to be based on Defendant's personal knowledge.

Without waiving the foregoing, Defendant Annucci supplements his responses as follows:

**INTERROGATORY NO. 13:**

Describe actions related to DOCCS' development of The Memorandum, including the dates of meetings or conversations, the parties to those meetings or conversations, and factual material compiled during development.

**RESPONSE TO INTERROGATORY NO. 13:**

Defendant Annucci objects to Interrogatory No. 13 to the extent that it seeks information and communications that are privileged and/or attorney work product. Defendant Annucci objects to Interrogatory No. 13 on the basis that the terms "actions,"

3

"related to," and "development" are vague and overbroad as they potentially concern every thought concerning, or word spoken, about the issues in question. Notwithstanding and without waiving these objections, Defendant Annucci supplements his response as follows: Counsel's Office drafted The Memorandum, and that in 2019, in connection with the matters outlined in The Memorandum, there were (1) internal communications between DOCCS counsel; (2) communications between DOCCS counsel (Silverman, Sheehan, Shkolnik) and OAG counsel (Goldberg, Harben, Hathaway, Peoples, Hartofilis, Sansolo, Conroy); and (3) one November 12, 2019 meeting between DOCCS counsel (Silverman, Sheehan, Shkolnik), OAG counsel (Goldberg, Harben), Chambers counsel (Jillian Faison, Jill Starishevsky), counsel for OMH (Noordsy, Drake), and OMH personnel (Donna Hall, Wendy Vogel, Lori Schatzel, Margaret O'Shea) where various issues related to the litigation were discussed. The substance of all of these communications is privileged and/or attorney work product and/or protected from disclosure by the deliberative process privilege. These communications collectively lead to the development of The Memorandum by Counsel's Office. When The Memorandum was finalized, there was in person communication between DOCCS counsel and other DOCCS officials (Deputy Commissioner Enright and Associate Commissioner Hilton) in connection with their endorsement of The Memorandum by initialing it. The substance of these communications is privileged and/or attorney work product and/or protected from disclosure by the deliberative process privilege.

**INTERROGATORY NO. 17:**

Describe in detail the processes in place at DOCCS, if any, for the development and issuance of DOCCS memoranda, policies, directives, and guidance.

**RESPONSE TO INTERROGATORY NO. 17:**

4

Defendant Annucci objects to Interrogatory No. 17 to the extent that it seeks information and communications that are privileged, and further objects to the term "in detail" as vague and ambiguous. Defendant Annucci also objects to Interrogatory No. 17 as duplicative of other interrogatories. Defendant Annucci also objects to Interrogatory No. 17 on the grounds that the term "DOCCS memoranda" is overly broad and ambiguous and describes hundreds of different kinds of memoranda prepared by DOCCS personnel. Defendant Annucci also objects to Interrogatory No. 17 as seeking irrelevant information to the extent that the procedures for issuance of directives are not at issue as The Memorandum was not a directive. Defendant Annucci also objects to Interrogatory No. 17 on the grounds that the terms "policies" and "guidance" are not defined. The Memorandum provided guidance regarding a policy. Defendant Annucci also objects to this interrogatory to the extent it requests that Plaintiffs be provided with relevant statutory provisions, which are equally available to Plaintiffs. Notwithstanding and without waiving these objections, Defendant Annucci supplements his response as follows: New York Correction Law § 112(1) and (2) provide the Commissioner the authority to make rules and regulations. The promulgation of rules and regulations is governed by the New York State Administrative Procedures Act. Pursuant to that Act, The Department of State, Division of Administrative Rules, has set forth guidelines for how rules and regulations are promulgated. *See, e.g.,* https://www.dos.ny.gov/info/rulemakingmanual.html, dos.ny.gov/info/rulediagram.html, and dos.ny.gov/info/faq.html. *See also* Responses to Interrogatories Nos. 11 through 16.

**INTERROGATORY NO. 18:**

Describe any and all communications and consultations concerning development of The Memorandum and the policy set forth in The Memorandum, including but not limited to

5

communications and consultations with State Agencies, State Agency employees, Local Agencies, and outside consultants.

**RESPONSE TO INTERROGATORY NO. 18:**

*See* Responses to Interrogatories Nos. 11 through 17.

**INTERROGATORY NO. 24:**

Describe the rules, policies, practices, procedures, systems, guidelines, directives, institutional orders, manuals, or other writings, whether formal or informal, in place for monitoring DOCCS' compliance with the policy set forth in The Memorandum, including the names and titles of all individuals responsible for such monitoring.

**RESPONSE TO INTERROGATORY NO. 24:**

Defendant Annucci objects to this interrogatory to the extent it seeks the names of all persons expected to comply with The Memorandum, which potentially encompasses 1,000 or more persons. Notwithstanding and without waiving these objections, Defendant Annucci supplements his response as follows: Defendant Annucci responds that DOCCS monitors all activities that concern inmate classification and movement and produces, among other documents, a priority release list, as well as other lists that show the status of each inmate, examples of which have been provided in discovery in this action. *See, e.g.*, October 2, 2019 Annucci Interrogatory Responses, Exhibit A. Deputy Commissioner Ana Enright, and Assistant Commissioner Bryan Hilton supervise compliance with The Memorandum and the release of DOCCS inmates diagnosed with Serious Mental Illness.

