STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF STATE COUNSEL
LITIGATION BUREAU

August 21, 2020

By ECF and Email
Honorable Lisa Margaret Smith
United States Magistrate Judge
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, NY 10601-4150

RE:  *M.G. v. Cuomo*, No. 19-CV-0639 (CS) (LMS)

Dear Magistrate Judge Smith:

This Office represents the Defendants in this action brought pursuant to 42 U.S.C. §1983, the Americans with Disabilities Act, and the Rehabilitation Act. Pursuant to this Court's Order (ECF No. 129), we submit this letter in opposition to Plaintiffs' letter motion seeking permission to file a Second Amended Complaint ("proposed SAC") (ECF No. 125) in this action.

**The Proposed New Claims**

The proposed SAC asserts entirely new claims demanding that hundreds of inmates released from DOCCS each year, who have been diagnosed with Serious Mental Illness ("SMI") and may be at risk of homelessness and placement in shelters, must be provided with non-shelter housing at vast state expense. It also complains that inmates with SMI who are released to shelters may not be receiving sufficient mental health treatment and other resources. *See*, *e.g.*, proposed SAC at ¶¶ 216–353, 395–419, 486-495, 533-583, 698, 706, 752-774. These proposed claims effectively constitute an entirely new lawsuit. Indeed, none of the current named Plaintiffs in this action could be class representatives in connection with these newly proposed claims, as none were released to shelters. Thus, new proposed Plaintiffs were required to be added to the pleadings. Notably, none of these new proposed Plaintiffs representing the "Discharge Class" were members of any of the previously pleaded putative classes, the "General Class" and the "RTF Subclass," as those putative classes involved SMI inmates whose respective releases from prison were delayed, which is not alleged as to the proposed Discharge Class.[1]

Defendants oppose Plaintiffs' request because, in addition to the new claims being futile, the proposed SAC seeks to vastly expand the claims in this lawsuit, which are the subject of a

---

[1] In addition, the putative "General Class" and putative "RTF Subclass" previously pleaded specifically excluded any person subject to Sexual Assault Reform Act housing restrictions. *See* Complaint (ECF No. 1) at ¶¶ 332-33; Amended Complaint (ECF No. 47) at ¶¶ 386-87. The newly proposed "Discharge Class" does not exclude such persons. *See* proposed SAC at ¶ 698.

Honorable Lisa Margaret Smith                                                                                           Page 2
August 21, 2020

pending motion to dismiss before Judge Seibel that has been fully briefed since March 27, 2020. Allowing such an expansion would be highly prejudicial to Defendants who have expended enormous resources defending the present claims in this case. This extensive briefing on the pending motion included a sur-reply by Plaintiffs (ECF No. 113), and a response by Defendants to the sur-reply (ECF No. 120). In addition, while motion practice was undertaken, Defendants responded to numerous interrogatories, often involving complex issues that required substantial resources to respond to, and produced over 100,000 pages of documents that were principally relevant to the existing claims in the case, and which did not concern the newly proposed claims. If the new claims are allowed to proceed, among other things, Defendants will be required to re-review materials that were already reviewed once and deemed irrelevant.

The new claims demanding that SMI inmates not be released to shelters or housing Plaintiffs deem similar to shelters appear to contradict Plaintiffs' earlier claims in this action. Indeed, Plaintiffs' initial two pleadings complained that the named Plaintiffs' releases were improperly delayed because Defendants allegedly declined to allow their release to shelters and, instead, sought different housing. *See* Complaint (ECF No. 1) at ¶¶ 213-214; Amended Complaint (ECF No. 47) at ¶¶ 252-254. These are the pleaded claims that Judge Seibel indicated were potentially problematic during the initial status conference in this action (ECF No. 100 (May 13, 2019 Transcript at 8-9)), not any unpleaded matters relating to releases to shelters. Nowhere did these pleadings allege that the release of SMI inmates to shelters violated federal law. Only during discovery, after DOCCS ceased the conduct complained of in the Complaint and Amended Complaint by issuing a state-wide policy memorandum in December 2019 advising DOCCS personnel not to hold SMI inmates past their scheduled release dates (EFC No. 92) effectively mooting Plaintiffs' claims, did Plaintiffs attempt to change the focus of this lawsuit to SMI inmates being released to shelters.

Plaintiffs attempted to shift the focus of the lawsuit by seeking discovery concerning the releases of SMI inmates to shelters, which was clearly an attempt to find material for a new lawsuit, and which this Court rejected because, after a careful reading of the pleadings, the Court determined that none of Plaintiffs' allegations made a claim that release to shelters was precluded by federal law. *See, e.g.*, February 27, 2020 and March 23, 2020 minute entries sustaining Defendants' objections to responding to certain interrogatories and requests to produce concerning release to shelters. Having failed to convince this Court that they had pleaded claims regarding releases of SMI inmates to shelters, Plaintiffs then sought to make these claims in their sur-reply (ECF No. 113), having not made them in their earlier opposition to the pending motion to dismiss (ECF No. 82). These new assertions were addressed in Defendants' response to Plaintiffs' Sur-Reply (ECF No. 120), which also noted that the claims were unpleaded and had no basis in law.

