UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

M.G., et al.,

Plaintiffs,

- against -

ANDREW CUOMO, et al.,

Defendants.

19 CV 639 (CS) (LMS)

DECISION AND ORDER

**THE HONORABLE LISA MARGARET SMITH, U.S.M.J.**[1]

Currently before the Court is Plaintiffs' motion for leave to file a Second Amended Complaint (the "SAC") (ECF No. 125). Plaintiffs seek to amend the First Amended Complaint ("FAC") to (1) add three named Plaintiffs; (2) add a new class (the "Discharge Class") to the putative class action; and (3) add allegations related to the new class and update the allegations of previously named Plaintiffs. Defendants object to the filing of the SAC, arguing, inter alia, that the proposed new claims dramatically alter the nature of the current lawsuit. ECF No. 130.

Plaintiffs commenced this action on January 23, 2019, by filing their original Complaint naming M.G., P.C., C.J., M.J., J.R., and D.R. as Plaintiffs individually and on behalf of other similarly situated individuals. ECF No. 1. The putative class action asserted claims by a

---

[1] On August 2, 2019, the Honorable Cathy Seibel referred this matter to the undersigned for general pre-trial supervision, including the resolution of non-dispositive motions. ECF No. 52. A motion to amend a complaint is considered a non-dispositive motion. See Fielding v. Tollaksen, 510 F.3d 175, 178 (2d Cir. 2007).

General Class[2] and an RTF Subclass[3], which alleged that inmates with serious mental illness ("SMI") were being held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") past their lawful release dates due to Defendants' failure to provide appropriate community-based housing for these inmates on their release dates in violation of Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act.[4]  See id.  Plaintiffs sought declaratory and injunctive relief, with the primary focus on Defendants "[d]eveloping and implementing an effective plan for providing care and treatment in the most integrated setting appropriate to the needs [of SMI individuals who would qualify for and desire mental health services in an integrated setting]" and "[p]romptly making available sufficient community-based care and treatment opportunities, including OMH-funded mental health housing, to ensure that the most integrated appropriate care and treatment is

---

[2] Plaintiffs define the General Class as "all persons (1) housed or who will be housed in a state prison, (2) with serious mental illness, (3) whose open dates for parole release, approved conditional release dates, or maximum expiration dates have passed, (4) who are not subject to residency restrictions under the Sexual Assault Reform Act, and (5) who are appropriate for integrated, community-based housing programs." ECF No. 1 at ¶ 332.

[3] Plaintiffs define the RTF Subclass as "all persons (1) housed or who will be housed in a state prison pursuant to Penal Law § 70.45 or Correction Law § 73, (2) who have serious mental illness, (3) whose maximum expiration dates have passed, (4) who are not subject to residency restrictions under the Sexual Assault Reform Act, and (5) who are appropriate for integrated, community-based housing programs." ECF No. 1 at ¶ 333. The acronym "RTF" stands for Residential Treatment Facility.

[4] The complaint also included an Eighth Amendment and Fourteenth Amendment Substantive Due Process claim under 42 U.S.C. § 1983 asserted by the RTF Subclass. While the General Class includes individuals who were held past their release date, be it a parole date or otherwise, the RTF Subclass includes individuals who were held past their maximum expiration date and were assigned to "residential treatment facilities." ECF No. 1 at ¶ 4. Plaintiffs allege that members of the RTF Subclass were held in prison and were subject to the same living and punitive conditions as inmates. See, e.g., id. at ¶¶ 4-10, 217-29.

2

provided without undue delay to those qualified individuals being discharged from state prison who want community-based care and treatment." ECF 1 at 47.

On June 3, 2019, Plaintiffs filed its FAC. ECF No. 47. The FAC elaborates on the facts alleged in the original complaint and did not change the parties or the causes of action. As discussed at a May 2019 conference before Judge Seibel, the FAC was meant to address some of the issues raised by Defendants about the original complaint. Tr. 10: 14-17, 23-25.[5] During the same conference, Judge Seibel set a briefing schedule for Defendants' anticipated motion to dismiss the FAC. Id. at 11: 1-18. The matter was set to be fully briefed by August 30, 2019. Id. The Court proposed that since at least some claims would remain after Defendants' motion is decided, the parties should proceed with discovery; neither side objected. Id. at 12: 4-8. Subsequently, Judge Seibel referred this matter to the undersigned for general pretrial supervision. ECF No. 52.

