```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2
    ------------------------------------x
 3  M.G., P.C., C.J., M.J., J.R., and D.R.,
    individually and on behalf of
 4  all similarly situated,

 5                            Plaintiffs,

 6                            Case No. 19-cv-00639
        -vs-
 7
    ANDREW CUOMO, et al.,
 8
                              Defendants.
 9
    ------------------------------------x
10
                              United States Courthouse
11                            White Plains, New York

12                            November 4, 2020

13
                    ** VIA TELECONFERENCE **
14
    B e f o r e :
15                            HONORABLE ANDREW E. KRAUSE
                              Magistrate Judge
16
    A P P E A R A N C E S :
17
    THE LEGAL AID SOCIETY
18       Attorneys for Plaintiffs
         199 Water Street
19       New York, New York 10038
    BY:  ELENA M. LANDRISCINA
20
    NEW YORK STATE
21  OFFICE OF THE ATTORNEY GENERAL
         Attorneys for Defendants
22       28 Liberty Street
         New York, New York 10005
23  BY:  JANE R. GOLDBERG
         ADAM SANSOLO
24       JEB HARBEN

25  *Proceedings recorded via digital recording device*
```

```
 1              THE DEPUTY CLERK:  Good afternoon.  This is the case
 2  of M.G., et al. versus Cuomo, et al., case number 19-cv-639.
 3              Can I just get the lead counsel for the plaintiffs and
 4  defendants?  So please state your name for the record?
 5              MS. LANDRISCINA:  This is Elena Landriscina from the
 6  Legal Aid Society for the plaintiffs.
 7              THE COURT:  Good afternoon, Ms. Landriscina.
 8              MS. LANDRISCINA:  Good afternoon.
 9              THE DEPUTY CLERK:  And the lead counsel for defendant,
10  please state your name for the record.
11              MS. GOLDBERG:  This is Jane Goldberg for the
12  defendants.
13              THE COURT:  Good afternoon, Ms. Goldberg.
14              MS. GOLDBERG:  Good afternoon, Your Honor.
15              THE COURT:  If I understand, we have quite a few
16  counsel on the phone, but I thought just in the interest of time
17  to have just the lead counsel introduce themselves to begin
18  with.  If at some point any of the other attorneys need to chime
19  in with something specific in response to any of my questions or
20  to address any particular points, that's perfectly fine.  I'll
21  just ask that you please introduce yourself before you start
22  speaking so that the recording can be clear.  Just I really
23  don't intend to try to stop anyone from speaking or to say that
24  only one person can speak for each side.  I understand that
25  different people might have different issues or have planned to
```

1    handle different things today.  I just thought we might dispense

2    with the lengthy introductions since I believe we have nine

3    attorneys on the phone.

4            Okay.  Well, good afternoon, everybody.  Of course, as

5    you know, this is my first status conference on this case, and I

6    am trying to get up to speed on this and many other cases.  I've

7    looked through the docket.  I've looked through notes from Judge

8    Smith and various other things to try to get a bit of a handle

9    on where things stand.

10            I'm a little bit confused about the status of

11   discovery.  I know some discovery has happened.  I know there's

12   been some motion practice.  I know that there's been an amended

13   complaint and a second amended complaint.

14            So I guess I'd like to just have the parties bring me

15   to up speed on where they think things stand, particularly with

16   respect to the next round of deadlines and the next steps in

17   this case so we can figure out a plan going forward and figure

18   out when we should next get together and things of that nature.

19            So, Ms. Landriscina, why don't we start with you?

20            MS. LANDRISCINA:  Thank you, Your Honor.

21            So with respect to the status of discovery, discovery

22   related to the claims of the General Class and the subclass have

23   been opened since May 2019 when Judge Seibel directed the

24   parties to engage in paper discovery; and since that time, and

25   especially since February of this year, plaintiffs have been

PROCEEDINGS    4

1  conferring with defendants.  In particular, we've been

2  conferring with defendants about discovery requests that

3  plaintiffs have identified as priorities for class certification

4  of the General Class and the RTF Subclass, and we have been

5  conferring about the status of outstanding requests and really

6  to address concerns raised by defendants.

