1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ----------------------------------x
   M.G., P.C., C.J., M.J., J.R., and
3  D.R., individually and on,

4          Plaintiffs,

5      -against-                    19 Civ. 639(CS)(AEK)

6  ANDREW CUOMO, in his official
   capacity as the Governor of the
7  State of New York, et al.,

8          Defendants.
   ----------------------------------x
9

10                         United States Courthouse
                           White Plains, New York
11
                           December 16, 2020
12

13
                    THE HONORABLE ANDREW E. KRAUSE,
14                         United States Magistrate Judge

15

16

17  DISABILITY RIGHTS NEW YORK
           Attorneys for Plaintiffs
18         25 Chapel Street, Suite 1005
           Brooklyn, New York 11201
19  BY:  JOSHUA M. ROSENTHAL

20

21  NEW YORK STATE OFFICE of the ATTORNEY GENERAL
           Attorneys for Defendants
22         28 Liberty Street, 15th Floor
           New York, New York 10005
23  BY:  JANE R. GOLDBERG
           JEB HARBEN

24

25  * Proceedings recorded via digital recording device *

              Angela O'Donnell - Official Court Reporter
                         914-390-4025

1          THE DEPUTY CLERK:  Good morning, this is the matter

2     of M.G., et al. v Cuomo, 19cv639, the Honorable Andrew Krause

3     presiding.

4          Counsel, state your name for the record, starting

5     with plaintiffs' counsel.

6          MR. ROSENTHAL:  Good morning, Joshua Rosenthal from

7     Disability Rights New York for plaintiff.

8          THE COURT:  Good morning, Mr. Rosenthal.

9          MR. ROSENTHAL:  Good morning, your Honor.

10         THE COURT:  Do we have counsel for defendants?

11         MS. GOLDBERG:  Good morning, your Honor.  This is

12    Jane Goldberg for the defendants and Jeb Harben is also on the

13    line for the defendants.

14         THE COURT:  Okay, good morning, Ms. Goldberg.  Good

15    morning, Mr. Harben.

16         Okay, thank you all for joining the call this

17    morning.  I hope everybody is well.  We're here for a status

18    conference to talk about discovery, and I want to take stock of

19    where things are.  I understand that you had a pre-motion

20    conference with Judge Seibel a few weeks ago, and I understand

21    from Judge Seibel that that conference sort of cleared up one

22    of the issues that we had discussed at our last conference,

23    which is whether there would be discovery on the second amended

24    complaint, the new claims in the second amended complaint while

25    the defendants' motion to dismiss is pending.  I understand

1    from Judge Seibel that she would not permit pre-answer

2    discovery as to the discharge class at this point, although

3    there may be some room for having a further discussion about

4    that if the parties were to finish all the document discovery

5    and written discovery on the original claims, or the claims in

6    the first amended complaint, and if you were at the point of

7    depositions but it makes sense to do further paper discovery

8    and written discovery on the second amended complaint claims

9    before depositions so as not to have duplicative appearances

10   from the various witnesses.  But that seems a little bit

11   further down the line.

12          My goal for today is for us to actually put in place

13   a real schedule for completion of discovery on the current

14   paper and written discovery on the first amended complaint.  I

15   understand from our last conference that discovery here is

16   voluminous.  I also understand that the parties have been

17   working together cooperatively on that, which I very much

18   appreciate, and I do understand that given the ongoing public

19   health situation and the fact that many people are working from

20   home that large scale document review is challenging.  I do

21   fully appreciate all of that.

22          That said, I think the only chance that we actually

23   get discovery done is if we have a schedule.  That doesn't mean

24   that there can't be adjustments to the schedule as needed, but

25   I think it really is helpful for everyone involved to have a

1    schedule, to have goals to work towards and to have a framework

2    for getting this case moving toward completion ideally.

3         So that's my goal for today is to talk with both

4    sides and figure out what the schedule should be.  Certainly

5    open to other topics that you may have, and we can talk about

6    all of those things.  But why don't we just start off by giving

7    me an update on where things stand with discovery at present.

