# EXHIBIT D

| | | | |
|---|---|---|---|
| **NEW YORK STATE** \| **Corrections and Community Supervision** **DIRECTIVE** | TITLE<br>Community Supervision | | NO.<br>9000<br>DATE<br>10/16/2015 |
| SUPERSEDES<br>DIR# 9000 Dtd. 09/03/2014 | DISTRIBUTION<br>A  B | PAGES<br>PAGE 1 OF 5 | DATE LAST REVISED |
| REFERENCES (Include but are not limited to) | APPROVING AUTHORITY | | |

I.  **DESCRIPTION**: Community Supervision is a major component within the Department of Corrections and Community Supervision (DOCCS). Community Supervision consists of 7 Regions and 36 Field Bureaus (Community Supervision Offices) geographically identified and established in accordance with the Department's jurisdiction and core mission. Community Supervision is responsible for the supervision of individuals released to parole supervision, post-release supervision, conditional release, release under the provisions of the Sex Offender Management and Treatment Act (SOMTA), and local conditional release.

Community Supervision supervises individuals classified by the Correctional Offender Management Profiling for Alternative Sanctions (COMPAS) risk and needs assessment instrument into 4 distinct levels: Level 1 – High Risk, Level 2 – High/Moderate Risk, Level 3 – Moderate Risk, and Level 4 – Low Risk. In addition to the 4 supervision risk levels, there are also specially trained Parole Officers who are responsible for supervising sex offenders and persons with mental illness. Community Supervision also supervises individuals approved for a transfer of their supervision to the State of New York under the terms and conditions of the Interstate Commission for Adult Offender Supervision (ICAOS). Parole Officers supervise temporary release participants and individuals released from secure facilities under the jurisdiction and authority of the NYS Office of Children and Family Services (OCFS) as well.

The Department is committed to evidence-based best practices in its supervision services and the implementation of case management strategies in an effort to enhance public safety, reduce recidivism, and to improve individual outcomes.

II.  **MISSION**: To improve public safety by providing a continuity of appropriate treatment services in safe and secure facilities where offenders' needs are addressed and they are prepared for release, followed by supportive services under Community Supervision to facilitate a successful completion of their sentence.

III.  **PHYSICAL LOCATION/FUNCTION**

    A.  <u>Community Supervision Regional Administration Locations</u>

        1.  Bronx Region, 26 Bruckner Blvd, Bronx, NY 10454

        2.  Manhattan/Staten Island Region, 314 W 40th Street, NY, NY 10018

        3.  Brooklyn Region, 15 Second Avenue, Brooklyn, NY 11215

        4.  Queens/Long Island Region, 92-36 Merrick Blvd, Jamaica, NY 11433

        5.  Hudson Valley Region, 3 Cottage Place, 2nd Floor, New Rochelle, NY 10801

        6.  Central New York Region, 845 Central Avenue, Albany, NY 12206

7. Western Region, 350 South Avenue, Rochester, NY 14620

B. <u>Bureau of Special Services (BSS)</u>: BSS provides supportive services to Community Supervision by conducting investigations, collecting and conveying information, and developing intelligence that is relevant to public safety. Some of the investigations conducted by BSS are threats to staff and public officials. BSS assists with other law enforcement investigations regarding criminal enterprises and fugitive enforcement investigations. BSS also provides the coverage for the following:

1. The Command Center, located in New York City at the HIDTA (High Intensity Drug Trafficking Area) Headquarters, 250 Vesey Street, New York, NY 11281, provides a 24 hour call center for the general public, individuals under supervision, staff, and law enforcement personnel.

2. BSS provides immediate notifications of parolee arrests to staff, lodge detainers, and serves individuals with their Violation of Release Report for due process proceedings.

C. <u>Sex Offender Management Unit (SOMU)</u>: SOMU provides technical assistance to Parole Officers who have been specifically trained and specialize in the supervision of sex offenders. SOMU recommends containment strategies for case management and supervision of sex offenders exclusively until they complete their sentence. SOMU monitors behavior through periodic polygraphs. Sex Offender Registry address information and compliance with other provisions of the Sex Offender Registration Act are routinely monitored. Community Supervision maintains a close information sharing relationship with local law enforcement entities, sex offender treatment providers, and local community groups, particularly in regard to the release and supervision of sex offenders. Technical assistance is also provided with regard to:

1. Electronic Security and Targeting of Online Predators Act (E-STOP): With the enactment of E-STOP, efforts to protect the public from sex offenders online were enhanced. The Board of Parole was authorized to limit internet use by all Level 3 sex offenders and other offenders who victimized a minor or who used the internet to facilitate the commission of their sex offenses.

2. Strict and Intensive Supervision and Treatment (SIST): Community Supervision supervises persons found by a Court to require civil management due to a mental abnormality. In April 2007, New York State passed the Sex Offender Management and Treatment Act (SOMTA) and the Department is responsible for the supervision of persons ordered to SIST. Polygraph examination is a recognized component of the terms of supervision.

