1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------------x
    M.G., P.C., C.J., M.J., J.R.,
3   D.R., D.H., S.D., and W.P.,
    individually and on behalf of all
4   similarly situated,

5                    Plaintiffs,

6          -against-                    19 Civ. 639(CS)(AEK)

7   ANDREW CUOMO, in his official
    capacity as the Governor of the
8   State of New York, et al.,

9                    Defendants.
    ------------------------------------x
10

11                              United States Courthouse
                                White Plains, New York
12                              March 24, 2021

13

14          (All parties appearing via teleconference)

15

16              THE HONORABLE ANDREW E. KRAUSE,
                    United States Magistrate Judge

17

18  PAUL WEISS RIFKIN WHARTON &
    GARRISON
19           Attorneys for Plaintiffs
             1285 Avenue of the Americas
20           New York, New York 10019
    BY:  EMILY A. VANCE

21

22  OFFICE of the ATTORNEY GENERAL
             Attorneys for Defendants
23           28 Liberty Street, 21st Floor
             New York, New York 10005
24  BY:  ADAM J. SANSOLO
         JANE R. GOLDBERG

25

             Angela O'Donnell - Official Court Reporter
                        914-390-4025

1          THE DEPUTY CLERK:  In the matter of MG versus Cuomo,

2     19CV639, the Honorable Andrew Krause presiding.

3          Counsel, please state your name for the record

4     starting with plaintiffs' counsel.

5          MS. VANCE:  Good morning, this is Emily Vance from

6     Paul Weiss for plaintiffs.

7          THE COURT:  Good morning, Ms. Vance.

8          MR. SANSOLO:  This is Adam Sansolo from the New York

9     State Attorney General's office for defendant.

10          THE COURT:  Good morning, Mr. Sansolo.

11          MR. SANSOLO:  Good morning.

12          THE COURT:  And good morning to others.  I understand

13     there are quite a few people on the line, but we'll he just

14     start from here.

15          So I have received, as you saw, I received your

16     letter from last week regarding the potential stay of

17     discovery.  I granted that application with all of the

18     provisions set forth in the letter.  I am happy to discuss how

19     we move forward from here in terms of settlement discussions,

20     and I'm glad that the parties think that that would be a useful

21     and worthwhile way to proceed.

22          I just wanted to clarify one thing based on the

23     schedule that we have in place or had in place with respect to

24     discovery deadlines based on my December 30th order.  We had

25     talked about the February 15th deadline which had already

1    passed by the time we were last together in February and there

2    was a March 15th deadline in the December 30th order as well.

3    I tried to piece together exactly what may have been produced

4    from that March 15th deadline versus what may still be

5    outstanding based on the second sort of main bullet points in

6    the letter that I received, it's a joint letter but on

7    plaintiffs' stationery, about what was going to be produced

8    within the first 30 days of the stay no later than May 3rd,

9    2021.

10    Ms. Vance, just so I have a clearer understanding, my

11    take on it is that perhaps some of the documents that were due

12    by March 15th were produced, some of them have not yet been

13    produced, some of those are going to be produced as part of

14    this 30-day grace period, if you will, that's set forth in the

15    schedule that I so ordered yesterday.

16    So that's my general understanding, but can you just

17    clarify that, if I have that wrong, or add anything that I

18    should understand about where things are with the March 15

19    deadline.

20    MS. VANCE:  Thank you, your Honor.  Plaintiffs have

21    received production from defendants pursuant to the Court's

22    prior order, and the intent of this letter is to govern what's

23    the status quo going forward.  So your Honor is correct in the

24    broad strokes that the plaintiffs have received certain

25    documents that were produced pursuant to the Court's prior

1    order as of March 15th.  Some of those documents have not been

2    produced and some of them will be produced within the first 30

3    days of the stay.

4           THE COURT:  Okay.  And I guess just for housekeeping

5    purposes, and you're all keeping close track of this I

6    understand, but just so I have it clear in my notes here, when

7    this set of productions that is contemplated within the first

8    30 days of the stay is completed, Ms. Vance, will that or

9    should that, from the plaintiffs' perspective, complete the

10   production that was originally due on March 15th or will there

11   still be other items outstanding?

12          MS. VANCE:  There will still be other items

13   outstanding.  If your Honor would like the parties to submit a

14   letter setting forth everything so the bases are covered and

15   the record is clear as to what is being produced and what is

16   outstanding, we'd be happy to do that.

17          THE COURT:  No.  Thank you, Ms. Vance, I appreciate

18   that.  That's not necessary.  I just wanted to understand sort

19   of generally if discovery restarts we will essentially be

20   restarting with whatever is left from the March 15th date and

21   then moving to the April 15th and May 15th deadlines, which

22   obviously will no longer be the April 15th and May 15th, but in

23   terms of what's left, contemplated for production on those

24   dates in the December 30th schedule.  I don't need a detailed

25   recitation for my purposes.  I'm sure you're keeping close

1    track of it, and the landscape will change anyway based on

2    whatever is produced in this 30-day period and also whatever

3    else might come up during the course of settlement

4    negotiations.  I don't want you to spend time drafting

5    something that will essentially be a dead letter within a

6    couple of weeks anyway essentially.  But I do appreciate the

7    clarification.

8            Mr. Sansolo, did you have something you wanted to add

9    there?

10           MR. SANSOLO:  Yes, your Honor, that was our -- that's

11   defendant's understanding as well is that any of the other

12   requests for production that were still outstanding are still

13   outstanding and would go into effect in the event that the stay

14   of discovery were lifted.

