1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2
   ---------------------------------x
3  M.G., P.C., C.J., M.J., J.R. and D.R.,
   individually and on behalf of all
4  similarly situated,

5                          Plaintiffs,

6                          Case No. 19-cv-639(CS)
       -vs-
7
   ANDREW CUOMO, in his official capacity
8  as the Governor of the State of New
   York, the NEW YORK STATE OFFICE OF MENTAL
9  HEALTH, ANN MARIE T. SULLIVAN, et al.,

10                         Defendants.

11 ---------------------------------x

12                         United States Courthouse
                           White Plains, New York
13
                           April 8, 2022
14
                    ** VIA TELECONFERENCE **
15

16 B e f o r e :
                           HONORABLE ANDREW E. KRAUSE
17                         United States Magistrate Judge

18
   A P P E A R A N C E S :
19
   PAUL, WEISS, RIFKIND, WHARTON & GARRISON
20      Attorneys for Plaintiffs
   BY:  BRIAN ERICKSON, law clerk
21
   NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL
22      Attorneys for Defendants
   BY:  OWEN T. CONROY
23
   ALSO PRESENT:  Numerous unidentified parties
24

25 *Proceedings recorded via digital recording device*

1          THE DEPUTY CLERK:  This is the matter of M.G. versus
2    Cuomo, docket number 19-cv-639.  The Honorable Andrew Krause
3    presiding.
4          Counsel, note your appearance for the record, starting
5    with plaintiff's counsel?
6          THE COURT:  Thank you, Ms. Brown.  Given the number of
7    people on the line, let's just have one representative from each
8    group or anybody who expects to be speaking introduce
9    themselves, and then if anybody else needs to chime in at some
10   point, that's completely fine, and you can just introduce
11   yourselves for the record when you take over on your particular
12   issue if that's necessary.
13         So let's start with the plaintiff.
14         MR. ERICKSON:  Good morning, Your Honor.  My name is
15   Brian Erickson, and I am a law clerk at Paul Weiss working under
16   the supervision of the Paul Weiss attorneys on this matter
17   representing the plaintiffs.
18         THE COURT:  Good morning, Mr. Erickson.
19         MR. ERICKSON:  Good morning.
20         MR. CONROY:  Good morning, Your Honor.  This is Owen
21   Conroy from the New York State Office of the Attorney General on
22   behalf of the defendants.
23         THE COURT:  Good morning, Mr. Conroy.
24         All right.  We are here for a status conference today.
25   It's been a little while since we were all together.  We have

PROCEEDINGS                              3

1  adjourned this conference several times as you have provided

2  updates along the way, and that's fine of course; but I thought

3  it did make sense to get together today, even after I received

4  your status report letter on Wednesday just so we could talk

5  about the progress of discovery and hear a little bit more about

6  things.

7          So, Mr. Erickson, if I might turn to you, I did read

8  the parties' proposal.  It sounds like you all are working

9  together cooperatively to figure out the next steps for ESI

10 discovery here.  The plan that you put forward in the letter

11 sounds generally fine to me.  It actually sounds like quite a

12 lot of work is going to be necessary over the next couple of

13 months, but I just wanted to hear a little bit more about where

14 we stand from the plaintiffs' perspective.  Recognize that I

15 have reviewed the letter, and I understand at least the status

16 of what you have come up with in the proposal.

17         MR. ERICKSON:  Thank you, Your Honor.  Yeah, we agree.

18 In our view, the parties have made progress on custodial

19 discovery.  We have reached significant agreement with respect

20 to a list of custodians from whom defendants' will collect

21 electronic communications, and we have agreed on a schedule for

22 defendants to begin running plaintiffs' ESI search terms.

23         Just to speak a little about the matter of custodians

24 and the matter of ESI search terms starting with custodians.  At

25 this time we have agreed on an approximate upper limit with

1  respect to the number of custodians at approximately 78.  As we

2  mentioned in our joint letter, this list is not entirely

3  finalized because some individuals at this time are identified

4  by title rather than by name, and so defendants have agreed to

5  identify those individuals by April 13th.

6         The next step will be for defendants to run initial

7  hit reports across plaintiffs' proposed set of custodians using

8  plaintiffs' proposed search terms, and defendants have agreed to

9  provide those reports by May 20th.  As always, plaintiffs

10 reserve the right to substitute custodians as appropriate

11 depending both on what the hit reports reveal and on any

12 reasonable requests for additional information that plaintiffs

13 may make to defendants and which defendants have agreed to

14 respond to.

