

# DISABILITY RIGHTS NEW YORK

www.drny.org   mail@drny.org   518-432-7861

June 8th, 2022

**VIA ECF and Email**
Hon. Andrew Krause
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

Re: *M.G. v. Cuomo*, No. 19-CV-0639 (CS) (AEK), Dispute re Redacted Census Documents

Dear Judge Krause:

Plaintiffs write regarding a dispute over Plaintiffs' discovery request for the production of a discrete set of unredacted censuses of putative class members. The parties met and conferred, but have been unable to resolve the dispute. Accordingly, pursuant to Local Civil Rule 37.2 and Rule 2.A of Your Honor's Individual Practices, Plaintiffs respectfully request an informal conference concerning Plaintiffs' anticipated motion to compel the production of these unredacted documents.

### A. Background

Plaintiffs initially filed this lawsuit to challenge Defendants' practice of institutionalizing indigent people in state prisons because they need disability-related services in the community. On August 27, 2020, Plaintiffs filed a Second Amended Complaint ("SAC") adding new claims on behalf of three named plaintiffs and a putative "Discharge Class" of persons with serious mental illness released into segregated settings and/or placed at risk of institutionalization by a lack of community-based mental health housing and supportive services.

Since the beginning of this case, Plaintiffs have sought the discovery necessary for them to file a motion for class certification, including censuses that concern persons released from prison to homelessness, persons held in prolonged incarceration, and persons held in prisons on so-called RTF status past their maximum expiration dates. Defendants have provided certain censuses, but have redacted all individually identifying information, including that of putative class members. As a result, Plaintiffs are unable to compare across data sets or determine the number of individuals on each type of census over time.

Plaintiffs need the unredacted censuses to most effectively demonstrate numerosity of the General Class, RTF Subclass, and Discharge Class. For example, Defendants provided 38 "Priority

DRNY has offices in Albany, Brooklyn and Rochester.
Our mailing address is:
279 Troy Road, Ste 9 PMB 236 Rensselaer, NY 12144.

Toll Free: **1-800-993-8982**   TTY: **518-512-3448**
Fax: **518-427-6561**

Releases Charts" for November 2019 to April 2021, which show the prolonged incarceration of potential General Class members as of specific dates. Based on our best efforts at deduplication, we calculate that in the span of just these 17 months there were 231 Non-SARA status individuals with serious mental illness held past their release dates. The amount of time people were held past their release dates ranges from one day to 1062 days. The last census that Defendants produced, from April 2021, shows 11 people with serious mental illness, who are not subject to SARA, held past their release dates.[1] However, absent identifying information, there is no way to determine if the people in that census were also included in previous censuses. Therefore, identifying information is necessary to know the class size with certainty.

### B. The Parties' Attempts to Resolve the Dispute

The parties have discussed the issue extensively by email and teleconference, but Defendants have rejected each of the solutions that Plaintiffs proposed. Defendants refused to agree to a qualified protective order that would allow the production of unredacted censuses. Defendants refused to provide anonymous identifiers to allow Plaintiffs to compare data across censuses. Defendants also refused to waive any arguments regarding numerosity. Upon information and belief, Defendants are withholding critical information that would allow Plaintiffs to most effectively satisfy that burden.

On September 6, 2019, Plaintiffs asked Defendants to agree to a qualified protective order under 45 C.F.R. §§ 164.512(e)(1)(ii)(B) and (iv)(A), that would allow the exchange of unredacted information, without the need for a court order, as necessary during the pendency of the litigation. After multiple requests for a decision, Defendants stopped responding.[2] Nonetheless, Plaintiffs continued to seek necessary discovery. For example, in their interrogatories to Defendant Sullivan, Plaintiffs requested "a Census with anonymous identifiers of Persons with Serious Mental Illness released from DOCCS Custody to a homeless shelter . . . ." However, in February 2022, Defendants objected to providing anonymous identifiers because, according to them, "producing any identifiers concerning non-party offenders may violate their privacy rights."

On March 4, 2022, Plaintiffs emailed Defendants to raise deficiencies in the supplemental interrogatory responses and clarified that Plaintiffs requested only *anonymous* identifiers, and so there are no relevant privacy rights that support Defendants' response. On March 17, 2022, Defendants replied that they did not understand Plaintiffs' contention that they were further required to provide identifiers regarding the anonymous non-party offenders. On March 25, 2022, Plaintiffs emailed Defendants to revisit, among other things, the global issue of the need for unredacted data or anonymized identifiers for certain census documents. On April 4, Defendants replied:

---

[1] Plaintiffs also requested unredacted versions of other censuses that might allow us to determine the OMH levels of persons held in prolonged confinement in the other 43 priority release charts that predate November of 2019, when Defendants first starting tracking OMH levels.

