IT OUTUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

M.G., P.C., C.J., M.J., J.R., D.R., S.D., W.P., and D.H., individually and on behalf of all similarly situated,

                                                                                 Plaintiffs,

        -against-

ANDREW CUOMO, in his official capacity as the Governor of the State of New York, the NEW YORK STATE OFFICE OF MENTAL HEALTH, ANN MARIE T. SULLIVAN, in her official capacity as the Commissioner of the New York State Office of Mental Health, the NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, ANTHONY J. ANNUCCI, in his official capacity as the Acting Commissioner of the New York State Department of Corrections and Community Supervision, ANNE MARIE MCGRATH, in her official capacity as Deputy Commissioner of the New York State Department of Corrections and Community Supervision,

                                                                           Defendants.

7:19-cv-0639 (CS) (AEK)

------------------------------------------------------------------------ x

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF UNREDACTED CENSUS DOCUMENTS

**Table of Contents**

Page

BACKGROUND ............................................................................................................................. 1

LEGAL STANDARD .................................................................................................................... 2

ARGUMENT .................................................................................................................................. 3

I.   The Requested Unredacted Censuses Are Relevant to Plaintiffs' Claims and Rule 23 Burden, and Production Would Not Impose an Undue Burden on Defendants. ...................... 3

II.  Disclosure of Unredacted Censuses Is Governed By and Appropriate Under Federal Law. ............................................................................................................................................. 5

III. *Brooks v. Roberts* Does Not Support Defendants' Attempt to Withhold Discovery. ................ 7

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Barella v. Village of Freeport*,
   296 F.R.D. 102 (E.D.N.Y. 2013) ...................................................................................6

*Berger v. Heckler*,
   771 F.2d 1556 (2d Cir. 1985) ........................................................................................7

*Bishop v. N.Y.C. Dep't of Hous. Pres. & Dev.*,
   141 F.R.D. 229 (S.D.N.Y. 1992) ...................................................................................8

*Blecher* v. *Dep't of Hous. Pres. & Dev. Of City of New York*,
   No. 92 CIV. 8760, 1994 WL 144376 (S.D.N.Y. Apr. 19, 1994) ...................................8

*Brooks v. Roberts*,
   251 F. Supp. 3d 401 (N.D.N.Y. 2017) .......................................................................7, 8

*Casale v. Kelly*,
   257 F.R.D. 396 (S.D.N.Y. 2009) ...................................................................................8

*City of New York v. Bleuler Psychotherapy Ctr., Inc.*,
   181 Misc. 2d 994, 695 N.Y.S.2d 903 (Sup. Ct. 1999) ...................................................6

*Cutler v. Perales*,
   128 F.R.D. 39 (S.D.N.Y 1989) ...........................................................................8, 9, 10

*Daniels v. City of New York*,
   198 F.R.D. 409 (S.D.N.Y. 2001) ................................................................................8, 9

*Davis v. City of New York*,
   10 Civ. 0699 (SAS) (S.D.N.Y. Aug. 29, 2013) .............................................................8

*Dealer Computer Servs., Inc. v. Curry*, No. 12-CV-3457, 2013 WL 499520, at *1
   (S.D.N.Y. Feb. 7, 2013) ................................................................................................2

*Doe v. Syracuse*,
   481 F. Supp. 3d 66 (N.D.N.Y. 2020) .........................................................................5, 6

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
   314 F.R.D. 85 (S.D.N.Y. 2016) .....................................................................................2

*Floyd v. City of New York*,
   283 F.R.D. 153 (S.D.N.Y. 2012) ...................................................................................8

*Folsom v. Blum*,
   87 F.R.D. 443 (S.D.N.Y.1980) ..................................................................................................8

*Jane B. v. N.Y.C. Dep't of Social Services*,
   117 F.R.D. 64 (S.D.N.Y. 1987) ................................................................................................8

*Koster v. Perales*,
   108 F.R.D. 46 (E.D.N.Y. 1985) ................................................................................................9

*Loper v. N.Y.C. Police Dep't*,
   135 F.R.D. 81 (S.D.N.Y.1991) .................................................................................................8

*National Abortion Federation v. Ashcroft*,
   2004 WL 555701 (S.D.N.Y. Mar. 19, 2004) ............................................................................6

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978) .................................................................................................................2

