UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

M.G., *et al.*,

                    Plaintiffs,

      -against-

ANDREW CUOMO, *et al.*,

                    Defendants.
-------------------------------------------------------------X

**DECISION AND ORDER**

19 Civ. 639 (CS) (AEK)

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**

      In this putative class action alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, the Rehabilitation Act, 29 U.S.C. § 794, and 42 U.S.C. § 1983, Plaintiffs seek to compel the production of 179 unredacted "census documents" containing information about putative class members, and any updates or more current versions of the documents that will be produced in future discovery. ECF Nos. 224 (Motion), 225 (Memorandum of Law, hereinafter "Pls.' Mem."). Defendants oppose the motion to compel; they assert that Plaintiffs are not entitled to unredacted versions of the documents in question because they contain highly sensitive mental health treatment information about individuals who are not currently parties to the litigation. ECF No. 231 ("Defs.' Opp.").

      For the reasons that follow, Plaintiffs' motion to compel is GRANTED.

## BACKGROUND

      Plaintiffs' operative complaint in this matter seeks relief on behalf of two putative classes and one putative subclass. ECF No. 134 ("Second Am. Compl."). The first putative class is comprised of people with serious mental illnesses who Defendants allegedly hold or will hold in prison past their release dates—including the end of their prison sentences, approved conditional

release dates, and open dates for parole release—due to an inadequate capacity of community-based mental health housing programs (the "General Class"). *Id.* ¶ 5. The putative General Class contains a subclass of individuals who allegedly have been or will be incarcerated past the maximum expiration dates of their court-imposed prison sentences (the "RTF Subclass"). *Id.* ¶ 6. The second putative class is comprised of people with serious mental illnesses who allegedly have been placed at serious risk of institutionalization upon their release from prison because Defendants purportedly fail to provide the community-based mental health housing and supportive services that such individuals need (the "Discharge Class"). *Id.* ¶ 13. Plaintiffs have not yet moved to certify the classes.

Early in this litigation, the parties negotiated procedures to govern the sharing and handling of confidential material, including documents containing personal health information. On May 15, 2019, Judge Seibel entered a stipulated protective order providing that, *inter alia*, any personal health information that is disclosed in connection with this matter cannot be shared outside of the litigation and can only be used in connection with this litigation. ECF No. 42 ("Protective Order") ¶¶ 2, 6, 10.

After the Protective Order was adopted and in the course of conducting discovery, Plaintiffs requested censuses of the population of persons released from prison to homelessness, persons held in "prolonged incarceration," and persons held in prisons on residential treatment facility ("RTF") status past the maximum expiration dates of their custodial sentences. Pls.' Mem. at 1. Defendants produced certain responsive censuses maintained by Defendants New York State Office of Mental Health ("OMH") and New York State Department of Corrections and Community Supervision ("DOCCS"), but in doing so redacted nearly all individually identifying information, including that of putative class members. *Id.*; Defs.' Opp. at 2.

On June 8, 2022, Plaintiffs filed a pre-motion conference letter in advance of their anticipated motion to compel unredacted versions of the censuses or, in the alternative, censuses that replace personally identifying information with unique identifiers assigned to each individual listed in the documents.[1]  ECF No. 220.  Defendants submitted a response on June 14, 2022 stating they would oppose any motion to compel, ECF No. 221, and on June 29, 2022, the Court heard further arguments during a status conference.  Thereafter, the Court granted Plaintiffs' request to file their motion to compel and set a briefing schedule.  *See* 6/29/2022 Minute Entry.  Plaintiffs' motion and supporting declarations were filed on July 8, 2022, and Defendants' opposition was filed on July 22, 2022.  *See* ECF Nos. 224-227, 231.

## DISCUSSION

### A. Legal Standards Governing Discovery

Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Relevance must be "'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense."  *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14-cv-9792 (WHP) (JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)), *aff'd*, 2016

---

[1] Because the Court grants Plaintiffs' motion to compel production of the unredacted censuses, there is no need to address the alternative request that the documents be produced with anonymized unique identifiers in place of personally identifying information.

WL 4530890 (S.D.N.Y. Mar. 24, 2016).  The Court has "broad discretion in determining relevance for discovery purposes." *Michael Kors, L.L.C. v. Su Yan Ye*, No. 18-cv-2684 (KHP), 2019 WL 1517552, at *2 (S.D.N.Y. Apr. 8, 2019).

