# EXHIBIT 20



NEW YORK STATE OF OPPORTUNITY.

Office of Mental Health

2015

# SUPPORTED HOUSING GUIDELINES



Confidential

OMH-00018465

Confidential

OMH-00018466

# CONTENTS

I. Background ................................................................................................................... 5

II. Target Populations ...................................................................................................... 5

    The Child and Adult Integrated Reporting System (CAIRS) and Additional Reporting Requirements ... 6

III. Supported Housing Description .................................................................................. 7

    Recipient Participation ................................................................................................. 7

    Access to Housing ....................................................................................................... 8

    Funds .......................................................................................................................... 9

    Housing Support Services .......................................................................................... 10

    Staffing ...................................................................................................................... 12

    Rental-Stipend Requirements ................................................................................... 12

    Lease Arrangements ................................................................................................. 13

    Facilitating Recipient Access to other Housing Subsidies ........................................ 14

IV. Cessation of Supported Housing ............................................................................. 15

    Goal Achievement .................................................................................................... 15

    Recipient Refusal To Pay When Supported Housing Provider Is Landlord ............... 15

    Recipient Refusal To Follow Program Expectations ................................................. 16

    Supported Housing Provider's Responsibility If Landlord Evicts Recipient ............... 16

V. Conclusion ............................................................................................................... 16

Glossary ...................................................................................................................... 17

    "Types of Supported Housing" ................................................................................. 17

    Serious Mental Illness .............................................................................................. 18

ATTACHMENT A ......................................................................................................... 21

Confidential

New York State Office of Mental Health

4

Confidential

OMH-00018468

New York State Office of Mental Health

# SUPPORTED HOUSING GUIDELINES

## I. Background

The NYS Office of Mental Health (OMH) introduced Supported Housing in 1990 as an initiative to facilitate an increase in long-term/permanent housing options for people with mental illness coupled with individual support services designed to help them succeed in their housing. Over 18,000 individuals currently reside in Supported Housing. Supported Housing, when provided together with non-residential services such as Health Home Care Management, Assertive Community Treatment, Personalized Recovery Oriented Services and other complementary mental health services, can meet the needs of many individuals who have multiple service requirements.

OMH awards Supported Housing development through a Request for Proposals (RFP) process or through a local government unit contract process. Funding for Supported Housing is provided via a contract between either the supported housing provider and the county or the provider and OMH. Providers receive funding for payment of Supported Housing rental assistance and Supported Housing services under this contract. In return, Providers agree to serve a certain number of Supported Housing recipients.

In view of the changes Supported Housing has undergone since its inception, it is important to ensure that all concerned parties are aware of current OMH guidelines regarding the operation of Supported Housing. However, while these guidelines include various clarifications, the concept of Supported Housing has not changed. Supported Housing has been, and continues to be, a vital means for persons with mental illness to succeed in community-based housing and move toward increasing independence and recovery.

## II. Target Populations

All individuals served in Supported Housing are expected to have a primary diagnosis of serious mental illness. Persons diagnosed with serious mental illness are persons aged 18 and older who have a current mental illness diagnosis as per the DSM-IV (or any subsequent edition) and experience substantial impairments in functioning due to the severity of their clinical condition.

Specifically, these adults currently experience substantial dysfunction in a number of areas of role performance or are dependent on substantial treatment, rehabilitation, and support services in order to control or maintain functional capacity. Furthermore, they have experienced substantial

5

OMH-00018469

impairments in functioning due to mental illness for an extended duration on either a continuous or episodic basis. (See the definition of "serious mental illness" in the Glossary).

Although there are not any income requirements for Supported Housing eligibility, recipients generally have low or very low income. Most individuals living in supported housing receive Supplemental Security Income (SSI) due to their mental illness. Providers should document proof of eligibility at time of admission. This documentation should remain in the recipient's file for the duration of his/her stay.

There are several populations who receive priority consideration for placement in Supported Housing. These groups include persons being discharged from state-operated psychiatric centers or state-operated residential programs; persons being discharged from Article 28 psychiatric inpatient hospital care; young adults being discharged from Residential Treatment Facilities or Children's Community Residences; residents of OMH-licensed housing, adult homes, nursing homes, voluntary or municipal homeless shelters or individuals living on the streets; high-cost Medicaid users; the forensic population; and persons under an Assisted Outpatient Treatment order. Additionally, OMH and localities may identify other priority populations and eligibility criteria through RFPs and/or the Single Point of Access (SPOA) process. Providers are expected to maintain occupancy in Supported Housing at a 90% occupancy rate. OMH may reallocate units when significant vacancies exist.

