UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x

M.G., P.C., C.J., M.J., J.R., D.R., S.D., W.P., and D.H., individually and on behalf of all similarly situated,

                                                     Plaintiffs,

              -against-

ANDREW CUOMO, in his official capacity as the Governor of the State of New York, the NEW YORK STATE OFFICE OF MENTAL HEALTH, ANN MARIE T. SULLIVAN, in her official capacity as the Commissioner of the New York State Office of Mental Health, the NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, ANTHONY J. ANNUCCI, in his official capacity as the Acting Commissioner of the New York State Department of Corrections and Community Supervision, ANNE MARIE MCGRATH, in her official capacity as Deputy Commissioner of the New York State Department of Corrections and Community Supervision,

                                                     Defendants.

7:19-cv-0639 (CS) (AEK)

------------------------------------------------------------------------- x

## DECLARATION OF D.R. IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

I, D.R., being competent to make this declaration and having personal knowledge of the matters stated herein, hereby declare pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am 40 years old, and I grew up in Queens, New York.

2. I was incarcerated in New York State prison in 2012.

3. I was released to parole in March 2015, but then I was returned to DOCCS in November 2016 to serve additional time for a parole violation, and I was given a maximum expiration date of December 30, 2017. Because the date fell on a weekend, my release was

scheduled for December 29, 2017. I was not, however, released to the community until February 13, 2019.

4. When I was incarcerated, I had mental health diagnoses of bipolar disorder and antisocial personality disorder. I was also diagnosed with substance use disorders.

5. My current mental health treatment involves taking mental health medications. I sometimes struggle with paranoia. At times, I have become very depressed, lost my motivation to do things, and felt suicidal. I have attempted suicide in the past. I don't feel well when I miss my medications; I become suspicious and paranoid. Treatment helps me to manage symptoms of my mental illness.

6. I received mental health treatment while incarcerated. The Office of Mental Health ("OMH") classified me as "2-S" in November 2016 and later elevated me to a "1-S" classification in January 2017. Both classifications indicated that I have serious mental illness. OMH also classified me as "SMI-V," which I understand is a classification for people with serious mental illness and a history of violence, specifically a conviction for a violent felony.

7. I was incarcerated at Mid-State Correctional Facility until about December 28, 2017, when I was transferred to Fishkill Correctional Facility.

8. I was not released from custody on my maximum expiration date, even though DOCCS and OMH presented me with "release papers" and directed me to sign them.

9. When my maximum expiration date passed, I was told I was transferred to a "Residential Treatment Facility," but I remained in prison. I was still referred to, and treated like, an inmate at Fishkill, despite my RTF status. I was even placed in segregated confinement as punishment for disciplinary infractions, even after the expiration of my prison sentence.

10. I wanted to receive mental health treatment in the community, near my family and friends, and to have my own supportive apartment after my maximum expiration date.

11. Before my maximum expiration date, I discussed with staff at Mid-State my history of homelessness and need for community-based mental health housing. OMH told me they submitted applications for housing and supportive services for me, and I was told I was eligible for community-based mental health housing. Nobody at Mid-State helped me look for housing. Mid-State staff also never told me that mental health housing might be difficult to obtain and might delay my release.

12. When I wasn't released on my maximum expiration date, I didn't understand why I was being placed on RTF status or even what RTF status was. I was very upset because I was supposed to be free. I felt I had no control over my situation. Later on, I found out that I was placed on RTF status because the community-based mental health housing I needed was not available.

13. I had no idea when, if ever, I was going to be released. Nobody ever told me how long it would be until I was released. At first, I believed I would just be held for a couple of days.

14. I participated in multiple interviews with providers of community-based housing while at Fishkill. Nothing ever came of these interviews because, according to OMH staff, the providers had no availability. Even when I thought a housing interview went well, I did not know when or how soon it might result in my release.

15. As the days and then months passed and I was still stuck in Fishkill, I felt very frustrated and disturbed. Being stuck in prison past my maximum expiration date made me feel hopeless.

16. I submitted grievances and grievance appeals about this issue. DOCCS responded to my grievance appeal by stating that I was being held in RTF status "due to [my] mental health status."

17. I was finally released from prison on February 13, 2019.

18. I was released to Pilgrim Crisis Residence in Brentwood, New York. To the best of my knowledge, every resident at Pilgrim had some type of disability. The people at Pilgrim were severely disabled and not as independent as I was.

19. When I was released, I was also referred to Phoenix House PROS for mental health treatment and EAC Network, an organization that provides transitional case management. EAC provided me with counseling, medication management, and contact with a psychiatrist.

20. I didn't know how long I was going to stay at Pilgrim, but I figured that I wasn't going to be there for more than a couple of months because Pilgrim is transitional housing.

21. On February 19, 2019, I was transferred to a state-operated community residence, often referred to as the Crooked Hill SOCR. This residence was on the same grounds as Pilgrim.

22. In March 2019, I was told that I was going to move to a more permanent and independent housing situation within the month.

23. On or about March 29, 2019, I moved into a stand-alone house that I share with one other person.

24. The housing is part of a supportive housing program run by Family Residences and Essential Enterprises (FREE).

25. I want to reside and receive programs and services in integrated settings in the community.

26. I understand that I am part of a class action lawsuit, and this is not only for my benefit, but for the benefit of other class members as well.

27. I understand the responsibilities of being a class representative, including that I am seeking to represent all members of a proposed class of people with serious mental illness, who are housed or will be housed in a state prison, whose open dates for parole release, approved conditional release dates, or maximum expiration dates have passed, and who are appropriate for community-based mental health housing and supportive services upon their release from prison.

28. I understand that this case is also being brought on behalf of individuals who were harmed by DOCCS and OMH's failure to provide adequate community-based mental health housing and supportive services. As a result of this failure, DOCCS and OMH discharged people to segregated and/or inappropriate settings, such as halfway houses.

29. I understand that the goal of this lawsuit is to require DOCCS and OMH to take certain actions to stop their harmful practices and to provide care and treatment in the most integrated setting appropriate to the needs of individuals with serious mental illness who are discharged from prison.

30. I do not have interests that are inconsistent with the interests of the class members I seek to represent. I will adequately represent those class members.

31. As a class representative, I will always consider the interests of class members just as I would consider my own interests, and I understand that I must put the interests of class members above my own interests.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___4___ day of ___JANUARY___, 2023 in Central Islip, NY.

_____D.R._____
D.R.