UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x

M.G., P.C., C.J., M.J., J.R., D.R., S.D., W.P., and D.H., individually and on behalf of all similarly situated,

                                       Plaintiffs,

            -against-

ANDREW CUOMO, in his official capacity as the Governor of the State of New York, the NEW YORK STATE OFFICE OF MENTAL HEALTH, ANN MARIE T. SULLIVAN, in her official capacity as the Commissioner of the New York State Office of Mental Health, the NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, ANTHONY J. ANNUCCI, in his official capacity as the Acting Commissioner of the New York State Department of Corrections and Community Supervision, ANNE MARIE MCGRATH, in her official capacity as Deputy Commissioner of the New York State Department of Corrections and Community Supervision,

                                       Defendants.

---------------------------------------------------------------------- x

7:19-cv-0639 (CS) (AEK)

## DECLARATION OF M.G. IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

I, M.G., being competent to make this declaration and having personal knowledge of the matters stated herein, hereby declare pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am 60 years of age, and I grew up in Dutchess County.

2. I was incarcerated in New York State prison in 1989.

3. I was given an open parole date of May 10, 2017 but was not released to parole until June 18, 2019.

4.      I have diagnoses of bipolar disorder, post-traumatic stress disorder, borderline personality disorder, and depression. I have been receiving mental health treatment since I was very young.

5.      My current mental health treatment involves speaking with a psychiatrist and therapist for counseling and taking my prescription mental health medications. I sometimes struggle with depression, anxiety, and impulsivity. I have engaged in self-harm, and I attempted suicide many years ago, which led to an inpatient hospitalization. Treatment helps me to manage symptoms of my mental illness.

6.      I received mental health treatment while incarcerated. The Office of Mental Health ("OMH") classified me as "1-S," which indicated that I had serious mental illness. I was placed in Intermediate Care Program ("ICP"), Intensive ICP, and Transitional ICP, at various facilities, including at Wende Correctional Facility and Auburn Correctional Facility.

7.      Immediately before my release in 2019, I was in Auburn Correctional Facility's ICP.

8.      The ICP is for people with serious mental illness. Everyone in the program is assigned to the same housing units in the prison and is expected to participate in group programs. This means that I spent all my time with other people with serious mental illness, other than when I was working as a porter and would travel to other units in the prison.

9.      I wanted to receive mental health treatment in the community near my family and friends, and to have my own supportive housing, after my release date.

10.     When my open parole date passed, I remained in prison and none of my living conditions changed. I stayed in the same windowless prison cell. I continued to be in the ICP

program and was subject to all the same prison rules that I was subject to during the length of my incarceration.

11. Prior to my open parole date, I spoke to OMH staff about my need for housing following my release from prison. I also talked about my desire to continue my mental health treatment after my release.

12. OMH told me that they submitted applications for housing and supportive services.

13. When I reached my open parole date, I was told that I had to stay in prison because there was no community-based housing for me. Specifically, I was told that I had to wait until permanent community-based mental health housing, with on-site case management and mental health services, was available.

14. I had no idea when, if ever, I was going to be released. Nobody ever told me how long it would be until I was released. When I asked OMH, Parole, or DOCCS staff for information, I was told to "hang in there," "have patience," and wait. I was also told that I was on several waiting lists for housing and heard, at various points, that I was 100th, ninth, and first on those waiting lists. I was told that until the current residents left that housing I couldn't go anywhere. I did not know how long that would take.

15. I experienced anxiety and uneasiness due to my continued confinement.

16. On January 23, 2019, I became a Plaintiff in this lawsuit.

17. In the spring of 2019, I heard that "Albany" was checking in on my housing search and that "Albany" was angry when a video teleconference interview for housing fell through after a provider decided not to move forward. I was also told that the "head of OMH"

recently contacted Dutchess County to see what kind of programs the county could pull together for me.

18. I was released from custody on Tuesday, June 18, 2019.

19. Shortly before I was released, OMH staff said I was going to a two-person apartment with its own kitchen and bathroom. Instead, I was released to Hillcrest House where I shared a hall bathroom and didn't have access to a kitchen. While there, I ate my meals in a shared dining room. I was surprised, and a bit frustrated, when I got to Hillcrest and realized how different the accommodations were from the two-person apartment OMH told me I was getting. I told Hillcrest staff that my room at Hillcrest was "not what I was supposed to be given." They simply responded, "this is what parole is paying for."

20. Hillcrest is a housing facility with a homeless shelter on one side and transitional, semi-permanent rooms on the other side, which is where I lived. People on the transitional side have a designated room where they can keep and secure their personal possessions night to night. Nobody is allowed to stay at Hillcrest for more than two years. I was told that DOCCS paid for my room at Hillcrest for four months.

21. Hillcrest did not have a mental health counselor on staff and offered no mental health treatment on site. There was no security guard on site. There was only a front desk attendant who signed people in and out of the facility. It would have been very helpful if there had been a trained counselor at Hillcrest to talk to and help me with this transition after decades of incarceration.

22. Although OMH staff told me I would get a voucher to buy clothes when I was released, the only thing that I got when I arrived at Hillcrest was a roll of toilet paper. I had to rely on family members to buy me clothes.

23. Before I was released, OMH staff told me that all my benefits (including SSI and Medicaid) would be set up upon my release. When I arrived at Hillcrest nothing was set up.

24. I need to take seizure and pain medications daily. OMH staff told me that this medication would be ready when I was released but it was not, and it took 1-1 ½ weeks of my sister consistently pushing this issue, with Medicaid and the pharmacy, before I received my medication.

25. I was told that I would remain homeless for years. I was worried about how I would cope if my mental health symptoms worsened.

26. To my surprise, in the fall of 2019, I was moved to a community-based mental health housing program in Dutchess County that is run by a non-profit called People USA. I feel lucky to have housing because the homeless population in Dutchess County is treated terribly. For example, during the COVID pandemic, homeless people were kept in filthy, small structures called "pods" located on the grounds of Dutchess County jail.

27. Homelessness was especially hard after prison because prison tries to "break" you, and trains you to give up and not advocate for yourself.

28. I feel that being released from prison without stable housing, services and benefits in place set me up for failure and this practice puts other people who are like me at risk too.

29. I want community-based mental health housing and supportive services.

30. I understand that I am a part of a class action lawsuit, and this lawsuit is not only for my benefit, but for the benefit of other class members as well.

31. I understand the responsibilities of being a class representative, including that I am seeking to represent all members of a proposed class of people with serious mental illness, who are housed or who will be housed in a state prison, whose open dates for parole release,

approved conditional release dates, or maximum expiration dates have passed, and who are appropriate for community-based mental health housing and supportive services upon their release from prison.

32.     I understand that this case is also being brought on behalf of individuals who were harmed by DOCCS's and OMH's failure to provide adequate community-based mental health housing and supportive services. As a result of this failure, DOCCS and OMH discharged people to segregated and/or inappropriate settings, such as halfway houses.

33.     I understand that the goal of this lawsuit is to require DOCCS and OMH to take certain actions to stop their harmful practices and to provide care and treatment in the most integrated setting appropriate to the needs of individuals with serious mental illness who are discharged from prison.

34.     I do not have interests that are inconsistent with the interests of the class members I seek to represent. I will adequately represent those class members.

35.     As a class representative, I will always consider the interests of class members just as I would consider my own interests, and in some cases I understand I must put the interests of class members before my own interests.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13 day of Jan, 2023 in Poughkeepsie, NY.

M.G.