UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

M.G., P.C., C.J., M.J., J.R., D.R., S.D., W.P., and D.H., individually and on behalf of all similarly situated,

                              Plaintiffs,

    -against-

ANDREW CUOMO, in his official capacity as the Governor of the State of New York, the NEW YORK STATE OFFICE OF MENTAL HEALTH, ANN MARIE T. SULLIVAN, in her official capacity as the Commissioner of the New York State Office of Mental Health, the NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, ANTHONY J. ANNUCCI, in his official capacity as the Acting Commissioner of the New York State Department of Corrections and Community Supervision, ANNE MARIE MCGRATH, in her official capacity as Deputy Commissioner of the New York State Department of Corrections and Community Supervision,

                              Defendants.

7:19-cv-0639 (CS) (AEK)

------------------------------------------------------------------------ x

## DECLARATION OF S.D. IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

I, S.D., being competent to make this declaration and having personal knowledge of the matters stated herein, hereby declare pursuant to 28 U.S.C. § 1746, that the following is true and correct:

    1.    I am 50 years of age. I grew up in New York City.

    2.    I was on a waiting list for a community-based mental health housing program when the New York State Department of Corrections and Community Supervision released me from state prison on May 17, 2019 to a homeless shelter.

    3.    I am currently in Elmira Correctional Facility.

4. I understand that my records indicate diagnoses for schizophrenia and antisocial personality disorder. I believe that I have also been diagnosed with schizoaffective disorder bipolar type and depression. I first started receiving mental health treatment when I was a teenager.

5. I take several mental health medications including Haldol, Clozapine, Remeron, Lithium, and Cogentin. Medications lessen some of my symptoms and help me control my behavior, but some symptoms do not go away totally. Often I hear voices and sometimes I feel or see things, like bugs crawling on me. The voices tell me negative things about myself and tell me to hurt myself or engage in violence. When I miss my medications, I become very unwell; I sometimes have suicidal thoughts and the voices worsen.

6. There have been times that I became very sad and thought about harming or killing myself, or heard voices telling me to hurt others. I have also attempted suicide several times, both in and outside of prison. During earlier periods of incarceration, I was placed on suicide watch and was also transferred to hospitals for psychiatric treatment, including to the Bellevue Hospital prison ward and to Central New York Psychiatric Center. Around 2020 or 2021, while I was on Rikers Island, I both was put on suicide watch and was again sent to the Bellevue Hospital prison ward for several months.

7. I have spent a large portion of my life in one type of institution or another. I have been incarcerated several times. Immediately after my first prison sentence ended in 2010, I was sent to Manhattan Psychiatric Center where I was a patient for about two and a half years. I was in the community for less than a day before I deteriorated and was arrested again. In 2014, I began a second prison sentence and was incarcerated until my conditional release date on May 17, 2019.

8. I have also been hospitalized because of my mental illness multiple times, including at Manhattan Psychiatric Center, Kirby Psychiatric Center, Harlem Hospital, Bellevue Hospital prison ward, and Central New York Psychiatric Center.

9. Before my release in 2019, I received mental health treatment in prison. The Office of Mental Health (OMH) classified me as "1-SV," which is a classification for people with serious mental illness and a history of violence, specifically a conviction for a violent felony. I was in the Intermediate Care Program (ICP), which is for people with serious mental illness. Immediately before my release from prison in 2019, I was in Auburn Correctional Facility's ICP and then briefly at Downstate Correctional Facility.

10. Before my release date in 2019, I talked to OMH about how I would be homeless after my release from prison. OMH submitted a housing application for me and recommended community-based mental health housing. I understand that when the New York City processed the housing application, it conditionally approved me for Level II supportive housing. I understand that this type of housing is for people with serious mental illness who need a lot of support with independent living. One type of support that is provided is on-site help with medications.

11. In April 2019, I had a video teleconference interview for housing with an organization called Promesa. I was told that I was approved for the program. I understood that to mean that I would be going straight to Promesa when I was released from prison.

12. About a month before my release, OMH staff told me that I was placed on a waiting list for Promesa's housing. I was also told that OMH recommended that I have a Forensic Assertive Community Treatment team or receive Assisted Outpatient Treatment, which is treatment that a court supervises.

13. On May 17, 2019, DOCCS released me, transported me to meet with my parole officer, and then took me to the 30th Street Men's homeless shelter. I was upset and nervous that I was dropped off at a homeless shelter rather than Promesa because shelters do not provide the services that I need.

