UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

M.G., P.C., C.J., M.J., J.R., D.R., S.D., W.P., and D.H., individually and on behalf of all similarly situated,

                              Plaintiffs,

      -against-                    7:19-cv-00639 (CS) (AEK)

ANDREW CUOMO, in his official capacity as the Governor of the State of New York, the NEW YORK STATE OFFICE OF MENTAL HEALTH, ANN MARIE T. SULLIVAN, in her official capacity as the Commissioner of the New York State Office of Mental Health, the NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, ANTHONY J. ANNUCCI, in his official capacity as the Acting Commissioner of the New York State Department of Corrections and Community Supervision, ANNE MARIE MCGRATH, in her official capacity as Deputy Commissioner of the New York State Department of Corrections and Community Supervision,

                              Defendants.
------------------------------------------------------------------- X

## DECLARATION OF JULIE DUNCAN

**JULIE DUNCAN** declares the following to be true and correct under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1.     I am the Director of Housing Development and Support for the New York State Office of Mental Health ("OMH"). I have held this position since April 2020, at first in an acting role and then via a formal appointment in July 2021. In this position, my duties include directing the OMH staff responsible for providing programmatic oversight to OMH funded or licensed residential programs, and managing capital appropriations for the development of new and preservation of existing residential programs.

1

2. I submit this declaration in support of the Defendants' opposition to Plaintiffs' motion for class certification. I have been asked to provide the Court with an overview of the community-based mental health housing and services available in the State of New York, as well as to explain the process applicants follow to seek a placement for those services. This declaration is based upon my personal knowledge and my review of OMH records maintained in the normal course of business.

## Community Mental Health Services and Housing in New York

3. New York State facilitates an extensive network of community-based mental health services and housing. Community-based mental health services licensed or operated by OMH include Mobile Integration Teams ("MIT"), Assertive Community Treatment ("ACT") Programs, Forensic ACT Programs, Clinic Treatment Programs, and Home-Based Crisis Intervention, among other services. An OMH glossary describing the different types of community services is available at https://omh.ny.gov/omhweb/transformation/docs/glossary_of_services.pdf, and attached for the Court's reference as Defendants' Exhibit 73.

4. OMH also funds and licenses an extensive network of community mental health housing. Currently there are approximately 48,000 units of community mental health housing statewide. Community mental health housing includes various models that provide different levels of services, depending upon the service needs of the individual resident. The most service-intensive housing models are the three types of OMH-licensed housing models: (1) congregate community residences with staff on-site 24/7; (2) community residences with single room occupancy and staff on-site 24/7; and (3) apartment models with off-site staff who visit regularly. Less intensive housing models not subject to OMH licensing include: (1) supported single room occupancy housing in mixed use buildings, where the same building has a mix of units dedicated for people with mental illness and other units that are not dedicated for that purpose, and staff is not on-site 24/7 except

2

front desk staff; and (2) scattered site apartments for rent in the community with fewer services and a stipend provided to help pay for rent.

5. Individuals who have been convicted of crimes and who are released from prison settings have access to the same system of community-based mental health housing and services as all other New Yorkers. These individuals may apply for a placement with the level of services that best suits their needs. In addition, there are some units of housing that have been specially designated to be set aside for individuals with a forensic history. These dedicated forensic units are mostly scattered site model units.

6. The vast majority of community mental health housing units in New York State are owned and operated by non-profit housing providers. OMH directly operates a limited number of transitional living residences ("TLRs") located in the community on or near the campuses of OMH psychiatric centers. TLRs can be an important stepping-stone for individuals who require additional support while they develop the skills necessary to live in the community and develop a positive track record of demonstrating community living skills. OMH otherwise does not directly operate community mental health housing.

**Locally Controlled Application and Placement Process for Community-Based Mental Health Housing and Services**

7. While OMH funds and licenses community mental health housing in New York State, OMH generally does not control access to housing or make individual eligibility and placement decisions. Access to community mental health housing and services is facilitated through a process of coordination between county and local governments and local non-profit housing providers, based on the particular needs and presentation of the individual applicant and the needs within each community.

8. Throughout the State there are dozens of local Single Point of Access ("SPOA") committees that control access to mental health housing and services and make individual eligibility

3

and placement decisions within their region. These SPOA committees are not controlled or operated by OMH and they are independent from New York State. Most counties have their own independent SPOA committee. In New York City, the New York City Human Resources Administration ("NYC HRA") performs this function for all five boroughs. Some rural counties have consolidated SPOA operations under a joint SPOA Committee. In all regions, each local SPOA committee is responsible for making placement determinations, prioritizing resources within the community, and ensuring that individuals with the highest need receive priority placements.

