UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

M.G., P.C., C.J., M.J., J.R., D.R., S.D., W.P., and D.H.,
individually and on behalf of all similarly situated,

                                            Plaintiffs,

          -against-                              7:19-cv-00639 (CS) (AEK)

ANDREW CUOMO, in his official capacity as the Governor of the State of New York, the NEW YORK STATE OFFICE OF MENTAL HEALTH, ANN MARIE T. SULLIVAN, in her official capacity as the Commissioner of the New York State Office of Mental Health, the NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, ANTHONY J. ANNUCCI, in his official capacity as the Acting Commissioner of the New York State Department of Corrections and Community Supervision, ANNE MARIE MCGRATH, in her official capacity as Deputy Commissioner of the New York State Department of Corrections and Community Supervision,

                                            Defendants.
------------------------------------------------------------------ X

## SUPPLEMENTAL DECLARATION OF WENDY VOGEL

**WENDY VOGEL** declares the following to be true and correct under penalty of perjury, pursuant to 28 U.S.C. § 1746:

      1.      I am the Director of Central New York Psychiatric Center ("CNYPC") Pre-Release Services and Community Reentry for the New York State Office of Mental Health ("OMH"). I have held this position since October 2014. CNYPC is a comprehensive mental health service delivery system providing a full range of care and treatment to persons incarcerated in the New York State Correctional Facilities. In my position, I oversee discharge planning for incarcerated individuals on the OMH caseload releasing from New York State prisons, and I manage the OMH housing, care coordination, and training resources dedicated for this population.

2. I previously provided a declaration in this matter dated December 13, 2019, in support of the Defendants' motion to dismiss the Amended Complaint. (ECF No. 91). I am submitting this supplemental declaration in support of the Defendants' opposition to the Plaintiffs' motion for class certification. My prior declaration provided information about OMH's process for locating housing placements for incarcerated individuals released from the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") who are classified as having a Serious Mental Illness as defined by New York Mental Hygiene Law § 1.03(52) ("SMI"). In this supplemental declaration, I have been asked to provide the Court with further information and context about the pre-release process. This declaration is based upon my personal knowledge and my review of OMH records maintained in the normal course of business.

### OMH Release Planning and Procedures for Incarcerated Individuals With SMI

3. For individuals with SMI who are incarcerated in DOCCS custody, OMH conducts discharge planning leading up to the individual's release from prison.[1] OMH staff generally begin the pre-release planning process approximately 90 days before an individual's scheduled release date. A Pre-Release Coordinator working at the correctional facility that houses the individual works with the treatment team and the incarcerated individual to assess their discharge needs, including the potential need for housing and mental health treatment in the community.

---

[1] The process described here may not apply to some incarcerated individuals requiring specialized non-mental health placements, such as housing through the New York State Office for Persons With Developmental Disabilities or Residential Health Care Facilities. The process described here also do not apply to incarcerated individuals subject to the residency restrictions of the Sexual Assault Reform Act ("SARA").

4.  OMH Albany Pre-Release Services staff, which includes CNYPC clinical leadership, conduct a clinical record review of all incarcerated individuals with SMI, as well as all incarcerated individuals with an "S designation" as defined at New York Correction Law § 137(6)(e).[2]

5.  In some cases, where an OMH clinical professional has determined that an incarcerated individual has a history of violence or is otherwise deemed high risk due to history of psychiatric hospitalization and decompensation in the community, the incarcerated individual's discharge plans may be further reviewed by an OMH Specialized Review Committee, consisting of the Pre-Release Services Unit Chief, the CNYPC Clinical Director or designee, and the Medical Director of the Division of Forensic Services.

**Process if Incarcerated Individual is Not Psychiatrically Stable for Community Release**

6.  During the pre-release clinical assessment process, OMH staff determine whether the individual is psychiatrically stable for release to the community. If OMH's clinical assessment is that the individual is not psychiatrically stable for community release, OMH follows a pre-transfer hearing process to obtain judicial review regarding whether the incarcerated individual meets the statutory requirements for inpatient care at a civil psychiatric hospital.

