UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

M.G., P.C., C.J., M.J., J.R., D.R., S.D., W.P., and D.H.,
individually and on behalf of all similarly situated,

                              Plaintiffs,

                -against-                         7:19-cv-00639 (CS) (AEK)

ANDREW CUOMO, in his official capacity as the Governor of the State of New York, the NEW YORK STATE OFFICE OF MENTAL HEALTH, ANN MARIE T. SULLIVAN, in her official capacity as the Commissioner of the New York State Office of Mental Health, the NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, ANTHONY J. ANNUCCI, in his official capacity as the Acting Commissioner of the New York State Department of Corrections and Community Supervision, ANNE MARIE MCGRATH, in her official capacity as Deputy Commissioner of the New York State Department of Corrections and Community Supervision,

                              Defendants.
------------------------------------------------------------------ X

## DECLARATION OF MARCO RICCI

**MARCO RICCI** declares the following to be true and correct under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1. I am the Deputy Commissioner for Community Supervision for the New York State Department of Corrections and Community Supervision ("DOCCS"). In my position, I oversee the process by which incarcerated individuals are released from New York State correctional facilities to local communities and the subsequent community supervision of those individuals.

2. My predecessor, DOCCS Deputy Commissioner Ana Enright, previously provided a declaration in this matter dated December 16, 2019, in support of the Defendants' motion to dismiss the Amended Complaint (ECF No. 92). Deputy Commissioner Enright's declaration provided

1

information about DOCCS's policy and practice regarding the release of incarcerated individuals from DOCCS custody who have a Serious Mental Illness ("SMI") diagnosis.[1] Deputy Commissioner Enright subsequently retired, and I now hold the title she previously held. In this declaration, I have been asked to provide the Court with further information and context about the release process, and to confirm that DOCCS is continuing to abide by its December 16, 2019, Memorandum regarding release of incarcerated individuals with SMI. This declaration is based upon my personal knowledge and my review of DOCCS records maintained in the normal course of business.

### Confirmation of DOCCS Practice Following December 16, 2019, Memorandum

3. The vast majority of incarcerated individuals with SMI have always been released on their scheduled release dates. However, as Deputy Commissioner Enright explained in her declaration, prior to December 16, 2019, there were certain, relatively infrequent, instances in which DOCCS staff made an individualized assessment that, given a particular incarcerated individual's presentation or history, the incarcerated individual was likely to pose a safety risk if released to a shelter without another suitable residence in place.

4. During that time period, in these limited cases, where a community-based mental health housing placement was not immediately available upon the incarcerated individual's scheduled release date,[2] and no other appropriate housing, such as placement with family members or others,

---

[1] The process described here does not apply to incarcerated individuals subject to the residency restrictions of the Sexual Assault Reform Act ("SARA").

[2] "Scheduled release date" may refer to the maximum expiration date of the incarcerated individual's sentence of confinement, an open parole date, or a conditional release date after its final determination by a Time Allowance Committee. For the purposes of this declaration, the terms "maximum expiration date," "open parole date," and "conditional release date" are being used as they are defined by statute and applicable regulations. The final calculated conditional release date is determined by a DOCCS Time Allowance Committee after it decides whether to impose any loss of "good time" that has been recommended as a result of prison disciplinary sanctions or other means. Additional information regarding the different types of release dates is available in the DOCCS Community Supervision Handbook, available at https://doccs.ny.gov/community-supervision-handbook/serving-sentence.

was available, DOCCS's practice was to retain the incarcerated individual in DOCCS custody until mental health housing or other appropriate housing was located.

5. Further, during that time period, for some incarcerated individuals in the situation described above for whom a housing placement could not be located prior to the maximum expiration date of their sentence, DOCCS would transfer the incarcerated individual upon their maximum expiration date from the correctional facility to a DOCCS Residential Treatment Facility ("RTF") until a DOCCS-approved housing placement could be identified.[3]

6. In 2019, DOCCS determined that it would end this practice. On December 16, 2019, Deputy Commissioner Enright and DOCCS Associate Commissioner of Mental Health Bryan Hilton issued a memorandum to all DOCCS Superintendents and Community Supervision Bureau Chiefs permanently ending the practice described above (the "Memorandum"). The Memorandum is again attached here for the Court's reference as Defendants' Exhibit 79.

