# EXHIBIT 119

# 2021 Annual Report
# Pursuant to Mental Hygiene Law Section 33.07 (i):

## The Use of Federal Benefits Received by Directors of Office of Mental Health Facilities as Representative Payee



# 2021 Annual Report

# Pursuant to Mental Hygiene Law Section 33.07(i):

# The Use of Federal Benefits

# Received by Directors of Office of Mental Health Facilities as

# Representative Payee

*Introduction*

The Commissioner of the New York State Office of Mental Health (OMH) is submitting this Report to the Governor, Speaker of the Assembly, Temporary President of the Senate, Chair of the Assembly Committee on Mental Health, and the Chair of the Senate Committee on Mental Health pursuant to Section 33.07(i) of the Mental Hygiene Law (MHL). MHL § 33.07(i) requires the submission of an annual report by OMH detailing how persons' federal benefits are being utilized.

Section One of the Report explains the role of representative payee under federal law and sets forth the requirements of amended MHL § 33.07 with respect to the handling of funds received by a Facility Director as representative payee, including the duties of fiduciaries under State law.

Section Two of the Report describes the procedures which OMH established and has followed since May 1, 1998 in connection with the settlement of a case known as Balzi/Brogan, federal litigation which mandated specific requirements for OMH handling of patients' Social Security benefits, both in the role of representative payee and as a creditor billing against benefits for care and treatment. Given the substantial similarity between the funds at issue in § 33.07(i) and the funds at issue in Balzi/Brogan, as well as the fiduciary duty imposed by both federal and State law, OMH uses the Balzi/Brogan procedures as the framework for exercising the State's fiduciary responsibility with respect to all funds it receives in the capacity of representative payee. This includes decisions regarding establishing a Medicaid qualifying exception trust or similar device, as required by MHL § 33.07(e).

Section Three of the Report provides information regarding the approximately 1485 individuals for whom an OMH Facility Director served as representative payee during the reporting period, the amount of money received, and the disposition of those funds.

*Section One: MHL §33.07*

In order to facilitate the proper receipt and management of Social Security funds for individuals who are eligible for benefits but lack capacity to manage (or to direct management of) the funds, the Social Security Act and its implementing regulations provide for the appointment by the Social Security Administration (SSA) of a "representative payee" to act as a fiduciary to receive and manage the beneficiary's federal benefits.[1] Similar provisions exist for benefits from the Veterans Administration and certain other federal benefit programs.

Pursuant to the Social Security Act, the primary purpose of social security benefits is to pay for the beneficiary's current and reasonably foreseeable needs, such as food, shelter, medical care, and comfort items, as well as "care and maintenance" received in an institutional setting. In *Washington State v. Keffeler et al.*, the United States Supreme Court

---

[1] The Representative Payee program is governed by extensive federal regulations codified at 20 CFR § 404.2001, et seq. and 20 CFR § 416.610, et seq., for Title II (SS, SSDI) and Title XVI (SSI) benefits, respectively. The Social Security Administration also maintains a website which provides guidance to Representative payees. See http://www.socialsecurity.gov/payee/.

held that it is the proper exercise of an institutional representative payee's fiduciary duty to apply funds received in that capacity to the cost of care and treatment in the payee's facility. 537 U.S. 371 (2003).

Furthermore, Section § 33.07(e) of the MHL provides that a Facility Director who, as representative payee of federal benefits, applies such benefits to the cost of the beneficiary's care and treatment at the facility does not violate the director's fiduciary obligation when the director acts in accordance with federal law and regulations.

MHL § 33.07 also provides that the director of a department facility who is representative payee for a federal or state benefit must seek to establish a Medicaid qualifying trust for an individual if the director receives a lump sum retroactive payment of such benefit on behalf of the individual which, in combination with other funds held on behalf of the person, would cause the person to become ineligible for government benefits. Before seeking to place such excess funds in a Medicaid qualifying exception trust, OMH first determines the individual's current and future personal needs, then utilizes the funds to meet current needs, and provides for future needs by funding a Discharge Reserve and/or Burial fund, as appropriate.

*Section Two: Exercising OMH's Fiduciary Duty as Representative Payee*

Under the terms of the 1998 Balzi-Brogan Settlement Stipulation which OMH continues to voluntarily adhere to, OMH has established procedures to conform a Facility Director's responsibility as a Social Security Representative Payee (RP) with OMH's roles as a service provider and creditor of Social Security beneficiaries, and to ensure that there is a clear separation of the duties carried out by the treatment team, the facility Business Office and the facility Patient Resources Office. OMH also included the specific requirements of MHL § 33.07 in Patient Care Directive 801, which can be accessed at https://www.omh.ny.gov/omhweb/policymanual/contents.htm.  Some of the key provisions of OMH's procedures and the Directive are as follows:

- Facility Directors apply to be RP only for those individuals whose treatment teams conclude are not capable of handling (or directing the handling of) their own income.

    o Facility staff confirms that patient understands his/her right to be own payee or ask SSA for a change in payee if desired.

    o Facility Director provides the SSA with the names and addresses of all known relatives and friends who could be considered for appointment as RP in lieu of the director; and advises patient and MHLS that the facility has filed an RP application.

    o SSA uses its own rules and regulations, including a hierarchical order of payee preference, in investigating and appointing a RP that the SSA has determined will best serve the interest and needs of the beneficiary.

