UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

M.G., P.C., C.J., M.J., J.R., D.R., S.D., W.P., and D.H.,
individually and on behalf of all similarly situated,

Plaintiffs,

-against-

ANDREW CUOMO, in his official capacity as the
Governor of the State of New York, the NEW YORK
STATE OFFICE OF MENTAL HEALTH, ANN MARIE
T. SULLIVAN, in her official capacity as the Commissioner
of the New York State Office of Mental Health, the NEW
YORK STATE DEPARTMENT OF CORRECTIONS
AND COMMUNITY SUPERVISION, ANTHONY J.
ANNUCCI, in his official capacity as the Acting
Commissioner of the New York State Department of
Corrections and Community Supervision, ANNE MARIE
MCGRATH, in her official capacity as Deputy
Commissioner of the New York State Department of
Corrections and Community Supervision,

7:19-cv-00639 (CS) (AEK)

Defendants.

------------------------------------------------------------------------x

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THE
MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF PLAINTIFFS'
CLASS CERTIFICATION EXPERTS**

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendants*
28 Liberty Street
New York, NY 10005

GEE WON CHA
ADAM SANSOLO
CAROLINE WALLITT
OWEN T. CONROY
Assistant Attorneys General
*of Counsel*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...............................................................................................................................1

I.    PLAINTIFFS' OPPOSITION CONCEDES MOST OF THE ARGUMENTS IN
      DEFENDANTS' MOTION ................................................................................................1

      A.   Concessions as to Peet's Opinions .........................................................................2

      B.   Concessions as to Factor's Opinions .....................................................................3

II.   PLAINTIFFS' OTHER ARGUMENTS FAIL TO DEMONSTRATE THAT THEIR
      EXPERTS EMPLOYED RELIABLE METHODOLOGIES ..............................................4

      A.   Arguments as to Peet's Opinions ...........................................................................5

      B.   Arguments as to Factor's Opinions .......................................................................7

III.  PLAINTIFFS' EXPERT OPINIONS ARE NOT RELEVANT .......................................8

IV.   THE COURT NEED NOT ACCEPT UNRELIABLE EXPERT TESTIMONY................10

CONCLUSION..........................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.,*
  218 F.Supp.2d 369 (S.D.N.Y. 2002)................................................................................1

*Gallagher v. New York State Bd. of Elections,*
  477 F. Supp. 3d 19 (S.D.N.Y. 2020)................................................................................1

*In re U.S. Foodservice Inc. Pricing Litig.,*
  729 F.3d 108 (2d Cir. 2013).........................................................................................10

*In re UBS AG Secs. Litig.,*
  No. 07 Civ. 11225, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012).....................................1

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011).............................................................................................6, 9-10

*Watson v. Manhattan Luxury Automobiles, Inc.,*
  No. 20 CIV. 4572 (LGS), 2022 WL 4586407 (S.D.N.Y. Sept. 29, 2022) .........................10

FEDERAL STATUTES

Americans with Disabilities Act..........................................................................................6

Rehabilitation Act ............................................................................................................6

RULES

Federal Rule of Civil Procedure 23 .............................................................................. 1, 6, 8

## PRELIMINARY STATEMENT

Plaintiffs' brief in opposition to Defendants' *Daubert* motion is notable for its failure to offer *any* response to the vast majority of specific arguments raised by Defendants. The opposition instead retreats to high-level generalities—for example, repeating over and over that the proposed experts' review of academic literature was purportedly "exhaustive," Pls.' Opp. at 1 & 8, or that the proposed experts have decades of experience, *id.* at 1, 7, 8, 15. But Plaintiffs have nothing at all to say about the vast majority of <u>specific, critical deficiencies</u> in the methodologies and application of their proposed experts—including that the Peet Prison Release Adequacy Standard does not exist in any jurisdiction in the world and is not recommended by any professional resource; and that Dr. Factor, due to his failure to review all clinical records, erroneously represented the scope of services received by the Named Plaintiffs. Plaintiffs' failure to substantively respond to these specific points acts as a concession. Meanwhile, those arguments Plaintiffs do assert fail to establish that the proposed experts employed a reliable methodology or that their opinions are relevant to the Rule 23 analysis. Finally, Plaintiffs incorrectly argue that *Daubert* does not apply at the class certification stage. They are wrong, not least because the Supreme Court stated the opposite in *Wal-Mart*.

