# DEFENDANTS' EXHIBIT 80

Page 1

```
 1
 2    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 3    Case No. 7-19-cv-0639(CS)(AEK)
      - - - - - - - - - - - - - - - - -x
 4    M.G., P.C., C.J., M.J., J.R., D.R.,:
      S.D., W.P., and D.H., individually :
 5    and on behalf of all similarly    :
      situated,                          :
 6                                       :
                          Plaintiffs,   :
 7                                       :
              - vs -                     :
 8                                       :
      ANDREW CUOMO, in his official      :
 9    capacity as the Governor of the    :
      State of New York, et al,          :
10                                       :
                          Defendants.   :
11    - - - - - - - - - - - - - - - - - -x
12
                                 June 13, 2023
13                               9:46 a.m.
                                 1285 6th Avenue
14                               New York, NY
15
16
17                   ***CONFIDENTIAL***
18
19
20
21            ORAL EXAMINATION OF MELODIE PEET, held
22    at the above-mentioned time and place, before
23    Randi Friedman, a Registered Professional
24    Reporter, within and for the State of New York.
25
```

```
 1              M. Peet - Confidential
 2   APPEARANCES:
 3              DISABILITY RIGHTS NEW YORK
                Attorneys for Plaintiffs
 4
                279 Troy Road, Suite 9
 5              Rensselaer, New York 12144
 6              BY:  SABINA KHAN, ESQ.
                     CHANTALLE HANNA, ESQ.
 7
 8
                LEGAL AID SOCIETY
 9              Attorneys for Plaintiffs
10              60 Lafayette Street
                New York, New York 10013
11
                BY:  STEFEN SHORT, ESQ.
12                   ELENA LANDRISCINA, ESQ.
13
14              NEW YORK STATE OFFICE OF THE ATTORNEY
                GENERAL'S OFFICE
15              Attorneys for Defendants
16              28 Liberty Street, 18th Floor
                New York, New York 10005
17
                BY:  OWEN CONROY, ESQ.
18                   ADAM SANSOLO, ESQ.
                     IGNACIO VASQUEZ, ESQ.
19
                         * * *
20
     ALSO PRESENT:
21
                Matthew Williamson - Summer Associate
22              Marissa Shea - Summer Associate
23
24
25
```

Page 3

1                   M. Peet - Confidential

2                      STIPULATIONS

3           IT IS HEREBY STIPULATED AND AGREED, by

4    and among counsel for the respective parties

5    hereto, that the filing, sealing and

6    certification of the within deposition shall be

7    and the same are hereby waived;

8           IT IS FURTHER STIPULATED AND AGREED

9    that all objections, except as to form of the

10   question, shall be reserved to the time of the

11   trial;

12          IT IS FURTHER STIPULATED AND AGREED

13   that the within deposition may be signed before

14   any Notary Public with the same force and effect

15   as if signed and sworn to before the Court.

16                      *  *  *

17

18

19

20

21

22

23

24

25

Page 4

1                    M. Peet - Confidential

2                         *  *  *

3                    MELODIE PEET, the witness herein,

4        after first having been duly sworn, was

5        examined and testified as follows:

6                         *  *  *

7                    EXAMINATION

8    BY MR. CONROY:

9        Q    Good morning, Ms. Peet.

10       A    Good morning.

11       Q    My name is Owen Conroy and I'm an

12   assistant general attorney in the New York State

13   Office of the Attorney General.  We represent the

14   defendants in this matter.

15                 MR. CONROY:  So, counsel, I know

16       you wanted to say something about the

17       transcript before we get started?

