

Prisoners' Rights Project
199 Water Street
New York, NY 10038
(212) 577-3300
www.legalaidnyc.org

Alan Levine
*President*

Twyla Carter
*Attorney-in-Chief*
*Chief Executive Officer*

Mary Lynne Werlwas
*Director*
Prisoners' Rights Project

September 13, 2023

**VIA ECF**
Honorable Andrew E. Krause
United States Magistrate Judge
United States District Court
300 Quarropas Street
White Plains, NY 10601

  Re: *M.G. v. Cuomo*, No. 7:19-CV-639 (CS) (AEK)

Your Honor:

  Pursuant to the Court's Order dated June 1, 2023 (ECF No. 263), the parties in the above-captioned matter submit this joint letter to provide a discovery status update.

  Discovery has proceeded according to the scheduling order set by the Court (ECF No. 260).[1] Defendants have advised Plaintiffs of their intention to depose the General Class and RTF Subclass Named Plaintiffs, and the parties are in the process of determining suitable dates and locations for these depositions. On September 8, 2023, Plaintiffs advised Defendants that, in light of Judge Seibel's encouragement to settle the claims of the General and RTF Subclass, Plaintiffs intend to share a revised settlement proposal shortly. Further, Plaintiffs have explained that they are amenable to staying discovery on these claims to allow the parties to engage in meaningful settlement discussions.

  Finally, the parties wish to alert the Court to a newly emerging discovery dispute and, relatedly, to promptly advise the Court of their view regarding whether an extension of the existing scheduling order is necessary. The parties' respective positions are set forth below.

  ***Plaintiffs' Position***: Plaintiffs have determined that they require absent putative Discharge Class member records for merits purposes and are preparing a corresponding request for production of a set of such records. As a necessary step to seeking such records, on May 15, 2023, Plaintiffs requested that Defendants supplement their prior productions with updated versions of certain censuses that demonstrate, among other things, the mental health classification and discharge

---

[1] The parties' bundled class certification briefing was filed on September 8, 2023 (ECF Nos. 270, 272-310)). The parties also filed a joint letter motion to seal certain documents in the class certification briefing (ECF No. 269).

**Justice in Every Borough.**

September 13, 2023

locations of class members.[2] From these censuses and with the assistance of an expert statistician, Todd A. MacKenzie, Ph.D., Plaintiffs are in the process of developing a representative sample of the absent class members for whom Plaintiffs will seek certain records. Plaintiffs' experts will review the records in connection with Plaintiffs' *Olmstead* segregation and risk of institutionalization claims. On July 26, 2023, the parties met and conferred to discuss Plaintiffs' request for supplementation and their intentions regarding subsequent discovery requests. Plaintiffs also shared their view that the current scheduling order will not accommodate Plaintiffs' anticipated discovery request and the time Plaintiffs' experts need to review the records and draft a report. Plaintiffs proposed that the parties confer regarding a new schedule.

Following the meet and confer, on August 2, 2023, Defendants informed Plaintiffs that they would provide updated versions of three of the four requested censuses, as well as an additional updated version at any point prior to the end of discovery, but would object to any more frequent supplementation. Defendants also informed Plaintiffs that they will likely object to Plaintiffs' planned requests for the records of absent Discharge Class members,[3] as well as to any request to revise the current discovery and briefing schedule. On September 7, 2023, Defendants provided updated versions of three of the four requested censuses. Drawing on these censuses, Plaintiffs intend to serve Defendants with a request for production for the referenced absent class member records as soon as possible. Plaintiffs have retained Dr. MacKenzie to develop a sample based on the censuses that Defendants produced on September 7, 2023. Dr. MacKenzie requires a brief period to review the censuses and develop the necessary representative sample for Plaintiffs' request.

