STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF STATE COUNSEL
LITIGATION BUREAU

October 20, 2023

**By ECF**
Honorable Andrew E. Krause
United States Magistrate Judge
United States District Court
300 Quarropas Street
White Plains, NY 10601

> **Re:** *M.G. v. Cuomo*, **19-cv-0639 (CS) (AEK)**
> **Joint Status Report**

Dear Judge Krause:

Pursuant to the Court's Order dated October 13, 2023 (ECF No. 319), the parties jointly write to provide the following status report. The parties set forth their respective positions below.

**Defendants' Position**[1]

**1.      Whether Plaintiffs have, in fact, served additional discovery demands, and if so, when Defendants' responses to those demands are due.**

Plaintiffs served their additional discovery demands on October 17, 2023. Defendants' responses to those demands are due on November 16, 2023.

**2.      Whether the parties have reached agreement as to any potential scope of the additional discovery contemplated by Plaintiffs, or as to the parameters of any potential extension of the scheduling order.**

At this time, the parties have not reached agreement as to any potential scope of additional discovery or the parameters of any potential extension of the scheduling order. Defendants are reviewing the discovery demands they received on October 17.

---

[1] Although Defendants proposed that their statements with respect to the Court's topics 1, 2, and 3 contained neutral language that could be submitted as a joint response to the Court's questions, Plaintiffs insisted on providing separate statements for each of the topics.

Hon. Andrew E. Krause
October 20, 2023
Page 2

     **3.      Whether the parties have continued to engage in settlement negotiations as to particular aspects of the case, and whether a partial stay of discovery is warranted to facilitate those discussions.**

     On September 20, 2023, Plaintiffs provided a revised settlement demand on the General Class and RTF Subclass claims. Defendants are reviewing that demand with their clients. At this time, the parties have not agreed to request any stay of discovery.

     **4.      Any other issues the parties believe should be addressed.**

     Defendants wish to make three additional points.

     *First*, Defendants are currently reviewing the new discovery demands Plaintiffs served three days ago[2] and will respond pursuant to the Federal Rules. Defendants heard the Court's clear message in its October 13, 2023 order that the parties should work toward a compromise. However, an initial review of Plaintiffs' demands raises concerns that Plaintiffs have already rejected the Court's guidance. The maximalist approach and sheer overbreadth of Plaintiffs' new demands, served four days *after* the Court's order, is stunning. Plaintiffs served a list of *143* previously incarcerated individuals. For each one of those individuals, Plaintiffs demand that Defendants collect, review and produce essentially <u>every document pertaining to that person in the custody of both DOCCS and OMH</u>. Tallying the subparts of Plaintiffs' demands, Defendants counted <u>106 separate categories</u> of documents and communications demanded, with each one to be applied to each of the 143 individuals—in other words, Plaintiffs have served *15,158 distinct new document demands*. To avoid being accused of exaggerating the scope of the new demands (which cannot in any event be easily summarized), Defendants have attached them here in full as Exhibit 1.

     As the Court surely recalls, collecting relevant documents and communications regarding the *nine* Named Plaintiffs was a massive burden, with a huge number of documents ultimately reviewed. It is astounding that even after receiving the Court's order last week, Plaintiffs believe it is now appropriate to demand that Defendants undertake a similar collection for 143 newly identified

---

[2] Plaintiffs' portion of the letter asserts various excuses as to why they failed to notify Defendants and the Court about their intent to demand this additional significant category of documents during the global discovery negotiations. Had they done so, that disclosure certainly would have materially affected Defendants' position in those negotiations. Plaintiffs' excuses address only the timing of formal *service* of the demands—they do not explain why Plaintiffs failed to disclose their *intent* to the Court and Defendants. For example, they now claim that they believed they could not have served demands for "highly sensitive class member records" until "after class certification briefing." *Infra* at 7. This position is wholly at odds with the position Plaintiffs took when litigating the July 2022 motion to compel, filed *before* the class certification briefing, where they argued that they were entitled to receive "mental health, psychiatric, medical, and other record [sic] of incarcerated or formerly incarcerated individuals or individuals under the community supervision of DOCCS, regardless of whether they are a member of the putative classes." ECF No. 225 at 5. But in any event, even if it were true that Plaintiffs believed they could not serve the demands until after the class certification briefing, that does not explain why they kept secret their intent to serve the demands during the discovery negotiations, when that disclosure would have been highly material.

