# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

M.G., P.C., C.J., M.J., J.R., D.R., S.D., W.P., and D.H., individually and on behalf of all similarly situated,

                                         Plaintiffs,

            -against-

ANDREW CUOMO, in his official capacity as the Governor of the State of New York, the NEW YORK STATE OFFICE OF MENTAL HEALTH, ANN MARIE T. SULLIVAN, in her official capacity as the Commissioner of the New York State Office of Mental Health, the NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, ANTHONY J. ANNUCCI, in his official capacity as the Acting Commissioner of the New York State Department of Corrections and Community Supervision, and ANNE MARIE MCGRATH, in her official capacity as Deputy Commissioner of the New York State Department of Corrections and Community Supervision,

                                       Defendants.

7:19-CV-639 (CS) (AEK)

------------------------------------------------------------------------ x

## **PLAINTIFFS' THIRD REQUEST FOR THE PRODUCTION OF DOCUMENTS**

        Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Local Civil Rules 26.2, 26.3, and 26.4 of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules"), and in accordance with the definitions and instructions set forth below, Plaintiffs P.C., C.J., M.J., J.R., D.R., S.D., W.P., and D.H., individually and on behalf of all those similarly situated, hereby request that each and every Defendant produce for inspection and copying all documents and things designated below within their possession, custody, or control, no later than thirty (30) days after service of these requests. Production of these Documents and things shall be at the offices of Paul, Weiss, Rifkind, Wharton & Garrison

LLP, 1285 Avenue of the Americas, New York, New York 10019-6064, or at another time and place as may be mutually agreed upon by counsel for the parties.

## DEFINITIONS

Plaintiffs hereby incorporate the Uniform Definitions in Discovery Requests contained in Rule 26.3 of the Local Rules in addition to the following definitions:

1. "And" or "or" shall be construed conjunctively or disjunctively, whichever makes the Request more inclusive.

2. "Assertive Community Treatment" means the program as defined in 14 NYCRR § 508.4.

3. "Assisted Outpatient Treatment" refers to the program as defined in New York Mental Hygiene Law § 9.60.

4. "Clinical Summary" refers to a client data report that is available through OMH's PSYCKES database.

5. "CNYPC" means Central New York Psychiatric Center.

6. "CNYPC CBO Chronological Record" means the Central New York Psychiatric Center Correctional Based Operations "Chronological Record" described in Central New York Psychiatric Center Corrections Based Operations Manual Uniform Case Record Policy # 9.7.

7. "Communication" means any disclosure, transfer, or exchange of information or opinion, in the form of facts, ideas, inquiries, or otherwise, in any form, written or oral, including but not limited to notes, correspondence, memos, letters, emails, calendar and meeting invitations, appointment books, audio recordings of telephone calls, voicemails, instant messages, text messages, SMS messages, diaries, messages, posts, or other communications via

chat messenger, WhatsApp messages, and messages and posts to Twitter, Facebook, Instagram, and any other online forum or platform, or any other similar physical or electronic information.

8. "Community-Based Mental Health Housing Programs" means programs that provide housing and care to Persons With Serious Mental Illness pursuant to a license, authorization, or operating certificate issued by OMH, pursuant to a contract with OMH, or pursuant to a contract with a local government using OMH funding, including but not limited to scattered-site supportive housing, apartment programs, single room occupancy residences, and community residences. This term does not mean a Transitional Living Residence, Transitional Placement Program, or Crisis Residence.

9. "Concerning," "referring to," "reflecting," "regarding," and "relating to" mean describing, discussing, comprising, constituting, containing, considering, disclosing, embodying, evaluating, evidencing, explaining, mentioning, memorializing, summarizing, supporting, collaborating, demonstrating, providing, setting forth, showing, refuting, disputing, rebutting, controverting, contracting, made in connection with, by reason of, or arising therefrom, directly or indirectly.

10. "Discharge Intermediate Care Program" means the unit as described in DOCCS Directive # 4302, Attachment A.

11. "Document" shall be interpreted in conformity with Federal Rule of Civil Procedure 34(a), and includes all emails, instant messages, writings, drawings, graphs, charts, analyses, projections, calculations, photographs, sound recordings, images, documents, memoranda, notes, calendar entries, phone records, and other data or data compilations in either electronic or written form. The term "Document" also includes all Drafts of Documents.

12. "DOCCS" means Defendant New York State Department of Corrections and Community Supervision, and each of its current or former officers, directors, employees, staff members, agents, representatives, attorneys, advisors, affiliates, divisions, successors, predecessors, and any other related entities, departments, and all persons and entities acting or purporting to act on its behalf.

13. "Draft" shall mean any formulation, outline, sketch, conceptualization, or version of a Document created prior to the final version of that Document.

