# EXHIBIT
# 2

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

```
----------------------------:

M.G., et al.,                     :

                                  : Case No.: 19-cv-639

              Plaintiff,    :

      v.                          :

ANDREW CUOMO, et al,        : White Plains, New York

              Defendants.   : February 28, 2023

----------------------------: CONFERENCE
```

PROCEEDINGS BEFORE

THE HONORABLE CATHY SEIBEL

UNITED STATES DISTRICT JUDGE

APPEARANCES:

```
For Plaintiff:      THE LEGAL AID SOCIETY
                    BY: Sophia Assefa Gebreselassie
                    199 Water Street -- 6th Floor
                    New York New York, NY 10038


For Plaintiff:      PAUL, WEISS, RIFKIND,
                    WHARTON & GARRISON LLP
                    BY:  Chantalle Hanna
                    1285 Avenue of the Americas
                    New York, NY 10019-6064
```

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

AMM TRANSCRIPTION - 631.334.1445

```
                        APPEARANCES CONTINUED


For Plaintiff:          SABINA KHAN
                        17520 Wexford Terrace 12A
                        Jamaica, NY 11432

For Plaintiff:          THE LEGAL AID SOCIETY
                        BY: Stefen Russell Short
                            Elena Maria Landriscina
                        199 Water Street
                        New York, NY 10038

For Plaintiff:          PAUL WEISS
                        BY:  Samuel Margolis
                             Walter G. Ricciardi
                        1285 Avenue of the Americas
                        New York, NY 10019

For Plaintiff:          DISABILITY RIGHTS NEW YORK
                        BY:  Elizabeth Suzanne Woods
                        725 Broadway Ste #450
                        Albany, NY 12207

For Defendant:          NYS OFFICE OF ATTORNEY GENERAL
                        LITIGATION BUREAU
                        BY:  Owen Thomas Conroy
                             Adam Joseph Sansolo
                        28 Liberty Street - 18th Floor
                        New York, New York 10005


Also Present:           BRIAN ERICKSON, ESQ.
```

PROCEEDINGS

```
 1              THE DEPUTY CLERK:  Good morning.  The
 2     parties for M.G. v. Cuomo, I'm just going to run
 3     down your names really quick to make sure everyone's
 4     on.
 5              Mr. Short, are you on?
 6              MR. SHORT:  Yes, I am; thank you.
 7              THE DEPUTY CLERK:  Ms. Landriscina, are you
 8     on?
 9              MS. LANDRISCINA:  Yes, I am; thank you.
10              THE DEPUTY CLERK:  Mr. Ricciardi, are you
11     on?
12              MR. RICCIARDI:  Yes; thank you.
13              THE DEPUTY CLERK:  Ms. Hanna, are you on?
14              MS. HANNA:  Yes.
15              THE DEPUTY CLERK:  Ms. Woods, are you on?
16              MS. WOODS:  Yes; thank you.
17              THE DEPUTY CLERK:  Ms. Khan, are you on?
18              MS. KHAN:  Yes; thank you.
19              THE DEPUTY CLERK:  Mr. Margolis, are you
20     on?
21              MR. MARGOLIS:  Yes; thank you.
22              THE DEPUTY CLERK:  Ms. -- and forgive me if
23     I mispronounce your last name.  Ms. Gebreselassie,
24     are you on?
25              MS. GEBRESELASSIE:  Yes, I am; thank you.
```

PROCEEDINGS

1           THE DEPUTY CLERK:  Mr. Erickson, are you
2   on?
3           MR. ERICKSON:  Yes; thank you.
4           THE DEPUTY CLERK:  And for defendants,
5   Mr. Sansolo, are you on?
6           MR. SANSOLO:  Yes, I am.
7           THE DEPUTY CLERK:  And, Mr. Conroy, are you
8   on?
9           MR. CONROY:  Yes.  Good morning.
10           THE DEPUTY CLERK:  Okay.  Good morning.
11           Good morning, Judge.
12           Judge, this matter is M.G. v. Cuomo.  We
13   have on for plaintiffs, Mr. Stefen Short, Ms. Elena
14   Landriscina, Mr. Walter Ricciardi, Ms. Chantalle
15   Hanna, Ms. Elizabeth Woods, Ms. Sabina Khan, Mr.
16   Samuel Margolis, Ms. Sophia Gebreselassie and Mr.
17   Brian Erickson.
18           And for defendants, we have Mr. Adam
19   Sansolo and Mr. Owen Conroy from New York State
20   Office of the Attorney General.  And Sonia is still
21   on.
22           THE COURT:  All right.  Good morning to you
23   all.
24           Let me remind counsel when you speak, just
25   say your last name first.  Do not say, this is Owen

