PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS      NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

SUITES 3601 – 3606 & 3610
36/F, GLOUCESTER TOWER
THE LANDMARK
15 QUEEN'S ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

WRITER'S DIRECT DIAL NUMBER

(212) 373-3069

WRITER'S DIRECT FACSIMILE

(212) 492-0069

WRITER'S DIRECT E-MAIL ADDRESS

cparker@paulweiss.com

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

535 MISSION STREET, 24TH FLOOR
SAN FRANCISCO, CA 94105
TELEPHONE (628) 432-5100

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

December 6, 2023

By ECF

The Honorable Andrew E. Krause
United States Magistrate Judge
United States District Court
300 Quarropas Street
White Plains, NY 10601

Re:   *M.G. v. Cuomo*, 19-cv-0639 (CS) (AEK)

Dear Judge Krause:

Plaintiffs write in accordance with Your Honor's November 14, 2023 Order to submit a letter regarding Plaintiffs' Rule 30(b)(6) deposition notices and additional document demands. ECF No. 322.

### I.  Plaintiffs' Rule 30(b)(6) Deposition Notices

The parties have exchanged proposals and met and conferred regarding Plaintiffs' Rule 30(b)(6) topics. The parties agree as to 23 topics for OMH and 23 topics for DOCCS but have not reached agreement on 7 OMH and 11 DOCCS topics.

**OMH Topic Nos. 3, 5-7.** OMH will produce a witness to testify as to types of community-based mental health housing ("CBMHH") and supportive services and OMH policies and practices regarding the placement process, admissions, and eligibility criteria for such housing and services, but not as to OMH's "knowledge regarding compliance with these policies and practices." Testimony on this knowledge is needed to understand how OMH enforces its policies and procedures, and whether remedial action through new policies and practices will be effective in securing the relief Plaintiffs seek. At the December 4 meet and confer, OMH expressed concerns that this could open the witness to being charged with knowledge of each instance of noncompliance. Plaintiffs limited their request to "OMH systems in place that monitor compliance and reduce noncompliance, and how OMH responds, in general to instances of noncompliance." Plaintiffs have not received a response from Defendants as of the filing of this letter.

**OMH Topic No. 24.** Plaintiffs seek testimony concerning the post-release care, custody, and treatment of the putative Discharge Class representatives following their release. Defendants assert that this information is not in OMH's custody and control. But OMH maintains agency records and information concerning treatment in state psychiatric centers, prisons, and the other facilities in which the putative Discharge Class representatives were served following release. OMH is involved in the coordination of post-release supervision. Defendants suggest that Plaintiffs should narrow this topic to specific questions about post-release care and treatment for specific named plaintiffs, but this narrowing is impractical, and this topic is sufficiently narrowed.

**OMH Topic No. 27 and DOCCS Topic No. 30.** Plaintiffs seek testimony regarding agency responses to complaints and reports from putative class members regarding prolonged confinement. Both agencies assert that the requested information is not within agency custody or control. This is false. Both agencies maintain administrative processes through which incarcerated people can complain—and indeed have complained—about prolonged confinement. Plaintiffs understand that several incarcerated people utilized both the OMH and DOCCS processes to complain about prolonged confinement during the relevant period. Similarly, there was press coverage of Defendants' prolonged confinement practices for the putative classes, and only OMH has knowledge of its response, if any, to those reports. Defendants' responses to these complaints and reports bear directly on both the liability and remedial phases of this case. Defendants also assert that responsive testimony may implicate attorney-client privilege. In this case, the proper course is to object to questioning rather than lodge a blanket objection to the topics.

**OMH Topic No. 30.** Plaintiffs seek testimony concerning OMH policies and practices related to risk management ("RM") and quality assurance ("QA") concerning putative class members. OMH's forensic services division performs RM and QA work, including identifying services gaps and insufficiencies for the putative classes. This testimony is crucial to understanding how this work informs OMH's planning for the needs of the putative classes. Defendants object wholesale and are unwilling to negotiate. Plaintiffs have offered to narrow the scope to the provision of CBMHH and supportive services, but cannot otherwise agree to narrow this topic.

**DOCCS Topic No. 9.** DOCCS has not agreed to produce a witness on whether the schedules of people in prison held past parole or conditional release dates are distinguishable from the schedules of individuals living in the community. Defendants represent that it is obvious that the schedules for these incarcerated individuals differ from the schedules of individuals living in the community and that the point is undisputed. Plaintiffs agree that no further direction is needed but reserve the right to reopen discovery on this issue should Defendants dispute the issue in the future.

