STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF STATE COUNSEL
LITIGATION BUREAU

December 12, 2023

**By ECF**
Honorable Andrew E. Krause
United States Magistrate Judge
United States District Court
300 Quarropas Street
White Plains, NY 10601

> Re: *M.G. v. Cuomo*, 19-cv-0639 (CS) (AEK)
> **Defendants' Response Letter on Discovery Disputes**

Dear Judge Krause:

Defendants write in response to Plaintiffs' letter dated December 6, 2023.

**1. Requests for Production:** The Court should deny Plaintiffs' request to compel production of the documents sought in their October 17, 2023 demands for four independent reasons.

*First*, Plaintiffs' exceedingly overbroad demands wholly fail to "account for the fact that this case has been pending for nearly five years," that "substantial time" has been "devoted to discovery already," and that a massive "volume of discovery [] has taken place so far." Order, ECF No. 319 at 2. Plaintiffs also continue to fail to adequately explain their decision to withhold their intent to serve these demands during the 2021-2022 global discovery negotiations.

As the Court knows, once mediation ended in late 2021, the parties spent several months negotiating the scope of what all parties expressly understood to be "one global plan for discovery on all claims moving forward," including Plaintiffs' 99 broad requests for production. ECF No. 192 (Defendants' letter); ECF No. 193 (same language in Plaintiffs' letter). The Court also stated its understanding that the parties were negotiating "a global plan for discovery on all claims . . . ." ECF No. 196 (transcript of Dec. 9, 2021 conference at 5:21). *See also id.* at 11:14-17 (Plaintiffs' counsel: "we look forward to the opportunity to [meet and confer] and to come up with one global discovery plan and begin moving discovery forward on all aspects of this case").

On April 6, 2022, the parties submitted a joint letter notifying the Court that they had reached substantial agreement on a list of 78 ESI custodians whose communications Defendants agreed to search. ECF No. 211. The parties agreed that "the proposed custodian list represents a reasonable upper limit on the number of ESI custodians for all outstanding discovery in this matter." *Id.* at 1. This agreement was subject to a narrow caveat that "information could come to light during discovery that may necessarily lead to a *targeted* additional search across some small handful of additional custodians on a specific topic. Should that circumstance occur, the parties agree to revisit the matter in good faith at that time." *Id.* at 2 (emphasis added).

At an April 8, 2022 conference, the Court and the parties discussed the status of the ongoing global search term negotiations. During this discussion, the Court paused to assess "the overall picture, taking a few steps back[.]" ECF No. 217 at 6:4-5. Your Honor asked:

> [A]m I correct that this process, this group of custodians and search terms that you are working through together, will address all of the outstanding discovery requests? . . . I just want to confirm that this process is encompassing all outstanding discovery demands. I recognize that **things may change a bit on the margins** as you start to receive documents and as things come back to you. That's always the case. **But I just want make sure that this is comprehensive so that we are not going to find ourselves in a position nine months down the road where we have got to go ahead and do a whole separate round of negotiations for whatever requests you are holding in reserve.**

*Id.* at 6:5-23 (emphasis added). Plaintiffs' counsel responded in the affirmative: "Your Honor, it is our intention that this round of discovery should cover the requests, all of the requests that have been made." *Id.* at 6:24-7:1. Unfortunately, the Court's concern was well-founded. Despite Plaintiffs' commitment in open court, they did in fact hold in reserve expansive additional discovery demands, which they served only after Defendants undertook a months-long review and production of millions of pages of documents pursuant to the global discovery agreement. As a result, the very dispute the Court sought to cut off has occurred—not nine months, but twenty months after the April 2022 conference.

