# Exhibit B

*MG v. Cuomo*, 19-cv-639 (SDNY)
**Defendants' Jan. 10, 2024 Response on Discovery Disputes**

I. <u>**Rule 30(b)(6) Topics**</u>

| Topic No. | Proposed Final Topic Language | Notes on Defendants' Response |
|---|---|---|
| OMH 24 | N/A | Confirming withdrawal by Plaintiffs. |
| OMH 27 | How OMH tracks, processes, and responds to grievances from incarcerated individuals and/or complaints made on behalf of incarcerated individuals by their advocates specifically in regard to Defendants' practice of prolonged confinement. To the extent Plaintiffs intend to question the representatives regarding specific administrative complaints, Plaintiffs will endeavor to provide notice of those complaints **at least 7 days** ahead of the deposition. **The witness will not be expected to prepare to answer questions about specific administrative complaints as to which notice has not been provided at least 7 days in advance of the deposition.** | In agreement, with proposed addition regarding amount of notice regarding specific complaints. |
| OMH 30 | N/A | Confirming withdrawal by Plaintiffs. |
| DOCCS 23 | Your policies, procedures, guidelines, manuals, or other writings, including any directives, policy and procedure manual provisions, and institutional orders, that were applicable between 2019 and the present, setting forth:<br><br>c. Risk assessment of Persons with Serious Mental Illness at the time of discharge;<br><br>d. Recommendations related to conditions and special conditions of release for Persons with Serious Mental Illness;<br><br>e. Discharge planning for people in DOCCS custody, including the documents and information available to You and Your | In agreement. |

1

| | employees while conducting discharge planning;<br><br>f. and g. DOCCS's coordination with OMH for Persons with Serious Mental Illness discharging to community supervision, including waivers of release to community supervision | |
|---|---|---|
| DOCCS 24 | Your training of Your employees, between 2019 and the present, on:<br><br>c.    Risk assessment of Persons with Serious Mental Illness at the time of discharge;<br><br>d.    Recommendations related to conditions and special conditions of release for Persons with Serious Mental Illness;<br><br>e.    Discharge planning for people in DOCCS custody, including the documents and information available to You and Your employees while conducting discharge planning;<br><br>f. and g. DOCCS's coordination with OMH for Persons with Serious Mental Illness discharging to community supervision, including waivers of release to community supervision | In agreement. |
| DOCCS 25 | Whether, under DOCCS's policies and procedures, the imposition of certain custodial statuses or disciplinary restrictions (such as segregated confinement, administrative segregation, keeplock) may reduce access to mental health treatment, services, and programming. | In agreement. |
| DOCCS 28 | Information in DOCCS' control and custody about hospitalization, detention, and/or incarceration of Named Plaintiffs S.D., W.P, and D.H. following their release from | In agreement. |

2

| | | |
|---|---|---|
| | DOCCS custody, to the extent such information is reflected in their DOCCS community supervision parolee chrono reports. | |
| DOCCS 29 | Information in DOCCS' control and custody about community-based mental health housing and supportive services provided to Named Plaintiffs S.D., W.P, and D.H. following their release from DOCCS custody, to the extent such information is reflected in their DOCCS community supervision parolee chrono reports. | In agreement. |
| DOCCS 30 | How DOCCS tracks, processes, and responds to grievances from incarcerated individuals and/or complaints made on behalf of incarcerated individuals by their advocates specifically in regard to Defendants' practice of prolonged confinement. To the extent Plaintiffs intend to question the representatives regarding specific administrative complaints, Plaintiffs will endeavor to provide notice of those complaints **at least 7 days** ahead of the deposition. **The witness will not be expected to prepare to answer questions about specific administrative complaints as to which notice has not been provided at least 7 days in advance of the deposition.** | In agreement, with proposed addition regarding amount of notice regarding specific complaints. |
| DOCCS 32 & 33 | How the CBRP budget is determined, how much money is allocated for CBRPs, and how much funding for CBRPs has been used, for the time period from January 2022 to the present. | DOCCS can agree to the topic to the extent it asks about the CBRP budget.<br><br>As to "the DOCCS budget as it relates to Persons with Serious Mental Illness upon their release from DOCCS custody" – as discussed at the court conference, there is no way to reasonably segregate "SMI" budget items from the broader DOCCS budget, as many DOCCS programs (including CBRPs) are not specifically categorized as programs for persons |

3

|  |  | with SMI, but nevertheless provide services to individuals with SMI. |
|---|---|---|
| DOCCS 34 | DOCCS's procedures for collecting and analyzing data on Persons with Serious Mental Illness who are releasing to the community. In addition, Plaintiffs seek to ask Defendants about how this information is shared with OMH for purposes of planning for the community-based treatment, service, and housing needs of the population. | In agreement. |

4

## II. Plaintiffs' Third Set of Requests for Production

Defendants cannot agree to Plaintiffs' revised proposal dated December 22, 2023, which remains overly burdensome and seeks documents that are not proportional or relevant to the issues in dispute. Defendants respond more specifically below to Plaintiffs' revised proposals.

