# Exhibit F

Page 1

1

2    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
3    -----------------------------------------X
     M.G., P.C., C.J., M.J., J.R., D.R., S.D.,
4    W.P., and D.H., individually and on behalf
     of all similarly situated,
5
                          PLAINTIFFS,
6
7        -against-    Case No.:
                      7:19-cv-0639 (CS) (AEK)
8
9    ANDREW CUOMO, in his official  capacity as
     the Governor of the State of New York, the
10   NEW YORK STATE OFFICE OF MENTAL HEALTH, ANN
     MARIE T. SULLIVAN, in her official capacity
11   as the Commissioner of the New York Staten
     Office of Mental Health, the NEW YORK STATE
12   DEPARTMENT OF CORRECTION AND COMMUNITY
     SUPERVISION, ANTHONY J. ANNUCCI, in his
13   official capacity as the Acting
     Commissioner of the New York State
14   Department of Corrections and Community
     Supervision, ANNE MARIE McGRATH, in her
15   official capacity as Deputy Commissioner of
     the New York State Department of
16   Corrections and Community Supervision,
17                        DEFENDANTS.
     -----------------------------------------X
18
19                       DATE: December 8, 2023
20                       TIME: 9:30 A.M.
21
22
23
24      (Caption continues on following page.)
25

Page 2

```
1
2        CONFIDENTIAL REALTIME DEPOSITION
3   of the Defendant, the NEW YORK STATE OFFICE
4   OF MENTAL HEALTH, by a Witness, DR. LI-WEN
5   LEE, taken by the Plaintiffs, pursuant to a
6   Subpoena and to the Federal Rules of Civil
7   Procedure, held at the Offices of New York
8   State Office of the Attorney General,
9   28 Liberty Street, 18th Floor, New York,
10  New York 10005, before Karyn Chiusano, a
11  Notary Public of the State of New York.
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
1
2   F E D E R A L   S T I P U L A T I O N S
3
4
5    IT IS HEREBY STIPULATED AND AGREED by and
6   between the counsel for the respective
7   parties herein that the sealing, filing and
8   certification of the within deposition be
9   waived; that the original of the deposition
10  may be signed and sworn to by the witness
11  before anyone authorized to administer an
12  oath, with the same effect as if signed
13  before a Judge of the Court; that an
14  unsigned copy of the deposition may be used
15  with the same force and effect as if signed
16  by the witness, 30 days after service of
17  the original & 1 copy of same upon counsel
18  for the witness.
19
20   IT IS FURTHER STIPULATED AND AGREED that
21  all objections except as to form, are
22  reserved to the time of trial.
23
24        *   *   *   *
25
```

Page 3

```
1
2   A P P E A R A N C E S:
3
4   PAUL WEISS RIFKIND WHARTON & GARRISON, LLP
       Attorneys for the Plaintiffs
5   M.G., P.C., C.J., M.J., J.R., D.R., S.D.,
       W.P., and D.H., individually and on
6   behalf of all similarly situated
       1285 6th Avenue
7   New York, New York 10019
       BY: EMILY VANCE, ESQ.
8   evance@paulweiss.com
9
    NEW YORK STATE OFFICE
10  OF THE ATTORNEY GENERAL
       LETITIA JAMES
11  Attorneys for the Defendants
       ANDREW CUOMO, in his official capacity
12  as the Governor of the State of New York,
       the New York State Office of Mental
13  Health, ANN MARIE T. SULLIVAN, in her
       official capacity as the Commissioner of
14  the New York Staten Office of Mental
       Health, the NEW YORK STATE DEPARTMENT OF
15  CORRECTION AND COMMUNITY SUPERVISION,
       ANTHONY J. ANNUCCI, in his official
16  capacity as the Acting Commissioner of
       the New York State Department of
17  Corrections and Community Supervision,
       ANNE MARIE McGRATH, in her official
18  capacity as Deputy Commissioner of the
       New York State Department of Corrections
19  and Community Supervision
       28 Liberty Street
20  New York, New York 10005
       BY: OWEN CONROY, ESQ.
21     CAROLINE WALLITT, ESQ.
       owen.conroy@ag.ny.gov
22  caroline.wallitt@ag.ny.gov
23
24        *   *   *
25
```

