# DEFENDANTS' EXHIBIT 2

```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2
    ---------------------------------------x
 3  M.G., et al,

 4                          Plaintiff(s),

 5                                    19 CV 639 (CS)(AEK)
         -vs-
 6                                    DISCOVERY CONFERENCE

 7
    ANDREW CUOMO, in his official capacity
 8  as the Governor of the State of New York,
    et al.,
 9
                            Defendant(s).
10  ---------------------------------------x

11
         *Proceedings recorded via digital recording device*
12

13                                    United States Courthouse
                                      White Plains, New York
14
                                      Friday, December 15, 2023
15

16  Before:   THE HONORABLE ANDREW E. KRAUSE,
                                      Magistrate Judge
17

18  A P P E A R A N C E S:

19
    PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
20       Attorneys for Plaintiffs
    BY:  SAMUEL MARGOLIS
21       STEFEN R. SHORT

22
    NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL
23       Attorneys for Defendants
    BY:  OWEN T. CONROY
24       ADAM J. SANSOLO

25
```

TABITHA R. DENTE, RPR, RMR, CRR
(914) 390-4027

1              THE DEPUTY CLERK:  Good morning, all.  This is the
2    matter of M.G. v. Cuomo, docket no. 19 cv 639, the Honorable
3    Andrew Krause presiding.
4              Counsel, please note your appearances for the record,
5    beginning with Plaintiffs' Counsel.
6              MR. MARGOLIS:  Good morning, your Honor.  Sam Margolis
7    and my co-counsel Stefen Short, for Plaintiffs.
8              THE COURT:  Good morning.
9              MR. CONROY:  Good morning, your Honor.  Owen Conroy
10   and Adam Sansolo from the New York State Office of the Attorney
11   General for the Defendants.
12             THE COURT:  Good morning to you both as well.
13             All right, we're here for a discovery conference.  Our
14   main issues to discuss are the Plaintiffs' October 17th document
15   demands and the outstanding 30(b)(6) topics.
16             I've read the letters, including the update, I guess I
17   would call it, that was in the responsive letter from the
18   Defendants on the 30(b)(6) topics where a couple of the issues
19   that had been fronted in the Plaintiffs' letter had been
20   resolved even since the letters were submitted, so, again, I
21   appreciate always in this case how the parties have worked
22   together.
23             There's been a lot of work, and I know there have been
24   a lot of active disputes as well, which we'll talk about today
25   and we've talked about in the past, but that hasn't stopped --

1  your argument, Mr. Conroy, that you felt as though this group of
2  143 was cherry-picked based on certain criteria.  I have no way
3  of evaluating that.
4          First of all, am I interpreting your position
5  correctly on that, Mr. Conroy?
6          MR. CONROY:  I -- we, we certainly wanted to point it
7  out because of -- I think we didn't understand how the random
8  sample came about --
9          THE COURT:  Okay.
10         MR. CONROY:  -- and so, it -- from our view, looking
11 at the housing locations of the individuals, it did not appear,
12 did not appear to be a random sample of that --
13         THE COURT:  So let me rephrase my comment and say it
14 was less of an accusation and more of a question.
15         MR. CONROY:  Correct.
16         THE COURT:  Okay.  Good.  Again, that's productive for
17 future negotiation, and I think sharing a little bit more about
18 the methodology for selection may reassure the Defendants.
19         Again, I haven't tried to parse through that
20 spreadsheet and understand all the mechanics of it myself, and I
21 actually don't want to get into all of that here because it will
22 be much better for you to discuss that with each other and if
23 there's something to be resolved, for you to come back and
24 discuss it with me, but I take the point, which is that if
25 there's a potential class here and the class members were

