```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2
    --------------------------------------x
 3  M.G., et al,

 4                            Plaintiff(s),

 5                                       19 CV 639 (CS)(AEK)
         -vs-
 6                                       DISCOVERY CONFERENCE

 7
    ANDREW CUOMO, in his official capacity
 8  as the Governor of the State of New York,
    et al.,
 9
                            Defendant(s).
10  --------------------------------------x

11
         *Proceedings recorded via digital recording device*
12

13                                United States Courthouse
                                  White Plains, New York
14
                                  Friday, December 15, 2023
15

16  Before:  THE HONORABLE ANDREW E. KRAUSE,
                                  Magistrate Judge
17

18  A P P E A R A N C E S:

19
    PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
20       Attorneys for Plaintiffs
    BY:  SAMUEL MARGOLIS
21       STEFEN R. SHORT

22
    NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL
23       Attorneys for Defendants
    BY:  OWEN T. CONROY
24       ADAM J. SANSOLO

25
```

1          THE DEPUTY CLERK:  Good morning, all.  This is the

2    matter of M.G. v. Cuomo, docket no. 19 cv 639, the Honorable

3    Andrew Krause presiding.

4          Counsel, please note your appearances for the record,

5    beginning with Plaintiffs' Counsel.

6          MR. MARGOLIS:  Good morning, your Honor.  Sam Margolis

7    and my co-counsel Stefen Short, for Plaintiffs.

8          THE COURT:  Good morning.

9          MR. CONROY:  Good morning, your Honor.  Owen Conroy

10   and Adam Sansolo from the New York State Office of the Attorney

11   General for the Defendants.

12         THE COURT:  Good morning to you both as well.

13         All right, we're here for a discovery conference.  Our

14   main issues to discuss are the Plaintiffs' October 17th document

15   demands and the outstanding 30(b)(6) topics.

16         I've read the letters, including the update, I guess I

17   would call it, that was in the responsive letter from the

18   Defendants on the 30(b)(6) topics where a couple of the issues

19   that had been fronted in the Plaintiffs' letter had been

20   resolved even since the letters were submitted, so, again, I

21   appreciate always in this case how the parties have worked

22   together.

23         There's been a lot of work, and I know there have been

24   a lot of active disputes as well, which we'll talk about today

25   and we've talked about in the past, but that hasn't stopped --

1  at least from my perspective hasn't stopped you from making a

2  tremendous amount of progress with each other.  I do recognize

3  that and I want to make sure to acknowledge it because, again,

4  you're vigorously representing your clients, you have good-faith

5  disputes about various things, but I know you've been doing a

6  lot of work behind the scenes to get a lot of things done, even

7  if you wind up having to present some of them to me, so that is

8  much appreciated.

9          Where -- why don't you just give me an update a little

10 bit on what we've done since the last conference.  The last

11 conference was November 1st, there were depositions that were

12 going to take place November 14th and 16th, according to the

13 letter exchanges and my notes from our last conference.  There

14 was some possibility that you were going to move forward with

15 additional 30(b)(1) depositions in December as you continued to

16 negotiate the 30(b)(6) topics.

17          So, Mr. Margolis, do you want to address that.

18          MR. MARGOLIS:  Of course, your Honor.

19          THE COURT:  I'm sorry, one second.

20          (Brief pause)

21          THE COURT:  Okay, go ahead.

22          MR. MARGOLIS:  Thank you.

23          Your Honor, we -- the parties proceeded with 30(b)(1)

24 depositions over the course of the last month and a half.  Only

25 one of the November depositions happens because of scheduling

Disc. Conf.                    M.G. v. Cuomo                        4

1  and technical issues, but those are resolved between the parties

2  without any issue.

3           THE COURT:  So how many did you manage to get done?

4           MR. MARGOLIS:  We have done four so far.  We have

5  another two next week.

6           THE COURT:  Okay.  And how many -- remind me, how many

7  does that leave?

8           MR. MARGOLIS:  That leaves four, two 30(b)(1)

9  depositions and two 30(b)(6) depositions.  I think my math is

10 right on that.  That is ten, done so far.

11          THE COURT:  That is ten unless anybody agreed to more

12 than that, which is perhaps unlikely.  So four so far, two next

13 week is six, and then four to come, two of which are 30(b)(1)

14 and two are 30(b)(6).

15          MR. MARGOLIS:  Correct, your Honor.

16          THE COURT:  Okay.  Sounds good.

17          And is there any update on the status of the

18 Plaintiffs who were to be deposed, but who have been unavailable

19 for depositions for various reasons?

20          MR. MARGOLIS:  Unfortunately no update, your Honor.

21 They, they both remain in crisis and have been...it, it's

22 difficult to get them down for deposition.  We remain in contact

23 and hope to get something scheduled as soon as possible for

24 them.

25          THE COURT:  Okay.  And remaining in contact is a good

1  update at least.  I mean, I don't, I don't take that likely.

2  That's, that's not always something that can be accomplished for

3  people who are in crisis, so I'm glad to hear that.

4            And there was one defendant who you had lost contact

5  with.  Has that person surfaced?

6            MR. MARGOLIS:  No, unfortunately no update there.

7            THE COURT:  Okay.

8            Okay, anything -- thank you, Mr. Margolis.

9            Anything you'd like to add on the status of the

10 depositions or any other issues before we get to the disputes,

11 Mr. Conroy?

12           MR. CONROY:  Nope.  I, I agree with all of those

13 updates.

14           THE COURT:  Okay.

15           MR. CONROY:  I guess I would only add, for the two

16 30(b)(1) depositions to come, we've agreed to one date for one

17 in January, and Defendants have proposed potential dates in

18 January for the second.

19           THE COURT:  Okay.  Those are the two in addition to

20 the two next week.

21           MR. CONROY:  Correct.

22           THE COURT:  Okay.  And then in terms of the -- I know

23 we have to sort out the exact parameters of the 30(b)(6)

24 testimony, and that's going to be a lot of testimony given all

25 the topics, even the ones you've agreed to.

Disc. Conf.                    M.G. v. Cuomo                          6

1              Is it the expectation on the defense side that you're

2    going to be able to produce a single witness to cover all these

3    topics, or is it going to be multiple witnesses?

4              MR. CONROY:  That is something that's under discussion

5    and may also be affected by how we resolve some of these

6    disputes.

7              THE COURT:  Okay.

8              MR. CONROY:  You know, I will say up front, we expect

9    to need a fair amount of time to prepare whoever it is.

10             THE COURT:  Right.

11             MR. CONROY:  Even, even as you said with --

12             THE COURT:  One or more people.

13             MR. CONROY:  Correct.

14             THE COURT:  Right.  Okay, I would imagine that that is

15   true, and I'm sure the Plaintiffs would like to have that time

16   to prepare their examinations as well, so that's fine.  I'll

17   make sure to give you time to do that.

18             Okay, let's, let's start with the additional document

19   demands.

20             From the submissions, it seems like there's more

21   discussion to be had.  I mean, both of the submissions end with

22   thoughts and ideas about compromise proposals.  The Plaintiffs

23   suggest that they are continuing to work on alternative

24   proposals, which is, I guess, good news.  I don't know exactly

25   what that means, and there was some hope of possibly exchanging

Disc. Conf.                    M.G. v. Cuomo

1 some alternative proposal prior to today, so I'll hear from you

2 about that in a second, Mr. Margolis.

3        And on the defense side, there actually is an

4 alternative proposal included in the letter, and the sense I had

5 is that perhaps Plaintiffs found out about that proposal when

6 they read the letter or at least maybe shortly before.  It

7 didn't seem as though that's something that had been discussed

8 at length.

9        The reason I say that is because when I read the

10 Plaintiffs' letter when it came in the first week of December

11 or, I guess, the second week, depending on...how you count those

12 things, it -- their position seemed to be that the Defendants

13 had not been willing to negotiate at all or had not been willing

14 to offer alternatives.  I, may have been misreading that or

15 reading inaccurately between the lines, but in any event, there

16 is a proposal that is on the table now and so why don't you just

17 tell me first before we get to the merits of your arguments on

18 your respective positions, Mr. Margolis, where do you stand in

19 terms of possible negotiated resolution.

20        Because I will give you some guidance today, but I

21 think it's very likely that I will send you back to talk about

22 this further unless you tell me that actually you've hashed this

23 all out and there's no possible hope of compromise, which -- I

24 mean, it happens, but I don't think that's going to be the case

25 here.

1          Mr. Margolis.

2          MR. MARGOLIS:  Your Honor, you're correct that the

3    first that we learned of this proposal was in the letter.  We,

4    that being said, are happy to meet and confer further and hope

5    that the parties can come to a resolution on this as we have on

6    a variety of different topics over the course of the litigation.

7          We are still developing our alternative proposal or

8    counterproposal.  The Defendant's proposal is more limited than

9    we think is feasible in order for our experts to render an

10   opinion that would be able to aid the Court.  That said, we also

11   understand, and we took to heart, some of the burden concerns

12   that Defendants have raised.  For instance, we, we are

13   confirming with our experts that they don't need this, but we

14   think we will be able to drop discovery request no. 103, which

15   is for communications.

16         THE COURT:  It's a good place to start, yes.

17         MR. MARGOLIS:  And we hope to have a counterproposal

18   early next week for the Defendants.

19         Frankly, coming out of our meet-and-confer, we didn't

20   think there was much room for negotiation, but we are happy to

21   continue to do so and believe that that will be productive.

22         THE COURT:  Okay.  So that's fine, so that confirms my

23   sense -- you can sit.  That confirms my sense that I should not

24   attempt to fully resolve these issues today, and that's fine.

25   I, I do want to give you some thoughts, though, to guide your

1  discussions going forward.

2          First, I certainly believe that the Defendants have

3  raised very valid arguments as to burden and proportionality

4  with respect to these requests.  The declarations from the

5  senior agency officials are compelling and...heh, go beyond what

6  I often hear in terms of proportionality arguments.  In fact,

7  I'm often asking Defendants to substantiate their

8  proportionality arguments more than they have in pre,

9  pre-conference submissions, so I appreciate you took the time

10  and made the effort to do that, because I think it really does

11  inform the discussion significantly.

12          And I also appreciate that there's a proposal on the

13  table.  Obviously it would have been better if you had been able

14  to make that proposal sooner.  I understand that there are

15  complexities involved in navigating discovery issues with large

16  bureaucracies, I have experienced that myself in many ways, both

17  as a lawyer and a judge, so I recognize some of those

18  challenges.  Again, it certainly would have been better to have

19  gotten to that point before you submitted your letter, because

20  then you might have been able to work some things out or some

21  additional things out in advance of this conference, but it's a

22  productive proposal.  I hope and expect that it's not the best

23  and final offer that you have on, on the defense side.

24          One of the questions, of course, that immediately

25  comes to mind is, how easy or difficult is it to generate these

1    types of documents, these types of reports that you've

2    referenced here.  Obviously, the answer is much easier than

3    combing through the records for this many potential class

4    members across multiple facilities, across multiple...custodial

5    facilities, across multiple hospitals and psychiatric centers,

6    across multiple storage sites, off-site and on-site, again, the

7    burden concerns that were identified in -- and proportionality

8    concerns identified in the letter and in the declarations are,

9    are very real and compelling from my perspective.

10           But, as I said, I'm not sure if generating the types

11   of reports that the Defendants have proposed as an alternative

12   here is simply a database query and pressing a button, because

13   if so, then it would certainly seem that it would be viable to

14   produce more than thirty of those.  I mean, it may be that those

15   are more complicated searches than it appears at first glance,

16   in which case maybe a more limited number such as thirty or

17   whatever the parties negotiate is, is...appropriate.  But,

18   again, if that can be generated relatively easily, then having a

19   number that more closely approximates what the Plaintiffs'

20   experts think is a statistically valid sample, that's certainly

21   a point for discussion.

