```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ---------------------------------x
    M.G., individually and on behalf
3   Of all similarly situated, et al.,

4                  Plaintiffs,

5            v.                              19 CV 639(CS)(AEK)

6                                                      CONFERENCE
    ANDREW CUOMO, in his official
7   Capacity as the Governor of the
    State of New York, et al.,
8
                   Defendants.
9   ---------------------------------x
                                        United States Courthouse
10                                      White Plains, N.Y.
                                        May 21, 2024
11

12

13  Before:  THE HONORABLE ANDREW E. KRAUSE, Magistrate Judge

14

15                          APPEARANCES
16
    THE LEGAL AID SOCIETY
17       Attorneys for Plaintiffs
    ELENA MARIA LANDRISCINA
18  LAUREN NAKAMURA

19
    PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
20       Attorneys for Plaintiffs
    EMILY A. VANCE
21

22  LETITIA JAMES
         Attorney General for the State of New York
23  OWEN THOMAS CONROY
         Assistant Attorney General
24

25  *Proceeding recorded via digital recording device.
```

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

1              THE DEPUTY CLERK:  Good afternoon, all.

2              This is the matter of M.G. v. Cuomo, docket number 19

3    CV 639, the Honorable Andrew E. Krause presiding.

4              Counsel, note your appearance for the record,

5    starting with plaintiffs' counsel.

6              MS. LANDRISCINA:  Elena Landriscina, Legal Aid

7    Society, for the plaintiffs.

8              THE COURT:  Good afternoon, Ms. Landriscina.

9              MS. VANCE:  Emily Vance from Paul, Weiss.  And I'm

10   joined by my colleague, Michael Dauber, and summer associate,

11   Kailynn Bush.

12             THE COURT:  Good afternoon, everybody.

13             One person unaccounted for there.

14             MS. LANDRISCINA:  I'll introduce her.  That's my

15   colleague, Lauren Nakamura, from the Legal Aid Society.

16             THE COURT:  Good afternoon to you as well.

17             MR. CONROY:  Owen Conroy from the New York State

18   Office of the Attorney General on behalf of the defendants.

19             Good afternoon, your Honor.

20             THE COURT:  Good afternoon, Mr. Conroy.

21             We're here for a status conference.  I did receive

22   the letter that you sent last night and I reviewed that.  We'll

23   talk about that in a moment.  And I saw that the deposition of

24   C.J. was completed on April 29th, so that was good news.

25             Other than what is set forth here, is there anything

1   else that we need to talk about in terms of the completion of

2   fact discovery?  I think the answer is no, which is

3   encouraging, but correct me if I'm wrong, Ms. Landriscina.

4           MS. LANDRISCINA:  That's correct.

5           THE COURT:  Okay.

6           Mr. Conroy, you agree?

7           MR. CONROY:  Agreed, your Honor.

8           THE COURT:  Okay.

9           Before we turn to this, let me ask a question since

10  we are at the bitter end here of fact discovery, finally.

11          We obviously spent a long time a long time ago trying

12  to facilitate settlement negotiations in this case, and Judge

13  Seibel asked me the other day whether there was any prospect

14  for continued settlement negotiations in light of the fact that

15  we're now nearing the end of fact discovery.  I said I was

16  going to be seeing you today and I would ask you that question.

17          And, listen, I understand some of it is complicated

18  in this case.  I mean, we spent many sessions, many hours over

19  many months trying to see if there was a path forward.

20  Everybody participated in that in good faith.  At least it

21  seemed that way to me.  I think there were real efforts on both

22  sides.

23          I think that might have been even before you were

24  involved in the case, Mr. Conroy, or maybe you were just in the

25  background.  I don't know.  But I don't remember you being part

1    of those discussions.  Am I right about that?

2            MR. CONROY:  Just at the very tail end.

3            THE COURT:  Very end.  Okay.

4            So it's worth at least revisiting.  Obviously, this

5    case has a long and complex history.  There's a motion for

6    class certification pending, the outcome of which may have a

7    significant impact on the scope of settlement negotiations.  So

8    it's perfectly fine if the answer is, look, we're always

9    interested in a settlement if that could be achieved, but we

10   just can't get there right now until we have more information.

11   If that's the answer, which is sort of what I've been assuming

12   all along because I think we've had an open line of

13   communication here and if you were ready to come back to the

14   table with my assistance, you could have told me that at any

15   one of the many conferences we've had or one of the many

16   letters you've submitted to me.  But I wanted to ask the

17   question out loud since you're here, and not only because Judge

18   Seibel asked me, but that's always a good reason to ask, too.

19           So, Ms. Landriscina, why don't you tell me where

20   things stand in that respect from the plaintiffs' perspective.

