```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ---------------------------------------x
    M.G., et al,
 3
                             Plaintiff(s),  19 CV 639 (CS)(AEK)
 4      -vs-
                             STATUS CONFERENCE
 5
    ANDREW CUOMO, in his official capacity
 6  as the Governor of the State of New York,
    et al.,
 7
                             Defendant(s).
 8  ---------------------------------------x

 9      *Proceedings recorded via digital recording device*

10                             United States Courthouse
                               White Plains, New York
11
                               September 18, 2024
12

13  Before:  THE HONORABLE ANDREW E. KRAUSE,
                               Magistrate Judge
14

15  A P P E A R A N C E S:

16
    PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
17      Attorneys for Plaintiffs
    BY:  ETHAN STERN
18      EMILY A. VANCE

19  DISABILITY RIGHTS NEW YORK
        Attorneys for the Plaintiffs
20  BY:  ELIZABETH SUZANNE WOODS
        MARK SLADNER
21
    THE LEGAL AID SOCIETY
22      Attorneys for the Plaintiffs
    BY:  ELENA M. LANDRISCINA
23
    NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL
24      Attorneys for Defendants
    BY:  OWEN T. CONROY
25      ADAM J. SANSOLO
```

1              THE DEPUTY CLERK:  Good afternoon, all.  This is M.G.

2  v. Cuomo, docket 19 cv 639, the Honorable Andrew Krause

3  presiding.

4              Counsel, note your appearance for the record, starting

5  with Plaintiff's Counsel.

6              MR. STERN:  Ethan Stern and Emily Vance from Paul,

7  Weiss.

8              THE COURT:  Good morning, Mr. Stern; good morning, Ms.

9  Vance.

10             MS. LANDRISCINA:  Elena Landriscina, from the Legal

11  Aid Society.

12             THE COURT:  Good morning, Ms. Landriscina.

13             MS. WOODS:  Elizabeth Woods from Disability Rights New

14  York, and Mark Sladner from Disability Rights New York is also

15  on the call.

16             THE COURT:  Good morning, Mr. Woods; good morning, Mr.

17  Sladner.

18             Okay, and on the defense side?

19             MR. CONROY:  This is Owen Conroy from the New York

20  State Office of the Attorney General for the Defendants, and

21  also on the line is Adam Sansolo.

22             Good morning, your Honor.

23             THE COURT:  Good morning, Mr. Conroy; good morning,

24  Mr. Sansolo.

25             All right, we're here for a status conference.  We

1  were last together back on June 24th.  There's been various

2  activity on the docket since then, but my understanding of where

3  we are is that Plaintiffs have served their merits expert

4  disclosures and reports.  As of the last update, there was some

5  outstanding back and forth among the parties about Plaintiff's

6  request for supplementation of prior discovery responses from

7  the Defendants, but that issue is not ripe because there hasn't

8  really been any dispute presented.  Hopefully, you're working

9  through that.  That's all from the status letter at ECF no. 379.

10         At that point, there was also an issue with M.J.

11  having not appeared for his scheduled deposition and there's a

12  request from the defense to be able to file a motion to dismiss

13  for failure to prosecute, and we also are going to talk about

14  setting a date for a settlement conference, so that's my

15  understanding of, of where we are based on the docket.  I'm not

16  sure if there have been further developments since then.

17         So, Mr. Stern, you were the first person to speak on

18  behalf of the Plaintiffs' group, so I'll ask you, but if you

19  want to pass the baton to anybody else at any point for the

20  status update, feel free to do that.

21         MR. STERN:  Sounds good thank you, your Honor.  I

22  think you've got it all right, that's all correct.  We're

23  prepared with proposed dates for a settlement conference.

24  You're also correct that there was a pending dispute regarding

25  requests for supplemental discovery that we made.  We're still

Stat. Conf.                    M.G. v. Cuomo                              4

1  working through that with the Defendants.  We most recently sent

2  them an updated correspondence reflecting our position earlier

3  this week, so you're correct from our perspective that that is

4  not ripe for a dispute today.

5          And my colleague, Ms. Landriscina is prepared to

6  address M.J.

