```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   -----------------------------------x
     M.G. et al.,
 3                    Plaintiffs,
                   -against-                    19 Civ. 639(CS)
 4                                              Bench ruling
     ANDREW CUOMO, in his official
 5   capacity as the Governor of the
     State of New York, et al.,
 6                    Defendants.
     -----------------------------------x
 7                                    United States Courthouse
                                      White Plains, New York
 8                                    September 29, 2021

 9            (All parties appearing via teleconference)

10
                            THE HONORABLE CATHY SEIBEL,
11                                District Judge

12   THE LEGAL AID SOCIETY
                    Attorneys for Plaintiffs
13   ELENA M. LANDRISCINA
     ROBERT QUACKENBUSH
14   STEFAN R. SHORT

15   DISABILITY RIGHTS NEW YORK
                    Attorneys for Pklaintiffs
16   JOSHUA M. ROSENTHAL
     ELIZABETH S. WOODS
17
     PAUL WEISS RIFKIN WHARTON & GARRISON LLP
18                  Attorneys for Plaintiffs
     CHANTALLE HANNAH
19   CRYSTAL L. PARKER
     SAMUEL MARGOLIS
20
     NEW YORK STATE OFFICE of the ATTORNEY GENERAL
21                  Attorneys for Defendants
     BY:  JANE R. GOLDBERG
22   ADAM J. SANSOLO
     OWEN T. CONROY
23
     US ATTORNEY'S OFFICE (SDNY)
24                  Attorneys for USA
     BY:  ANTHONY JAN-HUAN SUN
25
```

                Angela O'Donnell - Official Court Reporter
                            (914)390-4025

1              THE DEPUTY CLERK:  Judge, in the matter of M.G. v

2    Cuomo.  We have on the line representing plaintiffs, Ms. Elena

3    Landriseina, Mr. Joshua Rosenthal, Ms. Chantalle Hannah,

4    Ms. Crystal Parker, Ms. Elizabeth Woods, Mr. Robert

5    Quackenbush, Mr. Samuel Margolis and Mr. Stefan Short.  And we

6    have on for defendants from the State AG's office, Ms. Jane

7    Goldberg, Mr. Adam Sansolo, and Mr. Owen Conroy.  We also have

8    for interested party United States, Assistant United States

9    Attorney Anthony Sun.  Our court reporter Angela is on, and

10   Ryan is on.

11             THE COURT:  All right.  Good afternoon everybody.

12   First of all, let me apologize for keeping you waiting,

13   1:00 p.m. Board of Judge's meeting just ended.  May shock you

14   to learn that judges talk a lot.  So I'm sorry that I thought

15   we were safe at 2:45, but we weren't.  So sorry for keeping you

16   waiting.

17             Let me remind counsel when you speak, please, the

18   first word out of your mouth should be your last name.  Please

19   do not say this is Jane Goldberg for defendants, just say

20   Goldberg.  Don't worry about sounding impolite or anything.

21   The court reporter and I need to know right up front who's

22   speaking.  And if you forget to say your name first, you'll

23   probably get interrupted, which, of course, we don't want.  So

24   thank you in advance for remembering to say your last name

25   first.  And that goes even if you think it's clear who's

1    speaking.  Just try to make it a habit.

2            I have defendants' partial motion to dismiss the

3    second amended complaint.  Is there anything anyone wants to

4    add that's not covered by the papers?  If there isn't anything,

5    just don't say anything rather than having ten people chime in

6    to say no.

7            All right.  I'm assuming from the silence that nobody

8    has anything to add, so let me tell you how I come out.

9            I'm going to abbreviate the second amended complaint

10   as the SAC, it's ECF number 134.  I'm sure the parties are

11   familiar with the facts alleged in it.  I won't take the time

12   to restate them but will refer to them as relevant.

13           Procedural background is as follows:  The original

14   complaint was filed January 23, 2019.  We have an initial

15   conference in May.  I gave plaintiffs leave to amend the first

16   amended complaint or FAC was filed on June 3, 2019.  That

17   summer I referred the case to Magistrate Judge Smith, who has

18   since retired, for general pretrial supervision.  After a full

19   briefing on defendants' first motion to dismiss, plaintiffs

20   asked Judge Smith for permission the amend the FAC to add a

21   discharge class, quote unquote, of plaintiffs who are

22   unnecessarily placed in segregated settings or put at risk of

23   institutionalization upon their discharge from prison.  And

24   Judge Smith issued an opinion and order, which is ECF 133

25   allowing the filing of the SAC.