**INTERROGATORY NO. 25:**

Describe any comments, questions, concerns, or objections DOCCS received in response to The Memorandum, including but not limited to comments, questions, concerns, or objections from

incarcerated individuals and their families and friends, advocates for incarcerated individuals, DOCCS staff, OMH staff, and/or Local Agencies.

**RESPONSE TO INTERROGATORY NO. 25:**

Defendant Annucci objects to Interrogatory No. 25 to the extent that it is not directed to the issue of The Memorandum as ordered by the Court. Defendant Annucci also objects to Interrogatory No. 25 to the extent it seeks a description of every potential comment, question, concern, or objection concerning The Memorandum. Defendant Annucci objects to this interrogatory to the extent it seeks information regarding communications that may have occurred between potentially approximately 1,000 DOCCS employees involved in community supervision statewide that neither Defendant Annucci nor any person verifying this interrogatory response were privy to. Notwithstanding and without waiving these objections, Defendant Annucci supplements his response as follows: The Memorandum was circulated internally to all affected DOCCS staff and was not a regulation open for commentary. As set forth in the Declaration of Ana Enright, the prior practice of recommending the retention of certain individuals, diagnosed with Serious Mental Illness past their maximum expiration date or open parole/conditional release date was made on a case-by-case basis and was made infrequently. At the same time, numerous other inmates with Serious Mental Illness were being released from custody to shelters because DOCCS determined that public safety concerns did not dictate that these individuals should be placed in mental health or other appropriate non-shelter housing. The shift in DOCCS practice reflects DOCCS's decision to follow OMH's clinical determination as to whether a specific inmate with Serious Mental Illness is clinically appropriate for release to a shelter. The Memorandum was discussed with regional directors, associate regional directors, and bureau

chiefs at Deputy Commissioner Enright's December 2019 monthly telephone conference. No minutes or record of any comments, questions, concerns, or objections were created and Defendant is not aware of any comments, questions, concerns, or objections made during the telephone conference. Defendant reserves the right to supplement this response if additional information becomes available.

**INTERROGATORY NO. 26:**

Describe all clinical expertise or criteria DOCCS relied on "[i]n the past" to determine that individuals' mental illness warranted release to a "suitable residence, and not a shelter," as referenced in the Enright Declaration, Paragraph 9.

**RESPONSE TO INTERROGATORY NO. 26:**

Defendant Annucci objects to Interrogatory No. 26 to the extent that it misconstrues Paragraph 9 of the Enright Declaration and to the extent that it is not directed to the issue of The Memorandum as ordered by the Court. Notwithstanding and without waiving these objections, Defendant Annucci supplements his response as follows: DOCCS's decisions, which were based on the professional judgment, experience, and training of the DOCCS parole officials making those decisions, were not "clinical" determinations, but rather, were based on public safety concerns, and the inmate's safety in the community. As set forth in the Enright Declaration, it is now DOCCS's practice that if OMH has determined that an inmate with Serious Mental Illness may be released from DOCCS custody to a shelter, DOCCS will release that inmate to a shelter.

**INTERROGATORY NO. 27:**

Provide a Census with anonymous identifiers of people who were released to homeless shelters as a result of The Memorandum and the policy set forth therein, including the date of their release and their release location.

**RESPONSE TO INTERROGATORY NO. 27:**

Defendant Annucci objects to Interrogatory No. 27 to the extent that it is not directed to the issue of The Memorandum as ordered by the Court. Notwithstanding and without waiving this objection, Defendant Annucci supplements his response as follows: There is no Census of people who were released to homeless shelters "as a result of The Memorandum and the policies set forth therein." Numerous inmates diagnosed with Serious Mental Illness have been released to shelters since the issuance of The Memorandum, but there is no way to determine, after the fact, whether DOCCS officials may have, in the past, recommended that such individuals not be allowed to be released to shelters. Plaintiffs are seeking an improper hypothetical and speculative response. As previously noted, in the past, the vast majority of inmates diagnosed with Serious Mental Illness for whom mental health housing was not deemed clinically necessary, or for whom other appropriate housing (such as with family, etc.) was not available, were deemed appropriate for release to shelters. Moreover, a diagnosis of Serious Mental Illness is made by OMH clinicians, and not DOCCS employees, and not all "S" designated inmates have been diagnosed with Serious Mental Illness. Defendant Annucci further responds that a list of inmates diagnosed with Serious Mental Illness who were released to shelters during the period requested is being provided in connection with the supplemental interrogatory responses of Defendant Sullivan. In addition, Defendant Annucci further states that it is impossible to determine, at this time, whether any

of the persons on the list being provided were released "as a result of The Memorandum and the policies set forth therein."