**Plaintiffs Have Not Shown Good Cause**

Preliminarily, Plaintiffs incorrectly recite the standard for leave to amend under Fed. R. Civ. P. 15(a), when "Rule 16 [of the FRCP] governs leave to amend after a scheduling order has been entered," as is the case here. *See In re Wireless Tele. Servs. Antitrust Lit.*, 2004 WL 2244502, at *5 (S.D.N.Y. Oct. 6, 2004). Where the time to amend pleadings has passed, the moving party must show "good cause" for the amendment, and "a finding of 'good cause' depends on the diligence of the moving party." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir.

2000). "Rule 15(a) analysis is not applicable." *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 2009 WL 3467756, at *5 (S.D.N.Y. Oct. 28, 2009). Here, at the May 13, 2019 conference, the Court set a June 3, 2019 deadline for Plaintiffs to amend the pleadings (ECF No. 100 at 10-11), and Plaintiffs did so. A court's discretion to deny leave to amend "is particularly broad where the court has already given the plaintiff an opportunity to amend his complaint." *Fidelity Fin. Corp. v. Federal Home Loan Bank of San Francisco*, 792 F.2d 1432, 1438 (9th Cir. 1986).

Plaintiffs have not been diligent in seeking leave to amend as it was clear at the February 27, 2020 and March 23, 2020 conferences that this Court did not believe that Plaintiffs' Amended Complaint articulated a claim regarding SMI inmates who were released to shelters. Waiting nearly six months to seek to amend the pleadings to make entirely new claims on behalf of new Plaintiffs is not diligent. *See Kassner v. 2nd Ave. Delicatessen Inc.,* 496 F.3d 229, 244 (2d Cir. 2007) (primary consideration in determining good cause is "whether the moving party can demonstrate diligence"); *Carnrite v. Granada Hosp. Group, Inc.,* 175 F.R.D. 439, 446 (W.D.N.Y. 1997) ("'[g]ood cause' means that scheduling deadlines cannot be met despite a party's diligence").

Moreover, "[a] party that inexcusably delays after determining that it wishes to allege new claims, whether by discovering new evidence or otherwise, will not satisfy the good cause standard." *Kodak Graphic Communications Canada Co. v. E.I. du Pont de Nemours and Co.*, 2011 WL 4711968, at *5 (W.D.N.Y. Sep. 23, 2011)(collecting cases and citing *Volunteer Fire Assoc. of Tappan, Inc. v. Cnty. of Rockland,* 2010 WL 4968247, at *4 (S.D.N.Y. 2010) (four month delay); *Rambarran v. Mt. Sinai Hosp.,* 2008 WL 850478, at *3 (S.D.N.Y. 2008) (five month delay); *Baergas v. City of New York,* 2005 WL 2105550, at *10 (S.D.N.Y. 2005) (two month delay), adopted at 2011 WL 6826650 (W.D.N.Y. Dec. 28, 2011).

Finally, Plaintiffs' counsel cannot claim that they were previously unaware that large numbers of SMI inmates were being released to shelters and similar housing each year, or that Plaintiffs' counsel did not believe that many SMI inmates in shelters were receiving insufficient mental health services. Indeed, Plaintiffs' motion does not even claim that this was newly discovered information. Rather, Plaintiffs claim that DOCCS's December 2019 policy memorandum may result in more SMI inmates being released to shelters, without acknowledging that the number of inmates whose releases were previously being delayed represented a small fraction of those being released to shelters. *Compare* proposed SAC at ¶ 699 (noting that 82 SMI inmates had their release delayed since the beginning of 2016, less than 20 inmates on average, per year) *with* ¶ 545 (over 300 SMI inmates released to shelters from January 23, 2019 through January 31, 2020) and ¶ 548 (citing number of SMI inmates released to shelters, hotels, and motels). "[T]he Court may deny a motion to amend when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay." *New Hampshire Ins. Co. v. Total Tool Supply, Inc.*, 621 F. Supp. 2d 121, 124 (S.D.N.Y. 2009) (citations omitted); *see also Indus. Tech. Ventures, L.P. v. Pleasant T. Rowland Revocable Trust*, 280 F.R.D. 86, 93 (W.D.N.Y. 2012) (party was not "sufficiently diligent in seeking to amend the complaint" with respect to allegations regarding information the moving party "knew, or should have known, of at the time the initial complaint was filed"). Moreover, "[t]he burden is on the party who wishes to amend to provide a satisfactory explanation for the delay." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990). Plaintiffs have failed to meet that burden here.