As the result of delays in producing discovery, the Court repeatedly extended the briefing deadlines for Defendants' motion to dismiss. See Minute Entries for 8/9/2019, 8/20/2019, 9/10/2019; ECF Nos. 66, 73. In accordance with an Order issued on November 20, 2019, Defendants' motion was fully briefed on December 16, 2019, with all briefing filed simultaneously on that date. ECF No. 73. In its Reply brief, and through the Declaration of Ana Enright, Deputy Commissioner for Parole Operations and Reentry Services at DOCCS, Defendants raised the argument that Plaintiffs' claims were mooted by a DOCCS Memorandum issued on December 16, 2019. ECF Nos. 90, 92, 92-1. The Memorandum provides that DOCCS will allow inmates with SMI whom the Office of Mental Health ("OMH") determines may be released to a shelter setting to be so released on the inmates' release date. ECF No. 92-1. On

---

[5] Citations to "Tr." refer to the transcript of the May 13, 2019, conference before Judge Seibel, which is located at ECF No. 100.

3

January 29, 2020, Plaintiffs sought leave to file a Sur-Reply to address the Memorandum argument, which was granted on February 3, 2020.[6] ECF Nos. 101, 104. The matter was fully briefed and before the Court for decision on March 27, 2020. See ECF No. 109.

Throughout the briefing period and pendency of the Court's decision on Defendants' motion, the parties engaged in document discovery supervised by the undersigned via monthly status conferences. Four days ahead of the conference scheduled for August 14, 2020, Plaintiffs raised by letter its intention to file a SAC. ECF No. 125. In lieu of formal briefing, the undersigned deemed Plaintiffs' letter a motion to amend and set a schedule for letter briefing. ECF No. 129. The letter briefing on the motion to amend is now fully submitted. The undersigned heard argument from the parties at a phone conference on August 25, 2020. Defendants' motion to dismiss the FAC is still pending.

The proposed SAC adds three named Plaintiffs, S.D., W.P., and D.H., who would be party representatives for the proposed Discharge Class. ECF No. 125-1 ¶¶ 216-353. This class includes individuals who were not held past their lawful release dates but were discharged to shelters or similar settings where they did not receive the services for which they were deemed eligible by OMH.[7] To that end, the SAC includes allegations related to the new Plaintiffs and the Discharge Class, and it includes two additional causes of action for Defendants' violation of Title II of the ADA and Section 504 of the Rehabilitation Act as against the new Plaintiffs and the Discharge Class. In addition, Plaintiffs have updated the facts to reflect changes with the

---

[6] The Court also granted Defendants permission to file a brief responding to Plaintiffs' Sur-Reply. ECF No. 104.

[7] Plaintiffs define the Discharge Class as "all persons (1) with serious mental illness, (2) who are or will be appropriate for and desire community-based mental health housing and supportive services upon their release from state prison, (3) who, upon their release, do not receive such services, and (4) who reside in segregated settings or who are at serious risk of becoming institutionalized." ECF No. 125-1 ¶ 698.

4

previously named Plaintiffs (e.g., most of the previously named Plaintiffs have been released from prison since the filing of the FAC), and Plaintiffs have added allegations throughout the SAC that bolster their claim (e.g., discussing "New York State's Community-Based Mental Health Housing Program and Services" ¶¶ 392-419). The prayer for relief is unchanged but for the addition of the Discharge Class as one of the classes for which Plaintiffs seek class certification.

In its pre-motion letter, Plaintiffs first contend that the proposed amendments do not impact the Court's decision on the pending motion to dismiss because "the SAC does not substantively alter the claims of the original named Plaintiffs, the General Class, or the RTF Subclass." ECF No. 125 at 1-2. Plaintiffs argue that leave to amend should be granted under the liberal amendment standard established by Federal Rule of Civil Procedure 15. ECF No. 125; see Fed. R. Civ. P. 15(a). In accordance with the Rule 15 standard, Plaintiffs' argue that (1) there has been no delay in bringing the proposed amendments; (2) Defendants cannot establish undue prejudice or bad faith; and (3) the claims in the SAC are not futile. ECF No. 125.

Defendants argue that Plaintiffs' amendments "effectively constitute an entirely new lawsuit." ECF No. 130 at 1. Defendants contend that Federal Rule of Civil Procedure 16 governs Plaintiffs' motion to amend, which requires a showing of good cause. ECF No. 130; Fed. R. Civ. P. 16(b)(4). Defendants assert that Plaintiffs cannot demonstrate good cause because Plaintiffs did not diligently seek leave to amend after becoming aware of the proposed additional claims. Id. at 3. Defendants further argue that the claims of the proposed Discharge Class are futile and allowing the proposed amendments would cause undue prejudice to Defendants. Id. at 2, 4-5.

For the following reasons, Plaintiffs' motion to amend is **GRANTED**.