7           I think I'll speak for our side.  We feel that we have

8  engaged in good-faith efforts with defendants, and we have made

9  progress.  For example, we have come to agreement on ESI terms

10  related to priority discovery, and we have continued to confer

11  with defendants.

12          Last week, plaintiff served their second supplemental

13  initial disclosure as to the Discharge Class and the three new

14  plaintiffs that were added to the litigation.

15          So at this time, we are continuing to confer about the

16  prioritized discovery, and we don't have a dispute to raise with

17  the Court.  I will say plaintiffs do seek confirmation from Your

18  Honor that discovery may proceed with respect to the new claims

19  of the Discharge Class.

20          And I guess by further way of background, we

21  understood Judge Seibel at the last conference on September 25th

22  to direct the parties to engage in paper discovery on the new

23  claims subject to Your Honor hearing objections raised by

24  defendants.  So we would respectfully request the ability to

25  proceed with discovery on the new -- the Discharge Class.

PROCEEDINGS                                      5

```
 1            MS. GOLDBERG:  Your Honor?

 2            THE COURT:  Okay.  Ms. Goldberg?

 3            MS. GOLDBERG:  Thank you, Your Honor.  I would confirm

 4   up until the very last point that the parties have been

 5   continuing to confer, and have only recently developed a set of

 6   terms that we are working from.  We have produced over a hundred

 7   thousand pages, as far as I can tell, about 30 different

 8   productions so far.  We are currently reviewing approximately

 9   25,000 communications, many of which are quite long and tedious

10   to review as you can imagine.

11            We -- so we are, you know -- we think that we would

12   probably be able to, at least as to one of the priority

13   requests, have a production ready on that request in about two

14   weeks, and we would like to work with the plaintiffs to develop

15   a staging of the remainder with respect to the communications.

16   We are still working on getting documents and addressing other

17   kinds of miscellaneous requests concerning the General Class and

18   the RTF Subclass, so to speak, because there is no certified

19   class, as Your Honor knows.

20            With respect to the conference with Judge Seibel, I

21   was under the distinct impression -- I don't have the

22   transcript -- but she said that discovery should go forward as

23   to the first amended complaint, but she did not instruct or

24   suggest that we had to engage in discovery on the second amended

25   complaint, which is now the subject of a partial motion to
```

PROCEEDINGS                                                6

1  dismiss that we will be meeting with the Court about next week

2  with Judge Seibel.

3          So we would ask that, given the enormous amount of

4  material that we still have to go through with respect to the

5  first amended complaint, that we not be burdened at this time

6  with discovery on the proposed Discharge Class as we are

7  objecting to that and filing -- and I think plaintiffs' response

8  is going to probably be filed tomorrow, so we would see then.

9          So we have quite a bit to do.  We are working under

10 difficult conditions.  We are still working remotely, our office

11 anyway, and I think the client to some extent are as well, our

12 clients; but we are doing our best, and it's very -- it's been a

13 lot of work and to have to undertake yet another kind of

14 discovery for yet another proposed class that may or may not

15 come to fruition, we would prefer to defer them until we get

16 further along with the priority requests that are already in

17 place so to speak.

18         And I don't know if either Mr. Harben or Mr. Sansolo

19 have anything to add to that.  I guess not.

20         MR. SANSOLO:  This is Adam Sansolo.  Nothing from me.

21         MR. HARBEN:  The new class, as acknowledged by Judge

22 Smith in the prior conference in her ruling, and Judge Seibel,

23 it's a very big expansion on what has been going on when we

24 don't have the requests, the discovery requests yet, but it's a

25 big group of people, potentially a huge number of documents and

1  you know, we are going to be moving to try and dismiss it.

2          Judge Seibel, obviously, has not stated how she is

3  going to go on that yet, but, you know, it's not just adding a

4  twist on the current discovery we have already been dealing

5  with.  It could be quite -- it's a very substantially different

6  new claim compared to what we have already been doing quite

7  hefty discovery on.

8          THE COURT:  Okay.  Ms. Goldberg or Mr. Sansolo, let me

9  just ask you so I can understand a little bit more about the new

10  claims from defendants' perspective.

11          First, your motion to dismiss, I understand in this

12  case that there is a partial motion to dismiss the first amended

13  complaint.  It was granted in part and denied in part.  Am I

14  right about that so far?