8         Mr. Rosenthal, let's start with you.

9         MR. ROSENTHAL:  Thank you, your Honor.  And

10   plaintiffs actually had one issue to address, really just one

11   issue today which actually concerned that discovery scheduling

12   particularly around the the select set of discovery requests

13   that are outstanding.  These, if I can -- some context perhaps

14   would be helpful.

15        Plaintiffs had served their initial discovery

16   requests in June of 2019, and defendants had raised concerns

17   regarding the burden of responding and at times the full scope

18   of those requests.  So to streamline discovery, plaintiffs had

19   engaged in a prioritization of certain discovery requests that

20   we felt were most relevant for class certification so we could

21   move the process forward.  We did that in February, and we

22   since agreed to further (indiscernible).

23        That being said, 18 months after first serving those

24   requests, a good amount of that discovery still remains

25   outstanding.

1          As we discussed at the last conference, defendants

2    have been making some rolling productions.  The parties have

3    been able to successfully meet and confer on a number of

4    issues, but plaintiffs have been raising repeatedly the issue

5    of when even just the production of the priority discovery

6    would be completed.

7          Earlier this month plaintiffs had proposed very

8    specific, staggered deadlines over the first three months of

9    2021 but emphasized their willingness to discuss the deadlines,

10   but we understand now from defendants that they would need

11   until next month to be able to have a better sense of the

12   timing for just the priority discovery.

13         So we do hope to avoid motion practice, but we are

14   eager to begin setting firm deadlines just on the priority, the

15   select priority discovery in particular (indiscernible) on the

16   other outstanding discovery items, and again including quite a

17   number of outstanding items from the first set of requests for

18   production, interrogatories that include where defendants had

19   committed to produce discovery and so that plaintiffs can begin

20   preparing for depositions, preparing for class certification,

21   and determining if additional discovery requests are necessary.

22         So we did want to raise that with the Court today.

23   We're still going to discuss with defendants those proposed

24   deadlines but we do need -- we do believe that there should be

25   some end date for the production of priority discovery.

1          THE COURT:  Thank you, Mr. Rosenthal.  Before I turn

2    to you, Ms. Goldberg, obviously, I agree with that point that

3    Mr. Rosenthal just made, and that's how I started the

4    conference and that that's my objective here today is to set

5    some firm deadlines and move towards those so that the case can

6    move along.

7          Mr. Rosenthal, you cut out a little bit towards the

8    very end of what you were saying.  I just wanted to make sure I

9    was clear.  I understand about the priority discovery, but

10   towards the end you sort of pivoted.  It sounded like you were

11   saying something about adding in some of the other requests

12   from the original set of requests for production and

13   interrogatories, but I didn't quite understand.  You spoke

14   clearly, it's just the phone line was cutting out for a second,

15   so I didn't quite understand what the plaintiffs' position was

16   with respect to additional requests and interrogatories if you

17   were suggesting that some of those should be added into the

18   schedule now or you were just reserving your right with respect

19   to those in the future.

20         MR. ROSENTHAL:  I apologize, your Honor.  I'm sorry

21   about the connection.  If you can hear me now.

22         THE COURT:  Yes, I can.  And I was able to hear

23   90 percent of what you said earlier, it was just a minute there

24   at the end where I lost you a little bit.

25         MR. ROSENTHAL:  Yes.  So there were, of the initial

1    requests for production and interrogatories, plaintiffs had

2    really asked for production first as to just those select set

3    of priority discovery requests, but there were numerous other

4    requests where plaintiffs were still seeking production, we

5    just hadn't prioritized them because we didn't think that was

6    as important to move the parties forward to class

7    certification.  That being said, we still feel the need to

8    receive that discovery and possibly meet and confer, if

9    necessary, down the line about any scope of discovery.  We hope

10   we can do so successfully.  So plaintiffs would feel totally --

11   not only to have a schedule that would allow us to continue to

12   seek that remaining discovery, which there is a fair amount,

13   but also have some opportunities to then serve additional

14   discovery requests if that becomes necessary upon having

15   reviewed both the outstanding discovery and conducting

16   depositions.

17          THE COURT:  Thank you, Mr. Rosenthal.

18          Well let me hear from Ms. Goldberg first about where

19   things stand from the defendants' perspective, and then we can

20   figure out what makes sense in terms of scheduling.