D. <u>Mental Health Caseloads</u>: Community Supervision has Parole Officers who have been specifically trained and specialize in the supervision of individuals with serious mental illness. These cases are supervised intensively. The assigned Parole Officer and Office of Mental Health (OMH) intensive case manager work to help the parolee become stabilized in the community with a safe and secure residence, treatment programming as required, and medication regime maintenance.

E. <u>Executive Clemency</u>: The Executive Clemency Bureau is responsible for processing all applications for Pardons and Commutation of Sentence for the Governor of the State of

New York. Once this office determines an applicant's eligibility, additional information is gathered and reports are prepared and submitted to the Governor's Office for his staff's review and consideration. Information gathered and reported to the Governor's Office involves, but is not limited to, the following: description of the instant offense, legal history, institutional adjustment and/or social and community adjustment, institutional and/or community recommendations, etc.

This Bureau also receives, determines eligibility, and processes and prepares all Certificate of Relief from Disabilities (CRD) and Certificate of Good Conduct (CGC) applications submitted to DOCCS. The Bureau is responsible for processing CRD and CGC applications for eligible individuals currently under Community Supervision, individuals no longer under Community Supervision, and individuals who were convicted of a crime in another jurisdiction and currently reside in New York State. The issuance authority for these CRDs and CGCs is the Commissioner of DOCCS or designee. Additionally, the Bureau is responsible for reviewing and processing all CRDs issued to inmates by DOCCS Superintendents at the time of their release from a correctional facility to Community Supervision.

- 
- 
- 
- 
- 

F.  <u>Re-entry Operations</u>:  Re-entry staff work closely with facility staff, other State agencies, and community groups in identifying services for individuals released on parole or to a period of post-release supervision. Re-entry staff assist individuals in securing housing, enrolling in treatment, accessing skills programs, and in finding employment. They work closely with DOCCS Health Services staff in securing medical services (e.g., nursing homes, hospice, and hospital services) for individuals with severe medical conditions. Re-entry staff also oversee the Department's contracted community-based programs and use of emergency housing funds.

G.  <u>Interstate Bureau</u>:  Pursuant to Section 259-mm of the New York State Executive Law, DOCCS manages the movement and supervision of adult felony offenders into and out of New York State following their release from a correctional facility.

When a release eligible inmate confined in a New York State DOCCS facility or a parolee requests a transfer of their community supervision to another state, the facility and/or field staff will work with the Interstate Bureau to initiate an investigation with the appropriate officials in the receiving state. The criteria for determining the appropriateness of a transfer of supervision under the Interstate Compact includes

having an established residence or the support of immediate family and viable employment or verifiable means of financial support in the receiving state. Facility and field staff shall emphasize to each individual applicant that a transfer to another state is a privilege and must be approved by both DOCCS and the community supervision officials in the receiving state. If the transfer is approved by both states, the individual (inmate or parolee) must execute a waiver of extradition and must agree to abide by the terms and conditions governing their supervision set by both states.

The Interstate Bureau is also responsible for managing all cases that have been deported or repatriated, as well as individuals received under the Compact (ICAOS) by the State of New York.

H.  <u>Parole Violations Unit (PVU)</u>: The Board of Parole has jurisdictional authority to revoke the release status of any individual released from a DOCCS facility prior to maximum expiration of their sentence. When a Parole Officer believes that a parolee has lapsed into criminal conduct or violated any one or more of the conditions imposed by the Board of Parole or by the Parole Officer in an important respect, a parole violation warrant can be issued. Alleged violators are lodged at county jails and served with written notice of the date, time, place, and purpose of the revocation hearing to be held. DOCCS must provide an alleged violator with a preliminary and final revocation hearing. Preliminary Hearing Officers preside over preliminary hearings and Administrative Law Judges preside over the final revocation hearing. The alleged violation charges are prosecuted by Parole Revocation Specialists.

DOCCS and the Board of Parole manage what in essence is an administrative court system. A parole violation warrant can be executed by any Parole Officer, Peace Officer, or Police Officer. Once issued, alleged violators are lodged at county correctional facilities (county jails), served with written notice of the date, time, place, and purpose of the hearing to be held on the violation(s)

1. Preliminary Hearings: The purpose of the preliminary hearing is to determine whether there is probable cause to believe the alleged violator has violated the conditions of release in an important respect. The Department must provide the alleged violator with a preliminary hearing within 15 days of lodging of the warrant.

2. Final Hearing: The Department must provide the alleged violator with a final hearing within 90 days from the date which probable cause was established.

    At a final revocation hearing, the alleged violator is entitled to a number of due process protections, including:
    - The right to compel witnesses to appear at the hearing and provide testimony;
    - The right to subpoena and submit documentary evidence;
    - The right of confrontation and cross examination;
    - The right to submit mitigating evidence for the purpose of being restored to supervision; and
    - The right to representation of counsel.

3. Parole Violator New Term: Violators returned to the custody of DOCCS are eligible for re-release to the community upon expiration of the time assessment imposed

by the Administrative Law Judge. As for those individuals under the Department's jurisdiction who are convicted of a new felony offense committed while under community supervision and a new determinate or indeterminate sentence of imprisonment has been imposed, their release status is revoked by operation of law and not as a result of the discretionary authority of the Board of Parole.