15           THE COURT:  Okay, that's fine.  And obviously, if the

16   stay were lifted, we would have to lay out exactly what's what

17   and what would be due when and we'd put a new schedule back in

18   place.  I'm not trying to introduce pessimism at this moment

19   when you are agreeing to engage in settlement negotiations.  I

20   just want to know where things will be if that day does come.

21   In fact, it's the morning, I like to remain optimistic in the

22   morning unless events of the day turn me in a different

23   direction.

24           So returning to a note of optimism then, I would like

25   to discuss, as I mentioned in my order yesterday, what makes

1    sense from the parties' perspective in terms of how to move

2    forward with the settlement process.  I'll give you some

3    thoughts that I've had since I received your letter last week.

4         You know, my normal settlement conference procedure

5    is I set aside three hours in an afternoon and I ask for the

6    parties to submit in advance of the settlement conference a

7    letter of no more than five pages that lays out some very basic

8    information:  The procedural history and settlement discussions

9    to date; the issues that are in dispute or that are

10   particularly causing conflict that is presenting an impediment

11   to a potential settlement; damages calculation; the basis for

12   those damages calculation; history of settlement negotiations.

13   Those kinds of things.  That process works very well for the

14   vast majority of my cases and the vast majority of cases I have

15   for settlement conferences where the main issue is monetary

16   damages or perhaps some narrow issue of injunctive relief or

17   something along those lines.

18        This case is obviously quite different, and so I

19   don't really want to try to shoehorn it into my normal

20   framework for settlement conference procedures because what I

21   really am hoping to have is preconference submissions from the

22   parties that give me of enough information and enough

23   background to understand really what is at issue, where the

24   disputes lie, what the parties think about what their ideal

25   outcomes would be.  These would be *ex parte* submissions, so you

1    can feel free to be as candid with me as you can be, and in

2    fact, I encourage that, because it's just helpful for me to

3    understand what the things are that you can't live without in a

4    settlement, what the things are that might be -- where there

5    might be room for compromise.

6          And I think it's a useful exercise, particularly in a

7    case like this, for you to put those ideas in writing and to

8    crystallize them for yourselves and for your clients.  I think

9    that that will serve a useful function in addition to the

10   useful function for me of educating me more on the issues in

11   the case that I really need to understand.

12         That said, I'm not looking to create a massive

13   undertaking for either side.  Part of the point here is to try

14   to push forward and make things more efficient and reduce

15   expense so that efforts can really be directed towards the

16   settlement.  There's a little bit of tension there.  I don't

17   want you to feel like you need to submit a 20-page brief or

18   something like that in advance of the settlement conference.

19   It's not really a good use of your time to do that.  So, I'm

20   trying to strike a good balance there between what I should

21   know and need to know to be most useful in my role as a

22   mediator and what makes most sense from the parties'

23   perspective in terms of time and efficiency.

24         So I'd like to hear your thoughts on that before we

25   settle on exactly what the parameters of these submissions will

1    be.

2          Then the other issue is that ordinarily I will

3    schedule a single settlement conference in the hopes that that

4    will be enough to resolve a case.  Sometimes it is.  Sometimes

5    it's not, and sometimes it's clear after we have not resolved

6    the case that it's hopeless and we're never going to be able to

7    resolve the case because the parties are too far apart, and

8    that's fine.  But very often it's the case that at the end of

9    that first settlement conference we've made substantial

10   progress and we think it's worth scheduling a second settlement

11   conference and I do that.

12         So here it seems to me that given the complexity of

13   the case, given the number of issues involved, that it is

14   probably a good idea, and given the number of people involved,

15   it's probably a good idea to try to schedule two rounds of

16   settlement discussions today.  Maybe we'll get it done in one,

17   which would be terrific, but I think realistically it probably

18   makes more sense to schedule two separate sessions so that we

19   have breathing room to really work through the issues and not

20   feel like we're too pressured, and perhaps more importantly, I

21   don't want to get to the end of the settlement conference the

22   first time around, have everybody agree that another conference

23   would be really worthwhile and then not be able to get you on

24   the calendar for a long period of time because my calendar,

25   particularly for settlement conferences, gets booked up very

1   quickly.  So that's my thought there.

2        And of course, look, if we need more than two

3   conferences, I'm open to that possibility as well and certainly

4   amenable to it if we're making good progress.  I think at the

5   outset, for this particular case, I think it would make sense

6   to block out two windows of time so we'll have those to look

7   forward to and have those already calendered when we get

8   started with the process.

9        So let me start with you, Ms. Vance.  Do you have

10  thoughts about what a submission, a helpful submission would

11  look like from your perspective and if you have thoughts on the

12  two-conference idea, I'd be interested to hear that as well.

13       MS. VANCE:  Yes, your Honor.  First, plaintiffs

14  really appreciate your Honor taking the opportunity to set out

15  his thoughts on settlement and we are very much looking forward

16  to settlement discussions with defendants and your Honor.

17       In terms of a submission, plaintiffs agree with a

18  number of the items that you listed before concerning the

19  discussions to date, the history of the back and forth on

20  settlement.  Plaintiffs also think it would be helpful to set

21  forth the legal standards and our entitlement to relief in

22  addition to what we would envision a settlement would look like

23  from our perspective.  And we have memorialized some of this in

24  writing in demand letters that we've sent to defendants and

25  have found that process very helpful.  So your point is well

1    taken about putting things to writing.