15        Plaintiffs also note that while we anticipate that the

16 agreed-upon number of custodians will be sufficient, the

17 parties, as we acknowledged in the letter, recognize that

18 additional custodians might be identified over the course of

19 discovery and have reserved the right to make targeted requests

20 for additional custodians as necessary.

21        With respect to search terms, the parties are

22 currently negotiating ESI search terms.  Plaintiffs have

23 provided a proposed set of terms for defendants which, as I

24 mentioned, will be the basis for this first round of hit

25 reports.  Defendants will provide a search term counterproposal

```
 1   of its hit reports by June 1st.
 2            So overall, we feel that we are making strong progress
 3   towards reaching an agreement on custodial discovery.
 4            THE COURT:  Okay.  Mr. Erickson, just out of
 5   curiosity, I'm almost afraid to ask this question, but I will
 6   anyway:  How many proposed terms are in the plaintiffs' search
 7   term proposal?
 8            MR. ERICKSON:  So the current search term proposal --
 9   I don't have the exact number -- but the way that we have been
10   structuring it is for each RFD we have made sort of targeted
11   search terms.  It is a substantial number of search terms; the
12   idea being that we wanted to include sufficient limiters in, you
13   know, the different search terms in order to reduce the burden
14   of review on both sides.  I believe also, I have sort of broken
15   out certain search terms in order to accommodate the needs of
16   defendants' discovery technology.
17            THE COURT:  Okay.  And so that sort of anticipated my
18   next question in terms of the limiters.  That is something you
19   are working on, and these are Boolean terms, they have --
20            MR. ERICKSON:  Uh-huh.
21            THE COURT:  -- strings of conditions and whatnot to
22   try to be as targeted as possible?
23            MR. ERICKSON:  Yes, Your Honor.  That's the intention.
24   And we have sort of gone back and forth with defendants once or
25   twice sort of both providing sufficient limiters to get the
```

1  information that we need, as well as providing sufficient

2  limiters to make the searches, you know, capable of running on

3  relativity.

4          THE COURT:  Okay.  And as far as just the overall

5  picture, taking a few steps back, am I correct that this

6  process, this group of custodians and search terms that you are

7  working through together, will address all of the outstanding

8  discovery requests?  I mean, I know we had some outstanding

9  discovery associated with the original set of claims, all of

10 which was put on hold while we engaged in the lengthy process of

11 seeing if we could find a resolution to this case, and then

12 there is the additional discovery that was authorized as a

13 result of Judge Seibel's ruling on the motion to dismiss the

14 second amended complaint.

15          I just want to confirm that this process is

16 encompassing all outstanding discovery demands.  I recognize

17 that things may change a bit on the margins as you start to

18 receive documents and as things come back to you.  That's always

19 the case.  But I just want make sure that this is comprehensive

20 so that we are not going to find ourselves in a position nine

21 months down the road where we have got to go ahead and do a

22 whole separate round of negotiations for whatever requests you

23 are holding in reserve.

24          MR. ERICKSON:  Your Honor, it is our intention that

25 this round of discovery should cover the requests, all of the

1  requests that have been made.

2          THE COURT:  Okay.  Thank you, Mr. Erickson.  Anything

3  else that you wanted to add before I turn to Mr. Conroy?

4          MR. ERICKSON:  Nothing from the plaintiffs, Your

5  Honor.  Thank you.

6          THE COURT:  Okay.  Thank you.

7          All right.  Mr. Conroy, let me turn to you.  Again, I

8  am familiar with the letter, and Mr. Erickson has reviewed a few

9  elements of that and addressed some of the questions I had based

10 on my review of that letter.  Is there anything else that you

11 would like to add at this point on behalf of defendants that

12 hasn't been covered so far?

13         MR. CONROY:  No.  I think Mr. Erickson accurately

14 covered the details.  I mean, I think Your Honor sort of -- you

15 caught on to the fact that this is a heavy lift for us.  There

16 is quite a lot of work to do over the next couple of months.