[2] Plaintiffs can provide copies of the correspondence referenced herein as well as the excel sheet provided to Defendants that lists the 179 requested census documents, if helpful.

> Mental Hygiene Law [("MHL")] 33.13 prohibits Defendants from releasing the names and other identifying information of non-party patients or clients. Pursuant to their obligations under this statute, Defendants have and will continue to redact non-party patient information from documents they produce in this case. We understand that Plaintiffs have proposed assigning and substituting anonymized unique identifiers as an alternative to redacting non-party patient information. This undertaking would be extremely burdensome and cannot be practically implemented, given both the volume of ESI Defendants are producing in this case and the amount of non-party information contained in that ESI. Defendants cannot feasibly assign unique identifiers to every non-party patient referenced in Defendants' production and substitute those identifiers in for every reference to non-party patient information that appears in Defendants' productions.

On April 5, 2022, Plaintiffs explained they only seek anonymized identifiers on a limited set of census documents. Plaintiffs also explained that they are willing to seek a court order, which would allow unredacted production, eliminating any time required to assign anonymized identifiers. Plaintiffs also offered a third solution: Defendants waive defenses regarding numerosity, and Plaintiffs withdraw their pre-certification request for unredacted censuses or anonymized identifiers. On April 12, 2022, Defendants agreed to discuss the anonymized identifier request with their clients. On April 26, 2022, Plaintiffs provided Defendants with a list of seven types of censuses[3] made up of 179 identified Excel files that account for approximately 1.4% of Defendants' production to date. Plaintiffs informed Defendants that going forward there may be more documents that need anonymized identifiers as productions continue.

On April 29, 2022, Plaintiffs asked to confer with Defendants regarding several discovery issues, including the request for anonymized identifiers. On May 13, 2022, shortly before the parties' scheduled meet and confer, Defendants responded:

> It will not be feasible for Defendants to substitute in anonymous identifiers for all references to third party patients in the 179 documents identified by Plaintiffs. Defendants also cannot agree to waive any arguments with respect to class certification. Pursuant to MHL 33.13, Defendants cannot release third party patient information absent a court order finding that the interests of justice significantly outweigh the patients' need for privacy. Defendants do not agree that such a finding is appropriate here, and so Defendants cannot consent to such a finding and order.

On a call later that day, Defendants reiterated that they would not agree to produce the censuses with unique anonymous identifiers because they view the task as "unfeasible" and overly burdensome. Plaintiffs again offered to enter into a qualified protective order to remove any burden for Defendants, but Defendants rejected this approach on the grounds that they do not believe Plaintiffs' request satisfies MHL § 33.13. When asked why, Defendants stated simply that they do not believe Plaintiffs need the names in the censuses and confirmed that Defendants would oppose a motion for the production of unredacted documents.

---

[3] The categories of censuses are Priority Release Charts, RTF Censuses, Homeless Release Trackers, SMI Release Reports, SPOA Application Lists, "Past Release Date" documents, and Special Residency Conditions Reports.

In sum, consistent with their obligation under Fed. R. Civ. 37(a)(1), Plaintiffs have in good faith conferred with Defendants in an effort to obtain the discovery sought without court action.

### C. Plaintiffs Are Entitled to Unredacted Discovery of Certain Census Documents

#### 1. The New York Mental Hygiene Law is Inapplicable to this Federal-Question Case.

In federal-question cases, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") preempts state law privileges under Federal Rule of Evidence 501. "[E]videntiary privileges that are applicable to federal-question suits 'are given not by state law but by federal law, . . . which does not recognize a physician-patient (or hospital-patient) privilege. [Rather,] Rule 501 . . . makes federal common law the source of any privileges in federal-question suits.'" *Bayne v. Provost*, 359 F. Supp. 2d 234, 239 (N.D.N.Y. 2005) (citation omitted). In this case, only federal questions are at issue and MHL § 33.13 is inapplicable. *See Doe v. Syracuse*, 481 F. Supp. 3d 66, 73 (N.D.N.Y. 2020) (applying federal law instead of MHL § 33.13 because the case was premised on a federal question); *cf. Romano v. SLS Residential Inc.*, 298 F.R.D. 103, 106, 111–12 (S.D.N.Y. 2014) (applying MHL § 33.13 "to the extent that defendants may be asserting what amounts to an evidentiary privilege" because only state law claims remained). Plaintiffs' claims are governed solely by federal law, and Defendants' reliance on MHL § 33.13 as a basis to withhold discovery is therefore erroneous.[4]