*Reynolds v. Giuliani*,
   118 F. Supp. 2d 352 (S.D.N.Y. 2000) ................................................................................8, 10

*Romano v. SLS Residential Inc.*,
   298 F.R.D. 103 (S.D.N.Y. 2014) ..............................................................................................5

*Wal-Mart Stores, Inc. v. Dukes*,
   564 US 338 (2011) ..................................................................................................................10

*Westchester Indep. Living Ctr., Inc. v. State Univ. of New York.*,
   331 F.R.D. 279 (S.D.N.Y. 2019) ....................................................................................8, 9, 10

*In re Zyprexa Prods. Liab. Litig.*,
   254 F.R.D. 50, *aff'd*, No. 04-MD-1596, 2008 WL 4682311 (E.D.N.Y. Oct. 21,
   2008) .........................................................................................................................................5

**Other Authorities**

45 C.F.R. § 160.203(b) ....................................................................................................................6

45 C.F.R. § 164.512(e)(1)(i) ...........................................................................................................5

45 C.F.R. § 164.512(e)(2) ...............................................................................................................5

Fed. R. Civ. P. 23 .......................................................................................................................2, 10

Fed. R. Civ. P. 26 .............................................................................................................................2

Plaintiffs respectfully submit this memorandum of law in support of their motion to compel the production of 179 unredacted censuses of putative class members, and any updates or more-current versions of these documents produced in future discovery. *See* Declaration of Elizabeth S. Woods, Ex. A. Unredacted censuses are necessary for Plaintiffs to demonstrate numerosity for class certification and determine whether there exists adequate community-based mental health housing and supportive services to support the purported classes. The information contained in the censuses is sufficiently protected by the confidentiality provisions in the existing protective order (ECF No. 42), and unredacted disclosure is not only permitted under Health Insurance Portability and Accountability Act ("HIPAA") pursuant to a court order but will impose minimal burden on all parties. Production of unredacted censuses is also permitted under HIPAA following entry of a qualified protective order ("QPO") containing return-or-destroy language, which Plaintiffs are willing to add to the current protective order. Absent unredacted censuses, Plaintiffs request the production of censuses using anonymous identifiers.

## BACKGROUND

Plaintiffs seek discovery necessary to support their claims, namely censuses of the population of persons released from prison to homelessness, persons held in prolonged incarceration, and persons held in prisons on residential treatment facility ("RTF") status past their maximum expiration dates. While Defendants produced some censuses, they redacted nearly all individually identifying information, including that of putative class members. Plaintiffs are thus unable to draw comparisons across data sets or determine the number of individuals on each type of census over time. Plaintiffs need versions of these censuses that contain either the names of each person or unique anonymized identifiers for each person in order to generate de-duplicated, over-time data and to track potential class members across systems (*i.e.*, from DOCCS to OMH,

and from incarceration to discharge). Plaintiffs also have concerns about data quality that unredacted information could confirm or allay.

The parties have conferred in good faith but were unable to resolve the dispute. *See* ECF No. 220. Defendants rejected Plaintiffs' offers of either a QPO, anonymized identifiers, or waiving numerosity challenges that would eliminate the need for this unredacted data at the precertification stage. The parties raised the dispute in pre-motion letters (ECF Nos. 220 and 221) and, on June 29, 2022, the Court held a pre-motion conference and ordered further briefing.[1]

## **LEGAL STANDARD**

"Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevance" under Rule 26 "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "It is also established that the discovery rules are to be given a broad and liberal construction to effectuate their purpose of ensuring that civil trials are not conducted in the dark." *Dealer Computer Servs., Inc. v. Curry*, No. 12-CV-3457, 2013 WL 499520, at *1 (S.D.N.Y. Feb. 7, 2013) (cleaned up). "[T]he party objecting to a discovery request bears the burden of showing why it should be denied." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85, 87 (S.D.N.Y. 2016) (citation omitted).

---

[1] As the Court suggested at the June 29, 2022 conference, Plaintiffs are willing to discuss "a stipulation that could obviate the need of the class-certification phase of this case entirely." June 29, 2022 Tr. 28:17–18. Plaintiffs' counsel have raised the issue with Defendants and are awaiting their response.