A party opposing discovery may do so by moving for a protective order, which may be issued upon a showing of good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1).  "[T]he party seeking a protective order has the burden of showing that good cause exists for issuance of that order." *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004).  Additionally, the Court has broad discretion "to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

B. **Special Protections Covering Health Records**

In cases that involve federal causes of action, disclosure of medical information is governed, in part, by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996).  *Nat'l Abortion Fed'n v. Ashcroft*, No. 03-cv-8695 (RCC), 2004 WL 555701, at *5 (S.D.N.Y. Mar. 19, 2004); *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 925 (7th Cir. 2004).  Pursuant to HIPAA, a healthcare provider may disclose medical information in the context of administrative or judicial proceedings "in response to an order of a court or administrative tribunal, provided that the [healthcare provider] discloses only the protected health information expressly authorized by such order."[2]  45 C.F.R. §

---

[2] Defendants state that their "obligation to maintain patient confidentiality in the normal course of business is generally governed by New York State Mental Hygiene Law ["MHL"] § 33.13," Defs.' Opp. at 2, and previously asserted that the MHL governs medical information disclosures in this matter, *see* ECF No. 221.  MHL § 33.13(c)(1) precludes the release of patient information absent "a finding by the court the that the interests of justice significantly outweigh the need for confidentiality."  In their opposition to Plaintiffs' motion, however, Defendants now

4

164.512(e)(1)(i); *accord Martinez v. St. Barnabas Hosp.*, No. 10-cv-5163 (CM) (GWG), 2011 WL 2847831, at *1 (S.D.N.Y. July 11, 2011).

## C. Analysis

Plaintiffs assert that the unredacted censuses are relevant and proportional to the needs of this case because Plaintiffs require the records to demonstrate numerosity for purposes of class certification and to determine whether adequate community-based mental health housing and supportive services exist to support the purported classes. Pls.' Mem. at 1; ECF No. 220.

The information sought by Plaintiffs is plainly relevant to this matter. Plaintiffs have not yet moved for class certification, and to establish the requirements for class certification set forth in Rule 23 of the Federal Rules of Civil Procedure, they must show, among other things, that "the class is so numerous that joinder of all members is impracticable."[3] Fed. R. Civ. P. 23(a)(1). The records in question include lists of persons released from prison to homelessness, persons held in custody held past their lawful release dates, and persons held in custody on RTF status past their maximum expiration dates. *See* Pls.' Mem. at 1, 3; ECF No. 226 ("Starkey Decl.") ¶ 8(a). Unredacted versions of the requested records are directly relevant to Plaintiffs' ability to demonstrate numerosity of the General Class, RTF Subclass, and Discharge Class. The redacted form of the census documents do not permit Plaintiffs to assess which entries in those documents refer to the same individuals; this would leave Defendants in exclusive control of the

---

concede "that in cases arising under federal law such as this one, privileges against disclosure are governed by principles of federal law" rather than state law. Defs.' Opp. at 3 (cleaned up).

[3] During the June 29, 2022 conference, the Court inquired as to whether the parties had considered "any kind of stipulation that could obviate the need of the class-certification phase of this case entirely." 6/29/2022 Conf. Tr. at 28:17-18. Both parties indicated that they are considering such a stipulation, but the Court has not been made aware of any final agreement as to this issue. *See* Pls.' Mem. at 2 n.1; Defs.' Opp. at 5 n.3.

relevant facts pertaining to numerosity, and would turn Plaintiffs' potential future numerosity arguments into a matter of guesswork.[4] *See* Pls.' Mem. at 1, 3-4; ECF No. 220; *see, e.g.*, *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571 (2d Cir. 1982) ("[T]here can be no doubt that it is proper for a district court, prior to certification of a class, to allow discovery . . . to determine whether the prerequisites of Rule 23 are satisfied."); *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06-cv-6198 (LAK) (JCF), 2007 WL 1521117, at *5 (S.D.N.Y. May 24, 2007) (requiring production of documents relevant to Rule 23(a)'s numerosity requirement); *Thompson v. Glob. Contact Servs., LLC*, No. 20-CV-651 (MKB) (SJB), 2021 WL 1103029, at *2 (E.D.N.Y. Feb. 16, 2021) (granting motion to compel class discovery and noting that, "[t]o the extent the records [Plaintiff] seeks relate to putative class members . . . they all bear on class certification, may be sought, and must be produced").

Plaintiffs' request is also proportional to the needs of this case. Plaintiffs require these records to determine the size of the putative classes and subclass for purposes of moving to certify the classes and subclass pursuant to Rule 23(b)(2). *See* ECF No. 220; Pls.' Mem. at 1, 3-4; Starkey Decl. ¶¶ 4-5. Moreover, producing the unredacted records serves the interests of justice. The Second Amended Complaint raises complicated issues involving the civil rights of a vulnerable population—incarcerated individuals with severe mental illnesses. The Department

---

[4] In their response to Plaintiffs' pre-motion conference letter, Defendants asserted that class certification is unnecessary in this action "where the named plaintiff seeks injunctive relief against the State," and thus, Plaintiffs do not require the unredacted censuses for purposes of establishing numerosity. ECF No. 221 at 2. Plaintiffs offer various responses to this argument, *see* Pls.' Mem. at 7-10, but the Court need not reach this legal question in deciding the present motion because, as Defendants concede in their opposition to the motion to compel, this issue is better suited for discussion in the context of Plaintiffs' anticipated motion for class certification, *see* Defs.' Opp. at 5; *see also Bais Yaakov of Spring Valley v. Houghton Mifflin Harcourt Publishers, Inc.*, 36 F. Supp. 3d 417, 419-21 (S.D.N.Y. 2014) (granting plaintiff's motion to compel discovery related to class issues over the objection of defendants where defendants' arguments were "more properly addressed in the context of [a class certification] motion").