## THE CHILD AND ADULT INTEGRATED REPORTING SYSTEM (CAIRS) AND ADDITIONAL REPORTING REQUIREMENTS

The Office of Mental Health maintains a system that tracks all admissions to and discharges from contracted licensed and/or non-licensed funded housing, including Supported Housing. Entries to this system are made at the time the recipient is admitted via the Web-based CAIRS application. This system contains information concerning the recipient's demographics (e.g. age, race, sex). The Provider also updates the system within seven days of the recipient leaving Supported Housing. This submission includes the date the recipient leaves Supported Housing and the type of residential setting he/she moves into.

CAIRS data is used to provide information concerning recipient demographics, program performance indicators, program vacancy rates, and other factors that OMH officials, localities, and voluntary agencies can access to better inform administrative oversight of residential programs. All contracted residential providers, whether through local county contract or direct state contract, are required to participate in the CAIRS system. Providers are referred to their OMH Field Office for more information concerning this system. Please note that there may be additional contractually-based housing eligibility criteria or requirements depending upon the area of the State or the specific housing initiative through which the units were awarded. For example, in NYC, the submission and approval of the HRA 2010E housing application is currently required for most types of OMH-funded housing.

6

## III. Supported Housing Description

Supported Housing is intended to ensure that recipient options in choosing preferred long term or permanent housing are enhanced through:

1. Increasing the number of available affordable housing options;

2. Ensuring the provision of community supports necessary to assist recipients in succeeding in their preferred housing and to meaningfully integrate them into the community; and

3. Helping recipients remain in the housing of their choice while services change to meet their varying needs.

The following section details three areas to guide Providers, and the local mental health system, in fulfilling these goals. These areas are: Recipient Participation, Access to Housing, and Housing Support Services.

### RECIPIENT PARTICIPATION

Recipients play an integral role in Supported Housing, including active involvement in the choice of housing; type, frequency and intensity of services; and in the exercise of their rights and responsibilities as tenants and individuals.

- To the extent that options permit (including availability and funding), recipients play an active role in the choice of location and living arrangement for their housing.

- Services are available to help recipients make choices and develop the skills necessary to succeed in housing.

- Outreach is provided to prospective recipients by the Provider to ensure recipient awareness of Supported Housing and encourage recipient participation.

- Recipients should have formal input into development of agency Supported Housing practices.

- Providers will give explicit written tenant's rights and grievance procedures to tenants upon enrollment in the supported housing program.

- All recipients should be granted a lease for Supported Housing, preferably directly between the recipient and the landlord. If a direct lease is not used, the Provider should enter in a sublease with the recipient.

- Recipients are given opportunities to develop peer to peer supports.

Confidential                                                                    OMH-00018471

The Provider should also enter into an agreement with the recipient that outlines the minimum requirements of Supported Housing. This includes the development of a support plan, a monthly face-to-face contact, a home visit as needed based on the support plan or emergent needs but at least once every three months and annual income verification. The recipient should be made aware that failure to provide access to his or her apartment or annual income verification may jeopardize the consumer's Supported Housing rental stipend and support services. Prior to terminating a recipient from Supported Housing, the Provider should discuss the specific situation with the Field Office. In addition, the Provider should be able to document all interventions (e.g. case conferences, referrals, and attempts) to re-engage the recipient.

Wherever possible, recipients should be involved in selecting furnishings for the units they will occupy. In the event that a recipient elects to leave the Supported Housing unit and move to an independent apartment in the community, any refund of the rent, security or utility deposits should be placed at the recipient's disposal to pay those costs for the new unit. Recipients in a Supported Housing program who wish to move to a different apartment should work within the parameters of their lease or sublease, funding availability and geographic area covered by the Provider. Recipients may not transfer a Supported Housing rental stipend to a different provider. Conversely, if a Provider determines that the rental unit is no longer suitable, the recipient should be involved in the process of finding a new apartment and moving.

In the event that a Supported Housing recipient experiences an unavoidable absence from his/her apartment, it is preferred that the Provider take necessary action to ensure that the recipient does not lose the apartment during his/her absence. Housing is not lost during unforeseen absences of short duration. Providers should contact the Field Office as soon as possible to discuss specific situations. If the recipient has income, he/she would still be required to pay 30% of his/her income towards rent and utilities during the absence.