14. Although I had been told I was on a waitlist for Promesa housing, I did not know how long it would take to actually get placed into housing. I had no idea how long I would remain in the homeless shelter system. My godmother tells me that she called Promesa several times over the next few months to learn whether it had a bed available for me, but their staff apparently always told her that no bed was available.

15. When I was placed at the shelter, I did not have my Social Security card or benefits activated, so it was difficult for me to obtain what I needed in the first days of my release. I had to rely on my godmother to help me.

16. From the 30th Street Men's shelter, I was moved to another shelter in the Bronx called the NAICA East Tremont Transitional Housing Program ("East Tremont").

17. I have been told that East Tremont is a mental health shelter, meaning that the people assigned to the shelter have mental illness.

18. I had to follow rules regarding curfews and shelter security. Each night, I had to sign up for my bed. I shared a room with six strangers, and I was afraid that other shelter residents would cause some conflict.

19. Even though the shelter is supposed to provide support to people with mental illness, the shelter staff were not able to prevent conflict between residents and did not seem to understand the services that people with mental illness require to stay safe and healthy in the shelter environment.

20. I carried some of my mental health medications with me at all times in a small bottle, rather than keep them at the shelter. When the shelter staff found the medications, they took them from me because they said I could be arrested if the police found an unlabeled pill bottle in my possession. They did not ask if I needed help with my medications, check if I had enough medications, or offer help with getting more.

21. I asked a medical staff member to let me have free access to my medication, but they would not. Because shelter staff possessed my medications and did not refill them when the medications ran low on supply, I began to ration my medications. I became very sick after I missed several doses of my medications. I do not think shelter staff even knew what my prescribed medications were.

22. When I talked to my godmother, she noticed something was not right. She told me to call my FACT team for emergency help and I did. On June 12, 2019, the FACT team brought me to Harlem Hospital, and I stayed there for about three months. I believe that the shelter was a bad environment for me because I did not get the help I needed.

23. At the hospital, I continued to have bad symptoms – I was hearing voices. I talked to the hospital staff about how I was afraid to be around people and go back to the shelter because of the voices.

24. I was transferred to Manhattan Psychiatric Center for mental health treatment on September 9, 2019. I was there for over ten months. When I was there, some days my symptoms were very bad. I talked to staff about my housing after discharge, and staff told me they were considering placing me at a Transitional Living Residence. But before I could get better and be discharged, I had an incident with another patient and was arrested.

25. I was held at Rikers Island while my criminal case was pending. I continued to struggle with my mental illness during that time. I was transferred to the Bellevue Hospital prison ward for three months, and I was then transferred to Kirby Psychiatric Center because I was found unfit for trial.

26. In August 2022, I started serving a new sentence in state prison. I have a conditional release date of March 22, 2023 and a maximum expiration date of July 22, 2024. I will be homeless when I am released.

27. I believe that if I had received the housing and supportive services that I needed when I was released from prison in May 2019, I would have avoided the hospitalizations and incarceration I have had since that release.

28. If I am released to the shelter system again, I believe I am at risk that I will deteriorate again.

29. I understand that I am a part of a class action lawsuit, and this lawsuit is not only for my benefit, but for the benefit of other class members as well.

30. I understand the responsibilities of being a class representative, including that I am seeking to represent all members of a proposed class of people with serious mental illness, who are or will be appropriate for community-based mental health housing and supportive services upon their release from prison, who do not receive such services, and who reside in a segregated setting or who are at serious risk of being institutionalized.

31. I understand that this case is also being brought on behalf of individuals who were harmed by DOCCS's and OMH's failure to provide adequate community-based mental health housing and supportive services. As a result of this failure, DOCCS and OMH held these individuals in prison past their lawful release dates.

32. I understand that the goal of this lawsuit is to require DOCCS and OMH to take certain actions to stop their harmful practices and to provide care and treatment in the most integrated setting appropriate to the needs of individuals with serious mental illness who are discharged from prison.

33. I do not have interests that are inconsistent with the interests of the class members I seek to represent. I will adequately represent those class members.

34. As a class representative, I will always consider the interests of class members just as I would consider my own interests, and in some cases I understand I must put the interests of class members before my own interests.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 16 day of Dec, 2022 in Elmira, NY.

*S.P.*
_____
S.D.