9. An individual seeking a community mental health housing placement must submit a SPOA application to their local SPOA committee or to NYC HRA. The local SPOA committee or NYC HRA reviews the application and makes a determination about the individual's eligibility for placement and the type of placement that is appropriate, if any. The local SPOA committee or NYC HRA also determines the individual's priority level for placement, given the county's assessment of resources in the region and the needs of all individuals currently seeking placement in the community. OMH has identified specific populations that typically demonstrate the highest level of need and has required that these populations be prioritized for housing. Individuals from the following settings have been identified as priority: State psychiatric centers and State-operated residential programs, Article 28 hospitals, Residential Treatment Facilities, street or shelter homeless, and State prisons.

10. Next, the local SPOA committee sends referrals to housing providers located in their region. Each provider must review the referral and determine if it has an available placement that is appropriate for the individual. If a provider believes it may have an appropriate placement, it will meet with the applicant to determine if the potential placement is suitable and appropriate for the individual's needs. Individual placement decisions are made based on a discussion between the local SPOA committee and local non-profit housing providers. OMH is generally not directly involved in

this process. While OMH may determine the overall eligibility criteria for a given housing program or initiative, OMH does not make individual eligibility or placement determinations.

11. Housing placements are not "one-size-fits all," and just because a provider has an available unit, that does not mean that any applicant will be a suitable match for the placement. Non-profit housing providers may not exclude anyone from their program based on any exclusionary criteria. Pursuant to OMH's Part 595 regulations, providers may not "den[y] access to services solely on the basis of multiple diagnoses, physical disability, a diagnosis of HIV infection, AIDS, or AIDS-related complex, pregnancy, or solely because the individual has any past involvement with substance abuse or the criminal justice system[.]" 14 CRR-NY 595.6(e). However, providers may make admissions decisions "based upon the functional, clinical and behavioral needs of the applicant, which are relevant to its functional program[.]" 14 CRR NY 595.6(d)(7)(vii). This necessarily includes an individualized assessment of the individual's clinical presentation and history, including history of services needed, decompensation, or incidents of violence toward others or destruction of property. Ultimately, each non-profit housing provider that receives an application must independently assess the application and determine if its staff will be able to safely and appropriately serve the applicant in an available residence.

12. Importantly, providers must also consider the safety and clinical needs of any existing clients who are already living at the residence. Many of those residents are themselves vulnerable individuals with mental illness who face a heightened risk of becoming victims of violence. Providers must consider whether the addition of the new resident will place their current clients at risk of violence or otherwise jeopardize their own treatment needs.

13. Generally, it is more difficult for the local SPOA committee to find a provider with an available, safe, and suitable housing placement when the individual seeking placement has unusually extensive services and staffing needs. Likewise, finding a safe and suitable placement is

5

more challenging if the applicant presents a heightened risk of violence toward the residents and staff, given a chronic history of violence toward others, or a history of destruction of property (such as a history of setting fires), among other factors.

14. So long as the provider adheres to the Part 595 regulations, neither OMH nor the local SPOA committee have authority to force a provider to accept any individual applicant. Nor would doing so be appropriate, since it is essential that the staff at each provider use their own independent professional judgment to determine whether they are equipped to provide safe and appropriate placement for the individual in any given vacancy, given the individual applicant's needs and the needs of the current residents.

15. Each individual applicant can also reject any given placement opportunity. Neither OMH nor the local SPOA committee can force an individual to accept a placement. Generally, it is more difficult for the local SPOA committees to find a suitable placement if the individual rejects options presented to him or her, or if the individual places restrictions on what units they are willing to consider, such as geographic restrictions. It is also more difficult to locate a placement if the individual declines to consider shared housing options with roommates or housemates.

16. Access to community-based mental health care management services, such as ACT Programs and Health Home Care Management, is facilitated by the same local SPOA committee process. Upon receiving an application for community mental health care management services, the local SPOA committee makes individual eligibility and placement determinations. Other community-based mental health services, such as outpatient clinic services, are secured directly with the service provider.

**Populations Seeking Community Mental Health Housing in New York State**

17. Individuals who have been convicted of crimes and are being released from prison are not the only group seeking mental health housing and services placements in New York. Other

New Yorkers with mental illness seeking placements at any given time may include: (1) individuals who have been treated in an inpatient psychiatric hospital and are clinically ready for treatment in a more integrated community setting; (2) individuals who are homeless and have a mental illness, but who have not been convicted of crimes and have not been incarcerated; (3) individuals with mental illness who have been living with their family, but who desire to or must move out of the family home; and (4) individuals currently receiving housing and who have made progress, such that they are seeking placement in a residence with a more independent level of care.

### Residential Placement of Named Plaintiff JR

18.  Based on my review of OMH records, Named Plaintiff JR was released on or around March 18, 2019, to OMH-operated community housing at the Rockland Psychiatric Center Alliance House in Poughkeepsie, New York. On or around April 9, 2019, JR was discharged to a placement in mental health apartment housing operated by PEOPLE, Inc. In or around September 2021, OMH received notification that JR was no longer living at that residence. OMH does not have any record of his current location.

Dated: July 6, 2023
Albany, New York

JULIE DUNCAN

7