**Process if Incarcerated Individual is Psychiatrically Stable for Community Release**

7.  If OMH staff determine that the individual is psychiatrically stable for release to the community, DOCCS staff, with input from OMH, are involved in determining where the individual will live upon release from prison. The process described here is necessarily a dynamic one that adapts if an individual's mental status changes during the course of the process. OMH staff may re-

---

[2] The population of incarcerated individuals with an S-designation overlaps with the population of incarcerated individuals with SMI, but those two groups are not identical. For example, an individual who has recently attempted suicide would be eligible for an S-designation but would not necessarily qualify as SMI, depending on his / her / their diagnosis.

assess any of these clinical determinations as appropriate based on the individual's presentation, all the way up to the release date.

8. Incarcerated individuals can propose up to three addresses to be vetted by DOCCS Parole personnel. If DOCCS Parole approves a proposed residence, the individual will likely be released to that residence on their release date. There are also individuals who are not on parole and therefore do not require parole approval for housing.

9. If an incarcerated individual with SMI does not have any DOCCS Parole-approved residence in the community, they are considered to be at risk of homelessness upon release. For all such individuals, OMH prepares and submits a Single Point of Access ("SPOA") application for community-based mental health housing to the County or City SPOA Committee in the individual's proposed county of release, unless the individual does not consent to a SPOA application being made on their behalf. OMH's submission of a SPOA application to the County or City SPOA Committee on an individual's behalf is not a final determination of eligibility or priority for any particular housing or services. It is an application that will be reviewed and acted upon by the County or City SPOA Committee. Upon receipt of a SPOA application, the County or City SPOA committee makes an eligibility determination and refers the application to local non-profit housing providers within the applicable region. The County or City SPOA Committee and providers work together to determine an appropriate placement for the individual.

10. Although OMH is in most cases not directly involved in individual placement decisions, the County or City SPOA Committees may send OMH certain information during this process. SPOA Committees inform OMH when an applicant is accepted to a new housing placement. The SPOA Committees do not generally send OMH a comprehensive listing of all providers to whom the referrals are sent. In some cases, OMH may learn that an applicant has been rejected by a provider operating one of the housing units dedicated for the forensic population. In

those cases, OMH typically requests that the provider provide information about its rationale, in order to ensure that the provider is not inappropriately excluding an applicant for categorical reasons. On occasion and when appropriate, OMH might respond to the rejection with additional clinical information, or with a request that an additional risk assessment be performed, in order to encourage the provider to give the applicant another chance to secure housing.

11. Incarcerated individuals are adults who are entitled to make their own independent decisions throughout this process. OMH cannot force an incarcerated individual to accept any particular housing placement. At any point in the process, the incarcerated individual might choose to decline to participate or reject a potential placement.

12. There are times when, during the pre-release review process, OMH staff may flag a particular individual as requiring placement in a community-based mental health housing setting upon release from prison, in order to ensure a stable release, given their history and clinical presentation. In such cases, OMH's consistent practice has been to locate a housing placement prior to the incarcerated individual's scheduled release date. Such a placement may include one of the limited number of OMH-operated residential housing units or Transitional Living Residences ("TLRs") located in the community on or near the campus of OMH psychiatric centers. All such placements are residences located outside of prison settings and provide residents the ability to interact in the community, potentially subject to house rules regarding check-in and curfew. Since 2014, for every incarcerated individual who has been identified by OMH staff as requiring a community-based mental health housing placement upon release, OMH has provided the incarcerated individual with a housing placement by the time of their scheduled release date.

13. For every incarcerated individual with SMI being released from DOCCS custody, OMH staff prepare a Discharge Summary document. Each Discharge Summary lists the approved community address to which the individual will be released. If OMH issues a Discharge Summary

listing a shelter as an approved address, that necessarily means that OMH staff have not made a determination that the individual requires some other housing placement upon release from prison in order to ensure a stable release. If an individual is released to a shelter, the assigned mental health care manager in collaboration with the local SPOA committee will continue to work on the housing placement process going forward, as long as the individual has provided consent for housing assistance.

14. Even if an individual being released has not yet received a community-based mental health housing placement at the time of release, the individual may receive other community mental health services and treatment. Such services may include post-release mental health care management such as Assertive Community Treatment or Health Home Care Management, or mental health clinic services, among others. Placement with a care management service provider is facilitated through the same local SPOA committee process that provides housing placements. For all incarcerated individuals with SMI being released from prison, OMH sends a mental health care management referral to the individual's local SPOA committee. This is true even if the patient refuses to cooperate, because OMH expects the assigned care management provider to attempt to engage the client upon release, even if that individual has indicated that he / she / they will refuse services.

Dated: July 3, 2023
Albany, New York

*Wendy M Vogel*
WENDY VOGEL