7. The Memorandum stated that it was "provid[ing] guidance with regards to the release of incarcerated individuals diagnosed with serious mental illness (SMI) and not subject to Sexual Assault Reform Act (SARA) housing requirements. The Office of Mental Health (OMH) is responsible for diagnosing incarcerated individuals with SMI and assessing if those individuals require mental health housing or otherwise appropriate residential housing upon release. If OMH has made the clinical determination that any such incarcerated individual may be released from DOCCS custody to a shelter setting, DOCCS will allow such release on their scheduled release date." DOCCS further understands that for every incarcerated individual who has been identified by OMH staff as requiring

---

[3] As defined by N.Y. Correction Law § 2(6), an RTF is "[a] correctional facility consisting of a community based residence in or near a community where employment, educational and training opportunities are readily available for persons who are on parole or conditional release and for persons who are or who will soon be eligible for release on parole who intend to reside in or near that community when released."

3

a community-based mental health housing placement upon release, OMH will provide the incarcerated individual with a housing placement by the time of their scheduled release date.

8. The Memorandum was communicated to correctional facility Superintendents, correctional facility Deputy Superintendents of Programming, correctional facility Senior Offender Rehabilitation Coordinators, correctional facility Offender Rehabilitation Coordinators, Community Supervision Regional Directors, Assistant Regional Directors, Bureau Chiefs, Senior Parole Officers, and Parole Officers.

9. Deputy Commissioner Enright also reviewed the contents of the Memorandum at her December 2019 monthly telephone conference with DOCCS regional directors, assistant regional directors, and bureau chiefs.

10. The Memorandum permanently ended the prior DOCCS practice described above. As Deputy Commissioner Enright noted in her prior declaration, as of December 16, 2019, no incarcerated individuals classified as having SMI and not subject to SARA residency restrictions were being held in DOCCS custody past their scheduled release date as a result of a determination by DOCCS that these incarcerated individuals require mental health housing and available mental health housing had not been located for them.[4]

11. As of this date, it continues to be the case that there are no incarcerated individuals with SMI who are not subject to SARA residency restrictions being held in DOCCS custody past their scheduled release date as a result of a determination by DOCCS that these incarcerated individuals require mental health housing and available mental health housing has not been located for them.

---

[4] As DC Enright previously noted, there may be instances where an inmate classified as having Serious Mental Illness who is not subject to SARA is retained in custody for reasons that do not concern mental health housing. For example, an incarcerated individual may be so physically disabled that nursing home care is medically required and the inmate cannot be released to a shelter or family is unable to care for them due to their serious medical issues. In these instances, there may be delays in finding an appropriate nursing home for such inmates.

12. DOCCS does not intend to reinstate the pre-December 16, 2019, practice. DOCCS further understands that, to the extent the Court issues an order enjoining DOCCS from re-instating the pre-December 16, 2019, practice, such an order would apply not just to the Named Plaintiffs in this case, but to all similarly situated individuals.

**Unforeseen Circumstances**

13. In Deputy Commissioner Enright's previous declaration, she noted that, pursuant to DOCCS's post-December 16, 2019, practice, incarcerated individuals "will be released from custody as scheduled, including release to a shelter if other housing is not available, barring any unforeseen circumstances." I understand that the Court expressed concern that the reference to "unforeseen circumstances" might mean that some incarcerated individuals may continue to be held past their release dates because of a lack of mental health housing placement, despite the Memorandum. To remove any ambiguity on this point, I can confirm that DOCCS does not hold any incarcerated individuals with SMI who are not subject to SARA residency restrictions past their scheduled release date as a result of a determination by DOCCS that these incarcerated individuals require mental health housing and available mental health housing has not been located for them. Such a circumstance would not be considered an "unforeseen circumstance." Rather, an "unforeseen circumstance" refers to the potential that a truly unexpected, emergency event could occur at or around the release date that could temporarily delay an incarcerated individual's release, despite DOCCS's best efforts—for example, an emergency medical event or psychiatric episode, extreme weather, or catastrophic event that forces the temporary closure of a particular residence program or emergency housing location.