- Once named as RP, Facility Director designates the patient's treatment team as the liaison between the director and the patient; and selects a specific member of the treatment team to function as the patient's agent. This selection shall be documented in the client's record.

    o Treatment team performs initial review of patient's needs and assessment of appropriate spending allowance and need for a discharge reserve account.

    o Treatment team member named as patient's agent is responsible for ongoing monitoring, identification, and reporting of patient's needs to the treatment team so arrangements can be made to ensure that those needs are met.

    o Per SSA's rules and regulations, payments for the care and treatment received by the patient at the

- OMH facility are considered to be appropriate expenditures for the use and benefit of the beneficiary, as are expenditures for personal needs which improve the patient's condition while in the facility or expenditures for items that will aid the person's recovery or release from the OMH facility.

- Treatment team is responsible to re-review needs and reassess the recommended spending allowance every 3 months as part of the treatment planning process.

- Facility Business Office is responsible for maintaining the patient's funds in a separately identifiable account, investing the funds, posting applicable interest, and providing the necessary accountings regarding use of the funds to SSA.

MHL § 33.07 requires that OMH Facility Directors seek to establish a Medicaid qualifying trust (or similar device) for a beneficiary who receives a lump-sum retroactive payment (as specifically defined in paragraph 2 of § 33.07(e)) when receipt of such payment may cause the individual to be ineligible for governmental benefits. OMH has developed guidelines to assist in identifying and managing lump sum retroactive benefit awards and windfall payments governed by MHL § 29.23 to ensure review by appropriate staff within OMH Central Office before any billing takes place or a decision is made as to whether OMH is required to seek to establish a Medicaid qualifying trust. Each case is unique, and the entirety of the beneficiary's circumstances is reviewed extensively with input from the individual's treatment team. Billing procedures that address the management of ongoing monthly benefit payments as well as lump sums received due to administrative delay have been developed and disseminated to Patient Resource Office staff.

*Section Three: The Use of Federal Benefits by OMH Facility Directors Acting as Representative Payee (July 1, 2020 - June 30, 2021)*

From July 1, 2020, through June 30, 2021, OMH Facility Directors acted as representative payee for Social Security benefits for approximately 1485 individuals receiving both inpatient and residential services from OMH. The total amount of federal benefits received during this period was $15,567,739.53. Of that amount, $ 11,862,789.98 was applied to the cost of the patients' care and treatment, with $ 3,704,949.55 allocated to the patients' personal accounts for discretionary spending.

Attached is a chart which shows the disposition of monthly federal benefits received by OMH Facility Directors as representative payees for individuals residing in state-operated programs. The report includes total funds, the amount billed for care and treatment, and the amount expended for personal needs for approximately 1485 individuals.

Of the more than $15 million in benefits received, there is one case within the reporting period which may have involved benefits which met the statutory definition in § 33.07(e) of a "lump sum retroactive benefit" for which OMH is required to seek the creation of a Medicaid qualifying trust.

*Conclusion*

OMH has reviewed its existing patient accounting system and the existing system allows for individual patient accounting on a quarterly basis as required by MHL § 33.07(g). As provided in MHL § 33.07(h), OMH met with representatives of the Mental Hygiene Legal Service (MHLS) to collaboratively review the management of funds which OMH Facility Directors receive as representative payees and of funds received pursuant to MHL § 29.23. At the meeting, OMH shared a preliminary version of the information set forth here and reviewed OMH policies and procedures, as well as compliance with regulations OMH promulgated as required by MHL § 33.07(e).

**Disposition of Federal Benefits Received by Facility Directors in Capacity as Representative Payee for Individuals in State-Operated Programs During the Period July 2020 through June 2021.**

| Facility Name | Federal Benefits | Care and Treatment | Personal Spending* |
|---|---:|---:|---:|
| Greater Binghamton | $ 1,277,659.94 | $ 1,047,924.37 | $ 265,246.05 |
| Kingsboro PC | $ 626,196.33 | $ 416,340.09 | $ 53,641.01 |
| Buffalo PC | $ 1,704,308.55 | $ 1,273,430.01 | $ 302,817.80 |
| Creedmoor PC | $ 1,376,911.91 | $ 1,184,197.78 | $ 174,316.57 |
| Manhattan PC | $ 575,006.73 | $ 297,634.09 | $ 98,361.52 |
| Pilgrim PC | $ 2,101,977.08 | $ 1,609,905.20 | $ 212,516.10 |
| Rochester PC | $ 765,743.01 | $ 646,555.26 | $ 75,046.38 |
| Rockland PC | $ 2,291,309.01 | $ 1,824,731.09 | $ 372,701.01 |
| St. Lawrence PC | $ 948,621.50 | $ 686,711.53 | $ 328,880.70 |
| Hutchings PC | $ 236,845.44 | $ 198,292.28 | $ 36,168.53 |
| Bronx PC | $ 764,579.75 | $ 595,389.32 | $ 77,277.48 |
| Capital District PC | $ 699,560.59 | $ 418,039.81 | $ 127,956.04 |
| Elmira PC | $ 1,662,115.10 | $ 1,270,654.46 | $ 464,762.03 |
| South Beach PC | $ 373,566.87 | $ 257,996.33 | $ 38,284.68 |
| Mid-Hudson PC | $ 0.00 | $ 0.00 | $ 0.00 |
| Mohawk Valley PC | $ 163,337.72 | $ 134,988.36 | $ 26,207.18 |
| NYC Children's Center | $ 0.00 | $ 0.00 | $ 0.00 |
| Total: | $ 15,567,739.53 | $ 11,862,789.98 | $ 2,654,183.08 |

* This column reflects actual disbursements from patient accounts for personal spending. In some cases, the sum of the amount billed for care and treatment and the amount recorded as personal spending exceeds the amount identified as having been received as federal benefits. This is because the patient may have had other funds on deposit in his or her account in addition to the federal benefits being reported.