## ARGUMENT

### I. PLAINTIFFS' OPPOSITION CONCEDES MOST OF THE ARGUMENTS IN DEFENDANTS' MOTION

Plaintiffs have failed to substantively respond to numerous critical points raised in Defendants' motion, which amounts to a concession as to each of these points.[1]

---

[1] *See Gallagher v. New York State Bd. of Elections*, 477 F. Supp. 3d 19, 49 n.4 (S.D.N.Y. 2020) ("failure to respond to [movant's] substantial argument can be taken as a concession"); *In re UBS AG Secs. Litig.*, No. 07 Civ. 11225, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (a party "concedes through silence" to arguments by its opponent that it fails to address); *First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F.Supp.2d 369, 392–93 & n.116 (S.D.N.Y. 2002) (considering an argument not addressed in opposition brief to be waived).

### A. Concessions as to Peet's Opinions

<u>Concession No. 1</u>: The Peet Prison Release Adequacy Standard, which Ms. Peet and Plaintiffs urge the Court to impose on New York State by injunction, is not based on any industry standard, as Ms. Peet was unable to identify any jurisdiction in the United States, or in any other country, that has implemented it. Defts.' Daubert Mot. at 4. Plaintiffs simply ignore this critical point.[2]

<u>Concession No. 2:</u> There is no resource, study, or document, including in Ms. Peet's own previous work, that recommends States reallocate their mental health resources to achieve anything like the Peet Prison Release Adequacy Standard. Defts.' Daubert Mot. at 4-5. Plaintiffs fail to respond to this point. They instead repeat *ad nauseum* that Ms. Peet reviewed "relevant professional literature," Pls.' Opp. at 1, never acknowledging that *nothing* in this literature supports the highly unorthodox policy prescription that Plaintiffs ask the Court to impose on New York State.[3]

<u>Concession No. 3</u>: Contrary to Ms. Peet's accusation, none of the Local Services Plans ("LSPs") assert "complaints" about the Defendants. Rather, they contain information regarding goals, objectives, and funding requests related to the provision of mental health services, pursuant to a State-created statutory process. Defts.' Daubert Mot. at 5. Plaintiffs offer no substantive response.

---

[2] Plaintiffs' brief at one point vaguely asserts that Ms. Peet claimed "knowledge of other jurisdictions that had 'developed the infrastructure for the safety net services . . . for all people with serious mental illness,' including the relevant population." Pls.' Opp. at 12 (quoting Peet Tr. 38:14–20). This is misleading in two ways. First, Ms. Peet expressly denied having knowledge of any jurisdictions that guarantee access to permanent supported <u>housing</u> for all individuals with SMI at the time they leave prison. Defts.' Ex. 70 (Peet Tr. 38:8-25). Second, while Ms. Peet initially claimed that Maine and Connecticut provided her full list of essential <u>non-housing services</u>, she backtracked upon further questioning and conceded that Maine failed to provide ACT team services statewide. Defts.' Ex. 70 (Peet Tr. 40:6-19; 80:23-81:3).

[3] *See also* Pls.' Opp. at 12 (arguing without citations that "Peet's standard . . . is based on guidance and standards from the National Association of State Mental Health Directors, SAMSHA, and OMH's own mandates"). This is not so: none of these sources endorses anything like the Peet Prison Release Adequacy Standard.

Concession No. 4: Although Ms. Peet opined that OMH has "repeated[ly] refus[ed] to adequately address" local requests for State funding for mental health housing and community services, she actually has *no knowledge* regarding how much funding New York State and OMH have provided for community mental health services and housing in response to the LSPs. Defts.' Daubert Mot. at 5. She testified that under the standard she applied, so long as local governments continue to check off the box in their annual report indicating that mental health housing is a priority need, one can simply *infer* that means OMH is *refusing* to adequately address local requests for mental health funding. *Id.* In reality, New York provides hundreds of millions of dollars per year, and has just supplemented its investment with a historic new *billion dollar* commitment. *Id.* at 5-6. Plaintiffs ignore this point and make no attempt to defend Ms. Peet's incorrect characterization of OMH's alleged "refusal" to fund services.[4]

## B. Concessions as to Factor's Opinions

Concession No. 5: Dr. Factor falsely opined that WP's Forensic Assertive Community Treatment ("FACT") team fails to provide crisis services with outreach available 24/7. Defts.' Daubert Mot. at 8-9. Plaintiffs failed to respond to this point.