18                 MS. KHAN:  Yes.  So for the

19       record, plaintiffs' counsels move for the

20       deposition to be designated as confidential

21       pursuant to the Protective Order in this

22       matter.  I've talked to defense counsel

23       about plaintiffs' counsels reviewing the

24       transcript, and we can confer as to whether

25       or not we are still moving for the

```
                                          Page 95

 1                 M. Peet - Confidential

 2        to a degrading of the service systems in

 3        Maine.

 4                  (Exhibit 3 was marked.)

 5    BY MR. CONROY:

 6        Q    Ms. Peet, I'm going to show you what

 7    has been marked as Exhibit 3.

 8             This is a 63-page document that on the

 9    front the title is, "The Criminalization of

10    People with Mental Illnesses in Maine.  Report of

11    the Maine Advisory Committee to the U.S.

12    Commission on Civil Rights, May 2019."  I won't

13    ask you to read the whole thing.

14        A    Good.

15        Q    But have you ever seen this before?

16        A    I have not.

17        Q    Okay.

18             MS. KHAN:  For the record, I'm

19        going to object to this exhibit and the line

20        of questioning related to this exhibit;

21        however, Ms. Peet may answer.

22    BY MR. CONROY:

23        Q    Do you have any knowledge of the Maine

24    Advisory Committee to the U.S. Commission on

25    Civil Rights?
```

```
 1              M. Peet - Confidential
 2              MS. KHAN:  Objection.
 3              THE WITNESS:  I don't.
 4  BY MR. CONROY:
 5     Q    You've never -- you haven't heard of
 6  this investigation or report before?
 7     A    I have not.
 8              MS. KHAN:  Objection.
 9              THE WITNESS:  I was gone from
10     Maine for almost two decades when this
11     report was developed, so I really have --
12  BY MR. CONROY:
13     Q    Turn with me to Page 4.  And I want to
14  point your attention to the -- I guess it's the
15  second paragraph on this page where it says, "The
16  movement to deinstitutionalize people with mental
17  illnesses is explicitly coupled with the promise
18  to develop a network of community-based supports
19  and treatments that would enable such individuals
20  to thrive.  Due to underfunding and other issues;
21  however, this community-based supported network
22  was largely not created in Maine or in most
23  United States communities"; do you see that part?
24     A    I do.
25     Q    What's your reaction to that?
```

```
 1               M. Peet - Confidential
 2               MS. KHAN:  Objection.  You may
 3       answer.
 4               THE WITNESS:  I think this is an
 5       inaccurate characterization of the time I
 6       was there anyway, and I would point to the
 7       Settlement Agreement for the AMHI consent
 8       decree.  That's a very detailed document
 9       that really directed the kind of community
10       systems development that we did in Maine,
11       and so these are characterizations that I
12       think -- they've been easy to generalize
13       from because the deinstitution, particularly
14       in the early decades when it began, was done
15       without careful planning or concern for the
16       development of community services prior to
17       people being discharged.  And that's a fair
18       characterization for many places,
19       particularly during '60s, '70s, and in some
20       cases the '80s.
21               But when I was commissioner, we
22       had very careful discharge planning
23       standards, and we put in place a brand new
24       comprehensive statewide crisis system.  We
25       had the intensive case management and ACT.
```

```
 1              M. Peet - Confidential
 2      Community mental health centers were
 3      providing the clinical.  So it's inaccurate
 4      when it describes what -- if it alludes to
 5      my tenure as commissioner.  And I can take
 6      some of the credit for that, but most of it
 7      was due to the Court Ordered service
 8      development that came as a result of the
 9      consent decree.  So I'd say it's a
10      generalization that's inappropriately
11      applied.
12  BY MR. CONROY:
13      Q    And you don't know who the authors of
14  this report are?
15      A    I don't, no.
16      Q    Let's flip to Page 56.  Tell me when
17  you're there.
18      A    Yeah.
19      Q    So I want to point your attention to
20  the top of the page where it says Finding No. 1.
21  And it says, "The lack of adequate home and
22  community-based care networks in Maine for people
23  with mental illnesses have deprived them of
24  adequate mental health treatment and services and
25  denied them community integration and autonomy."
```

```
 1                    M. Peet - Confidential
 2    And then it goes on to say, "Overarching
 3    recommendation, Maine should fund, create and
 4    expand networks of home and community-based care
 5    in the following ways," and then it goes on to
 6    list various services.
 7                  What's your reaction to that?
 8                    MS. KHAN:  Objection.  You may
 9          answer.  However, I want to instruct the
10          witness if you need time to read the
11          paragraphs on that page, please feel free to
12          do so before answering.
13                    THE WITNESS:  Okay.  Again, I
14          would only say that this was not the state
15          of affairs when I was commissioner.  I think
16          the paragraph under (a) Medicaid Expansion
17          Outreach, gives a clue to that, where it
18          notes that under the LePage Administration,
19          they did not apply for Medicaid expansion,
20          which had a detrimental effect on community
21          services.
22                    One of the requirements of the
23          consent decree, the consent decree was
24          structured in kind of an interesting way.
25          The class members were continuously being
```

1              M. Peet - Confidential

2       added so that anybody who was ever admitted

3       to the AMHI consent decree while I was there

4       automatically became a class member.  And so

5       there were very strict requirements because

6       of that mandate about discharge planning and

7       the kinds of services that people had to

8       have access to when they were discharged

9       from the hospital.