<u>Plaintiffs' forthcoming merits discovery request</u>: Although Defendants argue that Plaintiffs are not entitled to a "new round of discovery" on these claims, Plaintiffs' forthcoming merits discovery request is not a "new round of discovery," and is consistent with the current scheduling order, coming months before the current deadline for the close of fact discovery. This is not an eleventh-hour request for discovery and revision of the schedule. Plaintiffs have been deliberate in identifying what merits discovery is relevant and proportional to the needs of the case and in promptly advising Defendants of Plaintiffs' discovery plan in order to proactively address potential concerns Defendants may have. Further, Plaintiffs believed that having a class certification motion on file would facilitate their request for records of putative class members. Contrary to Defendants' argument that Plaintiffs have "circumvented" the terms and spirit of prior discovery negotiations, Plaintiffs have simply identified a need for additional merits-related discovery after the close of

---

[2] Specifically, Plaintiffs requested updated versions of D-00010678-UNREDACTED (Request-2022_01_20-SMI_Homeless_Releases.xlsx); D-00004661-UNREDACTED (Homeless Release Tracker 2019 - 2021.xlsx); D-00651033 (Request-2022_03_31-SMI_Releases_and_Referrals.xlsx); OMH-00072563-UNREDACTED (Final Interrogatory #25-2020_02_28-SMI_SPOAs.xlsx).

[3] Defendants noted that one anticipated ground for objecting is that the anticipated requests "are outside the scope of the global discovery previously extensively negotiated between the parties and approved by the Court." The current schedule, however, expressly contemplates additional request for production and states that they must be served by November 22, 2023. (ECF No. 263.)

September 13, 2023

those negotiations, and concurrently informed Defendants of their intention to serve an additional request for production nearly five months prior to the close of fact discovery. This is far from extraordinary. Nor is the substance of the forthcoming request extraordinary: in *Olmstead* cases such as this one, plaintiffs' experts customarily review the records of wide cross-sections of impacted people. *See, e.g.*, Expert Report of Robert E. Drake, M.D., Ph.D., *United States v. Mississippi*, 3:16-CV-00622-CWR-FKB, Dkt. No. 154-2 (S.D. Miss. Jan. 21, 2019) (memorializing the findings of a clinical team that "interviewed and studied the hospital and outpatient records of a representative sample of 154 adults" in a lawsuit advancing statewide *Olmstead* segregation and risk of institutionalization claims); *Kenneth R. ex rel. Tri-County CAP, Inc./GS v. Hassan*, 293 F.R.D. 254, 261 (D.N.H. Sept. 17, 2013) (explaining that plaintiffs' experts "reviewed approximately two years of facility and community mental health records" for a representative sample of absent class members in a lawsuit advancing an *Olmstead* risk of institutionalization claim). Plaintiffs will not seek all records of all putative class members, but only a representative sample of the relevant records of impacted people—a sample that will be tailored to, and thus proportionate to, the needs of this litigation.

Although Plaintiffs certainly have not delayed discovery in this matter, the positions Defendants have asserted with respect to discovery involving putative class members have impacted the pace of Plaintiffs' discovery. Most recently in July 2022 (ECF No. 231), Defendants objected to the mere provision of unredacted censuses containing the names of class members. Defendants also previously have objected to the provision of individuals' records.[4] As a result of Defendants' objections, Plaintiffs had to move to compel the production of the unredacted versions of censuses.[5] (ECF Nos. 224-227.) On October 14, 2022, the Court determined that Defendants were required to produce the unredacted censuses and directed that Defendants produce them by October 21, 2022. (ECF No. 241.) In the months following, Plaintiffs determined that they required updated censuses and sought such censuses from Defendants in May 2023. Those updated censuses were provided on September 7, 2023. Plaintiffs have not unreasonably delayed service of merits discovery requests.

<u>Need for a revised schedule</u>: Plaintiffs believe a new schedule is necessary to accommodate this discovery, which is relevant and proportional to the needs of the case. Plaintiffs anticipate that the review sample will yield an extensive volume of individual records, necessitating Plaintiffs'

---

[4] *See, e.g.*, Defendants' Responses to Plaintiffs' Second Request for the Production of Documents ("RFP"), Jan. 31, 2022 ("84. All Documents or Communications sufficient to show the number and Censuses of individuals for whom a SPOA application was completed who were released from DOCCS Custody to the following locations: A. Homeless shelters, mental health shelters, hotels, or motels; B. Transitional Residences, Crisis Residences, Transitional Placement Programs, or SOCRs; and C. Transitional housing programs or DOCCS Parole Housing. Response: . . . Defendants further object that the request seeks the production of documents concerning non-party offenders, which may violate their privacy rights. See FRCP 26(b)(1).").