Hon. Andrew E. Krause
October 20, 2023
Page 3

individuals. The Federal Rules do not permit this limitless approach to discovery, especially considering the vast amount of resources and time Defendants have spent responding to Plaintiffs' many, many discovery demands over the last *five years*, and the extreme volume of discovery Plaintiffs have already received in this case.[3]

Defendants will respond to the demands pursuant to the Federal Rules and will in good faith bear in mind the Court's guidance. But Defendants are greatly concerned that Plaintiffs' demands seem to be *increasing* in volume, rather than wrapping up. Defendants are concerned as well that, given the Court's statement that it was likely to strike a middle ground between the parties' positions, Plaintiffs have intentionally served unreasonable, overbroad demands in the hope that the end result will be favorable to them.

_Second_, Defendants wish to alert the Court to another discovery issue that may soon require the Court's attention. The fact deposition deadline in this matter is November 22, 2023. In advance of that deadline, Defendants have completed depositions of all five of the eight living Named Plaintiffs who have been available to be deposed.[4] In doing so, Defendants have given Plaintiffs every professional courtesy, including conferring in advance of noticing depositions and agreeing without question to Plaintiffs' requests regarding scheduling, location, and the multiple accommodations Plaintiffs stated they required to be comfortable during the depositions.

---

[3] As the Court noted, this matter has been pending for nearly five years. ECF No. 319 at 2. Plaintiffs attempt to rebut that basic fact by arguing that discovery on the Discharge Class claims has been open for *only* "one year and ten months[.]" *Infra* at 6. That argument is misleading because there is a huge amount of overlap in discovery among the various claims. In 2019, the General Class and RTF Subclass Plaintiffs served a voluminous set of 75 document demands, which demanded all manner of documents and communications related to community housing and services, among many other topics. Further, while Plaintiffs point to the six-month stay of discovery on the prolonged incarceration claims, *infra* at 6, Defendants continued to produce documents upon request throughout the mediation in a good faith attempt to respond to Plaintiffs' questions. Once mediation ended, Plaintiffs promptly demanded that Defendants re-produce the mediation productions with litigation Bates stamps. Finally, even if it were accurate to state that discovery related to the Discharge Class claims has been open for *only* one year and ten months, that would on its own be an excessively long and burdensome discovery timetable for Defendants.

[4] The status of the remaining three Plaintiffs' depositions is as follows: (1) J.R. has refused to attend his deposition. Plaintiffs' counsel have informed Defendants that they would not oppose a request to dismiss J.R. for failure to prosecute. Defendants are considering their options regarding this plaintiff. (2) After negotiating a mutually agreeable date and a location, Defendants noticed C.J.'s deposition for October 25, 2023. Yesterday, on October 19, 2023, Plaintiffs informed Defendants that C.J. is unable to attend his deposition at this time due to his psychiatric condition. Defendants have agreed to adjourn the noticed deposition date and await further information from Plaintiffs. (3) After negotiating a mutually agreeable date and a location, Defendants noticed M.J.'s deposition for November 2, 2023. Yesterday, on October 19, 2023, Plaintiffs informed Defendants that M.J. is unable to attend his deposition at this time due to his psychiatric condition. Defendants have agreed to adjourn the noticed deposition date and await further information from Plaintiffs.

Hon. Andrew E. Krause
October 20, 2023
Page 4

Plaintiffs have not yet taken any depositions. Months ago, at a July 26, 2023 meeting, defense counsel asked Plaintiffs' counsel about their intentions for taking fact depositions of Defendants' employees. Plaintiffs declined to provide any information. At that same meeting, defense counsel noted that scheduling depositions of multiple high-level agency employees would be a significant logistics challenge, given the demanding workload of each of the likely witnesses, as well as defense counsel's own schedules. Defendants requested that Plaintiffs' counsel therefore provide notice of their intentions well in advance of any planned depositions so that the agencies and defense counsel could plan appropriately. Plaintiffs did not do so. On October 10, 2023, just over a month before the fact deposition deadline and having declined to provide any information in the interim, Plaintiffs served notices for eight Rule 30(b)(1) depositions and two Rule 30(b)(6) depositions. Plaintiffs' stated intention was to start taking those depositions just two weeks after noticing them, which Defendants note is the minimum generally accepted notice period in this Circuit.[5]