14. "Enhanced Intermediate Care Program" means the unit as described in DOCCS Directive 4302, Attachment A.

15. "FACT" and "Forensic Assertive Community Treatment" refer to an Assertive Community Treatment program that is adapted for and serves individuals with Serious Mental Illness who are or were involved with the criminal justice system.

16. "Health Home" means New York State's comprehensive care management program for Medicaid recipients with Serious Mental Illness, two or more chronic conditions, HIV/AIDS, or sickle cell disease.

17. "Health Home Plus" means the intensive Health Home Care Management service established for defined populations with Serious Mental Illness who are enrolled in a Health Home, as referred to in the memorandum "Health Home Plus Guidance for High-Need Individuals with Serious Mental Illness" reissued in September 2021 by OMH and the New York State Department of Health.

18. The terms "including," "include," or "includes" are used in their broadest sense and are not meant to be limiting. Any list following these terms contains illustrative

examples, but such lists are without limitation and do not constitute exclusive, all-encompassing, or exhaustive listings.

19. "Intensive Case Management" shall refer to the program as defined in 14 NYCRR § 506.4.

20. "Intensive Mobile Treatment" means a program that provides mobile mental health and substance use treatment and serves people with serious mental illness, complex life situations, and involvement with criminal justice systems.

21. "Intermediate Care Program" means the unit as described in DOCCS Directive # 4302, Attachment A.

22. "MHCRP" means The Mental Health Community Reintegration Program as referenced in DOCCS Directive # 9230.

23. "Offender Rehabilitation Coordinator" means the DOCCS's employees with such titles.

24. "OMH" means Defendant New York State Office of Mental Health, and each of its current or former officers, directors, employees, staff members, agents, representatives, attorneys, advisors, affiliates, divisions, successors, predecessors, and any other related entities, departments, and all persons and entities acting or purporting to act on its behalf.

25. "Parole Board" means the agency as defined in New York Executive Law § 259-b.

26. Person with Serious Mental Illness means "Persons with Serious Mental Illness" as defined in New York Mental Hygiene Law § 1.03(52).

27. "PSYCKES" means Psychiatric Services and Clinical Knowledge Enhancement System, a web-based platform developed by OMH for sharing Medicaid billing

claims and encounter data, other state health administrative data, and data and documents entered by providers and patients.

28. "RCTP" means the "Residential Crisis Treatment Program" as defined in DOCCS Directive # 4308.

29. "Re-entry database" refers to the OMH database described in D-01191609 and D-01191764.

30. "Residential Mental Health Treatment Unit" means the unit as defined in New York Correction Law § 2(21).

31. "RTF" means a facility designated a "Residential Treatment Facility" pursuant to New York State Correction Law § 70.

32. "RTF Continuation Designation" means documents or communications indicating Defendants' plan to continue the placement of an incarcerated individual on Residential Treatment Facility status pursuant to Correction Law § 73(10).

33. "Service Provider" means an entity providing mental health services, including housing, case management, and care coordination.

34. "SPOA" means Single Point of Access and refers to the process of coordinating community-based mental health services, as referenced in the New York State Consolidated Fiscal Reporting and Claiming Manual, including Reentry Coordination System applications for New York City.

35. "SPOA Application" means a standardized form (e.g., OMH 270 form) or system used to apply for community-based mental health services.

36. "Special Needs Unit" means the unit as described in DOCCS Directive # 4302, Attachment A.

37. "Transitional Intermediate Care Program" means the unit as described in DOCCS Directive # 4302, Attachment A.

38. "You" and "Your" refer to Defendants and all of Defendants' predecessors in interest, successors in interest, divisions, departments, subsidiaries, branches, affiliates, and its present and former officers, directors, executives, employees, partners, agents, principals, attorneys, trustees, representatives, contractors, and subcontractors, and other persons acting or purporting to act on his, her, or its behalf, unless otherwise specified.

## INSTRUCTIONS

1. Unless otherwise stated, these requests seek responsive information, Documents, and things authored, generated, disseminated, drafted, produced, reproduced, or otherwise created or distributed, for the period of 1/1/2020 through the present.

2. In responding to these requests, You shall produce all responsive Documents and things which are in Your possession, custody, or control of Your employees, agents, attorneys, representatives, affiliates, or any other person acting under Your control or on Your behalf. A Document or thing shall be deemed to be within Your control if You have the right to secure the Document or thing or a copy of the Document or thing from another person having possession, custody, or control of the Document or thing.

3. These requests are continuing in nature under Federal Rule of Civil Procedure 26(e). Any Document or thing created or identified after service of any response to these requests that would have been produced in response had the Document or thing then existed or been identified shall promptly be produced whenever You or those in privity with You find, locate, acquire, create, or become aware of such Documents or things, up until the resolution of this action.