AMM TRANSCRIPTION - 631.334.1445

PROCEEDINGS

1    Conroy for defendants.  Just say "Conroy" so that I

2    know right up front who is speaking, and I don't

3    want to have to interrupt you.  And if we need to

4    get the conference transcribed, the transcriber will

5    know who's speaking.

6         I have defendant's letter of February 15th

7    about the expert reports that were appended to the

8    motion for class certification, and I have

9    plaintiffs' February 22nd response.  I guess my

10   first question is for plaintiffs.  I don't know

11   who's going to take this.

12        I guess, Mr. Short, what did you think was

13   going to happen when you attached expert reports

14   that defendant had not seen to your motion?

15        MR. SHORT:  Short.

16        What we expected would happen is that

17   defendants to the extent that they sought to depose

18   the experts, seek rebuttal experts, et cetera, would

19   do so.

20        In post Walmart, Americans with

21   Disabilities Act and Rehabilitation Act class

22   certification motions, particularly Olmstead risk of

23   institutionalization class certification motions, it

24   is customary to include expert reports as support.

25   For that reason, we thought that when we were

PROCEEDINGS

1   involved in scheduling negotiations, defendants had

2   factored expert reports into that process, and thus

3   factored in expert depositions, any rebuttal experts

4   and the like.

5          Certainly, if defendants did not do this,

6   we're more than willing to discuss a reasonable

7   extension of the schedule to allow defendants to

8   depose our experts, to seek a rebuttal expert or

9   engage in additional motion practice, if they so

10  choose.  But in all candor, we thought that that was

11  built into the schedule, so we expected that that

12  would proceed.

13         THE COURT:  You thought it was built into

14  the schedule.  February 8th was the motion.

15  Opposition by March 15th.  Reply by April 5th.  You

16  thought between February 8th and March 15th, they

17  would be able to retain experts, have the experts

18  review your expert reports, write their own expert

19  reports and depose your experts?  That does not

20  sound at all realistic.

21         MR. SHORT:  Well, I mean, Your Honor, it's

22  our position that defendants should have factored

23  that into their planning when we were discussing

24  scheduling negotiations.  Now, as I say, you know,

25  if defendants did not do that --

PROCEEDINGS

1            THE COURT:  So a moment ago, you said you
2    thought they had.  Now you're saying they should
3    have.  Did you discuss experts at all when you were
4    talking about the schedule?
5            MR. SHORT:  No, we did not discuss experts
6    at that time.
7            THE COURT:  So can you see why they feel
8    sandbagged?
9            MR. SHORT:  In all candor, Your Honor, no,
10   I can't see why they feel sandbagged.  I can see why
11   they may feel under the gun, but we can also have
12   that conversation.  You know, we are certainly
13   amenable to addressing any scheduling issue that
14   exists in this case.  You know, it's not our goal to
15   prevent defendants from engaging in the process of
16   deposing our experts.  It's not our goal to prevent
17   defendants from making their case in this class
18   certification motion series.  We've always worked
19   out our scheduling issues in this case among the
20   parties.  I think we've always dealt with these
21   issues in good faith, and we will certainly do that
22   here and continue to do so.
23           THE COURT:  Well, I -- from what I can tell
24   and from what I have seen on the docket from Judge
25   Krause, I think it's true, you have been working

PROCEEDINGS

1    reasonably well together.  And I have to say I was

2    surprised that this is how this played out because

3    it just seems like, you know, even if it wasn't

4    discussed when you agreed on a schedule, you had to

5    have known once you decided to employ experts that

6    that schedule was not going to be realistic.  And I

7    don't know why you kept that under your hat as

8    something, you know, that could have been part of

9    your discussions.

10          Let me just ask you a couple of other

11    questions before I hear from the other side.