**DOCCS Topic No. 20.** Plaintiffs requested testimony regarding demographic data for individuals who reside in Community-Based Residential Programs ("CBRPs"). This is relevant to Plaintiffs' claim that CBRPs are segregated settings. Defendants represent that DOCCS does not track this demographic data. Plaintiffs agree that Defendants do not need to produce a witness on this topic, but reserve their right to reopen discovery on the topic if Defendants' representation is later revealed to be inaccurate.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

3

**DOCCS Topic Nos. 23-24.** Plaintiffs seek testimony concerning DOCCS policies and training on the classification, program assignment, risk assessment, and pre-release processes for putative class members. Defendants seek to narrow these topics to only pre-release process-related issues. But the other noticed issues bear directly on the treatment and service needs of putative class members, both generally and at the time of release. For example, Plaintiffs seek testimony on how individuals were assessed for, and whether they were offered, program-based mental health treatment while in custody, as well as on DOCCS training protocols for assessing the risk of decompensation, services needs, and mental health management needs for putative class members in custody. This all goes to the question of risk because it shows Defendants' knowledge of the quantum of mental health services putative class members require to prevent decompensation, and the process by which Defendants make this assessment.

**DOCCS Topic No. 25.** Plaintiffs seek testimony concerning the mental health services provided to each Named Plaintiff during their incarceration. Beyond routine proportionality, burden, and particularity objections, Defendants object on the basis that OMH produced clinical records responsive to this topic. However, testimony about the prison conditions imposed upon the Named Plaintiffs—including solitary confinement sanctions and other programmatic restrictions—is available only through DOCCS and bears directly on the Named Plaintiffs' receipt of in-custody mental health services. Similarly, while clinical records might indicate that an individual was placed in solitary confinement or experienced similarly restrictive conditions of confinement, they do not identify the extent to which such conditions impacted the receipt of mental health or other important services that are relevant to the claims in this lawsuit.

**DOCCS Topic Nos. 28-29.** Plaintiffs seek testimony regarding the hospitalization, detention, and/or incarceration of the Named Plaintiffs following their relevant release from DOCCS custody. DOCCS seeks to narrow this topic to information reflected in community supervision parolee chronological reports. Plaintiffs cannot agree to this artificial limitation, as relevant information is often maintained outside of these reports, including (but not limited to) DOCCS legal date computation reports.

**DOCCS Topic Nos. 32-33.** Plaintiffs seek testimony about the DOCCS budget from 2019 to the present, and policies and practices related to the development and implementation of that budget. Defendants assert that only the OMH budget is relevant. However, the DOCCS budget is relevant to the merits of Plaintiffs' claim and Defendants' fundamental alteration defense. For example, DOCCS devotes significant resources to the parole housing programs that Plaintiffs maintain constitute segregated settings under *Olmstead*. Plaintiffs offered to limit this topic to the DOCCS budget as it relates to people with SMI while in DOCCS custody and upon their release, including CBRPs. DOCCS maintains its blanket objection.

**DOCCS Topic No. 34.** Plaintiffs seek testimony concerning DOCCS policies and practices related to data collection and analysis for the population of people with SMI in DOCCS custody or on community supervision. Defendants assert that while OMH policies and practices are relevant, DOCCS' are not. However, Plaintiffs understand that DOCCS has the capability to, and routinely does, collect data about the relevant populations, which is relevant to how

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

4

Defendants plan for the needs of the putative class upon release from custody. Defendants draw no principled distinction between DOCCS and OMH data. In fact, this case arose out of a conflict between DOCCS and OMH policies. Understanding the policies of both agencies is crucial.

## II. Plaintiffs' Additional Document Demands

Plaintiffs served additional document demands for the records of a statistically significant sample of putative Discharge Class members to help Plaintiffs' experts demonstrate statewide, class-wide harm resulting from the challenged policies and practices. Defendants object to these requests wholesale, *see* Ex. A, and have refuse to negotiate as to even the scope of Plaintiffs' requests. But Defendants fail to articulate a valid reason why these records are not relevant or proportional to the needs of the case. Instead, Defendants rest almost entirely on the timing of Plaintiffs' requests. While these requests were timely, Plaintiffs recognize that the initial schedule set by the parties was too aggressive—leaving little time after class certification papers for additional discovery and merits work. Plaintiffs are entitled to these documents, which are relevant and proportional to the needs of their claims, and remain willing to discuss the appropriate scope of these requests and an appropriate schedule for the case to proceed. But any resolution should not hinder Plaintiffs' ability to demonstrate the risks they faced through the Defendants' systemic failure to provide sufficient CBMHH and supportive services.

Defendants' provide identical responses to all of Plaintiffs' requests, including that they are irrelevant to any claim or defense. Defendants' logic is curious. They argue that if a class is certified, Plaintiffs are not entitled to the requested discovery "because the point of the class action vehicle is that the Named Plaintiffs' claims are typical of the class and stand in for all class members"; if a class is not certified, then the litigation is limited to "only the specific circumstances and claims of the Named Plaintiffs themselves." Ex. A at 4. This is incorrect. As the Supreme Court made clear in *Tyson Goods, Inc.* v. *Bouaphaeko*, a representative sample is "a permissible method of proving classwide liability" if "each class member could have relied on that sample to establish liability if he or she had brought an individual action." 577 U.S. 442, 454–55 (2016). Here, expert analysis of a statistically significant sample can help establish each of the Named Plaintiffs' individual claims by showing that systematic deprivation of community-based mental health housing and supportive services places individuals with SMI at risk of institutionalization, including the individual Named Plaintiffs.