Despite multiple rounds of discovery letters and a meet and confer on this issue, Plaintiffs have never provided a reasonable explanation for their failure to disclose their intent to serve these demands during the global discovery negotiations, when such a disclosure would have been highly material to Defendants' position during negotiations and the Court's assessment of the total burden and proportionality of Plaintiffs' demands. At the most recent meet and confer on this issue, Plaintiffs stated that they now view the 2021-2022 negotiations as having been "focused" on *class certification discovery*, which is simply not accurate. *See, e.g.*, ECF No. 229 (order endorsing Plaintiffs' own proposed global tiered discovery schedule, which expressly addressed "prioritized" class certification discovery *and* post-class certification merits discovery). Plaintiffs' other excuses also fall flat: they appear to claim that they failed to disclose this discovery during the negotiations because *they* were overburdened and focused on other issues, Pls.' Letter at 5, an absurd position given the number of attorneys representing Plaintiffs and the discovery burden they imposed on the much smaller defense team at that same time. Plaintiffs also admit that <u>they had these demands in mind at the time but intentionally declined to disclose them</u>, for the nonsensical reason that they "did not want to outline additional discovery that might have proven unnecessary while negotiating the schedule." *Id.*

Defendants understand that, as the Court has stated, "the negotiated global schedule for completion of discovery certainly does not preclude Plaintiffs from seeking further discovery" and that "discovery is an iterative process and that supplemental document demands are not uncommon[.]" ECF No. 319 at 1-2. But as the Court also explained to the parties at the April 8, 2022 conference, there is a critical distinction at play. Of course it is expected that routine supplemental discovery requests will arise as the parties "start to receive documents and as things come back to you," which affect the responding party's burden "a bit on the margins[.]" ECF No. 217 at 6:5-23.

That is why Defendants have not objected to routine, iterative discovery demands served by Plaintiffs over the last several months.[1] By contrast, it is not permissible for Plaintiffs to "hold[] in reserve," ECF No. 217 at 6:23, a massive set of expansive, wide-ranging discovery demands that radically increase the total discovery burden on Defendants, and that could and should have been disclosed during the 2021-2022 global discovery negotiations.

*Second*, in addition to being untimely, the demands are stunningly overbroad and would create an untenable burden on Defendants. As Defendants pointed out in a prior discovery letter, *see* ECF No. 320, Plaintiffs demand that OMH and DOCCS hunt for 106 separate categories of documents, each one of which applies to a list of 143 previously incarcerated individuals—which amounts to **15,158** distinct new document demands.[2] It is not remotely clear how this task could reasonably be accomplished, particularly given that each one of the list of 143 individuals could have been incarcerated for many years, during which time they could have been assigned to various DOCCS facilities. They could have been incarcerated on more than one occasion. They could also have received treatment at OMH facilities at other times, either before or after their most recent incarceration. In order to assess whether documents exist as to each of the 106 categories for each of the 143 individuals, Defendants would have to search electronic records and physical hard copy files located in many locations, including agency central offices in Albany, CNYPC, DOCCS and OMH facilities throughout the State, and off-site archives. *See* **Exhibit 1** (OMH Declaration); **Exhibit 2** (DOCCS Declaration). Additionally, Plaintiffs demand "all communications" related to a variety of topics regarding each of the 143 individuals, which would necessitate re-opening negotiations about ESI custodians and search terms, in clear violation of the parties' agreement memorialized at ECF No. 211. This proposed collection, review, and production would likely *surpass* Defendants' already massive 2022-2023 production in terms of complexity, difficulty, and sheer volume.

*Third*, despite the massive investment of time and resources Plaintiffs demand, the relevance of the records sought to resolving the merits of this case is tenuous at best. The vast majority of Plaintiffs' request focuses on records regarding treatment and services received by the 143 individuals during their incarceration. But the key contested issue in this case is whether individuals receive mental health housing and services placements *in the community*, *following* their release from prison. For the most part, OMH and DOCCS do not directly provide those community services; rather, OMH sends applications to County or City Single Point of Access Committees, which work with local providers to facilitate housing and care management placements. *See* ECF No. 291 at 4-7 (background in Defendants' class certification opposition brief). If Plaintiffs' experts were genuinely interested in assessing the scope of housing and services received by each of these 143 individuals in the community

---

[1] For example, Defendants recently produced without objection multiple documents Plaintiffs requested arising from the November 14, 2023 deposition of OMH witness Wendy Vogel.