Defendants can offer to expand the proposal set forth in Defendants' December 12, 2023 letter, as follows. Defendants are willing to collect and produce certain electronically available documents for up to **45** randomly selected individuals with SMI listed on spreadsheet D-01685103. This sample size would be larger than the samples presented by the plaintiffs in the cases that Plaintiffs' favorably cited in their December 6, 2023 letter. *See M.J. v. District of Columbia*, No. 18-cv-1901 (D.D.C.), ECF No. 119 at 4 (sample of 32 at risk youths); *Kenneth R. ex rel. Tri-Cnty. CAP, Inc./GS v. Hassan*, No. 12-cv-53 (D.N.H.), ECF No. 73-13 at ¶ 15 & 73-15 at ¶ 13 (sample of 41 institutionalized individuals who consented to participate).

For each of the 45 randomly selected individuals, Defendants are willing to collect and produce (1) OMH Discharge Summaries created upon the individual's release from prison; (2) DOCCS community supervision parolee chrono reports; and (3) DOCCS crime and sentence information.

Defendants cannot agree to collect these three categories of documents for 143 individuals, given the burden that would entail to agency staff. While these categories of documents are accessible electronically, collecting them for production is not as simple as pressing print from a database. In particular, the process for pulling DOCCS parolee chronos is uniquely labor-intensive, given the limitations of the electronic database in which those records are maintained. For each individual's parolee chrono, DOCCS staff will have to look up the individual, hard print the full chrono, and then manually scan the chrono back to PDF format.

Additionally, Defendants provide the following specific responses to Plaintiffs' revised proposals:

RFPs 100 and 101: Defendants can agree to add DOCCS crime and sentence information, limited to 45 randomly selected individuals. However, DOCCS risk assessments are not maintained electronically and it would be overly burdensome for DOCCS staff to attempt to collect them for this number of individuals, for all the reasons explained in Defendants' December 12, 2023 letter and the attached Hilton declaration.

RFP 102: This request has not been narrowed and remains overly burdensome and not proportional, for all the reasons explained in Defendants' December 12, 2023 letter and the attached Dill declaration.

RFPs 104 and 106: Plaintiffs' understanding that OMH can collect and produce the requested records from the Psychiatric Services and Clinical Knowledge Enhancement System ("PSYCKES") database is incorrect. Plaintiffs' understanding that OMH could do so with only minimal burden is also incorrect.

PSYCKES is a secure, HIPAA-compliant web-based platform for sharing Medicaid billing claims and encounter data, other state health administrative data, and other data and documents entered by providers and patients. It is not an internal OMH database. Confidential patient

information is entered into PSYCKES by third party providers and patients, as well as other State and local government units, among others.

OMH is not the owner of the Medicaid data found in PSYCKES. The New York State Department of Health ("DOH") is the single state agency responsible for the administration of the New York State Medicaid program in New York State. DOH grants OMH limited, highly regulated access to PSYCKES Medicaid data pursuant to data-sharing agreements. The terms of the data-sharing agreements dictate and significantly restrict OMH's ability to access and share PSYCKES data. Pursuant to these agreements, OMH may provide PSYCKES access, and share Medicaid data via PSYCKES, only to Medicaid providers, local government units, Managed Care Plans, and State health-related agencies. All other data requests for Medicaid data analysis or access to PSYCKES data must be individually reviewed and approved by DOH.

Even for those entities that have been granted authority to access PSYCKES, there are additional rules governing use and access. The CEO of the authorized entity must sign two legal agreements. The entity must establish a Security Manager, who authorizes individual users within their organization. These users must be HIPAA-trained and their role must be appropriate to access clinical data. Further, entities can only access the Clinical Summary for their client under select circumstances. For providers, the client must have an active consent for release of records to the entity, or the client must be currently experiencing a clinical emergency that justifies access. For Managed Care Organizations, the individual must be a current member or have been a member in the past year.

In short, OMH may not collect and produce third party data from PSYCKES. Even if OMH could do so, it is not technically feasible to simply print or save all of the many categories of PSYCKES data Plaintiffs have demanded, for each of the 143 individuals, with minimal burden. Significant analyst time would be required to develop and run the requested data report with all requested categories of information, for each of the 143 individuals.

Moreover, this request is also overbroad and irrelevant given Plaintiffs' statement at the December 15, 2023 conference that they are focused on seeking records related to whether there was a serious risk of institutionalization at the time of the individuals' release from prison. As Defendants explained, the OMH Discharge Summaries that Defendants have offered to produce are relevant to that issue. Wide-ranging data collections from the PSYCKES database are not.

RFP 107: The revised demand remains overly burdensome, as there is no OMH or DOCCS central repository of updated contact information for formerly incarcerated individuals with SMI. It is also unclear why Plaintiffs' counsel is entitled to such information for third party individuals who have not given their consent to be contacted. Nevertheless, OMH Discharge Summaries, which Defendants have offered to provide for up to 45 randomly selected individuals, will contain information about the community address upon discharge for each individual. Discharge Summaries may also include contact information for the individual's case manager in the community. And DOCCS parolee chrono reports may contain information for individuals under community supervision.