Page 5

```
1        CONFIDENTIAL ~ DR. LI-WEN LEE
2    L I - W E N    L E E, called as a witness,
3   having been first duly sworn by a Notary
4   Public of the State of New York, was
5   examined and testified as follows:
6   EXAMINATION BY
7   MS. VANCE:
8       Q.   Please state your name for the
9   record.
10      A.   Li-Wen Lee.
11      Q.   What is your address?
12      A.   44 Holland Avenue, Division of
13  Forensic Sciences, Albany, New York 12229.
14      Q.   Good morning, Dr. Lee.
15      A.   Good morning.
16      Q.   My name is Emily Vance and I
17  represent the Plaintiffs and the punitive
18  class numbers in this matter.
19           You were just sworn in by the
20  Court Reporter.
21           Do you understand that you are
22  under oath, and under the penalty of
23  perjury, answer questions today truthfully
24  just as if you were in court?
25      A.   Yes.
```

2 (Pages 2 - 5)

Page 86

```
 1         CONFIDENTIAL ~ DR. LI-WEN LEE
 2  needs and housing opportunities to try to,
 3  ideally, if possible, to have sort of
 4  settled before they release, but it's not
 5  -- sometimes it's at least the process has
 6  begun or they're on a wait list.
 7      Q.  Is there a specific set of
 8  steps or a series of steps that must be
 9  taken as part of the discharge planning
10  process?
11      A.  I am sure there is, but because
12  it hasn't been my role, I think I can
13  describe it.
14      Q.  And when did you start becoming
15  part of the discharge planning
16  communication?
17      A.  My -- my role when I was
18  involved was more around the final review
19  for making sure that the individuals that
20  didn't -- weren't being sent for civil
21  commitment or AOT, that they didn't meet
22  those criteria.
23         So, the earlier part is not
24  something that I was involved in either at
25  that point in time, but this part I stopped
```

Page 87

```
 1  at some point in the summer of 2020, I
 2  think.
 3      Q.  And what -- was there a reason
 4  for that change?
 5      A.  It's when my title changed and
 6  I was no longer the Medical Director.  And
 7  in May of 2020, a new medical director
 8  started and so transitioned it over to him
 9  over the next -- I don't know exactly when,
10  but sometime in the subsequent months after
11  he started.
12      Q.  Do you have any familiarity
13  with something called the specialized
14  review committee?
15      A.  Yes.
16      Q.  And what is that?
17      A.  That is the committee looking
18  at these individuals.  If -- so, there's a
19  lot of people re-entering the community on
20  any given day and then for most of them,
21  the treatment teams and the pre-release
22  coordinators are sorting it out on their
23  own and it doesn't reach a certain
24  threshold.
25
```

Page 88

```
 1         CONFIDENTIAL ~ DR. LI-WEN LEE
 2         And then for those that have a
 3  serious mental illness and a history of
 4  violence, they might get an extra review if
 5  they're not already being referred for
 6  civil commitment or for an AOT order.
 7         So, the SRC would take a look
 8  at those individuals and see if there is
 9  something that needed more -- a closer look
10  or another question that might be relevant
11  to one of those considerations and, you
12  know, if there is anything left among the
13  available options that needed to be
14  considered that wasn't already.
15      Q.  And were you a member of this
16  committee?
17      A.  Yes, as a Medical Director.
18      Q.  And so, I take it the
19  transition in 2020, one of the things would
20  be that you no longer were part of the
21  specialized review committee?
22      A.  Yes.
23      Q.  And who else was on the
24  committee when you were a member?
25      A.  So, the Director of pre-release
```

Page 89

```
 1         CONFIDENTIAL ~ DR. LI-WEN LEE
 2  would be on there as well as the -- the
 3  deputy chief -- I forget the actual title
 4  being assigned to that person.  And then
 5  there are pre-release staff who would
 6  review the cases and come to that committee
 7  and talk about those things.  They would do
 8  a lot of the initial review work with the
 9  pre-release coordinator at the correctional
10  facility or sometimes with the clinical
11  team, questions, how things were going,
12  what was going on, was stability an issue.
13  Those kinds of things.
14      Q.  And how frequently did the
15  committee meet when you were a part of it?
16      A.  Approximately, twice a week.
17      Q.  And what was -- can you tell us
18  about the process for reviewing a
19  particular case?  Just the typical process.
20      A.  The person who had -- who the
21  -- who the case had been assigned to would
22  present a summary of what they had found,
23  talking about their mental health history,
24  their legal history, what the juxtaposition
25  of that would be, if any, what they were
```

23 (Pages 86 - 89)