1  released to a range of different facilities, then a
2  representative sample should account for the range of different
3  types of facilities and settings and housing arrangements that
4  people were released to as opposed to focusing on one particular
5  setting, one particular treatment modality, or one particular
6  type of release parameter.
7            Again, I -- you obviously are much better versed in
8  all those particulars than I am, so I'm not trying to dictate
9  anything here, I think there's, there's a lot of room for
10 discussion there, but that was something that I did find
11 interesting and, and thought provoking and something that should
12 be subject to further discussion.
13           I will say, you know, I didn't dig deeply into the
14 legal arguments because the parties only sort of brushed over
15 them a little bit in the papers, but I did read the one case
16 that both of you talked about, the Supreme Court case in *Tyson*
17 *Foods* and...heh, I am not convinced by reading that case that
18 this approach to discovery at this stage of the litigation is
19 automatically appropriate and warranted at all.
20           That case is a Fair Labor Standards Act case.  We see
21 a lot of Fair Labor Standards Act cases here in this District
22 and in this courthouse.  The types of proof required in a Fair
23 Labor Standards Act case are far, far different than what we
24 have in this case, far simpler.  Not to say there can't be
25 highly complex Fair Labor Standards Act litigation, sometimes

1  there is, but the kinds of issues that are potentially
2  susceptible to statistical sampling from a group of class
3  members and, and substituting those samples for individualized
4  proof in various different ways, it's much easier for me to
5  conceptualize how that would work in an FLSA case than it is in
6  a case like this.
7         And that's not to say that there aren't other
8  arguments to be made.  I recognize that in prior submissions,
9  there were references to *Olmstead* type cases where this type of
10 discovery had been authorized and used, I think, for proof
11 either at summary judgment or at trial, so there may be more to
12 be said on that.  I will just say, again, for purposes of today,
13 that I'm not entirely convinced that there is a valid basis for
14 this type of discovery at this procedural posture.
15        It may be that I can be convinced.  I won't say that
16 I've formed a definitive view that I am unconvinced, but for
17 now, I don't find myself sitting here thinking that it is a
18 rock-solid certainty that the Plaintiffs should be entitled to
19 this discovery at all.
20        However, I had the same exact thought that was
21 expressed in the Plaintiffs' letter about thirty seconds before
22 seeing it addressed in the letter as I was reading it through
23 myself, which it seems unfathomable to me that Defendants could
24 possibly be taking the position, and I'm sure you are not going
25 to take this position or concede the point today, that if a

1  of institutionalization because of the lack of housing and
2  supportive services.  If that is done on such a wide scale, we
3  think it is helpful to show that that is a class-wide harm.
4            THE COURT:  Okay.  I mean, I, I would be -- again, if,
5  if this issue cannot be worked out in terms of a compromise as
6  to what the appropriate scope of the discovery should be, I, I
7  am going to ask for additional briefing on this idea that you
8  can prove merits through this type of sampling approach, and,
9  you know, I understand that it's theoretically possible based on
10 that *Tyson Foods* case, but it -- the Supreme Court made quite
11 clear that it was not establishing a blanket rule one way or the
12 other about the appropriateness of this type of methodology in
13 class actions or otherwise.  In fact, the Court went out of its
14 way to reject demands to do that, I think, from at least one of
15 the parties, but I think various *amici* also were hoping the
16 Court would take that and do more with it and use it as a
17 jumping-off point for more bright-line rules saying that this
18 type of broad statistical sampling evidence was permissible or
19 was not permissible, and the Court refused to do that.
20           So, again, that leaves a lot of room for
21 interpretation by trial-court-level judges, magistrate judges
22 and district judges across the country, but, again, that
23 example, the *Tyson Foods* case, is a much more straightforward,
24 in my view, application of the principle of statistical sampling
25 for class-wide relief than this is.

1          I mean, again, what you've described just now, Mr.
2   Margolis, is something that is very individualized, the record
3   review and interviews.  Again, what I said earlier, I think, is
4   still my understanding, that the hope and expectation would be
5   that your expert or experts could glean broad principles and
6   conclusions from the patterns that they see through these
7   interviews and through these record reviews, and that would be,
8   in your view, significant evidentiary matter for the Court to
9   consider in fashioning some sort of relief.
10          That's that, the idea, right?
11          MR. MARGOLIS:  Yes, your Honor.
12          THE COURT:  Okay.  And so, again, I, I would still
13  want to see, if it comes to that, some additional briefing with
14  some specific samples of where courts have authorized that type
15  of discovery at a merits stage in this type of case or something
16  approximating this type of case.
17          I, I saw the citations to various docket entries from
18  other courts, the Defendants have taken the position that those
19  docket entries are not particularly convincing because one is a
20  Plaintiff's submission and one is a class certification-stage
21  submission.  I confess that I did not go digging through PACER
22  to find those specific items because I, I realized how I was
23  going to present these things to you today and I was not going
24  to have to get to the point of a definitive ruling, but, again,
25  you may have arguments for why those submissions -- I mean, you