22           I was also intrigued by the argument in the defense

23   submission that the Plaintiff's selection of the 143 individuals

24   is not really a randomized selection and isn't particularly

25   statistically valid, or at least that was the sense I had of

1  your argument, Mr. Conroy, that you felt as though this group of

2  143 was cherry-picked based on certain criteria.  I have no way

3  of evaluating that.

4          First of all, am I interpreting your position

5  correctly on that, Mr. Conroy?

6          MR. CONROY:  I -- we, we certainly wanted to point it

7  out because of -- I think we didn't understand how the random

8  sample came about --

9          THE COURT:  Okay.

10          MR. CONROY:  -- and so, it -- from our view, looking

11  at the housing locations of the individuals, it did not appear,

12  did not appear to be a random sample of that --

13          THE COURT:  So let me rephrase my comment and say it

14  was less of an accusation and more of a question.

15          MR. CONROY:  Correct.

16          THE COURT:  Okay.  Good.  Again, that's productive for

17  future negotiation, and I think sharing a little bit more about

18  the methodology for selection may reassure the Defendants.

19          Again, I haven't tried to parse through that

20  spreadsheet and understand all the mechanics of it myself, and I

21  actually don't want to get into all of that here because it will

22  be much better for you to discuss that with each other and if

23  there's something to be resolved, for you to come back and

24  discuss it with me, but I take the point, which is that if

25  there's a potential class here and the class members were

1  released to a range of different facilities, then a

2  representative sample should account for the range of different

3  types of facilities and settings and housing arrangements that

4  people were released to as opposed to focusing on one particular

5  setting, one particular treatment modality, or one particular

6  type of release parameter.

7       Again, I -- you obviously are much better versed in

8  all those particulars than I am, so I'm not trying to dictate

9  anything here, I think there's, there's a lot of room for

10  discussion there, but that was something that I did find

11  interesting and, and thought provoking and something that should

12  be subject to further discussion.

13       I will say, you know, I didn't dig deeply into the

14  legal arguments because the parties only sort of brushed over

15  them a little bit in the papers, but I did read the one case

16  that both of you talked about, the Supreme Court case in *Tyson*

17  *Foods* and...heh, I am not convinced by reading that case that

18  this approach to discovery at this stage of the litigation is

19  automatically appropriate and warranted at all.

20       That case is a Fair Labor Standards Act case.  We see

21  a lot of Fair Labor Standards Act cases here in this District

22  and in this courthouse.  The types of proof required in a Fair

23  Labor Standards Act case are far, far different than what we

24  have in this case, far simpler.  Not to say there can't be

25  highly complex Fair Labor Standards Act litigation, sometimes

1  there is, but the kinds of issues that are potentially

2  susceptible to statistical sampling from a group of class

3  members and, and substituting those samples for individualized

4  proof in various different ways, it's much easier for me to

5  conceptualize how that would work in an FLSA case than it is in

6  a case like this.

7          And that's not to say that there aren't other

8  arguments to be made.  I recognize that in prior submissions,

9  there were references to *Olmstead* type cases where this type of

10 discovery had been authorized and used, I think, for proof

11 either at summary judgment or at trial, so there may be more to

12 be said on that.  I will just say, again, for purposes of today,

13 that I'm not entirely convinced that there is a valid basis for

14 this type of discovery at this procedural posture.

15         It may be that I can be convinced.  I won't say that

16 I've formed a definitive view that I am unconvinced, but for

17 now, I don't find myself sitting here thinking that it is a

18 rock-solid certainty that the Plaintiffs should be entitled to

19 this discovery at all.

20         However, I had the same exact thought that was

21 expressed in the Plaintiffs' letter about thirty seconds before

22 seeing it addressed in the letter as I was reading it through

23 myself, which it seems unfathomable to me that Defendants could

24 possibly be taking the position, and I'm sure you are not going

25 to take this position or concede the point today, that if a

1  class is certified, proof as to the claims on a class-wide basis

2  could be sufficiently adduced from just the examples of the

3  individual named Plaintiffs whose records have been produced and

4  whose stories have been examined in great deal through

5  discovery, and we're talking about a class of potentially

6  hundreds, at least, of people.

7           Right, Mr. Margolis?  Maybe thousands?

8           MR. MARGOLIS:  Correct, your Honor.

9           THE COURT:  All right.

10          MR. MARGOLIS:  Hundreds of people.

11          THE COURT:  Hundreds of people at least, and the idea

12  that, that -- - again, if a class is certified.

13          I understand part of the point on the defense side is,

14  this is exactly why a class shouldn't be certified, and so it's

15  a little bit of an unusual conversation to be having while the

16  class certification motion is pending, and that's the structure

17  that was established in this case, but the idea that a class

18  could be certified and somehow proof could be introduced, either

19  at summary judgment or trial, based on the experiences of this

20  group of Plaintiffs and that could stand for the larger class as

21  a whole, I imagine the Defendants would have concerns about

22  that.  Maybe not.  Maybe you're willing to accept that and go

23  from there, but I imagine you're not willing to at least accept

24  that as we sit here today.

25          Right, Mr. Conroy?

1          MR. CONROY:  No, that's correct, your Honor.

2          I think, certainly, there is some discovery that's

3   appropriate beyond the individual files of the named Plaintiffs.

4   We've done a lot of that in this case so far.  We've certainly

5   produced many, many documents and communications that have

6   nothing to do with the named Plaintiffs.

7          THE COURT:  Right.

8          MR. CONROY:  All of which may be relevant at the

9   merits stage, but I think our point is just that...if you're

10  getting to accept of individualized close reviews of full files

11  of class members, you're losing the, you know, the, the

12  efficiencies that a class action is meant to provide, and

13  there's no particular -- you know, we've seen some cases that

14  the Plaintiffs have cited where some of that sort of statistical

15  evidence may be relevant to the commonality determination on a

16  Rule 23 motion.

17         It's not so clear that it's as relevant as you're

18  getting towards the merits stage, assuming a class is certified,

19  and, as you said, we would certainly point back to that argument

20  and point to this as a reason why there shouldn't be a class in

21  the first place, but that's not for us to discuss today.

22         THE COURT:  Exactly.

23         And, look, I think your compromise proposal is an

24  acknowledgment, not a concession, but an acknowledgment, that

25  there are valid points built into the Plaintiffs' interest in

1  seeking additional records about additional class members and,

2  and what you've proposed is a way of getting at that that is

3  more efficient, proportional, reasonable from the Defendant's

4  perspective, so we could leave it at that.

5          Again, but the Plaintiffs' point to me is well taken,

6  that if a class is to be certified, which may or may not happen

7  depending on what Judge Seibel determines, it -- I can

8  understand the idea of having more evidence regarding individual

9  class members so that an expert could draw broader principles

10 from those records.  I think that's the idea, that the

11 Plaintiffs are not necessarily looking to turn this into, you

12 know, discovery as to 143 individuals who will each be presented

13 as witnesses or whose stories will be told through an expert.

14 The idea is to extract from there broader points and evidence

15 that will stand for broader propositions to be adjudicated as a

16 matter of class-wide relief.

17          I understand why the Defendants are concerned about

18 that, but I don't think this is the Plaintiffs looking to

19 conduct many trials for all of these individuals, I don't see it

20 that way, but, as I said, I'm not entirely convinced that doing

21 discovery in this way, post class certification, as the

22 Plaintiffs have proposed for this type of case, is a viable

23 approach.  Again, I'm not deciding that one way or the other; I

24 just don't feel as though I have enough examples before me of

25 how that would work, why the evidence that the Plaintiffs

Disc. Conf.                    M.G. v. Cuomo

1  propose to obtain through these discovery mechanisms really

2  would allow them to accomplish the ends that they're trying to

3  accomplish, so that's something to keep in mind when negotiating

4  about what the scope of this should be.

5          It's theoretically possible that I would rule that no

6  discovery in this realm is appropriate, although that doesn't

7  feel like the right answer to me either, and the current

8  discovery demands are certainly unworkable.  I mean, I think

9  that's a bottom-line takeaway, is that the discovery demands as

10 currently promulgated are not going to be what we're going to

11 move forward with here.  It's just entirely too burdensome and

12 not proportional to the needs of the case for all the reasons

13 that I've discussed, but, you know, the meeting point for what

14 is manageable, appropriate, proportional, and satisfactory to

15 address all of the concerns on both sides, that's something for

16 you to discuss further.

17         I'm happy to hear any final points that people want to

18 make on that before I let you before I let you take this up

19 further after the conference.

20         Mr. Margolis?

21         MR. MARGOLIS:  Thank you, your Honor.

22         If helpful, I would just like to give a very brief

23 overview of why we think this is the appropriate way to prove

24 the case --

25         THE COURT:  I'd be happy to hear that, actually, yes.

Disc. Conf.                    M.G. v. Cuomo                        18

1          MR. MARGOLIS:  Due to the discharge classes *Olmstead*

2   claims is demonstrating a serious risk of institutionalization.

3   We believe, and we've seen in other cases, both at commonality

4   and class certification, and on the merits in some instances,

5   that Plaintiffs proffer an expert report demonstrating that the

6   class as a whole has experienced risk of institutionalization or

7   some other class-wide risk of harm and from that, have allowed

8   the Court to determine that the -- in this instance, the lack of

9   appropriate community-based mental health housing and supportive

10  services places all of those individuals at risk.

11         I think relevant to this, actually, is slightly how we

12  determined the sample and one of Defendant's concerns or

13  questions, we did not include, for instance, individuals in our

14  sampling who release to family-and-friends locations.  They're

15  not properly members of the discharge class and there are not

16  allegations here that they received inadequate community-based

17  mental health housing or services that would place them at risk,

18  but it is the individuals released to locations such as shelters

19  and who do not receive adequate services that we believe face

20  that risk class-wide.

21         The way that our experts will go about this is through

22  a record review for these individuals as well as, hopefully,

23  interviewing them, though we recognize that it is often

24  difficult to get in contact with the individuals, and then make

25  an assessment of whether these individuals were placed at risk

1  of institutionalization because of the lack of housing and

2  supportive services.  If that is done on such a wide scale, we

3  think it is helpful to show that that is a class-wide harm.

4       THE COURT:  Okay.  I mean, I, I would be -- again, if,

5  if this issue cannot be worked out in terms of a compromise as

6  to what the appropriate scope of the discovery should be, I, I

7  am going to ask for additional briefing on this idea that you

8  can prove merits through this type of sampling approach, and,

9  you know, I understand that it's theoretically possible based on

10 that *Tyson Foods* case, but it -- the Supreme Court made quite

11 clear that it was not establishing a blanket rule one way or the

12 other about the appropriateness of this type of methodology in

13 class actions or otherwise.  In fact, the Court went out of its

14 way to reject demands to do that, I think, from at least one of

15 the parties, but I think various *amici* also were hoping the

16 Court would take that and do more with it and use it as a

17 jumping-off point for more bright-line rules saying that this

18 type of broad statistical sampling evidence was permissible or

19 was not permissible, and the Court refused to do that.

20      So, again, that leaves a lot of room for

21 interpretation by trial-court-level judges, magistrate judges

22 and district judges across the country, but, again, that

23 example, the *Tyson Foods* case, is a much more straightforward,

24 in my view, application of the principle of statistical sampling

25 for class-wide relief than this is.

1            I mean, again, what you've described just now, Mr.
2    Margolis, is something that is very individualized, the record
3    review and interviews.  Again, what I said earlier, I think, is
4    still my understanding, that the hope and expectation would be
5    that your expert or experts could glean broad principles and
6    conclusions from the patterns that they see through these
7    interviews and through these record reviews, and that would be,
8    in your view, significant evidentiary matter for the Court to
9    consider in fashioning some sort of relief.