21           MS. LANDRISCINA:  Sure, your Honor.

22           So several months ago, I believe it was the fall, I

23   don't remember the exact date, plaintiffs did share a

24   settlement demand and we have been waiting for defendants to

25   respond to that.

```
 1                    THE COURT:  Okay.

 2                    MS. LANDRISCINA:  So our interest in settlement has

 3      remained.

 4                    THE COURT:  I'm sorry.  Say that again.  Your

 5      interest --

 6                    MS. LANDRISCINA:  Our interest in settlement remains.

 7                    THE COURT:  Okay.

 8              Mr. Conroy.

 9                    MR. CONROY:  Yes, your Honor.  So that is correct.

10      The plaintiffs sent a revised settlement demand that

11      specifically covered the set of claims in this case regarding

12      prolonged incarceration.  So the discussions have not covered

13      the second half of the claims in this case with respect to

14      community housing and services, so we're just really talking

15      about sort of the first piece of the case.  But that is

16      correct.  I agree that it was generally in the fall.  And so

17      the ball is still in our court.  It continues to be under

18      review.  In part, the delay was due to just a need for the case

19      team to attend to all of the discovery that we had going on,

20      but, fortunately, we're nearing an end to that process.  So I

21      can certainly inquire as to the status of our response and

22      getting authority to respond to that demand and check in again

23      on where we are.

24                    THE COURT:  Okay.  But it's your understanding --

25      thank you for that, Mr. Conroy.  It's your understanding,
```

1  though, that that would -- even if that were to somehow

2  miraculously come to a quick and efficient resolution, there

3  would still be the community housing and services component of

4  the case, which is, if I'm not mistaken, although I'm not as

5  deeply enmeshed in this as you all are, but it's part of the

6  Class certification motion anyway, right?

7            MR. CONROY:  That is correct, your Honor.

8            THE COURT:  That's helpful to know.  Thank you.

9            Listen, my door remains open.  Again, to the extent

10  you think it would be useful for me to reengage with you to try

11  to facilitate further discussions, I'm happy to do that.  I

12  understand it's a complex process on both sides.  There are a

13  lot of stakeholders involved and a lot of decision makers who

14  have to weigh in.  That's why we did what we did a couple of

15  years ago now where we sort of brokered a number of discussions

16  on a number of topics, then the parties would go back and

17  consult with their various constituents and we came back.  And

18  it was a multi-month process, frankly.  Again, I'm happy to

19  engage in that again if it becomes apparent that that would be

20  helpful, but it may make more sense for you to have direct

21  negotiations.  Of course, you can't have negotiations unless

22  both sides are participating in them.

23            So you can report back to plaintiffs' counsel,

24  Mr. Conroy.  I think that's the first place to go.

25            And if you all collectively think further discussions

1    with me would be helpful, let me know and we can talk about

2    what that would look like.  Okay?

3            All right.  Let's turn to the remaining questions as

4    to discovery.  Really the two questions are with respect to

5    potential deposition of plaintiff M.J. and the second is with

6    respect to how we handle the situation with plaintiff J.R.

7            Let's start with J.R. where the plaintiffs have said

8    now pretty consistently, I think, in submissions to me over

9    time that plaintiffs' position is that plaintiffs will not

10   oppose a motion by defendants to dismiss J.R. from the case.  I

11   have a number of thoughts as to why the plaintiffs' position is

12   framed that way informed in part by some other cases that I've

13   handled.

14           So I'm not sure if my conclusions are correct in that

15   regard, but before I start musing about that, Mr. Conroy, why

16   don't you tell me what the defendants' thoughts are here with

17   respect to J.R.

18           MR. CONROY:  Well, your Honor, at this point, it has

19   been quite some time since J.R. has participated in this case.

20   It's my understanding, and plaintiffs' counsel can confirm

21   this, that J.R. has just failed to communicate with counsel

22   about the case.  That, from our understanding, has been the

23   case since as long ago as the service of plaintiffs' motion for

24   class certification, which was February of 2023.  Since that

25   time, we have attempted to take J.R.'s deposition and the

1  response from plaintiffs' counsel is that he would not be

2  attending a noticed deposition.

3       THE COURT:  So the wrinkle, at least a little bit, is

4  in the very last part of what you said.  There has been a

5  noticed deposition?

6       MR. CONROY:  Well, you know, your Honor, we didn't

7  serve a notice because the response to the request to schedule

8  a deposition was he will not be attending.

9       THE COURT:  Understood.  So -- okay.  Continue, then.

10      MR. CONROY:  And I would say multiple requests.

11 There were at least two requests to schedule that deposition.

12      If the issue is just technically whether notice has

13 been served, I would ask for leave to serve that now

14 considering that we're extending the deadlines for some of

15 these other individuals, but, again, the response that we

16 received to our attempt to schedule was he will not be

17 attending a noticed deposition, period.