7          THE COURT:  Okay, thank you, Mr. Stern.

8          Ms. Landriscina.

9          MS. LANDRISCINA:  Thank you, your Honor.  I can

10 provide an update about where things stand with Plaintiff M.J.

11         So since the parties submitted their letter on August

12 28th, Plaintiff's Counsel have reestablished contact with

13 Plaintiff M.J.  We visited him at Riker's on September 11th and

14 he expressed the desire to sit for the deposition and continue

15 to prosecute this action on behalf of Ms. Landriscina and the

16 class.  That same day, we informed Defendants that M.J. is

17 available to sit for his deposition and we proposed four dates,

18 September 24th, through the 27th.  Defendants indicated that

19 they would be available on September 27th, but requested that --

20 the consent to take the deposition remotely.

21         Plaintiffs are agreeable to a remote deposition on the

22 condition that Plaintiff's Counsel would attend the deposition

23 in person, and we explained to Defendants that we would also be

24 seeking some reasonable accommodations for Plaintiff M.J. and

25 that M.J.'s mental health attorney would attend the deposition

1   now given that M.J. has impending criminal charges.

2        Defendants have received information that a hybrid

3   deposition typically isn't accommodated at Riker's Island.  They

4   agreed to provide the other accommodations except for one

5   accommodation we asked for, which the breakout room.  They

6   acknowledged, and we acknowledged as well, that the facility is

7   really in control of that.

8        We advised Defendants yesterday that we had reached

9   out separately to DOC counsel to ask about accommodations for a

10  hybrid deposition, and we received a response from DOC legal

11  counsel, Charlotte Owens, stating that they can either do a

12  fully remote deposition or a fully in-person deposition.

13  Plaintiff's Counsel has determined that we cannot effectively

14  represent Plaintiff M.J. and we're not present at the

15  deposition.  First and foremost, Plaintiff M.J. has requested

16  that his counsel be in person rather than over video

17  teleconference when we meet with him, and we have an obligation

18  to honor M.J.'s request with regard to representation.

19       We also believe it's necessary to be there in person

20  to support M.J., who, as the Court knows and as Defendants know,

21  has experienced multiple periods of instability over the last

22  year.  Depositions can be extremely stressful for anyone, but I

23  think this is especially true of individuals with serious mental

24  illness like Plaintiff M.J., and so -- but where things stand

25  right now, at least as far as Plaintiff's ability to sit for the

1 deposition, we haven't received further information from

2 Defendants about whether their position on the remote deposition

3 or the hybrid deposition has changed since we provided some more

4 information to them yesterday, but that's sort of the status of

5 where things are right now.

6          THE COURT:  Okay.  Thank you for that report, Ms.

7 Landriscina.

8          Mr. Conroy, let me turn to you.  Let's start with the

9 issue of the deposition and what the Defendants position is at

10 this time.

11          MR. CONROY:  Sure, your Honor.  So I don't think

12 there's really an issue about remote versus hybrid.  If Riker's

13 is not able to accommodate hybrid, we are willing to do the

14 deposition in person at Riker's on the 27th.

15          I think the only issue from our perspective is, you

16 know, we're beyond the fact discovery deadline, so this -- our

17 position has been with the ruling to do it next Friday, but we

18 would need the Court's permission to take it after the fact

19 discovery deadline.

20          THE COURT:  I appreciate that, Mr. Conroy.  Listen,

21 you know, there have been a lot of accommodations here for M.J.

22 given the circumstances that he is personally undergoing and the

23 efforts made by Plaintiff's Counsel to be in contact with him,

24 and I -- while I think it was not unreasonable for the

25 Defendants to be inquiring about filing a motion to dismiss for

Stat. Conf.                M.G. v. Cuomo                          7

1  failure to prosecute, what I had planned to say at this

2  conference today was that, as far as I was concerned, you could

3  file a pre-motion conference letter with Judge Seibel for that

4  purpose, but I was going to also strongly encourage you to see

5  if there was any chance of salvaging the deposition, because I

6  know that my standard practice is to give parties every

7  opportunity to express their interest in and willingness to

8  continue with the case even when there have been multiple

9  attempts to allow for that and to provide accommodations.