1          I granted in part and denied in part defendants'

2     first motion to dismiss on September 25th of last year.

3     Defendants then asked for another premotion conference seeking

4     to dismiss parts of the SAC.  We had that conference in

5     November and this motion followed.

6          The motion seeks to dismiss for lack of subject

7     matter jurisdiction and particularly the state claims.  As we

8     all know, I won't bother with the citations because these

9     principles are so well-known, a federal court has subject

10    matter jurisdiction over a claim only when it has the authority

11    to adjudicate it.  Subject matter jurisdiction is a threshold

12    inquiry and requires dismissal if the Court doesn't have

13    statutory or constitutional power to adjudicate the claim.

14    Burden is on the plaintiff to show by a preponderance that

15    subject matter exists.  The Court can consider evidence outside

16    the pleadings in making this determination.  The Court has to

17    take the facts alleged in the plaintiff as true and draw all

18    reasonable inferences in favor of plaintiff, but jurisdiction

19    has to be shown affirmatively and that's not done by

20    inferences, inferences favorable to the party asserting

21    jurisdiction.

22          When a defendant moves to dismiss both for lack of

23    subject matter jurisdiction and on other grounds, the Court has

24    to address jurisdiction first.

25          As for failure to state a claim, we're all familiar

with *Ashcroft v. Iqbal* and *Bell Atlantic v. Twombly*, I won't take the time to summarize those cases.

Before I get into the substance of the motion, I want to address the issue of the statements, policies, and regulations that defendants cite in their memorandum of law, which is ECF number 158, which I'm going to call defendants' brief at pages 5 to 11.  Plaintiff argues in their brief, which is ECF number 159, that it's improper for me to consider those on the motion to dismiss.

Evidence Rule 201 allows courts to take judicial notice of publicly available documents on a Rule 12(b)(6) motion to dismiss, but a court should generally take judicial notice to determine what statements the documents contain, not for the truth of the matters asserted.  *Continental Casualty v. Marshal Granger*, 921 F.Supp. 2d 111, 117 (Southern District, 2013) collecting cases.  So I take judicial notice of the publicly available government documents such as the state websites, policies, and regulations but limited to what they say and only for the fact of what is said.  At this stage, what those documents say is not particularly relevant as the crux of plaintiffs' allegations is that defendants' implementation of those policies is flawed and the stated policies are not the actual policies.  I also do not consider the February 12, 2020, interrogatory response that the parties debate because plaintiffs did not rely on that response in framing the

1   complaint, but even if I did consider it, it is not

2   particularly relevant for essentially the same reason.  On a

3   motion to dismiss under Rule 12(b)(1), I can consider evidence

4   outside the pleadings, but the same logic dictates that while I

5   can consider what the state's documents say or what the state's

6   representatives say about state policies, I cannot presume that

7   those policies are followed as a factual matter given

8   plaintiffs' factual allegations to the contrary.

9        Moving on to the more substantive part of the motion,

10  defendants raise two arguments; first, that the discharge

11  plaintiffs lack standing, and second, that they fail to state a

12  plausible claim under either the Americans with Disabilities

13  Act or ADA, or the Rehabilitation Act or RA.

14       I'll start with standing.  As we know, Article III

15  limits the Court's jurisdiction to actual cases and

16  controversies.  *See Lujan v. Defenders of Wildlife*, 504 U.S.

17  555, 559.  Constitutional standing is a threshold question

18  determining the power of the Court to entertain the suit.