**INTERROGATORY NO. 30:**

Identify and describe the procedures DOCCS implements when OMH has determined that an incarcerated individual, who is not subject to SARA housing requirements and is not suitable for release to a homeless shelter, "requires access to community mental health housing [upon their release] as an added layer of support," as referenced in the Vogel Declaration, Paragraph 6, but no such housing is available for the individual on their Lawful Release Date.

**RESPONSE TO INTERROGATORY NO. 30:**

Defendant Annucci objects to Interrogatory No. 30 to the extent that it is not directed to the issue of The Memorandum as ordered by the Court. Defendant Annucci objects to the phrase "Lawful Release Date" as inaccurately describing and defining the dates in question. Notwithstanding and without waiving Defendant's objections, Defendant Annucci supplements his response as follows: DOCCS and OMH coordinate to locate appropriate housing for inmates diagnosed with Serious Mental Illness. Each individual inmate's care and custody is handled on a case-by-case basis. OMH, with the assistance of DOCCS, when appropriate, locates appropriate mental health housing for those inmates for whom OMH has made a clinical determination that mental health housing is clinically required. It is expected by DOCCS that OMH will secure mental health housing by the appropriate date. DOCCS does not maintain mental health housing outside of correctional facilities and is not in a position to place inmates in such housing without OMH having secured such housing for an inmate.

**INTERROGATORY NO. 36:**

Describe all processes for obtaining "waivers" of release from incarcerated Persons with Serious Mental Illness who have a Lawful Release Date and are appropriate for Community-Based Mental Health Housing.

**RESPONSE TO INTERROGATORY NO. 36:**

Defendant Annucci objects to Interrogatory No. 36 to the extent that it is not directed to the issue of The Memorandum as ordered by the Court. Defendant Annucci further objects to the phrase "Lawful Release Date" as inaccurately describing and defining the dates in question. Defendant Annucci also objects to the phrase "appropriate for Community-Based Mental Health Housing" to the extent that such a phrase is undefined and could refer to inmates diagnosed with Serious Mental Illness for whom mental health housing would be beneficial, but for whom it is not clinically required. Notwithstanding and without waiving these objections, Defendant Annucci supplements his response as follows: There is no formal "process" for obtaining a waiver from release. Typically, the inmate will sign a statement and this is done on a case-by-case basis. Provided with these responses are examples of waiver forms regarding inmates utilized in various situations. Defendant reserves the right to supplement this interrogatory if additional information is obtained.

**INTERROGATORY NO. 37:**

Provide the Census of Persons with Serious Mental Illness in DOCCS custody who have a Lawful Release Date and are appropriate for Community-Based Mental Health Housing, but have "waived their release," since January 23, 2019.

**RESPONSE TO INTERROGATORY NO. 37:**

Defendant Annucci objects to Interrogatory No. 37 to the extent that it is not directed to the issue of The Memorandum as ordered by the Court. Defendant Annucci further objects to

the phrase "Lawful Release Date" as inaccurately describing and defining the dates in question. Defendant Annucci also objects to the phrase "appropriate for Community-Based Mental Health Housing" to the extent that such a phrase is undefined and could refer to inmates diagnosed with Serious Mental Illness for whom mental health housing would be beneficial, but for whom it is not clinically required. Notwithstanding and without waiving these objections, Defendant Annucci supplements his response as follows: Defendant Annucci is not aware of any person as defined in Interrogatory No. 37 who has waived his or her release since January 23, 2019. Defendant reserves the right to supplement this interrogatory if additional information is obtained.

**INTERROGATORY NO. 38:**

Provide a Census of people released pursuant to the policy set forth in The Memorandum, including the date of the person's release and their release location.

**RESPONSE TO INTERROGATORY NO. 38:**

Defendant Annucci supplements his response to Interrogatory No. 38 by stating that there is no Census of people released pursuant to the policy set forth in The Memorandum as there is no way to determine whether an inmate would have been retained prior to the policy set forth in The Memorandum. *See also* Response to Interrogatory No. 27.

Dated: New York, New York
      March 9, 2020

                LETITIA JAMES
                Attorney General of the State of New York
                <u>Attorney for State Defendants</u>
                By:

                    */s/Jeb Harben*
                JEB HARBEN
                JANE R. GOLDBERG
                Assistant Attorney General
                28 Liberty Street
                New York, New York 10005
                (212) 416-6185/6133
                Jeb.Harben@ag.ny.gov
                Jane.Goldberg@ag.ny.gov

To:

Elena Landriscina
Joshua Rosenthal
Betsy Sterling
Disability Rights New York
25 Chapel Street, Suite 1005
Brooklyn, New York 11201

Stefen R. Short
Robert Quackenbush
Veronica Vela
Mary Lynne Werlwas
Prisoners' Rights Project
The Legal Aid Society
199 Water St., 6th Fl.
New York, NY  10038

Walter G. Ricciardi
Emily A. Vance
Paul, Weiss, Rifkind, Wharton
& Garrison, LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Attorneys for Plaintiffs