**Plaintiffs' New Proposed Claims Are Futile**

Plaintiffs' proposed new claims seeking a radical expansion of New York State's supervision of SMI inmates who have been released, essentially requiring the state to provide apartments or rooms to each released inmate, and requiring teams of professionals to regularly visit these released inmates at their residences (rather than releasing such inmates to shelters or similar housing and providing mental health services that are accessed like other members of the community who visit mental health professionals), find no basis in the law and are futile. While Plaintiffs claim that releasing SMI inmates to shelters violates *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999), there is no controlling law to support that argument, and Plaintiffs twist, misquote, and mischaracterize dicta in *Olmstead* to infer that the mentally ill cannot be housed in homeless shelters when the Court made no such finding. Indeed, *Olmstead* specifically rejected the notion that a State's budget should be ignored when considering the type of sweeping relief here. *Olmstead*, 527 U.S. at 604-606. States are not obligated to provide individual apartments or other community based mental health housing to all released SMI inmates and Plaintiffs have not cited a single decision supporting that assertion. Instead, the State must serve individuals in "the most integrated setting appropriate[,]" which is the "setting that enables individuals with disabilities to interact with non-disabled persons to the fullest extent possible." *Davis v. Shah*, 821 F.3d 231, 242 (2d Cir. 2016). As shelters and similar housing allows the disabled and non-disabled to interact, they are "integrated" for purposes of *Olmstead*, and it is undisputed that DOCCS and OMH assist SMI inmates released to shelters in obtaining mental health treatment in the community. *See* Enright Decl. ¶¶ 7, 13 (ECF No. 92); Vogel Decl. ¶ 5 (ECF No. 91). While Plaintiffs may want the State of New York to provide mental health housing in the form of apartments and similar housing to the hundreds of SMI inmates released from prison each year, such an outcome is, on its face, financially unfeasible, and there exists no such obligation under the law. Instead, clinicians must determine which SMI inmates clinically *require* mental health housing, and which SMI inmates can be appropriately released to shelters and receive services in the community. As the *Olmstead* court noted, "[c]ourts normally should defer to the reasonable medical judgments of public health officials." *Olmstead*, 527 U.S. at 602.

**Defendants Will Be Prejudiced By Further Amendment**

As previously argued, this case has been extensively litigated based upon the claims in the Complaint and Amended Complaint for more than a year, with Defendants' counsel having produced over 100,000 pages of documents, and having reviewed far more than that many documents for responsiveness and relevance based on the claims previously pleaded. Even under the more liberal standards of Fed. R. Civ. P. 15(a), amendment to include a new set of Plaintiffs with entirely new claims must be denied because of prejudice to Defendants. In determining what constitutes prejudice to the opposing party, courts "generally consider," *inter alia*, whether the proposed amendments would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial [or] significantly delay the resolution of the dispute.'" *Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)); *see also Quattrone v. Erie 2 Chautauqua-Cattaraugus Bd. of Coop. Educ. Servs.*, 2011 U.S. Dist. LEXIS 7976, at *8 (W.D.N.Y. Jan. 27, 2011) ("The courts consider several factors in determining prejudice, including whether assertion

Honorable Lisa Margaret Smith    Page 5
August 21, 2020

of the new claim or defense will unduly delay the resolution of the dispute by substantially changing the theory of the case so as to require the opponent to expend significant additional resources to conduct discovery and prepare for trial."). Thus, prejudice can result if a particular amendment "unfairly expands the scope of the complaint, requires substantial further discovery, or delays the resolution of the case." *Catamount Radiology, P.C. v. Bailey*, 2015 U.S. Dist. LEXIS 114928, at *2 (D. Vt. Aug. 27, 2015); *see also Grace v. Rosenstock*, 228 F.3d 40, 54 (2d Cir. 2000) (court can deny leave to amend when the proposed amendments "would unduly delay the course of proceedings by, for example, introducing new issues for discovery"); *Barrows v. Forrest Labs., Inc.*, 742 F.2d 54, 56 (2d Cir. 1984) (affirming denial of leave to amend when, *inter alia*, the proposed amendments "would significantly expand the scope of discovery").

Plaintiffs' proposed amendment would "would significantly expand the scope of discovery" as the new claims involve hundreds of SMI inmates released to shelters and similar housing each year, with each housing placement providing different levels of support, whereas the delayed releases referenced in the Complaint and Amended Complaint were far more limited in number. In addition, discovery involving the level of mental health treatment provided to members of this putative class required to support Plaintiffs' claims that the treatment received is inadequate would require enormous resources and be extremely time consuming, vastly expanding the discovery obligations of Defendants, and significantly delaying the resolution of this case.

Finally, this is not a case where "the facts giving rise to the claims of the [a]dditional [n]amed Plaintiffs are the same or virtually the same as those of the named plaintiffs," *Cortigiano v. Oceanview Manor*, 227 F.R.D. 194, 202 (E.D.N.Y. 2005) (collecting cases allowing additional plaintiffs where underlying claims were the same), but rather, the facts underlying the claims of the proposed "Discharge Class" are nearly entirely different than those of the other putative classes, which involved delayed release from prison, not placement in shelters. None of the cases cited by Plaintiffs involve amendments that were essentially new lawsuits with substantially different claims and new Plaintiffs.

For all of the above reasons, Plaintiffs' motion to amend should be denied.

        Respectfully submitted,

        */s/Jeb Harben*

        _____
        Jeb Harben
        Jane R. Goldberg
        Assistant Attorneys General
        (212) 416-6185
        Jane.Goldberg@ag.ny.gov
        Jeb.Harben@ag.ny.gov

cc:    All Counsel of Record (via ECF)