5

## DISCUSSION

The Court agrees with Plaintiffs that since a scheduling order has not been issued in this case, the rule governing Plaintiffs' motion is Federal Rule of Civil Procedure 15. "Where . . . the Court sets a deadline for amendments to the complaint and a party moves to amend once the deadline has passed, the Court must balance the more liberal standard of Rule 15(a) against the requirements of Federal Rule of Civil Procedure 16(b)." Volunteer Fire Ass'n of Tappan, Inc. v. Cnty. of Rockland, No. 09-CV-4622 (CS), 2010 WL 4968247, at *3 (S.D.N.Y. Nov. 24, 2010). Under Federal Rule of Civil Procedure 16, once a schedule has been set for amendment to the pleadings, the "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). In contrast, Federal Rule of Civil Procedure 15(a), which applies before a scheduling order has been issued, requires that a district court employ a liberal standard when considering a motion to amend. See Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). The Supreme Court has expounded upon Rule 15(a)'s liberality by suggesting that it is preferential for a plaintiff to be "afforded an opportunity to test his [or her] claims on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962). In Foman, the Supreme Court counseled that the textual directive of the Rule should be followed absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment." Id. The decision to grant or deny a motion to amend rests within the sound discretion of the district court. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007).

6

At the May 13, 2019, conference, Judge Seibel set a deadline by which Plaintiffs were required to file the FAC. Tr. 10:22-25. Defendants appear to construe the deadline Judge Seibel set at the May 2019 conference for Plaintiffs to amend its original complaint as the deadline by which all amendments to the pleadings must be advanced. See ECF No. 130 at 3; citing separately to Volunteer Fire Ass'n, 2010 WL 4968247, by email to the Court sent August 25, 2020. Although Judge Seibel stated that there would "probably" not be another opportunity for Plaintiffs to amend its complaint on the same issues, Judge Seibel declined to make a definitive statement about Plaintiffs' ability to make further amendments. See Tr. 10: 14-17. Moreover, Plaintiffs did file their FAC on time pursuant to Judge Seibel's order, which distinguishes this case from Volunteer Fire Ass'n, where Plaintiff attempted to file its amended complaint after the district court's verbal order and endorsement setting the filing deadline. See Volunteer Fire Ass'n, 2010 WL 4968247 at *2-3.

In the absence of evidence to the contrary, the undersigned views Judge Seibel's deadline as referring to amendments related to the issues raised by Defendants at that time and the facts as they existed at the time of filing the FAC, both of which have changed since the May 2019 conference. If the Court were to apply the Rule 16 "good cause" standard to the June 2019 amendment deadline, the DOCCS Memorandum[8] issued six months after Plaintiffs' deadline, the continued delays in obtaining discovery from Defendants, and the Covid-19 health crisis (which began in earnest in the United States in March 2020 and has created significant disruptions throughout the country), support a finding of good cause for the delay in Plaintiffs bringing

---

[8] The DOCCS Memorandum was attached to the Declaration of Ana Enright (ECF No. 92). The Declaration made several references to DOCCS releasing inmates with SMI to shelters and shelter-like settings. See ECF No. 92 at ¶ 4 ("Such release may include release to a shelter setting"), ¶ 7 ("It is my understanding that the majority of inmates classified as having Serious Mental Illness are deemed by OMH to be psychiatrically stable for community release and can be released to community mental health housing or other types of housing, including shelters.").

7

another motion to amend. Cf. Volunteer Fire Ass'n, 2010 WL 4968247 at *4 ("Notwithstanding such a delay, a plaintiff may demonstrate good cause where it can show that events bearing on its allegations occurred after the deadline to amend, or that it discovered information relevant to its allegations which it was unaware prior to the deadline.") Defendants claim that Plaintiffs were previously aware that DOCCS released large numbers of SMI inmates to shelters and similar settings, ECF No. 130 at 3, but do not point the Court to evidence to support that conclusion.

"The rule in [the Second] Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993). Prejudice to the nonmoving party may arise when the proposed amendment causes the nonmoving party to "expend significant additional resources to conduct discovery and prepare for trial," or when the proposed amendment causes significant delay to the disposition of the original claim or claims. Id. Delay alone, however, is an insufficient justification for the denial of a motion to amend. Id. The degree of potential prejudice a motion to amend may cause is evaluated against the overall progress of the litigation: the closer to the end of discovery or the closer to trial a motion to amend is filed, the more likely that it will cause prejudice and delay to the nonmoving party. See, e.g., GEM Global Yield Fund Ltd. v. SurgiLight, Inc., No. 04-CV-4451 (KMK), 2006 WL 2389345, at *11 (S.D.N.Y. Aug. 17, 2006) (summarizing impact of motion to amend based upon timing of motion during litigation). Application of these timing principles, however, does not always result in the denial of a motion to amend, especially when it appears advantageous, efficient, and economical to resolve similar disputes in a single proceeding. Id. (highlighting value of resolving all disputes "in one litigation").