15          MS. GOLDBERG:  Yes.  It was mostly denied, Your Honor.

16          THE COURT:  Okay.  And at the time that that motion

17  was pending, Judge Seibel back in -- I think you both referenced

18  May 2019 or thereabouts -- directed you to go forward with

19  discovery.  Now was that while the motion -- and forgive me as

20  I'm just kind of learning the history -- but was that while the

21  motion was pending or after she had decided that?

22          MS. GOLDBERG:  Well, it was the Court knew a motion

23  was coming at that point, but there has been discovery since the

24  beginning of this case, even with the motion practice in play

25  going forward.

```
 1              THE COURT:  Right.
 2              MS. GOLDBERG:  And we have -- we have frequently asked
 3    for stay of discovery, and that has not been approved at all.
 4    So we have just been going along as best we can, and as
 5    Mr. Harben has said, the new proposed class is a much larger
 6    expansion, and will probably require very different things, and
 7    I think it's -- I don't have the transcript in front of me.  I
 8    mean, I could pull it up, but I just don't recall that Judge
 9    Seibel insisted that -- you know, or that it was okay to start
10    discovery on the second amended complaint, particularly when --
11    at this point when we are going forward, and we have a lot to do
12    even with the remaining claims on the first amendment -- amended
13    complaint, and also the parties are -- at Judge Seibel's
14    recommendation, so to speak -- moving maybe to further discuss
15    settlement because she would like to see the claims on the first
16    amended complaint as to the proposed General Class and proposed
17    RTF class resolved.
18              She understands that the claims in the second amended
19    complaint have -- are a whole different level, but we did have
20    one conference, you know, by phone with plaintiffs about
21    settlement.  Our clients would like to resolve the first amended
22    complaint certainly, and plaintiffs today proposed that we have
23    a meeting in the first week of December because they are
24    revising their demands and will be getting that to us shortly.
25              So that puts us on, you know, three different tracks,
```

PROCEEDINGS                    9

```
 1  and with two people.  I'm not counting Mr. Sansolo, but he has
 2  definitely been part of -- make it three people, and you know,
 3  so we have -- we are working hard to get a production out, but
 4  if we are -- and the clients also have a difficult time in this
 5  environment particularly in getting things produced.  So it's
 6  been a little bit of a catchup for us, but we are working on it.
 7  But we would --
 8            MR. HARBEN:  Your Honor?  I am sorry, Your Honor.
 9            THE COURT:  Hold on.  I think Ms. Goldberg is still
10  speaking.  Hold on.
11            MR. HARBEN:  I am sorry.
12            MS. GOLDBERG:  I was just about -- I was just about
13  completed with what I was saying, Your Honor.
14            THE COURT:  Okay.
15            MR. HARBEN:  Your Honor, this is Jeb Harben.  I would
16  just like to -- because I understand what your question is.  The
17  early, beginning of this case, when we were discussing our
18  motion to dismiss with a pre-motion letter, it was not a
19  complete motion to dismiss.  It was intended as a partial motion
20  to dismiss.  Judge Seibel, seeing that, saw no reason to stay
21  discovery since it was only going to be -- it was going to be a
22  partial motion to dismiss.
23            Ultimately, we made a total motion to dismiss because
24  we argued exhaustion, and mootness issues developed over the
25  course of the briefing, but the discovery wasn't stayed because
```

 1  we didn't make a complete motion to dismiss.

 2       Now, at this time we are seeking a complete dismissal

 3  of the amended -- the new class claims.  Obviously, we have the

 4  claims -- the class claims from the initial complaint that have

 5  not been dismissed are moving forward.  We are not moving again

 6  on that, obviously, but we are moving for a complete dismissal

 7  of these new claims regarding not releasing people to shelters

 8  and things of that nature.  So it's a little -- procedurally,

 9  it's a little bit different than where we were in 2019 at the

10  beginning of this case.

11       THE COURT:  Right.  Okay.  Thank you, Mr. Harben.  I

12  think you -- I don't think I managed to ask my question yet, but

13  I think you anticipated where I was going with that question;

14  and that was, in fact, what I was going to ask, which is whether

15  the current contemplated motion to dismiss for the second

16  amended complaint with respect to the Discharge Class, whether

17  that was going to be a motion for complete dismissal of that, of

18  the additional claims that were included in the second amended

19  complaint.  I recognize it will only be a partial motion in the

20  sense that the claims that have already survived the motion, you

21  are not going moving to dismiss again, but it would be a

22  complete motion with respect to the additional claims that are

23  new to the second amended complaint; is that fair?