21          I'll just tell you my initial inclination here is

22   that we should probably take this in pieces.  It might not make

23   sense to put together a schedule that provides for every single

24   bit of discovery to be completed because it sounds as though

25   there are going to be a number of moving pieces and I'm not

1    sure it's an efficient use of time to set deadlines for

2    everything when either there -- there are going to be some

3    moving targets, I think, in this first a piece for the

4    defendants.  But let me think about that a little bit as I hear

5    from Ms. Goldberg and we can talk about that further.

6              Ms. Goldberg.

7              MS. GOLDBERG:  Good morning, your Honor.  Thank you

8    so much.  I may need to bring Mr. Harben into this as well,

9    because I was not on the call yesterday for the entire time.

10             In the first place, going back to the beginning of

11   time plaintiffs served us with 75 document requests, most of

12   which are at least half a page long.  So it wasn't like they

13   were asking for 75 documents, they were asking for many, many

14   hundreds of different kinds of documents.

15             We responded to all of those requests, we objected to

16   many of those requests, notwithstanding which we have said that

17   we would produce documents to some of the requests which we

18   have interposed objections.  We have been working

19   cooperatively.

20             We did say yesterday that we would have a better

21   sense after our motion is filed, which is due January 8th, and

22   you know, there are only two of us working on this case, with

23   Mr. Sansolo participating a lot lately.  So the document

24   requests themselves are extremely voluminous and they seem to

25   lead to more document requests.  Plus we have obligations to

1    supplement many of the things that we've already produced more

2    than once, for example, the named plaintiff's records to the

3    extent we still have them.

4         We are -- we did say yesterday that we might have a

5    better sense of when we could complete the priority discovery.

6    It's not something we've had an opportunity to discuss with our

7    clients yet, but I think realistically we would be looking

8    further out into the spring, sometime by mid-May to complete

9    this.  I think there are a lot of considerations here given the

10   present state of things with us working at home, our IT people

11   working at -- I mean everybody who might be involved in the

12   production.  And we're talking -- and we've had a considerable

13   amount of time spent in negotiating search terms and trying to

14   make things manageable, and plaintiffs have been very

15   cooperative about that.  But needless to say, there still have

16   been thousands of documents that have to be reviewed and there

17   are only two us -- well, two of us part-time, and two-part time

18   paralegals.  Part-time in the sense that we all have other work

19   to do, your Honor, which is not the plaintiffs' problem, of

20   course, but we have staffing issues, we have resource issues,

21   and we need more time perhaps than maybe another -- this is a

22   very big case and it has -- it seems to expand exponentially

23   every time we turn around, even with respect to the original

24   class.

25         The other track we are on, aside from our motion to

Angela O'Donnell - Official Court Reporter
914-390-4025

1  dismiss the second amended complaint of course is that we have

2  been discussing settlement.  We've had one conference I think

3  last week with plaintiffs, and even that conference engendered

4  more informal discovery requests by plaintiff, things that

5  we're willing to look into for them to try and clarify certain

6  questions that they have.

7          So that said, I think, you know, if a schedule were

8  going to be set, we ask it be pushed out further than the

9  plaintiffs have suggested, which is some of them in February,

10 some in January, some March.  You know, just the first few

11 months of the year.

12         I think realistically with the holidays coming up,

13 which I don't think we're going anywhere necessarily, but

14 realistically expecting people that we rely on, including our

15 clients and our support staff, our IT staff, to help us produce

16 these documents, that it would be very unlikely that we would

17 have another production done before we finish our motion to

18 dismiss papers because I have to focus on that.  I'm not going

19 to be reviewing very many documents for the next few weeks.

20         So we would ask that any schedule be set would be set

21 further out into the spring, and in the meantime we could

22 hopefully have some more productive conversations around

23 settlement of these claims, which has to do with prolonged

24 incarceration claims and which have engendered some issues

25 internally between the parties that have to be discussed

1  further.

2          Thank you, your Honor.

3          Jeb, did you have anything to add?

4          MR. HARBEN:  Just a reminder that we -- I believe the

5  production to date is over 100,000 pages and I don't know how

6  many hundreds of thousands of pages were viewed to get to that

7  100,000.  It's not like there's been a sparse discovery to

8  date, your Honor.  I think your Honor understood that

9  (indiscernible) voluminous.  And it's just very time consuming.