2          You mentioned, your Honor mentioned that you were

3    envisioning potentially an *ex parte* letter.  I think it would

4    be helpful if plaintiffs were to see something in writing from

5    defendants.  So perhaps we could do a joint, simultaneous

6    submission and then also provide a response to those

7    submissions, and the *ex parte* aspect perhaps could be captured

8    by having some joint discussions and then *ex parte* discussions

9    where your Honor meets just with plaintiffs' counsel and then

10   with defendants.  Perhaps that hybrid approach might be

11   suitable here.  But I do think that it would be very much

12   beneficial if plaintiffs could see a version of defendants'

13   response to our prior demands and their general appetite for

14   certain aspects of the settlement we have proposed to date.

15         THE COURT:  Okay, Ms. Vance, that's helpful.  Thank

16   you.  And you make a good point there about the exchange of

17   positions.  Again, I think my strong preference in cases that

18   are sort of what I'll refer to as more garden variety

19   settlement conferences is that the parties exchange offers and

20   demands in advance of the conference.  I don't always insist on

21   that, but I do find that it's more productive when there has

22   been some negotiation.  And I understand there's been some

23   negotiation here perhaps at a more conceptual level.  Of course

24   offers and demands in most cases is a matter of exchanging

25   monetary positions and that's not such a complicated

1    undertaking.  I do think that having the parties set out in

2    writing for each other what their settlement demands are and

3    what their settlement positions are, or offers, I guess, in the

4    defendant's context, would be helpful.

5            I do think it's helpful to have *ex parte* submissions

6    though as well because I think the parties can be more

7    forthcoming with me and provide perhaps some explanation for

8    why their positions are what they are.

9            So I think I -- I'll hear from you, Mr. Sansolo, in a

10   moment, but I do like that idea, Ms. Vance, of there being, as

11   you said, a hybrid approach where there would be some *ex parte*

12   component to the submission and some exchange between the

13   parties about the positions as well.

14           I will say, you mentioned that some of the legal

15   standards and such had been set forth in writing.  I understand

16   also you've had substantial briefing in this case.  I can

17   easily find stuff that's on the docket.  So one other thing

18   that is worth considering is you don't necessarily need to

19   reproduce things that you've already laid out.  So if there's a

20   section of the motion to dismiss briefing that's applicable,

21   even in light of whatever rulings Judge Seibel has issued in

22   this case, you could simply say for the legal standards the

23   pages 8 to 12 of our opposition to the motion to dismiss at ECF

24   number whatever it is.  And I can find it that way.

25           So I do want to keep in mind the fact that you've

 1    done a lot of work in this case already, and I'm coming to it

 2    at a different point in time and a different level of

 3    engagement because of my role in the order of reference for

 4    general pretrial supervision.  But again I do want to think

 5    about how you can present those issues to me without having to

 6    go back to the beginning and start writing as though you're

 7    operating on a clean slate.  Of course you could always copy

 8    and paste those things, but to the extent you can use the

 9    shorthand and refer me to specific things that are already

10    available to the Court, I'm happy to take things that way as

11    well.

12              Mr. Sansolo, what are your thoughts at this point,

13    either in response to what I've said or in response to what

14    Ms. Vance has said.

15              MR. SANSOLO:  Yes, your Honor.  And the defendants

16    also appreciate the Court's time in assisting in settlement of

17    some of the claims in this matter.

18              We definitely agree that *ex parte* submissions would

19    be helpful.  There are some things that we would like the Court

20    to know with regard to some of the specific claims.  And there

21    has been some exchange of information as to -- I know we

22    received a demand from plaintiffs with regard to some of the

23    claims.

24              I'm sorry, what was that?  Oh.

25              We received a demand from plaintiffs with regard to

1    some of the claims but one of the issues in this case is that

2    there are the claims that are part of the second amended

3    complaint and some of the issues can get conflated.

4         So I think one of the things we would want to do,

5    especially to move settlement and mediation process along with

6    regard to the claims in the first amended complaint, is to just

7    fully understand the scope of what these settlement discussions

8    are related to.  And we'd like to lay that out both in the

9    *ex parte* communications with the Court and also, I agree with

10   Ms. Vance, to sort of provide a similar response to the

11   plaintiffs in anticipation of a mediation conference.

12        THE COURT:  Okay.  Well, the question of scope is

13   certainly critically important and my hope is that that's

14   something that you might be able to reach some common ground on

15   before I get involved.  Again, if not, that's fine.  One of the

16   things that I often try to do at the start of any settlement

17   conference is try to understand based on the submissions I

18   received where the points of commonality and points of

19   agreement are so that we can of assess what we need to focus on

20   for purposes of the settlement discussion.

21        I mean, it would seem to me as though there could be

22   merit to either approach; focusing on trying to resolve only

23   the claims that are pending in the first amended complaint that

24   survived the motion to dismiss, or try to take a more global

25   approach and trying to resolve claims that do have overlap with

1    what is in the second amended complaint.  And I apologize if

2    I'm referring to those pleadings incorrectly, but whatever the

3    pleading is that is currently subject to the next round of

4    motion to dismiss briefing which I understand is before Judge

5    Seibel at this point.

6            Again, I recognize that there could be an appetite

7    from the plaintiffs' perspective to try to do something more

8    globally before the motion to dismiss is resolved.  I can

9    understand from the defendants' perspective why you might want

10    to see the motion to dismiss resolved one way or the other

11    before you delve into trying to address the second set of

12    issues.

13            Again, as I said, there are merits to approaching it

14    either way.  I would hope, though, that we could have some

15    meeting of the minds on your part about how we're going to

16    approach the negotiations because the more that we can have

17    agreed upon in advance, the better a foundation we have for the

18    portion of time that we're going to spend together.