17 This is a tremendous amount of data that we have agreed to look

18 at just given this long list of custodians; and, you know, your

19 question about how many proposed terms, there are quite, quite a

20 lot of search terms that we have agreed to run against this

21 universe.  So that's part of why it's sort of going to be --

22 going to take a little while for us just to report hit counts

23 because we really have to collect, you know, this massive amount

24 of data, get it into our litigation review platform and then run

25 these fairly complicated searches there, you know.  So we are

1   sort of saving the potential discussion over what search terms

2   are appropriate for a later day once we have some hit counts

3   that we can, you know, put some specific numbers on potential

4   burden of the review; but at this point, you know, we are

5   willing to do the work to get that data, run plaintiffs'

6   proposed searches, report hit counts, and then develop our own

7   kind of proposal and report hit counts on our counterproposal.

8   Then we can all be actually talking about, you know, what is the

9   review universe going to look like in this case, and how long is

10  it going to take?

11          THE COURT:  Okay.  I mean, look, I commend all of you

12  on the process here.  This is a very appropriate way to go about

13  evaluating the scope of review and making informed decisions

14  based on actual numbers instead of theoretical projections.  So

15  that's all to the good.

16          And the schedule that you have proposed for doing it,

17  it seems reasonable given the amount of work that's going to

18  have to happen on the defense side.  I guess I just want to

19  point out that I recognize that the next step after all of this,

20  assuming this all goes fluidly, is probably going to be the most

21  time-consuming, which is going to involve the actual review and

22  production of these documents.  So my concern, just from a case

23  management and administration perspective, is to make sure that

24  this part doesn't take any longer than it already has.  I mean,

25  we have had a couple of extensions of the deadlines.  I was

1  perfectly willing to grant those because it felt useful to the

2  process and productive overall to encourage more agreement, and

3  that's always a benefit for the Court certainly, and I think for

4  the parties as well.  But, you know, this is a 2019 case.  There

5  are important issues involved on both sides.  I am very familiar

6  with that from all the time we spent together on the settlement

7  negotiation, and I do want to just emphasize the need to really

8  move things forward, especially because I recognize that there

9  is going to be a lengthy review and production -- rolling

10  production, I am sure -- but still, a lengthy review and

11  production process to come even after all of this.

12          So I will say that I am going to really hold you to

13  these deadlines because it's important that we get through this

14  process and tee up any disputes that you may have so that we can

15  get those resolved as promptly as possible.  I really want to

16  make sure that we push forward here now that you are at the

17  point of actually collecting the data and processing it.

18          And, Mr. Conroy, there's some relatively tight

19  turnarounds here given the amount of work on your end.  So I am

20  hoping that those are realistic and that those can be done with

21  a maximum amount of efficiency.

22          Has there been discussion about what the hit reports

23  are going to look like?  Again, sometimes parties get bogged

24  down in a disconnect between expectation and reality in terms of

25  what is coming out of this review and hit report process.  So I

1 would strongly encourage you to have some discussions, if you

2 haven't already, about what those hit reports are going to be

3 able to provide because different platforms provide different

4 types of reporting, functionality, and again, it strikes me that

5 there is a possibility that we could find ourselves in mid May

6 with a hit count report that's somehow different than what the

7 defendants -- that the plaintiffs were expecting to receive from

8 the defendants.

9         So I would encourage you again, if you haven't

10 already, to have some discussions about that so expectations can

11 be set properly, and everyone can be sure that they understand

12 what's coming.  Okay, Mr. Conroy?

13         MR. CONROY:  Yes, Your Honor.  Actually, we have had

14 some of those discussions already.  So I think we are on the

15 same page about what the hit reports will look like, and so

16 hopefully that will be a smooth process.

17         THE COURT:  Okay.  Well, I'm glad to hear that.  I

18 mention that just from experience, both as a litigator and as a

19 judge.  Sometimes there is just a breakdown there, and so I'm

20 glad that you have addressed that in advance.

21         Mr. Conroy, any concerns or issues that you anticipate

22 as we sit here today that you wanted me to know about?

23         MR. CONROY:  No, nothing additional, Your Honor.  You

24 know, we hear you about holding to the deadlines.  I mean, the

25 only thing I would say is some of this is, you know, obviously,

1  driven by just the technology and just moving this huge amount

2  of data.  You know, we are working closely with our litigation

3  support folks, who are really the experts on this.  You know, at

4  the moment we hit any kind of unexpected technical delay, we

5  will let the plaintiffs know, but hopefully, you know, the

6  process will run smoothly.