#### 2. Disclosure of the Censuses Pursuant to a Court Order is Appropriate Under HIPAA.

Under 45 C.F.R. § 164.512(e)(1)(i), "a covered entity may disclose protected health information in the course of any judicial or administrative proceeding in response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order."[5] "It is a routine matter in litigation for courts to require production, where necessary, of records that reflect medical treatment of non-parties, sometimes with the identities of the patients redacted. . . This practice is fully consistent with the privacy provisions of HIPAA." *Caines v. Addiction Rsch. & Treatment Corp.*, No. 06-cv-3399, 2007 WL 895140, at *1 (S.D.N.Y. Mar. 20, 2007) (citations omitted). For example, the court in

---

[4] There is a limited exception in HIPAA's implementing regulations where "[t]he provision of State law relates to the privacy of individually identifiable health information and is more stringent than a standard, requirement, or implementation specification adopted under subpart E of part 164 of this subchapter." 45 C.F.R. § 160.203(b). However, courts have repeatedly held that this exception only applies where state law provides the rule of decision. *See In re Zyprexa Prod. Liab. Litig.*, 254 F.R.D. 50, 52 (E.D.N.Y. 2008), *aff'd*, No. 04-MD-1596, 2008 WL 4682311 (E.D.N.Y. Oct. 21, 2008) (holding that Connecticut's objections to producing protected health information ("PHI") were subject only to federal privilege law because Connecticut only asserted a federal claim); *see also Williams v. City of Philadelphia*, No. CIV.A. 08-1979, 2014 WL 5393988, at *3 (E.D. Pa. Oct. 22, 2014) (holding HIPAA preempted state privacy law).

[5] Disclosure may also be permitted under 45 C.F.R. § 164.512(e)(2) without a court order if reasonable efforts to secure a qualified protective order were made, or one is in place. Plaintiffs made numerous reasonable attempts to secure a qualified protective order, to no avail.

*Allen v. Koenigsmann* ordered DOCCS to produce documents relating to the medical conditions and treatment of potential members of a putative class that contained PHI, including names, birth dates, and medical information. Having balanced the privacy interests of the putative class members and incarcerated individuals with the importance of the discovery for prosecution of the litigation, as well as the impracticability of obtaining written releases for all members, disclosure was warranted. No. 19-CV-8173, 2021 WL 5086272 (S.D.N.Y. Nov. 2, 2021); *see also MacNamara v. City of New York*, No. 04-cv-9612, 2006 WL 3298911, at *7 (S.D.N.Y. Nov. 13, 2006) (ordering unredacted production of arrest records before class certification).

Plaintiffs' need for these documents is significant. The limited set of unredacted censuses is needed to ascertain and establish numerosity. Plaintiffs need either names or unique anonymized identifiers to generate de-duplicated over-time data. This is particularly important given Defendants' clear intention to challenge numerosity. Plaintiffs also need unredacted information to track potential class members across systems, i.e. from DOCCS to OMH, and from incarceration to discharge. After consultation with counsel's data analyst, Plaintiffs also have concerns about data quality that unredacted information could confirm or allay. Defendants have sole possession of this information, leaving Plaintiffs without quality, useable data, and placing Plaintiffs at a great disadvantage in their ability to prosecute this case.

The public interest in the continuation of this litigation is also significant. This is a statewide class action seeking to enforce the civil rights of people with disabilities, who are incarcerated and homeless. *MG* addresses several issues of first impression, and it has the potential for nationwide impact. Many of the putative class members are people of color who are multiply marginalized. If the case were to be defeated at class certification for failure to prove numerosity, the consequences of un-redressed rights violations could be dire and far reaching for this highly vulnerable population. As in *Williams*, the people whose PHI would be disclosed are the same people who Plaintiffs seek to protect from serious rights violations that jeopardize their health, safety and freedom.[6] They are already protected by a comprehensive protective order that strictly limits who can see the information, dictates use for litigation only, and prohibits re-disclosure outside of the litigation. *See* ECF 42. Plaintiffs are, of course, amenable to negotiating an updated protective order, or a qualified protective order, should the Court require or recommend this.

### Conclusion

Plaintiffs request that the Court allow Plaintiffs to move for the unredacted production of the 179 requested censuses.

Respectfully submitted,
/s/ Elizabeth S. Woods

CC: Counsel of Record (Via ECF)

---

[6] Should the Court determine that MHL § 33.13(e) is controlling, for these same reasons, the interests of justice significantly outweigh the need for confidentiality, *see id.* § 33.13(c)(1), as Plaintiffs are seeking to vindicate the rights of these putative class members and discovery is already governed by a comprehensive protective order.