**ARGUMENT**

I. **The Requested Unredacted Censuses Are Relevant to Plaintiffs' Claims and Rule 23 Burden, and Production Would Not Impose an Undue Burden on Defendants.**

The discovery at issue is a discrete set of 179 census documents, comprising less than 1.5% of all discovery produced to date. The categories of census documents are:

**Priority Release Lists and "Past Release Date" Censuses**: Twice-monthly (though it varies) lists generated by DOCCS showing persons in custody held past a lawful release date, other than those on RTF status, and the OMH level of each person. These are point-in-time censuses, so the same people can appear on multiple lists.

**RTF Censuses**: Different censuses compiled by DOCCS and OMH that track OMH levels of each person, RTF admission dates, scheduled lawful release dates and actual release dates, and reasons for RTF admission.

**Homeless Release Trackers**: Tracks actual release dates, type of release, county of release, OMH level of each person, housing plan (e.g., shelter or transitional residence), parole office, serious mental illness ("SMI") designation, and assisted outpatient treatment ("AOT").

**SMI Release Reports**: Tracks facility, release date and type, OMH level, diagnosis, county of release, and SMI Classification, and may indicate hospitalization.

**SPOA Application Lists**: Lists OMH level of each persons, release date, facility, parole bureau, Single Point of Access ("SPOA") or Reentry Coordination System housing referral type, and housing referral date.

**Special Residency Conditions Reports**: Lists release date and region, Sexual Assault Reform Act status, facility, OMH level of each person, OMH caseload participation, reason for "hold," and post-release maximum supervision date.

Defendants produced these documents with redactions, taking out individually identifying information for non-Named Plaintiffs, or in some cases redacting the entire document.[2]

Producing unredacted censuses is proportional to the needs of the case and would not pose an undue burden or expense to Defendants. Moreover, the redacted information in these censuses is relevant to Plaintiffs' claims, particularly showing numerosity for class certification and

---

[2] Many census documents, mainly for years 2020–2022, have not yet been produced and remain outstanding.

assessing the adequacy of available community-based mental health housing and supportive services.

First, the data is needed to show the size of the putative classes by comparing similar data. For example, Defendants have produced 81 Priority Release Lists with identifying information redacted, and have produced Homeless Release Trackers for 2019 and 2020. Without the ability to track these releasees over time, Plaintiffs cannot ascertain the total number of class members. *See* Declaration of Leighann Starkey ("Starkey Decl.") ¶¶ 8–9. Any estimates would necessarily rely on assumptions that may or may not be true, and which could only be validated using unredacted or anonymized data.

Second, Plaintiffs need unredacted censuses to compare data across different charts and systems. For example, Plaintiffs need unredacted censuses to match individuals from the Homeless Release Trackers with their entries on SPOA Application lists for community-based mental health housing and supportive services. Plaintiffs also need unredacted censuses to determine the locations to which putative class members are discharged, which requires matching data from the Priority Release Lists and RTF Censuses with the Homeless Release Trackers. Without this, Plaintiffs are left to guess the housing and services needs of the release population and the extent of Defendants' deficit in meeting those needs.

Third, Plaintiffs need unredacted censuses to confirm or allay concerns regarding data quality, including the ability to compare data produced by OMH and DOCCS.[3] *See* Starkey Decl. ¶ 8. This will also be relevant to any mootness challenges that Defendants may proffer after Plaintiffs file for class certification.

---

[3] Discovery has already revealed instances where shortcuts taken by DOCCS' facility staff led Defendants to erroneously omit cases from its priority release lists. *See* ECF Nos. 113 at 10, 114-10 at 3.

4

## II. Disclosure of Unredacted Censuses Is Governed By and Appropriate Under Federal Law.

Disclosure of unredacted censuses is appropriate under HIPAA and its implementing regulations. Specifically, "a covered entity [here, DOCCS and OMH] may disclose protected health information in the course of any judicial or administrative proceeding . . . [i]n response to an order of a court . . . , provided that the covered entity discloses only the protected health information expressly authorized by such order." 45 C.F.R. § 164.512(e)(1)(i).[4] The protective order already in place in this case contemplates the disclosure of protected health information ("PHI"), including mental health, psychiatric, medical, and other record of incarcerated or formerly incarcerated individuals or individuals under the community supervision of DOCCS, regardless of whether they are a member of the putative classes. *See* ECF No. 42 at 2–3 & n.2. Accordingly, disclosure is permitted under HIPAA.