of Justice has appeared as an interested party, submitted a statement of interest urging Judge Seibel to deny Defendants' motion to dismiss the complaint, ECF No. 161, and later wrote to Judge Seibel expressing the Government's view that "the Court's [motion to dismiss] decision in this case is a ruling of special interest," ECF No. 178.  Finally, producing the records would not impose any undue burden on Defendants, as versions of the records have already been gathered and produced in redacted form.  The important issues at stake in this litigation, the importance of the discovery for purposes of class certification, and the minimal burden on Defendants in producing these records all weigh in favor of production.  *See, e.g.*, *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 305-06 (S.D.N.Y. 2012) (finding requests for voluminous ESI proportional to the needs of the case in putative class action where "plaintiffs seek to vindicate the civil rights of the class members, and thus further an important public interest" and information was "central to the plaintiffs' claims").

    Defendants maintain that the redacted censuses that were already produced serve the purposes sought by Plaintiffs, namely, by providing "abundant unredacted data" including "how many individuals are on the list, their release dates, DOCCS facility, and other information." Defs.' Opp. at 5.  But Defendants acknowledge that certain of the redacted censuses did not include relevant identifying information, rendering those records completely unhelpful for purposes of quantifying the putative classes.  *See id.* at 5 n.2.  Further, Plaintiffs have identified additional issues with the redacted files that prevent them from serving their intended purposes. For example, the redacted censuses include instances where the available data for a particular individual appears to be repeated both within certain lists and across all lists.  Starkey Decl. ¶ 8(a)(i). Without any identifying patient information, Plaintiffs cannot be sure if this data is truly duplicative, and should therefore only be counted once, or if the data concerns unique individuals

who happen to have in common all of the information captured in the censuses other than unique personally identifying information.  *See id.*  Plaintiffs maintain—and Defendants do not dispute—that Plaintiffs cannot accurately compare data between DOCCS and OMH files using the redacted versions that they currently have.  *See id.* ¶ 8(b)(i).  These issues, among others outlined by Plaintiffs in the Starkey Declaration, demonstrate that the unredacted data produced by Defendants prevents Plaintiffs from determining how many individuals are actually listed in each census, thereby preventing them from determining the size of the putative class.

The Court is also satisfied that the particular circumstances presented in this matter allay many of the typical concerns attendant to sharing non-party medical information.  First, the existing Protective Order limits the dissemination and use of any documents produced in this case that contain personal health information.  *See* Protective Order ¶¶ 2, 6, 10.  Next, this case poses a "unique circumstance where it is clearly desirable that the confidential information be disclosed" given that Plaintiffs seek this information for purposes of vindicating the rights of the non-parties, rather than using the information against them in some way.  *See* Pls.' Mem. at 6-7; *Williams v. City of Philadelphia*, No. 08-cv-1979, 2014 WL 5393988, at *2 (E.D. Pa. Oct. 22, 2014) (granting motion to compel where "[u]nlike much of the case law regarding the discoverability of a nonparty's confidential health information, the information at issue here is not sought by an adversary to be used against the individual who underwent mental health treatment" and where "[p]laintiffs' counsel seeks this information to protect the rights of the inmates, on whose behalf counsel has brought this case").

For all of these reasons, the Court finds that the unredacted census documents are relevant and proportional to the needs of this case, and Plaintiffs' motion to compel the production of these records is GRANTED.

\* \* \* \* \*

Defendants request that in the event the Court grants the motion to compel, the Court also consider the question of whether the interests of justice significantly outweigh the need for confidentiality pursuant to MHL § 33.13(c)(1). Defs.' Opp. at 6; *see also* 6/29/2022 Conf. Tr. at 43:8-14 (requesting language in accordance with state law "just to give the agencies some comfort that there was that finding"). Although the Court has assessed the instant motion under HIPAA in accordance with the parties' agreement that this dispute is "governed by principles of federal law," even if the state law governed this dispute, the Court would still find that Plaintiffs had met their burden under MHL § 33.13(c)(1). For all of the reasons discussed above, the Court finds that the interests of justice significantly outweigh the need for confidentiality in this action.

## CONCLUSION

Plaintiffs' motion to compel discovery, filed at ECF No. 224, is GRANTED. This Decision and Order constitutes a court order requiring disclosure of protected health information pursuant to HIPPA and its associated regulations. *See* 45 C.F.R. § 164.512(e)(1)(i). Defendants must produce the documents listed in ECF No. 227-1 in unredacted form, designated as confidential pursuant to the existing Protective Order, by no later than October 21, 2022.

The Clerk of Court is respectfully directed to terminate the motions at ECF No. 220 and 224.

Dated: October 14, 2022
      White Plains, New York           SO ORDERED.

_____
ANDREW E. KRAUSE
United States Magistrate Judge