## ACCESS TO HOUSING

Supported Housing increases the availability of long term permanent housing to individuals with serious mental illness. Supported Housing focuses on gaining access to safe, decent and affordable housing for people with serious mental illness that is integrated within the broader community. Providers work with Supported Housing recipients to locate housing that matches the recipient's preference and goals (Client Choice), taking into consideration available housing options, affordability, and access to services and support services.  Client Choice is expected to be reasonable but not unlimited when locating available housing options and furnishings.

OMH may provide rent support to assist recipients in securing affordable decent housing at a reasonable cost, and to encourage landlords to accept individuals with mental illness as low financial-risk tenants. Providers should utilize the United States Department of Housing and Urban Development (HUD) current Fair Market Rents and the local housing authority's utility allowances as a guideline for determining reasonable rental costs. Recipients pay no more than 30% of their adjusted gross income towards reasonable rent and reasonable utility costs. The amount of rent paid by the recipient varies as the recipient's income changes; the rent stipend varies accordingly.

8

New York State Office of Mental Health

Recipients' contribution towards rental amount and reasonable utilities should not exceed the total cost of the rent and utility amount of the apartment unit.

All housing units should be located in buildings with governmental documentation of habitability that certifies the legal use and occupancy of the building and its units. Such documentation includes Certificates of Occupancy, Rental Certificates, or other local or municipality documentation that proves that the unit has been inspected and is approved for residential use. All units should have adequate heat and hot water and should be properly maintained by the landlord.

OMH expects access to these housing units to be provided in collaboration with the local governmental unit or SPOA process whenever possible. Providers should also work expeditiously to secure apartment units and transition individuals into the unit upon receipt of referral and acceptance into the program. Continuity of care is an important component to recovery. As such, if an individual has lost his/her Supported Housing placement due to a lengthy hospitalization, and both the individual and former housing provider have a desire to re-establish the Supported Housing relationship, priority status should be given to the individual for the next available Supported Housing unit; this may be done outside the SPOA process if necessary, but with notification to the SPOA.

Access to suitable housing is facilitated by assisting the recipient with establishing a household. Providers offer assistance to recipients in locating a suitable apartment; lease negotiation; and reviewing and understanding lease terms. The Provider should ensure that recipients are afforded the same rights and responsibilities as other tenants. If housemates are involved, the Provider will facilitate cooperative housemate agreements on bill payments, division of household responsibilities, etc.

Funds may be provided under Supported Housing to assist recipients in meeting initial expenses incurred in establishing residences. Such expenses may include, but are not limited to, brokers' fees, rent and security deposits, utility installation fees, household furnishings, and moving costs. When establishing Supported Housing units, Providers should include air conditioners with the initial set of furniture and furnishings if central air conditioning is not provided in the unit. In general, these expenditures, including furniture, should be viewed as non-recoverable expenses incurred to assist the recipient in moving to independent community living. Furniture should remain with the individual in Supported Housing. The recipient is not, therefore, expected to reimburse the Provider for these expenses upon leaving Supported Housing in all situations. The Provider bears the most responsibility for ensuring that recipients' apartments are safe and habitable. A Provider may use Supported Housing funds to cover replacement furniture needed by recipients to ensure their safety.

## FUNDS

Contingency funds ($500.00 per person per year) should be set aside annually from the per unit annual OMH operating subsidy. Contingency funds are made available to the Provider to resolve situations that place the recipient at risk of losing his/her housing. These funds are not intended to

9

OMH-00018473

replace emergency funds available through the Department of Social Services or other sources, and Providers should make every effort to access such funds before contingency funds are used. Please refer to the Supported Housing Contract and Budgeting Guidelines for a listing of eligible expenses.

## HOUSING SUPPORT SERVICES

Supported Housing staff should provide outreach, assessment and referral services to prospective recipients to ensure access to appropriate housing options and services. All services should be delivered in a manner which demonstrates understanding and respect for the diversity of the people being served. Services provided by the Provider will vary depending on the needs of the recipient. Often the need for services provided by the Provider decreases over time as the recipient is more fully integrated into the community. Unique features of Supported Housing include:

- Supports are flexible.

- Extended stay/long term housing. Recipients may remain in Supported Housing as long as they need a rent subsidy to cover the full cost of rent and/or housing support services and they continue to meet their responsibilities as tenants.

- No program attendance requirements.