**Waivers of Release**

14. I also understand that the Plaintiffs previously expressed a concern that DOCCS might continue the pre-December 16, 2019, practice by means of obtaining "waivers" of release from incarcerated individuals with SMI. That is not accurate. DOCCS has not, and will not, use waivers of

release in order to hold incarcerated individuals with SMI who are not subject to SARA residency restrictions past their scheduled release date as a result of a determination by DOCCS that these incarcerated individuals require mental health housing and available mental health housing has not been located for them. A waiver of release may arise in response to an incarcerated individual's voluntary refusal to agree to the terms and conditions of a period of community supervision. The typical scenario involves an individual who has notified staff at the correctional facility that they will refuse release and thus avoid the compliance requirements associated with parole, conditional release, or a period of post-release supervision.

### Multiple Reasons for Holding Incarcerated Individuals Past Open Dates or Conditional Release Dates

15. I understand that Plaintiffs have defined the proposed General Class as consisting of "[a]ll persons (1) housed or who will be housed in a state prison, (2) with serious mental illness, (3) whose open dates for parole release, approved conditional release dates, or maximum expiration dates have passed, (4) who are not subject to residency restrictions under the Sexual Assault Reform Act, and (5) who are appropriate for integrated, community-based housing programs[.]"

16. An open date for parole release represents the earliest possible release date. Incarcerated individuals may be held in a state prison beyond their open dates for parole release or approved conditional release dates in certain circumstances for reasons that are unrelated to a placement in community mental health housing. For example, an incarcerated individual who has been granted an open date for parole release might engage in a serious violation of facility rules prior to being released. In this circumstance, the incarcerated individual's parole release date may be temporarily suspended under the authority of the Board of Parole pending an investigation by facility staff, a review of the rescission report, and the completion of a rescission hearing by a panel of the Board. Other potential reasons an incarcerated individual might be held beyond their originally scheduled release date include: an individual refusing to accept conditions of release; recalculation of

6

a release date; COVID or health department order; weather related transportation issues; or serious medical issues.

### Crider Declaration

17. I have reviewed the Declaration of Seth Crider dated February 8, 2023, which Plaintiffs served along with their motion for class certification. In this Declaration, Mr. Crider, an "E-Discovery Data Science Advisor," discusses certain spreadsheets that have been produced in this litigation by DOCCS. He concludes that these spreadsheets show that DOCCS is continuing to hold incarcerated individuals with SMI who are not subject to SARA residency restrictions past their scheduled release date as a result of a determination by DOCCS that these incarcerated individuals require mental health housing and available mental health housing has not been located for them. Mr. Crider's analysis is incorrect.

18. In support of his assertion, Mr. Crider states that he reviewed a Special Residency Condition Report spreadsheet produced by DOCCS with Bates stamp D-00087815, which he states shows that as of April 1, 2022, after the Memorandum was issued, "two people with SMI, exclusive of SARA or other sex offense restrictions, were being held past their release dates due to their OMH levels." Crider Decl. ¶ 20. The circumstances of the incarcerated individuals listed in the cited document do not support Mr. Crider's claim. The first individual, who I will call GA, required particular community supportive services due to his intellectual and developmental disability, not his SMI diagnosis. GA was released on July 13, 2022, prior to the maximum expiration of his sentence, to a community residence approved by the New York State Office for Persons With Developmental Disabilities ("OPWDD"). The second individual, who I will call GJ, likewise required particular community supportive services due to his intellectual and developmental disability, not his SMI diagnosis. GJ was discharged on October 14, 2022, prior to his maximum expiration date of his sentence. A third individual listed on the spreadsheet, who I will call JO, is subject to Mental Hygiene

7

Law Article 10 review for civil confinement pursuant to his crimes of conviction. JO remained in custody through this judicial process until January 13, 2023, when a court found him to be a dangerous sex offender requiring confinement pursuant to Article 10 and ordered him civilly confined to the Central New York Psychiatric Center.