Concession No. 6: Dr. Factor falsely opined that WP's FACT team fails to provide peer support services. Defts.' Daubert Mot. at 9-10. Plaintiffs failed to respond to this point.[5]

---

[4] Plaintiffs briefly address the State's new billion dollar investment in a footnote, incorrectly dismissing it as a "bare announcement." Pls.' Opp. at 11 n.7. That is certainly not true, as this massive investment was enacted into law as part of New York's FY 2024 budget. *See* Defts.' Exs. 76 & 77.

[5] As Defendants explained, Dr. Factor's opinions suffer from the severe methodological defect that he repeatedly credited the Named Plaintiffs' unsupported claims about services they purportedly did not receive, *without checking their medical records to determine whether those statements were true.* This threshold defect led him to multiple opinions that are demonstrably false. Defts.' Daubert Mot. at 8-14. Rather than respond to this critical point about Dr. Factor's flawed methods, Plaintiffs unfortunately and baselessly resort to accusing Defendants of racism. Pls.' Opp. at 16. They also assert that there is "no contradiction between [the Named Plaintiffs'] statements and Plaintiffs' records," *id.*, which is of course not true.

Concession No. 7: Dr. Factor falsely opined that WP was "consigned" to the homeless shelter system, an opinion Dr. Factor reached only because he had little to no knowledge of the multiple potential housing placements that WP rejected. Defts.' Daubert Mot. at 10-11. Plaintiffs failed to respond to this point.

Concession No. 8: After failing to review SD's FACT team records, Dr. Factor falsely opined that SD's FACT team failed to provide appropriate FACT services (including substance abuse services), then at his deposition refused to provide a straight answer to questions about his support for this claim. Defts.' Daubert Mot. at 11-12. Plaintiffs failed to respond to this point.

Concession No. 9: Dr. Factor falsely opined that the only community services DH received upon release were clinic appointments and a phone number for a hot-line. Defts.' Daubert Mot. at 12-13. Plaintiffs failed to respond to this point.

Concession No. 10: Dr. Factor falsely opined that DH's providers failed to connect him with substance abuse treatment, which he claimed DH "knew he needed." Defts.' Daubert Mot. at 13. In fact, provider staff placed DH in many substance abuse treatment programs, and Dr. Factor testified that he had no knowledge of these events. *Id.* Plaintiffs failed to respond to this point.

*          *          *

These multiple critical points, conceded by Plaintiffs, go far beyond a mere "disagreement with the conclusions of these experts[.]" Pls.' Opp. at 1. Rather, they go to the very core of a *Daubert* motion: both of Plaintiffs' proposed experts have failed so completely to implement and apply a reliable, objective methodology that their opinions must be excluded. Plaintiffs' silence in response to these multiple key arguments confirms the necessity of that result.

## II.   PLAINTIFFS' OTHER ARGUMENTS FAIL TO DEMONSTRATE THAT THEIR EXPERTS EMPLOYED RELIABLE METHODOLOGIES

While Plaintiffs have refused to directly respond to most of the critical arguments raised by Defendants, their opposition instead asserts an assortment of other points. None succeeds in

4

demonstrating that the proposed experts have implemented or applied a reliable methodology.

### A. Arguments as to Peet's Opinions

_First_, Plaintiffs recite a series of platitudes about how Ms. Peet's opinions "strongly rest on the established principle of deinstitutionalization, a recognized movement away from institutionalization and towards CBMHHSS, deemed vital historically and broadly." Pls.' Opp. at 9. This is non-responsive to Defendants' _Daubert_ arguments. Defendants do not dispute the merits of deinstitutionalization; on the contrary, as demonstrated by the materials in evidence, New York State is a national leader in moving massive sums of State funding to community housing and services. _See_ Defs.' Ex. 78 (national ranking data). The problem with Ms. Peet's methodology is that she endorses a highly idiosyncratic policy approach: that the State must reallocate its mental health resources to _guarantee_ that each person with SMI who has been convicted of a crime receives a permanent housing placement and an extensive list of services on the _first day_ of his release from prison, with _no wait time_ for any housing placement or service. Such an approach is certainly not an "established" one—there is no support for it anywhere in the world outside of Ms. Peet's report in this case.