10              So this state of affairs is

11      tragic, I think, and something that -- the

12      other thing I would say by way of context is

13      that the consent decree was winding down at

14      the time this report was published.  It was

15      just finalized, but there were lots of

16      delays due to the COVID epidemic.  But there

17      was a lot of anxiety in the (inaudible)

18      community in Maine at the thought of losing

19      the consent decree, because it had then a

20      protection in some ways for the mental

21      health budget for the years that it had been

22      in place, and people were worried that once

23      the consent decree was settled, that funding

24      for mental health and other health and human

25      services was going to plummet dramatically.

```
                                         Page 101
 1                M. Peet - Confidential
 2        So in some ways, this may have added to the
 3        urgency of bringing this issue to the floor.
 4        But I would say it's a dramatic difference
 5        from when I was commissioner in Maine.
 6   BY MR. CONROY:
 7        Q     And when this report opines that these
 8   home and community-based networks were never
 9   developed in Maine sufficiently, you just
10   disagree with that?
11        A     I do.
12                MS. KHAN:  Objection.  You may
13        answer.
14                THE WITNESS:  I do disagree.
15   BY MR. CONROY:
16        Q     Tell me again, the consent decree
17   you've been talking about, who -- it was a class
18   action?
19        A     Yeah.
20        Q     And how is the class defined in that
21   case?
22                MS. KHAN:  Objection.  You may
23        answer.
24                THE WITNESS:  It was defined as
25        all persons who were inpatient at the
```

# Page 1 of 2 ERRATA SHEET

M. Peet - Confidential

ERRATA SHEET

VERITEXT / NEW YORK REPORTING, LLC

Case Name: M.G., et al v. ANDREW CUOMO, et al

Date of Deposition: JUNE 13, 2023

Witness Name: MELODIE PEET

| PAGE/ LINE(S)/ | CHANGE/ | REASON |
|---|---|---|
| 10/15 | Replace "institutionalization", with "deinstitutionalization" | Incorrect Transcription |
| 18/21 | Replace "seminar" with "shelter" | Incorrect Transcription |
| 25/10-11 | Replace "statement of health authority" with "State Mental Health Authority" | Incorrect Transcription |
| 26/20 | Replace "added to" with "considered" | Incorrect Transcription |
| 27/2 | Insert "of" before "capacity" | Incorrect Transcription |
| 27/25 | Insert "you're" before "going" | Incorrect Transcription |
| 36/8 | Insert "in" before "each" and delete "and" | Incorrect Transcription |
| 37/5 | Delete "bad", insert "had" | Incorrect Transcription |
| 38/21 | Delete "the", insert "any" | Incorrect Transcription |
| 40/18-19 | Should read "from the ideal to the adequate" | Incorrect Transcription |
| 43/9 | Delete "an", insert "been" | Incorrect Transcription |
| 47/15 | Delete "enthusiastic", Insert "enthusiasm" | Incorrect Transcription |
| 66/12 | Should read, "over reliance on inpatient care" | Incorrect Transcription |
| 68/12 | Delete "related", insert "claim" | Incorrect Transcription |
| 97/13 | replace "deinstitution" with "deinstitutionalization" | Incorrect Transcription |

*M. P.*

**MELODIE PEET**

Veritext Legal Solutions

212-267-6868                    516-608-2400

# Page 2 of 2 ERRATA SHEET

| PAGE/ LINE(S)/ | CHANGE/ | REASON |
|---|---|---|
| 100/17 | Where it says "inaudible", insert "advocacy" | Incorrect Transcription |
| 100/19 | Delete "then", insert "been" | Incorrect Transcription |
| 112/20 | Delete "weren't", insert "were" | Incorrect Transcription |
| 136/22-23 | replace "about" with "without" | Incorrect Transcription |
| 140/22 | Delete "in", insert, "or with" | Incorrect Transcription |
| 143/2 | Delete "and" | Incorrect Transcription |
| 150/12-17 | Should read "...while insurance now requires that Admissions are determined by clinical need, there is evidence that people are backing up in emergency rooms because of difficulties accessing inpatient care now" | Incorrect Transcription |
| 157/2 | Should read "Discontinuity in relationships is really a... | Incorrect Transcription |
| 158/5 | Delete "billed", insert "built" | Incorrect Transcription |
| 158/8 | Delete "institutionalization", replace with deinstitutionalization | Incorrect Transcription |
| 158/10 | Delete "the" at end of line | Incorrect Transcription |
| 158/16 | Delete "site", replace with "system" | Incorrect Transcription |
| 161/19 | Delete "stopped" replace with "stop" | Incorrect Transcription |
| 162/25 | Delete "community process" replace with "practice areas" | Incorrect Transcription |
| 163/17-18 | Replace "people with specifically" with " specifically for people with" | Incorrect Transcription |
| 194/24 | Delete "hospitals", replace with "prisons" | Incorrect Transcription |

*M. P.*

**MELODIE PEET**