[5] Plaintiffs moved to compel unredacted versions of censuses that concern persons released from prison to homelessness, persons held in prolonged incarceration, and persons held in prisons on so-called Residential Treatment Facility ("RTF") status past their maximum expiration dates.

September 13, 2023

counsel to allocate sufficient time for review alongside their experts. Although Plaintiffs will endeavor to meet and confer with Defendants about their concerns related to their discovery requests and are hopeful that the parties can resolve their disputes, Plaintiffs believe that the schedule must also accommodate potential motion practice, particularly where Defendants have indicated their intention to object. Defendants object to revision of the schedule primarily because 1) the schedule was previously negotiated—which obviously does not mean it cannot be revisited consistent with the needs of the parties; 2) Plaintiffs did not inform Defendants at the time of those negotiations that they intended to serve requests for individual records of class members—a step Plaintiffs were not required to take, especially because Plaintiffs were still reviewing what merits discovery was needed, consistent with their obligation to adequately and indeed zealously prosecute this action; and 3) Plaintiffs could have served "discovery demands . . . at the inception of this case," but for reasons explained earlier, this position reflects gamesmanship on the part of Defendants, who have previously refused to produce mere censuses and putative class member information, as noted above.

If the parties cannot resolve their disputes regarding the discovery requests and the scheduling order, Plaintiffs plan to request the Court's intervention after Defendants have served their response and objections. As to the scheduling order, Plaintiffs seek only a reasonable extension of existing deadlines.

***Defendants' Position***:

As to Plaintiffs' intention to share a revised settlement proposal: Defendants will of course carefully review any proposal Plaintiffs send. At this time, without having received more specific details regarding the proposal, Defendants cannot take a position regarding whether a stay of discovery on the General and RTF Subclass claims would be productive. In the meantime, pending additional information, Defendants intend to proceed with depositions of the General and RTF Subclass Named Plaintiffs. The parties have scheduled deposition dates for three of the five remaining General and RTF Subclass Named Plaintiffs, and Defendants await proposed dates for the remaining two. (Another General Class Named Plaintiff, MG, has died. *See* ECF No. 261.)

As to the "emerging" discovery dispute raised by Plaintiffs: While this is currently a hypothetical discovery dispute not yet ripe for Court intervention, Defendants intend to object to any attempt by Plaintiffs to adjourn the current discovery deadlines in order to serve "extensive" new discovery demands regarding the individual psychiatric and criminal justice records of non-Named Plaintiff incarcerated individuals with serious mental illness.

As Your Honor well knows, the parties spent several months last year negotiating a global plan for class and merits discovery in this matter, with the Court's generous assistance. The focus of those negotiations was Defendants' concern that the vast discovery demanded by Plaintiffs was overly burdensome and not proportional to the needs of the case. At the June 29, 2022 discovery conference, Your Honor noted that plaintiffs' proposed document review population of 500,000 was "a pretty extreme number in a case like this," and would be "likely overly burdensome within the confines of [the] case." June 29, 2022 Conf. Tr. at 4:23-25 & 5:16-19. At that conference, Your

4

September 13, 2023

Honor ordered the parties to continue negotiating search terms in order to reach a review population that was "substantially below" the 500,000 documents proposed by Plaintiffs. *Id*. at 10:22-11:2. After considerable time and effort on all sides, the parties agreed to a defined set of 78 custodians and a substantial list of ESI search terms. With the understanding that the parties had reached an agreement that defined the global scope for most, if not all, remaining document discovery in this matter, Defendants agreed to review over 320,000 documents. Defense counsel completed that review, on deadline, after nearly eight months of review, ultimately producing almost two million pages of documents (a number that is underinclusive given that many of the documents are large native files, which are not fully reflected in image page counts).

The parties also extensively negotiated the schedule for remaining class and merits discovery, with Plaintiffs insisting that defense counsel should have completed their extensive document review even faster. Ultimately, the Court resolved the dispute by setting the current schedule, which calls for fact discovery to be completed by December 22, 2023. *See* ECF No. 229, *revised by* ECF No. 260.