The deposition dates noticed by Plaintiffs are not feasible. Defendants are currently diligently working with agency counsel and the witnesses to create a proposed deposition schedule. However, as a result of Plaintiffs' refusal to provide the reasonable advance notice Defendants requested, it is extremely unlikely that Defendants will be able to offer proposed dates for all witnesses on or before November 22, 2023. For that reason, Defendants have informed Plaintiffs that Defendants would not oppose a request by Plaintiffs to extend the <u>fact deposition deadline only</u> for the <u>limited purpose</u> of permitting Plaintiffs to take the eight Rule 30(b)(1) depositions and two Rule 30(b)(6) depositions they noticed on October 10, 2023.[6] To be clear, this limited extension would not permit the parties to serve new deposition notices beyond the current deadline. Defendants continue to reserve all rights to oppose Plaintiffs' request for a broader extension of fact discovery in order to accommodate the new discovery demands they served on October 17, 2023.

Additionally, the two Rule 30(b)(6) notices served by Plaintiffs on DOCCS and OMH, which together contain *64 topics across 14 pages*, are exceedingly burdensome, overbroad, or otherwise objectionable. To take just the first two topics in the notice to OMH, Plaintiffs demanded that OMH

---

[5] Defendants' frustration is heightened by the fact that, despite defense counsel's attempts to communicate in good faith on discovery matters throughout this case, this is only the latest example of a repeated pattern in which Plaintiffs have withheld material information about their discovery agenda in an apparent attempt to gain a strategic advantage. *See* ECF No. 256 & Exhibit 2 (Transcript of Feb. 28, 2023 conference) (Plaintiffs served reports from previously undisclosed experts on the day they served their motion for class certification, causing Judge Seibel to admonish them and adjourn the class certification briefing schedule—*see* Exhibit 2 at 7:7-8: "THE COURT: So can you see why [Defendants] feel sandbagged?"; *id.* at 8:6-9: "I don't know why you kept that under your hat as something, you know, that could have been part of your discussions."; *id.* at 14:8-10: "This is a problem created by plaintiffs holding their cards too close to the vest."); ECF No. 313 (after receiving two million pages of discovery pursuant to extensive negotiations, Plaintiffs notified Defendants of their intent to serve a new round of vast, previously undisclosed demands).

[6] As noted above, yesterday Plaintiffs informed Defendants that Named Plaintiffs C.J. and M.J. are both currently unable to attend their depositions, which had previously been noticed for mutually agreeable dates prior to November 22. Accordingly, Defendants would respectfully request that this limited extension of the fact deposition deadline apply to those depositions as well.

Hon. Andrew E. Krause
October 20, 2023
Page 5

prepare and produce a witness to testify about all "policies and practices concerning the assessment of the mental health treatment and services needs of Persons with Serious Mental Illness" and all "policies and practices concerning the provision of treatment to Persons with Serious Mental Illness"—in other words, every aspect of the work performed by OMH, an agency with a multi-billion dollar budget and many thousands of employees. Although Rule 30(b)(6) contemplates that the parties might confer in good faith prior to the notice, Plaintiffs declined to provide Defendants that opportunity. Moreover, Plaintiffs' stated intent was to start taking the Rule 30(b)(6) depositions less than three weeks after service of the notices, which is not feasible. Defendants are preparing objections to the Rule 30(b)(6) deposition notices, and this dispute may well require the Court's attention if the parties are unable to reach agreement.

_Third_, discovery must of course be proportional to the needs of the case. Given that Plaintiffs have had five years of discovery and show no signs of slowing down, it is worth reflecting on what, if anything, their boundless discovery demands are intended to accomplish. The original claim in this matter pertained to a pre-December 16, 2019 DOCCS practice of holding some incarcerated individuals beyond their release dates. DOCCS ended the challenged practice four years ago and has repeatedly confirmed its commitment to that cessation. _See_ ECF No. 291 at 36-37. The second half of the case involves Plaintiffs' demand that the Court issue an unprecedented injunction ordering New York State to reallocate its resources in order to guarantee a permanent supportive housing placement to anyone in New York State who has committed a felony and has a serious mental illness (and who has pled or been found guilty, but has _not_ been found not responsible by reason of mental disease or defect), immediately upon their release from prison, with no wait time. _Id._ at 34-35. Plaintiffs' own expert conceded that there is no jurisdiction in the world that has implemented this highly idiosyncratic policy proposal, nor any mental health resource that recommends it. _See_ ECF No. 294 at 3-5. The needs of this case do not justify Plaintiffs' tactic of tying up two State agencies and a host of their employees in full-time discovery into a _sixth year_ or beyond.[7]