4. In accordance with Federal Rule of Civil Procedure 26 and Local Rule 26.2, where a claim of privilege is asserted in objecting to any request or part thereof and information is not provided on the basis of such assertion, the following information should be provided in a privilege log served with the objection, if known or reasonably available, unless divulging such information would cause disclosure of the allegedly privileged information: (a) the type of Document or thing for which the privilege is claimed; (b) the date of the Document or thing; (c) the author(s), addressee(s), custodian(s), and any other recipient of the Document or thing, and, where not apparent, the relationships of the author(s), addressee(s), custodian(s), and any other recipient to each other; (d) the subject matter of the information requested or the Document withheld; and (e) the nature of the privilege asserted and the basis upon which it is claimed. In all other respects, all claims of privilege (including the attorney-client privilege and the attorney work-product doctrine) must conform to the requirements of Local Rule 26.2 and Federal Rule of Civil Procedure 26(b)(5).

5. To the extent a requested Document or thing contains non-privileged information, the privileged information shall be redacted from the same and the redacted version of the Document or thing produced.

6. The Documents or things produced shall be produced as they are kept in the usual course of business.

7. In accordance with Federal Rule of Civil Procedure 34(b)(2), each request shall be responded to fully, unless it is in good faith objected to, in which event the reasons for the objection shall be stated with specificity, and the objection must state whether any responsive materials are being withheld on the basis of that objection. If an objection pertains only to a

portion of a request, or to a word, phrase, or clause contained in a request, You shall state Your objection to that portion only and respond to the remainder of the request.

8. Each requested Document or thing shall be produced in its entirety, along with any attachments, drafts, and non-identical copies, including without limitation copies that differ by virtue of handwritten or other notes or markings. If a Document or thing responsive to these requests cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible. Documents contained in file folders, loose-leaf binders, and notebooks with tabs or labels identifying such Documents are to be produced intact together with such file folders, loose-leaf binders, or notebooks. All labels identifying such Documents, files, folders, or binders shall be copied. Documents attached to each other should not be separated, and all such attached Documents shall be produced.

9. Any ambiguity as to any request shall be construed to require the production of the greater number of Documents or things.

10. If, in responding to these requests, You claim any ambiguity in interpreting a request, or any applicable definition or instruction, You may not use that claim as a basis for refusing to respond. Rather, You shall set forth as part of Your response the language deemed ambiguous and the interpretation You used in responding to that request.

11. If any Documents or things are no longer in Your possession, custody, or control, or otherwise are not available or accessible to the full extent requested, state whether the Documents were lost, destroyed, or otherwise disposed of.

12. If any Document or thing in response to these requests has been destroyed, discarded, or lost, or is otherwise not capable of being produced, identify each such Document or thing and set forth the following information: (a) the date of the Document or thing; (b) a

description of the subject matter of the Document or thing; (c) the name and address of each person who prepared, received, viewed, or had possession, custody, or control of the Document or thing; (d) the date when the Document or thing was destroyed, discarded, or lost; (e) the identity of the person who directed that the Document or thing be destroyed, who directed that the Document or thing be discarded, or who lost the Document or thing; and (f) a statement of the reasons for and circumstances under which the Document or thing was destroyed, discarded, or lost.

13. If no Documents or things exist that are responsive to a particular paragraph of these requests, You shall so state in writing.

14. No request shall be read as limiting any other request.

## REQUESTS FOR PRODUCTION

100. All Documents in DOCCS's possession, custody, or control concerning all persons identified in Appendix A and Appendix B relating to crime and sentence information; legal date computations; chronological histories; transfer histories; chronological entry sheets; Parole Board decisions; parolee chrono or progress reports; community prep investigation reports; memoranda regarding Special Condition 37 pursuant to Penal Law 70.45; RTF Continuation Designations pursuant to Correction Law 73(10); all documents related to Parole Board special conditions, including underlying documents, requests, and Offender Rehabilitation Coordinator recommendations; all documents from prior incarceration(s); probation, parole, and legal documents; MHCRP documents; case plans; risk assessments; special conditions of release; special conditions of community supervision; classification documents; mental health referrals; health screening forms; and documents related to screening, referrals, and evaluations for special programs, including but not limited to the Intermediate Care Program, Transitional Intermediate

Care Program, Residential Mental Health Treatment Unit, Enhanced Intermediate Care Program, and Discharge Intermediate Care Program, for the period beginning one year prior to the release date indicated in D-01685103 through to that release date.