12          Why do I need, at this stage, an expert to

13    say that individuals with serious mental illness who

14    the State agrees require house -- you know,

15    community treatment, community-based mental-health

16    housing and supportive services, are going to

17    decompensate if they don't get those.  That -- it

18    kind of seems obvious that somebody who everybody

19    agrees needs a bunch of services is going to do

20    poorly if he doesn't get them.  Why do I need an

21    expert to tell me that?

22          MR. SHORT:  Well, you know, in prior motion

23    series in this case, defendants have objected to the

24    idea that the putative class would decompensate upon

25    release from prison without the services that they

PROCEEDINGS

1    themselves have deemed members of the putative class

2    eligible for.  So that's one threshold reason.  But

3    in addition, in Americans with Disabilities Act,

4    particularly Olmstead risk of institutionalization

5    class certification motions post Walmart, these

6    types of expert reports are customary.  So, you

7    know, we felt to zealously represent our putative

8    class and to zealously prosecute this motion, we

9    needed to include this information.

10          THE COURT:  Well, defendants are also

11   arguing that the other issue that I guess the other

12   expert is going to talk about, which is the

13   systemic -- what she says are systemic deficiencies,

14   aren't at issue here.  And they're right to the

15   extent that the class cert motion is not about

16   whether or not the State has violated the ADA.  And,

17   again, I don't know why I need an expert to tell me

18   that the treatment is systemic.  Whether it's

19   deficient, is a separate question.  Is that also in

20   dispute?

21          MR. SHORT:  Well, Your Honor, the common

22   question -- one of the common questions that we

23   propose as to the putative discharge class in this

24   case gets to the issue of whether there are systemic

25   deficiencies in the community-based mental-health

PROCEEDINGS

1    housing and supportive-services system that is

2    administered by defendants.  You know, that issue,

3    we would contend, is central to plaintiffs'

4    commonality showing.  And the report that you're

5    referencing, Ms. Pete's expert report, includes

6    methodology and guidance as to that issue.  It, sort

7    of, voluminously references methodology and guidance

8    as to that issue to come to a conclusion as to

9    whether those systemic deficiencies exist.

10           So, you know, it's our position that that

11   report, just as with the other report, goes to the

12   heart of the commonality showing for Rule 23

13   purposes in this motion series.

14           THE COURT:  Let me ask defendants a couple

15   questions.

16           Are you going to be disputing that if

17   somebody gets out of prison and they need a bunch of

18   services and they don't get them, that that's a bad

19   thing for all of them?

20           MR. CONROY:  Conroy.

21           So, Your Honor, no, I mean, I think to the

22   extent you're talking about the first half of the

23   doctor-factor report, that content is not in

24   dispute.  I mean, basically it says, you know,

25   providing outpatient services and housing for people

PROCEEDINGS

1    with SMI helps them to avoid institutionalization.

2    These are helpful services.  You know, certainly,

3    our clients agree with that.  That's why they spend

4    so much money providing these services.  So that's

5    not in dispute.

6          THE COURT:  And what about -- I don't

7    expect you to admit that there are systemic

8    deficiencies, although, probably in your heart of

9    hearts, you know that's the case, but are you

10   disputing that the way all of these folks are

11   handled by the system is systemic?

12         MR. CONROY:  Well -- so we are disputing --

13   I mean, I think there's two things that are relevant

14   here in terms of the Pete report; one is that it,

15   sort of, avoids the actual commonality and

16   typicality question, which is, you know, really

17   focused on the individualized nature of this

18   process, and that's certainly something we're going

19   to be covering in our opposition brief.

20         Following Walmart, when you have an

21   individualized placement process like this, it

22   really strips the proposed class of commonality and

23   typicality.  In -- but in terms of the argument

24   that -- you know, that defendants maintain, sort of,

25   a centralized policy or practice that violates the

PROCEEDINGS

1    ADA as to the class as a whole, the Pete report

2    doesn't speak to that because it sets a standard

3    that doesn't come from the ADA.  It doesn't come

4    from anywhere else.  It says that if anyone leaving

5    prison with SMI doesn't get a permanent supportive

6    housing placement on day one, that the State

7    services are not "adequate."

8         I mean, that's just not a standard that is

9    going to be applicable to the commonality analysis.

10    And so for that reason, the Pete report is just not

11    helpful to this issue.

12         THE COURT:  Well, let me ask a question.

13    Do you want the opportunity to depose these experts

14    and get your own before you respond to the motion?