Plaintiffs typically employ such methods to establish liability in similar situations, including in the *Olmstead* context. *See, e.g.*, *M.J.* v. *District of Columbia*, No. 18-cv-1901 (D.C.), ECF No. 119 (using statistical sample to show class-wide harm for children with mental health disabilities who were denied intensive community-based services); *Kenneth R.* v. *Hassan*, No. 12-cv-53 (D.N.H.) (employing statistical sample of hospitalized patients to show harms from system-wide policies affecting a class of persons with disabilities).

Moreover, Plaintiffs are unsure whether Defendants recognize the logical conclusion of their position. Under their reasoning, once a class has been certified, class-wide liability can be demonstrated by proving individual Named Plaintiffs' claims alone. Plaintiffs question whether Defendants, let alone the Court, would in fact be willing to accept proof regarding the Named

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

5

Plaintiffs as sufficient to find liability for the entire class. Regardless, setting aside the issue of liability, Defendants' position ignores that these records also demonstrate magnitude of harm, and would enable the court to craft a remedial order to rectify those systemic harms.

Defendants' objection that this method of proof is not feasible or superior because it requires "mini-trials" is off base. Ex. A at 4 (citing *Dunnigan* v. *Metro. Life Ins. Co.*, 214 F.R.D. 125, 142 (S.D.N.Y. 2003)). As an initial matter, Rule 23's superiority prong is only required for 23(b)(3) classes seeking *damages*, not injunctive relief. Regardless, Plaintiffs do not seek "mini-trials" for all class members. Instead, Plaintiffs have attempted to reasonably narrow their request from hundreds of putative class members to a statistically significant sample of 143 individuals. Plaintiffs' proposed path forward is indeed feasible.

Perhaps given the futility of their relevance arguments, Defendants primarily relied on their timing and burden objections at the parties' meet and confer. However, these requests were timely. As the Court has recognized, the global schedule did not preclude Plaintiffs from serving the Third Request for Production. To the contrary, Plaintiffs anticipated that the schedule—like any discovery schedule—permitted requests to be served consistent with the November 22, 2023 deadline for service of requests for production. During the course of preparing their class certification papers, Plaintiffs determined that studies of a representative sample of the discharge class will be highly beneficial to their experts' work, which will help the Court evaluate the merits of Plaintiffs' claims. Accordingly, the timing of Plaintiffs' requests is completely appropriate.

Obtaining records of members released within the past two years also facilitates Plaintiffs' experts' ability to conduct interviews as part of their studies. Had Plaintiffs used an older census document to develop a sample of records sought in their RFP, Plaintiffs would be reducing their chances of being able to find and interview class members. Further, given Defendants' prior, repeated objections to producing absent putative class member information prior to class certification briefing, Plaintiffs believed class certification briefing would facilitate the request.

As we previously stated, the discovery schedule initially proposed for this case was overly ambitious. The parties underestimated the time and resources needed for simultaneously litigating class certification and the merits. As the Court has recognized, discovery in a class action of this nature is typically an iterative process. In October 2022, Plaintiffs were focused on class discovery, preparing a class certification motion, and defending depositions of named plaintiffs, rather than proving their case on the merits. Moreover, as is often the case during the iterative discovery process, Plaintiffs did not yet know exactly what would be relevant to proving their claims and did not want to outline additional discovery that might have proven unnecessary while negotiating the schedule.

Finally, while Defendants were unwilling to negotiate on the scope of Plaintiffs' requests at the parties' meet and confer, Plaintiffs are continuing to develop creative solutions that would further reduce the burden on Defendants while ensuring that Plaintiffs' experts are able to produce meaningful reports that will assist the Court in determining issues regarding classwide liability and the scope of the appropriate remedial actions. Plaintiffs hope to send this proposal to Defendants ahead of the December 15 conference.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

6

Respectfully submitted,

*/s/ Crystal L. Parker*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Crystal L. Parker (cparker@paulweiss.com)
Walter Ricciardi (wricciardi@paulweiss.com)
Emily Vance (evance@paulweiss.com)
Chantalle Hanna (channa@paulweiss.com)
Samuel Margolis (smargolis@paulweiss.com)
Brian Erickson (berickson@paulweiss.com)
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

DISABILITY RIGHTS NEW YORK
Elizabeth Woods (elizabeth.woods@drny.org)
Sabina Khan (sabina.khan@drny.org)
279 Troy Road, Ste 9
PMB 236
Rensselaer, NY 12144
(518) 432-7861

THE LEGAL AID SOCIETY
Elena Landriscina (elandriscina@legal-aid.org)
Stefen R. Short (sshort@legal-aid.org)
Robert M. Quackenbush (rquackenbush@legal-aid.org)
Sophia A. Gebreselassie (sgebreselassie@legal-aid.org)
199 Water Street, 6th Floor
New York, New York 10038
(212) 577-3530

*Attorneys for Plaintiffs*