[2] For purposes of framing this discussion, it is worth being clear about how Plaintiffs' list of 143 individuals was created. It is not a random sample of previously incarcerated individuals. Rather, Plaintiffs started with a spreadsheet produced by Defendants (D-01685103) that lists 741 incarcerated individuals with SMI who were released in 2022 or 2023. The spreadsheet has a column for housing location upon release for each individual. Plaintiffs selected individuals released to certain housing types, while excluding individuals in other housing. *See* **Exhibit 3** (printout from spreadsheet D-01685103, with identifying information redacted and non-relevant columns hidden, sorted by housing location column and highlighting rows corresponding to the 143 individuals selected by Plaintiffs).

Page 4

following their release from prison, Plaintiffs would need to subpoena treatment records from the relevant community providers for each individual.[3]

Moreover, whether or not a class is ultimately certified in this case, Plaintiffs are not entitled to the production of over 100 separate categories of records and communications regarding 143 non-Named Plaintiff formerly incarcerated individuals. The fact that Plaintiffs now believe they require these voluminous, individual-by-individual records to prevail on the merits is a concession that Defendants were correct when they argued, in opposition to class certification, that this case does not present a common contention capable of aggregate resolution, but rather requires individualized close review of each individual's circumstances, needs, and preferences. A class action that purportedly requires such extensive mining of individual class members' documents has lost any semblance of the judicial economy this mode of litigation is intended to offer. None of the authorities Plaintiffs cite support their contention that the discovery they seek is relevant to the merits determination here, or even address the issue. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016), expressly declined to "establish general rules governing the use of statistical evidence . . . in all class-action cases," instead holding only that that "[w]hether and when statistical evidence can be used to establish classwide liability will depend on the purpose for which the evidence is being introduced and on the elements of the underlying cause of action." *Id.* at 455. Meanwhile, Plaintiffs' citation to a docket entry in *M.J. v. District of Columbia*, No. 18-cv-1901 (D.D.C.), cites a filing by *the plaintiffs* in that case, not a court order. The plaintiffs' expert studies in *M.J.* and *Kenneth R. ex rel. Tri-Cnty. CAP, Inc./GS v. Hassan*, No. 12-cv-53 (D.N.H.), were submitted at the Rule 23 class certification stage in support of their commonality argument, not at the post-class certification merits stage. And those studies did not look anything like the discovery Plaintiffs here demand. *See M.J.* docket, ECF No. 119 at 4 (studying truly random sample of 32 representative at risk youths to determine what percentage received services); *Kenneth R.* docket, ECF No. 73-13 at ¶ 15 & 73-15 at ¶ 13 (reviewing 41 randomly selected institutionalized individuals who had given their consent to participate in the review).

*Finally*, bearing in mind the Court's encouragement to compromise, Defendants are willing to agree to a reasonable alternative to Plaintiffs' demands that would provide the essential information Plaintiffs seek, while also taking into account "the volume of discovery that has taken place so far." Order, ECF No. 319 at 2. Specifically, Defendants are willing to collect and produce <u>OMH Discharge Summaries and DOCCS community supervision parolee chrono reports for up to thirty randomly selected individuals with SMI listed on spreadsheet D-01685103</u>. The discharge summaries, which are prepared by OMH staff upon an individual's release from prison, show the individual's proposed community residence, community mental health referrals, case management plans, diagnosis, medications, treatment history, course of treatment, and discharge recommendations. The DOCCS chrono reports track updates about their subsequent activities in the community.[4] Unlike Plaintiffs'

---

[3] The course of discovery related to the three Discharge Class Named Plaintiffs (WP, DH, and SD) is instructive. When the case began, Defendants did not have custody of most records related to those individuals' post-release community housing and treatment. Plaintiffs did not collect or produce those records, so Defendants spent many months requesting community treatment records from third party providers and then producing the records to Plaintiffs.