1  cited them for a reason obviously, and so you might have
2  arguments for why those should be compelling, and maybe there
3  are some additional materials that you can point to.
4          Again, I'm not going to ask you to make any further
5  submission now because my opinion is that there may be an
6  agreement to be had on these points, but if not, then that's
7  something that I'm going to want to have further briefing on so
8  I can educate myself further and give some serious thought to
9  just the idea of discovery and proof in this way before I make
10 any final rulings.
11         Anything else that you'd like to cover on this point,
12 Mr. Margolis?
13         MR. MARGOLIS:  No.  I mean, we do believe those cases
14 are relevant, and if we get to --
15         THE COURT:  Obviously.
16         MR. MARGOLIS:  -- that point, we'll address them
17 there.
18         THE COURT:  Okay, that's fine.  Thank you.
19         Mr. Conroy, anything you'd like to add in response or
20 generally?
21         MR. CONROY:  Your Honor, I think, you know, we would
22 also be interested in seeing that argument more fully fleshed
23 out on the Plaintiff's side if we are not able to resolve this
24 dispute, and I think we would certainly, you know, respond
25 appropriately to that.

1              I mean, I would just say what strikes me is even if
2    they get past that hurdle of whether this type of discovery is,
3    is even appropriate thematically, what they've requested is --
4    as we've pointed out, is both overinclusive and under-inclusive
5    for this type of work.  It's, it's overinclusive in, and as, I
6    think, your Honor has recognized today, given the vast number of
7    categories, basically every document in the possession of two
8    state agencies for each of these individuals, and it's
9    under-inclusive because the Defendants are not in possession of
10   many of the community housing and services records for these
11   individuals, so if these experts were interested in knowing what
12   was happening to these individuals post-release from DOCCS
13   custody, they should be looking, as we did, for the named
14   Plaintiff -- the discharged class-named plaintiffs in this case.
15   They should be looking for records outside of the control and
16   custody of the Defendant's.
17             So for -- on both sides, I don't know that what
18   they're asking, really, is even -- is, is going to be
19   appropriately directed at, at what they intend.
20             THE COURT:  I'm glad you raised that point, Mr.
21   Conroy, because that's something I wanted to hear from
22   Plaintiffs on as well, both as to the thoughts about it being --
23   the discovery requests being over- and under-inclusive.  I mean,
24   of course, they've asked for things that they think you have, so
25   that's why they've formulated the request that way in part, but

1  that doesn't actually answer the question of whether those are
2  appropriate things to ask for in this context.
3          So, again, I've already explained that I think the
4  requests are overbroad and unduly burdensome and not
5  proportional to the needs of the case as currently formulated,
6  but I do think that Mr. Conroy raises fair points there, Mr.
7  Margolis.  I'd be curious to hear your thoughts on that.  Or Mr.
8  Short.  Whoever wants to address it.
9          MR. MARGOLIS:  Thank you, your Honor.
10         The reason that we focused on records that are in
11  Defendant's control is we believe the critical evaluation is why
12  they are at a serious risk of institutionalization at the time
13  of discharge.  It is not necessarily about, okay, six months
14  down the road or a year down the road what services do they get,
15  but that's certainly relevant.
16         The key to understanding this is what types of
17  services are available that OMH and DOCCS make available to them
18  upon discharge and shortly thereafter and whether that guards
19  against a serious risk of institutionalization.
20         THE COURT:  Okay.  I mean, again, the question of the
21  risk at the time of discharge, I understand that records from
22  the entirety of an individual's incarceration or
23  hospitalizations that may have taken place during the period of
24  incarceration may inform that in a broad way.
25         I'm certainly no mental health professional, so I've