10           That's that, the idea, right?

11           MR. MARGOLIS:  Yes, your Honor.

12           THE COURT:  Okay.  And so, again, I, I would still
13   want to see, if it comes to that, some additional briefing with
14   some specific samples of where courts have authorized that type
15   of discovery at a merits stage in this type of case or something
16   approximating this type of case.

17           I, I saw the citations to various docket entries from
18   other courts, the Defendants have taken the position that those
19   docket entries are not particularly convincing because one is a
20   Plaintiff's submission and one is a class certification-stage
21   submission.  I confess that I did not go digging through PACER
22   to find those specific items because I, I realized how I was
23   going to present these things to you today and I was not going
24   to have to get to the point of a definitive ruling, but, again,
25   you may have arguments for why those submissions -- I mean, you

Disc. Conf.                    M.G. v. Cuomo                         21

1  cited them for a reason obviously, and so you might have

2  arguments for why those should be compelling, and maybe there

3  are some additional materials that you can point to.

4        Again, I'm not going to ask you to make any further

5  submission now because my opinion is that there may be an

6  agreement to be had on these points, but if not, then that's

7  something that I'm going to want to have further briefing on so

8  I can educate myself further and give some serious thought to

9  just the idea of discovery and proof in this way before I make

10 any final rulings.

11       Anything else that you'd like to cover on this point,

12 Mr. Margolis?

13       MR. MARGOLIS:  No.  I mean, we do believe those cases

14 are relevant, and if we get to --

15       THE COURT:  Obviously.

16       MR. MARGOLIS:  -- that point, we'll address them

17 there.

18       THE COURT:  Okay, that's fine.  Thank you.

19       Mr. Conroy, anything you'd like to add in response or

20 generally?

21       MR. CONROY:  Your Honor, I think, you know, we would

22 also be interested in seeing that argument more fully fleshed

23 out on the Plaintiff's side if we are not able to resolve this

24 dispute, and I think we would certainly, you know, respond

25 appropriately to that.

Disc. Conf.                     M.G. v. Cuomo

1          I mean, I would just say what strikes me is even if

2   they get past that hurdle of whether this type of discovery is,

3   is even appropriate thematically, what they've requested is --

4   as we've pointed out, is both overinclusive and under-inclusive

5   for this type of work.  It's, it's overinclusive in, and as, I

6   think, your Honor has recognized today, given the vast number of

7   categories, basically every document in the possession of two

8   state agencies for each of these individuals, and it's

9   under-inclusive because the Defendants are not in possession of

10  many of the community housing and services records for these

11  individuals, so if these experts were interested in knowing what

12  was happening to these individuals post-release from DOCCS

13  custody, they should be looking, as we did, for the named

14  Plaintiff -- the discharged class-named plaintiffs in this case.

15  They should be looking for records outside of the control and

16  custody of the Defendant's.

17          So for -- on both sides, I don't know that what

18  they're asking, really, is even -- is, is going to be

19  appropriately directed at, at what they intend.

20          THE COURT:  I'm glad you raised that point, Mr.

21  Conroy, because that's something I wanted to hear from

22  Plaintiffs on as well, both as to the thoughts about it being --

23  the discovery requests being over- and under-inclusive.  I mean,

24  of course, they've asked for things that they think you have, so

25  that's why they've formulated the request that way in part, but

1  that doesn't actually answer the question of whether those are

2  appropriate things to ask for in this context.

3          So, again, I've already explained that I think the

4  requests are overbroad and unduly burdensome and not

5  proportional to the needs of the case as currently formulated,

6  but I do think that Mr. Conroy raises fair points there, Mr.

7  Margolis.  I'd be curious to hear your thoughts on that.  Or Mr.

8  Short.  Whoever wants to address it.

9          MR. MARGOLIS:  Thank you, your Honor.

10         The reason that we focused on records that are in

11 Defendant's control is we believe the critical evaluation is why

12 they are at a serious risk of institutionalization at the time

13 of discharge.  It is not necessarily about, okay, six months

14 down the road or a year down the road what services do they get,

15 but that's certainly relevant.

16         The key to understanding this is what types of

17 services are available that OMH and DOCCS make available to them

18 upon discharge and shortly thereafter and whether that guards

19 against a serious risk of institutionalization.

20         THE COURT:  Okay.  I mean, again, the question of the

21 risk at the time of discharge, I understand that records from

22 the entirety of an individual's incarceration or

23 hospitalizations that may have taken place during the period of

24 incarceration may inform that in a broad way.

25         I'm certainly no mental health professional, so I've

1  had -- but I do understand that there's a longitudinal component

2  to understanding a person's capacities and risk factors on day

3  X, you need to look back in time a period of months or years to

4  have a full picture of that, but, again, that's another way in

5  which...it seems possible to narrow the scope of the requests,

6  whatever form your revised proposal may take, Mr. Margolis,

7  because it does seem like the focal point for you is, is the

8  discharge time.

9         And, again, it may be artificial, from your point of

10 view, to cut off one's mental health records in, in trying to

11 assess the status at the time of discharge, and I recognize

12 that, but, again, you're going to have to find some lines to

13 draw in order to bring this into line with some sort of

14 reasonable, proportional type of demand, and I think that's why

15 the Defendants have made the proposal that they have, but,

16 again, I take the point that, that what you're focused on is

17 where these individuals were at or around the time they were to

18 be discharged.

19        So at least that's some response, Mr. Conroy.  It may

20 not be convincing to you, but I'll hear from you, briefly, more

21 on that.

22        MR. CONROY:  Thank you, your Honor.  I would just

23 point out, this is exactly why we proposed providing the OMH

24 discharge summaries which capture the assessment of OMH of these

25 individuals at the point in time when they're released from

Disc. Conf.                    M.G. v. Cuomo

1   DOCCS custody, so this, this -- these documents, which are more

2   -- will make for a more manageable collection, also

3   substantively directly get to what Plaintiffs are looking for,

4   so I, I think it -- or it falls right in line with what we've

5   proposed already.

6           THE COURT:  Okay, and that's noted.

7           I mean, again, I think part of the response will be

8   that's a point-in-time assessment, to have a more complete

9   picture, you may need to look at some other things, but your

10  point is well taken, Mr. Conroy.

11          All right, I think that probably covers everything we

12  need to cover there other than to set a date for you to report

13  back on the progress of negotiations.

14          So you said, Mr. Margolis, that you're still working

15  on a proposal that work will now be informed by what we've

16  discussed today, I'm sure, so I want to give you time to, to

17  turn that around, but I also recognize we're getting to the

18  holiday season, but we're also -- the calendar's about to turn

19  to 2024 and we have an early 2019 case, so all of those things

20  holding on in our respective hands, I want to try to move this

21  along as officially as possible without interfering with

22  anybody's holiday plans unduly in order to get this teed up

23  quickly.

24          So how quickly will you be able to turn around a

25  response to the Defendant's proposal in light of all these

1  factors, Mr. Margolis?

2          MR. MARGOLIS:  We are certainly hoping to be able to

3  do so by a week from today and are endeavoring to do that

4  earlier, maybe by Wednesday of next week.

5          THE COURT:  Okay.  I mean, realistically, if you don't

6  get them anything until a week from today, they're not really

7  going to be able to process it in a meaningful way with their

8  clients until after the new year, I'm sure, so I think Wednesday

9  would be better.

10          Again, I'm not sure that's going to make a huge

11  difference on the defense side in terms of when you're going to

12  be able to turn it around, so if you tell me, Mr. Conroy, that

13  it's hopeless to try to accomplish anything in the last week of

14  December, which I would understand, though I will be here

15  working, on criminal duty, if anyone wants to come by and say

16  hello, that's just my, my turn, we rotate those weeks, but I

17  recognize that that's not a week where we're going to be making

18  a lot of decisions at state agencies.

19          So tell me if you think it makes a meaningful

20  difference to get it Wednesday versus Friday.

21          MR. CONROY:  Your -- to be candid, your Honor, I don't

22  think it does.  I was hoping to take the week between Christmas

23  and New Year's myself...

24          THE COURT:  I hope that for you, too, then.

25          MR. CONROY:  So we would ask to be able to respond in,

Disc. Conf.                        M.G. v. Cuomo

1   in the new year.

2          THE COURT:  Okay, so Friday of next week is fine,

3   then, Mr. Margolis.  There's no need to put you to any time

4   crunch to, to turn something around that's not going to be

5   looked at, heh, in any meaningful way right away anyway, so

6   Friday the 22nd to send over your proposal.

7          Try to send it at some civilized hour of the day so

8   that Mr. Conroy and Mr. Sansolo and others don't have to be

9   sitting around their offices waiting for you to send it at

10  eleven o'clock at night.  Or even seven o'clock at night.

11         In terms of a response, again, that first week is

12  basically off the table, the first week after receiving the

13  proposal.  Is it feasible to respond by January 5th?  Or the

14  8th?

15         MR. MARGOLIS:  I -- your Honor, I -- the 8th would be

16  more helpful although I'll note we've scheduled a deposition for

17  that date, so if we could ask for the 9th?

18         THE COURT:  Yeah, that's fine.  We'll make -- let's

19  make it the 10th, because I realize that first week back is a

20  short week also because of the 1st being a holiday, so we'll say

21  the 10th for your response.

22         And, again, from that point, I'd like to, hopefully

23  short-circuit the further meet-and-confer-and-negotiation

24  process.  I mean, we can't let this go on indefinitely.  If we

25  need to tee this up for some final determination, we'll do that;

1  you can submit additional letters and we can get that resolved.

2          Let me look at the calendar for when I could have you

3  back in in January, but we'll do that at the end.

4          (Brief pause)

5          THE COURT:  Okay, just one second.

6          All right, is there anything else that we should cover

7  on, on that point before we turn to the 30(b)(6) topics, Mr.

8  Margolis?

9          MR. MARGOLIS:  Not from Plaintiffs, your Honor.

10          THE COURT:  Mr. Conroy?

11          MR. CONROY:  Nothing further, thank you.

12          THE COURT:  All right.

13          On the 30(b)(6) topics, I have reviewed the respective

14  proposals.  We'll go through the different points that you've

15  made.  I'll just point out the standard for evaluating

16  objections to 30(b)(6) deposition topics, and I'll refer to a

17  decision authored by my colleague, Judge Netburn, in Manhattan.

18          *Blackrock Allocation Target Shares Series S Portfolio*

19  *v. Wells Fargo Bank National Association.*  That's 2017 WL

20  9400671 at pages 1 and 2.  "Like other forms of discovery, a

21  Rule 30(b)(6) deposition notice is subject to the limitations

22  under Rule 26.  Deposition topics must be proportional to the

23  needs of the case, not unduly burdensome or duplicative, and

24  described with reasonable particularity."  Judge Netburn goes on

25  to say in this case that topics that generally seek testimony as

1 to every fact that supports a legal claim will likely fail the

2 reasonable particularity requirement.

3          This particular case had to do with what she described

4 as tens of thousands of loan-level breaches, obviously a

5 different fact pattern than what we have here, but analogous in

6 certain respects because we are talking about...hundreds, if not

7 thousands, of encounters, appointments, entries on medical

8 records or charts, or disciplinary histories or whatever it

9 might be for a large number of individuals in certain instances

10 with some of these requests, so I found that language

11 instructive even though it, it's not exactly what we're talking

12 about here.

13          An additional principle that is worth stating at the

14 outset is that a Rule 30(b)(6) deposition should not be a memory

15 contest of topics better suited to written responses or

16 supplemental document productions and a court should strike

17 notice topics that would result in a witness merely testifying

18 to information readily available through document production, so

19 it is important to scrutinize 30(b)(6) notice topics for

20 proportionality, burden, and reasonable particularity to ensure

21 that the responding party can select and prepare the most

22 suitable witness or witnesses and so that the topics do not

23 engender abuse of the process by either party.