18      THE COURT:  Right.  Okay.  I understand.

19      And the basis, then, of a potential motion to dismiss

20 would be a Rule 37(d) motion for a party's failure to attend,

21 in this case, his own deposition?

22      MR. CONROY:  I think that's right, your Honor, as

23 well as Rule 41(b), a plaintiff who fails to prosecute or

24 comply with the rules or a court order.  I mean, he has not

25 participated in discovery.

1              THE COURT:  Other than by failing to sit for the

2    deposition, what other ways has J.R. failed to participate in

3    discovery?

4              MR. CONROY:  Well, I think that is the way.

5              THE COURT:  Okay.

6              MR. CONROY:  That is the way.

7              THE COURT:  Okay.  So that's fine.  That really gets

8    us more, to me, into a Rule 37(d) context.  The challenge with

9    Rule 37(d), and this is why I stopped when you said something

10   about notice, is that the requirement of Rule 37(d)(1)(A)(i) is

11   that the Court may order sanctions on a motion if a party

12   fails, after being served with proper notice, to appear for

13   that person's deposition.  And that's the text of the rule.

14              And this came up in another case of mine, which was

15   an old case and where, under very different circumstances, the

16   plaintiffs' attorney was no longer in contact with one of his

17   six or seven clients.  Maybe it was two of his six or seven

18   clients.  And in laying out the steps for a potential motion to

19   dismiss under Rule 37(d), one of the necessary steps that

20   everybody sort of agreed was necessary was that there had to be

21   service of a notice of a deposition, which, in that case,

22   plaintiffs' counsel accepted service and then sort of anomaly

23   opposed the motion anyway because I think of concerns about

24   what his obligations were to his client.  And that was my

25   reading between the lines the plaintiffs' position here.

1          The plaintiff doesn't have authority to agree --

2     plaintiffs' counsel doesn't have authority from their client,

3     J.R., to agree to voluntarily dismiss the case.  Why?  Because

4     the plaintiffs' counsel is not in touch with J.R., which,

5     again, whenever that happens, there's often a little bit of

6     blame to go around that people were not able to be in touch.

7     In this case, from everything I understand, it was not for lack

8     of trying on the part of plaintiffs' counsel to be in touch

9     with J.R.  It seems as though part of the problem here is that

10    he's just not a person with a fixed address.  I don't know what

11    his willingness or interest was in terms of continuing to

12    participate in the case.  We don't need to get into that in

13    detail at the moment.

14         But I guess my question is -- maybe this is best

15    directed to Ms. Landriscina.  In terms of the plaintiffs'

16    position here -- or counsel's position with respect to not

17    opposing a motion, in order for defense counsel to solidify the

18    grounds for a motion under Rule 37(d), it may in fact be

19    necessary to serve a deposition notice.  Would you be prepared

20    to accept service of a deposition notice?

21         MS. LANDRISCINA:  Yes, we would.

22         THE COURT:  Okay.  So, in that case, that should make

23    things more straightforward.

24         So, Mr. Conroy, why don't you go ahead and serve a

25    deposition notice for J.R. on plaintiffs' counsel by the end of

1     this week.

2          MR. CONROY:  That's fine, your Honor.

3          THE COURT:  Okay.  And then it seems as though the

4     next step from there will be -- I mean, if you serve it with a

5     notice date of two weeks from today or something like that,

6     then I think there will be appropriate grounds for the motion.

7          Again, ordinarily we might wait more time than two

8     weeks for a motion to dismiss under Rule 37(d) if somebody

9     failed to attend a deposition, but because of the long history

10    in this case, which can be laid out in succinct fashion, I

11    think, in a motion, I think it would be perfectly reasonable

12    and understandable to file that motion within two weeks of the

13    date for the noticed deposition.  So we'll pick specific dates

14    for that.  Let me just get my calendar up here.

15         I think that works as a path forward, Mr. Conroy.  Do

16    you have any other thoughts or suggestions to add on that?

17         MR. CONROY:  That sounds fine with me, your Honor.  I

18    just wanted to clarify.  On the date when we should file the

19    motion, we can go ahead and file the full motion or would it be

20    a premotion letter to Judge Seibel?

21         THE COURT:  Yes.  That's a fair question.  I was

22    going to say that that motion is not -- dispositive motions are

23    not currently referred to me in this case and I don't expect

24    that they would be consistent with Judge Seibel's general

25    practices.  And, frankly, if you were to file a motion to

dismiss for failure to prosecute and Judge Seibel would refer
that specific motion to me, I would have to write a report and
recommendation on it.  Although, if it were unopposed, Judge
Seibel could adopt that without much difficulty.