10         There are factors and circumstances here that really

11 do merit some additional leeway from the Court in trying to make

12 sure that we can get M.J.'s testimony into the record here and

13 allow his claims to proceed on the merits as opposed to through

14 a procedural default, especially now that we know that M.J. is

15 actively interested in continuing and pursuing his deposition.

16         And I fully appreciate, Mr. Conroy, that the

17 Defendants are amenable to that and I take your position to be

18 that you understand that that's a preferable outcome here at

19 least in terms of resolving cases on the merits and you're not

20 making the application.

21         So I will allow the deposition of M.J. to take place

22 on September 27th.  I will extend the fact discovery deadline

23 for the very narrow purpose of allowing that deposition to

24 continue.  That is not to be construed as an extension of the

25 fact discovery deadline for any other purpose, but we will make

1  a special carve out to allow this deposition to proceed for all

2  of the reasons that we've talked about at prior conferences and

3  for the reasons that have been put on the record here today.

4        I'm also glad to hear that the issue of remote versus

5  in person is not really in dispute, so that deposition will take

6  place, in person, on September 27th, presumably at a conference

7  room on Riker's Island, and I take it there's no objection to

8  having M.J.'s mental health attorney or -- that's how Ms.

9  Landriscina described this person, M.J.'s mental health attorney

10 be present for the deposition as well, Mr. Conroy?

11       MR. CONROY:  No, there's no objection from Defendants.

12 The only point we expressed is that we would expect that, you

13 know, additional attendees would not attempt to inappropriately

14 participate, and I think we're all on the same page about that.

15       THE COURT:  Good.  That was actually the one point I

16 wanted to make as well.  There should be one attorney

17 representing Mr. -- well, M.J. for purposes of the deposition

18 and interposing objections as needed and, obviously, the mental

19 health attorney, if he or she has concerns, that those can be

20 shared directly with the counsel from Plaintiffs' team who's

21 representing M.J. in this case and appropriate steps can be

22 taken, but, again, to, to minimize confusion and streamline

23 things to the greatest extent possible, there should be one

24 attorney on the Plaintiffs' side objecting, as needed, in the

25 course of the deposition.

Stat. Conf.                    M.G. v. Cuomo

1          I imagine that will make things a little bit less
2    confusing for M.J. as well, so I think that's a good point, I'm
3    glad you raised it, Mr. Conroy, and I'm glad everybody seems to
4    be on the same page about that.

5          Ms. Landriscina, no concerns there?

6          MS. LANDRISCINA:  No concerns there.  We're --
7    Plaintiffs are in agreement.

8          THE COURT:  Okay.

9          And, Mr. Conroy, we often this additional deposition,
10   the current schedule for expert discovery is going to be
11   attainable from the defense perspective?

12         MR. CONROY:  Yes, we do not want to move the -- those
13   deadlines.

14         THE COURT:  Okay.  That -- I thought that's what you
15   would say, but I did want to just double-check in case, you
16   know, there was going to be some need to make a brief
17   accommodation given the late nature of this deposition.

18         Again, if you came back to me and said you needed an
19   extra day or two or whatever it might be because it takes a
20   little while to get the transcript, again, I imagine everybody
21   will be understanding about that, but I also understand that
22   you're going to try to keep the dates as you have been
23   throughout, so you'll keep me posted there if there's anything
24   that needs to change.

25         Remind me again, Mr. Conroy, of what the deadline is

1 for the defense expert reports?

2          MR. CONROY:  It is October 11th.

3          THE COURT:  Okay.  So, then, I think the next issue

4 for us to turn to since this percolating discovery issue is not

5 ripe for resolution is to just to pick a date for our next

6 settlement conference.

7          MR. CONROY:  Your Honor, this is Owen Conroy, can --

8 may I just raise one more point on M.J. before we move on?

9          THE COURT:  Yes, absolutely.

10          MR. CONROY:  So because he's incarcerated at Riker's,

11 yeah, exactly, we'll have to file a proposed order, so my

12 intention would be, you know, as soon as we all hang up to send

13 the Plaintiff some proposed language about that that we can file

14 for your consideration.