19  *Leibovitz v. New York City Transit Authority*, 252 F.3d 179,

20  184.  Whether a plaintiff has standing depends on the nature

21  and source of the claims asserted and is determined by whether

22  the constitutional or statutory provision on which the claim

23  rests properly can be understood as granting a right to

24  judicial relief.  *E.M. v. New York City Department of*

25  *Education*, 758 F.3d 442, 450.  There are three constitutional

1  standing requirements that every plaintiff must satisfy to

2  invoke the jurisdiction of the federal courts:  One, an injury

3  in fact, in other words, a concrete and particularized invasion

4  of a legally protected interest; two, causation, in other

5  words, a fairly traceable connection between the alleged injury

6  in fact and the alleged conduct of the defendant; and three,

7  redressability, in other words, that it's likely and not merely

8  speculative that the plaintiffs' injury will be remedied by the

9  relief plaintiff seeks in bringing suit.  *Sprint Communications*

10  *v. APCC*, 554 U.S. 269, 273-74.

11         These minimum requirements exist in all cases

12  separate and apart from whatever statutory standing

13  requirements may exist in the laws under which the plaintiff is

14  suing.  *See Alliance for Environmental Renewal v. Pyramid*

15  *Crossgates*, 436 F.3d 82, 85-86.  And as I said, the burden is

16  on the party invoking jurisdiction to show that that party has

17  standing.  *Lujan* at 561.  Defendants argue that plaintiffs have

18  not met the injury in fact or traceability requirements, at

19  least to the extent that plaintiffs' theory is that defendants'

20  actions put them at risk of institutionalization.  Defendants

21  do not seem to dispute that plaintiffs have standing to the

22  extent their theory is that their placements violate the

23  integration mandate through unjustified segregation or

24  isolation.

25         I'll first address injury in fact.  The requirement

Angela O'Donnell - Official Court Reporter
(914)390-4025

1  of injury in fact is a hard floor of Article III jurisdiction

2  that can't be removed by statute. *Summers v. Earth Island*, 555

3  U.S. 488, 497.  To show injury in fact, the plaintiff has to

4  show an invasion of a legally protected interest which is

5  concrete and particularized. *Lujan* at 560.  Particularized

6  means that it affects the plaintiff in a personal and

7  individual way. *Lujan* at 560n.1.  Concrete means the injury is

8  real and not abstract. *Spokeo v. Robbins*, 136 S.Ct. 1540,

9  1548.

10         Constitutional standing requires a concrete injury

11  even in the context of a statutory violation, and the risk of

12  real harm can satisfy the requirement of concreteness in

13  certain circumstances. *Spokeo v. Amnesty International*, 568

14  U.S. 398.  Defendants argue that plaintiffs' asserted injuries

15  under their risk of institutionalization theory, namely, that

16  they were released to shelter-like facilities that lacked

17  proper care, housing, and mental health services that

18  exacerbated their mental health conditions which caused an

19  increased risk of institutionalization, are speculative, not

20  sufficiently imminent, and required the court to follow an

21  attenuated chain of inferences.

22         I disagree with defendants' framing.  Contrary to

23  defendants' assertions, the Second Circuit has explained that

24  "a plaintiff need not wait until the harm of

25  institutionalization or segregation occurs or is imminent in

1   order to bring a claim under the ADA." *Davis v. Shah*, 821 F.3d
2   231, 262.  While *Davis* did not consider the issue of standing,
3   I find its analysis obstructive, particularly because the Court
4   of Appeals would have been obligated to raise the issue on its
5   own had it had doubts as to standing and therefore subject
6   matter jurisdiction.  *See e.g. Pashaian v Eccelston Properties*,
7   88 F.3d 77, 82 and *Schwartz v. HSBC*, 2017 WL 95118, at *4
8   (Southern District, January 9, 2017), *aff'd* 750 F.App'x 34.  In
9   *Davis*, the Circuit held that where "a public entity's failure
10  to provide community services will likely cause a decline in
11  the health, safety, or welfare that would lead to the
12  individual's eventual placement in an institution," that
13  plaintiff properly pleads an ADA claim.  That's *Davis* at
14  262-263.  The Second Circuit was quoting a Department of
15  Justice statement on the integration mandate adopting the DOJ's
16  interpretation as the Circuit standard because the integration
17  mandate "is a creature of the DOJ's own regulations" meaning
18  that the DOJ's interpretation of that provision is "controlling
19  unless plainly erroneous or inconsistent with the regulation."
20  That's *Davis* quoting *Auer v. Robbins*, 519 U.S. 452, 461.  *Davis*
21  means that in this context the injury in fact is not actual or
22  imminent institutionalization, but rather the failure to
23  receive services, which results in plaintiffs' increased
24  likelihood of institutionalization.  This is in keeping with
25  the principle that "while the injury-in-fact requirement is the

1  hard floor of Article III jurisdiction that cannot be removed

2  by statute, it has long with recognized that a legally

3  protected interest may exist totally by virtue of statutes

4  creating legal rights, the invasion of which creates standing,

5  even though no injury would exist without the statute."