8

The undersigned, having supervised the discovery that has taken place thus far, is aware of the burden that Defendants have experienced with respect to its production obligations. It is concerning that potentially hundreds of thousands of documents would need to be re-reviewed to determine if they are relevant to the proposed new claims, meaning an increase in effort, cost, and potential delay. See ECF No. 130 at 2. "However, 'it is difficult to imagine an amendment to pleadings under Rule 15(a) that would not create some increased work to the opposing party,'" Rivera v. Dyett, No. 88-CV-4707(PKL), 1993 WL 54652, at *5 (S.D.N.Y. Feb. 16, 1993) (quoting Int'l Bank v. Price Waterhouse & Co., 85 F.R.D. 140, 142 (S.D.N.Y.1980)), and if Plaintiffs were to bring the claims of the Discharge Class in a separate lawsuit, Defendants would face the same burden as it does now. The Court recognizes that the addition of the Discharge Class will involve more discovery, but "the need to conduct this additional discovery is not a sufficient justification for denying leave to amend." Id.; see S.S. Silberblatt, Inc. v. East Harlem Pilot Block Building 1 Housing Development Fund Co., Inc., 608 F.2d 28, 42 (2d Cir. 1979) ("In any event, even if Chemical's estimate that it would need several months to analyze all the discovery material is correct, this by itself is insufficient prejudice to deny leave to amend, particularly when trial has not yet commenced and is not likely to do so for some time.") (citation omitted); Middle Atlantic Utilities Co. v. S.M.W. Development Corp., 392 F.2d 380, 388 (2d Cir. 1968) ("The purpose of the federal rules is to provide for full and fair hearings on the merits. The burden of further discovery and motions is not a satisfactory basis to deny the motion to amend. Such procedural aspects can be regulated and controlled by the trial court"). This matter is still in the pleading stage and the parties are still engaging in paper discovery with no deadlines set for depositions; in other words, the matter is far from the eve of trial. Moreover, Plaintiffs contend that it has already started seeking discovery related to the Discharge Class and

9

that much of what has already been produced is relevant to the Discharge Class. See ECF No. 125 at 3. Therefore, the Court finds that the prejudice that Defendants may endure is not so significant as to require that the Court deny Plaintiffs the "opportunity to test [their] claims on the merits." Foman, 371 U.S. at 182.

As to futility, since there is a pending motion to dismiss before Judge Seibel, the undersigned thinks it inappropriate to address the merits of Plaintiffs' claims on this motion to amend. Contrary to Plaintiffs' assertion, the new claims do appear to change the tenor of the case.[9] For example, the addition of the proposed named Plaintiffs and the Discharge Class expands the focus of the dispute from persons being held in prison past their release dates due to their severe mental illness to persons with severe mental illness being denied community-based housing in the most integrated setting appropriate to their needs and/or who face a substantial risk of institutionalization. Although Plaintiffs made allegations dating back to the original complaint which indicate that a broader scope was always intended, see, e.g., "Factual Allegations" Section III titled "Defendants Fail To Place Plaintiffs in the Most Integrated Setting Appropriate to Their Need," the allegations, claims, and the classes in the prior complaints were limited to individuals who were being or would be held in prison past their release date. Plaintiffs also add facts to the pleadings which do not specifically relate to the Discharge Class, or which include allegations about the previously named Plaintiffs under sections nominally related to the Discharge Class, that may affect the Court's decision on Defendants' motion to dismiss. See, e.g., ECF No. 125-1 at ¶¶ 392-419; 575-83; 590-92. Moreover, the alleged

---

[9] The Court need not deny leave to amend on this ground. See Catamount Radiology, P.C. v. Bailey, No. 14-CV-213, 2015 WL 5089104 at *1 (D. Vt. Aug. 27, 2015) ("By the same token, 'prejudice to the nonmoving party is alleviated if the new claim arises out of similar facts as existing claims.'")

Olmstead[10] violations in the FAC and SAC, although perhaps not identical, are sufficiently related to warrant consideration at one time by a single judge. For that reason, judicial economy is better served if the same judge determines whether Plaintiffs' claims, both new and old, would survive a motion to dismiss. Based on representations by the parties, see ECF Nos. 130 at 4 and 131 at 2, it may be that determination of the Olmstead issues is better sought by motion for summary judgment where material outside the pleadings may be consulted.

## CONCLUSION

Plaintiffs' motion to amend their complaint (ECF No. 125) is **GRANTED.** Plaintiffs are directed to serve and file their Second Amended Complaint within seven (7) days of the date hereof. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 125.

Dated: August 26, 2020
      White Plains, New York

SO ORDERED

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York

---

[10] Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581 (1999) (holding that "unjustified institutional isolation of people with disabilities" is discrimination under Title II of the ADA)

11