24       MR. HARBEN:  Yes, Your Honor.

25       THE COURT:  Okay.  That's helpful.

1          Ms. Landriscina, would you like to weigh in on

2    anything that was just said before I comment on it further?

3          MS. LANDRISCINA:  Yes.  Thank you, Your Honor.

4          Well, I think it connects back to plaintiffs would

5    oppose any stay of discovery, and that's for a few reasons:  The

6    first is that, even though defendants intend to file a motion to

7    dismiss, courts within the Second Circuit have held that the

8    mere filing of a motion to dismiss neither automatically stays

9    discovery nor amounts to good cause to do so.

10          The second concern is really a practical one and one

11    that I think relates to prejudice to plaintiffs in this if there

12    was stay of discovery.  The discovery related to the *Olmstead*

13    claims of the General Class and the Discharge Class overlap

14    significantly, and we are very concerned that a bifurcated

15    approach to discovery will unnecessarily delay the case and

16    prejudice plaintiffs and also impede judicial economy.

17          Thus far, the discovery obtained on the General Class

18    has already been relevant to the Discharge Class, and so because

19    the issues are so enmeshed, we are concerned that staying

20    discovery as to the Discharge Class will lead to an enormous

21    amount of dispute about what discovery is or is not permissible

22    at this stage.  And so even with best efforts by both sides, we

23    are concerned that a bifurcated approach will be unworkable and

24    will lead the parties to seek Your Honor's assistance with

25    resolving disputes, and it will, more importantly, impede

1  plaintiffs' ability to proceed with litigation of the General

2  Class and RTF subclass's claim.

3          Conversely, proceeding with discovery as to all claims

4  promotes efficiency, and defendants in their letters to the

5  Court have argued that the new claims would require re-review of

6  materials that they had already produced and had already

7  reviewed, and so allowing discovery to proceed now addresses

8  defendant's concern regarding burden of duplicative review.  And

9  it's also relevant, I think, that much of the discovery related

10 to the first amended complaint is still outstanding, and

11 defendants' production of responsive discovery is still ongoing,

12 and so that's a further reason why discovery, we argue, should

13 proceed as to all claims.

14         THE COURT:  Okay.  I mean, there is actually a bit

15 more that I feel like I could explore on this topic.  I think,

16 you know, the point about burden, I'm not sure which way that

17 cuts to the extent that --

18         MR. HARBEN:  Your Honor --

19         (Cross-talk)

20         THE COURT:  -- the defendants have to review at this

21 point might ultimately be responsive one day.  If they are not

22 responsive to discovery in the first amended complaint, might

23 ultimately be responsive to discovery regarding the second

24 amended complaint; it seems like it could increase the burden to

25 have to review the same material twice.

PROCEEDINGS                                      13

```
 1          At the same time, I do recognize defendants' point
 2   that they are in the middle of still trying to produce a lot of
 3   stuff in response to the first amended complaint, and they are
 4   trying to get through that before adding the additional work and
 5   effort of responding to an expanded set of discovery demands.
 6          So I would -- and I am inclined to explore that a bit
 7   further before I weigh in on it, but really, I don't think it's
 8   even my position to weigh in on it quite yet because
 9   fundamentally, it seems as though the parties have different
10   views on the specific direction that Judge Seibel provided at
11   the September 25th conference; and so I think it's important for
12   me to understand exactly what was said at that conference, since
13   it seems as though the parties have fairly divergent
14   interpretations of the Court's order.  I'd like to --
15          MR. HARBEN:  Your Honor --
16          THE COURT:  Hold on.  I would like to look at the
17   transcript of that myself, and I also, you know, if necessary,
18   will speak to Judge Seibel about it because what I don't want to
19   do today is issue some sort of ruling that is in tension with
20   what Judge Seibel intended.  So I'm not going to rule on that
21   issue today until I can learn a little bit more on exactly what
22   happened at that conference.
23          So I will ask that if anybody has a copy -- do either
24   side or both sides have a copy of the transcript?
25          MS. GOLDBERG:  Yes, Your Honor.
```

1           THE COURT:  Okay.

2           MS. GOLDBERG:  I believe we do.

3           THE COURT:  If you would be so kind as to just forward

4   a copy of that transcript to my chambers' email address when we

5   finish the conference today?  Just so you have that, it's

6   Krause, my last name, K-R-A-U-S-E-N-Y-S-D chambers, all one word

7   krausenysdchambers@nysd.uscourts.gov.  That's also on the -- on

8   my individual practices on the website.