10  There's a lot of -- especially when it comes to nonparties,

11  there's a lot of HIPAA issues and privacy issues that just make

12  the review quite time consuming.  So that's --

13          MS. GOLDBERG:  That's true.

14          MR. HARBEN:  We really have to read every document

15  line-by-line.  There's references -- I don't want to belabor

16  the point, but it could literally take a day to go through 200

17  documents, or day and a half.  It could take longer than that,

18  I mean --

19          MS. GOLDBERG:  That's true.

20          THE COURT:  Thank you, Mr. Goldberg.  Thank you --

21  Ms. Goldberg, and thank you Mr. Harben, I appreciate that

22  color, and I do appreciate the difficulty, again, as I

23  mentioned at the outset, I appreciate the difficulty of trying

24  to review large volumes of documents remotely and without the

25  normal types of support that you would have if you were working

                Angela O'Donnell - Official Court Reporter
                              914-390-4025

1    in the office trying to pour through this.  And I also

2    recognize that even if you were in the office with the normal

3    types of support, there are challenges with this particular set

4    of materials.

5         That said, I do we think we need to have a schedule,

6    and I think one way to do this would be to have just a date at

7    the end to complete all production, but I don't think that

8    that's particularly useful, especially given that you have so

9    many competing pressures.  I think it will be helpful to have

10   some interim deadlines along the way.  And I guess for me to

11   understand how best to go about slicing it up, it would be

12   helpful to know a little bit more about the volume of what's

13   outstanding and the particular types of requests.

14        Also, I mean, it sounds again as though you've had

15   many discussions about these things but I just -- it is

16   important that I at least ask this question, and I'll turn to

17   you, Mr. Rosenthal, for this one.  It does sound as though

18   there is a large volume of material to be worked through.  Is

19   there any further narrowing of the requests that can be done at

20   this point from the plaintiffs' perspective or do you really

21   feel like the issues have been addressed to the point through

22   the negotiations where it's just a matter of pouring through

23   the review at this point?

24        MR. ROSENTHAL:  Thank you, your Honor.  I do -- we do

25   believe that there could be further narrowing.  There's some

1    discovery requests that plaintiffs really just do need to stand

2    on, and we need production.  But even when the parties met and

3    conferred yesterday, I know defendants raised some concerns

4    about the burdens of (indiscernible) that are called

5    chronological history from the DOCCS system and had requested

6    that we consider some narrowing of just how much would have to

7    be reviewed within those.  So just one example, plaintiffs are

8    now, after speaking with defendants yesterday, considering that

9    request, because we do believe that there's more narrowing and

10   more work that the parties could do to help streamline, again,

11   these priority discovery requests.  You know plaintiffs

12   disagree, I guess, that these requests have led to more

13   requests, but we do think that there's more narrowing that can

14   be done.

15          Defendants did produce the first batch of requested

16   ESI earlier this week.  Plaintiffs haven't had a chance yet to

17   review that.  I think Ms. Goldberg may have said earlier, the

18   parties have been able to reach agreement around that.  I think

19   that's streamlined the process considerably in terms of getting

20   that discovery out.

21          So plaintiffs are committed that if there's remaining

22   concerns about the scope of some of these requests, we're very

23   happy to sit down and discuss those further.

24          I will say, if we're discussing a deadline for the

25   completion of the priority discovery requests, which again

1  plaintiffs felt necessary to move forward to class

2  certification for the general class (indiscernible).  I also

3  believe that we probably could reach an agreement on a deadline

4  that fell either in April or perhaps early May.  So in terms of

5  setting these interim deadlines moving the case forward, I do

6  believe that would be workable.