19            But, again, if you're not able to resolve that,

20    you're not, and then that will be something that we have to

21    discuss.

22            Go ahead, Mr. Sansolo.

23            MR. SANSOLO:  We completely agree, your Honor.  There

24    has been some meeting of the minds.  We just want to make sure

25    that we are -- kind of what you're saying, we're in agreement

1   going into these discussions with you that we can make as much

2   progress as possible.  And while we feel that -- we believe

3   there's definitely an opportunity to make significant progress

4   in the settlement talks on the claims in the first amended

5   complaint, you know, obviously we're not closing the door to

6   discussions on the second, we just know that for purposes of

7   being able to progress quickly and trying to resolve some of

8   these issues, that is most likely possible on those claims in

9   the first amended complaint as opposed to the additional claims

10  that have been added.  But that's the position.

11           And we agree, I think the hybrid model that Ms. Vance

12  described is something similar that we would want to proceed

13  with.

14           THE COURT:  Okay.  And look, of course, the dynamics

15  about what is possible and what is more likely to result in a

16  settlement, all of that will change once Judge Seibel rules on

17  the motion that's currently pending.  So I encourage everybody

18  to keep an open mind about that, and you know the landscape may

19  change while we're in the middle of the process, who knows.

20  I'm not sure what Judge Seibel's timetable is or if she's given

21  you a timetable for when she expects to rule on the current

22  motion to dismiss.

23           Ms. Vance, do you have anything that you'd like to

24  add before we talk about a schedule more specifically?

25           MS. VANCE:  No, your Honor.

1          THE COURT:  Okay.  So it sounds as though everybody

2     agrees that some sort of hybrid approach here would make sense.

3     I guess what I am inclined to do, then I'll hear from you on

4     this, too, what I'm inclined to do is have the parties exchange

5     written demands and responses to those demands so that you at

6     least have some sort of concrete of idea of your settlement

7     position in writing.  And then, once you've each received that

8     demand and response from the other side, you could then provide

9     me with an *ex parte* submission.  They can be simultaneous.

10    That provides additional color that explains your own positions

11    and perhaps comments on the positions that were put forward by

12    your adversaries so that you can explain why -- again, this

13    isn't an argumentative piece, this is really meant for my

14    edification so I can understand the tension from your

15    perspective and the room for negotiation and why certain things

16    are particularly problematic or more workable or whatever it

17    might be.

18          I think it makes sense for you, before you write to

19    me, I think it makes sense for you to have an exchange of

20    demand and offer, for lack of a better phrase, as a first step.

21    And of course there's nothing stopping you from having multiple

22    rounds of exchange on that.  I don't want to in any way

23    discourage, just because we're going to have a settlement

24    conference or multiple settlement conferences, I don't want to

25    discourage any negotiations that may organically take place

1   between the parties in this case.  But I do think at some point

2   we need to have a fixed point in time offer and demand and then

3   some commentary on that for my benefit and then we can get

4   together and go from there.

5           Ms. Vance, does that sound like a workable plan from

6   your perspective?

7           MS. VANCE:  Yes, your Honor.

8           THE COURT:  Mr. Sansolo?

9           MR. SANSOLO:  Yes.

10          THE COURT:  Okay.  Well, let's do this, let's work

11  backwards then.  Let's find a date for a first afternoon

12  meeting, and then we'll work backwards from there to figure out

13  timetables for the submissions.  I'm just going to look at my

14  calendar now and figure out when we have a window.

15          MS. GOLDBERG:  Your Honor.

16          THE COURT:  Yes.

17          MS. GOLDBERG:  This is Jane Goldberg from the

18  Attorney General's office, I apologize, but in advance I just

19  wanted the Court to know that at least one of our clients would

20  like to participate in any mediation that we do have going

21  forward.  I just wanted to bring that to everyone's attention.

22  And it may be the other client wants to also.  We haven't

23  raised it yet.

24          THE COURT:  Thank you, Ms. Goldberg.  And when you

25  say your client, it will be a representative from --

```
 1           MS. GOLDBERG:  It (indiscernible) in particular.  It

 2    will be probably be someone from legal from their counsel's

 3    office and we would notify DOCCS as well in case they want to

 4    be present also that way.

 5           THE COURT:  That's great, Ms. Goldberg, and I thank

 6    you for pointing that out.  That's one issue I didn't talk

 7    about in terms of my standard practice.  I do typically require

 8    parties to be present for settlement negotiations or

 9    decision-making --

10           MS. GOLDBERG:  Okay.

11           THE COURT:  -- in the case of a government entity.  I

12    was not necessarily going to require that here because with

13    government agencies it's usually more of a decision-making

14    tree, as I well understand.

15           MS. GOLDBERG:  Yes, I know.

16           THE COURT:  It may not really be practical or

17    feasible to have the ultimate decision maker present for the

18    negotiations if it's the type of policy decision that will have

19    to go up to the highest levels of the agency.  I'm not sure if

20    it is or it isn't.  It may depend on the scope of the relief

21    that is under consideration.  And I would expect, of course,

22    that the defendants would have some degree of authority to be

23    able to make progress in negotiations and there will have been

24    some communication in advance, and also that the defendants

25    will be able to be in contact with the relevant decision makers
```

1    during the conference.  When I have government parties,

2    defendants, I do typically allow them to not have the decision

3    makers on the line but rather just to be available to approve

4    settlements up to a certain authority or whatever it might be.