7           THE COURT:  Okay.  I guess let me point out as far as

8  the deadlines, my standard scheduling order, which is not really

9  relevant in this case because it's not a consent case, and the

10  standard scheduling orders of many of the judges here in White

11  Plains provide parties with a little bit of wiggle room in a

12  sense that if you need to move one of these deadlines by a

13  couple of days because there's some sort of lagging in the

14  uploading process or a server failure or whatever it might be,

15  you can do that as long as it doesn't affect the overall

16  deadline of June 22nd to submit letters about the issues as

17  contemplated in your April 6th proposal.

18           So again, you don't necessarily need to come back to

19  me and say, well, you need, you know, from May -- instead of

20  May 20th, we are going to need until May 23rd.  If you can agree

21  on that, that's fine.  If you can't agree on it, then by all

22  means, come to me.  But if there's been a breakdown along the

23  way where the whole schedule is being delayed by a substantial

24  amount of time, then I do expect to hear from you about that

25  well in advance of June 22nd, but again, I am just pointing out

1  that I don't necessarily need to hear from you if things are

2  slipping by a day or two on either side, and you can agree to

3  give each other a little bit of space to get whatever needs to

4  get done done.  But I do hope that, consistent with this

5  proposal, that by June 22nd, I will see these letters so that by

6  our next conference we can actually have a substantive

7  discussion about any issues that are in dispute and so that

8  actual review and production can begin, you know, as shortly

9  after that next conference as possible.

10         I think what we should do is set our next conference

11  as an in-person conference or at least plan for that to be an

12  in-person conference.  We can also make the conference available

13  by telephone.  Obviously, we have quite a few folks in

14  attendance here today.  I don't expect that all 15 of you would

15  be coming to a conference in person in White Plains, but we

16  could make it available by the same AT&T conferencing system so

17  that people could listen in if they wanted to.  But if there are

18  going to be disputes to be resolved, I think it would be helpful

19  to do that in person.

20         If it turns out that you submit a joint letter, and

21  everything is proceeding, and you have a plan to move forward,

22  then it's likely that we would not need to do that conference in

23  person.  I am just anticipating the possibility that there would

24  be some issues for me to resolve even though, again, I

25  appreciate and acknowledge the fact that you have been working

1  together very productively and reasonably efficiently so far.

2          So we will go ahead and look at the calendar and find

3  a date for that, but before we do, is there anything else that

4  we should address today from the plaintiffs' perspective,

5  Mr. Erickson?

6          MR. ERICKSON:  Nothing from the plaintiffs, Your

7  Honor.  Thank you.

8          THE COURT:  All right.  And anything further from the

9  defendants' perspective, Mr. Conroy?

10          MR. CONROY:  Nothing further.  Thank you, Your Honor.

11          THE COURT:  All right.  So let's look at calendars and

12  pick a date again.  Make sure you find a time that allows for an

13  in-person conference because we may need to do that.  Those

14  letters are due by June 22nd.  We can look to the last week of

15  June for a conference, I think is probably the best that we can

16  do Wednesday, June 29th at 10:00 a.m., or we could do Thursday,

17  June 30th at 2:00 p.m.

18          Mr. Erickson, on the plaintiffs' side, any preference

19  there as between the 29th in the morning or the 30th in the

20  afternoon?

21          MR. ERICKSON:  No preference, Your Honor.

22          THE COURT:  Okay.  Mr. Conroy?

23          MR. CONROY:  I think we would -- our preference would

24  be Wednesday if that's possible, but we could do either day.

25          THE COURT:  Let's say Wednesday, June 29th at

1  10:00 a.m.  And, again, we will plan for that to be an in-person

2  conference if there are disputes to resolve, and it can be a

3  telephone conference if everything is in order and you have

4  agreement on the path forward.  So we will know that basically

5  based on whatever you submit on June 22nd, and we can confirm

6  with you either by ECF or informally after we receive those

7  letters and have a chance to review where things stand.

8          If you hit any serious snags between now and then, let

9  me know because if there is a reason to bring you back in sooner

10 for a telephone conference or an in-person conference, we can do

11 that, but my hope and expectation is you will be able to stick

12 to the schedule that you have proposed.  I will make a notation

13 in the minute entry from today's proceeding that the schedule

14 that you have proposed is adopted, and we will go from there.

15         So I will look forward to speaking with you again and

16 quite possibly seeing you in person on June 29th at 10:00 a.m.

17 Until then, stay safe and stay healthy, everybody.  We are

18 adjourned for today.  Take care.

19         MR. ERICKSON:  Thank you, Your Honor.

20         MR. CONROY:  Thank you, Your Honor.

21                      -o0o-

22

23

24

25