Because this is a case involving only federal questions, HIPAA—not MHL § 33.13—governs the disclosure of PHI and other evidentiary privileges. "It is axiomatic that state privilege laws do not govern in federal question cases." *In re Zyprexa Prods. Liab. Litig.*, 254 F.R.D. 50, 52, *aff'd*, No. 04-MD-1596, 2008 WL 4682311 (E.D.N.Y. Oct. 21, 2008) (holding that Connecticut's objections to producing PHI were subject only to federal privilege law because Connecticut only asserted a federal claim). In *Doe v. Syracuse*, for example, the Northern District rejected the exact argument Defendants proffer here—namely, that the MHL § 33.13 standard permits defendants to withhold discovery in a federal question case. 481 F. Supp. 3d 66, 70, 73

---

[4] Disclosure is also permitted under HIPAA without a court order if reasonable efforts to secure a QPO were made, or if one is in place. 45 C.F.R. § 164.512(e)(2). The current protective order (ECF No. 42) would meet the standard of a QPO with the addition of language requiring the return or destruction of discovery within 60 days of the end of this case and any continuing obligations under it. Although Plaintiffs remain open to this alternative, Defendants have rebuffed Plaintiffs' discussions.

(N.D.N.Y. 2020). With the defendants themselves conceding the issue on appeal, the *Doe* court held that it was "clearly erroneous" for the magistrate to apply the MHL to determine whether potentially confidential discovery should be disclosed as "federal rather than state law controls" in federal-question cases. *Id.* at 73; *cf. Romano v. SLS Residential Inc.*, 298 F.R.D. 103, 106, 111–12 (S.D.N.Y. 2014) (applying MHL § 33.13 "to the extent that defendants may be asserting what amounts to an evidentiary privilege" because only state law claims remained).

The "antipreemption" exception of the HIPAA regulations, which can allow a state law that shields certain health information to control if it is more stringent than federal law, does not apply to this information either. 45 C.F.R. § 160.203(b). In *National Abortion Federation v. Ashcroft*, the court thoroughly examined whether the "antipreemption" HIPAA exception makes (allegedly) more stringent state privacy laws controlling over federal questions in federal court and determined that it did not.[5] No. 03 CIV. 8695, 2004 WL 555701, at *5 (S.D.N.Y. Mar. 19, 2004). The court explained that, although "Congress spared more stringent state statutes from preemptive effect," "[i]t did not . . . give more stringent state regulations the force of federal law." *Id.* Other courts have similarly recognized that "New York State law does not govern discoverability and confidentiality in federal civil rights actions." *Barella v. Village of Freeport*, 296 F.R.D. 102, 107 (E.D.N.Y. 2013).

Even if MHL § 33.13 governed in this federal-question case (which it does not), the standard would be satisfied nonetheless. This is a statewide class action of national importance. A statement of interest has been filed by the U.S. Department of Justice. Plaintiffs seek to enforce the rights of putative class members who are indigent and often multiply marginalized people of color with disabilities, who, absent this litigation, are unlikely to have the resources to enforce

---

[5] Plaintiffs do not concede that MHL § 33.13 is more stringent than HIPAA. Nor is that inquiry relevant.

6

their rights. The existent protective order (including any QPO the court may enter) provides that any PHI obtained would be confidential and could not be shared outside of the litigation. The interests of justice therefore significantly outweigh the need for confidentiality. *See City of New York v. Bleuler Psychotherapy Ctr., Inc.*, 181 Misc. 2d 994, 997, 695 N.Y.S.2d 903, 906 (Sup. Ct. 1999) (interests of justice standard met when case was of great public importance and a protective order would keep disclosed PHI confidential).

### III.    *Brooks v. Roberts* Does Not Support Defendants' Attempt to Withhold Discovery.

Plaintiffs' need for the unredacted census data is not obviated by the ability of the Named Plaintiffs to obtain injunctive relief. As an initial matter, Defendants' reliance on *Brooks v. Roberts*, 251 F. Supp. 3d 401 (N.D.N.Y. 2017) as a defense to the instant motion to compel is baseless. The question of whether class certification is necessary has no bearing on whether the discovery sought is relevant and proportional to the needs of the case. As discussed above, the data is relevant not only to class certification and numerosity, but also to determine the adequacy of community-based mental health housing and supportive services throughout New York.