The services that are delivered by Providers are best described as housing-related support services. These services include determining if an individual is eligible for Supported Housing, conducting an individual housing needs assessment, developing an individual housing support plan, helping the individual with establishing a household, becoming acquainted with the local community and applying for entitlements, helping recipients to understand their rights and responsibilities as a tenant, instruction and assistance with resolving apartment and building maintenance issues, providing linkages to community resources and health home care coordination, and budgeting assistance to ensure that rent and other expenses are paid.

In addition, the Providers should assist the individual in securing generic housing subsidies such as Section 8, facilitate resolution of housemate issues, and provide instruction to recipients on how to identify and address emergency situations including, but not limited to, when to call 911 or other emergency services and staying safe when heat advisories or evacuation orders are issued. Providers should have a process for handling resident emergencies after hours and on weekends. Every Provider should have plans in place to contact and assist recipients during area wide emergencies such as hurricanes and other natural disasters. It is also especially important for the Provider to provide ongoing support to residents and landlords concerning housing-related issues during and after an emergency situation.

The Provider often plays a dual role in helping the recipient maintain an amicable tenant/landlord relationship. As an advocate for the recipient, the Provider should ensure that the tenant's rights are guaranteed by the lease and under applicable law and that the recipient receives treatment

10

equivalent to other tenants. However, the Provider should also be aware of the rights and concerns of the landlord, and should work with the recipient to meet tenant responsibilities.

Providers should develop written policies and procedures for rent collection and terminating tenancy. The Provider should utilize and document an array of strategies and interventions to prevent someone from being evicted such as referrals to Adult Protective Services or other community based services, holding case conferences, etc. In addition, the Provider should make a formal grievance procedure available to recipients.

The Supported Housing approach is intended to foster integration of recipients into the existing community services system. It is not intended that Providers be the sole sources serving Supported Housing recipients in the community. Rather, the focus of Providers should be to deliver those services necessary to establish the recipient in his/her housing, and maintaining that housing until the services and rent stipend provided by the Provider are no longer needed, or can be provided by transitioning the recipient to other public housing subsidies or an affordable housing setting with local support services. This coordination of services is particularly critical in situations where the population to be served in Supported Housing is a population "most in need" of service (e.g. individuals who are living in the streets or shelters, long-term psychiatric center residents) who may require a period of very intensive services when they first enter Supported Housing. It is important that Providers work closely with the local governmental unit, county or SPOA entity, Health Home Entity and other community service providers to advocate for recipients to receive the services they require while residing in Supported Housing, and that the services necessary to maintain an individual in the community are in place before the individual leaves Supported Housing. In addition, Providers should be knowledgeable about affordable housing opportunities for consumers in his or her community. Based on individual needs and preferences, the local service system and/or health home should provide the recipient access to a full range of support services, including:

- Employment support

- Mental health and substance abuse treatment

- Assistance with obtaining entitlements

- Health care

- Emergency services

- Health Home Care Coordination

- Transportation

Supported Housing direct care staff should conduct and document a minimum of one face-to-face recipient contact per month. At least quarterly, this contact should occur in the recipient's home. Recipients' needs may change from time to time, and additional visits and/or contacts may be necessary. Providers should maintain records regarding such services and contacts. Other necessary contacts may be made through further face-to-face contacts with the recipient at a

Confidential                                    OMH-00018475

location judged convenient by both the recipient and Supported Housing staff person. Providers should also document contacts with Health Homes, Managed Long term Care Plans, service providers and other collateral contacts as appropriate and with the recipient's consent.

To ensure that Supported Housing services are delivered in a manner consistent with the above-stated principles, the Provider should collaborate with the recipient to develop a person-centered, strengths-based support plan. The plan should be developed within 30 days of recipient move-in and should be reviewed with the recipient on a quarterly basis. The goal of the support plan is to identify the services and supports needed for the recipient to live successfully in the community and achieve the highest level of independence. It should address recipient access to preventive, ongoing and emergency services; the frequency of planned contact with the recipient; and the date of the next support plan review. The plan should identify supports which will be provided through Supported Housing, and supports to be provided through community-based resources.

Providers should make housing support plans available to the Field Office and/or the local government upon request. In addition, Providers should develop policies and procedures for making support plans and progress notes available to recipients upon request. OMH encourages Providers to develop and implement rental arrears policies and procedures in the event a tenant is unable to pay his/her rent.