19. Mr. Crider also writes that he analyzed various DOCCS priority release lists, which he asserts show that some individuals with SMI were held past their release dates, even after the date of the Memorandum. Crider Decl. ¶ 15. As I noted above in Paragraph 16, incarcerated individuals may be held in a state prison beyond their open dates for parole release or approved conditional release dates in certain circumstances for reasons that are unrelated to a placement in community mental health housing. The priority release lists do not suggest, and should not be read to suggest, that there are any incarcerated individuals with SMI who are not subject to SARA residency restrictions being held in DOCCS custody past their scheduled release date as a result of a determination by DOCCS that these incarcerated individuals require mental health housing and available mental health housing has not been located for them.

### Other DOCCS Documents Cited by Plaintiffs

20. I have reviewed Plaintiffs' Exhibit 42, which is a DOCCS spreadsheet produced in this litigation. I understand that Plaintiffs have claimed that this spreadsheet indicates that "two non-SARA individuals with SMI were held past their release date due to their OMH levels as of March 2022." Plaintiffs' Motion at 9 n.40. Plaintiffs are misreading this document. The document references the same individuals I discussed in Paragraph 18, above.

21. I have reviewed Plaintiffs' Exhibit 49, which is a DOCCS spreadsheet produced in this litigation. I understand that Plaintiffs have claimed that "rows 81, 140, and 147 describe the same individual, but after the lawsuit was filed, 'OMH 1SY' was dropped from reason for RTF explanation, leaving it just as 'OPWDD.'" Plaintiffs' Motion at 22 n.118. Plaintiffs are misreading this document.

The referenced individual, who I will refer to as CC, required particular community supports due to his intellectual and developmental disability, not his SMI diagnosis. He was released to Sunmount Developmental Disabilities Services Office, which is a secure residence operated by OPWDD. At some point, the spreadsheet was updated to accurately reflect his status.

22.  I have reviewed Plaintiffs' Exhibit 90, which is a DOCCS Directive entitled "Parole Board Imposed Special Conditions of Release Regarding Residency." I understand that Plaintiffs have claimed that this directive means that "DOCCS policy still allows people to be held past open dates for parole and conditional release dates if mental health prevents approval of a residence." Plaintiffs' Motion at 28 n.139. That is incorrect. To be clear, this directive does not permit incarcerated individuals with SMI who are not subject to SARA residency restrictions to be held in DOCCS custody past their scheduled release date as a result of a determination by DOCCS that these incarcerated individuals require mental health housing and available mental health housing has not been located for them. This directive does not contradict the Memorandum's instruction that "[i]f OMH has made the clinical determination that any such incarcerated individual may be released from DOCCS custody to a shelter setting, DOCCS will allow such release on their scheduled release date." As to those individuals who have been identified by OMH staff as requiring a community-based mental health housing placement upon release, DOCCS's policy is to rely on OMH's assurance that it will provide the incarcerated individual with a housing placement by the time of their scheduled release date, and as such, DOCCS will not delay the incarcerated individual's release date due to lack of available mental health housing. While the directive at Exhibit 90 notes that DOCCS staff must consider an incarcerated individual's OMH diagnosis prior to making a request for special conditions regarding residency, it also states that staff must consider factors such as whether the individual's crime is "persistent and/or predatory in sexual offending behavior" as well as SARA housing requirements.

Dated: July 11, 2023
Albany, New York

                                                      MARCO RICCI