_Second_, Plaintiffs concede that Ms. Peet neither implemented nor recommended that Maine or Connecticut establish the Peet Prison Release Adequacy Standard when she was in government. Pls.' Opp. at 13. Plaintiffs attempt to minimize this admission by vaguely arguing that this fact is "immaterial[.]" Pls.' Opp. at 13. This response is mystifying. It is Plaintiffs themselves who argue, repeatedly, that Ms. Peet's opinion is purportedly based on her own "decades" of experience in government. _Id._ at 1, 7, 8, 15. _Of course_ the specific details of Ms. Peet's experience are therefore material when weighing her opinion, including that she never pursued the very standard that she now claims is mandatory.[6]

---

[6] Plaintiffs also assert unconvincingly that Ms. Peet's tenure in Maine should be held to a vastly lower standard than the one she applies to New York because "notions of essential services for people with SMI have evolved" and "access to housing was" purportedly "not considered a huge problem in Maine

_Third_, Plaintiffs argue that it is unfair to demand that Ms. Peet consider the financial or practical feasibility of the standard she urges the Court to impose by injunction on New York State, belittling such considerations as "delv[ing] into the weeds on funding." Pls.' Opp. at 10-11. Plaintiffs are wrong when they argue—without any support—that considerations of the feasibility of the Peet Prison Release Adequacy Standard must be deferred to the merits stage. In order to prevail on a Rule 23 class certification motion, Plaintiffs must provide evidence of a "specific practice" of centralized, statewide discrimination against all members of the proposed classes in violation of the Americans with Disabilities Act and Rehabilitation Act. _See Wal-Mart Stores, Inc. v. Dukes_, 564 U.S. 338, 357 (2011). Plaintiffs' theory is that Defendants' failure to adopt and implement the Peet Prison Release Adequacy Standard amounts to centralized discrimination. Given this unusual argument, it is _of course_ relevant to consider whether it is financially or practically feasible to implement the Peet Prison Release Adequacy Standard. If Ms. Peet cannot demonstrate that her peculiar standard is feasible, the fact that Defendants have not established it obviously _cannot_ be evidence of discrimination.

_Fourth_, Plaintiffs try to reframe the Peet Prison Release Adequacy Standard to make it sound more reasonable, denying that Ms. Peet argued that "the State must immediately provide housing and services to individuals with SMI upon release from prison, without wait times." Pls.' Opp. at 11; _see also id._ at 18 ("Peet does not forbid all waitlists"). Defendants will let Ms. Peet speak for herself: "It is contrary to OMH's responsibility—and its express commitment—for these individuals to be turned away, denied, or placed on a waiting list for CBMHHSS, due to OMH's failure to ensure that these services exist in sufficient quantity." Peet Report at 7.

---

at the time that she was Commissioner, therefore not necessitating policy changes." Pls.' Opp. at 13. It goes without saying that Plaintiffs would never apply such a lax standard to New York. In any event, studies that Defendants reviewed with Ms. Peet at her deposition clearly demonstrate that mental health housing was and is a significant concern for Maine residents. Defts.' Ex. 80 (Peet Tr. 95:6-101:14) (discussing report of Maine Advisory Committee to the U.S. Commission on Civil Reports finding longstanding deficits in Maine's community mental health housing and services); _see also_ https://www.usccr.gov/files/pubs/2019/07-30-Maine-Criminalization-Mental-Health.pdf .

### B.  Arguments as to Factor's Opinions

*First*, while Plaintiffs concede that Dr. Factor failed to review all of the Named Plaintiffs' material clinical records, they repeatedly argue that he should nevertheless receive credit for having reviewed "12,918 pages worth of mental health records[.]" Pls.' Opp. at 4, 15, 16. This 'glass half-full' argument is not compelling. It does not matter how many pages Dr. Factor managed to read, if he nevertheless failed to review critically important records, and as a result had an incomplete and inaccurate basis for assessing what services were actually received by the Named Plaintiffs. The records Dr. Factor failed to consider include critically important materials like SD's "gold-standard" FACT team records and DH's mentally ill chemical abuse housing and treatment program records. As a result of this methodological oversight, Dr. Factor is in no position to reliably opine about the services the Named Plaintiffs received.