Now, having received those two million pages of discovery from Defendants pursuant to the parties' agreement, Plaintiffs have for the first time informed Defendants that they intend to request an extension of the fact discovery period to serve a whole new round of vast, previously undisclosed discovery demands. To be clear, there is currently no dispute ripe for Court intervention, as Plaintiffs have not yet served these hypothetical discovery demands. Plaintiffs' counsel first informed Defendants of their general intent to serve such demands at a virtual teleconference between the parties held on July 26, 2023.[6] In an email on August 2, 2023, Defendants, as a courtesy, advised Plaintiffs of their position that such discovery was likely to be objectionable, while noting that "Defendants will of course review any discovery demands we receive and will respond pursuant to the Federal Rules[.]"

As of this date, Plaintiffs have not served these new discovery demands.[7] Defendants have no knowledge of the language and scope of Plaintiffs' new demands or what specific records they

---

[6] Defendants object to Plaintiffs' characterization of the parties' July 26, 2023 teleconference as a "meet and confer," to the extent that implies a ripe dispute that has been teed up in compliance with Federal Rule of Civil Procedure 37(a)(1). Prior to the meeting, Plaintiffs' counsel informed Defendants only that they wished to "discuss the broader merits schedule." At the meeting, Plaintiffs for the first time raised the idea that they intend to seek "extensive" discovery into the individual files of non-Named Plaintiff incarcerated individuals with serious mental illness and an extension of the discovery schedule. Defendants were not in a position to immediately respond to those proposals at the meeting and have never received specific discovery demands to which a response can be made.

[7] As Plaintiffs note, they requested that Defendants produce updated versions of certain spreadsheets previously produced in discovery that contain information about certain individuals with serious mental illness who were released from prison. Defendants have already produced multiple iterations

September 13, 2023

intend to seek. The only indication of the scope of Plaintiffs' demand is their prediction that they expect to demand an "extensive volume of data concerning individual records," which they believe will be so voluminous that "allocat[ing] sufficient time for review" requires adjourning the fact discovery deadline, currently set for three months from now.

While the dispute is not yet ripe and cannot be adjudicated without having specific discovery demands that can be reviewed by Defendants and the Court, it is nevertheless clear that Plaintiffs are not entitled to a new round of "extensive" discovery into individual non-Named Plaintiff records, and that the current discovery deadlines should not be adjourned to permit this detour.

*First*, the requests are at odds with the scope of global discovery extensively negotiated by the parties and endorsed by the Court. The focus of that negotiation was whether Plaintiffs' global discovery demands, cumulatively, were overly burdensome and not proportional to the needs of the case. The Court informed the Plaintiffs in unambiguous terms that their original requests were overbroad, leading the parties to negotiate a reduced, but still extremely expansive global document review by Defendants. At no point in that process did Plaintiffs inform Defendants or the Court that they intended to *also* seek "extensive" discovery of the individual psychiatric and criminal justice files of non-Named Plaintiff incarcerated individuals. Had they done so, that broad demand would obviously have substantially affected the negotiations. Had Plaintiffs insisted on receiving such discovery at the time these negotiations were ongoing, Defendants would have in turn requested a proportionate reduction in their other demands. Instead, Plaintiffs waited to raise this demand only *after* they received the two million pages of documents from Defendants. The Court should not endorse this circumvention of the terms and spirit of the prior discovery negotiations.[8]

---

of such spreadsheets throughout discovery, and each update places a burden on agency staff. Therefore, prior to producing updates, Defendants sought to reach an agreement with Plaintiffs to reasonably limit the number of additional updates between now and the end of discovery. In their August 2, 2023 email to Plaintiffs, Defendants proposed providing one immediate update to three specific spreadsheets, as well as one additional update upon request any time between now and the end of fact discovery. In an email dated September 5, 2023, Plaintiffs' counsel accepted this proposal, and Defendants produced the first round of updated spreadsheets on September 7, 2023.