---

[7] One final point: Plaintiffs complain that "[t]he current scheduling order"—which, it cannot be stressed enough, gave them **_five years of discovery_**—somehow "severely prejudices Plaintiffs by thwarting their ability to properly develop the merits of this case." _Infra_ at 9. During those five years, Plaintiffs have served nearly 100 discovery demands (not counting sub-parts) and dozens of interrogatories, and they have received over two million pages of documents following an intensive collection and review by Defendants, which included a sweeping search of data from a list of 78 custodians. If Plaintiffs' case has not been properly developed by now, it is not because they lacked opportunities to obtain discovery from Defendants. Moreover, throughout this case, when the vast majority of the discovery burden was on Defendants' side, Plaintiffs have consistently pushed for faster deadlines and accused Defendants of moving too slowly. _See, e.g._, ECF No. 191 (arguing that Defendants' proposed schedule would lead to "unnecessary delays" and that "Defendants have had ample time" to respond to discovery demands); ECF No. 223 (arguing that _three months_ would be enough time for Defendants to review and produce the massive set of ESI demanded by Plaintiffs and accusing Defendants of proposing "an extremely slow rate of review and production"). At every step, Defendants have more than fulfilled their obligations; fairness demands that it is now time to wind down discovery and bring this matter to resolution.

Hon. Andrew E. Krause
October 20, 2023
Page 6

**Plaintiffs' Position**

**1. Whether Plaintiffs have, in fact, served additional discovery demands, and if so, when Defendants' responses to those demands are due.**

On October 17, 2023, Plaintiffs served Defendants their Third Request for Production of Documents related to the claims of the Discharge Class. This request was thus served well in advance of the November 22, 2023 deadline for service of additional RFPs.  Defendants' response is due on November 16, 2023.

Plaintiffs have not delayed service of the Third Request for Production of Documents. The Discharge Class claims were filed on August 27, 2020 and the Court stayed all discovery on those claims while Defendants' motion to dismiss the Second Amended Complaint was pending.  After the Court denied Defendants' motion to dismiss on September 29, 2021, Plaintiffs requested that discovery on the Discharge Class claims be opened. (ECF No. 180.)  On October 26, 2021, the Court directed the parties to propose a schedule, which they did on December 6, 2021 (ECF No. 191), and the Court opened discovery on the Discharge Claims on December 9, 2021 (Minute Entry dated Dec. 9, 2021).  In short, discovery on the Discharge Class claims—statewide discrimination claims affecting a class of hundreds of individuals—has been open for one year and ten months, not five years.[8]

As explained in the joint letter dated September 13, 2023 (ECF No. 313), Plaintiffs requested the records of putative Discharge Class members to help prove statewide, class-wide harm resulting from the challenged policies and practices. To that end, Plaintiffs do not seek records of every member of the Discharge Class; rather, Plaintiffs seek the records of a random representative sample of the Class which will be provided to Plaintiffs' experts to analyze.[9] Plaintiffs have tailored the request to

---

[8] Plaintiffs note that the six-month stay of discovery on the General Class and RTF Subclass claims pending settlement discussions also concluded on December 9, 2021.  *See* ECF Nos. 192, 193, 196 at 4:2–15.  In the last year and ten months, Plaintiffs have diligently pursued class-certification and merits discovery for the General Class, RTF Subclass, and Discharge Class claims; prepared and filed robust class-certification briefing for both classes and the subclass, along with an opposition to Defendants' motion to exclude two of Plaintiffs' class-certification experts (*see* ECF Nos. 269–308); and, as discussed *infra*, prepared a revised comprehensive settlement proposal for the General Class and RTF Subclass claims.