101. All Documents in DOCCS's possession, custody, or control concerning all persons identified in Appendix A and Appendix B relating to incarceration(s) subsequent to the release date indicated in D-01685103, including crime and sentence information; legal date computations; chronological histories; transfer histories; chronological entry sheets; Parole Board decisions; parolee chrono or progress reports; community prep investigation reports; probation, parole, and legal documents; MHCRP documents; case plans; risk assessments; special conditions of release; special conditions of community supervision; and documents related to screening, referrals, and evaluations for special programs, including but not limited to Special Needs Unit, Intermediate Care Program, Transitional Intermediate Care Program, Residential Mental Health Treatment Unit, Enhanced Intermediate Care Program, and Discharge Intermediate Care Program.

102. All Documents in OMH's possession, custody, or control concerning all persons identified in Appendix A and Appendix B relating to treatment needs and mental health service level designations; admission and screening forms; diagnosis record; core history (including but not limited to history of treatment, education, and employment); psychiatric evaluations; RCTP admission and discharge notes; comprehensive suicide risk assessments; transfer documents (including but not limited to termination transfer notes); medication administration record; discharge planning documents; pre-release evaluations; SMI Summary Notes; SPOA Applications; documents generated or relied upon in preparing SPOA Applications; responses to SPOA Applications from county agencies; responses to SPOA

Applications from Service Providers, including denials and acceptances; CNYPC CBO Chronological Records; chronological history reports; all CNYPC and OMH inpatient admission and discharge summaries, evaluations, and medication administration records; mental health reports for parole; and all discharge recommendations, for the period beginning one year prior to the release date indicated in D-01685103 through to that release date.

103.  All Communications in OMH's possession, custody, or control concerning all persons identified in Appendix A and Appendix B relating to SPOA Applications; responses to SPOA Applications from county agencies; and responses to SPOA Applications from Service Providers, including denials and acceptances, for the period beginning one year prior to the release date indicated in D-01685103 through to that release date.

104.  All Documents in OMH's possession, custody, or control concerning all persons identified in Appendix A and Appendix B relating to OMH's PSYCKES database five-year Clinical Summary and any keys and/or definitions for terms used in the Clinical Summary; for all psychiatric hospitalizations occurring within eighteen months of the release date indicated in D-01685103, admission and screening forms, psychiatric evaluations, and admission and discharge summaries.

105.  All data in OMH's "re-entry database" concerning persons identified in Appendix A and Appendix B related to their legal system involvement (crime description, arrest date, conviction date, sentence date); FACT referral; discharge placement; housing location; homeless; county upon release; care coordination type; program; and mental health clinic.

106.  All Documents in OMH's possession, custody, or control concerning all persons identified in Appendix A and Appendix B relating to OMH's PSYCKES database reports concerning Health Home and Health Home Plus care management programs; housing

programs; Assertive Community Treatment programs; Forensic Assertive Community Treatment programs; Assisted Outpatient Treatment programs; suicide attempt incidents; Intensive Mobile Treatment programs; intensive case management programs; and homeless shelter programs, for the eighteen-month period following the release date indicated in D-01685103.

107. All Documents in DOCCS's and OMH's possession, custody, or control concerning all persons identified in Appendix A and Appendix B relating to contact information following the release date indicated in D-01685103.

Dated: October 17, 2023

New York, New York

        DISABILITY RIGHTS NEW YORK
        Elizabeth Woods (elizabeth.woods@drny.org)
        Sabina Khan (sabina.khan@drny.org)
        278 Troy Road, Ste 9
        Rensselaer, NY 12144
        (518) 432-7861

        THE LEGAL AID SOCIETY
        Twyla Carter, Attorney-in-Charge

        /s/ Elena Landriscina
        Elena Landriscina (elandriscina@legal-aid.org)
        Stefen R. Short (sshort@legal-aid.org)
        Robert M. Quackenbush (rquackenbush@legal-aid.org)
        Sophia A. Gebreselassie (sgebreselassie@legal-aid.org)
        Veronica Vela (vvela@legal-aid.org)
        49 Thomas Street, 10th Floor
        New York, New York 10013
        (212) 577-3530

        PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
        Walter Ricciardi (wricciardi@paulweiss.com)
        Crystal L. Parker (cparker@paulweiss.com)

        Emily Vance (evance@paulweiss.com)
        Chantalle Hanna (channa@paulweiss.com)
        Samuel Margolis (smargolis@paulweiss.com)
        Brian Erickson (berickson@paulweiss.com)
        1285 Avenue of the Americas
        New York, New York 10019-6064
        (212) 373-3000

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I, Elena Landriscina, hereby certify that copies of the foregoing PLAINTIFFS' THIRD REQUEST FOR THE PRODUCTION OF DOCUMENTS was caused to be served on October 17, 2023, on Owen Conroy via electronic mail.

/s/ Elena Landriscina

Elena Landriscina