15         MR. CONROY:  So I guess I have a two-part

16    answer to that.  I -- our -- in our view, the most

17    fair and equitable course is to strike them on the

18    basis that they were not properly disclosed during

19    the class certification discovery time period, and

20    that they don't speak to the class certification

21    issues.

22         And the reason why we really would prefer

23    that option is, you know, one, of course, it's

24    highly prejudicial to us to have to respond to these

25    experts having not had the opportunity to depose

PROCEEDINGS

1    them and consider getting our own.  But it's also

2    highly prejudicial to the defendants to have this

3    case -- have all the deadlines pushed out.  It's a

4    four year old case.  You know, this is going to

5    postpone resolution of the class certification

6    process.  It's going to postpone resolution of

7    everything else in the case.  And, you know, just

8    the resources and time that's going to be spent on

9    all of that is highly prejudicial to the defendants.

10           So that is -- so, certainly, our option

11   number one is to strike them without reopening class

12   certification expert discovery and going down that

13   road.  That said, if the Court is inclined, you

14   know, to consider a fuller Daubert analysis with

15   respect to these experts, then, yes, we would

16   request that, you know, basically, everything get

17   pushed back, give us the chance to depose these two

18   experts and consider whether we would retain

19   rebuttal class certification experts.

20           THE COURT:  I mean, I think this is going

21   to postpone the resolution either way because either

22   I'm going to pause the briefing schedule to let you

23   depose these experts and consider getting your own,

24   or I'm going to have to entertain a motion to

25   strike.  I can't really decide -- although,

AMM TRANSCRIPTION - 631.334.1445

PROCEEDINGS

1    generally, I like to decide discovery issues on the

2    spot at conferences.  Like, I haven't even seen

3    these reports, so I can't tell to what extent they

4    are relevant or reliable.  So I think either way

5    there's going to be delay.

6            And I agree it would be unfair to require

7    you to respond without having had the opportunity to

8    pursue this discovery.  And I agree with you, this

9    is a problem created by plaintiffs holding their

10   cards too close to the vest.  But at the same time,

11   there was no discussion of experts at all yet.

12           In other words, it's not like, you know,

13   there was a deadline for them to disclose any

14   experts they were going to use in connection with

15   this motion.  I just think they should have so as to

16   have avoided this problem.  Of course, they think

17   you should have asked because they say it's

18   customary to have these kinds of reports.  I do not

19   know who is right.

20           MR. CONROY:  Well, I -- I'm sorry,

21   Your Honor.  Could I briefly respond to that, Your

22   Honor?  Conroy.

23           THE COURT:  Yeah.

24           MR. CONROY:  Okay.  So, I mean, I -- a

25   couple things on that.  One is, I mean, the parties

AMM TRANSCRIPTION - 631.334.1445

PROCEEDINGS

1    extensively negotiated this case-management plan,

2    and we were very specific in discussing what would

3    be the content of class certification discovery, I

4    mean, down to particular spreadsheets that they

5    wanted us to produce, very specific ESI searches.

6    All of that had deadlines.  All of that is now

7    behind us.

8            And so, certainly, in our view, the only

9    reason why there was no explicit class certification

10   expert deadline in the case-management plan is

11   because they didn't tell us that they were

12   contemplating that.

13           But also, during that first phase of

14   discovery, we served plaintiffs with multiple

15   interrogatories asking them to identify their

16   witnesses -- and that included ARAG -- asking for

17   all witnesses they intend to call to support the

18   claim that they have not been released into a

19   properly integrated setting.

20           The response from the plaintiff is that

21   they were objecting, "to the extent these

22   interrogatories prematurely seek information

23   regarding experts."

24           So it is extremely frustrating, to say the

25   least, that we asked for information about their

PROCEEDINGS

1    witnesses during the class certification discovery

2    time period.  You know, now we know that they were

3    actually preparing class certification expert

4    reports, but they claim that our request to receive

5    disclosures was premature.

6              THE COURT:  You want to respond, Mr. Short?

7              MR. SHORT:  Sure.  Short.

8              Mr. Conroy is correct that we did have

9    extensive negotiations around scheduling in this

10   case.  We have not yet contemplated expert support

11   for our merits arguments in this case; therefore, we

12   had nothing to disclose in that regard.  I would say

13   that, you know, we would reiterate that post

14   Walmart, expert support for motions like this is

15   customary.  I think if defendants had done their

16   research into this process, they would know that.