[4] Examples of OMH Discharge Summaries for the Named Plaintiffs can be found as sealed attachments to Defendants' class certification opposition at ECF Nos. 296-3, 296-13, and 296-23. An example of excerpts from a DOCCS chrono report can be found under seal at ECF No. 296-17.

Page 5

proposal, this collection would be targeted at a specific set of documents that can be identified and collected in a reasonable amount of time.

**2. Rule 30(b)(6) Topics:** Defendants' remaining objections to Plaintiffs' Rule 30(b)(6) topics must be assessed in light of the many compromises Defendants have already made toward Plaintiffs' position. Plaintiffs first served a list of 64 combined topics covering 14 pages of text, which was excessive as a whole, even before reaching the specific details of any individual topic. During subsequent negotiations, Defendants nevertheless agreed to language on the vast majority of the noticed topics. Plaintiffs withdrew two topics. The parties are now in agreement on 27 OMH topics and 23 DOCCS topics. *See* **Exhibit 4** (subsequent to Plaintiffs' letter, the parties reached additional agreement on OMH topics 3, 5, 6, and 7). Extensive time and effort will be required for OMH and DOCCS to prepare witnesses to testify on the agreed-to topics, even before getting to the remaining disputed topics. Defendants' position on the remaining disputed topics is as follows:

OMH Topic 24: Plaintiffs' demand that OMH prepare a witness to testify about any OMH involvement in post-release care or treatment of the Discharge Class Named Plaintiffs is not "describe[d] . . . with 'painstaking specificity' as to subject areas that are relevant to the dispute at issue." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, No. 19-CV-226 (ILG) (CLP), 2022 WL 2702378, at *2 (E.D.N.Y. Feb. 11, 2022). *See also Government Emps. Ins. Co. v. Lenex Servs., Inc.*, No. 16 CV 6030, 2018 WL 1368024, at *3 (E.D.N.Y. Mar. 16, 2018) ("all matters" or "all facts" too vague).

OMH Topic 27 and DOCCS Topic 30: Plaintiffs' demand that OMH and DOCCS prepare witnesses to testify about "[a]ll facts and circumstances" regarding vaguely defined "reports and/or complaints" is not described with painstaking specificity. And communications regarding the specific complaints at issue in this litigation are protected by attorney-client privilege and work product.

OMH Topic 30: This case is about whether Defendants are legally obligated to reallocate State resources in order to guarantee on-demand permanent housing and services placements for individuals with SMI who have committed felonies upon their release from prison, with no wait time. The topic of OMH policies regarding assessing the quality of OMH services is not relevant and is overbroad.

DOCCS Topics 23 and 24: DOCCS is willing to designate a witness to testify about DOCCS policies, procedures and training related to pre-release planning for incarcerated individuals with Serious Mental Illness and RTF status, but Plaintiffs' long lists of other policies, procedures, and training topics are largely irrelevant and are overly broad.

DOCCS Topic 25: Plaintiffs' demand that DOCCS prepare a witness to testify about all facts regarding "mental health treatment, services, and programming" to all of the Named Plaintiffs during their entire incarceration is not described with "painstaking specificity" and is largely irrelevant.

DOCCS Topics 28 and 29: The topics should be limited to information reflected in the Named Plaintiffs' DOCCS community supervision parolee chrono reports. That limitation would provide a reasonable basis for preparing the designated witness. The witness cannot reasonably be prepared to speak to every fact and circumstance regarding the Plaintiffs' hospitalizations, detentions, incarcerations, housing, and services outside of what is recorded in DOCCS parolee reports.

DOCCS Topics 32 - 34: The relevant State budget and data collection program is covered by the OMH witness. DOCCS budget and data collection are not relevant to the disputed issues in this case.

               Respectfully submitted,

               <u>/s/ Owen T. Conroy</u>
               Adam Sansolo
               Caroline Wallitt
               Gee Won Cha
               Owen T. Conroy

               Assistant Attorneys General
               *Counsel for Defendants*

cc:  All counsel of record (by ECF)