24          I was reading very liberally from Judge Netburn's

25 decision there, so...those aren't all exact quotes, but they're

1  pretty close, and I think that very well illustrates some of the

2  points that we have here and some of the concerns that I have

3  with some of the topics, but there will be in a couple of

4  instances items where I think further compromise can be reached

5  or I think that the compromise proposals are manageable ones, so

6  let's just go through them one by one.

7        First is OMH topic no. 24, which relates to OMH's

8  involvement in post-release care, custody, and treatment of

9  three named Plaintiffs following their release.

10       And this is an interesting one to start with, Mr.

11 Margolis, especially in light of what you just were talking

12 about in the last discussion about the things that are of

13 greatest import to the Plaintiffs in this case, namely, where

14 things stood with these individuals prior to their release, not

15 necessarily what happened while they were on release, so tell me

16 about that a little bit more.

17       MR. MARGOLIS:  Thank you, your Honor.

18       Certainly for our experts work, which we were just

19 discussing, we think the critical question is whether the

20 insufficient community-based mental health housing and

21 supportive services places individuals at risk, and for that

22 determination, we do think it is focused on the time of

23 discharge and OMH and DOCCS's planning for those discharges.

24       This testimony seeks to establish the harm that our

25 named Plaintiffs have suffered, that through the lack of

Disc. Conf.                    M.G. v. Cuomo

1  appropriate housing and supportive services, they have been

2  re-institutionalized, some have been re-incarcerated, and the

3  harms that they have suffered as a result of this.

4       We think that the testimony is fairly limited, we are

5  just seeking on the three named Plaintiffs, it is named

6  Plaintiffs that the Defendants have already deposed, and so to

7  the extent there are records that they think are helpful to

8  educate their witness, I, I would imagine they would have them

9  collected already, and we think it is, it is an appropriate

10 topic for a deposition.

11      THE COURT:  Okay.

12      Mr. Conroy, I...the request is related to OMH's

13 involvement in post-release care, custody, and treatment, and I

14 don't interpret that to mean that OMH is expected to have all of

15 the information about every, everything that these individuals

16 experienced in their post-release care, custody, and treatment

17 because that was not being directly provided by OMH.

18      Right?

19      MR. CONROY:  That's, that's correct, your Honor.  I

20 mean, I think there is a shift from -- that's why we put both

21 the original topic and the subsequent --

22      THE COURT:  And the original topic, all facts and

23 circumstances, was plainly improper and that's been revised, and

24 I appreciate you providing that revised version and it's an

25 appropriate revision.

Disc. Conf.                    M.G. v. Cuomo

1              MR. CONROY:  So one thing that we've pointed out is,

2    as far as we understand, this may be talking particularly about

3    one of the named Plaintiffs, S.D., who was following his release

4    from DOCCS custody further hospitalized at an OMH facility for

5    some number of months.  We've asked whether they're interested

6    in other circumstances regarding other named Plaintiffs, and I

7    don't know that we have gotten a specific answer about that, but

8    even if you take S.D. and his hospitalization for a period of

9    months, it's not clear to us what they're asking about.  I mean,

10   what does that mean in terms of his daily treatment at the

11   hospital, what the doctors were doing, what the treatment team

12   was doing.

13              We've produced the records --

14              THE COURT:  Just because on that, because it can't

15   possibly mean that.

16              Right, Mr. Margolis?

17              MR. MARGOLIS:  Correct, your Honor, we don't mean that

18   level of specificity, just what OMH's involvement in that care

19   is.

20              THE COURT:  Tell me more about what that means,

21   because that is a fairly vague framing.

22              MR. MARGOLIS:  Your Honor --

23              THE COURT:  Better than 'all facts and circumstances,'

24   but still, OMH's involvement could be this individual was at an

25   OMH facility and he received treatment on these dates as

1   reflected in these records.  That's OMH's involvement.

2          But Mr. Conroy's not wrong to say that OMH's

3   involvement could mean an OMH employee at this OMH facility

4   treated this individual on a hundred different occasions at --

5   let's talk about each of those in turn.  It can't possibly mean

6   that because that would not be an appropriate way to go about

7   anything in a 30(b)(6) deposition, but it's, it's not

8   inappropriate for there to be a concern that that is what you

9   meant.  I mean, you've now confirmed that it's not, so that's

10  helpful, but you know that people were at OMH facilities or were

11  not at OMH facilities so that's not something you need to get

12  from a 30(b)(6) deposition.

13         My inclination is that this could be a valid topic,

14  but I'm not sure -- but my sense of what would be valid about it

15  is at a high enough level of remove that I'm not sure you'll

16  learn anything that you don't already know, so that, that -- and

17  I'd like to try to understand a little bit more about how

18  granular you expect this OMH's witness testimony to be, because,

19  again, if we're talking about day-to-day treatment, that's not

20  going to be an acceptable topic for 30(b)(6) testimony.

21         If it's more about OMH's understanding about how a

22  person moved from one facility to another or something along

23  those lines, okay, but I'm not sure you need that information.

24  From a witness.

25         MR. MARGOLIS:  Yes, your Honor, it's certainly not

Disc. Conf.                    M.G. v. Cuomo                    34

1   about the day-to-day treatment; we agree on that.

2          THE COURT:  Okay.

3          MR. MARGOLIS:  It is about -- the testimony we are

4   seeking is about, as you say, they're transferred from one OMH

5   facility to another, but more broadly speaking, on a high level,

6   the type of care that they need to receive and, and the harm

7   that they have suffered because of their re-institutionalization

8   or whatever other circumstances follow their release that have

9   caused them harm.

10         We don't seek this at a granular level, we just want

11  to understand OMH's understanding of the harms that they have

12  faced, and that is demonstrated through this post-release care.

13         THE COURT:  I, I'm having a hard time understanding

14  how you're going to accomplish that through these topics.

15         I mean, an OMH witness could testify based on his or

16  her review of records that a person was in this institution, a

17  person was in that institution, that was within OMH's knowledge

18  that a person was being moved from here to there.  Maybe the OMH

19  witness could testify that at the time individual A was admitted

20  to institution A, he or she had a particular diagnosis, and at

21  the time individual A left institution A, he or she had a

22  different diagnosis, and that the time that individual A and the

23  date that individual A arrived at institution B, the diagnosis

24  was...A and B.

25         I mean, again, that, that, I think, would be, I

1  suppose, valid testimony here and may address some relevant

2  issues in the case and would be proportional to the needs of the

3  case in some sense, I just am not sure that it's necessary if

4  you can glean that from the documents themselves.  Again, given

5  time number of topics here, I'm not sure that that's going to be

6  how anyone's going to want to spend their time if, again, you

7  can just read it off the documents.  If you're just going to

8  have the witness confirm what the documents say, I'm not sure

9  you're going to be getting anything new out of that.

10         So I, I'm not going -- I'm going to overrule the

11  objections to the extent that the position is that the topics as

12  stated are not sufficiently particularized, because I think with

13  the limitations that, that Mr. Margolis has conceded here today,

14  I think it's clear that it's not nearly the type of...broad,

15  sweeping demand for an OMH witness to testify about the

16  day-to-day accounting of the individual's care and treatment.

17         To the extent there is useful questioning to be had

18  about OMH's knowledge based on OMH records, OMH doesn't have to

19  go out and generate any additional records to figure this out,

20  this would only be a matter of what is in the agency's custody

21  and control already about broad topics such as the movement of

22  an individual from facility to facility, the diagnosis that the

23  individual may have had at a particular facility.  That, that's

24  fair game for questioning, but I strongly encourage you to think

25  about whether it's really worth pursuing.

 1          And if it's not, if you decide in light of these

 2    rulings and this discussion that it's not, you have to notify

 3    the Defendants of that so that they don't spend time trying to

 4    prepare witnesses on this topic.  Even though it's only for

 5    three individuals, that will require a certain amount of record

 6    review and somewhat painstaking consideration for something that

 7    may not be necessary at all.

 8          Okay.

 9          MR. MARGOLIS:  Understood.

10          MR. CONROY:  Thank you, your Honor.

11          THE COURT:  Okay, let's turn to the next topics which

12    are OMH no. 27 and DOCCS no. 30, agency responses to complaints

13    and reports regarding prolonged confinement.

14          First of all, to the extent the objection is to the

15    request calling for -- or the topic calling for testimony about

16    all facts and circumstances regarding the agency's response to

17    reports and/or complaints, that objection is sustained.  'All

18    facts and circumstances' is a facially improper type of request,

19    it's not sufficiently particularized, there's no reasonable

20    expectation that the Defendants could prepare a witness or

21    witnesses to talk about all facts and circumstances, which could

22    include virtually anything and everything having to do with this

23    litigation which are part of the, the...are connected to these

24    exact types of complaints.  I know that's not what you mean, of

25    course, but it could be read extremely broadly.  That, at a

1    minimum, will need to be narrowed in a way that we saw with the

2    last request that we talked about.

3         Now, to the extent the, the objection from the

4    Defendants is that this information is not within the agency's

5    custody and control, I have to say that...doesn't make a lot of

6    sense to me.  I'm trying -- I have that in my notes and I'm

7    trying to see where I came up with that one.

8         Hold on one second.

9         (Brief pause)

10        THE COURT:  That's -- the Plaintiffs' representation

11   of the Defendant's position is that the agencies have asserted

12   that the requested information is not within agency custody or

13   control.  I have a hard time understanding how responses to

14   complaints that are made through agency administrative processes

15   would not be within the agency's custody or control.

16        Mr. Conroy?

17        MR. CONROY:  Yeah, your Honor, I don't -- I would not

18   characterize our objection that way and I'm not -- I don't have

19   -- there's a spreadsheet where our various responses and

20   counter-responses progressed over the last weeks.

21        THE COURT:  Okay.

22        MR. CONROY:  There may have been something that we put

23   in one of those, I'm not saying there's not, but I guess what I

24   would say is, I mean, it certainly helps to eliminate all facts

25   and circumstances.  One of our concerns that may have been tied

1    to this is, you know, any reports or complaints would include

2    things out -- you know, it was just so broad that it would

3    include things outside of the --

4            THE COURT:  Okay.

5            MR. CONROY:  -- more formal process.

6            THE COURT:  So let's start with that.

7            The agency's responses to complaints made through

8    agency administrative processes, that seems like a valid topic

9    to me for both agencies.  If an inmate or patient at a DOCCS

10   facility or OMH facility made a complaint through an established

11   administrative process to agency officials through whatever

12   reporting mechanism or complaint mechanism was available to him

13   or her at that time, then the agency response is something that

14   is valid to explore, so we'll leave it -- we'll start with that,

15   right?  All right, so to an extent, I don't see what the

16   objection is particularly.

17           Again, the documents say what they say, so we

18   shouldn't spend precious 30(b)(6) deposition time having agency

19   officials read documents into the record.  That's something that

20   people do a lot at 30(b)(6) depositions.  I never really

21   understand that.  You know, the document record is what it is.

22   You know, these documents were produced by the agencies; there's

23   not going to be any dispute as to the authenticity of those

24   productions.

25           There may be particular questions that are appropriate

1  to clarify and understand why things were done or what certain

2  things mean, but it shouldn't just be an exercise of

3  authentication and recitation of, of documentary evidence.

4  That's my free legal advice, heh, for purposes of these

5  depositions.

6          Especially because I'm sure we'll be back here one day

7  to talk about the time limits for these depositions and how much

8  time is appropriate, and I'll just tell you in advance that if

9  you force me to read the deposition transcripts of these

10 depositions, which sometimes I have to do, if I see that, I will

11 not be as favorably inclined to giving...heh, Plaintiffs more

12 time to question witnesses.  Time has to be used officially and

13 appropriately.