So the short answer is I don't know.  I suppose, at
least in theory, if there is a premotion conference letter and
the response from the plaintiffs' side is that there will be no
opposition to the motion, I think that Judge Seibel would have
the ability to construe the premotion conference letter as the
motion and then just grant it.  So that is probably the most
efficient way to go about it if Judge Seibel were to choose to
handle it that way, which, again, if there really is no
opposition to the motion, I don't think anybody is interested
in Judge Seibel writing a decision or me writing a decision on
this matter if it's unopposed.  It's just a matter of
procedurally documenting it and buttoning it up in a way that
makes the motion grantable on its face.

So I think that the solution should be, within two
weeks of the date for the deposition and J.R.'s nonappearance
at that deposition, which is what we anticipate will happen,
you should file a premotion conference letter directed to Judge
Seibel.  And I'll let Judge Seibel know what to expect here and
she can give you further guidance either with respect to that
letter, how she wants to handle it or whether she wants to
refer it to me for a report and recommendation.  Again, that

1    last option I think is probably least likely because it doesn't

2    seem the most efficient, but, in any event, I'll discuss it

3    with Judge Seibel so she knows to expect it and we'll see where

4    we go from there.

5         So we'll say -- today is the 21st, so let's say by

6    the 24th, Mr. Conroy, you will serve a notice for deposition.

7    If you notice it for two weeks out, which would be June 7th,

8    you then have until June 21st to submit a premotion conference

9    letter for a motion to dismiss, assuming that things unfold the

10   way that everybody anticipates, which is that J.R. will not

11   actually appear for the deposition.  Of course, if he does,

12   that's great, too, and you can conduct the deposition without

13   the need for the premotion conference letter.

14        Does that sound like a workable schedule, Mr. Conroy?

15        MR. CONROY:  It does.  Thank you, your Honor.

16        THE COURT:  Okay.

17        Ms. Landriscina, any concern?

18        MS. LANDRISCINA:  No concern.

19        THE COURT:  Okay.

20        So the remaining issue, then, is with respect to the

21   schedule for potential deposition of M.J.

22        The way this is laid out I found slightly confusing

23   only because, on the one hand, the defendants purportedly agree

24   to the extension of the deadline, but then offer a number of

25   conditions to that agreement.  Also, plaintiffs have proposed

1  this deadline, but then wish to reserve their rights as to

2  certain things.  The defendants don't want the plaintiffs to be

3  able to reserve their rights.

4          I can't stop them from reserving their rights,

5  Mr. Conroy.  I mean, if that means that, because they are

6  reserving their rights to make a future application based on

7  facts that are not yet present, that defendants can't,

8  therefore, consent to the extension that's requested, that's

9  fine.  You can take that position and then I'll just rule as to

10 whether the extension should be granted or not.  But I'm not

11 going to rule now.  It's far too speculative and hypothetical

12 for me to say that plaintiffs will not be allowed to seek these

13 accommodations should the factual circumstances evolve in such

14 a way as to make such an application appropriate.

15         I will say I think that plaintiffs recognize,

16 appropriately, that they would have, in fact, a heavy burden of

17 demonstrating that the proposed path of proceeding with

18 deposition by written questions or interrogatories in lieu of a

19 deposition, which is an even more unusual suggestion, would

20 somehow be warranted in this case, but, again, they're not even

21 suggesting that it is warranted at the moment.  Their hope is

22 that it won't be necessary.  But if circumstances evolve over

23 the next two months such that they feel that they can credibly

24 make that application, I definitely don't think that I'm in a

25 position to say right now that they can't.

1          I think you, Mr. Conroy, have put plaintiffs on

2    notice that if that is the application, you will be opposing

3    that application.  And I appreciate knowing that.  And I am

4    sure it's useful information for the plaintiffs to have.  But

5    in terms of the application that's before me now, it's all but

6    premature, I think, to get into that specifically.

7          Mr. Conroy, let me turn to you.

8          MR. CONROY:  Yes, your Honor.  Understood.

9          And I think the issue may be the way that sometimes

10   these joint letters sort of evolve over iterations and one side

11   says something and the other side adds something in, which is

12   not suggesting there was anything wrong with that, it's just I

13   think that's what led to the series of statements and

14   responses.

15         The bottom line, defendants do agree that the

16   deadline to take M.J.'s deposition can be extended to August

17   16th, which is the same day that plaintiffs' expert reports are

18   due.  We think that's an appropriate way to make sure that

19   we're keeping the remainder of the schedule for the case in

20   place.