15          I also wanted to note that I think that the City

16 Department of Corrections is going to want the order to include

17 his full name and book and case number, and so I, I think what

18 we'll have to do is also file a, you know, hopefully, short

19 letter motion to seal the proposed order and -- with a public

20 redacted copy and a sealed copy that contains his name and book

21 and case number.

22          THE COURT:  That, that's fine.  I mean, the...that's

23 fine.  All of that makes sense.

24          I understand that we need to have an order, and I

25 understand if the City Department of Correction has an issue

1 there requiring the order to have M.J.'s full name, so you can

2 submit all of that as a letter motion to seal and follow the

3 appropriate procedures for submitting a public version of the

4 order and a version that we will then, I guess -- I think what

5 we'll do is, we'll docket the, the redacted version of the order

6 and then we will just send you, by email, the version of the

7 order with M.J.'s full name on it, because the process for

8 filing that under seal is cumbersome on our end and doesn't

9 really achieve anything.  The point is for anybody who's

10 following this case that's interested in the public record would

11 be that the order has been issued, and that will be reflected by

12 the redacted version that will go on the docket, so just, just

13 mechanically, that's how we'll do it.

14          So when you submit the material, Mr. Conroy, you'll

15 submit an actual public version with just M.J.'s initials or

16 with a redaction, I suppose, of M.J.'s complete name.  That will

17 be the version that goes on the docket and we'll send you the,

18 the operative version for the Department of Corrections'

19 purposes separately.

20          MR. CONROY:  That sounds good.  Thank you, your Honor.

21          THE COURT:  Okay.  Thank you for flagging that as

22 well.

23          Okay, with that said, we'll turn, then, to picking a

24 date for a settlement conference.

25          You know, look, we've had a lot of settlement

1  conferences in this case, although we haven't had one in a long

2  time.  In fact, so long that most of the people on this call

3  were not part of the earlier settlement conference process which

4  took place...like in 2021?  Am I, am I remembering that

5  correctly?

6           Mr. Sansolo, you were there; Ms. Vance, I think you

7  were there; Ms. Landriscina, you were there.

8           2021, am I remembering that correctly?

9           MS. LANDRISCINA:  Yes, that's correct.

10          MR. SANSOLO:  Yes, your Honor.

11          THE COURT:  Okay.  And if others were there and I

12  don't specifically remember that, I do apologize.  There were

13  many participants in those sessions, and so we'll pick a date

14  and we'll set a three-hour block of time, as I usually do, and

15  you'll send me letters in advance of the conference sort of

16  laying out the contours of what the current demands are and what

17  the current proposals are.

18          I mean, my standard, my standard on the conference

19  order requires the parties to exchange at least one offer and at

20  least -- or at least one demand and at least one offer in

21  advance of the conference.  This is, obviously, not just a

22  simple case of exchanging monetary demands and the like.

23          I think the way we were pursuing this last time, you

24  know, when we went through that multi-day exercise over a period

25  of months in 2021, was that you would send me the actual written

1   language that was proposed and the responses that were

2   exchanged, because, again, the precision of the language is

3   important in a case like this and having the proposals really

4   fully fleshed out and laid out in advance, I think, is helpful

5   for the parties and, certainly, more helpful for me in trying to

6   figure out where the fault lines are and what I might be able to

7   do to try to facilitate a resolution.

8           So I, I take it that there has been some degree of

9   discussion about resolution that we're not going to be just

10  picking this up totally fresh when we get together in October;

11  is that fair to say?

12          I guess, Ms. Landriscina, I'll ask you that, and if

13  you want to hand that off to someone else, that's fine.

14          MS. LANDRISCINA:  Yes, that's fair to say.  There's

15  been some discussion between the parties.

16          THE COURT:  Okay.  I mean, one of the things that's

17  always been complicated about this case is what the scope have a

18  resolution would be.

19          I assume, although this may be a topic for discussion

20  in October, that the scope may be somewhat narrower now in the

21  wake of Judge Seibel's decision on the motion for class

22  certification, but from some of the letters that were exchanged

23  on other ancillary points recently, there may even be a

24  fundamental disconnect about what the scope of the resolution

25  should be.