6  *Donoghue v. Bulldog Investors*, 696 F.3d 170, 175.  Because the

7  Second Circuit defined as an actionable right under the ADA a

8  public entity's failure to provide necessary services that puts

9  plaintiff at a substantial risk of requiring institutional

10  care, *Davis* at 259, and because plaintiffs have alleged just

11  that, I find that plaintiffs' allegations satisfy the Article

12  III requirement for a concrete and particularized injury.

13       Other courts have agreed that "currently lacking

14  necessary supports and services that could enable plaintiffs to

15  live independently in the community," causing an "exacerbation

16  of...their disabilities" satisfies the injury-in-fact

17  requirement.  *Guggenberger v. Minnesota*, 195 F.Supp. 3d 973,

18  991-92 (District of Minnesota, 2016), *cf. Rogers v. Cohen,* 2019

19  WL 938874 at *4 (Eastern District of North Carolina,

20  February 25, 2019) which found no injury in fact where the

21  plaintiffs had not alleged that they were presently lacking any

22  supports or services.  And while defendants argue that the

23  reasoning in *E.B. v. Cuomo,* 2020 WL 3893928 at *1 and *6

24  (Western District, July 11, 2020) should control here, I find

25  that case inapplicable for two reasons.  First, the court in

1    that case applied the imminent risk of institutionalization

2    standard that defendants urge here which, respectfully, I do

3    not think is proper in light of *Davis*.  Second, the facts in

4    *E.B.* are distinguishable, as the Court in that case reasoned

5    that the plaintiffs' alleged risk was too far removed to

6    establish standing because the plaintiffs had caregivers

7    providing housing care and services and plaintiffs therefore

8    were not facing a substantial risk of institutionalization

9    because they would only hypothetically be institutionalized if

10   their caregivers hypothetically could no longer care for them.

11   That's *E.B.* at *6.  Here, in contrast, there is nothing

12   hypothetical about the proposed discharge class's alleged

13   injury.  They allege that they were released to shelters and

14   shelter-like facilities that utterly lacked the proper housing,

15   care, and services for their serious mental illness, and that

16   this lack of care and services exacerbates their mental health

17   conditions and results in an increased likelihood of

18   institutionalization.  In other words, in *Davis* the injury was

19   the lack of government provided services that would likely lead

20   to decline and institutionalization.  In *E.B.*, the lack of

21   government provided services would not likely lead to decline

22   and institutionalization because plaintiffs were, in fact,

23   receiving the services, albeit from their families rather than

24   the state, and the prospect of losing the services was

25   hypothetical.  Here, plaintiffs allegedly are not getting the

1    services.  So putting aside *E.B.*'s application of the wrong

2    standard, this case on the alleged facts is like *Davis* not like

3    *E.B.*

4            In sum, plaintiffs have plausibly alleged that

5    they're subject to conditions constituting a likelihood of

6    decline which would lead to eventual placement in an

7    institution, that serious risk of institutionalization

8    establishes an injury in fact sufficient to carry their

9    integration mandate claim.  *Davis* 262, 263.  So they've pleaded

10   an injury in fact for purposes of Article III standing.

11           Now turning to traceability or causation.  To satisfy

12   the traceability requirement, a plaintiff must plead a causal

13   connection between the injury and the defendant's conduct.

14   *Kreisler v. Second Avenue Diner*, 731 F.3d 184, 187.  While the

15   injury must be fairly traceable to a defendant's actions and

16   not the result of the independent action of some third party

17   not before the Court, *Lujan* at 560, the "fairly traceable"

18   standard is "relatively modest" requiring something "lower than

19   proximate cause."  *Rothstein v. UBS*, 708, F.3d 82, 92.  Article

20   III requires no more than *de facto* casualty.  *U.S. Department*

21   *of Commerce v. New York*, 139 S.Ct. 2551, 2566.