9           MS. GOLDBERG:  Okay.  I have those, Your Honor.  I

10  will be happy to get that out to you.

11          THE COURT:  That will be helpful.  So I can take a

12  look at that, and if necessary, discuss it with Judge Seibel so

13  I can understand exactly what she had in mind if I am also not a

14  hundred percent clear after I have reviewed the transcript.

15          MS. GOLDBERG:  I just want to -- may I just interject,

16  Your Honor?

17          THE COURT:  Sure.

18          MS. GOLDBERG:  And I agree with you that the first set

19  of document requests, there were 75 document requests.  They

20  were voluminous.  It wasn't like they were one or two lines

21  long, and that's what we have been working off of.  The

22  plaintiffs have divided them up by priority in two different

23  priority groups that they seek information about, but it's

24  already quite voluminous, and so I just wanted to put that in

25  there so that you could consider that as well.

```
 1              THE COURT:  Okay.

 2              MR. SANSOLO:  Your Honor, this is Adam Sansolo, also

 3  speaking.

 4              THE COURT:  Go ahead.

 5              MR. SANSOLO:  I just reviewed the transcript.  It was

 6  actually silent to it, but some clarification is in docket

 7  number 138.  That was an order that was issued by Judge Seibel

 8  on September 8th of this year, which basically states that we

 9  will discuss after the ruling the extent to which, if at all,

10  discovery on the claim in the second amended claim is

11  appropriate; and at that time, the transcript was silent on it.

12  So it was our understanding that at that time the judge did not

13  think that that discovery was appropriate just for -- you know,

14  when you go to review everything that can shed some guidance on

15  where in the docket it's mentioned.

16              THE COURT:  That's helpful.  Thank you, Mr. Sansolo.

17  I see that docket entry 130.

18              MR. SANSOLO:  Okay.

19              MS. LANDRISCINA:  And sorry, Your Honor.  This is

20  Elena Landriscina.  I will state the transcripts that I was

21  referencing postdate what Mr. Sansolo referenced, which is Judge

22  Seibel's remarks regarding essentially what we understood, to

23  proceed as we had with the original claims where we would

24  proceed with paper discovery subject to any objections being

25  raised by defendants about discovery, and I think what we would
```

 1  like or would offer to do or would be happy to do is to provide

 2  briefing on the standard, the applicable standard for a motion

 3  to a stay if that would be helpful.

 4          THE COURT:  I don't think I need briefing on it at the

 5  moment.  I may take you up on that at some point in the future,

 6  and I appreciate the suggestion, but Ms. Landriscina, when you

 7  say you reviewed -- the transcripts you reviewed, you are

 8  talking about the September 25, 2020, transcript?

 9          MS. LANDRISCINA:  Right.

10          THE COURT:  That's the only transcript that

11  is subsequent to the --

12          MS. LANDRISCINA:  Yes.

13          THE COURT:  -- September 8th order, right?

14          MS. LANDRISCINA:  Yes.

15          THE COURT:  Okay.  And Ms. Goldberg is going to send

16  that to us after the conference, and just so I can understand,

17  is there a specific page or section of the transcript that you

18  are referring to when you describe what you believe to be Judge

19  Seibel's direction to proceed in the equivalent way that you

20  proceeded on the first amended complaint?

21          MS. LANDRISCINA:  Yes.  I can search for that quickly.

22  And allow me to -- yes.

23          THE COURT:  Take your time.  And of course, I will

24  read the transcript.  So I mean, we don't need to get into a

25  whole extended back-and-forth, but since you are describing

PROCEEDINGS                                    17

1  something that you recall --

2          MS. LANDRISCINA:  Yes.

3          (Cross-talk)

4          THE COURT:  -- that would be helpful.

5          MS. GOLDBERG:  I have, Your Honor.  I'm not sure where

6  that comes in.