7       THE COURT:  Okay, well that sounds promising.  I

8  guess I'm of two minds.  I mean, on the one hand, we could try

9  to hash out all of the interim deadlines now, which would

10  require you educating me to some extent on what interim

11  deadlines would make sense and why, and I'm more than happy to

12  do that.  At the same time, it might make more sense, since you

13  all are very familiar with these issues, of course, having

14  worked on them for years, for you to have another meet and

15  confer at some point in the next two weeks and propose either a

16  joint schedule or competing schedules and then we could come

17  back together for a conference in early January to hash out the

18  specifics, because again, I am committed to getting a schedule

19  in place at least for now starting with the completion of the

20  priority discovery requests.  It sounds as though if we're

21  talking about -- it sounds as though there may be some

22  agreement, give or take a few weeks, that completion of

23  priority discovery by April or early May may be a workable

24  solution, and then if we're working backwards from there a

25  matter of setting interim deadlines along the way for

1    completion of certain requests by certain dates or however it

2    might be structured.

3            If Mr. Rosenthal is saying that April or early May

4    would be feasible from the plaintiffs' perspective and

5    Mr. Goldberg is saying mid-May could be a workable deadline

6    from the defendants' perspective, that doesn't seem like you're

7    too far off, and as far as putting together dates along the

8    way, interim deadlines along the way with that as an end for

9    priority discovery, it seems like we are in a ballpark that is

10   achievable.

11           So my inclination here is, and I recognize the

12   defendants have a motion due on January 8th, but I don't want

13   to delay the meet and confer process until after the motion

14   because I think you can take an hour or two between now and

15   then, even with the holidays, to kind of work through some

16   deadline issues and submit a joint proposal or separate

17   proposals.  Those proposals don't need to be extremely

18   detailed, just enough, if they're competing proposals, for me

19   to be able to evaluate them and make a determination.

20           I think if we wait until after January 8th, then we

21   lose the next few weeks and lose another week or two in January

22   talking about the schedule and negotiating that.  In the

23   interest of moving things forward, it's my inclination --

24   again, I'm open to just spending the next half hour, 45 minutes

25   on the phone sorting this through with you, I'm just not sure

1    that's the most efficient way to do it.

2              Ms. Goldberg, what's your preference?

3              MS. GOLDBERG:  Yes.  Thank you, your Honor.  I think,

4    I think that we could have another meet and confer with the

5    plaintiffs.  You know, we're running into holidays and things,

6    but I don't see any reason why we couldn't do that.  We don't

7    seem to be far apart on that if Mr. Rosenthal's representation

8    is correct.

9              I would like -- may I just add one comment about the

10   discovery in general that I think Mr. Harben alluded to having

11   to do with the chronology.  There were two requests on the

12   chronology to which we interposed objections, and I know the

13   plaintiffs are frustrated that we haven't produced documents.

14   These chronologies are extremely long, some of these are people

15   who, chronologies of people who have been in and out of prison

16   many times, so they have very long chronologies, and the

17   request, even though we've objected and said we don't -- not

18   relevant to this lawsuit, Mr. Harben has been reviewing them.

19   They're more time consuming to review than a lot of the other

20   documents.  They all concern serious privacy issues, because

21   very often nonparties, you know, family members are referred to

22   or other kind of confidential information has to be redacted.

23   But I just wanted to bring that out because it's not a small

24   point.  I know that plaintiffs seem very frustrated, but in the

25   meantime, and I'm not asking them to go to court to litigate

1    the issue because we said we're willing to do it, but this is

2    something that takes a tremendous amount of time.

3        That said, I don't see any reason why we can't have

4    another meet and confer and try to work out a joint schedule

5    for the production of discovery at issue right now, which is

6    the priority discovery.

7        And in the meantime, you know, we are trying to

8    resolve the first amended complaint, we would like to, and so

9    you know, hopefully have another settlement meeting at some

10    point after the beginning of the year.

11        THE COURT:  Okay.  Thank you, Ms. Goldberg.

12        Look, I fully recognize and appreciate that this type

13    of case is not an ordinary case.  This is not a situation

14    involving an alleged excessive use of force by one officer

15    against one inmate at one facility on one day.  This is not

16    that case.  This is more complicated and difficult to litigate

17    on both sides.  I do appreciate that.  And I don't want anyone

18    to have the impression that I take that lightly.  You know,

19    from my position trying to put together a schedule here, I'm

20    just trying to get things on track towards, you know, and end

21    point, but I do recognize a tremendous amount of work has gone

22    into this on both sides.