5             What we will do, as you would expect and as a sort of

6    standard from any mediation progress, there will be a back and

7    forth.  There will be times I'm speaking with the plaintiff.

8    There will be times I'm speaking with the defendants.  In the

9    times I'm speaking with the plaintiffs, I would hope that the

10   defendants would be able to go back to their clients, even

11   people who are not directly participating, and keep them

12   apprised and perhaps discuss further negotiation positions.

13            But certainly, Ms. Goldberg, if there's someone from

14   OMH who wants to participate, I will not limit that.  I do

15   think it's helpful to have client representatives participate

16   to the greatest extent possible.

17            MS. GOLDBERG:  I appreciate that.

18            THE COURT:  Absolutely.  And from the plaintiffs'

19   perspective, I'll leave that open for you here because this,

20   again, is a very different type of case, we don't have an

21   individual plaintiff who's alleging discrimination or personal

22   injury or Fair Labor Standards Act violation or something of

23   that nature.  This is a collective process, and I know there

24   are individuals named or identified plaintiffs, but it's not

25   clear to me, given the nature of these claims, whether it would

1    be beneficial to have any individually named or identified

2    plaintiff participate in the proceeding.  My inclination is

3    that that would not necessarily be helpful here.  But I'm not

4    going to require that the plaintiffs have client

5    representatives participate in the conference.  But if at some

6    point you think it would be helpful for me to hear from

7    somebody or for them to hear from me, I'm happy to allow that

8    as well, just as I was explaining to Ms. Goldberg.  But I don't

9    think, given the nature of this case, given the nature of these

10   claims, that that would necessarily be all that helpful in

11   terms of facilitating a resolution.

12           Plaintiffs' counsel, I'll allow you to think about

13   that and figure out what you think makes most sense, but I'm

14   not going to require participation of individual plaintiffs in

15   this case.  I don't think that's a great fit for this

16   particular case.

17           Okay, so I'm looking at the calendar and trying to

18   figure out -- so it looks likes one possible date that would

19   work.  I'm looking at the calendar.  I have an awful lot of

20   settlement conferences scheduled in April.  One possible date

21   that would work before the Court is Monday, April 19th, as a

22   date for our first settlement conference meeting.  That's about

23   a little less than four weeks from today.  We would want to

24   have -- I wouldn't want to have anything any sooner than that,

25   because I would want the parties to have an opportunity to

1    exchange the demands and offers that we talked about and also

2    provide me with the material in advance of that conference.  So

3    that would be the earliest possible date.

4        Unfortunately, it looks like I don't have any real

5    flexibility, as of right now I don't have any other dates that

6    week that would work.  And the following week I have criminal

7    duty, and I can't realistically schedule a multi-hour

8    settlement conference during criminal duty because that

9    schedule is too unpredictable and the likelihood of having to

10   cancel it is great.

11       MR. SANSOLO:  Your Honor, so the first discovery that

12   we would be providing plaintiffs or information for purposes of

13   settlement wouldn't it be due until April 30th, so it may

14   actually make sense to push -- to do this -- at least to have

15   the first settlement discussion with your Honor in May, once

16   that date has passed and we've provided -- and plaintiffs have

17   had an opportunity to digest some of that information that they

18   have said will help them towards understanding the full scope

19   of a potential settlement here.

20       THE COURT:  Okay, that makes sense, Mr. Sansolo, and

21   that also makes sense now that I'm looking back at the letter

22   that I so ordered yesterday that it is a 30-day window

23   essentially to produce of documents and production will be

24   completed by May 3 (indiscernible) --

25       MS. GOLDBERG:  At the latest.

1          THE COURT:  I'm sorry, Ms. Goldberg?

2          MS. GOLDBERG:  I just said at the latest.  The

3    deadline is April 30th, but they're giving us a grace period

4    until that Monday.

5          THE COURT:  All right, so that makes sense.  Let me

6    just check.

7          Ms. Brown, are you there?

8          THE DEPUTY CLERK:  Yes, I'm here.

9          THE COURT:  Do you have that email that I sent you

10   yesterday with the May criminal duty schedule?  I know we just

11   got it yesterday, so we don't have it on the calendar yet.

12         THE DEPUTY CLERK:  Let me see.  Give me one second.

13         THE COURT:  I'm looking for it also.  I found it.

14   Okay.  Never mind.  Okay, so we've got May 17th and then

15   June 7th for criminal duty.  So we have to not do the week of

16   May 17th.  That's fine.  Actually, pushing it to May makes

17   things, as of today at least, much easier.

18         As of right now, almost miraculously, I could do any

19   afternoon during the week of May 3rd, and then I have some

20   flexibility also during the week of May 10th.

21         So, Ms. Vance, if you were going to receive documents

22   from the defendants at the end of April, you'll need a little

23   bit of time at least to review those documents and process them

24   and incorporate them into your thinking.  So I guess the

25   question is whether we should -- I'm inclined to, just so that

                Angela O'Donnell - Official Court Reporter
                            914-390-4025

1    we don't let it slip too far, I'm inclined to find a date

2    during the week of May 10th.  I think the week of May 3rd is

3    unrealistic if you're not going to get the documents till on or

4    about April 30th.

5         But if we look for a date sort of late in the week of

6    May 10th, Mr. Sansolo, it will at least give you a week and a

7    half to absorb some of those documents.

8         The question is, I guess, from the plaintiffs'

9    perspective, how much of what you would want to exchange and

10   articulate in a proposal for settlement is going to turn on

11   what you receive in those next document productions?