Regardless, Defendants' claim that "certification of a class is not necessary where the named plaintiff seeks injunctive relief against the State" is an inaccurate oversimplification of the law. ECF No. 221.[6] *Brooks*, an out-of-district decision, relied on the inapposite so-called "*Galvan* doctrine," under which some courts have determined, in limited circumstances, that class certification may be deemed unnecessary against a government defendant where "prospective relief will benefit all members of a proposed class to such an extent that the certification of a class would not further the implementation of the judgment." *Berger v. Heckler*, 771 F.2d 1556, 1566 (2d Cir. 1985) (citing *Galvan v. Levine*, 490 F.2d 1255, 1261 (2d Cir. 1973)). Defendants' reliance

---

[6] Plaintiffs also contend that *Brooks* is wrongly decided because many of the *Galvan* factors and exceptions discussed *infra* were not considered or analyzed by the court.

7

on this doctrine is unsupported by the law. Over the last four decades, the Southern District has properly restricted *Galvan* to limited discrete circumstances and routinely rejected government defendants' reliance on *Galvan* as a means to thwart class certification.[7]

The need for class certification may be obviated only where (i) "notwithstanding the presumption that government officials will abide by a court's decision as to similarly situated individuals," there is "an affirmative statement" from defendants that they "will apply any relief across the board," (ii) the defendants withdraw the challenged action or there is non-enforcement of the challenged statute, and (iii) relief sought is merely a declaration that a statute or policy is unconstitutional. *Daniels*, 198 F.R.D. at 421; *Blecher v. Dep't of Hous. Pres. & Dev. of City of New York*, No. 92 CIV. 8760, 1994 WL 144376 (S.D.N.Y. Apr. 19, 1994). The *Galvan* doctrine has not been applied where these factors are insufficiently met. *See Casale*, 257 F.R.D. 396 (finding class certification necessary when three of four factors were not met). Additionally, "[d]istrict courts have held that the *Galvan* rule only applies when the relief sought . . . is prohibitory." *Reynolds v. Giuliani*, 118 F. Supp. 2d 352, 391 (S.D.N.Y. 2000).

Where plaintiffs seek complex, affirmative relief, such as to "remedy existing unconstitutional conditions and to implement standards that comport with the mandates of federal and state laws and regulations," class certification is appropriate. *Id.* at 388; *Daniels*, 198 F.R.D. at 421–22. Moreover, courts consider that a "reason for granting the motion for certification lies in avoiding problems of mootness." *Jane B.*, 117 F.R.D. at 71–72; *Reynolds*, 118 F. Supp. 2d at 352; *Davis*, 198 F.R.D. at 421.

---

[7] *See, e.g.*, *Westchester Indep. Living Ctr., Inc. v. State Univ. of New York.*, 331 F.R.D. 279 (S.D.N.Y. 2019); *Davis v. City of New York*, 10 Civ. 0699 (S.D.N.Y. Aug. 29, 2013); *Floyd v. City of New York*, 283 F.R.D. 153 (S.D.N.Y. 2012); *Casale v. Kelly*, 257 F.R.D. 396 (S.D.N.Y. 2009); *Daniels v. City of New York*, 198 F.R.D. 409 (S.D.N.Y. 2001); *Bishop v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229 (S.D.N.Y. 1992); *Loper v. N.Y.C. Police Dep't*, 135 F.R.D. 81 (S.D.N.Y.1991); *Cutler v. Perales*, 128 F.R.D. 39, 46 (S.D.N.Y 1989); *Jane B. v. N.Y.C. Dep't of Social Services*, 117 F.R.D. 64, 71–72 (S.D.N.Y. 1987); *Folsom v. Blum*, 87 F.R.D. 443, 445 (S.D.N.Y.1980) .