## STAFFING

Supported Housing staff should have a combination of education, experience, and skills to work effectively with persons with serious mental illness. Providers are encouraged to hire peers or individuals who have personal experience with the mental health system. Agencies should ensure that staff persons receive initial and on-going training and supervision, are culturally competent, and to the extent possible, reflect the recipients being served. Training competencies should include an understanding of: mental illness and co-occurring disorders, engagement strategies, wellness self-management, and motivational interviewing, among others. Staff should be knowledgeable about the full array of services and community resources that will help the recipients to remain in stable housing. In order to provide person-centered, flexible housing support services identified above, Providers are expected to keep a staff –recipient ratio within the range of 1:20 to 1:30. Please note that each agency should examine the needs of the individuals being served by Supported Housing and if necessary adjust the staff/client ratio accordingly, keeping within the 1:20 to 1:30 range. For example, if individuals served have high needs, a ratio of less than 1:30 may be more appropriate to effectively meet the needs of the individuals served.

## RENTAL-STIPEND REQUIREMENTS

Whether housing is accessed in publicly-funded developments or in the open market, the provision of a rent subsidy will be necessary in most cases. Funding for Supported Housing rent stipends is made available to the Provider through the Supported Housing contract and the rent stipends should be paid directly by the Provider to the landlord. The stipend should not be paid directly to

12

the recipient since a direct payment could jeopardize other client entitlements (e.g., SSI).

Individual stipend amounts should be calculated based upon the difference between what the recipient can pay and the sum of the rent and reasonable utility costs for the unit. Utility costs are defined as costs for heat (where applicable), water, gas, and electrical service. Telephone, cable, and internet costs are not considered to be utility costs. "Reasonable" utility costs can be determined by contacting the local municipal housing authority for a copy of their utility allowances. Local public housing agencies (PHAs) maintain a schedule of utility allowances by housing type for the Section 8 program. To determine the amount to allow for a reasonable amount of utility consumption given a particular type and unit size of housing for OMH Supported Housing, the local PHA should be contacted for the schedule of utility allowances and Providers should then subtract $10.00 from the PHA rates to determine the reasonable cost for each apartment's utility allowance under the OMH Supported Housing model. If apartments are shared by two or more Supported Housing recipients, the utility allowance should only be applied once for the overall household utility expense.

The Supported Housing model requires that the recipient contribute 30% of his/her adjusted income (as defined in Attachment A) toward the total cost of his/her rent and reasonable utility costs, and that the recipient cannot be required to pay more than that amount without prior OMH approval. These costs for each recipient should be reflected on a "Recipient Rental Stipend Worksheet" (see Attachment A). The model also requires that all individuals who receive rent stipends complete a worksheet identical or substantially similar to Attachment A on at least an annual basis so that income changes can be appropriately addressed and provide supporting documentation reflecting the change (e.g. pay stub, Social Security correspondence, etc.). More frequent updating of a worksheet will be required if the individual's income changes often.

When two or more Supported Housing recipients share an apartment, the rental obligation should be divided between the tenants on a percentage basis, according to the number of individuals that will share the apartment. Under the Supported Housing model, no more than three individuals can share an apartment. Each individual would then be eligible for a stipend, based on the methodology detailed in the "Recipient Rental Stipend Worksheet".

## LEASE ARRANGEMENTS

It is preferable that the leases for Supported Housing units should be solely in the recipient's name whenever possible. However, it is recognized that in some circumstances this is not possible, and the Provider may appear as a third party signatory to the lease, or even be the sole signatory to the lease. (In this latter circumstance, the Provider would sub-lease the apartment to the recipient.)

Regardless of the lease arrangement, all recipients should have a current lease or sub-lease with the same rights and responsibilities as market-rate tenants. The lease and/or sub-lease should not include responsibilities which are not typically found in standard market-rate leases (house/program rules, policies about visitors, requirements to adhere to support plan, etc.)

13

## FACILITATING RECIPIENT ACCESS TO OTHER HOUSING SUBSIDIES

Providers should facilitate recipient access to HUD Section 8, Shelter Plus Care or other housing subsidies when available. Where possible, priority should be given to negotiating access to housing developed with public capital funds (e.g. Office of Temporary and Disability Assistance, HUD, etc. OMH works with various publicly funded housing agencies to encourage interagency cooperation in housing development. OMH also encourages Providers to facilitate access to housing developed by publicly-funded housing agencies and for-profit housing developers.