*Second*, Plaintiffs argue that it does not matter that Dr. Factor has no knowledge of DH's placement in the Lukens House mentally ill chemical abuse housing and treatment program, because that placement occurred in August 2022. Pls.' Opp. at 16. But Dr. Factor's stated opinion, upon which Plaintiffs presumably expect the Court to rely, was that DH was found "eligible for CBMHHSS but *did not receive* such housing and/or services." Factor Report at 18 (emphasis added). It is certainly relevant that this statement is untrue, in part because DH received a placement in a housing and treatment program (one that could have led to a supported apartment placement if DH had completed the program). Defts.' Daubert Mot. at 13-14. Dr. Factor's report, Plaintiffs' class certification motion, and DH's declaration in support all saw fit to omit any mention of the Lukens House placement.[7]

---

[7] Plaintiffs also complain that the Lukens House records "were produced only a couple weeks before Plaintiff[s'] served their motion (and many weeks after Dr. Factor completed his document review) . . . ." Pls.' Mot. at 16. The Lukens House records, which were obtained by Defendants from the provider and immediately produced to Plaintiffs, amount to 154 pages. Dr. Factor certainly could have reviewed these records in time to amend his opinion, had he been inclined to do so. And of course, Plaintiffs themselves could have obtained these highly material records from the provider earlier in the litigation, but they declined to do so.

*Third*, Plaintiffs argue that Defendants have "misrepresent[ed]" WP's testimony by claiming that WP rejected a proposed housing placement because he does not want to live with *any* roommates. Pls.' Opp. at 4-5. Defendants will give WP the final word on this issue: "No. I don't want a roommate because of my mental illness, I don't think it would work right. I don't want no problems. Isolation is best for me." Defts.' Ex. 2 (WP Tr. 85:7-18).

*Fourth*, Plaintiffs attempt to reframe Dr. Factor's opinion by claiming that he merely asserted "that receiving ACT is not sufficient on its own to avoid a risk of institutionalization[.]" Pls.' Opp. at 17. This misstates Dr. Factor's opinions. Rather than concede that WP and SD did in fact receive appropriate "gold-standard" FACT team services upon their release from prison, Dr. Factor baselessly opined that WP's and SD's FACT teams failed to provide appropriate services. As became clear at his deposition, Dr. Factor had no basis to disparage these community providers, and his willingness to do so in a Court filing is a sure sign that he employed an unreliable, biased methodology.

## III.   PLAINTIFFS' EXPERT OPINIONS ARE NOT RELEVANT

Plaintiffs' responses to Defendants' arguments on the irrelevance of the Peet and Factor opinions to the Rule 23 class certification questions largely dodge the critical questions. As to commonality, Plaintiffs recycle their *allegations* that there are "systemic failures in the planning and development of adequate CBMHHSS." Pls.' Opp. at 18. But they have failed to explain how either the Peet or Factor opinions offer *substantial evidence* in support of this allegation, which they are required to provide to prevail on a Rule 23 motion. At best, Ms. Peet points to evidence that some localities report a general continuing demand for more community-based mental health housing and services. Defts.' Daubert Mot. at 5. But that circumstance is not evidence that Defendants are engaged in systemic discrimination: Ms. Peet conceded that a similar demand exists in every jurisdiction, everywhere. *Id.* at 6. And Ms. Peet's opinion that OMH has "repeated[ly] refus[ed] to adequately address" local requests for funding lacks any basis, given the huge amounts of funding provided by

New York. *Id.* at 5-6. Likewise, Dr. Factor fails to provide any evidence of centralized discrimination by the Defendants. Plaintiffs continue their trend of simply ignoring inconvenient law from *Wal-Mart*, failing to respond to Defendants' arguments that Dr. Factor's analysis amounts to mere "anecdotal evidence" of the type the Supreme Court has expressly held is insufficient to support a class certification motion. *Wal-Mart*, 564 U.S. at 358.