[8] Plaintiffs point out that the schedule permits a final round of discovery demands to be served by November 22, 2023. Of course, it is typical in discovery that information might come to light that would lead either party to serve some additional, targeted discovery demands prior to the close of discovery. But that deadline is not an invitation for Plaintiffs to now serve new "extensive" discovery demands that could have been served at the inception of this case, where they would have informed the negotiations about the global burden and proportionality of discovery. Plaintiffs' portion of the letter accuses *Defendants* of "gamesmanship," seeming to suggest that Defendants somehow prevented them from making this demand years ago, but there is no basis for that contention. Had they wished to do so, Plaintiffs certainly could have informed Defendants and Your Honor during the discovery negotiations that they intended to demand "extensive" discovery of the individual psychiatric and criminal justice files of non-Named Plaintiff incarcerated individuals. As

September 13, 2023

*Second*, regardless of the outcome of Plaintiffs' pending motion for class certification, Plaintiffs are not entitled to the wholesale production of individual psychiatric and criminal justice files of non-Named Plaintiff incarcerated individuals. If a class *is* certified, Plaintiffs are not entitled to such discovery because the point of the class action vehicle is that the Named Plaintiffs' claims are typical of the class and stand in for all class members, thus "achiev[ing] significant economies of 'time, effort and expense[.]'" *In re US FoodServ. Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013) (quoting Fed. R. Civ. P. 23 advisory committee's notes). To the extent "mini-trials" regarding each class member's individual circumstances is required, "a class action is not a feasible, let alone superior, method[.]" *Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 142 (S.D.N.Y. 2003). Plaintiffs' proposal to take extensive individual-level discovery of non-Named Plaintiffs' records is therefore at odds with the very notion of a class action and further supports Defendants' position that Plaintiffs cannot satisfy the typicality and commonality requirements of Rule 23.

On the other hand, if Defendants are correct that Plaintiffs have failed to meet their Rule 23 burden, then there is no class action and the litigation involves only the specific circumstances and claims of the Named Plaintiffs themselves. In that case, the psychiatric and criminal justice records of absent third parties will be wholly irrelevant to resolution of the case.

*Finally*, the Court should not adjourn the previously negotiated and agreed-upon discovery deadlines to permit a new round of "extensive" discovery demands. This is a 2019 matter that has been in discovery for years. Defendants have fully complied with their discovery obligations and have provided voluminous records to Plaintiffs over the last four years. It is far past time to wrap up discovery and move toward a final resolution of this matter.

\* \* \*

The parties welcome any questions that the Court has regarding the above.

Respectfully submitted,

/s/ Stefen R. Short_____

The LEGAL AID SOCIETY
Twyla Carter, Attorney-in-Charge
Elena Landriscina (elandriscina@legal-aid.org)

---

to Plaintiffs' citations to other *Olmstead* cases, there is no indication that the plaintiffs in those cases waited to demand those records until after negotiating a global discovery plan and receiving millions of pages of records from the defendants.

September 13, 2023

Stefen R. Short (sshort@legal-aid.org)
Robert M. Quackenbush (rquackenbush@legal-aid.org)
Sophia A. Gebreselassie (sgebreselassie@legal-aid.org)
49 Thomas Street, 10th Floor
New York, New York 10013
(212) 577-3530

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
Crystal L. Parker (cparker@paulweiss.com)
Walter Ricciardi (wricciardi@paulweiss.com)
Emily A. Vance (evance@paulweiss.com)
Chantalle Hanna (channa@paulweiss.com)
Samuel Margolis (smargolis@paulweiss.com)
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone:(212) 373-3069
Email: cparker@paulweiss.com

DISABILITY RIGHTS NEW YORK
Elizabeth Woods (elizabeth.woods@drny.org)
Sabina Khan (sabina.khan@drny.org)
279 Troy Road, Ste 9
PMB 236
Rensselaer, NY 12144
(518) 432-7861

*Attorneys for Plaintiffs*


/s/  Owen T. Conroy_____


Gee Won Cha
Adam Sansolo
Caroline Wallitt
Owen T. Conroy

Assistant Attorneys General
28 Liberty Street
New York, New York 10005
Tel.: (212) 416-6382
Email: Owen.Conroy@ag.ny.gov

8

September 13, 2023

*Attorneys for Defendants*

CC: Counsel of Record (via ECF)