[9] Plaintiffs are dismayed that Defendants' go-to strategy now appears to be accusing Plaintiffs of bad faith.  Taking issue with Plaintiffs' request for the records of 143 individuals, Defendants baselessly claim that Plaintiffs "intentionally served unreasonable, overbroad demands in the hope that the end result will be favorable to them."  Nothing could be further from the truth.  The number of 143 records—which includes 43 individuals whom Defendants segregated and 100 individuals whom Defendants placed at risk of institutionalization—is the product of scientific analysis by Plaintiffs' experts Dr. Robert Factor and Dr. Todd MacKenzie regarding what sample size would be sufficiently representative of the Discharge Class to yield reliable outcomes for the experts' study.  Defendants may wish for Plaintiffs to obtain a smaller sample of records, but Plaintiffs have an obligation to ensure that their experts' methodologies are reliable.  The types of documents listed in the RFP were

Hon. Andrew E. Krause
October 20, 2023
Page 7

those documents that are relevant to the alleged harms, namely documents related to incarceration histories of class members subsequent to their release dates (such as chronological histories, case plans, risk assessments, screenings, referrals), treatment needs and mental health related records, discharge planning documents, SPOA applications and agency responses, re-entry database, OMH's PSYCKES database five-year Clinical Summary, OMH records and reports related to community based services and programs, and contact information of the absent putative Discharge Class members following the release date of the absent class members.

Plaintiffs understand that the Court has questions regarding the timing of serving this RFP, particularly why it was not served either during global negotiations over the schedule or shortly after October 2022 when Defendants first produced unredacted censuses pursuant to the Court's order. The request was timed appropriately for several reasons. First, given Defendants' prior and persistent refusal to produce unredacted putative class member names to facilitate the request, service of the request (which seeks highly sensitive class member records, not merely names) was appropriate only after class certification briefing. *See* ECF No. 313 at 3 n.4. Second, Plaintiffs' experts intend to interview class members as part of their study of Defendants' policies and practices. Given the vulnerability of putative class members and the fact—as highlighted in this litigation—that class members are homeless or at risk of institutionalization upon release from prison, Plaintiffs are seeking the records of individuals who have been released less than two years ago, to increase the chances that class members will be reachable for interviews. Using an older census document to develop the sample would not have supported that effort. Third, from early 2022 through September 2023, Plaintiffs' experts were engaged in intensive class certification-related tasks and as a result, their merits work had to be staggered. (On this point, Plaintiffs note that this current schedule, which contemplates parallel litigation of class certification and merits, was simply too ambitious and did not take into consideration the additional motion practice related to Plaintiffs' class certification experts, which Plaintiffs understand neither Plaintiffs nor Defendants anticipated. Plaintiffs have nonetheless endeavored to meet the current schedule and alert Defendants and the Court to good faith scheduling problems in real time.[10] *See* ECF No. 313.) Fourth, in May 2023, when Plaintiffs determined that putative Discharge Class member records were necessary, Plaintiffs sought updated censuses from Defendants and only received the updated censuses on September 7, 2023—less than six weeks ago. In the intervening weeks, Plaintiffs' experts worked diligently to develop a random representative sample for the RFP.

---

also the product of consultation with Dr. Factor about what records he would want to review for a reliable and comprehensive study of the Discharge Class members.

[10] Defendants falsely accuse Plaintiffs of bad faith when they assert, without basis, that "Plaintiffs have withheld material information about their discovery agenda in an apparent attempt to gain a strategic advantage," and accuse Plaintiffs of a "repeated pattern" of doing so. Plaintiffs admitted in open court that, while it was not required, they should have afforded Defendants the courtesy of notice regarding the expert reports Plaintiffs submitted for class certification (Ex. 2 at 16). Plaintiffs raised no objections when Defendants requested a five-month extension of the briefing schedule to accommodate Defendants' right to depose Plaintiffs' class certification experts and secure rebuttal experts —which they ultimately chose not to do—and since then, Plaintiffs have endeavored to keep Defendants apprised of their scheduling problems. Judge Seibel also agreed with Plaintiffs that the parties had been working reasonably well together throughout the case up until this point. (*Id.* 7-8).

Hon. Andrew E. Krause
October 20, 2023
Page 8

**2. Whether the parties have reached agreement as to any potential scope of the additional discovery contemplated by Plaintiffs, or as to the parameters of any potential extension of the scheduling order.**

The parties have not had an opportunity to meet and confer regarding Plaintiffs' Third Request for Production.