17             Now, again, we can obviate extensive

18   conversation around this by talking about how we can

19   rectify this issue.  Because I will say, you know,

20   we did not seek to bury anything.  We did not seek

21   to sandbag defendants, but perhaps we should have

22   had more open conversations about our expert plan in

23   this case.

24             So, you know, we're willing to come to the

25   table and we're willing to talk about targeted ways

AMM TRANSCRIPTION - 631.334.1445

PROCEEDINGS

1    to deal with this.

2              I would say that, you know, we don't think

3    it would be prejudicial to defendants to stay the

4    current deadlines and work into the current schedule

5    the ability for defendants to depose our experts and

6    to engage in any class certification experts related

7    motion practice here.  We're talking about what

8    could be a very reasonable extension.  I'm sure the

9    parties could work that out.  So we don't see any

10   prejudice here, and we certainly were not trying to

11   hide the ball.

12             THE COURT:  Well, when you negotiated the

13   schedule, the right thing to do would have been to

14   say, are you sure you only want five or six weeks

15   for your response; because we're going to have

16   expert reports.  That would have been the way to do

17   it.  And that would have been consistent with how I

18   think both sides have been litigating this case.

19   Even though it's certainly hard fought, I had the

20   impression that everybody was playing nicely, and

21   I'm a little disappointed.

22             With that said, as I said a moment ago,

23   there's going to be delay either way.  It's always

24   better to decide things on the merits, so I think --

25             MR. SANSOLO:  Sansolo.

AMM TRANSCRIPTION - 631.334.1445

PROCEEDINGS

1           Your Honor, can I just speak real quickly
2     before --
3           THE COURT:  Yeah.  Last words.
4           MR. SANSOLO:  Yeah.  And I know you're,
5     sort of, saying there will be delay either way.
6     It -- the problem on the defensive side, because
7     this time period was not built into procure experts
8     for this part, on the defensive side, that can take
9     a while, given the approval process that is required
10    in order to obtain an expert for the defense as to
11    these issues.
12           I think even though a motion to strike
13    would cause some delay, I think when the Court
14    considers the issues before the Court and reviews
15    the reports that are before the Court and, you know,
16    determines whether or not those expert reports are
17    even relevant to the issue of class certification,
18    the Court is going to see pretty quickly that that
19    issue can be resolved much quicker than now going
20    down the road of requiring depositions of experts,
21    you know, obtaining experts, the defense approval to
22    get experts.  All of that can take a very long time,
23    and so --
24           THE COURT:  Well, you are probably right,
25    but --

PROCEEDINGS

1          MR. SANSOLO:  -- even though there is a
2   delay --
3          THE COURT:  You're probably right that a
4   motion would cause less delay than having you get
5   opposing experts, but apart from the, sort of,
6   general desire not to have this hanging over your
7   head forever, which I sympathize with, I haven't
8   heard any particular problem that it is going to
9   cause the State of New York.  Indeed, it's the
10  plaintiffs who are looking for relief here, which
11  they're not going to get as quickly as they wanted.
12         So I think the better course is to allow
13  defendants to get their own experts if they wish and
14  to depose plaintiffs.  And the parties should confer
15  on the schedule which we'll have to build in time
16  knowing all the hoops Mr. Sansolo and Mr. Conroy
17  have to go through to get the okay.  And, you know,
18  so confer on a schedule and get me a proposal a week
19  from today.  So what's that?  It would be the 7th.
20         And to the extent you can't agree,
21  plaintiffs should defer to defendants unless what
22  they're asking for is completely unreasonable.
23  The -- I would imagine that these reports are going
24  to be of use later on in the litigation anyway.
25         Two final things.  First of all, remind me

PROCEEDINGS

1    why you didn't settle.  It seemed like you were so

2    close.

3             Nobody wants to answer.  It just seems

4    crazy to me that this is still happening because my

5    impression -- and you can correct me if I'm wrong,

6    Mr. Conroy and Mr. Sansolo -- was that the State

7    recognized it had a problem and that it was taking

8    steps to change things for the better.  You know, I

9    don't need to hear dollars and cents or anything,

10   but, generally speaking, what was the holdup?