14          Mr. Conroy, you seem to have a concern about even

15 that.

16          MR. CONROY:  Well, your Honor, I, I think -- I just

17 want to make sure I understand whether responses means, you

18 know, the document responding to the grievance which, you know,

19 I think I can understand wrapping our arms around that.  I took

20 it that the Plaintiffs were meaning a much more broad demand for

21 information about the general reaction to these complaints

22 which, of course, as you pointed out, your Honor, it ultimately

23 leads to this very case and it, it sort of wraps into a much

24 broader discussion about how these -- how this policy changed

25 over time.

1          So I think that if it was a time-limited set of

2    certain grievances through a formal process and the formal

3    response to that, that's something that I think, you know, we

4    could look into.  Our concern is where it starts getting to be a

5    much broader exercise in any communications about this topic

6    generally.

7          THE COURT:  Okay.  I mean, that's a fair point.

8          I mean, I'm hard-pressed to believe that one of the

9    many, many topics that has been already agreed to wouldn't

10   already encompass discussions about how the policies changed

11   over time.  I'm sure that's captured elsewhere.  No?

12         MR. CONROY:  There is, there is a topic that speaks to

13   the specific DOCCS policy that ended the practice that led to

14   this lawsuit.

15         THE COURT:  Right.  So, in other words, you're already

16   going to be preparing a witness to talk about that, although

17   this is an OMH topic, not a DOCCS topic.

18         MR. CONROY:  Well, there's actually -- this --

19         THE COURT:  I'm sorry, this is both.

20         MR. CONROY:  This is both, this is both.

21         THE COURT:  OMH 27 and DOCCS 30, I apologize.

22         MR. CONROY:  Correct.  Although I, I think that's

23   right.

24         I mean, I think my concern is, you know, again,

25   talking about how far back we're going in time, how over, over

1  time these issues may have been connected.  I think the topic

2  related to the actual change in policy is more concrete.  We can

3  talk about that to the extent there's, there's non-privileged

4  information that we can provide, but I think, you know, it's

5  just a very vague idea of did various complaints over time, you

6  know, eventually lead to this lawsuit and a change in policies,

7  which is why we would, you know, request, if there's some

8  version of this topic that remains, that it be focused on what's

9  in those formal documents.

10            THE COURT:  Okay.

11            Mr. Margolis?

12            (Brief pause)

13            THE COURT:  I mean, you talk about -- and this may be

14  part of the concern, also, which Mr. Conroy didn't specifically

15  address, but it gets to a similar point.  You talk about press

16  coverage, for example, of prolonged confinement practices for

17  the putative class, to use your phrasing.  I'm not really sure

18  what that refers to.

19            Is that press coverage in connection with the filing

20  of this lawsuit, or is it press coverage that preceded the

21  filing of the lawsuit or something else?

22            MR. MARGOLIS:  Your Honor, that's related to press

23  coverage that coincides with the filing of this lawsuit, but

24  also a series of -- I think there's recent *New York Times*

25  articles around prolonged confinement and shelter discharge, but

Disc. Conf.                    M.G. v. Cuomo                    42

1  I think, really, the key of this point, and I do think that to

2  the extent it's limited to complaints and responses regarding

3  the administrative process, that goes a long way here, is

4  Plaintiffs' prolonged confinement claims for the, for the

5  general class and the RTF sub-class.  Deliberate indifference is

6  a key part of those claims, and to the extent that there was

7  really no change in policy and we're not entirely sure what the

8  response was before we brought this lawsuit, we think those are

9  probative of deliberate indifference here.

10          THE COURT:  Okay.  And I think -- so if the request

11  can be narrowed, first of all, removing the

12  all-facts-and-circumstances language, but can be narrowed to the

13  responses, complaints made through the administrative process by

14  individuals on these issues and the responses to those

15  complaints through the administrative process, that seems to be

16  a far more workable topic.

17          The responses to press reports, especially in

18  connection with the filing of this lawsuit, that seems like it's

19  going to be a fraught topic that's going to be full of privilege

20  objections anyway.  To the extent you can limit this request to

21  pre lawsuit complaints and responses, I think that would be even

22  a clearer way to delineate and avoid entanglements.

23          I think responses to press reports, you know, at a, at

24  an institutional level, agency level, which is what we're

25  talking about here, not just some individual's reaction to it,

1  that's just a hard thing to conceptualize and, and almost

2  certainly will be subject to objections as to deliberative

3  process and attorney/client and work product objections,

4  especially once the complaint is filed, but even before the

5  complaint is filed, what agency policymakers are talking about

6  internally in response to a press report, it seems like a

7  quintessential deliberative process privilege objection, so I

8  think if we can limit it to the responses, agency responses and

9  actions taken as to the individual complaints made through the

10  administrative process, I think that's a much more appropriate

11  and tailored topic.

12         Is that workable from your perspective, Mr. Margolis.

13         MR. MARGOLIS:  Your Honor, I think I would need to

14  confer with my colleagues on whether we could limit to

15  pre-lawsuit, but on to limiting to formal administrative

16  complaints and responses, I think we are amenable.

17         THE COURT:  Okay.

18         Mr. Conroy?

19         MR. CONROY:  Your Honor, I think I would -- limiting

20  to pre-lawsuit would be helpful, but I think we would also

21  request a outer limit so that -- you know, how far back in time

22  is this request going.

23         THE COURT:  That's also fair.

24         Mr. Margolis?

25         MR. MARGOLIS:  I think the parties can confer on an

Disc. Conf.                M.G. v. Cuomo                    44

1   appropriate scope and time.

2           THE COURT:  Okay, I think that's fine, but I think we

3   -- I think this has been a helpful discussion in terms of

4   narrowing the scope and addressing the concerns.

5           There needs to be some date limitation.  I don't know

6   exactly what that date limitation should be, but, again, it --

7   the other thing to think about is if there are particular

8   complaints that you're already aware of, Mr. Margolis, that you

9   would want to make sure are addressed by the witness, there's no

10  reason to hide that.

11          Again, this witness or these witnesses are going to

12  have a tremendous amount to prepare for and it shouldn't be a

13  guessing game.  As Judge Netburn appropriately said in a phrase

14  that I've uttered in these kinds of conferences, too, it's not a

15  memory test.  Right?  And so if you -- you're trying to get

16  testimony that you think will be helpful, or at least

17  clarifying, with respect to your claims, and so if there are

18  things -- and I'm not going to say that you need to give them

19  your deposition outline for all the topics, but, but on this

20  kind of thing, if you have specific complaints that you know you

21  want to ask about to ask about, let them know, identify those in

22  advance, so that they can properly prepare their witnesses.

23          MR. MARGOLIS:  Understood.

24          THE COURT:  Okay.

25          All right, policies and -- this is OMH topic no. 30.

Disc. Conf.                    M.G. v. Cuomo

1  Policies and practices related to risk management and quality

2  assurance concerning persons with serious mental illness with

3  histories of incarceration.

4          There's a limitation on the table here from the

5  Plaintiff to limit to the audits, I guess, just to use that term

6  sort of loosely, Regarding...Community-Based Mental Health

7  Housing?  Do I have that acronym right?  CBMHH?

8          MR. MARGOLIS:  Yes, your Honor.

9          THE COURT:  Okay.  That, that seems much more on

10  point, and I think the Defendant's objections to policies and

11  practices regarding risk management and quality assurance

12  broadly, even broadly concerning persons with serious mental

13  illness, that's what OMH does, is treat people with serious

14  mental illness, among other things, but that would cover a wide

15  range of facilities and programs that have nothing to do with

16  this lawsuit.

17          Limiting the request to policies and practices related

18  to risk management and quality assurance for provision of

19  community-based mental health housing is getting much closer to

20  the heart of the issues in this case.

21          Mr. Conroy, is that still not workable from your

22  perspective?

23          MR. CONROY:  It -- you -- I think that our issue with

24  this topic is that this case is about whether there is

25  sufficient quantity of these services.  There has not been an

1 allegation that, for example, when someone's placed with, let me

2 use the word, the act teams, which are teams in the community

3 which provide treatment and, and various services for

4 individuals, there's not an allegation that those teams are

5 deficient in some way or not providing appropriate services.

6 It's really about are there enough slots available for folks who

7 want them out in the community.

8          THE COURT:  It's quantity, not quality.

9          MR. CONROY:  Correct.  So that's why we think this is

10 a little off base, and given all of the many other topics we're

11 preparing for, we thought it was a little bit much to add this

12 one to our plate.

13          THE COURT:  Okay.  Although, again, narrowed in this

14 way gets it much closer to at least something that could be

15 relevant.

16          MR. CONROY:  I don't know if --

17          THE COURT:  You don't have to concede that.  I'm

18 saying that.  You don't have to agree.  That wasn't a question;

19 that was a remark.

20          Mr. Margolis.

21          MR. MARGOLIS:  Your Honor, we agree that limiting it

22 this way is very -- is helpful and will produce relevant

23 testimony.  The way that we think is helpful is not just -- we

24 don't understand quality assurance and risk management to only

25 speak to quality.  We also understand it is used in identifying

Disc. Conf.                    M.G. v. Cuomo

1  service gaps and just generally the insufficiencies that are

2  relevant to the putative classes.

3        So if, for instance, a particular class member needs a

4  higher level of care, the quality assurance and risk management

5  policies and practices would assess whether they are receiving

6  the appropriate level of care.  That plays into, then, whether

7  -- if they're not receiving the high level of care, why is that;

8  is it because of a lack of quantity...they're all interconnected

9  issues.

10        THE COURT:  Okay.

11        Mr. Conroy, do you want to address that?

12        MR. CONROY:  I, I'm not so sure that I would agree

13  that that's how that division of OMH works.  That sounded like a

14  very individualized analysis with respect to a particular

15  individual.  I -- my understanding is this division is much more

16  about the overall quality of, of particular services.

17        I would note that there's a separate topic which we

18  have agreed to about data collection and management which is

19  much more focused on, you know, how many beds are out there,

20  what is the, what is the need for additional beds and that sort

21  of thing that informs OMH and broader state policies about

22  adding services on an ongoing basis, so we think that topic sort

23  of covers what they're looking for without getting into the

24  quality assurance piece.

25        THE COURT:  Okay.  I am going to sustain the

1  Defendant's objections to this topic.  I think the -- even as

2  narrowed or as proposed to be narrowed by the Plaintiffs, I

3  think this is a bit too far removed from the core issues in this

4  case and is a bit too attenuated to fit within the rubric of

5  what is reasonable and proportional to the needs of the case,

6  especially given the extent of the 30(b)(6) topics already

7  agreed to and, and authorized by the Court in, in the last

8  couple of instances, so I will sustain the objections with

9  respect to the risk management and quality assurance topic, OMH

10 no. 30.

11      Let's talk about DOCCS nos. 23 and 24, various

12 policies and procedures and associated training.

13      What the Defendants say is that they are willing to

14 provide a witness to talk about topics involving policies and

15 procedures related to pre-release planning for incarcerated

16 individuals with serious mental illness as well as policies and

17 procedures related to RTF status.

18      I tried to take that...assertion by the Defendants and

19 figure out what that means relative to these proposed seven

20 groups of, of policies and procedures.  I couldn't exactly map

21 it.  Maybe you have a plan for what that entails, but I'm going

22 to just go through this.

23      I think the Defendant's position is a reasonable one.

24 Some of these topics are very broad.  Policies and procedures

25 regarding, for example, classification of persons with serious

1  mental illness, including the one particular classification,

2  that is going to get to an issue that is several steps removed.

3        I understand that you can always argue, especially

4  when we're in the complex area of mental illness treatment, that

5  there is an interrelationship among many, many different things,

6  and, sure, when someone comes into a facility and is classified

7  in a particular way, that is going to affect how he or she

8  receives services through the entirety of his or her custodial

9  sentence, but, again, this is not a case where we are trying to

10  explore the entirety of the system of mental health treatment at

11  DOCCS and OMH, or at least I don't think that's what it should

12  be at this late stage in discovery.