21         I think our section was just to, as your Honor noted,

22   sort of stake out our position now to be clear that, one, we

23   don't think it should go beyond that.  We think that really

24   should be the outer limit of this piece of fact discovery so

25   that we're not getting into the period when we need to be

1    looking at our expert reports as well as preparing for summary

2    judgment, and not having a clear factual record at that point

3    would start to become prejudicial to the defendants.

4         And on the second point, I take your Honor's point

5    that we can save that dispute for another day if and when it

6    becomes necessary, but our position certainly would be that we

7    believe it's appropriate to take an oral examination and it

8    could be either through M.J. himself or, if that doesn't seem

9    possible due to his psychiatric condition, in our view, the

10   appropriate alternative is there should be a next friend

11   appointed and we can actually take a deposition of that

12   individual that would enable us to ask the type of follow-up

13   questions that is appropriate at an oral examination without

14   being forced to rely only on responses from counsel.

15        THE COURT:  Okay.  In terms of the next-friend idea,

16   which you did reference in here, what do you envision that

17   procedure looking like if we were to have to get to that point?

18        MR. CONROY:  So this is -- its Rule 17(c) of the

19   Federal Rules.

20        THE COURT:  Yes.  I have it open.  I'm familiar,

21   unfortunately, with Rule 17, which is a very -- let me put it

22   this way.  It's not a rule that comes up that often, but when

23   it does, it's often extraordinarily messy in my admittedly

24   limited experience with Rule 17.  But there just are a lot of

25   complexities to it.  That's why I ask what specifically do you

1    envision.  It is -- okay, go ahead.  I'll let you talk and then

2    I'll share my thoughts.

3                 MR. CONROY:  Yes, your Honor.

4                 So my understanding would be, and we've had other

5    cases representing the Office of Mental Health where this has

6    been the procedure, that plaintiffs' counsel should make a

7    motion under Rule 17 to seek appointment of a next friend who

8    could prosecute the matter on behalf of M.J.

9                 The standard, and I think we cited a Second Circuit

10   case for this, is somewhat flexible in terms of who can be an

11   appropriate next friend to speak on behalf of the individual

12   plaintiff.  And there would need to be some evidentiary showing

13   by the plaintiffs; although, there is no need for an

14   evidentiary hearing.  So it could be just on the papers.  I'm

15   looking at an order, it's not a published one, but from Judge

16   Pollack in the Eastern District from another case we were

17   involved in appointing a next friend without an evidentiary

18   hearing.

19                And so, in our view, if we're getting to the point

20   where M.J. is, just based on his psychiatric condition, unable

21   to sit and respond to questions, we're getting into the

22   territory where that may be an appropriate way to proceed.

23                THE COURT:  And the scope of the questioning that you

24   would intend to pursue with M.J. is of a sort that you think

25   could be adequately addressed by a next friend type of

1    appointment?

2              MR. CONROY:  Well, the next friend -- you know, the

3    hope would be that the next friend would become knowledgeable

4    about the plaintiff's circumstances, but there are certainly --

5    you know, there are details.  And this is a complicated story

6    of what has happened to this individual since his release from

7    prison, and I think we're entitled to ask those questions about

8    the housing he received; what happened; why those housing

9    opportunities didn't work out; you know, what services he's

10   received; what services he thinks he should have received, but

11   did not receive.  And so these are all questions that really

12   does take a bit of back and forth to get to the bottom of what

13   his views are and, again, the hope would be that the next

14   friend would become knowledgeable and be able to answer those

15   questions.

16             THE COURT:  Okay.  I'll hear from you on this,

17   Ms. Landriscina, in a second, but one other question with

18   respect to Rule 17(c)(2).

19             The second sentence of that rule says that the court

20   must appoint -- and you know this is about a guardian ad litem,

21   which is slightly different, but the court must appoint a

22   guardian ad litem or issue another appropriate order to protect

23   a minor or incompetent person who is unrepresented in an

24   action, which, again, if that sentence were to be read as

25   broadly as it seems, we would be appointing guardians ad litem

1    all the time in federal court and that just is not what happens

2    here, as you all know.  But the last part of that sentence, the

3    clause having to do with an individual who is unrepresented in

4    an action, does that limit, in your view, my authority to

5    appoint a next friend?  Because, of course, the plaintiff in

6    question here is not unrepresented.  He's, in fact, represented

7    by a whole a lot of people.  So how does that come into play?

8             MR. CONROY:  That has not been our experience, that

9    courts have so limited the construction of Rule 17.

10            Again, I might as well say what case I'm talking

11   about since I keep referring to Judge Pollack.