Stat. Conf.                    M.G. v. Cuomo                        14

1          So for all those reasons, I'm going to ask you to

2   submit your pre-conference letters with the current state of

3   affairs further in advance of the settlement conference date

4   than I ordinarily would because, again, that's going to be

5   helpful for me to have a little bit of extra time to sit with

6   those materials and to understand exactly where everybody

7   stands.

8          I know one issue on the defense side from back then,

9   and just from my general experience and understanding, is that

10  sometimes it can be difficult to get responses turned around in

11  terms of what the agencies are willing to agree to because,

12  understandably, there's a review process and a lot of different

13  people have to weigh in on those issues, so, Mr. Conroy, Mr.

14  Sansolo, I mean, I'd like to have a formal proposal, you know, a

15  formal response to whatever the current proposal is or however

16  we frame it, a formal position from the agencies on the table

17  for discussion at our next settlement conference.

18          Is that going to be feasible if we do it in October?

19          MR. CONROY:  I think it is, your Honor.

20          I mean, I guess I would say from, from our

21  perspective, I, I think you...you homed in on the issue when you

22  talked about scope of the potential resolution and I think -- so

23  Plaintiff has sent us already some correspondence about their

24  views on settlement post resolution of the class certification

25  issues and we all had sort of agreed that they're -- the

1 Plaintiffs' letter to us would be more big picture than the

2 specific proposed language of a policy and that is because...I,

3 I think the main issue that we're going to wind up talking about

4 in October is, you know, is exactly the scope of the, of the

5 resolution, and from our perspective, it should be, you know,

6 what is the policy or the directive that confirms the cessation

7 of the prior practice that was challenged by the general class

8 and the RGS subclass.

9         I understand Plaintiffs' perspective to be that

10 they're looking for, you know, a, a much broader settlement that

11 requires some significant reallocation of resources and so I, I

12 think that's, that's the fault line that we're at right now, and

13 I think we, we can certainly, and we intend to, provide

14 Plaintiffs with a written response that explains, you know, the

15 policy and directive amendments we have in mind and, and

16 justifies that position from our perspective.

17         You know, I guess our current thinking was that it

18 might -- I'm not sure if we'll have the actual new directive on

19 the table because it seemed to us like we sort of need to

20 resolve the scope issue before we get into going back and forth

21 on the specifics of language.

22         THE COURT:  Okay.  That, that's a fair explanation,

23 Mr. Conroy, I appreciate that, and I think it will satisfy my

24 request if you do provide what you've just described, that is, a

25 description, with as much detail as possible, about what the

1  Defendants think is the appropriate scope and, and the contours

2  of a directive or directives that would address the issues that

3  fall within that scope, even if it's not the precise language of

4  the directive.

5        Because I understand that you may only have a certain

6  number of times that you can go back to the decision-makers and

7  ask them to wordsmith and tinker with the actual language of a

8  directive and you want to reserve that for a time for when that

9  is potentially going to be the end of the negotiation or at

10  least a further, a further stage of the negotiation where you're

11  closer to a final resolution if you can get to some sort of

12  conceptual agreement.

13        Maybe it will be that when you outline the contours of

14  those directives or that directive, it will become clear that

15  the parties are perhaps closer than they realize?  Maybe it will

16  become clear that the parties are so far apart that the

17  settlement conference is just going to confirm that you have

18  fundamentally different perspectives and it can't be bridged,

19  but I understand that that's where we are and this may have to

20  be, again, the first of multiple settlement conferences if we

21  can sort of progress at each stage of the process to a point

22  where it makes sense to continue to push forward.

23        Ms. Landriscina, is there anything you wanted to add?

24        I mean, I think I have a pretty good handle on it now

25  based on what's been submitted and what Mr. Conroy just said.  I

1  understand you may have a different view about what's

2  appropriate, but that will be laid out in the letters, but if

3  there's anything more I should know in terms of the mechanics

4  heading into this settlement conference, I'm happy to hear that.

5          MS. LANDRISCINA:  No, I think that's right.  I don't

6  think Plaintiffs have anything to add right now.  As Mr. Conroy

7  said, I think we're awaiting a response from Defendant, so we

8  look forward to receiving that and then, of course, preparing

9  the letter to the Court.