22           Plaintiffs here allege and defendants seem to concede

23   that defendants administer the mental health system in New York

24   State and are responsible for developing integrated services,

25   coordinating and planning with local governments regarding

1    community-based care, and determining funding and conducting

2    oversight for the same.  See SAC paragraphs 363-65, 368-70,

3    392-414, 442-48.  Also, see defendants brief another 5-9.

4    Further, the SAC contends that defendants are responsible for

5    developing and implementing plans for post-prison discharge,

6    e.g. SAC paragraphs 374, 377-78, 442-57, 575-78, 586-87,

7    including approving prisoners' proposed residences, paragraphs

8    234, 297, 427, 452, and 457.  Plaintiffs' allegations, which I

9    must construe as true at this stage, are that defendants carry

10   out these functions in a manner that denies them the community

11   based mental health housing and supportive services that they

12   need to avoid institutionalization.  Paragraphs 13 and 374, see

13   paragraphs 363-65.  To support these claims, plaintiffs plead

14   detailed facts about how defendants' alleged failures to make

15   available the community-based mental health housing and related

16   supportive services, plaintiffs need to remain in integrated

17   settings, place plaintiffs at serious risk of

18   institutionalization, e.g., 225-64, 273-75, 290-99, 316-17,

19   320-21, and 331-51.  I therefore find plaintiffs have satisfied

20   the traceability requirement.  *See Guggenberger*, 198 F.Supp. 3d

21   at 992 where allegations of the defendants' responsibility to

22   administer a waiver program, their mismanagement of that

23   program, and plaintiffs' need for and lack of that program

24   services was sufficient to show a causal connection.

25          Defendants argue that the injuries are not traceable

1   to their conduct because plaintiffs' long history of
2   disability, "predates the events at issue here" because
3   plaintiffs have a "baseline risk of institutionalization" and
4   that they lack standing because they fail to quantify how much
5   risk is due to defendants' conduct.  That's in defendants'
6   brief at 16.  I don't see how this argument can be squared with
7   *Davis* which recognized integration mandate claims by people
8   with pre-existing conditions who could receive the necessary
9   services in integrated settings and yet were at risk for
10  institutionalization because they were not getting the
11  services.  Contrary to defendants' suggestion, in their reply
12  brief at pages 4-5, plaintiffs at this stage do not have to
13  show that any future possible reincarceration would be the
14  result only of the lack of services, nor do they have to rule
15  out that any future possible reincarceration would be based on
16  something other than the lack of services to show causation or
17  traceability for standing purposes.  I agree with plaintiffs
18  that they need not quantify how much of the risk is
19  attributable to defendants, let alone show that it is wholly
20  attributable to defendants, as long as they sufficiently show
21  some reasonable connection between the defendants' conduct and
22  their harm, which they have done through their allegations that
23  the lack of services likely will lead to decompensation and
24  reinstitutionalization.  *See Rothstein v. UBS*, 708 F.3d 93,
25  which found traceability where the defendants' conduct

1    contributed to the harm, even though plaintiff had not alleged

2    the defendant to be the primary or significant cause of the

3    harm.

4           Further, to the extent that defendants argue that the

5    private or municipal organizations and staff are a more direct

6    cause of plaintiffs' injuries, "the fact that there is an

7    intervening cause of the plaintiffs' injury may foreclose a

8    finding of proximate cause but is not necessarily a basis for

9    finding that the injury is not fairly traceable to the acts of

10   the defendants," *Rothstein* at 92, and traceability is not cut

11   off by the predictable effect of government action on the

12   decisions of third parties. *Department of Commerce v. New York*

13   at 2566.  Standing under Article III requires only that

14   plaintiffs alleged a connection between defendants' conduct and

15   the alleged injury, which they have done. *See Parrales v.*

16   *Dudek*, 2015 WL 13373978 at *4 (Northern District of Florida,

17   December 24, 2015) which rejected the state's traceability

18   argument that any failings in the delivery of services were the

19   fault of managed care organizations, because the state was

20   responsible for administering the program and even harms that

21   flow indirectly from the defendant's actions can suffice for

22   traceability.