7          MS. LANDRISCINA:  It would be on page 63 of the

8  transcript.

9          THE COURT:  Okay.  All right.  Well, we will take a

10  look at that, and as I said, I will confer with Judge Seibel

11  after I have had a chance to look at it.  You are scheduled to

12  see Judge Seibel for a conference on the pre-motion letter on

13  November 12th.  That's next Thursday.

14          MS. LANDRISCINA:  Correct.

15          THE COURT:  Okay.  So I will take a look at it

16  certainly in advance of that and discuss with Judge Seibel what

17  makes most sense in terms of --

18          MS. GOLDBERG:  Your Honor, I --

19          (Cross-talk)

20          THE COURT:  -- further direction.

21          MS. GOLDBERG:  I will have it to you shortly.  I'm

22  just deleting all of my highlighting.

23          THE COURT:  That's okay.  I appreciate that.

24          That's great.  So let me just take a couple of steps

25  back, and forgive me if I have just missed it, it is a long

1  docket, but I have looked a little bit, and my law clerk looked

2  as well.  We could not find it.  And is there an actual case

3  management order governing discovery on the claims in the first

4  amended complaint or class certification claims or whatever,

5  whatever universe of discovery has been permitted to go forward,

6  is there a governing schedule somewhere that I have missed?

7            MS. GOLDBERG:  No.  I don't believe so.

8            THE COURT:  Okay.  Well, at least I haven't missed it.

9  I'm glad to hear that.

10            MS. GOLDBERG:  It's been rolling discovery, Your

11  Honor, because, you know, there's so much of it, and the Court

12  has been letting us, you know, get stuff out and hasn't set any

13  hard and fast deadlines.  Except at the beginning; I think at

14  the beginning we had one case management plan.

15            THE COURT:  Okay.  And so are the parties operating

16  under any current -- and, again, I appreciate that it sounds

17  like a tremendous amount of work has happened already in this

18  case.  I do appreciate the difficulty of doing large-scale

19  document production under the current work circumstances that so

20  many attorneys are facing these days.  So none of this is

21  intended as a criticism at all.  I'm really just trying to

22  understand.

23            Are the parties operating with any sort of deadlines

24  by which document production is supposed to be completed?  I

25  mean, outstanding discovery, of course; setting aside this issue

1  of whether further discovery will be permitted while the motion

2  practice proceeds?

3          MS. GOLDBERG:  Not to my knowledge.  This is Jane

4  Goldberg, Your Honor.  Not to my knowledge.  We have worked with

5  the plaintiffs and been getting them productions, and that's

6  something we would like to discuss with them, you know, staging

7  production so that we can have some kind of a better scheduling

8  of them so that they are not left hanging and we are not left,

9  you know, not knowing --

10          THE COURT:  Yes.

11          MS. GOLDBERG:  -- things to do.

12          (Cross-talk)

13          THE COURT:  I think that would probably be helpful for

14  everybody.

15          MS. GOLDBERG:  Yeah, I think that would be worth a

16  conversation with plaintiffs' counsel if that's agreeable to

17  them, of course.

18          THE COURT:  Okay.  So that's good to know.

19          And let me ask as well, you mentioned that Judge

20  Seibel has encouraged the parties to discuss settlement.  It

21  sounds like there has been some overture in that direction or

22  some preliminary discussion.  I will just put this out there for

23  your consideration:  If at some point you believe it would be

24  helpful to enlist the Court's assistance with that process, you

25  should send me a letter and let me know, and I would be happy to

1    do that.

2            Of course, as you also know, you could be referred to

3    mediation.  I understand this is a somewhat unusual type of

4    negotiation, and there are a lot of different moving parts to

5    it.  It doesn't fit neatly within any of the mediation

6    categories perhaps, but that doesn't mean that either some

7    assistance from the Court or from a neutral mediator might not

8    be of some value.

9            Again, I'm not trying to foist that on you at this

10   point, but I just -- I would encourage you to think about

11   whether that will be helpful, especially if you are able to make

12   some progress but then reach some sort of impasse, it's

13   certainly an option to consider, and you should keep me posted

14   if that's something you would like the Court's help with.