23        Let me just say on the point, and Mr. Rosenthal, you

24    can respond if you want to, but I don't think it's totally

25    necessary, but let me say in response to the point about the

1    chronologies, it does sound as thought there are any number of

2    issues here that the parties have been working through, and it

3    may be that we are getting close as we're putting a schedule in

4    place here for the next couple of months, it may be that we're

5    getting close to the need to tee up some of these things for

6    resolution by the Court.  And I'm prepared to resolve those

7    matters if that's where you have arrived at in terms of an

8    impasse.  It doesn't sound like you're there quite yet, which

9    is fine, but I'll just say that, if Mr. Harben is spending a

10   tremendous amount of time reviewing these chronologies, it's

11   worth including as part of this next discussion, to the extent

12   you haven't already, whether it makes sense and is most

13   efficient in terms of getting records to the plaintiff as

14   promptly as possible, whether it makes sense to defer some of

15   that review so that other things can be prioritized or whether

16   it makes sense to continue pushing forward with it.

17          I don't know enough about the question, and I don't

18   know enough about what's important to the plaintiff to know

19   whether that's, from the plaintiffs' perspective, the most

20   efficient use of the limited resources the Attorney General's

21   Office has to devote to this case.

22          Again, I think that's, in thinking about scheduling

23   and thinking about interim deadlines, that's a topic that's

24   worth including as well in your meet and confer.  And, again,

25   if there needs to be some involvement from the Court, then I'm

1    happy to be involved in that.

2          So let's do this, I think it makes sense to have the

3    parties meet and confer and submit a letter by I'm going to say

4    December 30th, that's two weeks from today, I realize that

5    there are holidays in between, of course, but to submit a joint

6    letter by December 30th with a proposed schedule for the

7    completion of the discovery on the priority discovery items.

8    Based on what has been said today, my expectation will be that

9    that proposed date will be sometime in late April, early May,

10   mid-May.  Those are the timeframes that have been discussed

11   today.  It sounds as though there's some general willingness to

12   agree on something in that ballpark.  Obviously earlier is

13   always fine with the Court, but I recognize that that's

14   something that the parties seem to think is perhaps a workable

15   compromise.

16          I do expect that the proposed schedule will include

17   interim deadlines as well.  So it won't simply say everything

18   to be completed by April 30th or May 5th, or whatever date you

19   choose, but there will be interim target dates as well for the

20   defendants to produce tranches of documents whether that's a

21   certain number of pages or whether that's to complete responses

22   to particular requests, there are any number of ways to slice

23   it.  You know, those are two examples.  Right?  I mean, there

24   could just be a simple volume deadline, volume trigger for

25   these particular dates, or there could be deadlines based on

 1   particular requests or particular categories of documents or

 2   documents pertaining to particular plaintiffs.

 3          Again, since you all have so much more familiarity

 4   with the specific requests and the specific materials, I'll

 5   leave that for you to discuss with the reminder that if you

 6   can't agree on it, you can put separate letters together and

 7   explain to me why your particular position should be the way

 8   that we proceed.

 9          So hopefully you can submit -- let me put it this

10   way.  Hopefully you can submit a joint letter on December 30th

11   with a proposed schedule.  If you're not able to submit a joint

12   letter, then you should submit letters that lay out your

13   respective wishes, at least with respect to the issues in

14   dispute.

15          So it may be that you are able to agree on a final

16   deadline but not interim deadline.  It may be you're able to

17   agree on a final deadline and a couple of the interim deadlines

18   but not all of the interim deadlines.  I recognize there could

19   be any number of ways that this could play out over the next

20   two weeks, and I'm open to receiving whatever updates you are

21   able to (indiscernible) hopefully with much agreement as

22   possible, but if not, whatever disagreements you have can then

23   be teed up and we'll have a framework for our discussion at our

24   next status conference.

25          Does that make sense in terms of what I expect to

1    receive on the 30th?  Starting with you, Mr. Rosenthal.

2              MR. ROSENTHAL:  It does, your Honor.  And plaintiff

3    believes that this will very much help move discovery forward.

4    We have been, and I will say at our next meet and confer will

5    continue to be open to hearing concerns of how to, if not, I

6    think (indiscernible) unfortunately at least very much reduce

7    any issues that the parties would then have to approach the

8    Court about with a lot of the outstanding discovery.  So we

9    will continue to hear defendants' concerns and be open to

10   crafting workable limits.