12        And, more importantly, you don't have to answer that

13   question precisely, but with that question in mind, will you

14   have enough time to craft whatever proposal that you want to

15   send to defendants in time to do a settlement conference during

16   the week of May 10th, or alternatively, should we look for

17   something towards the end of May, the week of May 24th?

18        MS. VANCE:  Thank you, your Honor.  Plaintiffs do

19   expect that the forthcoming production and information from

20   defendants will inform plaintiffs' settlement position and

21   facilitate meaningful dialogue.

22        I anticipate that we will need probably about a week,

23   a week and a half to review if we're going to incorporate that

24   into our letters that we provide to defendants.  I think we

25   would also build in time for a *ex parte* submission to the Court

1    that captures the demands as well as our responses to

2    defendants' position.  So I think it's a long way of saying the

3    week of May 24th might be better to accommodate the exchange of

4    the two types of letters we discussed in response to this

5    information we receive from defendants over the next coming --

6    over the coming weeks.

7            THE COURT:  Okay, that sounds right to me, too,

8    Ms. Vance.  Here's the wrinkle from my perspective.

9            As of today, I am currently scheduled to have a jury

10   trial the week of May 24th.  I'm looking at my law clerk and

11   we're both sort of wondering whether that's really going to

12   happen.  There's some issues that need to be worked out in

13   order for us to be able to go ahead with that trial on May

14   24th.  I don't know if we're really going to be able to do it,

15   but we're hopeful.  That said, it would really be a pretty

16   short trial.

17           The best day I think for me that week would be the

18   Friday, but I realize that's a Friday before Memorial Day.

19   Even in the unusual times that we're currently living in,

20   that's not peoples' preferred day for a lengthy settlement

21   negotiation.  So that said, I could do something, we could do

22   something on that Friday morning, May 28th, or we could roll it

23   over to the beginning of June, which on the one hand feels like

24   a long time away, but on the other hand it's going to be here

25   before we know it.

1          So I guess my two recommendations at this point would

2    be to either do something on Friday, May 28th, or on Wednesday,

3    June 2nd.  Give everybody time to get back from the holiday.

4    Whether or not anyone's going anywhere, get back mentally from

5    the office.

6          MR. SANSOLO:  Your Honor, I would not be available

7    the 28th, so the June 2nd date, at least from defendants'

8    perspective, would be more possible.

9          THE COURT:  Okay, and the other thing I'm actually

10   thinking, since we're now looking far enough in advance, is

11   given the nature of this case and given plaintiff fact that

12   this will be a very different type of settlement conference

13   than the ones we usually conduct in the afternoon, we're going

14   far enough out here that I have a good amount of scheduling

15   flexibility, at least as of today.  So my thinking is a little

16   different in that perhaps we will schedule the settlement

17   conference to start in the morning, and we'll start fresh and

18   hopefully be able to make some headway, and I will try, to the

19   greatest extent possible, to keep my afternoon more flexible as

20   well.  I can't promise that that will happen, and I don't think

21   that we're going to necessarily spend seven hours together at

22   an initial settlement conference, I think that's probably not a

23   productive way to approach it anyway.  But I think, in light of

24   all of this, I think we'd be better off starting in the morning

25   and setting aside several hours there and trying to work from

1    there.

2              So all that said, the morning of June 2nd, starting

3    at 10:00 a.m., would that work for the plaintiff, Ms. Vance?

4              MS. VANCE:  Yes, your Honor.

5              THE COURT:  Okay.  And Mr. Sansolo, Ms. Goldberg,

6    June 2nd --

7              MS. GOLDBERG:  Yes.

8              THE COURT:  -- at 10:00 a.m.?

9              MS. GOLDBERG:  Yes.

10             MR. SANSOLO:  Yes, that would work, your Honor.  We

11   would want to just check the date with our clients who have

12   expressed interest in attending, but that's -- for us on the

13   phone (indiscernible).  We can let the Court know.

14             THE COURT:  Let's also, I did say that I wanted to

15   try to schedule a second date as well, I think that would be a

16   good idea.  So what I'm going to suggest is that we give

17   ourselves two weeks in between to allow you to have then

18   further discussions internally and sort of take stock of

19   everything we discuss on June 2nd.  I'd like to put another

20   date on the calendar so that we can try to at least have a

21   placeholder for it.  We can always adjourn it if on June 2nd it

22   seems that it would be best to have the parties have more time

23   to negotiate amongst themselves or it's going to be necessary

24   to have further internal discussions, or whatever it might be.

25   But I'd like to put another window of time on the calendar here

1    just so we have it blocked out if we want.  I'm looking again

2    at my criminal duty schedule and my trial schedule in June.

3    It's going to be a complicated month.

4            What about Friday, June 18?

5            Ms. Vance, for the plaintiffs.

6            MS. VANCE:  Friday, June 18th is Juneteenth, which is

7    a holiday.

8            THE COURT:  Okay.

9            MS. VANCE:  Would another day be available for the

10   Court?

11           THE COURT:  Thank you for pointing that out.  What

12   about Monday, June 21st?

13           MS. VANCE:  That's fine for plaintiffs, your Honor.

14           THE COURT:  I thought Juneteenth was June 19th.  I

15   understand that's a Saturday this year, but that is the date,

16   right?

17           MS. VANCE:  Yes, I believe it's observed on Friday

18   the 18th.

19           THE COURT:  That's fine, I just wanted to make sure I

20   had that date right in my mind.  It's going to be observed.  I

21   don't believe that that's a court holiday, but I understand

22   it's a New York State holiday, and I'm glad that it is.