As in the many decisions that have rejected the applicability of *Galvan*, Defendants' argument that class certification is unnecessary in this statewide *Olmstead* litigation is meritless. Defendants have neither made an affirmative statement that they will apply any relief across the board for any of the putative class members, nor "acknowledged that they will apply any relief obtained by plaintiffs across the board to all members of the proposed class." *See Brooks*, 51 F. Supp. 3d at 421. Unlike in *Berger*, Defendants have also not agreed to a pre-certification consent decree granting the injunctive relief sought, which would render class certification a "formality." 771 F.2d at 1566–67. Moreover, Defendants have not withdrawn any of the challenged actions or adequately increased capacity in community-based mental health housing and supportive services that Plaintiffs seek. *See Daniels*, 198 F.R.D. at 421. Rather, Defendants have consistently denied liability and "deny that any unlawful policies exist or that any lawful policies are implemented in an improper manner" and have claimed authority to prolong the incarceration of people with serious mental illness. *See Koster v. Perales*, 108 F.R.D. 46, 54 (E.D.N.Y. 1985). Indeed, the parties have briefed in-depth the inadequacies of Defendants' December 16, 2019 Memorandum issued by DOCCS, which fails to demonstrate that all of the challenged conduct has ceased, *see* ECF Nos. 113, 114, 120, 121, and which did not prove, as per Judge Seibel's September 25, 2020 bench ruling, that the memorandum stopped the challenged practices, *see* Bench Ruling on Defendants Motion to Dismiss the First Amended Complaint, September 25, 2020.

Even a request for affirmative relief that is merely the "obverse of plaintiff's prohibitory relief" is sufficient to distinguish *Galvan* and "to create a threshold of specificity of affirmative relief." C*utler*, 128 F.R.D. at 46. As explained by Judge Seibel in *Westchester Independent Living Center*, because "potentially complex" injunctive relief "would be more appropriate as a remedy

9

in the context of a class action, there are collateral consequences to denying certification and the *Galvan* doctrine is inapplicable." 331 F.R.D. at 301.

Here, "[b]ecause the relief requested by plaintiffs is not purely prohibitory, the *Galvan* rule is not a barrier to this Court's granting of class certification." *Reynolds*, 118 F. Supp. 2d at 391. Plaintiffs are not seeking a mere declaration that a statute or policy is unconstitutional, nor simple prohibitory injunctive relief. Instead, Plaintiffs are seeking mandatory and complex affirmative relief, including building capacity in community-based mental health services and housing. The relief Plaintiffs seek in instituting a prospective change to Defendants' unconstitutional policies as applied to each prospective class would require robust coordination between two government agencies, DOCCS and OMH, and third parties such as local services agencies, which operate county-level mental health programs, and private agencies. "Because this litigation challenges a wide range of practices divided between two government agencies enforcement might be difficult" and "[t]herefore, a class action is preferable." *Cutler*, 128 F.R.D. at 47.

In short, neither *Brooks* nor *Galvan* stands for a blanket rule that class certification is not necessary in injunctive relief cases against the state.[8] And regardless, the data sought in this motion to compel is relevant and proportional to this case beyond its applicability to class certification.

## CONCLUSION

For the reasons above, Plaintiffs request an order directing unredacted production of the documents listed in Exhibit A, as well as any updated versions of these documents to be produced.

---

[8] Since the almost-50-year-old *Galvan* decision, the Supreme Court has repeatedly recognized that "[c]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples of what (b)(2) is meant to capture." *Wal-Mart Stores, Inc. v. Dukes*, 564 US 338, 3611 (2011) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)). Indeed, class action is a common mechanism to vindicate rights of people with disabilities and incarcerated people.

Dated: July 8, 2022
      Rensselaer, New York

DISABILITY RIGHTS NEW YORK

/s/ Elizabeth S. Woods
Joshua Rosenthal (joshua.rosenthal@drny.org)
Elizabeth Woods (elizabeth.woods@drny.org)
279 Troy Road, Ste. 9 PMB # 236
Rensselaer NY 12144
(518) 432-7861

The LEGAL AID SOCIETY
Elena Landriscina (elandriscina@legal-aid.org)
Stefen R. Short (sshort@legal-aid.org)
Robert M. Quackenbush (rquackenbush@legal-aid.org)
Sophia A. Gebreselassie (sgebreselassie@legal-aid.org)
199 Water Street, 6th Floor
New York, New York 10038
(212) 577-3530

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
Walter Ricciardi (wricciardi@paulweiss.com)
Crystal L. Parker (cparker@paulweiss.com)
Emily Vance (evance@paulweiss.com)
Chantalle Hanna (channa@paulweiss.com)
Samuel Margolis (smargolis@paulweiss.com)
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

*Attorneys for Plaintiffs*