Localities throughout the State receive direct federal funding through the HUD Section 8 program to provide rent subsidies for eligible residents. Most Supported Housing recipients are eligible to receive such assistance and Providers should assist recipients with the application process.  If a recipient does receive a Section 8 Voucher, Providers should encourage Supported Housing recipients to choose apartments where the landlord is willing to accept Section 8 payments. Please note, in New York City it is illegal for a property owner with six or more units in a building to refuse a Section 8 Voucher.

In the event that a resident receives a voucher and the landlord is not willing to accept Section 8 payment, the provider will encourage the recipient to secure an apartment where the landlord is willing to accept Section 8.  However, the Provider cannot require the resident to move into a Section 8 apartment. It is the expectation that when a Section 8 voucher, or other long term permanent housing subsidies become available, this subsidy will replace the OMH subsidy and the Supported Housing provider will work with the recipient and the local mental health services network (through the SPOA where available) on discharge planning to ensure that responsibility for serving the recipient is assumed by non-residential service providers.

The federal government, in conjunction with state or local governments, also provides funding for housing subsidies under the Shelter Plus Care (S+C) program. Under this program, federal housing subsidies are provided for qualifying "special needs" populations. The federal subsidies are matched with service funding from either the state or the locality. While Section 8 and S+C are the most commonly used means of securing non-OMH funded rental assistance for Supported Housing recipients, there may be other funding assistance available within a particular locality or for a particular project. Providers should inquire with their OMH Field Office or county regarding the availability of any such funding.

Providers should be aware, however, that non-OMH organizations that fund housing subsidies may condition this funding on meeting certain requirements that may differ from Supported Housing guidelines. Providers should be aware of these conditions or requirements and determine whether to pursue it in the context of the Supported Housing.

Recipients of Supported Housing are also encouraged to develop independent budgeting skills to support their independence. In the event the recipient is in need of a representative-payee, she/he should be encouraged to utilize natural supports such as family members or friends to serve in this role. In the event family and or friends are not available or appropriate to serve as a representative payee, recipients should be encouraged to contract with a qualified organization for

14

                                                                                    OMH-00018478

this function. To avoid potential conflicts, the Provider should only be used as the representative payee as a last resort.

The Social Security's Representative Payment Program provides financial management for the Social Security and SSI payments of beneficiaries who are incapable of managing their Social Security or SSI payments. The Social Security Administration (SSA) has developed a Guide for Organizational Payees and a Guide for Individual Representative Payees to help those that serve as representative payees understand their duties and responsibilities as a payee. These documents can be obtained through the Social Security Administration. Providers should understand these roles and help educate the recipient on these roles.

# IV. Cessation of Supported Housing

## GOAL ACHIEVEMENT

The goal of Supported Housing is to provide assistance to enable recipients to remain housed in the community until they no longer need such assistance. There is no length of stay expectation for Supported Housing. However, as increased independence is the aim of the Supported Housing approach, Providers should work actively with recipients to secure the means to pay their rent without the use of a Supported Housing rent stipend (either through employment or another publicly-funded stipend) and to receive necessary services (e.g. housing case management) through the local service system.

A recipient is considered to be in Supported Housing as long as the Provider is paying a rent stipend on his/her behalf and providing Supported Housing services (Providers are required to offer services to individuals who are receiving Supported Housing rent stipends). OMH recognizes that there may be a period after the recipient begins to receive another rent stipend or after he/she becomes employed and able to pay the full rent for his/her apartment when the community services provided by the Provider may still be required, particularly if the non-residential services the recipient requires are not yet in place. The Provider should work with the recipient and the local mental health services network (through the SPOA where available) on transition planning to ensure that responsibility for serving the recipient is assumed by non-residential service providers as soon as possible after he/she is no longer receiving a Supported Housing rent stipend.

## RECIPIENT REFUSAL TO PAY WHEN
## SUPPORTED HOUSING PROVIDER IS LANDLORD

In the event that a recipient refuses to pay his/her portion of reasonable rent and utilities and the Provider is the landlord, the Provider should utilize and document an array of strategies

and interventions to prevent someone from being evicted. In the event eviction proceedings are warranted, the Provider should ensure that such action is carried out in accordance with local laws and procedures. The Provider should work with the recipient to pursue alternative housing options.

## RECIPIENT REFUSAL TO FOLLOW PROGRAM EXPECTATIONS

In the event that a recipient refuses to follow program expectations and the Provider is the landlord, the Provider should utilize and document use of the array of strategies and interventions discussed above in order to assist the recipient.