As to typicality, Plaintiffs concede that their experts testified that most individuals with SMI are far more likely to be victims of violence than to commit violent acts, and that the small minority of individuals with a history of violent conduct and fire-setting—like the three Discharge Class Plaintiffs—are the hardest to place in supported housing. Pls.' Opp. at 19. Plaintiffs' only response is to argue that "*all* putative class members have been convicted of a felony level crime[.]" *Id.* (emphasis in original). But not all felony convictions are the result of violence or fire-setting, and not all violent felonies involve the type of extreme facts found in the Named Plaintiffs' cases. As Dr. Factor conceded, the specific circumstances of the three Discharge Class Named Plaintiffs represent very challenging placement cases, given facts that include: repeatedly attempting to set women's homes on fire (WP), shooting and stabbing random people in the street (SD), and arson (DH). Defts.' Daubert Mot. at 20.[8]

---

[8] Plaintiffs miss the point when they argue that Defendants have "use[d] this motion as a misguided strategic opportunity to cast Plaintiffs as inherently violent individuals whose homelessness and lack of services are due solely to their own conduct and 'preferences.'" Pls.' Opp. at 2. Of course, Plaintiffs have not cited any statement by Defendants that even remotely suggests that Plaintiffs are "inherently violent." On the contrary, the evidence shows that OMH staff often advocate with housing providers on behalf of applicants with challenging histories. *See* Vogel Supp. Decl. ¶ 10. But while the Named Plaintiffs are certainly not "inherently violent," they each have committed multiple, dangerous and violent acts against others, for which each was found criminally culpable. Having done so, they cannot plausibly argue that they represent "typical" cases of individuals seeking community mental health housing placements upon release from prison, such that they are appropriate representatives in a class action lawsuit. Likewise, the Plaintiffs' housing preferences inform whether they can satisfy typicality. So, for example, when WP rejects multiple potential housing placements due to his preferences, that is his prerogative—but having done so, he cannot plausibly argue that he is a typical representative of a class of individuals who have been deprived of housing placements due to alleged discrimination by the Defendants.

## IV.    THE COURT NEED NOT ACCEPT UNRELIABLE EXPERT TESTIMONY

Finally, Plaintiffs urge the Court not to concern itself about the many critical deficiencies in the Peet and Factor methodologies. Plaintiffs argue that "expert testimony should be freely admitted" at the class certification stage "because the concerns underlying *Daubert* do not apply." Pls.' Opp. at 7. Plaintiffs have once again inexplicably failed to consider language in the Supreme Court's seminal *Wal-Mart* opinion that rejects their arguments. In *dicta*, the Supreme Court noted that the District Court had "concluded that *Daubert* did not apply to expert testimony at the certification stage of class-action proceedings. *We doubt that is so . . . ."* 564 U.S. at 354 (emphasis added). *See also In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 129 (2d Cir. 2013) (reading *Wal-Mart* as "suggesting that a *Daubert* analysis may be required at least in some circumstances" at the class certification stage). Moreover, while Plaintiffs cite *Watson v. Manhattan Luxury Automobiles, Inc.*, No. 20 CIV. 4572 (LGS), 2022 WL 4586407 (S.D.N.Y. Sept. 29, 2022), in support of this argument, that case is a terrible example for them. In *Watson*, Judge Schofield <u>conducted a *Daubert* analysis at the class certification stage</u> and <u>granted</u> in part one of the parties' *Daubert* motions, based on her finding that the expert's opinions were "not based upon reliable data and methodology nor will they assist the trier of fact." *Id.* at *4 (internal citations omitted).

## CONCLUSION

For all the foregoing reasons, and those expressed in Defendants' underlying motion, Defendants respectfully request that the Court exclude the opinions and testimony of Ms. Peet and Dr. Factor for purposes of resolving Plaintiffs' motion for class certification.

Dated: New York, New York
         September 8, 2023

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendants*

By: /s/ Owen T. Conroy
Gee Won Cha
Adam Sansolo
Caroline Wallitt
Owen T. Conroy

Assistant Attorneys General
28 Liberty Street
New York, New York 10005
Tel.: (212) 416-6382
Email: Owen.Conroy@ag.ny.gov

11