As to the parameters of any potential extension of the scheduling order, Plaintiffs' understanding is that the parties maintain the positions set forth in their September 13, 2023 status update (ECF 313), with the exception that, on October 18, 2023, Defendants informed Plaintiffs that Defendants would "not oppose a request by Plaintiffs to extend the fact deposition deadline only for the limited purpose of permitting Plaintiffs to take the eight Rule 30(b)(1) depositions and two Rule 30(b)(6) depositions they noticed on October 10, 2023" (emphasis in original). In return, however, Defendants sought Plaintiffs' agreement not to "serve new deposition notices beyond the current deadline."

Plaintiffs cannot agree to these terms. As Your Honor is aware, it is not uncommon for the need for excess depositions to arise during—or following—the depositions of the noticed witnesses. In fact, in large class action lawsuits of this type, excess depositions are routinely sought and customarily granted. *See In re Weatherford Int'l Sec. Litig.*, No. 11 CIV. 1646 LAK JCF, 2013 WL 5762923, at *2-3 (S.D.N.Y. Oct. 24, 2013) (granting 16 excess depositions); *see also Ingles v. City of New York*, 01-CV-08279 DC DCF (S.D.N.Y. Feb. 4, 2005) (ECF. No. 116) (granting 14 expert depositions). Plaintiffs are mindful that they would need to demonstrate why any excess depositions are necessary but cannot waive the right to apply to the Court for excess depositions, if needed.

More broadly, Plaintiffs cannot agree to extend only the fact deposition deadline without extending all other remaining deadlines. For example, as is customary, Plaintiffs' experts intend to review deposition transcripts as a component of their work. Plaintiffs cannot agree to a schedule that would render this process unworkable or impossible, and thus require reasonable extension of all expert-related deadlines. Second, as addressed in the parties' September 13, 2023 status update, Plaintiffs require a global extension of the extant deadlines to facilitate their Third Request for Production. This request is clearly relevant and proportional to the needs of the case – a statewide class action, involving five causes of action, seeking injunctive relief respecting the rights of three putative classes of disabled people who are homeless or at risk of homelessness. While Plaintiffs have been diligently prosecuting this case, the current schedule is simply unworkable. Plaintiffs respectfully suggest that the parties underestimated the time and resource expenditure attendant to simultaneously litigating class certification and merits. This is not an uncommon occurrence in a case of this magnitude, nor is it an act of bad faith. Plaintiffs are surprised that Defendants have adamantly refused to consider a reasonable extension of the schedule, especially since Plaintiffs have routinely agreed to each and every one of Defendants' extension requests since the onset of this litigation.

Plaintiffs maintain that a reasonable extension of deadlines in the scheduling order would not prejudice Defendants.[11] The current scheduling order, however, severely prejudices Plaintiffs by

---

[11] Judge Seibel also noted during the February 28, 2023 conference that the schedule extension did not appear to prejudice Defendants since it is the Plaintiffs who seek relief. (Ex. 2 at 19).

Hon. Andrew E. Krause
October 20, 2023
Page 9

thwarting their ability to properly develop the merits of this case. A case of this level of public importance must be decided on a properly developed record after a thorough discovery process. As it stands, Plaintiffs anticipate that we are unlikely to receive a decision on our pending class certification motion until months after the current timeline for submitting a pre-motion conference letter regarding any filing of a summary judgement motion. Unless the existing deadlines are extended, Plaintiffs would be forced to proceed with summary judgment in a piecemeal fashion. A reasonable extension of the discovery schedule would serve all parties here.

**3. Whether the parties have continued to engage in settlement negotiations as to particular aspects of the case, and whether a partial stay of discovery is warranted to facilitate those discussions.**

On September 20, 2023, Plaintiffs shared a comprehensive revised settlement proposal with Defendants. This proposal was made in response to Judge Seibel's encouragement at the February 28, 2023 conference (Ex. 2 at 20, 25), and in an effort to conserve the time and resources of both the parties and the Court. Plaintiffs' revised proposal endeavored to address the concerns raised by Defendants during prior negotiations and at the February conference. Plaintiffs offered to agree to a stay of discovery for the General Class and RTF Subclass claims to facilitate meaningful settlement discussions. Defendants expressed their intention to review the proposal with their clients. It has now been a month, however, and Plaintiffs have not received any further communication from the Defendants concerning Plaintiffs' proposal other than an email sent today to inform Plaintiffs that they have no update on the timing of a response. Defendants have instead moved forward with depositions of the putative General Class and RTF Subclass representatives. Plaintiffs remain open to participating in meaningful settlement discussions and would welcome the Court's assistance in resuming settlement negotiations on the original claims.