11            MR. SANSOLO:  Sansolo.

12            I think what -- the issue with the

13   settlement was the case was, kind of, bifurcated for

14   purposes of settlement because there was the

15   individual class of incarcerated individuals who

16   were held past certain release dates as a result of

17   a DOCCS determination that they were not safe to be

18   released to the community.  That policy had changed.

19   DOCCS is no longer holding individuals for that

20   reason.  OMH would make a determination that an

21   individual was safe to be released to the community

22   at the time of their expected release date, and if

23   OMH made that determination, DOCCS was going along

24   with that.  And so we were seeking to settle that

25   portion of the case that was related to those

PROCEEDINGS

1    claims.

2         Plaintiffs were not convinced that DOCCS

3    had not stopped that practice, despite our

4    assurances and directives that -- we agreed DOCCS

5    would issue directives that would provide for that

6    relief.  And I -- that was, sort of, where

7    settlement discussions broke down.

8         THE COURT:  Well, there's been some time

9    now.  Isn't it knowable whether or not DOCCS is

10    doing what it said it was going to be doing?  I

11    mean, is there any evidence of people being held

12    beyond their release dates now?  If there isn't,

13    shouldn't you go back to the table at least on that

14    issue?

15         MR. SHORT:  Short.

16         MR. SANSOLO:  Your Honor -- sorry.

17         MR. SHORT:  If I may, quickly, just to

18    respond, you know, our class certification motion

19    papers indicate and argue that, yes, there is a

20    continuing class here of individuals who are being

21    subjected to the challenged practice.

22         That said, during settlement conversations,

23    it is correct -- Mr. Sansolo is correct that we did

24    seek assurances that DOCCS and OMH and other

25    defendants had changed the challenged policies.  We

PROCEEDINGS

1    never received the type of assurance that we think
2    was perfectly reasonable for us to expect during a
3    settlement conversation, and that includes an
4    agreement that defendants would promulgate a
5    directive to implement the challenged practice.
6          Defendants never agreed to implement a
7    directive.  They've relied on a memorandum that is
8    not permanent and does not, in our view, end the
9    challenged practice here.  So -- and Mr. Sansolo is
10   correct, we did get hung up on some of those
11   details.  And that's the reason why we're still here
12   on the original claims.
13         MR. SANSOLO:  Sansolo.
14         That is incorrect.  A directive was
15   discussed as what would be part of a settlement
16   agreement.  DOCCS would issue a directive consistent
17   with the memorandum that had been promulgated to all
18   of DOCCS' employees.  So there definitely was
19   discussion of a directive.  I think where settlement
20   discussions broke apart was where -- when plaintiffs
21   were insisting that there would need to be some
22   outside monitoring of the implementation of that
23   directive, which defendants felt was completely
24   unnecessary, given that the practice had ceased and
25   DOCCS was agreeing to issue a directive that would

PROCEEDINGS

1    further, you know, implement that process that was

2    no longer going on.  So I -- so your recollection is

3    incorrect about there not being the offer of a

4    directive.

5             THE COURT:  Well, looks like we have made

6    some progress.

7             MR. SANSOLO:  That was definitely

8    discussed, but, you know...

9             THE COURT:  Then we have just made some

10   progress.  I really encourage you folks to -- with

11   the help of Judge Krause or not, go back to the

12   table on this part, at least, because it seems like

13   the -- either through miscommunication or

14   misunderstanding, you're not very far apart at all,

15   and it would be good for everybody if you could at

16   least resolve that part.

17            But in the meantime, the other

18   administrative issue is I have this motion pending.

19   And what I would like to do -- and this will not

20   prejudice anybody -- is, once you get me your new

21   schedule, I'm going to deny the motion without

22   prejudice to renewal.  The reason I'm going to do

23   that is to get it off my six-month list.  And the

24   same motion can be refiled on the schedule you set.

25            So no more -- no changes or anything.  This

AMM TRANSCRIPTION - 631.334.1445

PROCEEDINGS

1    is purely administrative, just so I don't have to

2    look like I'm not doing my work.

3              MR. CONROY:  Conroy.

4              Can I ask a question, Your Honor?

5              THE COURT:  Yes.

6              MR. CONROY:  Are you referring to the

7    motion for class certification?

8              THE COURT:  Yes.

9              MR. CONROY:  So we actually -- we agreed to

10   bundle file that, so there has not been a motion on

11   the docket.