13        So that topic, 23(a), classifications of persons with

14  serious mental illness, including the SMI-5 designation or

15  classification, that does not seem reasonable and proportionate

16  to the needs of the case in light of all the factors we've

17  discussed here.

18        The same, I think, is true with respect to 23(b),

19  program assignments for persons with SMI, including various

20  intermediate programs such as ICP and discharge and enhanced ICP

21  perhaps and the Special Needs Unit.  Again, this gets to the,

22  the structure and programming at DOCCS and OMH at a level of

23  generality that is not appropriately tailored to the key issues

24  in this case.

25        Now, 23c, risk assessment of persons with serious

1  mental illness, again, if we're talking about risk assessment

2  upon reception, for the same reasons, I don't think that that

3  topic is appropriate for 30(b)(6) testimony in this particular

4  case, but risk assessment, it seems to me, that's a phrase that

5  Mr. Margolis has used multiple times or various approximations

6  of it, is a key issue when evaluating risk for discharge, so to

7  the extent risk assessment is referring to discharge and

8  pre-release planning, that seems like an appropriate topic, so

9  this is where I start to get into a little bit of a...point of

10 confusion.

11         Mr. Conroy, I mean, when you talk about pre-release

12 planning for incarcerated individuals with serious mental

13 illness, as well as policies and procedures related to RTF

14 status, if risk assessment is part of pre-release planning for

15 individuals with SMI, then you would agree that that's an

16 appropriate subject area.

17         If it's risk assessment -- I know risk assessment

18 happens certainly upon reception at a DOCCS facility such that I

19 don't think that's an appropriate topic, but risk assessment may

20 happen at various stages during the course of an individual's

21 period of incarceration, so do you want to address that, Mr.

22 Conroy?

23         MR. CONROY:  Yes, your Honor.  I think we agree with

24 that, that we're proposing to -- that the witness testify to

25 pre-release planning policies, so around that period of time

Disc. Conf.                      M.G. v. Cuomo

1  leading up to the release from DOCCS custody, which, which would

2  include risk assessments that take place at that time.

3          THE COURT:  Okay, that's in, but risk assessment at

4  initial reception or risk assessment programming -- programming,

5  risk assessment approaches and, and policies more generally,

6  that's, that's not going to come in, but, again, to the extent

7  it is risk assessment connected to pre-trial planning, then

8  certainly that should be covered and I think that's something

9  that the Defendants have agreed to cover.

10         Recommendations related to conditions and special

11  conditions of release for persons with SMI, that seems certainly

12  within the, the area that the Defendants have agreed to provide

13  the witness to testify about.

14         Yes, Mr. Conroy?

15         MR. CONROY:  Yes, your Honor, I think this relates to

16  the RTF piece.

17         THE COURT:  Okay.

18         MR. CONROY:  So this would be within what we've -- we

19  would agree to cover.

20         THE COURT:  And the same for E, discharge planning for

21  people in DOCCS custody, that's pre-trial release planning,

22  discharge planning, just different ways of saying the same basic

23  idea?

24         MR. CONROY:  Correct.

25         THE COURT:  Okay.

Disc. Conf.                    M.G. v. Cuomo

1          And then community supervision of persons with mental

2   illness and waive -- well, let's -- community supervision of

3   persons with serious mental illness, again, to the extent we're

4   talking about planning to send people into different types of

5   community supervision, certainly, yes, but if we're talking

6   about the entirety of what the community supervision apparatus

7   of DOCCS -- right?  The Department of Corrections & Community

8   Supervision, since DOCCS took over the Division of Parole, it's

9   not going to be an examination of all parole-related procedures

10  relating to supervision of persons with serious mental illness.

11  That's incredibly broad and not warranted for this particular

12  case.

13          Again, to the extent there is coordination with the

14  Division of Parole -- is it still called the Division of Parole

15  within DOCCS?  Or is it called the Division of Community

16  Supervision?

17          MR. MARGOLIS:  Community Supervision.

18          THE COURT:  Okay, sorry, so the Division of Community

19  Supervision within DOCCS to the extent there is consultation

20  and, and policies associated with discharge planning and

21  community supervision in coordination with the Community

22  Supervision arm of DOCCS in connection with discharge planning,

23  yes, that should be addressed, that's appropriate, but this

24  notion of talking about community supervision broadly for

25  individuals with serious mental illness is, in fact, too broad.

Disc. Conf.                    M.G. v. Cuomo

1          And waivers of release to community supervision, I, I

2   think I understand what that means, but can you just make sure I

3   do, Mr. Margolis?  Mr. Short?  Whoever wants to address it.

4          You -- by the way, my practice is, if there's one of

5   you who wants to address an issue, you don't have to feel like

6   Mr. Margolis has to do all the talking.  You're welcome to trade

7   off on different issues.  In case you thought that I was -- I

8   know some judges do only want to hear from one lawyer per side

9   at a particular hearing; I'm not that judge.  And I know we've

10  done that in many other proceedings, but I just wanted to make

11  that clear because I see the two of you consulting.

12         So if there's something that's better for Mr. Short to

13  address, you don't have to tell me in advance; just make sure

14  you identify yourself on the record.

15         MR. MARGOLIS:  We appreciate that, your Honor.  I'm

16  happy to address this.

17         One issue related to prolonged confinement is that we

18  understand DOCCS was securing waivers of release for individuals

19  --

20         THE COURT:  I remember that from our settlement

21  conference discussions.  And the question of whether those were

22  valid and what the circumstances were and how those came about.

23         MR. MARGOLIS:  Correct, your Honor, and also, I think

24  we're still just looking for clarity on what DOCCS's policies

25  and procedures are that authorize those and how they may be

1 permissible or impermissible.  We think this clearly relates to

2 pre-release planning in that it obviates the need for it in many

3 ways.

4          THE COURT:  Right.

5          MR. MARGOLIS:  I don't know that there's much to say

6 on that.

7          THE COURT:  Okay.  I just wanted to make sure that I

8 was remembering that correctly.

9          So, Mr. Conroy, I'll hear from you briefly on that,

10 but...well, no but, just I'll hear from you briefly on that.

11          MR. CONROY:  Your Honor, I think we would agree that

12 that would fall within the ambit of the pre-release topic.

13          THE COURT:  Good.  I, I think you're right to agree

14 with that.  Okay, so that same set of rulings apply to 24 as

15 well.

16          Again, I -- some of those topics were overbroad, some

17 of them were appropriate; I think we've teased out which ones

18 are within the boundaries of the agreement from the Defendants

19 and, you know, including the ones that may have a split, split

20 decision, if you will, some portions of it being outside the

21 ambit of that agreement and some portions being within it, so

22 that covers 23 and 24.

23          MR. SHORT:  Your Honor, if I, if I may just very

24 briefly --

25          THE COURT:  Just --

1          MR. SHORT:  -- on some of the aspects of 23 --

2          THE COURT:  Just for the record, this is Mr. Short.

3     Go ahead.

4          MR. SHORT:  Yes, so I think some of the distinctions

5     between sort of classification at the discharge process or

6     pre-release process and earlier classification are a little bit

7     illusory in this particular situation, and I think there are

8     certainly some drafting issues with this topic, but I just

9     wanted to raise up some issues.

10         You know, when we're asking about specifically

11    classification with respect to SMIV, SMIV is a designation

12    that's given to people who, because of a history of violence,

13    have been identified as in need of a certain corpus of mental

14    health services really at -- close to the point of discharge,

15    and there are certain units within the system, including the

16    discharge and enhanced ICP programs that we specifically ask

17    about in this topic that are -- that were created for people who

18    are readying for discharge and need enhanced services to ensure

19    that they can be released to the community in a way that

20    forestalls a risk of recidivism or re-institutionalization, so

21    that's the reason why we specifically mention those programs, we

22    specifically mention the SMIV classification in this topic.

23         I think there's certainly a way to narrow further so

24    that we're not getting classification issues when someone's

25    coming in through reception, but that particular classification

1  issue, we think, is very, very relevant to the claims in this

2  case.  The SMIV folks who are in a discharge ICP are the very

3  people who are either being prolonged in their confinement and

4  led to this case or being released, in our position, without

5  needed services.

6           So, you know, it's...some of these kind of sub-topics

7  here we think are, are squarely relevant, acknowledging that

8  there's certainly overbreadth here that we would need to address

9  in continued meet-and-confers.

10          THE COURT:  Okay.

11          Mr. Conroy, I'll hear from you briefly if you would

12  like to say anything in response.

13          I mean, those points are well taken, the idea being

14  that I think Mr. Short has acknowledged the overbreadth concerns

15  that I've pointed out.  There may be ways in which some of these

16  things relate to -- relate more precisely to pre-release

17  planning for incarcerated individuals, which is why I was, heh,

18  trying to figure out what the, the guardrails should be around

19  these topics.

20          MR. CONROY:  Yes, your Honor, and I think, you know, I

21  think what we would say is to the extent the topic of policies

22  and procedures regarding discharge planning gets into, you know,

23  what policies and procedures exist for discharge planning of

24  folks with the SMIV classification, we're not going to object to

25  that as being outside of what we've agreed to, but certainly

1  these classifications follow incarcerated individuals for much

2  before -- much earlier than the discharge planning and, and

3  pre-release stage that we've been discussing, so I think that's

4  the distinction I would draw, that we're not going to -- you

5  know, the moment someone raises SMIV in the context of discharge

6  planning, we're not going to object, but it shouldn't be its own

7  separate topic about everything related to classification.

8          THE COURT:  Okay.  I agree with that, and I think

9  that's helpful context.  I think we're actually all on the same

10 page about this, but I think it's helpful that we've, we've laid

11 it out a little bit here.

12         There will be discussion, it sounds like, about

13 individuals with an SMIV classification and how that relates to

14 their discharge status and their dischargeability to certain

15 types of housing locations in the community or limitations on

16 that, and, again, that all -- to the extent that is within the

17 ambit of policies and procedures related to pre-release

18 planning, then that will be a valid topic of discussion.  To the

19 extent we're talking about that more in the abstract or at

20 different points in time during an individual's incarceration,

21 that's getting too far afield.

22         Okay?

23         MR. SHORT:  Understood.

24         THE COURT:  Okay, thank you.

25         All right, let's talk about -- that was -- I'm trying

1    to be better about this for the benefit of our court reporter,

2    but that was Mr. Short who made the last acknowledgment as well.

3            Okay, DOCCS request no. 25, all mental health

4    treatment and services provided to named Plaintiffs during their

5    incarceration.  That's the way it's characterized, and the topic

6    as written down in this chart that I'm referring to from ECF no.

7    331-4, the topic specifically is the mental health treatment

8    services and programming provided to named Plaintiffs as

9    enumerated here during their incarceration.

10           This -- heh.  This, again, gets into the concern about

11   what a witness is realistically going to be able to provide on

12   this topic, because...heh, I'll refer to Judge Netburn's

13   decision in the *Blackrock* case about concerns about reasonable

14   particularity in cases involving tens of thousands of lines of

15   data.  This is the one I had in mind when I read that sentence,

16   because I don't understand how an individual can be prepared to

17   testify about all mental health treatment services and

18   programming provided to these eight individuals.  It...I just

19   don't really understand what that's going to look like or how

20   you intend to question a witness about that.

21           Again, the treatment records have been provided.  The

22   custodial records, I assume, for these individuals have been

23   provided.  There may be particular questions about what things

24   mean on a, on a...document about a custodial designation or, or

25   something of that nature, but I'm not sure that a 30(b)(6)

Disc. Conf.                    M.G. v. Cuomo

1  witness is the appropriate way to address that.