12            THE COURT:  Sure.

13            MR. CONROY:  This is Novell v. Sullivan in the

14   Eastern District, 05 Civ. 4310.  And in that case, the

15   plaintiffs were represented by Mental Hygiene Legal Service as

16   counsel, but the individuals, in the view of plaintiffs'

17   counsel, did not have capacity to participate in the lawsuit in

18   the same way we're talking about here in terms of participating

19   in discovery and so Judge Pollack appointed a next friend to

20   stand in their shoes even though they still had litigation

21   counsel from Mental Hygiene Legal Services.

22            THE COURT:  Okay.  Interesting.  And the docket

23   number on that again was 05 Civ. --

24            MR. CONROY:  4310.

25            THE COURT:  4310.  Okay.  Thank you, Mr. Conroy.

1          MR. CONROY:  Oh, and I'll give you the specific order

2     I'm talking about was entry number 245 in that case.

3          THE COURT:  Okay.  Thank you.

4          With a docket that large, it's helpful to have the

5     specific document number.  I appreciate that.

6          Okay, Ms. Landriscina, let me just give you a chance

7     to respond.  We've covered a lot of ground there.  If you want

8     to talk about the next-friend issues, that's fine.  If you

9     would like to talk about the possibility or the reservation of

10    rights with respect to alternative means of examination, that's

11    fine.  I'll just turn it over to you for a moment.

12         MS. LANDRISCINA:  Sure.

13         I think we indicated in our letter, we're -- it is I

14    think, as you say, a bit premature to know exactly what type of

15    accommodations plaintiff M.J. might need should he be able to

16    sit for his own deposition, but we wanted to reserve our right

17    and be open about the potential need for accommodations so that

18    we could have a discussion with opposing counsel in good faith.

19    So -- but we are also considering the need for a next friend to

20    be appointed given M.J.'s present condition and the fact that

21    it may persist beyond the next several weeks.

22         So our intention is to remain in contact with M.J.'s

23    treatment team to get updates about how he's doing, especially

24    given that he has now been mandated to attend certain

25    programming.  So, as a result of those conversations that we

1    expect to have with the treatment team, I think we'll be making

2    a decision about whether to proceed with a next friend.  And

3    we've begun that process already of reaching out to

4    individuals, but have not sort of confirmed who that would be

5    quite yet.

6            THE COURT:  Okay.  You anticipated my next question,

7    which was have you given thought to who a particular next

8    friend might be in M.J.'s life who might be able to speak to

9    these issues and who might be able to be prepared to testify as

10   to the issues in question.

11           MS. LANDRISCINA:  Yes.  We've been exploring certain

12   individuals, but --

13           THE COURT:  Okay.

14           MS. LANDRISCINA:  -- it's still ongoing.

15           THE COURT:  Okay.  Understood.

16           Unfortunately, this is where the complexity and

17   difficulty of any one individual's mental health condition runs

18   up against the needs of scheduling in a long-running case.

19           I do intend to agree with the defense position here

20   that the current deadlines for completion of expert discovery

21   and summary judgment practice should not be extended.  We've

22   had a lot of extensions.  They've been understandable and for a

23   wide range of reasons, but here, as we zero in on the end here

24   of fact discovery with this one last issue, it would really be

25   ideal if we don't have to extend the deadlines any further.

1           Now, of course, if you come back and tell me that

2    M.J. is available to be deposed, but, by the time that becomes

3    clear, the only available date for a deposition is August 22nd

4    instead of August 16th, I don't think anybody's going to make a

5    fuss about that.  But the notion that we give M.J. a couple

6    more months of grace here in the hope that this additional

7    programming and whatever other steps his treatment team is

8    taking with him may get him to a place where he could

9    comfortably sit for a deposition is fine.  And I'm glad that

10   the parties were able to reach an agreement as to that even

11   with the various caveats that were included in the letter.

12          So I will grant the extension to August 16th to

13   complete the deposition of M.J., but everyone should understand

14   that I'm highly unlikely to extend that absent some sort of

15   specific narrow compelling justification.  And I think

16   everybody is already operating with that idea in mind, which is

17   good.  I'm glad that you're all thinking about alternatives.

18          And really, though, to be able to put those

19   alternatives into effect in time to complete this deposition,

20   whether it's of M.J. or a next friend or something else that we

21   haven't yet contemplated or an alternative form of deposition

22   that plaintiffs may request, we're really going to have to make

23   a final decision on that by about the middle of July, I think,

24   unless I'm miscalculating the time frame here, because if there

25   is an application to be presented to me, I'll need time to

1    consider it and rule on it.  Then you'll need time to schedule

2    whatever deposition there may be, again, if it's not just a

3    traditional deposition of M.J.  So it really gives us about two

4    months to get to the bottom of it and make a decision one way

5    or the other.