10         THE COURT:  Okay.  That, that's fine.

11         I guess one, one thing I'll add here is that, there --

12 it sounds like there's been a letter from the Plaintiffs, there

13 will be a response from the Defendants, then you'll both send me

14 letters that will perhaps elaborate on those points for my

15 benefit if there are things that you want to point me to or

16 additional material that you want to draw from from the record

17 in the case, especially the decision from Judge Seibel, to

18 emphasize why you think your view of the scope is the

19 appropriate view.

20         What I think would not be helpful is if the parties

21 don't have a chance to have -- look, if you want to have a

22 second exchange before the conference, that's fine, and you

23 should go ahead and do that.  What I think probably will not be

24 helpful is if the Plaintiffs have a further revision that is

25 provided or further update that is provided to the Defendants on

1 the eve of the conference.

2          Again, I'm not discouraging you from having a robust

3 discussion, in fact, you should absolutely talk as much as

4 possible between now and the date of the conference to see if

5 there is common ground, but what I, what I've seen in other

6 cases, I don't think this has specifically happened in this

7 case, but it's happened in other instances, where there's been a

8 robust, then, counterproposal from the Plaintiff or Plaintiffs

9 that comes in on the eve of the settlement conference and

10 essentially -- and upsets the balance of the whole discussion

11 because the Defendants haven't had an opportunity to consider

12 that and prepare for it and then we're sort of off talking about

13 something on the fly, which is not necessarily a great use of

14 everybody's time.

15          So if there's a response that the Plaintiffs want to

16 provide after receiving Defendants' letter, I'd just encourage

17 you to get that to the Defendants sufficiently in advance of the

18 conference so that they can process it, think about it, and

19 respond to you, again, so we're all kind of operating on the

20 same page.  Again, it may depend on when we set this conference

21 for.  I mean, if it's in early October, there probably won't be

22 time for additional exchanges.  If it's in later October, again,

23 I just don't want there to be a disconnect; I want everyone to

24 be able to prepare for this conference using sort of a quality

25 of information and not have there be a last-minute change.

1           If there is a last-minute change, we can always

2    postpone the settlement conference.  Again, if there are

3    productive discussions that are happening without the need for

4    Court involvement, that's always a good thing, but let's just

5    make sure that we're approaching it in a way that's going to

6    maximize the utility of that conference.

7           So with that said, let's look at the dates that you've

8    come up with and we'll compare them to my calendar and,

9    hopefully, figure out something that works.

10          Ms. Landriscina, what do you have as options?

11          MR. STERN:  This is Mr. Stern.  I think the three

12   options that we had discussed were October 7th, 9th, and 16th,

13   with a preference order of October 16th being our first choice,

14   October 7th being our second choice, and October 9th being our

15   third choice.

16          THE COURT:  Okay.  Well -- oh, sounds like we just

17   lost somebody.  October 16th, October 19th, and October 7th.  I

18   could do the morning of the 16th, with a nine-thirty to

19   twelve-thirty window, for a settlement conference.

20          That -- I assume, Mr. Stern, those were mutually

21   agreeable dates, right?

22          MR. STERN:  Yeah, yes, we had conferred.

23          THE COURT:  Okay, so we can, we can do it on October

24   16th from nine-thirty to twelve-thirty.

25          That's not a day that I usually schedule settlement

1  conferences, but I will make an exception here given the number

2  of different moving pieces involved and the fact that you've

3  already worked out those dates and proposed them, so we'll say

4  Wednesday, October 16th, from nine-thirty to twelve-thirty.

5          I'll ask that you submit your pre-conference letters

6  by the 9th, so a full week in advance.  We'll issue an order

7  memorializing those dates, and, again, it will be my standard

8  order that recites the information that I except the parties to

9  include in these pre-conference letters, but I will tweak it a

10  little bit just to make sure that your, your letters attach to

11  me -- include for me the proposals that you've exchanged.

12  Again, I think it will be helpful for me to see the Plaintiffs'

13  letter that has been provided and the defense letter that's

14  going to go back to the Plaintiff.