23          Finally, while I do not think defendants' counsel

24   intended their argument to be "ableist" as plaintiffs suggested

25   in their brief at pages 12 to 13, it did come uncomfortably

1   close to suggesting that any future reinstitutionalization

2   would be plaintiffs' own fault or at last the fault of their

3   illnesses rather than any failing by the state.  I do not think

4   if the allegation were that the a state was failing to provide

5   chemotherapy that the state would argue that the plaintiff's

6   death was the fault of the baseline cancer rather than any

7   failing by the state.  I do not mean to suggest that plaintiffs

8   are entitled to relief, I only mean to suggest that for

9   purposes of standing, they have sufficiently described a

10  connection between the state's alleged failing and the injury.

11          Turning now to the 12(b)(6) motion.  Title II of the

12  ADA mandates that "no qualified individual with a disability

13  shall, by reason of such disability, be excluded from

14  participation in or be denied the benefits of the services,

15  programs, or activities of a public entity, or be subjected to

16  discrimination by any such entity."  That's 42 U.S. Code,

17  Section 12132.  To state a claim for discrimination under

18  either the ADA or section 504 of the RA, a plaintiff must

19  plausibly allege that, one, they were a qualified individual

20  with a disability, two, they were excluded from participation

21  in a public entity's services, programs, or activities or were

22  otherwise discriminated against by the public entity, and

23  three, the exclusion or discrimination was due to their

24  disability.  *B.C. v. Mount Vernon School District*, 837 F.3d

25  152, 158.  Actions under the ADA and the RA are generally

1    equivalent.  The courts in this circuit analyze them together.

2    *Dean v. University at Buffalo School of Medicine*, 805 F.3d 178,

3    187; *see Rodriguez versus City of New York*, 197 F.3d 611, 618.

4    The primary difference between the two statutes is that the RA

5    requires the plaintiff to plead that the defendant receives

6    federal funding and the ADA does not.  Defendants here don't

7    challenge that they received such funding, so the two statutes

8    of appropriately analyzed together.  Both are to be construed

9    broadly to effectuate their remedial purposes.  *See Henrietta*

10   *D. v. Bloomberg*, 331 F.3d 262, 279.

11           "The unjustified institutional isolation of persons

12   with disabilities is, in and of itself, a prohibited form of

13   discrimination."  That's *Davis* at 261.  Thus, the ADA at

14   section 504 of the RA requires states to administer their

15   mental health programs "in the most integrated setting

16   appropriate to the needs of qualified individuals with

17   disabilities."  *Olmstead v. L.C.*, 527 U.S. 581, 592, *see* 28

18   C.F.R. section 35.130(d) and 28 C.F.R. section 41.51(d), and 45

19   C.F.R. section 84.4(b)(2).  Under this standard, commonly known

20   as the integration mandate, a plaintiff properly pleads an

21   *Olmstead* claim if the plaintiff alleges that treatment

22   professionals have determined that community based services are

23   appropriate, the plaintiffs do not oppose such services and the

24   services can be reasonably accommodated.  *Davis* at 262.  The

25   ADA and section 504 provides individuals with a cause of action

1    to challenge a state's failure to administer, operate, and fund

2    services consistent with the integration mandate and that

3    results in segregation or risk of segregation.  See the cases

4    cited in plaintiffs' brief at 16-17.

5            As I summarized earlier, I find that plaintiffs state

6    a claim based on defendants' alleged failures in administering

7    and implementing community-based mental health service and

8    housing.  Plaintiffs allege that defendants, while controlling

9    where plaintiffs live as parolees or post-release supervisees,

10   unnecessarily place them in segregated settings or fail to

11   provide needed community-based housing and services, thus

12   putting them at risk for institutionalization in a segregated

13   setting.  In other words, even though defendants recognize that

14   plaintiffs could function with community-based services, they

15   do not provide sufficient such services, so plaintiffs either

16   receive services in a segregated setting or receive inadequate

17   services likely to lead to decompensation and reentry to a

18   segregated setting.  As noted earlier, *Davis* makes clear both

19   unjustified placement in a segregated setting and a placement,

20   creating a serious risk of institutionalization or segregation

21   are sufficient to make out a violation.  *Davis* at 261-262.  And

22   on the latter prong, all a plaintiff must allege is that a

23   public entity's failure to provide services will likely cause a

24   decline in health, safety, or welfare that would lead to the

25   individual's eventual placement in an institution.  *Davis* at

1   263, *see Edelson v. Chapel Haven*, 2017 WL 810274 at *9,

2   (District of Connecticut, March 1, 2017).