15           MS. GOLDBERG:  Thank you, Your Honor.  We appreciate

16   that.

17           MS. LANDRISCINA:  Plaintiffs appreciate that as well.

18           THE COURT:  Okay.  Well, it sounds like there's some

19   things that need to be sorted out here, and I think -- I

20   apologize that we are not able to do that entirely right now.

21   My hope is to be able to resolve as many disputes as possible in

22   the moment so that we don't create any backlogs that are as a

23   result of the Court's work or part of the case, but here I

24   really don't want to jump in without having a bit more of an

25   understanding of what's happened previously, including in the

1    conference with Judge Seibel.  So I will take a look at that

2    transcript.  I will speak to Judge Seibel as needed.  I imagine

3    that since you already have a conference with Judge Seibel

4    scheduled for next week, I imagine that she might be inclined to

5    clarify or provide further direction about this herself at the

6    conference next week, but as I said, I will discuss that with

7    her.

8            In the meantime, what I would like to do is just have

9    a control date on the calendar for this case, maybe just about

10   six weeks from now, so before the holidays so we can take stock

11   of where things stand, and it may be -- again, after I look at

12   the transcript and speak to Judge Seibel, it may be that we

13   might want you to come back sooner than that, but for now I

14   would like to put something in for six weeks from now, maybe we

15   can do it, and depending on the parties' availability that week

16   of December 14th, let me start by proposing six weeks from

17   today, which would be December 16th.  That day happens to be

18   wide open on my calendar.

19           MS. GOLDBERG:  That's fine with me, Your Honor.

20           MS. LANDRISCINA:  That works for plaintiffs, Your

21   Honor.

22           THE COURT:  Okay.  Why don't we -- then let's try to

23   do morning of the 16th.  Let's say 10:00 a.m. if that's okay

24   with everybody?

25           MS. GOLDBERG:  Yes, sir.

1          MS. LANDRISCINA:  Yes.

2          THE COURT:  Let's put this down for a status

3   conference at 10:00 a.m. on December 16th, and by then we will

4   have more information from Judge Seibel, and I will have had a

5   chance to see the transcript.  We may be able to provide further

6   clarity on exactly what should happen between now and then.  At

7   a minimum, we can take stock of where things are, and I think

8   give some serious thought to actually trying to have a schedule.

9          Again, I recognize that there is a lot going on here

10  from a discovery standpoint, but in the interests of trying to

11  corral it a little bit, and put it on a bit more of a track, it

12  might be useful to actually put some dates down.  They don't

13  have to be carved in stone, but it might be useful to have some

14  targets to try to keep things on some sort of plan.

15         So that's -- and you know, I may provide some further

16  direction on that before the conference so that I can encourage

17  the parties to put their heads together and think about what

18  might be useful and productive before then.

19         But anyway, we will see what happens in the next week

20  or two, and you know, you can keep an eye on ECF if there is

21  further instructions for things, steps that the Court would like

22  you to take before we reconvene on December 16th.

23         Okay.  So for now, I think I understand the issues.

24  The immediate issue will be with respect to whether discovery

25  second amended -- the claims in the second amended complaint,

1  the new claims in the second amended complaint can proceed, and

2  that issue is in need of resolution.

3          Other than that, Ms. Landriscina, is there -- and I

4  know that -- other than that, there is plenty there as we have

5  just been discussing for the last half hour, but other than the

6  issue that has been, I think, squarely presented now,

7  Ms. Landriscina, is there anything else that requires immediate

8  attention?

9          MS. LANDRISCINA:  There is nothing further from

10  plaintiffs, Your Honor.  Thank you.

11          THE COURT:  Okay.  And, Ms. Goldberg?

12          MS. GOLDBERG:  I don't believe so, Your Honor.

13          THE COURT:  Okay.  Well, thank you all for giving me

14  this overview and walking through these issues.  We will plan to

15  reconvene on December 16th at 10:00 a.m.  I know you have Judge

16  Seibel next week.  I'm sure you will have some additional

17  guidance from her, and until then, we will stand adjourned.

18          MS. GOLDBERG:  Thank you, Your Honor.

19          MS. LANDRISCINA:  Thank you, Your Honor.

20          THE COURT:  Okay.  Thanks, everybody.

21

22

23

24

25