11             THE COURT:  Thank you, Mr. Rosenthal.

12             And Ms. Goldberg, you're clear on --

13             MS. GOLDBERG:  Yes, I did hear your Honor.  I would

14   have preferred if it had been pushed past our briefing

15   deadline.  I appreciate the Court's concern.  I'm sure the

16   Court is understanding that I can only work on one thing at a

17   time, unfortunately.  Although sometimes it feels like more

18   than one thing at a time, but you know --

19             THE COURT:  I'm quite sure, Ms. Goldberg, you

20   frequently work on more than one thing at a time.

21             MS. GOLDBERG:  Yes.  In any event, we will,

22   obviously, have another phone conference with the plaintiffs

23   and prepare a schedule, either our own or with the plaintiffs,

24   if we can come to some agreement.

25             THE COURT:  Thank you, Ms. Goldberg.

1           Here's what I'm going to do.  I'm going to -- so

2    we'll have those, either that letter or those letters submitted

3    by December 30th.  I'm going to set a date for a conference for

4    us after the motion to dismiss is due.  So we won't set it for

5    the first week of January.  The motion to dismiss is due you

6    said is January 8; is that right, Ms. Goldberg?

7           MS. GOLDBERG:  Yes.  That's correct, your Honor.

8           THE COURT:  Okay. so we'll set a conference for

9    shortly after.  I'm going to look at the calendar in a second.

10   And if there are issues to resolve, whichever issues you tee up

11   in that December 30th submission, we will resolve them at the

12   next conference, so you should be prepared to discuss those and

13   have your arguments ready.  I'll hear from the parties,

14   certainly.  Because those letters should be no longer than

15   three pages each, the letters that you submit on December 30th,

16   if you have to submit competing letters.  Keep them nice and

17   short, and tee up the issues and we'll address them through

18   further discussion, if necessary.

19          If it turns out that the parties have agreement on a

20   schedule for the completion of discovery --

21          Did we -- I think we just lost somebody there --

22   sounded like we lost somebody.

23          Mr. Rosenthal, do we still have you?

24          MR. ROSENTHAL:  I'm still on the line, your Honor.

25          THE COURT:  Ms. Goldberg?

1              MS. GOLDBERG:  Yes, I'm here, your Honor.

2              THE COURT:  Okay.

3              Mr. Harben?

4              (No response)

5              THE COURT:  Okay, we may have lost Mr. Harben.

6              MR. HARBEN:  I'm here, I'm here, I'm here.

7              THE COURT:  Oh, okay.  We may have lost someone from

8    my staff who has listening in.  So as long as we have the

9    parties, then we can continue.

10             As I said, we'll keep those letters to three pages.

11   Any disputes that you have to raise by letter on the 30th, and

12   then I will address them at our next conference.  If as I

13   started to say, if it turns out that you were able to submit a

14   joint proposal that I can just so order, then we can adjourn

15   the conference in January and we'll set another conference date

16   sometime probably a month later to check in on the status of

17   the production.

18             If you do submit a joint letter with a proposed

19   schedule on December 30th, I'll just ask that you include in

20   that letter a reminder that we -- and a request to adjourn the

21   mid-January conference to some date in February.  We'll have a

22   February date to check in on progress and on the interim

23   deadlines, but it won't be necessary to reconvene in

24   mid-January if you have been able to work out a schedule.

25             MS. GOLDBERG:  Okay.

1          THE COURT:  Okay?  I'm looking at the week of

2     January 11th, I'm looking right now at January 14th at

3     3:00 p.m.  Is that a time that would work for you,

4     Mr. Rosenthal?

5          MR. ROSENTHAL:  That would, your Honor.  Thank you.

6          THE COURT:  Okay.

7          Ms. Goldberg and Mr. Harben, January 14th at

8     3:00 p.m.?