23           I appreciate you mentioning that, Ms. Vance, we'll

24   make a note of that on our calendar, too.  It may be an issue

25   for scheduling in other matters as well.

1          June 21st then, that's a Monday?

2          MS. VANCE:  Yes, your Honor.

3          THE COURT:  Mr. Sansolo, June 21st?

4          MR. SANSOLO:  Yeah, no problem at this time.

5          THE COURT:  Let's again set that aside for 10:00 a.m.

6   on June 21st.  So we're going to put on our calendar June 2,

7   10:00 a.m., June 21st, 10:00 a.m.  I strongly suspect that we

8   are still going to be in a place at that time with the public

9   health situation that we will be conducting the vast majority

10  of our proceedings remotely.  Even with my morning optimism I

11  think that's still likely to be the situation we find ourselves

12  in come June.  If that changes for whatever reason, we could

13  contemplate doing this in person, but I really think that

14  that's unlikely.

15          I have, as of last week, started doing at least some

16  settlement conferences by video via the Microsoft Teams

17  platform.  I have, other than the first time we did that last

18  week, I've been conducting most of these settlement conferences

19  over the phone, and either one can work.  And the phone

20  certainly allows us the flexibility to do breakout rooms and

21  has that functionality.  But last week we received a request

22  from a group of lawyers to do the conference on video, they

23  thought that that would be more useful for their clients and

24  all credit goes to my law clerk for figuring out how to make

25  that work and she did.  And it worked very well, actually.  I

1  thought there were some things that were better about doing it

2  on video.  I'm not going to insist on doing it that way for

3  every conference that I have going forward because in some ways

4  it's more complicated.  But in any event, we don't have to make

5  a decision about that now, but why don't you give some thought

6  about whether you would prefer to do this conference by

7  telephone or by video, especially if you think one would be

8  better than the other substantively, I very much would like to

9  know that.  Logistically also if you don't have Teams or you

10  don't have the capability of using Teams, I don't want to make

11  it more stressful for anybody to have to grapple with the new

12  technology in addition to the complicated legal issues that

13  we're grappling with.  That's just something for you to think

14  about.  We have plenty of time to figure it out, and it doesn't

15  really matter from the Court's perspective.  We don't need to

16  prepare any differently for doing it on video or doing it by

17  phone.  So give that some thought and you can let me know at

18  some point as we get closer to the time of the conference what

19  makes the most sentence from your perspective.

20          MR. SANSOLO:  Yes, your Honor, and just for the

21  Court.  In Teams you can actually set it up that there are

22  breakout rooms.

23          THE COURT:  Exactly.  That's exactly what we did.

24  We've done it.  I meant to say we've done it on the phone with

25  breakout rooms, we've done it on Teams with breakout rooms.  In

1    terms of the functionality essentially it's the same, it's just

2    a matter of whether we do it by video or telephone, and if

3    anybody has a preference.  It's nice to see peoples' faces,

4    frankly, from my perspective.  It's not quite as good as

5    meeting in person, but it's some improvement over just speaking

6    into the abyss of the telephone.  But again, I'm not going to

7    insist on doing it by video, but if the parties are amenable to

8    that, I think particularly for this case where we're going to

9    be seeing each other over multiple sessions, I think it might

10   be nice to do it that way.  But, again, I'll let you give that

11   some thought.  I don't want to put anyone on the spot about

12   that now.  There may be particular reasons why video is

13   (indiscernible).

14          So working backwards from there, we need to have

15   dates for the parties to exchange their demands and response

16   and then for the parties to then sometime after that provide

17   *ex parte* submissions to the Court all in enough time for me to

18   be able to have sufficient time to review those and digest them

19   before the conference.

20          So I would like to have, just recognizing the

21   complexities of my schedule, I'd like to have two weeks.  I'd

22   like to have the *ex parte* letters to me by May 19th.  That

23   would be two weeks before the conference.

24          MS. GOLDBERG:  On May 9th?

25          THE COURT:  May 19.

Angela O'Donnell - Official Court Reporter
914-390-4025

1          MS. GOLDBERG:  Okay, I'm sorry, your Honor.

2          THE COURT:  That's okay.

3          MS. GOLDBERG:  Okay.

4          THE COURT:  So *ex parte* letters can be submitted

5     simultaneously on May 19th.  You can send those to my chambers

6     email address, which is available on the court website, on my

7     web page on the court website.  Obviously, they're *ex parte*.

8     They should not be filed on ECF, even under seal.  I don't want

9     them to be filed on ECF.  They should just be submitted by

10    email.

11         So then working backwards further from there, it

12    would seem to me to make sense to have the plaintiff group

13    submit their settlement demand and then have the defendants

14    have a week to respond to that and then for the parties to each

15    have at least a week with that information before the *ex parte*

16    letters are due.  So my working back that way, if we had the

17    plaintiffs' letter by -- if we had the plaintiffs' letter by

18    April 28 or -- I'm sorry, no, we need -- that's not right.

19    You're getting those things on April 30.  I'm sorry, now I'm

20    seeing the problem I just created for myself -- for you.

21    May 19th is not going to work.  That's going to make things too

22    complicated.  That's fine.  I can take the *ex parte* letters

23    May 26th.  One week in advance will be fine.

24         That way, Ms. Vance, you can submit your demand,

25    plaintiffs' demand, by May 12th, the defendants can respond by

1  May 19th, and the parties can do their *ex parte* letters by

2  May 26th.  Will that give you enough time with the April 30th

3  production?