In the event that a recipient refuses to follow program expectations and the Provider is not the landlord, the Provider should coordinate with the Local Service System and Field Office in order to assist the recipient with accessing a full range of support services to support their ability to remain successfully housed without the rental stipend support and services provided by the Provider.

## SUPPORTED HOUSING PROVIDER'S RESPONSIBILITY IF LANDLORD EVICTS RECIPIENT

In the event that a recipient is evicted from his/her apartment by a landlord other than the Provider, the Provider should assist the recipient to locate alternative housing that matches her/his preference and goals, taking into consideration available housing options, affordability, and access to services and supports. Eviction from one apartment is not necessarily grounds for the Provider to release a recipient from the Supported Housing program.   Moving forward, Providers should continue to help the individual to understand his/her responsibilities as a tenant and help facilitate resolution of housing issues.

# V. Conclusion

These guidelines for Supported Housing are intended to replace the original Supported Housing Guidelines that were developed in 1990. The statements contained herein are reflective of the Supported Housing model in general and are not intended to create or impose requirements that are regulatory in nature. Nothing herein is to be construed as legal opinion, nor is it intended as a substitute for the legal advice of counsel. Questions concerning application of these guidelines to situations that may be encountered in delivering Supported Housing may be referred to the OMH Field Office.

Confidential                                                                                          OMH-00018480

# GLOSSARY

## "Types of Supported Housing"

### SCATTERED-SITE SUPPORTED HOUSING

Usually, Supported Housing is located in rented apartments scattered throughout the community. Services to recipients of scattered-site Supported Housing are provided by the Providers as needed by the recipient to ensure housing stability, in coordination with other services and supports available in the community including Health Homes.

### SINGLE-SITE SUPPORTED HOUSING

In the past, under some limited circumstances, Providers may have rented an entire building for Supported Housing. Whether the building is rented or purchased by the Provider, such sites are referred to as single-site Supported Housing. The sites that are owned by the Provider should have funding set aside for capital reserve to address building maintenance and future capital repairs and improvements. The service requirements for single-site Supported Housing are the same as those for scattered-site Supported Housing. Services are provided based on an individualized support plan in coordination with other available services and supports. Supported Housing should be developed as Scattered-Site Supported Housing or Mixed – Use Supported Single-Room Occupancy Housing. A Provider proposing Single-Site Supported Housing should consult with the Field Office before renting or purchasing a building.

### SUPPORTED SINGLE-ROOM-OCCUPANCY (SP-SRO) AND MIXED- USE /INCOME HOUSING

Supported-Single Room Occupancy (SP-SRO) housing combines long-term to permanent housing with some on-site services. The support offered in SP-SROs is consistent with the principles guiding all Supported Housing. Mixed-use housing is affordable housing where a portion of the OMH–funded capital units is integrated with other affordable housing units in the same building. The latter may target low income individuals and families who are not receiving a mental health housing rental subsidy. Generally, at a minimum, front-desk or security staff are on-site 24 hours per day.

### LONG TERM/PERMANENT HOUSING

Long term/permanent housing is considered community-based housing without a designated length of stay where the recipient has a leased or subleased apartment unit.

Confidential    OMH-00018481

New York State Office of Mental Health

## Serious Mental Illness

In order to be considered an adult with a serious and persistent mental illness, "1" below must be met, in addition to either "2", "3", or "4":

1. **Designated Mental Illness**
   The individual is 18 years of age or older and currently meets the criteria for a DSM-IV (or any subsequent edition) psychiatric diagnosis other than alcohol or drug disorders, organic brain syndromes, developmental disabilities or social conditions. ICD-CM psychiatric categories and codes that do not have an equivalent in DSM-IV or (any subsequent edition) are also included mental illness diagnoses.

   *AND*

2. **SSI or SSDI due to Mental Illness**
   The individual is currently enrolled in SSI/SSDI due to a designated mental illness.

   *OR*

3. **Extended Impairment in Functioning due to Mental Illness**

   a. Documentation that the individual has experienced two of the following four functional limitations due to a designated mental illness over the past 12 months on a continuous or intermittent basis:

   i. Marked difficulties in self-care (personal hygiene, diet, clothing, avoiding injuries, securing health care or complying with medical advice).

   ii. Marked restriction of activities of daily living (maintaining a residence, using transportation, day to day money management, accessing community services).

   iii. Marked difficulties in maintaining social functioning (establishing and maintaining social relationships, interpersonal interactions with primary partner, children or other family members, friends, neighbors, social skills, compliance with social norms, appropriate use of leisure time).

   iv. Frequent deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (ability to complete tasks commonly found in work settings or in structured activities that take place in home or school settings, individuals may exhibit limitations in these areas when they repeatedly are unable to complete simple tasks within an established time period, make frequent errors in tasks, or require assistance in the completion of tasks).