**4.    Any other issues the parties believe should be addressed:**

Finally, while this is currently a hypothetical discovery dispute not yet ripe for Court intervention, given Defendants' statements, Plaintiffs wish to make the Court aware of the representations we shared with Defendants regarding the depositions that Plaintiffs noticed. Plaintiffs have every expectation of meeting and conferring about the noticed depositions regarding dates, locations, and 30(b)(6) topics. Plaintiffs have neither denied nor would they deny Defendants the opportunity to raise logistical issues or share preferences and needs regarding dates and locations. On October 10, 2023, we invited Defendants to alert us as to any issues with the expectation that Plaintiffs would address them. Subsequently, on October 12, 2023, Plaintiffs reiterated their willingness to address Defendants' concerns. Plaintiffs have expressed our willingness, for example, to accommodate Defendants' request for depositions to take place in Albany if that is the preference.

While we appreciate that Defendants would have preferred more advance notice related to the depositions, such courtesy was impossible given the heavy time and resource demands that went in to evaluating which depositions are needed -- a task that involved reviewing Defendants' production of 2 million pages of documents on the heels of extremely intensive class certification briefing and narrowing down a list from dozens of potential deponents. Given the fast-approaching deadline of November 22, 2023 for fact depositions combined with Defendants' repeated statements that they would not consent to any extensions of the discovery schedule, regretfully, Plaintiffs were simply not in the position to wait to notice the depositions until after the parties negotiated details as to the dates,

Hon. Andrew E. Krause
October 20, 2023
Page 10

locations, and topics because it would risk missing the deadline.   Plaintiffs' foremost obligation is to prosecute this action zealously, including obtaining the discovery needed for merits, consistent with the current scheduling order.  Plaintiffs explained all of this to Defendants in an email on October 12, 2023, and affirmed our willingness to be flexible and accommodating on logistics, yet Defendants continue to baselessly accuse Plaintiffs of noticing these depositions in bad faith for strategic advantage.

Further, although Defendants purport to be surprised by the notices, Plaintiffs advised Defendants of their intention to notice depositions on multiple occasions. Plaintiffs made that intention clear at the July 26, 2023 meet and confer, and then most recently on September 15, 2023 by email in which we wrote, "In anticipation of Plaintiffs' noticing depositions of Defendants, Plaintiffs request that Defendants supplement their disclosures."  Defendants did not raise concerns on September 20, 2023 or September 29, 2023 when Defendants acknowledged the email and provided their supplemental disclosures.

Respectfully submitted,

/s/ Owen T. Conroy
Adam Sansolo
Caroline Wallitt
Gee Won Cha
Owen T. Conroy

Assistant Attorneys General
*Counsel for Defendants*


DISABILITY RIGHTS NEW YORK

/s/ Elizabeth Woods
Elizabeth Woods (elizabeth.woods@drny.org)
Sabina Khan (sabina.khan@drny.org)
279 Troy Road, Ste 9
PMB 236
Rensselaer, NY 12144
(518) 432-7861


THE LEGAL AID SOCIETY
Twyla Carter, Attorney-in-Charge

_____
Elena Landriscina (elandriscina@legal-aid.org)
Stefen R. Short (sshort@legal-aid.org)
Robert M. Quackenbush (rquackenbush@legal-aid.org)
Sophia A. Gebreselassie (sgebreselassie@legal-aid.org)

Hon. Andrew E. Krause
October 20, 2023
Page 11

Veronica Vela (vvela@legal-aid.org)
199 Water Street, 6th Floor
New York, New York 10038
(212) 577-3530

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP

Walter Ricciardi (wricciardi@paulweiss.com)
Crystal L. Parker (cparker@paulweiss.com)
Emily Vance (evance@paulweiss.com)
Chantalle Hanna (channa@paulweiss.com)
Samuel Margolis (smargolis@paulweiss.com)
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

*Attorneys for Plaintiffs*

cc: All counsel of record (via ECF)