12             THE COURT:  Oh, all right then.  Never

13   mind.  Okay.  Never mind.

14             MR. CONROY:  Can I ask a related question,

15   I think?

16             THE COURT:  Yes.

17             MR. CONROY:  So in -- when we discuss the

18   schedule going forward, I think -- so our preference

19   would probably be to set a date for both defendants'

20   opposition to the motion for class certification, as

21   well as a separate Daubert motion.  Is that -- and,

22   I guess, that was, sort of, the topic of this

23   conference, so is that -- in other words, we don't

24   want to have to respond to both the motion for class

25   certification as well as all of the expert issues in

AMM TRANSCRIPTION - 631.334.1445

PROCEEDINGS

1    our -- you know, in our 40 pages of opposition.
2            THE COURT:  Well, you want to make a cross
3    motion under Daubert to preclude their experts?
4            MR. CONROY:  Yes.
5            THE COURT:  Well, then I guess you should
6    schedule it as a cross motion, and your brief is
7    getting longer, but hopefully not too much longer.
8    I don't need a lot of boilerplate on Daubert, for
9    example, but you can negotiate how many pages you're
10   going to want to add for the cross motion and how
11   many the other side will need for its opposition to
12   the cross motion.
13           MR. CONROY:  Thank you, Your Honor.
14           THE COURT:  All right.  Don't you want to
15   settle this just so you don't have to do these
16   motions?  Just settle this whole thing.
17           MR. SANSOLO:  Sansolo.
18           I would make one more plea, Your Honor, to
19   address the relevance of the expert reports before
20   we get into the -- you know, the detail of having to
21   get defending experts and deposing these experts.
22   Because I think the lack of relevance of the reports
23   is on the surface.  And I know the Court has said it
24   hasn't had an opportunity to review the reports yet,
25   but I think once the Court had that opportunity, it

PROCEEDINGS

1    may be able to shortcut, you know, this extensive

2    delay that could be the result of, now seeking, you

3    know, additional expert discovery on the class

4    certification issue.

5              THE COURT:  Well, I don't know.  It sounds

6    like at least the part of the expert reports that

7    addresses whether, you know, this is an

8    individualized problem or a systemic one is relevant

9    to class cert.  I don't need to decide whether the

10   services are inadequate, but I do need to decide,

11   you know, whether it's a common problem or a

12   sporadic one.  And like I said before, these -- it

13   sounds like these reports are going to be useful

14   down the road anyway.

15             Believe me, the last thing I want to do is,

16   you know, drag this out and read more gobs of briefs

17   and read, you know, single spaced, 20-something page

18   expert reports.  Maybe I'm even being optimistic.

19   But I don't think that the plaintiffs broke any

20   rules by what they did.  They broke some norms, but

21   it's always better to decide things on the merits,

22   and they have at least made enough of a showing at

23   this point that I think it's unlikely that I would

24   conclude that they are irrelevant, that they are

25   completely irrelevant.  Because one of the things

PROCEEDINGS

1    they have to show is that there should be a class

2    here because the problems that they're attacking are

3    systemic.  And at least some of the expert goes --

4    stuff goes to that, so -- which is not to say

5    that, you know, when you fully brief it, I might not

6    feel differently, and maybe your experts will

7    convince me, but I think this is the way we should

8    go.

9          So confer on a schedule for the motion and

10   the cross motion and get me something in a week.  I

11   don't want to rush you off, but I do have another

12   case waiting.

13         MR. SANSOLO:  Okay.  Thank you, Your Honor.

14         THE COURT:  All right.  Thank you, all.

15         MR. CONROY:  Thank you, Your Honor.

16         MR. SHORT:  Thank you, Judge.

17         THE COURT:  Goodbye.

18

19                        0o0

20

21

22

23

24

25

1

2                        C E R T I F I C A T E

3

4       I, Adrienne M. Mignano, certify that the

5    foregoing transcript of proceedings in the case of

6    M.G. v. Cuomo, Docket #19CV639, was prepared using

7    digital transcription software and is a true and

8    accurate record of the proceedings.

9

10

11    Signature  _____
                    *Adrienne M. Mignano*
12                ADRIENNE M. MIGNANO, RPR

13

14    Date:      March 6, 2023

15

16

17

18

19

20

21

22

23

24

25

                    AMM TRANSCRIPTION - 631.334.1445