2         Maybe it is if you haven't been able to address it

3  some other way, in terms of what the documents say, but I have,

4  I have significant concerns about this topic, Mr. Margolis, so

5  is there a narrower reading that I'm missing?

6         I mean, you say testimony about the prison conditions

7  imposed upon the named Plaintiffs, including solitary

8  confinement, sanctions, and other programmatic restrictions is

9  available only through DOCCS and bears on the receipt of

10 in-custody mental health services.

11        I mean, if what you're saying is you want to have

12 broader testimony about whether an individual is eligible to

13 receive mental health treatment if they are in solitary

14 confinement or whether a person is...if they're in keeplock

15 status, if that's still a term that's used at DOCCS, they can be

16 released despite that keeplock status for certain types of

17 medical treatment including mental health treatment.

18        Okay, I mean that would make sense and then you could

19 look back at the records and say, well, Plaintiff P.C. was on

20 keeplock status for 340 days out of 365 days in 2018 and that

21 means because he was not able to receive mental health services,

22 his disciplinary history meant or his disciplinary sentences

23 meant that he was deprived of services or something like that,

24 but I, I -- you know, that, that addresses things on a more

25 programmatic policy level, the questions of what services are

1  available to individuals who are in certain types of custodial

2  situations, but if that's not answerable on a sort of

3  system-wide basis, I'm not sure how a person would even be able

4  to figure this out other than by cross-referencing mental health

5  records and disciplinary and custodial records and that just

6  seems like a very large undertaking.

7          I understand it's only eight individuals, but, again,

8  I'm not sure that this is something that should be required of a

9  30(b)(6) witness as opposed to just through review of the

10 documents and analysis of those documents.

11         Again, policy-level discussions about what does it

12 mean if a person is in the special housing unit in terms of what

13 they can access for mental health services, or what they can't

14 access, that seems like a valid question, perhaps something

15 that's going to be addressed in one of the many other topics,

16 but the line-by-line review of records for each of these

17 individuals and that type of questioning, if that's what you're

18 really trying to get at, I don't think it needs to be at that

19 type of granular level.

20         So, Mr. Margolis, I'm happy to hear more from you on

21 that.

22         MR. SHORT:  I can, I can address that, your Honor.

23         THE COURT:  Mr. Short.

24         MR. SHORT:  So, yes, I think what we're looking for is

25 a clear understanding of the way that someone's sort of

1 custodial status or the conditions that have been imposed upon

2 them by the department impact the receipt of mental health

3 services treatment and programming, so I think --

4          THE COURT:  But -- hold on.  But that's a policy-level

5 point as opposed to an individual record-review point.

6          MR. SHORT:  Yes, I think that's right, and I, I think,

7 you know, we're certainly willing to revisit the language here

8 to make it clear that that's what we're looking for, you know,

9 in all candor, I think you're right that this does not get at

10 that...that particular information, so, you know, we're willing

11 to, to sort of word-shop language here to make sure it's clear

12 that it's, it's that information we're seeking, we're not

13 seeking a line-by-line review of someone's mental health

14 treatment history in a State Prison for example.

15          I can see how this topic could be read that way.

16          THE COURT:  Okay.  That's how I read it.  I think

17 that's how the defense read it.  But the way that I understood

18 it came from your explanation in the letter, so it's not as

19 though you don't have the words to be able to explain it because

20 I understood it from what you put in your argument.

21          That seems manageable, first of all, it's not a, it's

22 not a line-by-line review.  The answer may be it differs from

23 facility to facility and it gets complicated for that reason,

24 but in terms of policies, practices with respect to access to

25 services for people who are in different types of status at

1  DOCCS, that seems like something that could be addressed.

2          Mr. Conroy?

3          MR. CONROY:  Well, your Honor, I, I do appreciate the

4  revision, but I think what's strikes me is it's not clear how

5  that topic relates to this case.  I mean, if we're talking about

6  how someone's status at a particular time in custody affects

7  their mental health treatment in custody, that's not really the

8  issue in this case, so I'm not seeing the connection to the

9  issues that we're disputing here.

10         THE COURT:  Okay.  That's not an unreasonable point

11 either.

12         Mr. Short?

13         MR. SHORT:  Part of the showing for the Eighth

14 Amendment claims in this case is that our named Plaintiffs were

15 in putative conditions of confinement post their release date

16 and so understanding the unit that our named Plaintiffs were in,

17 the conditions that they were under, and the extent to which

18 those conditions were imputative bears on the showing of

19 liability.

20         And, you know, being that our named Plaintiffs were

21 in, let's say, the intermediate care program past their maximum

22 expiration date, we'd like to know how being in the intermediate

23 care program at that time impacted their receipt of services,

24 treatment, and programming because that goes to ultimately show

25 whether their conditions were punitive in nature for purposes of

Disc. Conf.                    M.G. v. Cuomo

1  the Eighth Amendment violations here.

2       THE COURT:  Okay, and that, that gets it much more

3  specifically; we're talking about the status that people were in

4  post their release date.

5       MR. SHORT:  Yes.

6       THE COURT:  Not, not through the entirety of their

7  period in custody.

8       MR. SHORT:  That's correct, and so we could narrow it

9  that way, but that does go to some of the named Plaintiffs here

10 and their experiences.  I think we'd have to narrow it even

11 further to make it clear we're talking about specific named

12 Plaintiffs because there are some listed that probably shouldn't

13 be listed, but --

14      THE COURT:  Okay, and that sounds like it would help

15 narrow the issue even further.

16      But, Mr. Conroy, for people who were allegedly

17 maintained in custody beyond their release date and whose

18 service access was impeded because of that, I, I think that's an

19 answerable set of questions.  I also think we're not talking

20 about something that's going to occupy a huge amount of time,

21 either in preparation or at the deposition itself.

22      MR. CONROY:  I, I think that may be right, your Honor.

23 I'm just looking -- there -- I think we've agreed to topics

24 already that sort of bear on this point about --

25      THE COURT:  All right, that, we don't need to get into

Disc. Conf.                          M.G. v. Cuomo

1  now, but I think the -- you can negotiate that and point that

2  out now that the issue has been narrowed substantially on the

3  record here.

4          I'm going to leave it to you to figure this out here

5  or come back to me if you can't, but the idea is here, policy

6  and programmatic restrictions for people who are in certain

7  types of custodial status and how that affects -- policy and

8  programmatic restrictions on access to mental health services

9  based on certain types of custodial status for individuals, the

10  named Plaintiffs, who were held, allegedly, beyond their release

11  dates.

12          MR. CONROY:  Yeah, I think I just need to understand

13  the phrase 'for the named Plaintiffs' or 'for these individuals'

14  in that, so are we talking about the policy generally for access

15  to mental health services for individuals on various custodial

16  status.  My concern gets into -- or are we talking about the

17  specific circumstances of these individual named Plaintiffs?

18          THE COURT:  No, I think we're talking about the

19  policies generally and then presumably those policies applied to

20  the named Plaintiffs.  That's, that's my understanding of the

21  topic.

22          MR. CONROY:  That, that...understanding, I think, we

23  could agree to.

24          THE COURT:  Mr. Short?

25          MR. SHORT:  That's a shared understanding, your Honor.

1            THE COURT:  Great.  Okay.  We've accomplished

2  something.

3            Requests 20 and 29, or topics 28 and 29,

4  hospitalization, detention, and/or incarceration of the named

5  Plaintiffs following release, this...this has echos of the very

6  first topic that we talked about, which is OMH's involvement in

7  post-release care, custody, and treatment of three of the named

8  Plaintiffs.

9            The issue here seems to be DOCCS is trying to limit --

10  the Defendants are trying to limit the scope of what is

11  necessary to review in preparation to a particular set of

12  documents, which are readily ascertainable, and, in DOCCS's

13  view, contain the relevant information, and the --

14            MR. SHORT:  Your Honor...

15            THE COURT:  Yes.

16            MR. CONROY:  If I may, I think we're at this point

17  willing to accept this limitation that --

18            THE COURT:  Great.

19            MR. MARGOLIS:  Defendants have proposed.

20            THE COURT:  All right.  Say no more.

21            Mr. Conroy, no comment on that.

22            MR. CONROY:  No comment.  Thank you.

23            THE COURT:  Good.

24            And then the last one is 32 through 34, DOCCS budget

25  and data collection program.

Disc. Conf.                    M.G. v. Cuomo

 1        I, I don't really understand the defense response here
 2   when you say, Mr. Conroy, that this is covered by the OMH
 3   witness.
 4        MR. CONROY:  Well, it -- the relevant -- so to the
 5   extent that this case bears on the state's, generally, budget
 6   decisions on community mental health services, community mental
 7   health housing, our view is that comes through the OMH budget,
 8   you know, it doesn't come through the DOCCS's budget, and so,
 9   you know, this, this topic generally covering the DOCCS budget
10   seems, to us, to be a little bit off point.
11        THE COURT:  Now, the Plaintiffs have been -- okay.
12        Noted, thank you, Mr. Conroy.
13        The Plaintiffs have said they're willing to limit this
14   to the DOCCS budget as it relates to people with SMI while in
15   DOCCS's custody, which is a broad topic, but and upon their
16   release, including CBRP's?  I'm sorry, that's an acronym I was
17   not able to figure out, Mr. Margolis.
18        Community-based residential programs?  What's the RP?
19        MR. MARGOLIS:  Yes, it's community-based residential
20   programs.
21        THE COURT:  Okay.
22        MR. MARGOLIS:  And, your Honor, at this point, we're
23   willing to cut anything about people with SMI while in DOCCS's
24   custody and focus upon their release.
25        THE COURT:  Upon their release, okay, so limited to

 1  budget as it relates to people with SMI upon their release.

 2          Mr. Conroy, I mean, if the answer is that's not part

 3  of DOCCS's budget at all, then, fine, that's an easy answer,

 4  it's one question, but if the, but if the answer is DOCCS does

 5  have a budget for addressing issues involving individuals with

 6  serious mental illness upon their release from custody through

 7  the community supervision arm of the agency...

 8          MR. CONROY:  Your Honor, what's concerning to me at

 9  the moment and, and thinking this through is, I mean, there may

10  be budget items that provide services to people with SMI as well

11  as other people on community supervision and so there may not be

12  a clear delineation between these are, you know, sort of SMI

13  budget items and these are budget items for other folks, and I

14  think the CBRP's are one example of that, my understanding is

15  that that type of placement is not limited to individuals with

16  SMI, and so I don't think the DOCCS budget office would

17  conceptualize that as an SMI service.

18          And so once we go down that road, I don't know how we

19  would sort of carve out what pieces of the DOCCS community

20  supervision budget, you know, sort of bear on the S -- the

21  community of individuals with SMI more broadly.

22          THE COURT:  Okay.

23          Mr. Margolis?  Or Mr. Short.

24          MR. MARGOLIS:  Your Honor --

25          THE COURT:  This is Mr. Margolis.

1              MR. MARGOLIS:  This is Mr. Margolis for the record.

2              We understand that concern, and I don't think it's one

3    that we've heard before today, but at the end of the day, this

4    is -- DOCCS's budget is relevant to Defendant's fundamental

5    alteration defense.  The housing that DOCCS provides, including

6    through community-based residential programs, which is

7    effectively DOCCS parole housing, it is where a number of the

8    putative discharge class members are currently being housed.

9    The comparative spending levels on that versus what it could be

10   spent on for community-based mental health housing is just one

11   way that this is probative and goes to their fundamental

12   alteration defense.

13             THE COURT:  But DOCCS doesn't have any budget item for

14   community-based mental health housing, I assume, because that

15   would be an OMH budget item, which is kind of the point that Mr.