6              Does that seem right, Ms. Landriscina?

7              MS. LANDRISCINA:  That sounds right to me.

8              THE COURT:  Okay.  You can be seated.  Thank you.

9              So let's work backwards from there.  I would say that

10   if --

11             I guess one more question for you, Ms. Landriscina.

12   Sorry.

13             The idea of a next friend is obviously something

14   you've contemplated and are giving active thought to, so that's

15   encouraging.  Could you imagine a situation -- if you do reach

16   the conclusion that M.J. is not going to be able to testify and

17   that perhaps the best way to get evidence in on behalf of M.J.

18   may be to have a next friend, is there a scenario where there

19   may be a joint application for the appointment of a next

20   friend?  Is that one of the possibilities in this mix here?

21             MS. LANDRISCINA:  A joint application with

22   defendants?

23             THE COURT:  Yes.

24             I mean, it might be your application, and I suppose

25   the defendants can take whatever position they want to take on

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

1    that, but how would you envision that being presented?

2              That would have to be your application, right?

3              MS. LANDRISCINA:  I believe so.  I think the

4    procedure we're contemplating would be plaintiffs moving for

5    appointment.

6              THE COURT:  Right.  Okay.

7              And then, Mr. Conroy, you could either object or not

8    to that; although, it may be that consenting to that

9    appointment would be the most straightforward path.

10             MR. CONROY:  I think that's correct.  Those would be

11   our options.  And we would not be looking to cause

12   complications if we're going down that road.

13             THE COURT:  Okay.  Again, this would be the first

14   time that I would have received such an application, so I'm

15   just trying to anticipate what it might look like in part to be

16   able to turn around a decision on it as quickly as possible.

17   If, as you say -- we'll take a look at this case that you cited

18   from Judge Pollack -- it can be done on the papers, without an

19   evidentiary hearing, and it's being done without objection from

20   the defense, that seems like something that could probably be

21   done with a memo endorsement almost.  I'm not sure that there

22   really needs to be a full-blown writing on that, again, if it's

23   uncontested.

24             So, okay.  The question is when should we set a date

25   for updating me as to what your next plan is going to be?  I

guess there's a couple of different options here.  One would

just be to have a date where you tell me all at once what the

plan is going to be, but I think better would be to have an

interim deadline for you to advise me as to where things stand

and we can sort of anticipate where things are going to go from

there.

So let's make that deadline June 28th,

Ms. Landriscina.  So please provide a letter as to the status

of M.J. and his ability to sit for a deposition at that time.

It's about six weeks from now.  Almost six weeks from now.

And again, I know that six weeks is a reasonable

amount of time in the course of litigation, but it's a blip on

the radar screen in terms of a person's mental health

development and I'm sensitive to that, I'm aware of that, but I

don't think there's any other alternative but to set a date for

you to provide me with an update.

It may be that there is no definitive update and

you'll just have to pick a course at that point and let me know

what you intend to do, because if you are going to have an

application that's going to require a ruling of one sort or

another, I really would want to have that by July 14th or so,

which is two weeks late -- I'm sorry.  I did this earlier

today, also.  July 12th, which is two weeks later, after the

June 28th date.  If that's going to be an application for the

appointment of a next friend, so be it.  If it's going to be an

application for an alternative means of taking a deposition,
then we'll need time for the defendants to respond to that as
well.  And that already gets us into a time frame where it's
going to be almost impossible to have a decision for you by
August 16th.  So we'll see.

What I don't want, though, is for there to be a first
shot, meaning you apply to be able to take the deposition
through some sort of -- have the deposition taken by some sort
of written means and then, if I deny that application, then you
come back and say, well, in the alternative, we would like to
have a next friend appointed.  You have to pick a path with all
the risks that that entails.  If I deny that application, then
you'll be out of time and you'll be out of luck in terms of a
path forward.  So it's fine if you want to pursue that, but, as
you have acknowledged, that's a difficult course and there's a
lot that you would need to show in order to justify that,
especially when there is an alternative here, which is to have
a next-friend appointment, in theory.  Now, there may be
reasons why M.J. doesn't want to do that and there may be
reasons why you don't think that's the best course of action.
I'll obviously leave that to your good judgment, but I don't
want it to be a series of applications where you think that you
can have one in reserve if one is not successful.  Does that
make sense?

MS. LANDRISCINA:  Yes.  All of that is understood.  I

1  think our intention would be to use the June 28th date to make

2  a decision regarding the path.

3          THE COURT:  Perfect.  Okay.

4          I think that that really can just be a letter from

5  the plaintiffs' side, Mr. Conroy.  Let's not have it be a joint

6  letter.  I think that creates its own logistical complications

7  sometimes.  So we'll say this.  If you want to respond to the

8  letter, Mr. Conroy, I'll give you until July 8th to respond.  I

9  was going to say July 5th, but that's a holiday and, in some

10 ways, having it by July 3rd would probably be best, Mr. Conroy.