15          So, Mr. Conroy, in order for the Plaintiffs to be able

16  to absorb that letter and consider it in advance of that October

17  9th deadline, can you get that to them by some time maybe the

18  end of next week?  Is that feasible?

19          MR. CONROY:  We can do our best.  I think, I think --

20  I would hope that we can.

21          THE COURT:  Okay.  I'm not going to set a specific

22  deadline for that, but would you -- try to aim for the end of

23  next week or, at the latest, you know, the Monday or the Tuesday

24  of the following week, so they have at least, you know, a week

25  or more to, to think about that and really digest it and process

1 it before the pre-conference letters are due to me on the 9th.

2         I think this timing will resolve my concern about

3 further exchanges of letters, because there's really not going

4 to be time for that, but that way, again, the Plaintiffs will

5 have enough time to really meaningfully think about what you've

6 had to say so that we can have a productive discussion when we

7 get together on the 16th.

8         MR. CONROY:  Your Honor, this is Owen Conroy, may I

9 ask another question?

10         THE COURT:  Absolutely.

11         MR. CONROY:  Our client representatives who, you know,

12 of course, plan to attend pursuant to your order are located in

13 Albany and so our request would be that we do this remotely if

14 that's amenable.

15         THE COURT:  Oh.  Yes.  I assumed we would do it

16 remotely, as we did with all of our prior settlement

17 conferences, just because of the number of people involved.

18         I mean, I'm always willing to have a settlement

19 conference in person, but my default is to do them by video just

20 because that's how I had to do them for a long time when I first

21 started and I find that that's a perfectly effective way of

22 going about it, and we'll send conference links to everybody in

23 advance, but we definitely had productive discussions using the

24 video platform back in 2021 and just to minimize the burden and

25 expense for everybody, especially if people have to travel from

1  greater distances, but even, even to not have everybody have to

2  come up even from the city for this is probably more efficient.

3          So, yes, we'll do it by video and we'll send the links

4  a couple days in advance of that conference.

5          MR. CONROY:  Great, thank you.

6          THE COURT:  Okay, so conference on the 16th, letters

7  due on the 9th, and I think that, that covers everything.  We'll

8  look for the proposed order for M.J.'s deposition and we'll get

9  that turned around promptly, and I think we'll go from there.

10          Mr. Stern, or anybody on the Plaintiffs' side, is

11  there anything further we should address today from your

12  perspective?

13          MR. STERN:  That's it from our perspective.

14          THE COURT:  Okay.

15          Mr. Conroy, anything from the Defendant's point of

16  view?

17          MR. CONROY:  There's only -- there's one other issue,

18  I just want to raise it to flag it.  I don't know if it's a

19  dispute at this point, I just don't want to waive any of our

20  rights.

21          So yesterday evening, we got a supplemental production

22  from Plaintiffs and correspondence explaining that it was some

23  documents that were inadvertently not produced back, back during

24  fact discovery.  We haven't had a chance to look at it yet, but

25  just technically because we got it before today's conference; I

1  just wanted to flag it.  If -- we'll take a look and if we have

2  an issue, you know, we'll certainly come back to the Court.

3          THE COURT:  Okay, I appreciate you noting that, Mr.

4  Conroy, and you'll let me know if there's anything further that

5  we need to do on that point.

6          MR. CONROY:  We will.  Thank you.

7          THE COURT:  Okay.

8          All right, with that said, we'll stand adjourned for

9  today.  We'll be back together again in about a month, on

10  October 16th, I'll look for your letters on the 9th, and,

11  obviously, if anything urgent comes up between now and then,

12  you'll let me know and if necessary, we can always have you back

13  in sooner.

14          We'll stand adjourned for now.  Take care, everybody.

15          MR. CONROY:  Thank you, your Honor.

16          MR. STERN:  Thank you, your Honor.

17          THE COURT:  Thank you.

18          MS. LANDRISCINA:  Thank you.

19

20  Certified to be a true and accurate

21  transcript of the digital electronic

22  recording to the best of my ability.

23  _____

24  Tabitha R. Dente, RPR, RMR, CRR

25  U.S. District Court

Stat. Conf.                    M.G. v. Cuomo

```
 1  Official Court Reporter
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```