3         Plaintiffs have plausibly alleged a violation of the

4   integration mandate.  The arguments advanced by the defendants

5   that their filing of a single point of access application to

6   plaintiffs' county of release does not really reflect a

7   determination that plaintiffs need housing or mental health

8   services, that local governments and private licensees are the

9   entities actually failing to provide the services in question,

10  that the settings in which plaintiffs were placed were not, in

11  fact, segregated or that its wait lists are sufficient

12  reasonable to be permitted under *Olmstead* all raise factual

13  issues and are better reserved for summary judgment on a fully

14  developed record.

15        I also note that their argument regarding the single

16  point of access applications explicitly relies on the

17  interrogatory response that I've already stated is not

18  appropriate for me to consider on this motion.

19        So for these and other reasons laid out in

20  plaintiffs' brief, as well as the DOJ's brief, I find that

21  plaintiffs have stated valid ADA and RA claims.

22        And just parenthetically, *Davis* noted that the DOJ's

23  interpretation of the integration mandate is ordinarily

24  controlling.  I do not think the statement is true of the DOJ's

25  application of its interpretation to the allegations in a

1  particular complaint, so I do not regard the DOJ's brief here

2  as controlling, but I do find it to be well-reasoned and

3  persuasive.

4       So for the foregoing reasons the motion is denied.

5  The Clerk of Court is to terminate ECF numbers 155 and 156.

6       I know you are all working with Judge Krause on

7  either resolving the case in whole or in part or moving on with

8  discovery, so I don't think there's anything more for me to do

9  until he tells me that he's finished with you all.  Am I right

10  about that?

11       MR. SANSOLO:  Yes, your Honor, the only concern is

12  related to responding to the second amended complaint.  At this

13  time, given the length of the second amended complaint and the

14  number of paragraphs, following your order normally we'd have

15  14 days to respond.  Given the parties' current discussions in

16  settlement, we would either ask a stay of that time to respond

17  or an extension of time of 60 days to be able to respond to

18  provide an answer to the second amended complaint.

19       THE COURT:  What's plaintiffs' view on that?

20       MS. WOODS:  We are happy to discuss it.  We

21  anticipate agreeing to an extension.  I think we need to

22  discuss it amongst ourselves.

23       THE COURT:  All right, well why don't we do this,

24  discuss it amongst yourselves, discuss it with defendants'

25  counsel, and why don't we say by a week from today, which will

1    take us to October 5th, you'll send me a letter with hopefully

2    an agreed-upon proposal, or if not, your dueling proposals.  I

3    suppose I could punt this to Judge Krause, but I won't.  I'm

4    punting everything else to him.  So send me a letter, and

5    hopefully you'll be able to agree on something.  If not, I will

6    Solomonically make a decision and you can take it from there.

7            MR. SANSOLO:  And then with regard to the -- there's

8    a stay of discovery on the original claims as a result of a

9    stipulation between parties as we're working with Magistrate

10   Judge Krause and mediation, that any discovery related to the

11   claims in the second amended complaint as they relate to the

12   discharge class first stayed by your Honor.  So we would ask

13   maybe that we could then work with plaintiffs again to discuss

14   a stay of that discovery or to continue the progress in the

15   mediation and settlement of these claims.

16           THE COURT:  Well, you can discuss it with plaintiffs,

17   but if it's not already a given, you know Magistrate Judge

18   Krause has the authority to modify my prior ruling on that.

19           MR. SANSOLO:  Okay.

20           THE COURT:  If and when he decides it's time to

21   resume discovery, he can modify his order as well as mine.

22           MR. SANSOLO:  Okay, thank you, your Honor.

23           THE COURT:  All right.  If there's nothing else, I'm

24   going to ring off.  Everybody stay well and good luck.  Bye

25   bye.                              o0o