9          MS. GOLDBERG:  That's fine for me, your Honor.

10         MR. HARBEN:  That's fine, your Honor.

11         THE COURT:  Very good.  All right.  So we'll put this

12    on for January 14th at 3:00 p.m. to resolve any outstanding

13    matters with respect to the discovery schedule proposal that

14    you're going to submit on December 30th, and if there's nothing

15    for us to discuss at that time because you've been able to work

16    out at least this set of deadlines, then we'll adjourn that

17    conference until sometime in February where we can check in on

18    the progress of the discovery.

19         Let me just turn back.  You've mentioned now,

20    Ms. Goldberg, a couple of times that you are having some

21    settlement discussions.  I don't remember if I mentioned this

22    at the last conference or not, I may have, but if there comes a

23    time when the parties think it would be helpful to have the

24    Court be involved in any way in those settlement discussions

25    and sort of mediation type capacity, I would be more than happy

1    to do that.  I realize in a case like this, again, it would not

2    be ordinary type of settlement conference where the parties

3    submit to me two-page letters laying out their settlement

4    positions and were haggling over just a matter of money, this

5    would be something more involved than that, but I'd be happy to

6    be involved in it if the parties think that that would be

7    worthwhile.  I'm not trying to impose myself on you in any way,

8    but if that would be something that you think might help cut

9    through any of your impasses, or if it would just be helpful to

10   have a fresh perspective on any of these things, that is

11   something that I would be more than happy to do if the parties

12   think it could be productive.

13          So you don't need to comment on that now, but you can

14   think about that more as you're progressing in these

15   negotiations.  I've been part of negotiations like this in

16   different contexts in my career as a lawyer, and I realize that

17   sometimes there are sticking points where your agreement on

18   this might involve 20 different points or more, and this isn't

19   going to be just a simple, straightforward settlement agreement

20   because you have many different things to hash out.  But,

21   again, in terms of the potential involvement of the court, if

22   even if it were to be something you think it would be useful to

23   have my input or perspective on one or two of those issues, if

24   that would sort of free up the parties to then move on to other

25   issues, I'm happy to do that, too.

```
 1          So I encourage you to just think creatively about

 2    that, and we can have another discussion about that whenever

 3    you think it's necessary or helpful.  But keep in mind that

 4    that is something I can do if the parties would want that, and

 5    that assistance can take a lot of different forms.  The most

 6    traditional form is we come in and we try to work out the

 7    entire settlement, but I realize that may not be the way to

 8    approach it in this particular case because of the different

 9    moving pieces that would be necessary to resolve any part of

10    the case.

11          So anyway, I just lay that out there for your

12    consideration, something you can talk about, something we can

13    talk about in the future.  But I just wanted to mention that so

14    you can give it some thought over the next few weeks.

15          MS. GOLDBERG:  Thank you, your Honor.

16          THE COURT:  Mr. Rosenthal, is there anything else we

17    should address today from the plaintiffs' perspective.

18          MR. ROSENTHAL:  Nothing else from the plaintiffs'

19    side.  Thank you, your Honor.

20          THE COURT:  Ms. Goldberg, Mr. Harben, anything else

21    for the defendants for today?

22          MS. GOLDBERG:  Not from me, your Honor.  Thank you.

23          Jeb?

24          MR. HARBEN:  No, your Honor.

25          THE COURT:  Well then let me take this opportunity to
```

1   wish all of you a happy and healthy and safe holiday season in

2   whatever form that is going to take for everybody this year.

3   Despite all the limitations, I hope everyone can find some joy

4   in what's left of this year, and we can all look forward to a

5   happier and healthier 2021 for everybody.

6          And so I will look forward to receiving your letters

7   on December 30th, letter or letters, on December 30th and

8   reconvening again on January 14th, if necessary, or in the

9   alternative, some point into February.

10          So we'll be adjourned for today.  Thank you all.

11   Have a good day and be safe in the weather today as well.

12          MS. GOLDBERG:  Thank you, your Honor.

13          MR. HARBEN:  Thank you.

14          MR. ROSENTHAL:  Thank you, your Honor.

15          (Proceedings concluded)

16   CERTIFICATE:  I hereby certify that the foregoing is a true and
     accurate transcript, to the best of my skill and ability, from
17   my stenographic notes of this proceeding.
                 ------------------------------------
18   Angela A. O'Donnell, RPR,Official Court Reporter, USDC, SDNY

19

20

21

22

23

24

25