4          MS. VANCE:  Yes, your Honor.

5          THE COURT:  So May 12th, the plaintiffs, May 19 for

6  the defendants' response, and May 26 for the *ex parte* letters.

7          Ms. Vance, does that work generally for the

8  plaintiff, those dates?

9          MS. VANCE:  Yes, your Honor.

10          THE COURT:  And Mr. Sansolo, Ms. Goldberg?

11          MS. GOLDBERG:  A little tight, your Honor.

12          MR. SANSOLO:  Yes, your Honor.

13          THE COURT:  It is a little tight, but I mean we don't

14  have a whole lot of room to do that differently.  I think from

15  your perspective, Ms. Goldberg, the thing is actually from your

16  perspective you will have the plaintiffs' position on May 12th,

17  so you really actually have two weeks to be able to craft your

18  *ex parte* letter to the extent --

19          MS. GOLDBERG:  Right.

20          THE COURT:  -- you're commenting on the plaintiffs'

21  position, and you'll be developing your own position in the

22  week.  It's really tight for plaintiff, frankly.  It's less

23  (indiscernible).

24          MR. SANSOLO:  I'm sorry, I'll allow you to finish.

25          THE COURT:  Go ahead, Mr. Sansolo.

1          MR. SANSOLO:  We do have a previous demand from

2    plaintiffs.  We have an idea of what some of that information

3    will be.  So it's not like we're working from scratch.  There

4    may be something that is, you know, additional that may be

5    provided from the plaintiffs, but we do have an idea of what

6    their initial demands will be, so we can work with that.

7          THE COURT:  As I'm pointing out here, you will

8    actually have two weeks from the time you receive whatever

9    revised demand they have before you have to submit the *ex parte*

10   letter to me.  I understand you'll have a one-week turnaround

11   for your response.  I imagine most of these issues will be

12   familiar.  And also, look, that's going to be the formal

13   exchange.

14          Ms. Vance, to the extent there's more information you

15   can provide or are willing to provide about the plaintiffs'

16   position in advance of May 12th, nothing stops you from doing

17   that.  I recognize that part of the reason we're setting the

18   schedule the way we are is because your proposal may be and

19   will be informed by the documents you're going to receive.  And

20   so, you know, that's why we're doing this on this particular

21   timetable.  But I think this is the best we can do given when

22   the documents are going to come in and when everything is going

23   to be turned around.  I think this is a workable approach.

24          For the *ex parte* letters to me, I'm going to set a

25   limit of ten pages in terms of what you provide to me.  You do

1   not have to use ten full pages, but I don't want more than ten

2   pages because then it starts to get to the point where I will

3   be swimming information in a way that may not be totally

4   helpful.  That said, if there are particular exhibits that you

5   want me to look at for particular issues, or if you want to

6   refer me to things that you've written elsewhere that will

7   provide background, that's fine, too.  I realize that will

8   ultimately mean I'm reading more than ten pages from each of

9   you, that's fine.  But let's just have a ten-page limit on what

10  you submit.  And when you do submit those *ex parte* letters, you

11  should also submit to me whatever you have sent to each other

12  in terms of the plaintiffs' demand and the defendants'

13  response.  I'd like to see exactly what you've exchanged, so

14  when you're commenting on it, I understand exactly what you're

15  commenting on.

16          MS. VANCE:  Okay.

17          THE COURT:  All right.  For now we will plan to use

18  the teleconference line when we next convene on June 2nd, but I

19  will ask that in your letters to me on May 26th that you let me

20  know your preference as to whether we'll proceed by

21  teleconference for the settlement conference or by video.  As I

22  said, I don't need more time than that to be able to set it up,

23  but that way we'll know.  And if you can have a joint proposal

24  on that, all the better.

25          So just to recap, May 12th will be the date for

1   plaintiff to send their demand letter, formal demand letter to

2   the defendants.  Defendants will send a formal response to

3   plaintiffs by May 19th.  The parties will submit their *ex parte*

4   letters by email to the Court on May 26th.  And then we have

5   blocked off the time for settlement conference negotiations

6   with the Court June 2 at 10:00 a.m. and June 21 at 10:00 a.m.

7           Okay, I think that covers everything on my agenda for

8   today.  Is there anything else we should address today from the

9   plaintiffs' perspective, Ms. Vance?

10          MS. VANCE:  No.  Thank you very much, your Honor.

11          THE COURT:  Okay, thank you.

12          And anything from the defendants' perspective,

13  Mr. Sansolo or Ms. Goldberg?

14          MR. SANSOLO:  No, nothing else, your Honor.

15          MS. GOLDBERG:  Nothing, your Honor.

16          THE COURT:  Okay.  Well, that is good.  I think we're

17  all set.  We will stand adjourned for today.  I'll look forward

18  to receiving your submissions in May and then to reconvening on

19  June 2nd, and I very much look forward to working with the

20  parties on this matter and hopefully making substantial

21  progress towards the settlement and hopefully even resolving at

22  least some of the issues in this case.

23          Until then, stay safe and healthy everybody, and if

24  there's anything else that requires my attention between now

25  and the June 2nd conference, you should certainly let me know

1    that by letter and we'll get that resolved in advance, if

2    necessary.

3             Thank you very everybody.  Take good care.

4             MS. VANCE:  Thank you, your Honor.

5             MR. SANSOLO:  Thank you.

6             (Proceedings concluded)

7    Certified to be a true and accurate

8    transcript of the digital electronic

9    recording to the best of my ability.

10   _____

11   U.S. District Court

12   Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25