   *OR*

4. **Reliance on Psychiatric Treatment, Rehabilitation and Supports**

   A documented history shows that the individual at some prior time met the threshold for 3 (above), but the symptoms and/or functioning problems are currently attenuated by medication or psychiatric rehabilitation and supports. Medication refers to psychotropic medications which may control certain primary manifestations of mental disorder: e.g. hallucinations, but may or may not affect functional limitations imposed by the mental disorder. Psychiatric rehabilitation and supports refer to highly structured and supportive settings (e.g. Congregate or Apartment Treatment Programs) which may greatly reduce the demands placed on the individual and thereby, minimize overt symptoms and signs of the underlying mental disorder.

18

## ATTACHMENT A

### Recipient Rental Stipend Worksheet

(To be completed annually and when recipient and/ or household income changes)

RECIPIENT NAME: _____

DATE: _____    RECIPIENT SS #: _____

### CALCULATING RECIPIENT ADJUSTED MONTHLY INCOME

#### A. MONTHLY INCOME

1. Net Wages                          _____

2. SSD                                _____

3. SSI                                _____

4. Pension                            _____

5. Alimony                            _____

6. VA Benefits                        _____

7. Other                              _____

8. **Total Monthly Income =**         _____

#### B. MONTHLY EXPENSES ELIGIBLE FOR DEDUCTION
*(Include Support of Minors-i.e. Child care expenses, Court-mandated expenses, Medicaid Spend-Down expenses)*

9. Source _____        Amount _____

10. Source _____       Amount _____

11. **Total Monthly Expense Adjustments**    **Amount** _____
    *(Add lines 9 and 10)*

19

Confidential                                                    OMH-00018483

New York State Office of Mental Health

## C. TOTAL MONTHLY ADJUSTED INCOME

12. Total Monthly Income    Amount _____
    *(Amount on Line 8)*

13. Total Monthly Adjustments    Amount _____
    *(Amount on Line 11)*

14. Monthly Adjusted Income    Amount _____
    *(Subtract line 13 from line 12)*

## D. CALCULATING RECIPIENT RENTAL PAYMENT

15. Multiply line 14 (*Monthly Adjusted Income*) by .30    Amount _____
    *(This amount is the recipient's rent if rent includes utilities)*

## IF THE RENT INCLUDES UTILITIES, STOP HERE.

**The recipient is responsible for paying the amount identified on line 15 directly to the landlord.**

## IF THE RENT DOES NOT INCLUDE UTLITIES CONTINUE TO LINE 16.

*(Determination of Recipient Rent for units where utilities are not included in rent)*

16. Public Housing Authority (PHA) Utility Allowance    Amount _____
    *(If not included in rental amount and
    as determined by Local PHA)*

17. Adjusted Utility Allowance    Amount _____
    *(Subtract $ 10.00 from Line 16)*

18. Recipient Rent    Amount _____
    *(Subtract line 17 from line 15)*

20

    OMH-00018484

New York State Office of Mental Health

## E. CERTIFICATION

1. The above information is accurate to the best of my knowledge and documentation of income and expenses is attached to this form.

2. The recipient agrees to inform the contract agency of any changes in income or adjustments at the time they occur.

3. When available, application for federal Section 8 rental assistance has been made and will be diligently pursued.

Recipient Name: _____    _____
                PRINT                                SIGNATURE

Staff Name: _____    _____
            PRINT                                SIGNATURE

AGENCY NAME _____

AGENCY ADDRESS _____

_____

_____

## RECIPIENT RENTAL PAYMENT AND UTILITY SUMMARY

Date Rental Payment Due : _____

Rental Amount Due (from Recipient): _____

Rental Amount Due (from Provider): _____

TOTAL RENT DUE (to Landlord): _____

Rental Amount Payable to:
(Include Landlord Name and Address)

_____

_____

_____

Confidential    OMH-00018485

New York State Office of Mental Health

## IF UTILITIES ARE NOT INCLUDED IN RENT

Date Utility Payment Due: _____

    Utility Amount Payable to:

    _____

    _____

    _____

22

OMH-00018486

Confidential



OMH-00018488