16   Conroy is making.

17             MR. MARGOLIS:  Yes, your Honor, but if you're removing

18   a putative discharge class member from a CBRP and putting them

19   in OMH-controlled --

20             THE COURT:  Right, then DOCCS wouldn't have to spend

21   the money on the CBRP because the money could be allocated in

22   the sense that money is fungible and one state agency could

23   spend money that the other state agency has in its budget.  I

24   mean, that's not really how it works in the real world, but I

25   understand the point.

Disc. Conf.                          M.G. v. Cuomo

1          I mean, theoretically, state -- the state is the state

2    and you don't, you Plaintiffs don't necessarily draw a

3    distinction between the budget of one agency and the budget of

4    another agency.  I'm not saying you don't understand it, heh,

5    you understand it, you just don't necessarily think that that

6    should be a limiting factor in terms of what relief the Court

7    might order.

8          Okay, I don't agree with the Defendant's position that

9    the DOCCS budget is irrelevant, so the relevance objection is

10   not going to be sufficient here to carry the day, but I do agree

11   that there is legitimate concern about, uh...this creeping into

12   an overbroad territory and essentially capturing the entire

13   DOCCS budget virtue of the fact that there are lot of

14   individuals with serious mental illness who are within DOCCS

15   custody, as we all know, and therefore any -- theoretically, any

16   budget item that exists at DOCCS also includes budgeting for

17   people with serious mental illness.  I don't think that's the

18   point of this topic.  I think the point is to really try to

19   focus in on specific things, and it may be that limiting this

20   request to CBRP's -- and this goes for the data collection also,

21   I think these are all of a piece.

22         I, I am not going to sustain a blanket objection and

23   find that DOCCS's budget is completely irrelevant to this case,

24   but it had -- the request for DOCCS's budget information,

25   because of the legitimate concern that Mr. Conroy has raised, it

1   has to be a lot narrower because, again, there won't be any way

2   of delineating between any DOCCS budget items.  It sounds as

3   though the likely analysis will be there's no separate budget

4   other than for perhaps certain narrowly tailored programs, but

5   for purposes of this case, there's not going to be a separate

6   delineation between monies spent for CBRP's for individuals with

7   serious mental illness and money spent at CBRP's for everybody

8   else at those CBRP's.

9          So if the focus is DOCCS's budget for CBRP's, that is

10  a much narrower topic and probably one that Mr. Conroy could

11  reluctantly live with so I won't ask him to comment on that,

12  but, again, this topic is -- it's a valid topic, but it just has

13  to be much, much narrower, I'll let you work out the details, as

14  to both the budget and the data collection, applying the same

15  principles.  And applying some of the same principles that we've

16  talked about throughout the conference here today on data

17  collection, for example, the data collection, to the extent it

18  takes place, involving individuals with serious mental illness

19  were focused on the point in time towards the end of people's

20  stays in custody in connection with discharge planning,

21  pre-release planning.

22         That's the type of data collection from DOCCS

23  involving individuals with serious mental illness that seems

24  appropriate, reasonable, and proportionate to the needs of the

25  case rather than DOCCS data-collection practices broadly which

1 necessarily include and implicate individuals with serious

2 mental illness because they're such a part of the DOCCS

3 population.

4        So there's, there's a reading of these requests that

5 basically would call for all DOCCS's data collection about

6 everybody because collection of data about everybody includes

7 collection of data about people with serious mental illness and

8 that's -- I don't think that's what's intended and DOCCS's

9 objections about potential overbreadth there are well founded.

10 It's just not going to be possible to exclude, heh, data

11 collection and budgeting from DOCCS entirely, it just has to be

12 tailored much more particularly, so hopefully with that

13 guidance, you can figure out what the exact parameters should be

14 for that request, or for that set of topics, I should say.

15        Okay, I think that covers the full list of the

16 30(b)(6) topics with more homework for you to do on that, but I

17 think hopefully that should provide some additional clarity that

18 will allow for a final set of topics to be in place. Let's say

19 you'll meet and confer about this.

20        I guess you needed to provide some revised language,

21 Mr. Margolis. Let's, let's give you until the end of next week

22 to do that as well. Again, if you can get it out sooner, great,

23 but realistically, there won't be time to respond to that until

24 -- we'll have the same dates, just to make it less confusing.

25 December 22nd and January 10th for a response, and then, again,

Disc. Conf.                    M.G. v. Cuomo

1  we can tee everything up at the same time shortly thereafter.

2          I'm hoping to not have to here back from you on the

3  30(b)(6) topics, I think we've spent a sufficient amount of time

4  on that today, and hopefully I've given you enough guidance so

5  you'll be able to work out the details, but if not, if there's

6  one minor stray issue here or there that you really can't figure

7  out, then we can take up that next time as well.

8          I have a complicated schedule in January because I

9  have a trial the week of the 22nd which is going to...at this

10 point, it looks almost certain to happen, but we could have a

11 conference at the end -- the week after that.  I have criminal

12 duty that week, but we can work around that if we set a morning

13 conference date.

14         I'd like to have that as a control date.  My hope is

15 that we might not need that conference because, again, we've

16 spent a lot of time today talking about parameters that I think

17 should give you a roadmap to how to resolve both sets of these

18 issues, and you've been very, very good about that in the past,

19 as I said at the outset, but I want to have a control date just

20 in case it doesn't work out and there are things that need to be

21 finally and fully resolved, so my thought is that we could have

22 a conference on February 1st?  That's a Thursday.  We'll work

23 backwards from there for dates.

24         Again, given the schedule that we have where proposals

25 and such will be exchanged by January 10th, that will give you

Disc. Conf.                    M.G. v. Cuomo

1  another week or two to meet and confer, hash out the details,

2  and present whatever narrow remaining issues there may be.  Of

3  course, we've done this in the past, sometimes you'll tell me,

4  Judge, we need a couple more days or another week, we think we

5  can get to a solution, and, of course, I'll, I'll give you that

6  time, but I don't want to leave here today without having a

7  control date because, again, we need to get these issues

8  resolved.

9         And in the meantime, you're going to be moving forward

10 and at least getting all of the 30(b)(1) depositions done, and

11 there's no reason -- I mean, I know that there are these

12 additional points to be hashed out on the 30(b)(6) topics, but

13 there's plenty of preparation work that can be done on the

14 agreed-upon topics already, so, I mean, don't tell me on

15 February 1st that you haven't started preparing the witness yet.

16 I mean, you can start preparing the witnesses...you know, as

17 soon as you're back from vacation or whatever time out of the

18 office you're going to have, Mr. Conroy.

19        So that should be underway by January with the hope of

20 getting these 30(b)(6) depositions done.  I mean, I would hope

21 they could be done in February, that may be optimistic, but that

22 seems feasible, and there's even an extra day February this

23 year, so it's that much more feasible.  Okay?  So February 1st.

24        I have criminal duty that day, so I would prefer to

25 start a little bit earlier if we can, so I would suggest a

1    nine-thirty start time.  If that date works for everybody.

2            Mr. Margolis, Mr. Short?

3            MR. MARGOLIS:  That works for Plaintiffs.

4            THE COURT:  Okay, Mr. Conroy, Mr. Sansolo?

5            MR. CONROY:  That's fine.  Thank you, your Honor.

6            THE COURT:  All right, so we'll say February 1st at

7    nine-thirty, and then working backwards from there, we'll have

8    any affirmative dispute letters, if necessary, submitted by

9    January 25th and responses by January 30th, so that's Thursday

10   January 25th, one week before the conference, Tuesday, January

11   30th, just two days before the conference, but that will be,

12   that will be workable, especially because I expect those to be

13   short letters if there are letters at all.

14           Okay, I think that covers everything that we have for

15   today, but, Mr. Conroy.

16           MR. CONROY:  I just wanted to make sure I understood,

17   so January 25th would be if there's a dispute, a letter from

18   Plaintiffs, January 30th would be Defendant's response.  It may

19   be --

20           THE COURT:  I'm just thinking about who's going to

21   have the dispute, right.

22           MR. CONROY:  Yeah.

23           THE COURT:  I'm, I'm not sure.  You can work that out.

24           Some, some letter presenting the dispute should come

25   in on the 25th.  I -- again, I think, I think it's Plaintiff

Disc. Conf.                    M.G. v. Cuomo

1   seeking this discovery, so I do think it should be Plaintiffs'

2   letter on the 25th, if there's anything that's unresolved, and

3   Defendant's letter on the 30th, in this particular context.  I

4   mean, you could, heh, frame it either way as to who's needing to

5   move to compel or move for a protective order, but I think we

6   should go Plaintiffs first on the 25th, if necessary, and

7   Defendants second on the 30th.

8          Mr. Margolis, anything further on behalf of the

9   Plaintiffs?

10         MR. MARGOLIS:  No, and that makes sense, your Honor.

11         THE COURT:  Okay.

12         Mr. Conroy, anything further for the Defendant?

13         MR. CONROY:  Nothing further, your Honor.  I guess I

14  would just note for housekeeping purposes the current deposition

15  deadline is January 19th, but it sounds like we, we can assume

16  that that's -- I mean, we will -- let me back up.

17         The 30(b)(1) depositions, our intention would be to

18  complete those by January 19th, but we would --

19         THE COURT:  Let's put it -- thank you for raising

20  that.

21         Let's, let's keep the 19th as the deadline for the

22  30(b)(1) depositions, just to make sure that we all get the

23  scheduling done that needs to get done for those last two

24  witnesses and in case anything slips.  January 19th's still the

25  date for the completion of the 30(b)(1) depositions.  I will

Disc. Conf.                    M.G. v. Cuomo

1  extend that deadline for the completion of the 30(b)(6)

2  depositions for now to February 16th?  Which is...four weeks

3  later?  I recognize that that may need to be adjusted further

4  based on whatever happens in your negotiations, but part of it

5  also is you on the defense side are going to have to make

6  determinations about how many witnesses this is going to

7  require.

8          It would be remarkable to me if you managed to have

9  one witness testify about all of these topics, it's just -- or

10  one witness for each agency about all of these topics.  It's

11  just a lot for a single person to cover and a lot of time to --

12  I mean, you'll have to be involved in all the preps, the two of

13  you, but, you know, one person having to prepare for all these

14  topics is going to take a lot of time out of his or her regular

15  job responsibilities.  So I, I leave that, of course, to your

16  good judgment, but it may be, again, that if there's a 30(b)(6)

17  deposition witnesses who's going to cover topics 1 through 20,

18  then that witness could go even while the witness is still being

19  prepared on topics 21 through 30.

20          I'm not trying to make it more complicated than

21  necessary, but I do want to continue to push forward and make

22  progress, so keep that in mind and you can report back to me on

23  scheduling.  If you have any disputes as to those issues, those

24  could be resolved by letters that I can just so order one way or

25  the other, but we're not going to have those problems in this

1  case, I'm confident.  I just want to make sure we do have a

2  framework, and thank you for identifying that, Mr. Conroy, so

3  we'll keep the January 19th date for 30(b)(1) depositions and

4  30(b)(6) depositions to be completed by February 16th, subject

5  to potential for extension, brief extension, if necessary.

6           Okay, with that, Mr. Conroy, anything further we

7  should address from the Defendant's perspective?

8           MR. CONROY:  Nothing further.  Thank you, your Honor.

9           THE COURT:  Okay.  In that case, we'll stand adjourn.

10          And, importantly, let me wish you and your families a

11 safe, happy, and healthy holiday season and new year.  I'll look

12 forward to seeing you at some point in early 2024.

13          Thanks, everyone.

14          MR. MARGOLIS:  Thank you, Judge.

15          MR. CONROY:  Thank you, your Honor.

16

17 Certified to be a true and accurate

18 transcript of the digital electronic

19 recording to the best of my ability.

20 _____

21 Tabitha R. Dente, RPR, RMR, CRR

22 U.S. District Court

23 Official Court Reporter

24

25