11         MR. CONROY:  We can live with July 3rd, your Honor.

12         THE COURT:  Let's do July 3rd, then.

13         I don't think a response is necessary.  Right?  This

14 isn't going to be the application itself, but the question

15 would be if there's something that you think needs to be

16 communicated in terms of the defense position that I should

17 know before whatever the next filing is going to be.  So,

18 again, certainly not required to submit anything, but I'll give

19 you the option to do it just in case there's something that is

20 surprising to you in that June 28th submission from the

21 plaintiffs' side that you think requires a response.  Okay?

22         MR. CONROY:  Understood.

23         THE COURT:  All right.

24         And what I will likely do, then, is issue some sort

25 of order probably on July 8th if some order is required.

1          It may be, Ms. Landriscina, that you'll just lay out

2     clearly on June 28th that you intend to do X and then no

3     further guidance will be necessary from me, but if there is

4     further guidance necessary, I'll try to provide that by July

5     8th, but with the expectation that I'll want some sort of

6     definitive filing from the plaintiffs' side by July 12th if,

7     again -- there's so many contingencies here, it's hard to lay

8     it all out.  The simplest and most straightforward option would

9     be J.R. is going to be -- excuse me -- M.J. is going to be able

10    to sit for his deposition at some point before August 16th and

11    then you just need to pick a date, but if that's not the path,

12    if it's going to be that the plaintiffs will be submitting an

13    application either to have the deposition taken by an

14    alternative means or to have a next friend appointed, the

15    deadline for that will almost certainly be July 12th, unless

16    you tell me that that's impossible based on some inability to

17    get the substantiation you need from providers or whatever it

18    is.  But let's try and have that July 12th deadline in mind so,

19    again, I'll have time to turn around a decision hopefully then

20    with enough time for you to act on it by August 16th.  Okay?

21          MS. LANDRISCINA:  Understood.

22          THE COURT:  Great.  All right.  I think that gives us

23    a plan.

24          Mr. Conroy, any concerns about that schedule?

25          MR. CONROY:  No.  That all sounds fine.  Thank you.

1            THE COURT:  All right.  And again, it depends on what

2       happens with that June 28th submission.  Obviously, if there's

3       a filing on July 12th that requires a response from the

4       defense, we'll set a date for that.

5            My hope would be, Mr. Conroy, that if there is a

6       next-friend application to be filed by July 12th, you'll be

7       able to pretty quickly say whether the defendants have any

8       objection to that or not.  And if the answer is you're not

9       going to have any objection, you can probably tell me that

10      right away, meaning by Monday, the 15th or Tuesday, the 16th.

11      If the answer is we do feel we need to submit something in

12      response, I'll give you a couple more days to do that.  If the

13      application is to have the deposition taken by some means other

14      than an oral examination, I'll give you a little bit more time

15      to respond to that because that's more in the nature of

16      disputed briefing.  Okay?

17            MR. CONROY:  Understood.  Thank you.

18            THE COURT:  We'll figure out the exact schedule for

19      that.

20            Okay.  So I think that's a plan.  And I think that

21      will give us hopefully a path towards a resolution and a

22      completion of fact discovery by August 16th.

23            Is there anything else we should address, then, from

24      the Mr. plaintiffs' perspective, Ms. Landriscina?

25            MS. LANDRISCINA:  Nothing from plaintiffs' side.

1          THE COURT:  Mr. Conroy, from the defense side?

2          MR. CONROY:  Nothing further.  Thank you, your Honor.

3          THE COURT:  All right.

4          I'm not going to set another date for a conference.

5     I think we'll see how this all shakes out and what orders are

6     necessary and what steps are going to be taken.

7          Assuming we can get this all tied up and wrapped up

8     by August 16th, which is obviously everybody's hope, I will set

9     another control date probably for sometime later this year just

10    to make sure we have something on the calendar in the event

11    there's a need to come back; although, it very well may be that

12    there is not.  But it's always good to have a date and we'll

13    put that on the calendar so we can check back in and have it as

14    a reference point if need be.

15         All right.  Well, that said, we'll stand adjourned.

16         It is possible -- I mean, it's just weird to say

17    because we've been seeing each other over the years on this for

18    so many different reasons.  It is possible that this will be

19    our last conference in this case, in which case, it has been a

20    pleasure working with all of you on this, and I'll look forward

21    to seeing you again on other cases in the future.  I have seen

22    some of you on other cases already during the pendency of this

23    one.  But we'll stand adjourned for now.  Take good care,

24    everybody.

                                     ----

25